**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| _____ )  | |
| Joshua Winer, ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Civil Action Case No. |
| Umaymah Mohammad, AJP Educational ) | 1:25-cv-02329-TWT |
| Foundation, Inc. A/K/A American Muslims ) | |
| For Palestine, WESPAC Foundation, Inc., ) | |
| Sean Eren as the representative of National ) | |
| Students for Justice in Palestine, Doctors ) | |
| Against Genocide Society, Cair-Nga Inc. ) | |
| A/K/A/ CAIR-Georgia, CAIR Foundation ) | |
| Inc., A/K/A Council on Islamic Relations ) | |
| or CAIR, Rupa Marya, Ibrahim Jouja as ) | |
| representative of Emory Students for ) | |
| Justice in Palestine, ) | |
| ) | |
|     Defendants. ) | |
| _____ ) | |

**PLAINTIFF JOSHUA WINER'S BRIEF**
**IN OPPOSITION TO DEFENDANT CAIR-GEORGIA'S MOTION TO**
**DISMISS HIS FIRST AMENDED COMPLAINT**

Plaintiff Joshua Winer ("Dr. Winer"), by and through his undersigned counsel, respectfully submits this Brief in response to Defendant CAIR-NGA, Inc.'s ("CAIR-Georgia") Motion to Dismiss the First Amended Complaint (ECF No. 41) ("Motion").  For the reasons set forth below, CAIR-Georgia's Motion should be denied in its entirety.

## **INTRODUCTION**

CAIR-Georgia's Motion is a transparent attempt to recast actionable defamation as protected political speech. It disregards well-pleaded facts, ignores binding legal standards, and seeks to insulate itself from liability under the guise of "opinion" and "advocacy."

Dr. Joshua Winer, a respected surgical oncologist and professor at the Emory University School of Medicine ("Emory"), brings this action because CAIR-Georgia and its co-defendants engaged in a coordinated campaign to publicly vilify him as a war criminal and participant in genocide solely because he is a Jewish Israeli Zionist and served in the Israel Defense Forces (IDF). CAIR-Georgia did not merely share opinions about the Israeli-Palestinian conflict that are protected by the First Amendment—it republished and amplified specific false factual assertions about Dr. Winer, including that he personally "participated in aiding and abetting a genocide," and "murdered over 400 healthcare workers".

1

These are not statements of opinion—they are verifiably false statements of fact, made with actual malice, and were widely disseminated in a deliberate effort to damage Dr. Winer's professional standing.

CAIR-Georgia's invocation of free speech principles applicable to political controversy cannot shield it from the consequences of targeted defamation. Indeed, the case law CAIR-Georgia itself relies upon underscores the narrow scope of First Amendment protections when defamatory statements are couched as political rhetoric, but are actually factual assertions of fact. The well-settled distinction between constitutionally protected opinion and actionable defamation does not vanish merely because a speaker cloaks deliberate falsehoods in the rhetoric of political discourse or advocacy. For the record, Defendants Mohammad and CAIR-Georgia did not state an opinion about Israel committing genocide, they publicly stated a demonstrably false fact during a press conference—that the IDF had been *convicted* of genocide. It has not, which means that its statement is not an opinion, it is a lie. Dr. Winer has similarly not been convicted of participating in any such genocide or other war crimes. Courts do not—and should not—permit defamatory statements to masquerade as political expression.

## **BACKGROUND**

Dr. Winer respectfully refers the Court to the Amended Complaint for a

Case 1:25-cv-02329-TWT    Document 60    Filed 07/22/25    Page 4 of 27

complete recitation of the facts underlying this action. ECF No. 22. Dr. Winer is a Jewish American and Israeli surgical oncologist, an Emory medical professor, the Surgical Clerkship Director at Emory, and a faculty member at Emory's Winship Cancer Institute. Following the Hamas-led terrorist attacks on Israel on October 7, 2023 (the "October 7 attacks"), Dr. Winer took a leave of absence to volunteer with the IDF, where he served in Gaza in his capacity as a physician providing medical care to wounded soldiers. His involvement in combat was limited to defensive engagement in the event his unit came under direct attack. At no time did he participate in offensive operations or engage in conduct that could even support an allegation of war crimes or genocide. Amended Complaint ("Am. Compl."), ECF No. 22, ¶¶ 11, 32–33, 65.

