## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| Joshua Winer, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION FILE |
| v. | ) | NO. 1:25-CV-02329-TWT |
| | ) | |
| Umaymah Mohammad, AJP Educational | ) | |
| Foundation, Inc. A/K/A American Muslims | ) | |
| For Palestine, WESPAC Foundation, Inc., | ) | |
| Sean Eren as the representative of National | ) | |
| Students for Justice in Palestine, Doctors | ) | |
| Against Genocide Society, Cair-Nga Inc. | ) | |
| A/K/A CAIR-Georgia, CAIR Foundation | ) | |
| Inc., A/K/A Council on Islamic Relations or | ) | |
| CAIR, Rupa Marya, Ibrahim Jouja as | ) | |
| representative of Emory Students for Justice | ) | |
| in Palestine, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT CAIR-FOUNDATION, INC.'S BRIEF IN SUPPORT OF MOTION TO DISMISS AND MOTION FOR ATTORNEY'S FEES

COMES NOW Defendant, CAIR-Foundation, Inc. ("CAIR-Foundation")[1]

and files this Brief in Support of its Motion to Dismiss pursuant to Federal Rule of

Civil Procedure 12(b)(6) and its Motion for Attorney's Fees.

## I. INTRODUCTION AND FACTUAL BACKGROUND

CAIR-Foundation is a non-profit organization whose mission is to enhance

understanding of Islam, protect civil rights, promote justice, and empower Muslim

---

[1]    Plaintiff's Amended Complaint misidentifies CAIR-Foundation, Inc. as "CAIR Foundation, Inc."

1

Americans. Plaintiff appears to have asserted claims for defamation *per se* (Count I), false light invasion of privacy (Count II), civil conspiracy (Count III), and conspiracy to interfere with civil rights (Count IV) against nine defendants. (Doc. 22). While Plaintiff's 104-page Amended Complaint is lengthy, it lacks substance as to any actionable claims against CAIR-Foundation. In fact, CAIR-Foundation is mentioned in the 190-paragraph pleading only 11 times, and it is unclear from the face of the Amended Complaint whether all four counts are even actually asserted against CAIR-Foundation.

CAIR-Foundation's alleged liability is isolated to one limited instance—a February 11, 2025 Instagram post ("the IG Post"). (Doc. 22, ¶ 123). With respect to the IG Post, Plaintiff alleges that Defendant CAIR-Nga, Inc. ("CAIR-GA")and CAIR-Foundation "collaborated" to re-publish a WSB-TV Segment ("WSB-TV Segment") that contained footage from a *Democracy Now!* interview during which Defendant Mohammad made allegedly false statements about Plaintiff. (*Id.*). Importantly, Plaintiff admits that the IG Post contained no new content created by CAIR-Foundation, but instead merely republished content that was previously created by other entities. (*Id.*) Furthermore, the republished content did not identify Plaintiff by name. (*Id.*, ¶ 123). Specifically, the text accompanying the IG Post (which was also not created or published by CAIR-Foundation) reads:

> Today, CAIR-Georgia and Emory faculty and students called on
> Emory School of Medicine to reinstate Palestinian-American student

2

Umaymah Mohammad, after she was wrongfully suspended by the
school last November. Thanks to @wsbtv for covering the press
conference.



(*Id.*, ¶ 124).

Even if CAIR-Foundation had some responsibility for the text
accompanying the IG Post (which it denies), there is no mention of Plaintiff, his
professional position, his race or religious beliefs, his involvement with the Israeli
Defense Forces, or anything else that could be construed as identifying information
about Plaintiff. (*Id.*). Further, there is nothing defamatory about this text and
Plaintiff has not pled any other act purportedly done by CAIR-Foundation to
support his claims against it. Accordingly, even when the facts are construed in the
light most favorable to Plaintiff, Plaintiff's sole allegation against CAIR-
Foundation is that is it somehow liable to Plaintiff for re-posting content provided

by Defendant Mohammad, *Democracy Now!*, and WSB-TV. (*Id.*, ¶¶ 123, 148, 148(a), 171). Therefore, Plaintiff's alleged claims against CAIR-Foundation fail for myriad reasons, as outlined more fully herein, and dismissal is warranted.

## II. ARGUMENT AND CITATIONS TO AUTHORITY

### A. Legal Standard

Under Rule 12(b)(6), dismissal is authorized where it appears that the facts alleged fail to state a "plausible" claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); Fed. R. Civ. P. 12(b)(6). A pleading fails to state a claim when it does not contain allegations to support liability under any recognizable legal theory. *Iqbal*, 556 U.S. at 678. In order to survive a motion to dismiss, a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (internal citations omitted). A complaint must therefore contain factual allegations that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Generally, preemption under Section 230 of the United States Code is an affirmative defense, but it can support a motion to dismiss if the barrier to suit is evident on the face of the complaint. *Ricci v. Teamsters Union Local 456*, 781 F.3d 25, 28 (2d Cir.

4

2015) (per curiam) (quoting *Klayman v. Zuckerberg*, 753 F.3d 1354, 1357 (D.C. Cir. 2014)).

