## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

Joshua Winer,

       Plaintiff,

v.

Umaymah Mohammad, AJP Educational
Foundation, Inc. A/K/A American Muslims
for Palestine, WESPAC Foundation, Inc.,
Sean Eren as the representative of National
Students for Justice in Palestine, Doctors
Against Genocide Society, CAIR-Nga Inc.
A/K/A CAIR-Georgia, CAIR Foundation
Inc., A/K/A Council on Islamic Relations or
CAIR, Rupa Marya, Ibrahim Jouja as
representative of Emory Students for
Justice in Palestine.

       Defendants.

Case No. 1:25-CV-02329

## DEFENDANT CAIR-NGA, INC.'S REPLY IN SUPPORT OF ITS
## MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

Defendant CAIR-Nga, Inc., A/K/A CAIR-Georgia ("CAIR-Georgia"), hereby

files this Reply in Support of its Motion to Dismiss Plaintiff's First Amended

Complaint (Dkt. 40), and in response to the arguments set forth in Plaintiff Joshua

Winer's Opposition Brief ("Opp." or "Opposition") (Dkt. 60).

### INTRODUCTION

Dr. Winer's Opposition is based, almost entirely, on law that does not exist,

applied to facts that do not exist. The analysis of his reputational claims cannot be

based on manufactured statements that Defendants never actually made. Similarly, the

analysis of his claims must be based on actual law, not legal theories that he invented, many of which contradict Supreme Court precedent. As set forth fully in CAIR-Georgia's Motion to Dismiss, the claims against CAIR-Georgia fail as a matter of law.

### A. The statements were made about a matter of public concern.

Dr. Winer asserts that this is not a case involving a matter of public concern. Specifically, he states:

> CAIR-Georgia may wish to relitigate the Israel-Hamas war, but this case is about something more specific: the false and defamatory statements it made about Dr. Winer. The First Amendment does not grant blanket immunity to speakers who wrap defamatory accusations in the language of political advocacy. . . .CAIR-GA did not simply comment on Israeli policy or debate whether the IDF's action in Gaza constitute genocide. It specifically and repeatedly accused Dr. Winer . . . of personally committing war crimes . . .

Opp. at 9. In short, Dr. Winer argues that a speaker loses protection for political speech if the speech references a person, rather than broad political issues. But politics cannot be divorced from its participants, and no law suggests otherwise. Indeed, the case cited by Dr. Winer, *Snyder v. Phelps,* makes clear that "[s]peech deals with matters of public concern when it can 'be fairly considered as relating to any matter of political, social, or other concern to the community," or "when it 'is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public,'" 562 U.S. 443, 453 (2011).[1] This standard does not

---

[1] As noted in Dr. Winer's opposition, CAIR-Georgia inadvertently cited this quote from *Snyder v. Phelps* with an "*Id.*" citation that referred to *Philadelphia Newspapers v. Hepps.* This citation error is of no material significance, as the quote used in the brief is good law from the U.S. Supreme Court, and is correctly cited herein.

provide an exception for "statements about individual people." Indeed, if such an exemption existed, the higher standard for public interest speech essentially would be nullified, as the overwhelming majority of defamation cases that invoke this standard concern a statement made about an individual plaintiff.

Here, the matter of public concern is not only the massive civilian casualties in Gaza, but the story behind how it happened, who is responsible for the deaths, and the impact it has had on our local community. Dr. Winer fits squarely into this story, as a prominent professor and physician who chose to join the IDF, chose to publicize his IDF combat service, and chose to return to teaching his medical students, including those of Palestinian descent. Dr. Winer's story is one of immense political and social concern in Atlanta, and one of legitimate news interest, placing all speech on this issue squarely within the "public concern" test set forth in *Snyder.*

### B. The statements at issue were opinion.

#### 1. Correct facts are required

Dr. Winer's opposition brief is replete with misstatements of fact that contradict his Amended Complaint. In at least eleven instances, the Opposition describes statements as though those statements were actually made by Defendants and at issue in this lawsuit, when no such statements are alleged in the Amended Complaint. The below table identifies the statements alleged in the Opposition that were not alleged against CAIR-Georgia in the Amended Complaint.

