**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| JOSHUA WINER, <br><br> Plaintiff, <br><br> v. <br><br> UMAYMAH MOHAMMAD, *et al.*, <br><br> Defendants. | Civil Action File <br> No. 1:25-cv-02329-TWT |

**DEFENDANT AJP EDUCATIONAL FOUNDATION, INC. d/b/a
AMERICAN MUSLIMS FOR PALESTINE'S BRIEF IN SUPPORT OF
<u>MOTION TO DISMISS AND FOR AWARD OF ATTORNEYS' FEES</u>**

## **TABLE OF CONTENTS**

TABLE OF CONTENTS.........................................................................ii

TABLE OF AUTHORITIES ............................................................... iii

I.      INTRODUCTION ........................................................................1

II.     FACTS AND PROCEDURAL HISTORY ...................................1

III.    STANDARDS OF REVIEW........................................................3

        A.      Federal Rule of Civil Procedure 12(b)(2) ...........................3

        B.      Federal Rule of Civil Procedure 12(b)(6) ...........................4

IV.     ARGUMENT................................................................................5

        A.      This Court Lacks Personal Jurisdiction Over AMP .............5

        B.      Plaintiff's Amended Complaint Contains Impermissible Shotgun
                Conclusions ........................................................................8

        C.      Plaintiff Fails to State Substantive Claims Against AMP .................10

                1.      Plaintiff Fails to State a Claim Against AMP for Defamation .10

                        i.      The CDA Bars Liability for Third-Party Comments......12

                        ii.     Plaintiff Cannot Demonstrate Actual Malice ................13

                        iii.    The Statements Have No Defamatory Meaning.............17

                3.      Plaintiff Fails to State a Claim Against AMP for Civil
                        Conspiracy ...............................................................20

                4.      Plaintiff Fails to State a Claim Against AMP for Conspiracy to
                        Interfere With Civil Rights .......................................21

                5.      AMP's Actions Merit First Amendment Protection.................23

                6.      AMP is Entitled to Fees and Costs Under Georgia's Anti-
                        SLAPP Law..............................................................23

V.      CONCLUSION............................................................................24

CERTIFICATE OF COMPLIANCE....................................................26

## TABLE OF AUTHORITIES

### Cases

*Accreditation Comm'n for Educ. in Nursing Data Breach Litig.*
No. 1:23-cv-03337-LMM, 2024 U.S. Dist. LEXIS 242974 (N.D. Ga. July 31,
2024) ........................................................................................................5

*Aero Toy Store, LLC v. Grieves*
631 S.E.2d 734 (Ga. Ct. App. 2006) ....................................................4

*Almeida v. Amazon.com, Inc.*
456 F.3d 1316 (11th Cir. 2006) ..........................................................12

*Am. C. L. Union v. Zeh*
312 Ga. 647 (Ga. 2021) ......................................................................14

*Amerireach.com, LLC v. Walker*
719 S.E.2d 489 (Ga. 2011) ...................................................................7

*Anderson v. Liberty Lobby, Inc.*
477 U.S. 242 (1986) ............................................................................14

*Ashcroft v. Iqbal*
556 U.S. 662 (2009) ..............................................................................4

*Bagby v. Clayton Cnty. Sheriff*
No. 1:24-cv-03439-SDG, 2025 U.S. Dist. LEXIS 59745 (N.D. Ga. Mar. 31,
2025) ......................................................................................................22

*Bailey v. Bd. of Cnty. Comm'rs of Alachua Cnty., Fla.*
956 F.2d 1112 (11th Cir. 1992) ..........................................................21

*Baker v. Joseph*
938 F. Supp. 2d 1265 (S.D. Fla. 2013) ...............................................15

*Bergen v. Martindale-Hubbell*
176 Ga. App. 745 (Ga. 1985) .............................................................17

*Bracewell v. Nicholson Air Servs., Inc.*
680 F.2d 103 (11th Cir. 1982) ..............................................................6

*Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cnty.*
582 U.S. 255 (2017) ..............................................................................4

*Carbone v. Cable News Network, Inc.*
910 F.3d 1345 (11th Cir. 2018) ..........................................................24

*Daimler AG v. Bauman*
    571 U.S. 117 (2014) ...................................................................................3

*Dean v. Warren*
    12 F.4th 1248 (11th Cir. 2021)................................................................22

*Delhoyo v. Stewart Title Guar. Co.*
    No. 1:20-cv-2777-TWT, 2021 U.S. Dist. LEXIS 28934 (N.D. Ga. Feb. 11, 2021)
    ....................................................................................................................1

*Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*
    593 F.3d 1249 (11th Cir. 2010) ................................................................5

*Directory Assistants, Inc. v. Supermedia, LLC*
    884 F. Supp. 2d 446 (E.D. Va. 2012)......................................................13

*Dougherty v. Harvey*
    317 F. Supp. 3d 1287 (N.D. Ga. 2018) .....................................................9

*Erickson v. Pardus*
    551 U.S. 89 (2007) .....................................................................................5

*Fair Gaming Advocs. Ga. Inc. v. VGW Holdings Ltd.*
    No. 1:24-CV-00901-TWT, 2024 U.S. Dist. LEXIS 225626 (N.D. Ga. Dec. 13, 2024)...................................................................................................4, 5

*Fullman v. Graddick*
    739 F.2d 553 (11th Cir. 1984) ................................................................21

*Gertz v. Robert Welch, Inc.*
    418 U.S. 323 (1974) ......................................................................... 15, 17

*Greenbelt Co-op. Pub. Ass'n v. Bresler*
    398 U.S. 6 (1970) .....................................................................................19

*Griffin v. Breckenridge*
    403 U.S. 88 (1971) ...................................................................................22

*Horton v. Gilchrist*
    128 F.4th 1221 (11th Cir. 2025).................................................................1

*Int'l Shoe Co. v. Wash.*
    326 U.S. 310 (1945) ...................................................................................7