In March 2024, Dr. Winer authored and published an op-ed in the *Times of Israel* titled "An Ongoing Quest to Serve," in which he described his decision to volunteer as a physician with the IDF after the October 7 attacks. The op-ed reflected on his medical service and did not discuss combat, make political statements, or contain any reference to military operations, war crimes, or genocide. *Id*. ¶¶ 31–34.

On April 26, 2024, Defendant Umaymah Mohammad, a dual MD/PhD candidate at Emory and organizer affiliated with multiple anti-Israel activist

groups, appeared on Democracy Now! and made a series of statements clearly referring to Dr. Winer, though she did not name him. She accused him of "aiding and abetting a genocide," "aiding and abetting the destruction of the healthcare system in Gaza," and contributing to the "murder of over 400 healthcare workers." She further remarked that he was "now back at Emory so-called teaching medical students and residents how to take care of patients." *Id.* ¶ 35.

Although Mohammad did not name Dr. Winer, he was clearly identifiable from the context of her remarks. The Emory administration later concluded that the statements clearly referred to him, based on the specificity of the description and the public availability of his op-ed. *Id.* ¶¶ 36–37, 44, 47. An investigative report prepared by a School of Medicine official described Mohammad's remarks as "inflammatory," "irresponsible," and "disrespectful," and concluded that they caused a "reasonable apprehension of harm." *Id.* ¶ 44. On November 19, 2024, Emory suspended Mohammad from the School of Medicine for one year for violating the institution's Conduct Code. *Id.* ¶¶ 45–48.

Mohammad continued to publicly reference Dr. Winer in subsequent appearances and publications. On November 4, 2024, she participated in a podcast during which she again referred to a physician at Emory who had served in the IDF, asserting that he had "directly" taken life during a "genocide" and was unfit

to teach or treat patients. *Id*. ¶¶ 49–53. On January 21, 2025, she authored an op-ed published by *Mondoweiss*, in which she explicitly identified the physician as the "surgery clerkship director" at Emory—one of Dr. Winer's official titles—and stated that he had "participated in Israel's war crimes." *Id*. ¶¶ 54–57.

On February 11, 2025, Defendant CAIR-Georgia hosted a press conference to platform and support Mohammad, and to amplify both her claims about Dr. Winer and her demand that Emory reinstate her. During the CAIR-Georgia event, Mohammad took the stage and reiterated and expanded upon her earlier statements. She described her suspension as punishment for "exposing" a physician who was "actively engaged in the genocidal campaign against the Palestinian people," and stated that he "might have fired one of the 355 bullets that landed in 6-year-old Hind Rajab's body," "helped make the decision to bomb one of the hospitals in Gaza," and "celebrated the murder of our communities." *Id*. ¶¶ 60–61. She also falsely claimed that the IDF had been "convicted of committing genocide against Palestinians."

At the same press conference, CAIR-Georgia's Executive Director, Azka Mahmood, offered public remarks in which she endorsed Mohammad's characterization and described Mohammad as having been "unjustly suspended" for her "advocacy for Palestine." She further stated that Emory had ignored or

concealed faculty members who "join support for Israel's perpetration of war crimes." *Id*. ¶ 121. Given that Dr. Winer is the only medical professor at Emory who participated in the IDF following the October 7 attacks, Mahmood's statement could only have referred to him.

In the days and weeks that followed, CAIR-Georgia continued to disseminate and promote these allegations. On social media, it posted the footage of its press conference, republished clips of the Democracy Now! interview, shared a news article containing Mohammad's defamatory statements about Dr. Winer, circulated a hyperlink to an Action Network campaign that explicitly named Dr. Winer, and published an Instagram post referring to Dr. Winer as a "medical professional[] complicit[] in the genocide in Gaza." *Id*. ¶¶ 122-26.