## B. Plaintiff's Amended Complaint Should Be Dismissed Because It Is An Impermissible Shotgun Pleading.

As an initial matter, the deficiencies of the pleading warrant dismissal of Plaintiff's Amended Complaint against CAIR-Foundation because it is a shotgun pleading that violates Fed. R. Civ. P. 8(a)(2) and 10(b). A pleading that states a claim for relief must include "a short and plain statement of the claim showing that the pleader is entitled to relief," and a plaintiff must "state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 8(a)(2) and 10(b). Complaints that violate one or both of these rules are "disparagingly referred to as 'shotgun pleadings.'" *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015).

The "mortal sin" of shotgun pleading involves pleading multiple counts but incorporating by reference in each count all preceding allegations, "leading to a situation where most of the counts (*i.e.*, all but the first) contain irrelevant factual allegations and legal conclusions." *Strategic Income Fund, LLC v. Spear, Leads & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002) (internal citations omitted); *see also*, *Magulta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) ("The complaint is replete with allegations that 'the defendants' engaged in certain conduct, making no distinction among the fourteen defendants charged, although

geographic and temporal realities make plain that all of the defendants could not have participated in every act complained of.").

Plaintiff's Amended Complaint is the epitome of a shotgun pleading: each count "repeats and re-alleges each of the foregoing paragraphs as if set forth fully herein." (Doc. 22, ¶¶ 136, 153, 162, 177). Moreover, Plaintiff failed to specify which counts are asserted against which defendants and, particularly in Counts II and IV, failed to identify which defendant is responsible for which act or omission. (*See, e.g., Id.*, ¶¶ 155-56, 160, 164, 174, 175, 179-80, 183-84). In fact, Counts II and IV—apart from the incorporation of all preceding paragraphs—fail to name any individual defendant at all. Due to these violations of Rules 8(a)(2) and 10(b), CAIR-Foundation cannot sufficiently discern the claims against it and the grounds supporting those claims, and dismissal is warranted.

## C. CAIR-Foundation Joins In The Arguments Asserted by CAIR-GA In Its Motion to Dismiss Brief.

CAIR-GA filed its Motion to Dismiss Brief on June 27, 2025. (Doc. 41-1). Because the only action asserted by Plaintiff against CAIR-Foundation involves a joint Instagram post with CAIR-GA, CAIR-Foundation joins in the arguments asserted by CAIR-GA in its brief and posits that such arguments apply to CAIR-Foundation as well.

Of utmost importance (and without reiterating all arguments briefed by CAIR-GA), the statements in the IG Post constitute opinion-based, political speech

based on accurate, disclosed facts. (*Id*. at 3). Plaintiff identified one alleged statement ("Statement") by Defendant Mohammad that he attempts to attribute to CAIR-Foundation: "This man participated in aiding and abetting a genocide, in aiding and abetting the destruction of the healthcare system in Gaza." (Doc. 22, ¶123). Because the Statement involves a matter of public concern—the Israeli-Palestinian conflict—Plaintiff must prove falsity in order to support his defamation claim. *Phila. Newspapers, Inc. v. Hepps*, 475 U.S. 787, 778 (1986); *Brock v. Viacom Int'l, Inc.*, 2005 U.S. Dist. LEXIS 12217, at *13 (N.D. Ga. Feb. 28, 2005). "The pivotal questions are whether [the challenged] statements can reasonably be interpreted as stating or implying defamatory facts about plaintiff and, if so, whether the defamatory assertions are capable of being proved false." *Jaillett v. Ga. Tv Co.*, 520 S.E.2d 721, 725–26 (Ga. Ct. App. 1999). Thus, in order to maintain any claim based on the Statement, Plaintiff must prove the statement is false.

As highlighted by CAIR-GA, Plaintiff does not explain how or why the Statement is false, but instead simply concludes falsity. It is not plausible, however, that Plaintiff could disprove that genocide has occurred. Because constitutionally-privileged statements of opinion cannot support a claim for false light under Georgia law, that claim must also fail. *See S & W Seafoods Co. v. Jacor Broad. of Atlanta,* 230 S.E.2d 228, 231 (Ga. Ct. App. 1989). As outlined in Section

F. below, because there is no underlying tort, Plaintiff's claim for civil conspiracy likewise fails. *O'Neal,* 514 S.E.2d at 675.

### D. Plaintiff's Amended Complaint Violates Georgia's Anti-SLAPP Statute And Permits For the Recovery of Attorney's Fees.