| |
|---|
| CAIR-Georgia accused Dr. Winer of "personally committing war crimes." Opp. at 9. |

| |
|---|
| CAIR-GA accused Dr. Winer of "murdering civilians and healthcare workers." Opp. at 9–10. |
| "Dr. Winer has actively engaged in genocide" Opp. at 10. |
| Dr. Winer "may have shot a six year old." Opp. at 10. |
| Dr. Winer "helped decide to bomb a hospital." Opp. at 10. |
| Dr. Winer "celebrated acts of murder." Opp. at 10. |
| "CAIR-Georgia issued or republished a statement falsely accusing Dr. Winer of engaging or participating in genocide, in war crimes, or the murder of civilians." Opp. at 11. |
| "[W]hat forms the basis of this case is the campaign . . . to accuse him personally of war crimes and genocide." Opp. at 11–12. |
| "Calling someone a 'genocidal war criminal' is not a matter of subjective interpretation." Opp. at 12. |
| The "specific and inflammatory accusations at issue here [are] that Dr. Winer personally shot a child, helped bomb a hospital, or celebrated murder." Opp. at 13. |
| "Dr. Winer personally engaged in the slaughter of civilians, the destruction of hospitals, and the murder of children." Opp. at 16. |

To be clear, contrary to the assertions in Dr. Winer's opposition brief, Ms. Mohammad's actual statements asserted against CAIR-Georgia (as set forth in the Amended Complaint) do not directly accuse Dr. Winer of committing the atrocities done by the IDF. Her statements made very clear that it was Dr. Winer's voluntary participation in the Israeli army that (1) indicates his moral support for the acts done by the IDF, and (2) renders it entirely possible that he may have participated in the acts done by the army he joined. Dr. Winer's manufactured statements wholly ignore the context of Ms. Mohammad's statements and rewrite them to constitute direct, factual assertions that simply did not occur.

## 2. Dr. Winer attempts to narrow the scope of opinion protection without factual or legal support.

As discussed *supra*, Dr. Winer asks this Court, on the basis of no authority, to limit the constitutional burden-of-proof protections for public-concern speech to speech that does not involve an identifiable person. He also asks the Court to impose the same limitation on the constitutional protection for opinion. He states:

> Dr. Winer does not seek to prevent anyone from expressing political opinions about Israel, the IDF, or the conflict in Gaza. Mohammad, CAIR-Georgia and their co-defendants are free to express their personal beliefs about Israeli policy, military operations, and geopolitical issues. What Dr. Winer challenges—and what forms the basis of this case—is the coordinated campaign . . . to accuse him personally of war crimes and genocide
>
> . . .
>
> Calling someone a "genocidal war criminal" is not a matter of subjective interpretation. It is a grave factual allegation—one that falsely imputes criminal conduct punishable under both international and domestic law. The truth or falsity of that charge can be established through evidence, which makes it actionable.

Opp. at 11-13.

The essence of Dr. Winer's argument is that Americans are entitled to speak their opinion about *issues,* but there is no protection for opinions about *people.* Dr. Winer provides no legal support for this argument because none exists. Indeed, *Gertz v. Welch,* the Supreme Court case holding that an opinion cannot be libel, concerned statements made about an individual named Elmer Gertz—a person, not a topic. 418 U.S. 323, 325 (1974).

This argument also relies heavily on Dr. Winer's mischaracterization of the statements at issue in this lawsuit. No statement attributed to CAIR-Georgia has

"accuse[d] him personally of war crimes and genocide." Nor does any statement Dr. Winer attributed to CAIR-Georgia refer to him as a "genocidal war criminal." Dr. Winer's brief used these altered statements, along with the many others provided in the table (*supra* at 3–4) devoid of context, so that the statements would appear to resemble statements of fact, when the actual statements (identified on pages 10–11 of CAIR-Georgia's brief) did not.