*Jaillett v. Ga. Tv Co.*
    238 Ga. App. 885 (Ga. 1999) ..................................................................18

*John E. Reid & Assocs., Inc. v. Netflix, Inc.*
    No. 19 CV 6781, 2020 U.S. Dist. LEXIS 51303 (N.D. Ill. Mar. 23, 2020) .......19

*Little v. Breland*
 93 F.3d 755 (11th Cir.1996) ............................................................15

*Masson v. New Yorker Mag., Inc.*
 501 U.S. 496 (1991) ........................................................................14

*McLeod v. Ingram*
 No. 7:16-CV-185 (HL), 2017 U.S. Dist. LEXIS 206025 (M.D. Ga. Dec. 14, 2017) ..................................................................................................7

*Michel v. NYP Holdings*
 816 F.3d 686 (11th Cir. 2016) ........................................................15

*Moreno v. Wolf*
 558 F. Supp. 3d 1357 (N.D. Ga. 2021) .............................................4

*Mustaqeem-Graydon v. SunTrust Bank*
 573 S.E.2d 455 (Ga. Ct. App. 2002) ........................................ 20, 21

*NAACP v. Claiborne Hardware Co.*
 458 U.S. 886 (1982) ........................................................................23

*New York Times Company v. Sullivan*
 376 U.S. 254 (1964) ................................................................. 14, 15

*O'Neal v. Home Town Bank of Villa Rica*
 514 S.E.2d 669 (Ga. Ct. App. 1999) ...............................................20

*Old Dominion Branch No. 496, Nat'l Assoc. of Letter Carriers v. Austin*
 418 U.S. 264 (1974) ................................................................. 18, 19

*Parekh v. CBS Corp.*
 820 F. App'x 827 (11th Cir. 2020)...................................................17

*Partington v. Bugliosi*
 56 F.3d 1147 (9th Cir. 1995).............................................................18

*Philadelphia Newspapers, Inc. v. Hepps*
 475 U.S. 767 (1986) ........................................................................14

*Quality Foods de Centro Am., S.A. v. Latin A.m Agribusiness Dev. Corp., S.A.*
 711 F.2d 989 (11th Cir. 1983) ...........................................................4

*Quiller v. Barclays Am./Credit, Inc.*
 727 F.2d 1067 (11th Cir. 1984)........................................................12

*Reed v. Chamblee*
 No. 3:22-CV-1059-TJC-PDB, 2024 U.S. Dist. LEXIS 2449 (M.D. Fla. Jan. 5, 2024)..................................................................................................24

*Regions Bank v. Kaplan*
 No. 8:12–cv–1837–T–17MAP, 2013 U.S. Dist. LEXIS 40805 (M.D. Fla. Mar. 22, 2013) .............................................................................................13

*Robinson v. K2D, LLC*
 No. 1:24-CV-3272- TWT, 2025 U.S. Dist. LEXIS 25864 (N.D. Ga. Feb. 13, 2025) ...............................................................................................3, 4

*Rubin v. U.S. News & World Rep., Inc.*
 271 F.3d 1305 (11th Cir. 2001) .....................................................................18

*S & W Seafoods Co. v. Jacor Broad. of Atlanta*
 194 Ga. App. 233 (Ga. Ct. App. 1989) ..........................................................20

*Scott v. Experian Info. Sols., Inc.*
 No. 18-CV-60178, 2018 U.S. Dist. LEXIS 110210 (S. D. Fla. June 29, 2018) ....8

*Silvester v. Am. Broad. Co.*
 829 F.2d 1491 (11th Cir. 1988) .....................................................................16

*Smith v. Stewart*
 291 Ga. App. 86 (Ga. Ct. App. 2008) ............................................................19

*Smith v. Tr. Co. Bank*
 450 S.E.2d 866 (Ga. Ct. App. 1994) ................................................................9

*Snyder v. Phelps*
 562 U.S. 443 (2011) .......................................................................................23

*St. Amant v. Thompson*
 390 U.S. 727 (1968) ................................................................................ 15, 16

*Tanisha Sys., Inc. v. Chandra*
 2015 U.S. Dist. LEXIS 177164 (N.D. Ga. Dec. 4, 2015) ...............................13

*United States ex rel. Bibby v. Mortg. Invs. Corp.*
 987 F.3d 1340 (11th Cir. 2021) .......................................................................3

*Waite v. All Acquisition Corp.*
 901 F.3d 1307 (11th Cir. 2018) .......................................................................5

*Weiland v. Palm Beach Cty. Sheriff's Office*
 792 F.3d 1313 (11th Cir. 2015) .......................................................................8

*Wilkes & McHugh, P.A. v. LTC Consulting, L.P.*
 830 S.E.2d 119 (Ga. 2019). ...........................................................................24

## **Statutes**

42 U.S.C. § 1985(3) ...................................................................21

47 U.S.C. § 230 .........................................................................12

O.C.G.A. § 51-5-4......................................................................10

O.C.G.A. § 9-10-91.............................................................. 4, 6, 7

O.C.G.A. § 9-11-11.1(b).............................................................23

## **Secondary Sources**

Robert D. Sack, SACK ON DEFAMATION, (5th Ed. 2018) ........................................17

## I.    <u>INTRODUCTION</u>

AMP had nothing to do with the events detailed in Plaintiff's Amended Complaint, nor does Plaintiff allege that AMP did. Plaintiff relies entirely on incorrect assumptions about AMP in a desperate attempt to hail AMP into this Court. Despite over 100 pages of distracting and inflammatory language, Plaintiff fails entirely to allege facts that would support this Court's jurisdiction over AMP or to state a claim against AMP. Therefore, AMP respectfully requests this Court dismiss all of Plaintiff's claims against it in full, with prejudice.[1]

## II.    <u>FACTS AND PROCEDURAL HISTORY</u>[2]

Defendant AMP is a 501(c)(3) non-profit organization incorporated in California, with its principal place of business in Virginia. *See* First Amended Complaint ("FAC") at ¶ 13, (Doc. 22). Today, and at all times relevant to the allegations in this lawsuit, AJP Educational Foundation, Inc. is the name of the single legal entity, with American Muslims for Palestine ("AMP") as its designated fictitious name.[3] Plaintiff alleges that "AMP is the founder of" Defendant National

---

[1] *See Horton v. Gilchrist*, 128 F.4th 1221, 1224 (11th Cir. 2025) (reiterating that dismissal with prejudice is proper where "a more carefully drafted complaint could not state a claim").