The Amended Complaint alleges that these actions were not isolated expressions of opinion but part of a coordinated campaign to target Dr. Winer based on his Jewish, Israeli and Zionist identity and his association with the IDF. The Amended Complaint further alleges that CAIR-Georgia aligned itself with this effort, amplified defamatory statements about Dr. Winer across multiple platforms, and supported calls for his removal from the university. *Id*. ¶¶ 5–10, 59, 60-64, 67, 70, 118-127.

While CAIR-Georgia now claims in its Motion that its statements were prompted by Dr. Winer's *Times of Israel* op-ed (Def. CAIR-Georgia's Br. in Supp. of Mot. to Dismiss, ECF No. 41-1, at 11), the op-ed merely reflected on his voluntary service as a physician during a time of conflict. It made no reference to combat, political ideology, or any conduct that could reasonably support accusations of war crimes or genocide. Am. Compl. ¶¶ 31–34, 47.

According to the Amended Complaint, CAIR-Georgia's conduct included hosting the press conference at which Dr. Winer was accused of war crimes (*Id*. ¶¶ 60–61), issuing statements that he made Emory students and patients feel "unsafe" (*Id*. ¶ 61), promoting a petition explicitly naming him and demanding his investigation or removal (*Id*. ¶ 124), and broadly republishing the demonstrably false and defamatory statements through online channels (*Id*. ¶¶ 122-27). The Amended Complaint further alleges that CAIR-Georgia did so in coordination with others who sought to isolate and punish Dr. Winer not for anything he did, but for who he is and what he represents. (*Id*. ¶¶ 5–10, 59, 64–65).

## ARGUMENT

### I.    Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts must accept all factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff. *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010). "The threshold of sufficiency to which a complaint is held at the motion-to-dismiss stage is "exceedingly low." *United States v. Baxter Int'l, Inc.*, 345 F.3d 866, 881 (11th Cir. 2003), and is appropriate only when "no construction of the factual allegations will support the cause of action." *Marshall County Bd. of Educ. v. Marshall County Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

## II.    CAIR-Georgia Defamed Dr. Winer

### A. CAIR-Georgia Misapplies the Standard for Public Concern

A statement is defamatory per se when it is injurious on its face and requires no innuendo. In such cases, damages are presumed. This includes statements that impugn a person's trade, office, or profession in a manner calculated to cause reputational harm. *Smith v. DiFrancesco*, 341 Ga.App. 786, 788-89 (2017).

CAIR-Georgia correctly notes that a private-figure plaintiff bears the burden of proving falsity where the alleged defamation involves a matter of public concern.

That principle, grounded in *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767 (1986), is not in dispute. What is at issue—and what CAIR-Georgia fundamentally misstates—is the scope of that doctrine. A defendant cannot defame an individual and then shield themselves from liability merely by invoking topics of public concern. CAIR-Georgia may wish to relitigate the Israel-Hamas war, but this case is about something far more specific: the false and defamatory statements it made about Dr. Winer.

The First Amendment does not grant blanket immunity to speakers who wrap defamatory accusations in the language of political advocacy. As the Supreme Court has made clear, whether speech addresses a matter of public concern depends on its "content, form, and context," not merely its proximity to political or social issues. *Snyder v. Phelps*, 562 U.S. 443, 453 (2011). CAIR-Georgia's effort to transform contextual political background into a categorical defense is legally baseless. The Constitution protects vigorous public debate—it does not license targeted falsehoods under the guise of discourse.

Here, context is key. CAIR-Georgia did not simply comment on Israeli policy or debate whether the IDF's actions in Gaza constitute genocide. It specifically and repeatedly accused Dr. Winer—by name or unmistakable implication—of personally committing war crimes, aiding and abetting genocide, and murdering

civilians and healthcare workers. At its press conference, CAIR-Georgia amplified a series of specific, outrageous falsehoods, including claims that Dr. Winer was actively engaged in genocide, may have shot a six-year-old child, helped decide to bomb a hospital, or celebrated acts of murder. These were not rhetorical flourishes or generalized policy critiques; they were concrete factual assertions directed at a private individual—a physician who briefly served as a trauma surgeon treating wounded soldiers.

The distinction is not semantic—it is constitutional. The constitutional protections for speech on matters of public concern is at the heart of the First Amendment. *Id at* 451-452. But when private individuals are falsely accused of heinous crimes under the pretext of political advocacy, the First Amendment offers no shield.