1. The IG Post Is Protected Free Speech on a Matter of Public Concern.

Strategic Lawsuits Against Public Participation ("SLAPPs") are "meritless lawsuits brought not to vindicate legally cognizable rights, but instead to deter or punish the exercise of constitutional rights of petition and free speech by tying up their target's resources and driving up the costs of litigation." *Wilkes & McHugh, P.A. v. LTC Consulting, L.P.*, 830 S.E.2d 119, 124 (Ga. 2019). Georgia's anti-SLAPP statute prohibits claims arising from the acts of an entity which could reasonably be construed as an act in furtherance of the entity's right of petition or free speech under the Constitution of the United States and/or Georgia in connection with an issue of public interest or concern *unless* the plaintiff establishes there is a probability that he will prevail on the claim. O.C.G.A. § 9-11-11.1. Section 9-11-11.1(c) defines "act in furtherance of the person's or entity's right of petition or free speech ... in connection with an issue of public interest or concern" (*i.e.*, protected activity) to include "[a]ny written or oral statement or writing or petition made in a place open to the public or a public forum in connection with an issue of public interest or concern." *Id*. When analyzing an anti-SLAPP motion to dismiss, the Court must conduct a two-step inquiry: 1) did

the movant make a threshold showing that the claim arises from protected activity and 2) has Plaintiff "established that there is a probability that the [plaintiff] will prevail on the claim." *Am. Civil Liberties Union, Inc. v. Zeh*, 864 S.E.2d 422, 426–27 (Ga. 2021).

Because Plaintiff's sole allegation against CAIR-Foundation is that it collaborated on the IG Post, with respect to the threshold inquiry, the Court must determine whether the IG Post, which included footage of the Statement (*see* Doc. 22, ¶123: "This man participated in aiding and abetting a genocide, in aiding and abetting the destruction of the healthcare system in Gaza"), constitutes protected activity. A movant meets this burden by "demonstrating that the act underlying the challenged claim could reasonably be construed as fitting within one of the categories" outlined in § 9-11-11.1. *See Giraldi v. Bowen*, 912 S.E.2d 724, 729 (Ga. Ct. App. 2025). The Statement unquestionably involves a matter of public concern—the Israeli-Palestinian conflict. Plaintiff admits this, alleging that Defendant Mohammad's "political views about Israel and the United States were the basis" for her alleged defamatory statements, including the Statement. (Doc. 22, ¶ 26). Moreover, the IG Post involves the re-sharing of the Statement by CAIR-GA and CAIR-Foundation on Instagram, a public forum. Thus, Plaintiff must demonstrate a probability that he will prevail on his claim against CAIR-Foundation.

The second step of the anti-SLAPP inquiry "requires this Court to accept the evidence from the non-moving party as true and look to the evidence from the moving party to determine if it defeats the [non-movant's] showing as a matter of law." *Morgan v. Mainstreet Newspapers, Inc.*, 889 S.E.2d 217, 224 (Ga. Ct. App. 2023) (internal citations omitted). Even viewing the facts in favor of Plaintiff, Plaintiff's claims against CAIR-Foundation fail as a matter of law because Plaintiff cannot prove falsity of the Statement. Plaintiff does not even attempt to explain why or how the Statement is false, but simply concludes falsity instead. Because CAIR-Foundation's singular act represents it's exercise of free speech involving a matter of public concern, and because Plaintiff has not demonstrated a probability of success on the merits of his claims against CAIR-Foundation, Plaintiff's Amended Complaint against CAIR-Foundation should be dismissed pursuant to O.C.G.A. § 9-11-11.1.

   2. <u>Attorney's Fees are Permitted and Should Be Appropriately Awarded to CAIR-Foundation.</u>

Section 9-11-11.1(b) authorizes a Court to award attorney's fees and expenses of litigation to the prevailing movant on an anti-SLAPP motion. O.C.G.A. § 9-11-11.1(b); *see also Barnwell v. Trivedi*, 898 S.E.2d 250, 255 (Ga. Ct. App. 2024). CAIR-Foundation has been forced to incur attorney's fees and litigation costs, including the preparation of the instant Motion. As such, CAIR-Foundation respectfully requests this Court award its attorney's fees and litigation

expenses in connection with this matter.[2]

### E. Plaintiff's Defamation and False Light Claims Should Be Properly Dismissed.

1. Plaintiff's Defamation and False Light Claims are Barred by the Communications Decency Act.

Plaintiff alleges in Count I that CAIR-Foundation collaborated with CAIR-GA on Instagram to "further disseminate false and defamatory statements about Plaintiff through joint social media posts." (*Id*., ¶ 148). Count II appears to allege that this same collaboration supports a claim for false light against CAIR-Foundation, and Count III tries to assert that the collaboration to disseminate allegedly defamatory materials supports a claim for civil conspiracy. (*Id*. at ¶¶ 155-56, 171).[3] The IG Post "published" the WSB-TV Segment regarding CAIR-GA's press conference. (*Id*. at ¶ 123). According to Plaintiff, the WSB-TV Segment included video footage of Defendant Mohammed making allegedly false and inflammatory statements about Plaintiff. (*Id*. at ¶ 66). It bears noting that neither *Democracy Now!* (whose YouTube channel was featured in the WSB-TV Segment) nor WSB-TV (who compiled and broadcasted the Segment) is named as

---

[2]    Should this Court find that CAIR-Foundation is entitled to its attorney's fees and litigation expenses, CAIR-Foundation respectfully requests that the Court reserve ruling on the amount of such fees and costs to allow CAIR-Foundation to submit its supporting invoices.