Oddly, Dr. Winer also argues that he is not a public figure. Opp. at 12. While it could certainly be argued that Dr. Winer is a limited-purpose public figure based on his globally distributed editorial, CAIR-Georgia did not make this argument in its Motion to Dismiss, and cannot decipher why Dr. Winer made this argument in his Opposition or what relevance it bears on whether CAIR-Georgia's statements are protected opinion.

Dr. Winer then asserts that the *Gurmessa v. Genocide Prevention in Ethiopia, Inc.,*[2] case is irrelevant because (1) it was written by an out-of-state magistrate judge, and (2) it concerned an accusation of *supporting* genocide, whereas the present case concerns accusation of *aiding in* an army that committed genocide.  Opp. at 12-13. Dr. Winer misses the point.

*Gurmessa* was not cited as binding precedent, but for the helpful analysis offered by another Court tasked with the identical, niche question of whether the word "genocide" was a factual term. The *Gurmessa* opinion followed the same

_____

[2] 2024 U.S. Dist. LEXIS 141596 (D. Del. Aug. 8, 2024) (*adopted in relevant part at Gurmessa v. Genocide Prevention in Ethiopia, Inc.,* 2024 U.S. Dist. LEXIS 197686, at \*4 (D. Del. Sep. 11, 2024).

reasoning CAIR-Georgia asserts here, finding that the term "genocide" was "an amorphous phrase," "not objectively verifiable as true or false." *Id.* at * 17. CAIR-Georgia did not assert that the *facts* were identical; rather it asserted that the *reasoning* was persuasive and on point.

Finally, Dr. Winer mistakenly conflates criminal liability for genocide with the general political accusation of genocide. Opp. at 13–14. He argues that even if the IDF were to be found guilty of genocide, that "such a finding would not, under either international or domestic law, impute criminal liability to every individual soldier within that force," as individual culpability is required by various international courts. Opp. at 13. But the question here is not whether Dr. Winer has been personally convicted of genocide. The question posed by Ms. Mohammad and CAIR-Georgia is whether it is ethical for a medical doctor and professor to continue teaching after his self-publicized participation and combat in an army that has been widely accused of genocide, including by Amnesty International and the United Nations.[3]

No criminal conviction is necessary for such a public debate to be constitutionally protected. Indeed, it is alarming to imagine the consequences of requiring a conviction before attaching constitutional protection to public debate on high-profile criminal accusations. One obvious example is the indictment issued by

---

[3] *See* Dkt. 41-3 and 41-4; *see also* www.timesofisrael.com/with-broken-heart-author-david-grossman-calls-israeli-actions-in-gaza-genocide. In an article dated August 1, 2025, the *Times of Israel* published an article noting that award-winning Israeli author David Grossman stated that due to the "images [he has] seen and talking to people who were there" with that he "can't help but use the term [genocide]," with the Palestinian death toll at 60,034.

the Manhattan District Attorney's office against Donald Trump in 2023, alleging falsification of business records. It appears to be Dr. Winer's position that the press should not have opined on how those pending criminal charges impacted the fitness for office of a man who was actively campaigning to be president, unless and until he was actually convicted. Our protections for opinion and political speech exist *precisely* for situations like that one, and like the present case as well, such that the press and public are not required to wait for a criminal conviction to debate the implications of the accusation itself.

### 3. The statements "inferring racism" are protected opinion

Dr. Winer asserts that Ms. Mohammad made a provably false statement of fact by asserting that Dr. Winer's participation in the IDF "made students and patients of color feel unsafe." Opp. at 16. For the sake of clarity and context, the actual statement made by Ms. Mohammed was as follows:

> . . . I have been suspended for a year from medical school after being subjected to a six-month unjust conduct process. They disciplined me for exposing Emory's complicity in the destruction of Gaza in an interview where I mentioned an unnamed physician who served in the military, actively engaged in the genocidal campaign against the Palestinian people. . . . Having a physician faculty member who participated in a military convicted of committing genocide against Palestinians makes me feel unsafe. It makes black and brown medical students feel unsafe. It makes black and brown indigenous patients feel unsafe. . .