[2] As most of Plaintiff's allegations in his Complaint do not allege actions by Defendant AMP, AMP recites only those allegations Plaintiff asserts against AMP.

[3] This Court may take judicial notice of AMP's publicly available incorporation documents and fictitious name certificate, available through the Virginia Secretary of State's website and attached hereto as Exhibit A. *See Delhoyo v. Stewart Title Guar. Co.*, No. 1:20-cv-2777-TWT, 2021 U.S. Dist. LEXIS 28934, at *5 (N.D. Ga. Feb. 11, 2021) (Thrash, J.) (taking judicial notice of public records).

Students for Justice in Palestine ("NSJP") and "upon information and belief, maintains organizational management and control of NSJP." FAC ¶ 13. However, AMP has never had any corporate or other relationship with NSJP. In fact, Plaintiff alleges that an entirely different entity, WESPAC, "served as the fiscal sponsor for NSJP since at least 2016." *Id.* ¶ 14. Defendant AMP provides only limited grants to student organizations for pre-planned events upon submission of a written grant request.[4] Plaintiff alleges that AMP "founded and maintains control over NSJP, and through this relationship, enabled and supported NSJP's dissemination of false, targeted rhetoric against Plaintiff." *Id.* ¶ 114. Plaintiff further alleges that "AMP's control over NSJP includes responsibility for its coordinated campaigns against individuals like Plaintiff." *Id.* Finally, Plaintiff alleges that "AMP, as the founder of NSJP, is responsible for enabling and facilitating NSJP's participation in the conspiracy" against Plaintiff, and that "[u]pon information and belief, AMP has organizational control and oversight over NSJP and knowingly permitted its use of official channels and social media to disseminate false and defamatory statements about Plaintiff." *Id.* ¶ 167.

Plaintiff's allegations do not specify what, if any, role AMP played in the harm Plaintiff alleges. He alleges only that "Defendants," without specifying which,

---

[4] American Muslims for Palestine, *America's Youth are Turning the Tide* (April 25, 2022), https://www.ampalestine.org/media/media-room/statements/americas-youth-are-turning-tide.

"either knew these statements were false or acted with a high degree of awareness of their probable falsity." *Id.* ¶ 156. He alleges that "Defendants plotted, coordinated, and executed a common plan to deprive Plaintiff of his constitutional rights and privileges on account of his Jewish identity and/or Zionist beliefs," but does not specify what, if any, involvement AMP had in those actions. *Id.* ¶ 179. Plaintiff's Amended Complaint merely identifies AMP a total of four times.

### III.   STANDARDS OF REVIEW

#### A.    Federal Rule of Civil Procedure 12(b)(2)

Plaintiffs bear the burden of "establishing a prima facie case" that the court has jurisdiction over the defendant. *Robinson v. K2D, LLC*, No. 1:24-CV-3272-TWT, 2025 U.S. Dist. LEXIS 25864, at *5 (N.D. Ga. Feb. 13, 2025) (Thrash, J.) (citing *United States ex rel. Bibby v. Mortg. Invs. Corp.*, 987 F.3d 1340, 1356 (11th Cir. 2021)). For the purpose of jurisdiction, courts only accept uncontroverted facts in a complaint as true. *Id.*

Due process mandates that general jurisdiction exists only where an entity's "affiliations with the State are so continuous and systematic as to render it essentially at home in the forum state." *Id.* *16 (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 138-39 (2014)). Specific jurisdiction exists over a defendant in Georgia under Georgia's long-arm statute. *Fair Gaming Advocs. Ga. Inc. v. VGW Holdings Ltd.*, No. 1:24-CV-00901-TWT, 2024 U.S. Dist. LEXIS 225626, at *10 (N.D. Ga. Dec.

13, 2024) (Thrash, J.) (citing O.C.G.A. § 9-10-91). The statute allows personal jurisdiction only where an entity meets one of six enumerated categories. O.C.G.A. § 9-10-91. Courts only maintain jurisdiction where suits "arise out of or relate to the defendant's contacts with the forum." *K2D, LLC*, 2025 U.S. Dist. LEXIS 52864, at *15 (quoting *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cnty.,* 582 U.S. 255, 262 (2017)). Plaintiffs must allege that their harm relates to "an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id.*; *see also Aero Toy Store, LLC v. Grieves*, 279 Ga. App. 515, 518, 631 S.E.2d 734 (Ga. Ct. App. 2006) (recognizing essential requirement that defendants undertake some act that purposefully avails them "of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its law").

## B.    Federal Rule of Civil Procedure 12(b)(6)

Courts must dismiss a claim if the plaintiff's complaint fails to allege facts that "state a 'plausible' claim for relief." *Moreno v. Wolf*, 558 F. Supp. 3d 1357, 1362 (N.D. Ga. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Courts accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Id.* (citing *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994-95 (11th Cir. 1983)). Notice pleading requires that plaintiffs give defendants "fair notice of the plaintiff's

claim and the grounds upon which it rests." *Id.* at 1363 (citing *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)).