Accordingly, *Hepps* applies only where the challenged speech genuinely addresses a matter of public concern. The statements at issue here—accusing a private physician of genocide and war crimes—do not meet that standard. CAIR-Georgia's reliance on *Hepps* is misplaced. Notably, it misquotes the case in asserting that a matter of public concern is one that "can be fairly considered as relating to any matter of political, social, or other concern to the community." That language appears nowhere in *Hepps*—it originates from *Snyder*, 562 U.S. at 453. The

misattribution is telling and underscores the weakness of CAIR-Georgia's position. The defamatory accusations here are not protected expressions of public concern; they are actionable falsehoods directed at a private individual.

## B. CAIR-Georgia's Defamatory Accusations Are Not Protected Opinion

CAIR-Georgia's assertion that its statements about Dr. Winer constitute nonactionable opinion is meritless. Each time CAIR-Georgia issued or republished a statement falsely accusing Dr. Winer of engaging in or participating in genocide, in war crimes, or the murder of civilians, it crossed a constitutional line. These are not abstract expressions of opinion, casual political commentary, or ideological statements—they are specific, factual accusations of criminal conduct directed at an identifiable private individual. That is defamation—not protected speech.

CAIR-Georgia's Motion wholly ignores the central issue and a core distinction at the heart of this lawsuit: Dr. Winer does not seek to prevent anyone from expressing political opinions about Israel, the IDF, or the conflict in Gaza. Mohammad, CAIR-Georgia and their co-defendants are free to express their personal beliefs about Israeli policy, military operations, and geopolitical issues. What Dr. Winer challenges—and what forms the basis of this case—is the coordinated campaign by CAIR-Georgia, Mohammad, and others to accuse him

personally of war crimes and genocide, and to call for his professional punishment based on that defamatory accusation.

CAIR-Georgia's conflation of protected political speech with provably false factual assertions is a deliberate misstatement of the law. A statement is actionable if it is a false assertion of fact that tends to harm the reputation of another and is capable of being proven true or false. *Lively v. McDaniel*, 240 Ga.App. 132, 133 (1999). Calling someone a "genocidal war criminal" is not a matter of subjective interpretation. It is a grave factual allegation—one that falsely imputes criminal conduct punishable under both international and domestic law. The truth or falsity of that charge can be established through evidence, which makes it actionable.

Dr. Winer is not a public figure. He has never held public office and never assumed a role of special prominence in any public controversy. His op-ed discussing his experience in the IDF as a physician following the October 7 terrorist attacks—during which he treated wounded soldiers and had no role in offensive military operations—does not transform him into a public figure under any established standard. CAIR-Georgia's argument to the contrary is untenable.

CAIR-Georgia's reliance on Gurmessa v. Genocide Prevention in Ethiopia, Inc., 2023 WL 2674122 (D. Md. Mar. 28, 2023), only highlights the weakness of its position. First, Gurmessa is a magistrate judge's report and recommendation—

not a district court decision—and is not binding even within the District of Maryland, let alone here. Second, CAIR-Georgia's claim that Gurmessa involves similar facts reflects a fundamental misreading. The plaintiff there was not accused of personally committing genocide, but of supporting it in Ethiopia's Oromia Region. The court found that whether genocide was occurring—and thus whether the plaintiff's posts supported it—was a matter of opinion. That general claim is not remotely comparable to the specific and inflammatory accusations at issue here: that Dr. Winer personally shot a child, helped bomb a hospital, or celebrated murder.

CAIR-Georgia also demonstrates a fundamental misunderstanding of the law surrounding genocide. Even assuming, arguendo, that a military force had been found guilty of genocide—which, to be clear, the IDF has not—such a finding would not, under either international or domestic law, impute criminal liability to every individual soldier within that force.

Under established international law, including decisions from the International Criminal Tribunal for Rwanda (ICTR), the International Criminal Tribunal for the former Yugoslavia (ICTY), and the International Criminal Court (ICC), individual criminal responsibility for genocide requires direct participation in genocidal acts or knowing and intentional assistance of those acts. *See e.g.,*

*Prosecutor v. Akayesu*, Case No. ICTR-96-4-T, Judgment ¶¶ 471–75 (Sept. 2, 1998).