[3]    As discussed later herein, this single allegation is woefully insufficient to establish any colorable claim for civil conspiracy as to CAIR-Foundation and is precisely the type of impermissible shotgun pleading prohibited by Iqbal, Twombly, and Fed. R. Civ. P. 8(a)(2) and 10(b).

a defendant in the instant lawsuit. Plaintiff argues that by collaborating on an Instagram post that merely shared a previously-broadcast news story, CAIR-Foundation "further disseminate[d] false and defamatory statements about Plaintiff." (*Id*. at ¶¶ 148 and 148(a)).

The Communications Decency Act ("CDA") provides that "[n]o provider or *user* of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1) (emphasis added). Thus, a defendant user of an interactive computer service is immune from liability "when the defamatory or obscene material is 'provided' by someone else." *Tanisha Systems, Inc. v. Chandra*, 2015 WL 10550967 at *8 (N.D. Ga. Dec. 4, 2015) (quoting *Batzel v. Smith*, 333 F.3d 1018, 1020 (9th Cir. 2003) (superseded by statute on other grounds)). The CDA preempts state law contrary to § 230(c)(1). *Id*. at § 230(e)(3); *see also McCall v. Zotos,* No. 22-11725, 2023 WL 3946827, at *1 (11th Cir. June 12, 2023).

Although preemption under the CDA is an affirmative defense, it can support a motion to dismiss if the barrier to suit is evident on the face of the complaint. *Ricci*, 781 F.3d at 28. Because the IG Post involves the precise circumstances contemplated by the CDA, CAIR-Foundation is entitled to immunity with respect to the IG Post because the content of the post—the WSB-TV Segment—was provided by another information content provider. *Carafano v.*

*Metrosplash.com, Inc.,* 339 F.3d 1119, 1123 (9th Cir. 2003). Furthermore, Plaintiff does not allege that CAIR-Foundation took any other action regarding his claims. In short, Plaintiff's only claim against CAIR-Foundation is that it collaborated on one Instagram post that merely republished part of a news story, which was created and provided by another information content provider.

### a. CAIR-Foundation was the user of an interactive computer service.

The CDA does not define "user," but Courts have looked to the plain meaning of the word and treated individuals who "availed themselves of and utilized" websites as users under the CDA. *Directory Assistants, Inc. v. Supermedia, LLC*, 884 F. Supp. 2d 446, 452 (E.D. Va. 2012); *see also Tanisha Systems, Inc.,* 2015 WL 10550967 at *8 (reasoning that the defendant was a "user" because he used his e-mail and the commenting features of a blog site). With respect to Instagram, Plaintiff himself employs this term to describe individuals that post on Instagram. (Doc. 22, ¶¶ 79, 80, 124, 132, 146(b)). Because CAIR-Foundation utilized Instagram when it "collaborated" on the IG Post, it necessarily qualifies as a "user" under the CDA.

The CDA defines "interactive computer services" to include "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server." 47 U.S.C. § 230(f)(2). Courts have generally held that "website exchange systems and online message

boards are interactive computer services." *McCall,* 2023 WL 3946827, at *2; *see also Lawyers' Comm. For Civil Rights Under Law v. Craigslist, Inc.*, 519 F.3d 666, 671 (7th Cir. 2008) (applying interactive computer service definition to Craigslist); *Universal Commc'ns Sys. v. Lycos, Inc.*, 478 F.3d 413, 419 (1st Cir. 2007) (applying definition to internet message board operator); and *Klayman*, 753 F.3d at 1357 (applying definition to Facebook)). By this reasoning, Instagram, which describes itself as a "free photo and video sharing app" through which "[p]eople can upload photos or videos to our service and share them with their followers" and can "view, comment and like posts,"[4] qualifies as an interactive computer service under the CDA.

### b. CAIR-Foundation was not a publisher or speaker of information.

The CDA prohibits plaintiffs from treating users of interactive computer services as the publisher or speaker of information provided by another information content provider. 47 U.S.C. § 230(c)(1). The CDA defines "information content provider" as a person or entity "responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." 47 U.S.C. § 230(f)(3). Notably, "[t]here may be several information content providers of a single piece of content, each responsible for its creation or development in part. *McCall,* 2023 WL 3946827 at

---

[4] ABOUT INSTAGRAM, https://help.instagram.com/424737657584573 (last visited July 14, 2025).

*2. Thus, sharing or re-posting allegedly defamatory content provided by another does not preclude immunity under the CDA. *Roca Labs, Inc. v. Consumer Opinion Corp.*, 140 F. Supp. 3d 1311, 1320 (M.D. Fla. 2015). A user is not entitled to CDA immunity, however, if the user materially contributes to the content's alleged unlawfulness (*i.e.*, where "the content was not truly provided by 'another'"). *Tanisha Systems, Inc.,* 2015 WL 10550967 at *9; *see also Fair Housing Council of San Fernando Valley v. Roomates.com, LLC,* 521 F.3d 1157, 1167–68 (9th Cir. 2008)). As the Court observed in *US Dominion, Inc. v. Byrne*, "while [the CDA] may provide immunity for someone who merely shares a link on Twitter, it does not immunize someone for making additional remarks that are allegedly defamatory." 600 F.Supp.3d 24, 36 (2022) (internal citations omitted).