Amended Complaint ¶ 61. In his Amended Complaint, Dr. Winer asserted that the statements regarding students and patients feeling unsafe was actionable because it "implie[d] that Plaintiff is a racist." *Id.* ¶ 63. In his Opposition, he asserts that the

statement relies on false claims "that Dr. Winer personally engaged in the slaughter of civilians, the destruction of hospitals, and the murder of children." Opp. at 16. He states that "[f]rom these invented facts, they then declared that Dr. Winer made students and patients of color feel unsafe." *Id.*

The problem, again, is that the statements referenced by Dr. Winer are not real. Neither Ms. Mohammad nor CAIR-Georgia ever stated that Dr. Winer "personally engaged in the slaughter of civilians, the destruction of hospitals, and the murder of children." *See* Chart at Dkt. 14-1 pp. 10–11. The context of Defendants' statements makes clear that *true* facts regarding Dr. Winer's IDF service were disclosed, forming the basis of the opinion that Dr. Winer's IDF service made students and patients feel unsafe. Dr. Winer cannot credibly rebut CAIR-Georgia's argument by inventing statements Defendants did not make and ignoring the context of their actual statements.

Moreover, as set forth fully in CAIR-Georgia's Motion to Dismiss, allegations of racism are not capable of being proven true or false, as supported by at least four courts that considered the matter. *See* Dkt. 14-1 at 14. Dr. Winer alleges that *Bryant v. Cox Enterprises, Inc.,* 311 Ga.App. 230, 235 (2011) holds that "a statement accusing the plaintiff of racism could be actionable where it implies a factual predicate capable of being proven false." Opp. at 15. Yet *Bryant* did not involve any accusation of racism, but concerned the media coverage of Richard Jewell, a Caucasian man who was wrongly identified as a suspect in the 1996 Centennial

Olympic Park bombing. The citation's parenthetical is wholly unsupported by the actual case.[4]

### C. The False Light claim fails because it is based on protected opinion.

As set forth in CAIR-Georgia' Motion to Dismiss, Dr. Winer's claim for false light is predicated on the same statements of protected opinion that form the basis of his libel claim. Dr. Winer has not presented any persuasive argument that the at-issue statements were not statements of opinion, and therefore his false light claim fails. *S & W Seafoods Co. v. Jacor Broad. of Atlanta,* 194 Ga. App. 233, 237 (1989) ("[A] constitutionally privileged statement of opinion cannot form the basis of a claim for invasion of privacy by placing a person in a false light."). To the extent Dr. Winer argues that the "mere opinion" defense is "legally untenable and should be rejected outright" (Opp. at 18), such argument ignores the law that statements of opinion cannot form the basis of a false light claim.

### D. The Conspiracy claim fails because the underlying claims fail.

As set forth in CAIR-Georgia' Motion to Dismiss, Dr. Winer's claim for conspiracy is predicated on the same statements of protected opinion that form the basis of his libel claim. Because Plaintiff's underlying tort claims against CAIR-Georgia fail, his claim that they conspired to commit those torts also fails. *Mustaqeem–Graydon v. SunTrust Bank*, 258 Ga. App. 200, 207 (2002) ("Absent the underlying tort, there can be no liability for civil conspiracy.").

### A.    Dr. Winer Failed to State a Claim Under 42 U.S.C. § 1985(3).

Dr. Winer's Amended Complaint fails to state a claim under § 1985(3) for

---

[4] *See infra* footnotes 6-8.

two reasons: (1) he has not and cannot identify any right protected against private impairment to serve as the basis of his claim; and (2) he has not and cannot properly allege racial animus. Either deficiency alone is fatal, and Dr. Winer's inability to allege either underscores the frivolity of the claim. As such, Count IV must be dismissed.