## IV.   ARGUMENT

### A.   This Court Lacks Personal Jurisdiction Over AMP

This Court possesses no personal jurisdiction over AMP. AMP is not subject to general jurisdiction in the state of Georgia, and Plaintiff fails to plead sufficient facts to show any AMP contacts with Georgia that establish this Court's specific jurisdiction over AMP. Exercise of jurisdiction by this Court would therefore violate due process requirements. *See Fair Gaming Advocs. Ga. Inc.*, 2024 U.S. Dist. LEXIS 225625, at *11 (explaining how minimum contacts requirements ensure that courts' jurisdiction over defendants do not "offend traditional notions of fair play and substantial justice") (citing *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1312 (11th Cir. 2018)).

Plaintiffs bear the initial burden of alleging sufficient facts to "make out a prima facie case of jurisdiction" over nonresident defendants. *In re Accreditation Comm'n for Educ. in Nursing Data Breach Litig.*, No. 1:23-cv-03337-LMM, 2024 U.S. Dist. LEXIS 242974, at *3 (N.D. Ga. July 31, 2024) (citing *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010)). Courts dismiss claims where plaintiffs fail to allege facts sufficient "to support a reasonable inference that the defendant can be subjected to jurisdiction within the

state." *Id.* (citing *Bracewell v. Nicholson Air Servs., Inc.*, 680 F.2d 103, 104 (11th Cir. 1982)).

Courts in Georgia apply a two-step inquiry to determine personal jurisdiction.[5] They first determine whether the exercise of jurisdiction is appropriate under Georgia's long-arm statute, then evaluate whether jurisdiction violates the Due Process Clause of the Fourteenth Amendment. *Id.* at *4 (explaining courts should not conflate the two requirements, as Georgia's statute imposes these requirements in addition to due process requirements).

Georgia's long-arm statute confers jurisdiction over nonresident defendants only in six distinct situations. *See* O.C.G.A. § 9-10-91. Where jurisdiction derives from the defendant's business transactions in Georgia, plaintiffs must show "1) the nonresident defendant has purposefully done some act or consummated some transaction in this state, 2) the cause of action arises from or is connected with such act or transaction, and 3) the exercise of jurisdiction by the courts of [Georgia] does not offend traditional fairness or substantial justice." *Amerireach.com, LLC v. Walker*, 290 Ga. 261, 269, 719 S.E.2d 489 (Ga. 2011). Constitutional due process further requires that plaintiffs establish each defendant's "minimum contacts" with

---

[5] Though Plaintiff asserts subject matter jurisdiction through federal question jurisdiction, courts in this district hold that when federal statutes remain silent on jurisdiction, as here, courts must still analyze the issue under Georgia's long-arm statute. *See, e.g., Wilson v. Cleveland Bros.*, No. 1:20-cv-03291-ELR-ABJ, 2021 U.S. Dist. LEXIS 257592, at *16 n.5 (N.D. Ga. July 25, 2021).

6

the forum state, "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945).

AMP is incorporated in California and maintains its principal place of business in Virginia. FAC ¶ 13. Plaintiff alleges no facts that support personal jurisdiction over AMP. He does not plead that AMP transacts any business within Georgia, or that AMP committed any tortious act or omission in Georgia, or that AMP regularly solicits business or derives substantial revenue from Georgia, or that AMP owns any property in Georgia. *See generally* O.C.G.A. § 9-10-91. Plaintiff refers to AMP directly only a total of four times, and nowhere alleges facts supporting this Court's personal jurisdiction over AMP.  Plaintiff fails to show or even allege any statements attributed to AMP targeting, or even reaching residents of Georgia. The mere fact that residents of Georgia may access statements via the internet does not suffice to "commit[ ] a tortious injury in this state" for purposes of personal jurisdiction. O.C.G.A. § 9-10-91(3). *McLeod v. Ingram*, No. 7:16-CV-185 (HL), 2017 U.S. Dist. LEXIS 206025, at *5 (M.D. Ga. Dec. 14, 2017).

Defendant AMP therefore respectfully requests this Court dismiss Plaintiff's claims in full.

**B.    Plaintiff's Amended Complaint Contains Impermissible Shotgun Conclusions**

Should this Court conclude it maintains personal jurisdiction over AMP, this Court still must dismiss the Amended Complaint because, as explained in Section II(B) of CAIR-Foundation's Brief, it constitutes a shotgun pleading that impermissibly lumps defendants together, fails to distinguish against whom Plaintiff seeks specific relief, and incorporates all preceding allegations into successive counts. *See Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015). For these reasons, AMP joins in and adopts the arguments briefed by CAIR-Foundation. *See* Doc. 63-1 at 5–6.

The entirety of Plaintiff's claims against AMP rests on unsupported conclusions that AMP "founded and maintains control over NSJP, and through this relationship, enabled and supported" the "rhetoric" against Plaintiff. FAC ¶ 144; *see also id.* ¶ 167 ("[u]pon information and belief, AMP has organizational control and oversight over NSJP and knowingly permitted its use of official channels and social media to disseminate false and defamatory statements about Plaintiff."). But Plaintiff makes clear that his assertion that AMP "maintains organizational management and control of NSJP" comes only from "information and belief." *Id.* ¶ 13. This Court therefore need not credit that unsupported conclusion. *Scott v. Experian Info. Sols., Inc.*, Case No. 18-CV-60178, 2018 U.S. Dist. LEXIS 110210, at *6 (S. D. Fla. June 29, 2018) ("Conclusory allegations made upon information

and belief are not entitled to a presumption of truth, and allegations stated upon information and belief that do not contain any factual support fail to meet the *Twombly* standard.").

The same holds true for Plaintiff's conclusory statement that AMP "founded" NSJP, since Plaintiff alleges no factual support for this presumption either. FAC ¶ 13. To the extent Plaintiff alleges that AMP actively funds and operates NSJP, his own Complaint belies that presumption where he alleges that another entity, WESPAC, "served as the fiscal sponsor for NSJP since at least 2016." FAC ¶ 14.