Similarly, under U.S. law, including the Genocide Accountability Act, 18 U.S.C. §

1091, criminal liability for genocide attaches only where there is proof of specific

intent and affirmative conduct.

Furthermore, courts in a variety of contexts have consistently held that

membership in an organization—even one alleged to have committed unlawful

acts—is not, standing alone, sufficient to establish liability absent evidence of active

participation and specific intent. See e.g. *Scales v. United States*, 367 U.S. 203, 228–

30 (1961).

Accordingly, even if CAIR-Georgia subjectively believed that the IDF or the

Israeli government was engaged in genocide or other international crimes, that belief

would not give it license to falsely accuse Dr. Winer personally of those acts, nor

would it justify its campaign to defame him and demand his termination. Such

conduct is not protected by law and is squarely actionable.

State and government entities cannot sue for defamation. Individuals can, and

ought to be successful when false and reputation-destroying claims are leveled

against them. That is the case here. CAIR-Georgia, like its co-defendants, crossed

the line from opinion to defamation when it abandoned generalized political rhetoric

and began targeting Dr. Winer by name with knowingly false accusations of

international war crimes. Those statements are not constitutionally protected. They are provable. They are false. And they are actionable.

## C. CAIR-Georgia's Accusations of Racism Are Actionable Because They Are Premised on False Allegations of Genocide and War Crimes

CAIR-Georgia attempts to insulate its defamatory statements by claiming that accusations of racism are inherently nonactionable opinion. But that argument fails for two reasons. First, Georgia courts have repeatedly held that accusations of racism can be actionable if they imply provably false facts. *Bryant v. Cox Enterprises, Inc.*, 311 Ga.App. 230, 235, (2011) (holding that a statement accusing the plaintiff of racism could be actionable where it implies a factual predicate which is capable of being proven false); *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18–20 (1990) (holding that a statement framed as opinion is not immune from liability if it "reasonably implies false and defamatory facts" and "Even if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false assertion of fact. Simply couching such statements in terms of opinion does not dispel these implications"). Second, and more critically here, the defamatory sting of CAIR-Georgia's statements lies not in a generalized accusation of racial bias, but in the explicit assertion that Dr. Winer's alleged racism stems from his participation in genocide and war crimes.

15

This distinction is not academic—it is dispositive. CAIR-Georgia falsely claims that its statements were merely commentary on Dr. Winer's IDF affiliation with the IDF. But the Amended Complaint makes clear that CAIR-Georgia explicitly tied its allegations of racism to their broader and more inflammatory implied claims: that Dr. Winer personally engaged in the slaughter of civilians, the destruction of hospitals, and the murder of children. From these invented facts, they then declared that Dr. Winer made students and patients of color feel unsafe. That is not opinion. It is a reputational death sentence based on deliberate falsehoods.

CAIR-Georgia cannot rewrite the context to sanitize its conduct. It did not merely criticize Dr. Winer for his political views or military affiliation. It accused him of atrocities and then weaponized those fabrications to portray him as unfit to teach or treat patients—particularly patients of color. The implication was unmistakable: because Dr. Winer is a genocidal war criminal, he is inherently racist and poses a danger to vulnerable communities.

That narrative is not protected by the First Amendment. It is a calculated effort to destroy a man's career and reputation through knowingly false, egregious claims dressed up as political advocacy. A defamation defendant cannot manufacture its own factual predicates and then declare its conclusions "opinion." CAIR-Georgia's argument fails, both legally and morally.

**D. Dr. Winer's False Light Claim Does Not Rely on Protected Opinions**

If the Court concludes the false statements at issue constitute defamation per se, then Plaintiff's false light claim will be subsumed. *Bollea v. World Championship Wrestling, Inc.*, 271 Ga. App. 555, 557 (2005). If any of these statements were to fail to meet that threshold, yet nonetheless present Dr. Winer to the public in a false and deeply offensive light, then the false light claim remains independently actionable.