Here, the only factual allegations in Plaintiff's Amended Complaint that reference CAIR-Foundation claim that it "published the WSB-TV Segment" and "collaborated" with CAIR-GA on the IG Post to "further disseminate false and defamatory statements". (Doc. 22, ¶¶ 123, 148, 171). To put a finer point on it, Plaintiff acknowledges that the allegedly defamatory content in the IG Post was provided by third parties and *not* by CAIR-Foundation.[5] (*Id.*, ¶¶ 123, 148(a), 171).

---

[5]     To the extent Plaintiff attempts to hold CAIR-Foundation responsible for the content in the Email Template and Phone Script, such argument also fails. First, CAIR-Foundation did not comment, link, or otherwise provide the Email Template and Phone Script in the IG Post and Plaintiff admits that the Email Template and Phone Script were generated in January 2025 and initially circulated by other

Yet, Plaintiff seeks to hold CAIR-Foundation responsible for Defendant Mohammed's statements in the *Democracy Now!* interview as replayed in the WSB-TV Segment, which was originally broadcasted by WSB-TV. (*Id.*, ¶ 123). Even accepting the allegations as pled, there is no support for a finding that CAIR-Foundation materially contributed to the IG Post such that it could reasonably be categorized as an information content provider rather than a user of an interactive computer service. Thus, protection under the CDA is triggered because Plaintiff's claims against CAIR-Foundation are based solely on Plaintiff's assertion that it published or disseminated allegedly defamatory statements made by third parties. Consequently, Plaintiff's claims against CAIR-Foundation should be dismissed.

2. Plaintiff's Defamation *Per Se* Claim Is Based on Slander, Which Fails Against CAIR-Foundation.

Plaintiff's defamation *per se* claim is asserted pursuant to O.C.G.A. § 51-5-4, which provides a cause of action for slander or oral defamation. (*Id.*, p. 74); O.C.G.A. § 51-5-4(a). The essence of a claim for slander is *oral* defamation. (*Id.*) (*Compare to* O.C.G.A. § 51-5-1, which established the separate and distinct claim of libel, which are defamatory statements expressed in print, writing, pictures, or signs). Plaintiff appears to appreciate this difference and actually highlights it in his Amended Complaint. (Doc. 22, ¶ 139) ("Georgia courts have held that the legal

---

independent entities. (Doc. 22, ¶¶ 84-85, 171). Thus, any re-sharing of the Email Template or Phone Script within the comments to the IG Post likewise falls within the protection of the CDA because they were generated by other content providers.

standard for slander per se applies equally to libel per se.")). Yet, Plaintiff did not assert a claim for libel, but instead referenced only the slander statute. (*Id.*, generally). Plaintiff's only allegation against CAIR-Foundation as to this count is that it "collaborated" on Instagram "through joint social media posts." (*Id.*, ¶ 148). Plaintiff does not claim that CAIR-Foundation made any oral statements, let alone any defamatory oral statements, regarding Plaintiff. Instead, the sole allegation is that CAIR-Foundation collaborated on a social media post that contained allegedly defamatory comments made and originally published by other actors. (*Id.*).

Beyond this threshold error, Plaintiff's claim for defamation *per se* also fails against CAIR-Foundation because Plaintiff failed to identify any portion of the IG Post as being calculated to injure Plaintiff with respect to his trade, office, or profession. (*See generally* Doc. 22 at Count I); O.C.G.A. § 51-5-4(c). Nor did Plaintiff allege any specific harm to Plaintiff flowing naturally from the IG Post. O.C.G.A. § 51-5-4(d). Because Plaintiff failed to plead the elements of defamation *per se* and defamation as to CAIR-Foundation, Count I should be dismissed.

3. <u>Plaintiff Was A Limited Public Figure and Has Not Shown Actual Malice.</u>

Where a plaintiff voluntarily injects himself into a public controversy, he becomes "a public figure for a limited range of issues," and public figures must prove actual malice to establish liability where the alleged defamatory material "involves issues of legitimate public concern." *Little v. Breland*, 93 F.3d 755, 757

(11th Cir. 1996) (*citing Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 343 (1974) and *Silvester v. Am. Broad. Co.*, 829 F.2d 1491, 1493 (11th Cir. 1988)). The Eleventh Circuit employs a three part test to determine whether a plaintiff is a limited public figure: "(1) isolat[ing] the public controversy, (2) examin[ing] the plaintiff's involvement in the controversy, and (2) determin[ing] whether the alleged defamation was germane to the plaintiff's participation in the controversy." *Silvester*, 829 F.2d at 1494 (internal citations omitted). The Eleventh Circuit reasoned that "[i]f the issue was being debated publicly and if it had foreseeable and substantial ramifications for nonparticipants, it was a public controversy." *Id.* at 1495.