### 1. Dr. Winer cannot identify any right protected against private impairment to serve as the basis of his claim

Dr. Winer has again failed to identify *any* federal rights protected against private encroachment. Instead, he alleges that Defendants conspired "to exclude him from civic and professional life by falsely accusing him of atrocities, pressuring his employer to terminate him, and rendering him unemployable in academic medicine."[5] Dr. Winer then asserts:

> In *Griffin v. Breckenridge*, 403 U.S. 88 (1971), the Supreme Court recognized that § 1985(3) provides a remedy against private conspiracies designed to "deprive directly or indirectly any person or class of persons of the equal protection of the laws." *Id.* at 101. The Court emphasized that § 1985(3) was passed in part to guard against conspiracies "aimed at wholly excluding any class of persons from the equal enjoyment of rights secured by law." *Id.* at 102. In other words, § 1985(3) protects against conspiratorial efforts to deny targeted individuals meaningful access to the benefits and privileges of civil life, including employment, reputation, and standing in the community.

Opp. at 21–22.[6]

_____

[5] Dr. Winer has abandoned his claims that his rights to free speech and association can form the basis for his § 1985(3) claim. Opp. at 23.

[6] CAIR-GA notes that the purported quotations in this paragraph cannot be found in *Griffin.* Hallucinated quotes and non-existent holdings are typically attributable to use of artificial intelligence. *See, e.g., Marion v. Hollis Cobb Assocs., Inc.*, Civil Action No. 1:24-CV-2582-MLB-JCF, 2025 U.S. Dist. LEXIS 27189, at *14 (N.D.

Both Dr. Winer's conclusion and reliance on *Griffin* are wrong. The *Griffin* Court was presented with the narrow question of whether the right to interstate travel could form the basis of a § 1985(3) claim. The *Griffin* Court did not expand the scope of rights protectable by § 1985(3) to the novel and nebulous rights Dr. Winer asserts.

Following *Griffin,* the Eleventh Circuit held that where "the alleged § 1985(3) conspirators are private actors," a plaintiff may only recover for conspiracies that were "aimed at rights constitutionally protected against private impairment." *Jimenez v. Wellstar Health Sys.*, 596 F.3d 1304, 1312 (11th Cir. 2010) (citations omitted).[7] *Jimenez* expressly requires dismissal of Dr. Winer's claim.

Dr. Winer's attempts to distinguish *Jimenez* fail. In a footnote, Dr. Winer asserts that *Jimenez* contains the quotations "[w]hether a right is protected from private encroachment depends on the right at issue and the context of the case," and "[w]e do not attempt to define here the full scope of § 1985(3)'s reach." Opp. at 22 n.1 (purportedly quoting *Jimenez*, 596 at 1312–13). This language is not only contrary to the substantive holding of *Jimenez*, but the quotations never appear in *Jimenez* or elsewhere.[8]

Indeed*,* the *Jimenez* court <u>affirmed</u> the dismissal of the plaintiff's claims, refusing to extend claims actionable under § 1981 to § 1985(3), including contract or property rights related to employment. *Jimenez*, 596 F.3d at 1312. Thus, rather

---

Ga. Feb. 14, 2025); *Jackson v. Auto-Owners Ins. Co.*, No. 7:24-cv-136-WLS, 2025 U.S. Dist. LEXIS 133070 (M.D. Ga. July 11, 2025).

[7] Dr. Winer acknowledges this point it footnote 1 of its Opposition, p. 22. However, the quote, and indeed all three quotes in Plaintiff's footnote 1, appear to be hallucinated.

[8] *See supra* footnotes 6–7.

than support Dr. Winer's position, the actual text of *Jimenez* bolsters CAIR-Georgia's argument. The Eleventh Circuit's reasoning was based on Title VII's inapplicability to § 1985(3) claims and emphasized that "the Supreme Court has been conservative in designating which rights litigants may enforce against private actors under § 1985(3) . . . ." *Id.* at 1312.