Whether AMP ever founded NSJP bears no relation to AMP's purported liability for NSJP's alleged statements. Liability for NSJP's alleged statements only attaches to AMP if Plaintiff demonstrates how AMP "expressly directed [NSJP] to or authorized to slander" Plaintiff, as "an agent acting within the scope of employment" for AMP. *See Dougherty v. Harvey*, 317 F. Supp. 3d 1287, 1293 (N.D. Ga. 2018) (quoting *Smith v. Tr. Co. Bank*, 215 Ga.App. 413, 450 S.E.2d 866, 869–70 (Ga. Ct. App. 1994)). Because Plaintiff does not and cannot point to factual support that (1) NSJP serves as an agent of AMP and (2) AMP directed and authorized NSJP's statements, Plaintiff's efforts to hold AMP liable for a third party's alleged conduct—even if AMP previously "founded" NSJP—fails.

Properly stripping the Complaint of these conclusory allegations shows it devoid of any conduct for which AMP could be held liable, and AMP therefore respectfully requests dismissal.

**C.    Plaintiff Fails to State Substantive Claims Against AMP**

Even if Plaintiff demonstrated that AMP directed or expressly authorized NSJP to make the alleged statements, Plaintiff's claims substantively fail for the reasons below.

**1.  Plaintiff Fails to State a Claim Against AMP for Defamation**

The Amended Complaint alleges in Count I that "defendants" bear liability for defamation *per se* under O.C.G.A. § 51-5-4.[6] The only allegation in this meandering count against AMP again relies on purported "responsibility" for two Instagram posts by NSJP, and comments by third parties in response. FAC ¶ 144. The statements Plaintiff complains about in those Instagram posts are as follows:

- The use of "Israeli Offense Force," or "IOF" in the statement "Umaymah [Mohammad] expressed concern over the silencing of Palestinian voices and alluded to an Emory physician who recently served in the IOF," *id.* at ¶ 143(a);

- An email template and phone script for third parties to inform Emory University that "I'm alarmed by the institution's endorsement of faculty like Dr. Joshua Winer, who recently served in the Israeli Defense Forces. Is supporting genocide and war crimes more acceptable at Emory than resisting them? Investigate faculty and students endorsing

---

[6] As noted in CAIR-Foundation's Brief, Plaintiff invokes the slander statute concerning oral statements; the statements at issue here constitute libel, if even defamatory. Doc. 63-1, 16–17.

Israel's apartheid regime and remove them for patient safety and compliance with international demands," *id.* at ¶ 143(c);

- An email template and phone script for third parties to inform Emory faculty members that …[Mohammad] compared Emory's disgraceful firing of Palestinian physician Dr. Abeer AbouYabis to Dr. Joshua Winer's warm institutional welcome to illustrate a glaring disparity that reflects Emory's longstanding pattern of anti-Palestinian and anti-Muslim racism (further outlined in the Title VI complaint recently filed against Emory). It is the duty of every healthcare professional to ensure the safety of patients as well as medical students and trainees. How can we feel safe knowing Emory employs and protects physicians like Dr. Joshua Winer who has written openly about his participation in a military campaign that has been condemned as a genocide …," *id.* at ¶ 143(c); and

- An email template and phone script that included "that any physician-faculty who served in the [Israeli Defense Forces] these last sixteen months perpetuated genocide…," *id.* at ¶ 143(e).

Plaintiff also attempts to hold AMP liable for two specific comments readers made in response to NSJP's first Instagram post:

- "@emorymedschool … How do you justify suspending a Palestinian medical student speaking out about GENOCIDE, while simultaneously condoning a professor of medicine who chooses to participate in that same genocide—one where healthcare workers are specifically targeted?"

- "Shame on Emory for employing genociders [sic] and murderers, while punishing those who resist annihilation."

*Id.* at ¶ 143(b).

11

i.    **The CDA Bars Liability for Third-Party Comments**

Plaintiff cannot hold AMP liable for comments published by third parties in response to another third party's Instagram post, as Section 230 of the Communications Decency Act (the "CDA") preempts that attempt. Because this defense "clearly appears on the face of the complaint," AMP appropriately raises it under Rule 12(b)(6). *Quiller v. Barclays Am./Credit, Inc.*, 727 F.2d 1067, 1069 (11th Cir. 1984), *aff'd en banc*, 764 F.2d 1400 (11th Cir. 1985).

Under Section 230 of the CDA, "[n]o provider or *user* of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1) (emphasis supplied). The term "interactive computer service" refers to "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server[.]" *Id.* at § 230(f)(2). The CDA defines "information content provider" as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the internet or any other interactive computer service." *Id.* at § 230(f)(3). The CDA also preempts any inconsistent state law causes of action, providing that "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." 47 U.S.C. § 230(e)(3); *see also Almeida v. Amazon.com, Inc.,* 456 F.3d 1316, 1321 (11th Cir. 2006) (recognizing that "[t]he

12

majority of federal circuits have interpreted the CDA to establish broad federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service").

Here, NSJP constitutes a "user" of an interactive computer service when it "availed [itself] of and utilized" a website as a user under the CDA. *Directory Assistants, Inc. v. Supermedia, LLC*, 884 F. Supp. 2d 446, 452 (E.D. Va. 2012). And Instagram is an interactive computer service. *Regions Bank v. Kaplan*, No. 8:12–cv–1837–T–17MAP, 2013 U.S. Dist. LEXIS 40805, at *46 (M.D. Fla. Mar. 22, 2013) ("A 'provider' of an interactive computer service includes websites that host third-party generated content ..."). In this context, users of interactive computer services are immune from liability "when the defamatory or obscene material is 'provided' by someone else." *Tanisha Sys., Inc. v. Chandra*, 2015 U.S. Dist. LEXIS 177164, at *20 (N.D. Ga. Dec. 4, 2015). Even if AMP had control over NSJP's Instagram posts, it bears no liability under the CDA for comments generated by third parties' responses.

### ii.    Plaintiff Cannot Demonstrate Actual Malice

Plaintiff's claims as to the Instagram posts fail because he cannot demonstrate the requisite degree of fault: actual malice.