False light as a distinct tort is designed to remedy exactly this kind of reputational assault: the public depiction of an individual as something he is not, in a manner that would be highly offensive to a reasonable person. *See Cabaniss v. Hipsley*, 114 Ga.App. 367, 375, 151 S.E.2d 496 (1966). To prevail, a plaintiff must establish "false publicity that depicts the plaintiff as something or someone which he is not," and that the depiction "would be highly offensive to a reasonable person." *Doe v. Roe*, 362 Ga. App. 23, 32, (2021) (internal citation omitted).

CAIR-Georgia does not engage with the elements of false light. It simply rehashes its refrain that all of the challenged statements are "opinion," and are therefore not actionable. But as discussed *supra*, the statements at issue are not protected opinion. They are concrete, fact-laden accusations that Dr. Winer committed war crimes, participated in genocide, and consequently poses a threat to

patients and students of color. CAIR-Georgia urged Emory, Dr. Winer's employer, to act on these falsehoods and terminate his employment based on these demonstrably false factual assertions.

Strikingly, CAIR-Georgia acknowledges in its own brief that "the interest protected [in a false light claim] is clearly that of reputation, with the same overtones of mental distress as in defamation." Def.' Br. at 22 (quoting *Cabaniss*, 114 Ga. App. at 375). Yet it makes no attempt whatsoever to argue that the portrayal of Dr. Winer as a genocidal war criminal who endangers vulnerable populations would not be highly offensive to a reasonable person and cause damage to their reputation. It sidesteps the issue entirely because the only plausible application of that standard leads to liability.

False light is not a fallback theory—it is a distinct and independently actionable tort. CAIR-Georgia's attempt to dismiss Dr. Winer's false light claim by recasting its false statements about him as mere "opinion" is legally untenable and should be rejected outright.

## E. CAIR-Georgia Engaged In a Civil Conspiracy to Defame Dr. Winer and Place Him In a False Light

CAIR-Georgia's assertion that Plaintiff fails to allege its involvement in any agreement or coordination with other defendants is flatly contradicted by the text of the Amended Complaint. Dr. Winer specifically alleges that CAIR-Georgia

collaborated with both Defendants Mohammad and CAIR-Foundation, Inc. to amplify and disseminate the defamatory campaign against Dr. Winer and place him in a false light. CAIR-Georgia provided Mohammad with a platform at a public press conference so that she could further disseminate her false statements about Dr. Winer, promoted and re-published her remarks across its social media accounts, and circulated the same Action Network campaign materials that Mohammad had sahred in her *Mondoweiss* op-ed. Furthermore, CAIR-Georgia and CAIR Foundation Inc. ("CAIR") issued a joint Instagram post that included direct quotations from Mohammad falsely accusing Dr. Winer of participating in genocide as well as the link to the Action Network Campaign. Am. Compl. ¶¶ 60-65, 118-127, 170–71.

These allegations go well beyond independent action. They describe deliberate coordination between CAIR-Georgia, Mohammad, and CAIR to falsely portray Dr. Winer as a war criminal and incite reputational harm. CAIR-Georgia's blanket denial of involvement intentionally ignores well-pleaded allegations of joint conduct that must be accepted as true at the motion to dismiss stage.

CAIR-Georgia's additional argument—that it lacked "knowledge" of the alleged torts—is a red herring. (Def. Br. at 16). Neither defamation nor false light claims requires that a co-conspirator know the legal significance of the conduct. The relevant inquiry is whether CAIR-Georgia knowingly participated in a common

design to accomplish an unlawful objective regardless of its knowledge of its illegality—in this case, reputational destruction through the widespread dissemination of false statements. The Amended Complaint alleges precisely that. CAIR-Georgia's effort to dismiss the conspiracy claim intentionally ignores the plain text of the pleadings and the well-established standards governing conspiracy liability in Georgia. Its attempt to escape the conspiracy claim should be rejected.

**F. Dr. Winer Has Stated a Viable Claim Under 42 U.S.C. § 1985(3)**

CAIR-Georgia argues that Dr. Winer's § 1985(3) claim must be dismissed because he fails to allege a right protected against private encroachment, fails to plead invidious discriminatory animus, and fails to allege a conspiracy. Each argument mischaracterizes both the law and the Amended Complaint.