In an opinion article Plaintiff penned titled "An Ongoing Quest to Serve," Plaintiff highlighted the public significance of the Israeli-Palestinian conflict and "stressed the vital importance of Israel's existence for the survival of the Jewish people, asserting that even from abroad, the influence of the State of Israel is profoundly felt." (Doc. 22, ¶ 34). By writing the op-ed, which was published by the *Times of Israel*, Plaintiff injected himself into that exact public controversy. (*See* Doc. 22, ¶ 31 at note 4). Plaintiff's article "highlighted the profound and far-reaching impact of the October 7 attacks on Jewish communities worldwide" and contextualized his service in the Israeli Defense Forces as his attempt to "support [Israel] in its time of need." (Doc. 22, ¶¶ 32, 34).

According to Plaintiff, Plaintiff's service in the IDF provided the background for the Statement. (Doc. 22, ¶¶ 35, 36, and 47 ("[U]pon information and belief, Mohammad only became aware of the Plaintiff's service in the IDF through his op-ed in the *Times of Israel*.")). Thus, the alleged defamatory statements Plaintiff attempts to ascribe to CAIR-Foundation derive directly from Plaintiff's participation in the Israeli-Palestinian conflict and his choice to publish the op-ed about that participation. Therefore, Plaintiff is a limited purpose public figure regarding the Israeli-Palestinian conflict, and he must prove actual malice as to CAIR-Foundation. *Little v. Breland*, 93 F.3d 755, 757 (11th Cir. 1996).

To show that CAIR-Foundation acted with "actual malice" by collaborating on the IG Post, Plaintiff must show that it acted with knowledge that the Statement was false or with reckless disregard of whether it was false. *New York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964). Yet, it is unclear how Plaintiff could disprove that genocide in Gaza has occurred, as Plaintiff simply concludes that "Defendants either knew these statements were false or acted with a high degree of awareness of their probable falsity."[6] (Doc. 22, ¶ 156). Because he failed to plead any facts to allow the Court to draw a reasonable inference that CAIR-Foundation acted with actual malice, Plaintiff's claims against CAIR-Foundation should be dismissed.

4. <u>Plaintiff's False Light Claim Fails Because CAIR-Foundation Did Not</u>

---

[6]    As outlined in Section D., Plaintiff failed to distinguish which defendant(s) knew the statements were false or acted with reckless disregard as to falsity.

<u>Attribute Specific Conduct or Views to Plaintiff In An Objectively Highly-Offensive Way.</u>

Plaintiff's claim for false light against CAIR-Foundation is unsupported and meritless. To sustain a false light claim in Georgia, a plaintiff must show that the defendant "knowingly or recklessly published falsehoods about him or her and, as a result, placed him or her in a false light which would be highly offensive to a reasonable person." *Smith v. Stewart,* 660 S.E.2d 822, 834 (Ga. Ct. App. 2008) (citing *Thomason v. Times-Journal,* 379 S.E.2d 551, 554 (Ga. Ct. App. 1989)). The baselessness of Plaintiff's false light claim is belied by the fact that CAIR-Foundation (or the IG Post) is not even mentioned in Count II of Plaintiff's Amended Complaint. Because Plaintiff failed to allege any conduct of CAIR-Foundation to support his false light claim, this claim is necessarily fails.

**F. Because Plaintiff's Claims for Defamation *Per Se* and False Light Invasion of Privacy Fail, Plaintiff's Claim for Civil Conspiracy Fails As a Matter of Law.**

To maintain a claim for civil conspiracy under Georgia law, a plaintiff must show that "two or more persons, acting in concert, engaged in conduct that constitutes a tort." *Mustaqeem-Graydon v. SunTrust Bank*, 573 S.E.2d 455, 461 (Ga. Ct. App. 2002). "Absent the underlying tort, there can be no liability for civil conspiracy." *O'Neal v. Home Town Bank of Villa Rica*, 514 S.E.2d 669, 675 (Ga. Ct. App. 1999); *see also Ray v. Atkins*, 421 S.E.2d 317, 321 (Ga. Ct. App. 1992) ("The gravamen of any civil conspiracy claim is not the alleged collusion, but

tortious conduct committed against the plaintiff which proximately causes an injury.")

As discussed above, Plaintiff's claim on this Count as to CAIR-Foundation is woefully deficient and constitutes a shotgun pleading. In fact, of the 15 paragraphs enumerated under this Count, only Paragraph 171 contains any individual reference to CAIR-Foundation (as "CAIR National"). (Doc. 22, ¶¶ 162 – 176). Even the language of Paragraph 171 is insufficient to state a claim against CAIR-Foundation, as it concedes that the allegedly defamatory materials that were disseminated online were content created by other independent entities, not CAIR-Foundation – specifically, "direct quotations from Mohammad" and the "Email Template and Phone Script." (*Id.*, ¶ 171). Further, as is made obvious by the screenshot of the IG Post referenced in this paragraph, CAIR-Foundation did not create the post, did not comment on the post, and did not provide any additional information that could be construed as defamatory against Plaintiff. (*Id.*, ¶ 124). Instead, it was merely tagged as a collaborator on a post that consisted exclusively of a non-defamatory introduction and a republication of a news story created by an independent entity.

Further, Plaintiff's claim for civil conspiracy against CAIR-Foundation is precluded by the CDA because it treats CAIR-Foundation as the publisher or speaker of the information contained in the WSB-TV Segment, which is not

supported by the allegations pled. Because the CDA precludes liability on Plaintiff's defamation *per se* and false light claims against CAIR-Foundation, there is no underlying tort and Plaintiff's claim for civil conspiracy against CAIR-Foundation also necessarily fails as a matter of law.