Dr. Winer has not identified any constitutionally protected right against private encroachment. To be clear, what he is asking the Court to do is to recognize additional rights capable of forming the basis for a § 1985(3) claim. Dr. Winer has not identified any other case in which the "exclusion from civic and professional life" nor "reputational harm" has formed the basis for a § 1985(3) claim. And for good reason—none exist. For this reason alone, the Court should reject Dr. Winer's invitation to create new law, and it should dismiss Count IV.

## 2.    Dr. Winer cannot properly allege racial animus

CAIR-Georgia does not dispute that Jews are a protected class for the purposes of establishing a claim under § 1985(3). Rather, it disputes that Dr. Winer has properly alleged that invidiously discriminatory animus. The contention that the facts giving rise to this case are a result of Dr. Winer's Jewish identity is belied by the Amended Complaint and Dr. Winer's opposition brief.

The allegations here stem from statements concerning what Dr. Winer has *done*, not who he *is*. The Amended Complaint is replete with references to Defendants' expression of political views[9] and compelling explanations for

---

[9] *See* CAIR-GA's MTD, p. 22, 22 n.1, citing to Amended Complaint ¶¶ 28–30, 40, 75.

Defendants' conduct, namely, Dr. Winer's Zionist beliefs, Israeli citizenship, religious experiences, political affiliations, and—most accurately—his *military service and military affiliation*.[10]

What Dr. Winer attempts to do here is insulate any Jewish person from criticism of their actions *because they are Jewish*. Dr. Winer improperly conflates being Jewish with participation in the IDF. There is nothing in the Amended Complaint to suggest that CAIR-Georgia has criticized any other Jewish person, nor that it would not criticize any non-Jew who participates in the war on Gaza.

In other words, Dr. Winer has failed to properly allege racial animus by (1) offering no support that CAIR-Georgia's actions were based on his racial identity and (2) effectively admitting that CAIR-Georgia's political beliefs and Dr. Winer's participation in Israel's war on Gaza motivated CAIR-Georgia's statements. Accordingly, and for the reasons provided in CAIR-Georgia's arguments raised *supra*, Count IV must be dismissed.

## **CONCLUSION**

Dr. Winer's brief alleges that CAIR-Georgia's motion is "disregarding well-pleaded facts" (Opp. at 1), "ignoring binding legal standards," (*Id.*), "rewriting the context" of the at-issue statements (*Id.* at 16), and "distor[ing[ both the facts and the law" (Opp. at 25). Yet Dr. Winer's Opposition contains no actual support for these assertions, which appear to be defensive projections of his own brief. Indeed, the

---

[10] *See* CAIR-GA's MTD, pp. 23–24, citing to Amended Complaint ¶¶ 179, 181–85, 187.

Opposition Brief relies extensively on the application of non-existent law and manufactured quotations to invented statements and other unalleged facts.

Nothing in Dr. Winer's Opposition casts any actual doubt on the merits of CAIR-Georgia's arguments set forth in its Motion to Dismiss and brief in support of same, and its Motion to Dismiss should be granted in its entirety.

Respectfully submitted this 4th day of August, 2025.

**BUCHALTER APC**

/s/ *Amanda G. Hyland*
Amanda G. Hyland
Georgia Bar No. 325115
Austin C. Vining
Georgia Bar No. 362473
3475 Piedmont Road NE, Ste. 1100
Atlanta, GA 30305
(404) 832-7350 Telephone
ahyland@buchalter.com
avining@buchalter.com

*Attorneys for Defendant CAIR-Georgia*

15

## <u>CERTIFICATE OF COMPLIANCE WITH L.R. 5.1</u>

I HEREBY CERTIFY that the foregoing document was prepared in Times

New Roman, 14-point font, as approved by Local Rule 5.1.

/s/ *Amanda G. Hyland*
Amanda G. Hyland
Georgia Bar No. 325115

*Attorney for Defendant CAIR-Georgia*