"Under Georgia law, a claim for defamation has four elements: (1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication

to a third party; (3) fault by the defendant amounting to at least negligence; and (4) special harm or the actionability of the statement irrespective of special harm." *Am. C. L. Union v. Zeh*, 312 Ga. 647, 650 (Ga. 2021) (citation omitted). When speech addresses a matter of public concern, plaintiffs must prove fault and falsity. *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 776 (1986).

While the requisite degree of fault for private persons requires "at least negligence", a more onerous standard applies for public figures. In *New York Times Company v. Sullivan*, the Supreme Court established that public officials and public figures claiming defamation must prove that the allegedly defamatory statement occurred with "actual malice"—defined by the Court as "with knowledge that it was false or with reckless disregard of whether it was false or not." 376 U.S. 254, 280 (1964). The Supreme Court recognized the actual malice standard bars some plaintiffs from recovering damages for erroneous and injurious statements. *Id.* at 270–72. Even so, the Court concluded that the law of defamation must provide some "breathing space" to avoid chilling constitutionally valuable speech. *Id.* at 271–72.

To satisfy the actual malice standard, a public figure must put forth "evidence in the record [that] would permit a reasonable finder of fact, by clear and convincing evidence, to conclude that [the defendant] published a defamatory statement with actual malice." *Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 508 (1991); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255–256 (1986).

14

Actual malice requires a subjective test; the defendant must publish a statement with "knowledge that it was false" or "reckless disregard of whether it was false or not." *N.Y. Times*, 376 U.S. at 280. Reckless disregard, in turn, requires that the defendant "in fact entertained serious doubts as to the truth" of that statement. *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968). Failure to show a defendant's reckless disregard mandates dismissal. *Michel v. NYP Holdings*, 816 F.3d 686, 702 (11th Cir. 2016) ("every circuit that has considered the matter has applied the *Iqbal/Twombly* standard and held that a defamation suit may be dismissed for failure to state a claim where the plaintiff has not pled facts sufficient to give rise to a reasonable inference of actual malice"). Plaintiffs must do more than invoke "magic words" for actual malice; failure to do so dooms the claim. *See, e.g., Baker v. Joseph*, 938 F. Supp. 2d 1265, 1269 (S.D. Fla. 2013).

Courts recognize two types of public figures: general and limited purpose. "A limited purpose public figure is 'an individual [who] voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues.'" *Little v. Breland*, 93 F.3d 755, 757 (11th Cir.1996) (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1974)). This Circuit employs a three-part test to determine whether plaintiffs constitute limited public figures: "(1) isolat[ing] the public controversy, (2) examin[ing] the plaintiff's involvement in the controversy, and (2) determin[ing] whether the alleged

15

defamation was germane to the plaintiff's participation in the controversy." *Silvester v. Am. Broad. Co.*, 829 F.2d 1491, 1494 (11th Cir. 1988).

The Plaintiff in this case qualifies as a limited-purpose public figure because he injected himself into a public controversy: the ongoing Israeli-Palestinian conflict. Plaintiff wrote an opinion piece titled "An Ongoing Quest to Serve" in the *Times of Israel*, in which he reflected on how the October 7 attacks informed his decision to join the Israeli Defense Forces. FAC ¶¶ 31, 34.[7] His op-ed "highlighted the profound and far-reaching impact of the October 7 attacks on Jewish communities worldwide, emphasizing that the effects of the attacks transcend borders and have irrevocably altered Jews' sense of security outside of Israel. He stressed the vital importance of Israel's existence for the survival of the Jewish people, asserting that even from abroad, the influence of the State of Israel is profoundly felt." *Id.* ¶ 34.

Because Plaintiff constitutes a public figure for purposes of this controversy, he must meet the higher actual malice standard. *St. Amant*, 390 U.S. at 732 (explaining that "actual malice" is generally limited to circumstances where a "story is fabricated by the defendant, is the product of his imagination, or is based wholly

---

[7] The Court may consider the article because Plaintiff hyperlinks to it in the Amended Complaint and it therefore appears within its four corners. *See Gill as Next Friend of K.C.R. v. Judd*, 941 F.3d 504, 511 (11th Cir. 2019) ("The Civil Rules provide that an attachment to a complaint generally becomes 'part of the pleading for all purposes,' Fed. R. Civ. P. 10(c), including for ruling on a motion to dismiss.").

on an unverified anonymous telephone call"). While Plaintiff admits he served with the IDF in Gaza after October 7, *see* FAC ¶ 33, the gravamen of his complaint alleges that people spoke unfavorably at his military service to a foreign state. While Plaintiff disagrees with those who categorize the events in Gaza as genocide or apartheid, Plaintiff fails to show how he could sufficiently disprove those claims. He does not provide sufficient factual support to draw any inference that <u>AMP</u> acted with actual malice. Even if the Court considers Plaintiff's conclusory assertion that AMP controls NSJP, nothing in the Complaint connects the statements in the Instagram posts about genocide and apartheid to actual malice.

### iii.    The Statements Have No Defamatory Meaning

Even if Plaintiff could plead the requisite degree of fault, the statements in the Instagram posts contain no defamatory meaning.

Under Georgia law and as bound by the First Amendment, opinions and matters to which reasonable persons may disagree do not equate to defamation. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339–40 (1974); *Bergen v. Martindale-Hubbell*, 176 Ga. App. 745, 747 (Ga. 1985). Statements that "hurt[] only the plaintiff's feelings" are not actionable. Robert D. Sack, SACK ON DEFAMATION, § 2:4.1 (5th Ed. 2018) ("a communication that is merely unflattering, annoying, irksome, or embarrassing, or that hurts only the plaintiff's feelings, is not actionable"); *Parekh v. CBS Corp.*, 820 F. App'x 827, 833 (11th Cir. 2020)

(affirming dismissal of defamation claims with prejudice where statements were not capable of defamatory meaning); *see also Rubin v. U.S. News & World Rep., Inc.*, 271 F.3d 1305, 1306 (11th Cir. 2001). "The pivotal questions are whether [the challenged] statements can reasonably be interpreted as stating or implying defamatory facts about plaintiff and, if so, whether the defamatory assertions are capable of being proved false." *Jaillett v. Ga. Tv Co.*, 238 Ga. App. 885, 890 (Ga. 1999). Whether a given statement constitutes fact or opinion qualifies as a question of law. *Old Dominion Branch No. 496, Nat'l Assoc. of Letter Carriers v. Austin*, 418 U.S. 264, 283–84 (1974).