***(i) § 1985(3) Protects Against Racially-Motivated Conspiracies That Seek to Exclude Individuals from Professional Life***

A core purpose of § 1985(3) is to provide a remedy for private conspiracies that seek to deprive individuals of constitutional rights through racially discriminatory means. To plead a claim under § 1985(3), a plaintiff must allege: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4)

whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States. *Park v. City of Atlanta*, 120 F.3d 1157, 1161 (11th Cir. 1997); *Childree v. UAP/GA AG Chem., Inc.*, 92 F.3d 1140, 1146–47 (11th Cir. 1996). The second element "requires a showing of some 'racial...invidiously discriminatory animus behind the conspirators' action. *Id.*

While the Eleventh Circuit has held that conspiracies to violate rights secured under § 1981 are not actionable under § 1985(3), *see Jimenez v. Wellstar Health Sys.*, 596 F.3d 1304, 1312 (11th Cir. 2010), Dr. Winer's claim does not rely on §1981. Instead, the Amended Complaint alleges a racially-motivated private conspiracy to exclude him from civic and professional life by falsely accusing him of atrocities, pressuring his employer to terminate him, and rendering him unemployable in academic medicine. That type of targeted campaign—engineered to deny a Jewish physician access to the institutions of civil society—is precisely the kind of harm Congress enacted § 1985(3) to prevent.

In *Griffin v. Breckenridge*, 403 U.S. 88 (1971), the Supreme Court recognized that § 1985(3) provides a remedy against private conspiracies designed to "deprive directly or indirectly any person or class of persons of the equal protection of the laws." *Id.* at 101. The Court emphasized that § 1985(3) was passed in part to guard against conspiracies "aimed at wholly excluding any class of persons from the equal

enjoyment of rights secured by law." *Id.* at 102. In other words, § 1985(3) protects against conspiratorial efforts to deny targeted individuals meaningful access to the benefits and privileges of civil life, including employment, reputation, and standing in the community.[1]

That is exactly what Dr. Winer has alleged here. He asserts that CAIR-Georgia and its co-defendants acted in concert to destroy his career, reputation, and livelihood by branding him a genocidal war criminal and pressuring Emory University to sever all ties with him. These actions were allegedly driven by discriminatory animus against him as a Jew, and they sought to expel him from public and professional life.

---

[1] Although the Supreme Court has expressly recognized only a limited number of rights as actionable under § 1985(3) in the context of purely private conspiracies—including the right to interstate travel and the right to be free from involuntary servitude—this list is not exhaustive. The Eleventh Circuit has made clear that § 1985(3) extends to private conspiracies that interfere with "federal rights that are protected against private encroachment." Jimenez v. Wellstar Health Sys., 596 F.3d 1304, 1312 (11th Cir. 2010). As Jimenez further explains, "[w]hether a right is protected from private encroachment depends on the right at issue and the context of the case," and district and circuit courts have recognized various rights—including certain equal protection and liberty interests—as cognizable under the statute. Id. at 1312–13. The Eleventh Circuit thus declined to adopt a categorical limitation to only those rights explicitly enumerated by the Supreme Court. Id. at 1313 ("We do not attempt to define here the full scope of § 1985(3)'s reach."). This framework confirms that where a plaintiff alleges a racially motivated conspiracy aimed at excluding a protected group from civic or professional life—such as through blacklisting, defamation, and coordinated reputational destruction—§ 1985(3) provides a valid cause of action.

References in the Amended Complaint Dr. Winer's Zionist beliefs, Israeli citizenship, political views, religion and military service are not separate identity markers—they are part and parcel of Dr. Winer's identity as a Jew. As the Supreme Court recognized in *Shaare Tefila Congregation v. Cobb*, 481 U.S. 615, 617–18 (1987), Jews constitute a protected racial group. *See also CBOCS W., Inc. v. Humphries,* 553 U.S. 442, 448, (2008)*.*

CAIR-Georgia argues that First Amendment rights are not actionable under § 1985(3) absent state involvement. But Plaintiff's claim does not rest on the First Amendment. It is grounded in a conspiracy to inflict reputational harm based on his racial identity as a Jew. That claim fits squarely within the reach of §1985(3).