## G. Because Plaintiff Failed to Assert Any Cause of Action Against CAIR-Foundation Under 42 U.S.C. § 1985(3), Dismissal of Count IV is Proper.

It is unclear from the face of the Amended Complaint whether Count IV is asserted against CAIR-Foundation and, if so, what alleged actions or omissions could subject CAIR-Foundation to liability under 42 U.S.C. § 1985(3). Instead, every allegation asserted under Count IV references "Defendants" without specifying the direct actions or inactions of each Defendant that would establish a claim under 42 U.S.C. § 1985(3). (Doc. 22, ¶¶177 – 190). This is the epitome of a shotgun pleading which warrants dismissal as to CAIR-Foundation.

Even if the limited allegations enumerated in the other sections of Plaintiff's Amended Complaint pertaining to CAIR-Foundation were deemed sufficient to overcome the shotgun pleading argument, it still fails to establish a viable claim because Plaintiff failed to allege sufficient facts to establish the elements of his civil rights claim. Instead, Plaintiff's claim under 42 U.S.C. § 1985(3) fails because (1) the alleged conspiracy does not involve a state actor (*see United Bhd. Of Carpenters & Joiners, Local 610 v. Scott*, 463 U.S. 825. 830 (1983)); (2) the Amended Complaint does not identify a constitutionally protected right as a

predicate for Plaintiff's § 1985(3) claim (*see Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 377–78 (1979)); and (3) no racial or class-based discriminatory animus motivated defendants because religious beliefs, national identity, and political beliefs are not protected classes under § 1985(3) (*see Fiske v. Lockheed-Georgia Co., Div. of Lockheed Corp.*, 568 F. Supp. 590 (N.D. Ga. 1983); S*mith v. Turner*, 764 F. Supp. 632, 1991 U.S. Dist. LEXIS 7131 (N.D. Ga. 1991); and *Word of Faith World Outreach Ctr. Church v. Sawyer*, 90 F.3d 118 (5th Cir. 1996), cert. denied, 520 U.S. 1117 (1997)). For these reasons, CAIR-Foundation joins in and adopts the arguments related to Count IV as briefed by CAIR-GA on pages 16 – 22 of its brief. (Doc. 41-1, pp. 16 – 22).

Moreover, Plaintiff failed to establish how CAIR-Foundation's collaboration on the IG Post constituted its conspiracy to interfere with Plaintiff's civil rights. Namely, it does not include any factual allegations specific to CAIR-Foundation regarding who it allegedly conspired with and what specific acts it undertook to participate in and further the alleged conspiracy. What it does include, however, are allegations that are completely unrelated to anything contained within the IG Post, which, of course, cannot be attributable to CAIR-Foundation. (*Id.*, *e.g.* ¶ 181 (referencing false claims of participation in war crimes); ¶ 182 (referencing false claims of racism and apartheid); ¶ 183 (the alleged framing of Zionism as a "colonial, racialized ideology"); ¶ 185 ("publishing knowingly false and

defamatory statements…")). Furthermore, even a cursory review shows that the IG Post – which is the only communication of any kind that Plaintiff alleges CAIR-Foundation had involvement with – demonstrates that its purpose was not to defame, conspire against, or otherwise harm Plaintiff. Instead, its focus was to raise awareness and support for the reinstatement of Defendant Mohammad as a student at Emory. (*Id.*, screenshot included in ¶ 124). Simply put, there is nothing about the IG Post that could arguably be construed to constitute any kind of infringement of Plaintiff's civil rights, even if his claim was properly pled – which is precisely why this Court should dismiss this claim as well.

**H. Injunctive Relief Is Not An Appropriate Remedy.**

A prior restraint on expression (*i.e.*, a restraint enacted before the expression occurs) carries a "heavy presumption against its constitutional validity." *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963). "The special vice of a prior restraint is that communication will be suppressed . . . before an adequate determination that it is unprotected by the First Amendment." *Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations*, 413 U.S. 376, 390 (1973). Here, Plaintiff asks this Court to "[g]rant injunctive relief enjoining Defendants and anyone acting in privity with the Defendants from further engaging in the torts of defamation and false light." (Doc. 22, at "Prayer for Relief"). Such an injunction would impermissibly restrain potentially protected speech. A request for such

extreme relief further underscores the fact that Plaintiff's lawsuit is brought not to vindicate Plaintiff's rights, but to impede and deter CAIR-Foundation's exercise of its constitutional right to free speech.