Public commentary on disputed controversial facts, particularly political speech, warrants heavy protection under the First Amendment. *Partington v. Bugliosi*, 56 F.3d 1147, 1154 (9th Cir. 1995) (recognizing without breathing room "the robust debate among people with different viewpoints that is a vital part of our democracy would surely be hampered."). As explained in CAIR-NGA's brief on opinion and "genocide," which sections AMP joins in and adopts in relevant part, the statements at issue here—whether Plaintiff was participating in a genocide or an "apartheid regime" or "war crimes" by virtue of his admitted service in the Israeli military during its occupation of Gaza—constitute protected speech. (Doc. 41 at 8-13). While Plaintiff's complaint fails to tie AMP to these posts, the statements in them warrant protection under the First Amendment.

18

The only other issue as to the Instagram posts concerns Plaintiff's personal objection to the abbreviation of IDF as "IOF," or "Israeli Offense Force." FAC ¶ 143(a). Referring to the IDF this way does not convey any defamatory meaning. The use of this language falls under the protection of opinion or rhetorical hyperbole. *John E. Reid & Assocs., Inc. v. Netflix, Inc.*, No. 19 CV 6781, 2020 U.S. Dist. LEXIS 51303, at *18 (N.D. Ill. Mar. 23, 2020)("'[L]oose language' and 'undefined slogans'—like saying something is 'unfair' or 'fascist,' or calling someone a 'traitor,' or accusing someone of blackmail—do not necessarily amount to falsifications of fact," quoting *Old Dominion*, 418 U.S. at 284 (1974)). *Greenbelt Co-op. Pub. Ass'n v. Bresler*, 398 U.S. 6, 13 (1970). This "give-and-take" plays a central role in discussions on controversial subjects. *Old Dominion*, 418. U.S. at 284. For these reasons, Count I fails as a matter of law.

## 2. Plaintiff Fails to State a Claim for False Light Invasion of Privacy

For the sake of this Motion, AMP presumes Plaintiff seeks relief against AMP for false light in Count II. To succeed on that claim, Plaintiff must show that AMP knowingly or recklessly published falsehoods about him and placed him in a false light that a reasonable person would consider highly offensive. *Smith v. Stewart*, 291 Ga. App. 86 (Ga. Ct. App. 2008). This claim fails for several reasons.

Plaintiff fails to demonstrate factual support that AMP had any involvement in any statements cited in the complaint. And the statements cited in the complaint

19

appear to publish admitted truths about him: for example, he voluntarily joined the Israeli military during its occupation of Gaza. *See* FAC ¶¶ 11, 33. While Plaintiff dislikes the characterizations of his military service, he did serve in Gaza during a military occupation. *See id.* at ¶¶ 11, 33, 36. Finally, Plaintiff cannot overcome the fact that the statements about his military service qualify as protected speech. *S & W Seafoods Co. v. Jacor Broad. of Atlanta*, 194 Ga. App. 233, 237 (Ga. Ct. App. 1989). Accordingly, Count II also fails as a matter of law.

### 3. Plaintiff Fails to State a Claim Against AMP for Civil Conspiracy

In Count III, Plaintiff alleges civil conspiracy liability against AMP. Under Georgia law, civil conspiracy exists when "two or more persons, acting in concert, [are] engaged in conduct that constitutes a tort." *Mustaqeem-Graydon v. SunTrust Bank*, 573 S.E.2d 455, 461 (Ga. Ct. App. 2002). "Absent the underlying tort, there can be no liability for civil conspiracy." *O'Neal v. Home Town Bank of Villa Rica*, 514 S.E.2d 669, 675 (Ga. Ct. App. 1999).

Plaintiff once again makes the conclusory statement that AMP "as the founder of NSJP, is responsible for enabling and facilitating NSJP's participation in the conspiracy." FAC ¶ 167. Plaintiff also asserts that "[u]pon information and belief" AMP controls NSJP and "knowingly permitted its use of official channels and social media to disseminate false and defamatory statements about Plaintiff." *Id.* Neither of these attempts suffices under the law.

20

Plaintiff cannot sustain his conspiracy claim predicated on defamation and false light/invasion of privacy, because the underlying torts fail for the reasons set forth above. *See Mustaqeem-Graydon*, 258 Ga. App. at 207 ("[B]ecause Graydon's underlying fraud claim fails, he cannot maintain a cause of action for conspiracy to defraud"). Even if Plaintiff could establish a surviving underlying tort, he fails to satisfy the *Twombly* standards to tie AMP to any alleged conspiracy. And even if Plaintiff's underlying allegations suffice, merely "permit[ting]" NSJP to use NSJP's own social media to disseminate the two Instagram posts does not satisfy the elements of civil conspiracy. *Bailey v. Bd. of Cnty. Comm'rs of Alachua Cnty., Fla.*, 956 F.2d 1112, 1122 (11th Cir. 1992) ("[T]he linchpin for conspiracy is agreement, which presupposes communication."); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("It is not enough to simply aver in the complaint that a conspiracy existed."). Plaintiff's claims under Count III for civil conspiracy fail as a matter of law as well.