Nor does CAIR-Georgia's invocation of Title VII preemption hold water. The Amended Complaint does not seek to enforce Title VII rights or bypass administrative procedures. Instead, it alleges a private campaign, animated by racial hatred, to ruin Dr. Winer's professional life. That conduct is not subject to Title VII exclusivity and is independently actionable under § 1985(3).

### (ii). Dr. Winer Has Sufficiently Alleged Invidiously Discriminatory Animus

Citing *Breckenridge,* CAIR-Georgia next wrongly argues that Dr. Winer has not plausibly alleged the type of animus required under § 1985(3). Def.' Br. at 22. However, Courts have long recognized Jewish identity as a protected class for

purposes of § 1985(3). *Id; Shaare Tefila*, 481 U.S. 615, 617–18 (1987).

Moreover, Zionism is, for many Jews, not merely a political position, but an expression of their racial and ethnic Jewish identity.[2] Anti-Zionist campaigns that target Jewish professionals for exclusion, humiliation, and reputational destruction thus operate as a proxy for anti-Jewish discrimination. The fact that Defendants clearly wish to construe Zionism as merely political does not mean that it is. Just as antisemites are not entitled to define antisemitism in ways that entitled them to be hateful, anti-Zionists cannot unilaterally narrow the meaning of anti-Zionism to shield their discriminatory conduct. The animus alleged here is not disagreement with Israeli policies. It is personal, racial, and aimed squarely at Dr. Winer's identity as a Zionist Jew—someone who, in the wake of the October 7 attacks targeting Jews, chose to serve in the military of the world's only Jewish state in defense of his ancestral homeland.

That is precisely the sort of animus §1985(3) was enacted to remedy. Dr. Winer's allegations that Defendants accused him of being a genocidal war criminal, unfit to teach or treat patients, and a threat to marginalized communities—all because of his Jewish identity—easily meet the standard for racial-based animus.

---

[2] Mark Goldfeder, *Codifying Antisemitism*, 127 Penn St. L. Rev. 405, 421–22 (2023).

CAIR-Georgia's effort to recast those attacks as mere anti-Zionist political discourse is disingenuous and unavailing. Accordingly, Dr. Winer has stated a viable claim under § 1985(3), and CAIR-Georgia's motion to dismiss Count IV should be denied in full.

## **CONCLUSION**

CAIR-Georgia's Motion to Dismiss distorts both the facts and the law in an effort to evade accountability for its central role in a coordinated campaign of reputational destruction. The Amended Complaint plausibly alleges that CAIR-Georgia defamed Dr. Winer, portrayed him in a false light, and joined with others in a conspiracy to inflict professional harm based on his racial identity as a Jew. These allegations, taken as true—as they must be at this stage—state actionable claims under Georgia law and 42 U.S.C. § 1985(3). CAIR-Georgia's attempt to reframe defamatory attacks as protected political speech cannot be countenanced.

For the foregoing reasons, and those set forth in the body of this memorandum, Defendant CAIR-Georgia's Motion to Dismiss should be denied in its entirety.

Dated: May July 21, 2025                                        Respectfully Submitted,


/s/ *David F. Katz*_____

**Weissmann Zucker Euster + Katz P.C. Inc.**

DAVID F. KATZ
The Fountains at Piedmont Center
Building 11, Suite 950
3495 Piedmont Road
Atlanta, Georgia 30305
T. 404-390-2941
dkatz@wzlegal.com
GA Bar No. 408738


/s/ *Esther Panitch*_____

**Panitch Ivory Law Group, PC**

ESTHER PANITCH
4243 Dunwoody Club Dr.,  #201
Atlanta, GA 30350
T. 770-364-6952
esther@panitchivory.com
GA Bar No. 143197

**National Jewish Advocacy Center,**

MARK GOLDFEDER*
mark@njaclaw.org
LAUREN ISRAELOVITCH *
lauren@njaclaw.org
BEN SCHLAGER**
ben@njaclaw.org
3 Times Square
New York, NY 10036
T. 800-269-9895
*Admitted Pro Hac Vice*
**Pro Hac Vice Application Forthcoming*