### III. CONCLUSION

Plaintiff's claims against CAIR-Foundation should be dismissed because they seek to impermissibly infringe on CAIR-Foundation's freedom of speech. Plaintiff's claims are precluded by the CDA as to CAIR-Foundation and are improper under Georgia's anti-SLAPP statute. Moreover, the only alleged liability of CAIR-Foundation arises from the re-sharing of content provided by third parties, which constitute opinion-based, political speech protected by the First Amendment. Further, Plaintiff failed to allege any facts to support an inference that CAIR-Foundation acted with actual malice to support Plaintiff's claims for false light or liability under 42 U.S.C. § 1985(3) against CAIR-Foundation. For all the reasons set forth above, Defendant CAIR-Foundation, Inc. respectfully requests that the Court grant its Motion and dismiss all claims against CAIR-Foundation with prejudice, and award CAIR-Foundation its attorney's fees and litigation expenses pursuant to O.C.G.A. § 9-11-11.1(b).

Respectfully submitted this 22nd day of July, 2025.

SWIFT, CURRIE, McGHEE & HIERS

By:    */s/ Kori E. Wagner*
          Kori E. Wagner

25

Georgia State Bar No. 155438
Mollie W. Amick
Georgia State Bar No. 406371
***Attorneys for Defendant CAIR-Foundation, Inc.***

1420 Peachtree Street, N.E.
Suite 800
Atlanta, Georgia  30309
Tel:  404.874.8800
Fax:  470.600.5990
kori.wagner@swiftcurrie.com
molliebeth.amick@swiftcurrie.com

## <u>LOCAL RULE 5.1(C) CERTIFICATION</u>

By signature below, counsel certifies that the foregoing pleading was prepared in Times New Roman, 14-point font in compliance with Local Rule 5.1(C).


SWIFT, CURRIE, McGHEE & HIERS

By:    *<u>/s/ Kori E. Wagner</u>*
       Kori E. Wagner
       Georgia State Bar No. 155438
       Mollie W. Amick
       Georgia State Bar No. 406371
       ***Attorneys for Defendant CAIR-Foundation, Inc.***

1420 Peachtree Street, N.E.
Suite 800
Atlanta, Georgia  30309
Tel:  404.874.8800
Fax:  470.600.5990
kori.wagner@swiftcurrie.com
molliebeth.amick@swiftcurrie.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day electronically filed the foregoing **DEFENDANT CAIR-FOUNDATION, INC.'S BRIEF IN SUPPORT OF MOTION TO DISMISS AND MOTION FOR ATTORNEY'S FEES** with the Clerk of Court using the CM/ECF System which will notify counsel of record as follows:

<table>
<tr>
<td>

David Forman Katz
Weissmann Zucker Euster & Katz, P.C.
The Fountains at Piedmont Center
3495 Piedmont Road
Building 11, Suite 950
Atlanta, GA 30305
dkatz@wzlegal.com
*Attorney for Plaintiff*

</td>
<td>

Lauren Israelovitch
Mark Goldfeder
Ben Schlager
National Jewish Advocacy Center, Inc.
3 Times Square
New York, NY 10036
lauren@njaclaw.org
*Attorneys for Plaintiff*

</td>
</tr>
<tr>
<td>

Esther Panitch
The Panitch Law Group, PC
Suite 205
4243 Dunwoody Club Drive
Atlanta, GA 30350
esther@panitchivory.com
*Attorney for Plaintiff*

</td>
<td>

Amanda Hyland
Austin C. Vining
Buchalter, A Professional Corporation
3475 Piedmont Road NE
Suite 1100
Atlanta, GA 30339
ahyland@buchalter.com
avining@buchalter.com
*Attorneys for Defendant CAIR-Georgia*

</td>
</tr>
</table>

I further certify that I have this day served the foregoing **DEFENDANT CAIR-FOUNDATION, INC.'S BRIEF IN SUPPORT OF MOTION TO**

**DISMISS AND MOTION FOR ATTORNEY'S FEES** via U.S. Mail upon the

following parties:

Defendant Umaymah Mohammed
c/o Jonathan Wallace
P.O. Box #728
Amagansett, NY 11930

Defendant Rupa Marya
c/o Jonathan Wallace
P.O. Box #728
Amagansett, NY 11930

Defendant AJP Educational
Foundation, Inc.
c/o Registered Agent Osama Abu
Irshaid
6404 Seven Corners Pl, Suite N
Falls Church, VA 22044

Defendant Sean Eren as Representative
of National Students for Justice in
Palestine
710 Riverside Drive, Apt. 2C
New York, NY 10031

Defendant Ibrahim Jouja as
Representative of Emory Students for
Justice in Palestine
6301 Glen Hill Road
Louisville, KY 40222

Defendant Doctors Against Genocide
Society
c/o Registered Agent Nidal Jboor
25614 Ford Road
Dearborn Heights, MI 48127

Defendant WESPAC Foundation, Inc.
77 Tarrytown Road, Suite 2W
White Plains, NY 10607

This 22nd day of July, 2025.

SWIFT, CURRIE, McGHEE & HIERS

By:    */s/ Kori E. Wagner*
Kori E. Wagner
Georgia State Bar No. 155438
Mollie W. Amick
Georgia State Bar No. 406371
***Attorneys for Defendant CAIR-
Foundation, Inc.***

1420 Peachtree Street, N.E.
Suite 800
Atlanta, Georgia  30309
Tel:   404.874.8800
Fax:  470.600.5990
kori.wagner@swiftcurrie.com
molliebeth.amick@swiftcurrie.com