### 4. Plaintiff Fails to State a Claim Against AMP for Conspiracy to Interfere With Civil Rights

To state a claim under 42 U.S.C. § 1985(3) ("Section 1985"), plaintiffs must establish four elements; Plaintiff satisfies none of those elements here. Plaintiffs alleging Section 1985 claims must assert that the defendant:

(1) conspired or gone in disguise on the highway or on the premises of another, (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of

> equal privileges and immunities under the laws, (3) taken or caused an action to be taken in furtherance of the conspiracy's object, and (4) injured an individual's person or property or deprived her of exercising any right or privilege of a United States citizen.

*Dean v. Warren*, 12 F.4th 1248, 1255 n.8 (11th Cir. 2021) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971)). The second element in particular requires that a plaintiff "allege 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus' for the defendant's actions in furtherance of the conspiracy." *Bagby v. Clayton Cnty. Sheriff*, No. 1:24-cv-03439-SDG, 2025 U.S. Dist. LEXIS 59745, at *13 (N.D. Ga. Mar. 31, 2025) (citing *Dean v. Warren*, 12 F.4th 1248, 1255 (11th Cir. 2021)). Plaintiffs must allege the defendant acted "*because of* the adverse effects" the defendant intended to cause for the group. *Id.* (emphasis in original).

As explained above, Plaintiff fails to sufficiently plead facts supporting his allegation that AMP participated in any civil conspiracy. Plaintiff alleges no specific class-based animus on behalf of AMP. *See generally* FAC ¶¶ 177-90. Instead, Plaintiff relies on only the conclusory statement that "Defendants provided the ideological foundation for the conspiracy to strip Plaintiff of his rights based solely on his association with Zionism as well as his service in the IDF." *Id.* at ¶ 183. Plaintiff further fails to sufficiently allege that AMP injured Plaintiff's person or property, or deprived him of the exercise of any right or privilege. FAC ¶ 189

(alleging only that Plaintiff suffered unspecified "significant harm"). Plaintiff's Section 1985 claim against AMP therefore fails as a matter of law.

### 5. AMP's Actions Merit First Amendment Protection

Plaintiff makes allegations that would have the effect of suppressing AMP's protected speech and association, violating AMP's rights under the First Amendment. The Supreme Court determined that even offensive speech and conduct cannot give rise to tort claims, where a claim cites speech alone on "matters of public import." *Snyder v. Phelps*, 562 U.S. 443, 456 (2011). Even speech that includes intimidation, coercion, and threats of boycotts maintains First Amendment protections. *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 907 (1982). Plaintiff asserts speech by AMP that he disagrees with, and no more. Disagreeable speech does not lose the protection of the First Amendment; in fact, constitutional protections become even more important in that context. Plaintiff cannot hold AMP liable for mere speech, under any claim, without trampling the inherent meaning of the First Amendment.

### 6. AMP is Entitled to Fees and Costs Under Georgia's Anti-SLAPP Law

Because this lawsuit seeks to "deter or punish the exercise of constitutional rights of petition and free speech by tying up their target's resources and driving up the costs of litigation," AMP demonstrates its entitlement to reasonable attorneys' fees and expenses under O.C.G.A. § 9-11-11.1(b). *Wilkes & McHugh, P.A. v. LTC*

23

*Consulting, L.P.*, 830 S.E.2d 119, 124 (Ga. 2019). While the statute's burden-shifting mechanism does not apply in federal court, courts in this Circuit routinely apply similar fee-shifting mechanisms. *See, e.g.*, *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1349 (11th Cir. 2018); *Reed v. Chamblee*, No. 3:22-CV-1059-TJC-PDB, 2024 U.S. Dist. LEXIS 2449, at *18 (M.D. Fla. Jan. 5, 2024) (collecting cases that show "the tide of the Courts within the Circuit" enforce the "fee provision" in the Florida anti-SLAPP statute).

## V.    CONCLUSION

Plaintiff fails to plead facts that, if true, suffice to establish this Court's personal jurisdiction over AMP. Even if this Court determines it does have jurisdiction over this matter, Plaintiff still fails to plead facts to sufficiently state the claims he alleges against AMP. Plaintiff in fact pleads essentially no facts at all specific to AMP. Plaintiff's failure to point to actions by AMP reveals that AMP had nothing to do with the actions Plaintiff alleges harmed him. Plaintiff cannot rely on merely his own conclusory statements and irrational assumptions to compensate for his legal and factual failures. Therefore, AMP respectfully asks this Court to dismiss Plaintiff's claims against AMP in full, with prejudice.

DATED: August 5, 2025

Respectfully Submitted,

*/s/ James M. Slater*
James M. Slater
Georgia Bar No. 169869
Slater Legal PLLC
2296 Henderson Mill Rd NE #116
Atlanta, Georgia 30345
Tel. (404) 458-7283
james@slater.legal

Christina A. Jump
(*pro hac vice* granted)
Samira S. Elhosary
(*pro hac vice* granted)
Christina A. Boyd
(*pro hac vice* granted)
Constitutional Law Center
for Muslims in America*
100 N. Central Expy. Suite 1010
Richardson, Texas 75080
Tel: (972) 914-2507
Fax: (972) 692-7454
cjump@clcma.org
selhosary@clcma.org
ali.boyd@mlfa.org

**COUNSEL FOR DEFENDANT
AJP EDUCATIONAL FOUNDATION,
INC. d/b/a AMERICAN MUSLIMS FOR
PALESTINE**

*\*The Constitutional Law Center for Muslims
in America is the legal division of the Muslim
Legal Fund of America*

25

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.1(D), I hereby certify that I prepared the foregoing

in compliance with Local Rule 5.1(B) in Times New Roman 14-point typeface.

Dated: August 5, 2025.

|  |  |
|---|---|
|  | */s/ James M. Slater* |
| SLATER LEGAL PLLC | James M. Slater |
| 2296 Henderson Mill Rd. NE #116 | Georgia Bar No. 169869 |
| Atlanta, Georgia 30345 |  |
| (404) 458-7283 |  |
| james@slater.legal |  |