# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

JOSHUA WINER,

     *Plaintiff,*

v.

UMAYAH MOHAMMAD, *et al.*,

     *Defendants.*

Civil Action No.
1:25-cv-02329-TWT

## PLAINTIFF JOSHUA WINER'S RESPONSE TO CAIR-FOUNDATION INC.'S MOTION TO DISMISS

Lauren Israelovitch
Mark Goldfeder
Ben Schlager
NATIONAL JEWISH
ADVOCACY CENTER, INC.
3 Times Square
New York, NY 10036
lauren@njaclaw.org
*Pro Hac Vice*

David Forman Katz
WEISSMANN ZUCKER
EUSTER & KATZ, P.C.
3495 Piedmont Road
Building 11, Suite 950
Atlanta, GA 30305
dkatz@wzlegal.com
Ga. Bar. No. 408738

Josh Belinfante
Anna Edmondson
Miles Skedsvold
ROBBINS ALLOY BELINFANTE
  LITTLEFIELD LLC
500 14th Street, NW
Atlanta, GA 30318
T: (678) 701-9320
E: mskedsvold@robbinsfirm.com
Ga. Bar No. 371576

Esther Panitch
THE PANITCH LAW GROUP, PC
4243 Dunwoody Club Drive
Suite 205
Atlanta, GA 30350
esther@panitchivory.com
Ga. Bar. No. 143197

# TABLE OF CONTENTS

INTRODUCTION ................................................................................. 1

BACKGROUND .................................................................................. 2

    I.    Factual Background ....................................................... 2

    II.    Procedural History ........................................................ 5

ARGUMENT ..................................................................................... 6

    I.    CAIR-Foundation's procedural objections are meritless. .............. 6

        A.    The Amended Complaint is not a shotgun pleading........... 6

        B.    Dr. Winer's claims are not barred by Georgia's anti-SLAPP statute because the anti-SLAPP statute doesn't apply in federal court. ....................................................... 8

        C.    The defamation and false light claims are not barred by Section 230. ........................................................... 9

    II.    The Amended Complaint states a claim against CAIR-Foundation for defamation per se. ................................... 12

            1.    The false statements here are not mere political opinions. ................................................... 13

            2.    Dr. Winer is not a limited public figure and, even if he is, the Amended Complaint alleges actual malice. ............................................. 16

            3.    An incorrect statutory citation is not grounds for dismissal. .............................................. 17

    III.    The Amended Complaint states a claim against CAIR-Foundation for false light invasion of privacy............................. 18

    IV.    The Amended Complaint states a claim against CAIR-Foundation for civil conspiracy. .................................... 19

    V.    The Amended Complaint states a claim under 42 U.S.C. § 1985(3). ........................................................ 21

VI.    CAIR-Foundation cannot seek dismissal of the prayer for injunctive relief. ............................................................. 24

CONCLUSION ................................................................................ 25

## INTRODUCTION

In some quarters, it is popular rhetoric to decry the Israel-Hamas war as genocide, and to paint anyone who does not militantly oppose Israel as complicit in that crime. Many bad opinions are protected speech, but tortious defamation is not. There is a line between abstract political views and personal, false accusations, and this case proves the point.

Plaintiff Joshua Winer is a long-serving surgical oncologist and medical school professor at Emory University. After the atrocities of October 7, 2023, Dr. Winer volunteered to serve in the Israeli Defense Force as a physician. When he returned, he wrote about his call to serve—only to find an MD/PhD student accusing him, personally, of not only murder and racism, but participating in genocide, war crimes, and the destruction of the Gazan healthcare system. She and others named in this case amplified and solicited public participants in this smear campaign *precisely* for the purpose of persuading Emory that he was unfit to practice or teach medicine in the community.

The relevant defendant here, CAIR-Foundation, Inc., participated in this crusade by collaborating with one of its local chapters to design and disseminate an Instagram post adopting the defamatory statements just mentioned, along with defamatory talking points for supporters to use to

pressure Emory into terminating Dr. Winer. That is more than enough to allege defamation, false light invasion of privacy, and conspiracy.

CAIR-Foundation has moved to dismiss. It raises a handful of procedural objections—calling the Amended Complaint a shotgun pleading, feigning ignorance of what it is alleged to have done, claiming immunity under Section 230 of the Communications Decency Act, and even invoking Georgia's anti-SLAPP statute—all of which are meritless. On the merits, CAIR-Foundation mainly argues that *it* was not the main speaker of any defamatory statements, so it cannot be liable for the torts alleged. That is wrong, as the allegations of the Amended Complaint clearly show. Thus, Dr. Winer has plausibly alleged that CAIR-Foundation is liable, and the motion to dismiss must be denied.

## BACKGROUND

### I.    Factual Background

Dr. Joshua Winer is a Jewish resident of Atlanta, Georgia, with dual American and Israeli citizenship. Dkt. 22 ¶ 11. He is a practicing surgical oncologist and also teaches medicine at Emory University as the Surgical Clerkship Director. *Id.*

"Following the Hamas-led terror attacks in Israel on October 7, 2023, Dr. Winer felt a religious, moral, and national responsibility to protect the Jewish people and the Jewish homeland[.]" *Id.* "[H]e took a leave of absence

to volunteer in one of the IDF's elite reconnaissance units, where he served in Gaza in his capacity to provide medical care to wounded soldiers." *Id.* ¶¶ 11, 33–34. He did not serve in a combat role, but "engaged in defensive combat solely in the event that his unit was directly attacked," otherwise "serv[ing] . . . exclusively in his capacity as a physician." *Id.* ¶ 51. Dr. Winer served with honor—he categorically did not commit, participate in, or aid and abet genocide, *id.* ¶ 2, he is not a racist, *id.* ¶ 146, and he in no way destroyed the Gazan healthcare system, *id.* ¶ 41.

In March 2024, Dr. Winer authored and published an op-ed in the *Times of Israel* describing his decision to volunteer as a physician in the IDF. *Id.* ¶¶ 31–34. The op-ed reflected on his medical service and did not discuss combat, let alone war crimes or genocide. *See id.*

About a month later, a MD/PhD candidate at Emory named Umayah Mohammad appeared on a program called "Democracy Now!" and made a series of defamatory statements accusing Dr. Winer of genocide. *Id.* ¶ 35. Mohammad accused Dr. Winer of "participat[ing] in aiding and abetting a genocide, in aiding and abetting the destruction of the healthcare system in Gaza[,] and the murder of over 400 healthcare workers[.]" *Id.* Mohammad was later suspended from the Emory School of Medicine because these comments violated the institution's code of conduct. *Id.* ¶¶ 45–48. Nevertheless, she persisted in referencing Dr. Winer in subsequent media

appearances and publications, identifying him with increasing detail and specificity. *Id.* ¶¶ 49–61.

In February of this year, nonprofit organizations CAIR-Georgia[1] and CAIR-Foundation[2] collaborated on an Instagram post (the "CAIR-Team Post") that featured a televised news segment covering Mohammad's accusations. *Id.* ¶ 123. The CAIR-Team Post did not merely republish Mohammad's remarks. In response to a user comment inquiring how to support Mohammad, CAIR Georgia replied with a link to an Email Template and Phone Script for contacting Emory on Mohammad's behalf. *Id.* ¶ 124. Both the Email Template and Phone Script explicitly identified Dr. Winer by name, repeated the defamatory allegations about him, and demanded that Emory and the School of Medicine investigate him or terminate his employment. *Id.*; *see also id.* ¶¶ 86–87 (full text of the Email Template and Phone Script). On information and belief, Dr. Winer alleges that CAIR National "collaborated with CAIR-Georgia to disseminate . . . the Email Template and Phone Script." *Id.* ¶ 171.

These were not isolated expressions of separate speakers, but a coordinated campaign to target Dr. Winer based on his Jewish, Israeli, and

---

[1] CAIR stands for "Council on American-Islamic Relations."
[2] Referred to in the Amended Complaint as "CAIR National."

Zionist[3] identity, as well as his association with the IDF. *Id.* ¶ 8. The object of this coordination was "to intimidate [Dr. Winer,] . . . suppress his rights to free speech and association," and "stigmatize, isolate, and eliminate [him] from . . . professional and academic life" in the Emory community. *Id.* ¶¶ 8, 10. CAIR-Foundation participated in this conspiracy by "publicizing knowingly false statements about [Dr. Winer] with the intent of damaging his reputation and career," as well as "encouraging others to echo and amplify these claims" through the Email Template and Phone Script. *Id.* ¶ 10; *see also* Dkt. 22 ¶¶ 123, 148, 171.

## II.    Procedural History

Dr. Winer filed this lawsuit in April of this year, alleging Defamation, False Light Invasion of Privacy, and Civil Conspiracy. *See generally* Dkt. 1. He amended his complaint about a month later to add a claim for conspiracy to violate civil rights under 42 U.S.C. § 1985(3). *See generally* Dkt. 22. The complaint names several defendants, including CAIR-Foundation, alleging each of the four claims just discussed against them all. *See id.* at pg. 1 & ¶¶ 141, 156, 164, 179. CAIR Foundation's conduct is clearly spelled out in paragraphs 5, 16, 123, 148, and 171.

---

[3] To be clear, for purposes of the Amended Complaint, Zionism refers to "the belief in the right of the Jewish people to self-determination in their ancestral homeland," the land of Israel or "Judea." Dkt. 22 ¶ 28.

## ARGUMENT

## I.    CAIR-Foundation's procedural objections are meritless.

### A.    The Amended Complaint is not a shotgun pleading.

"Rule 8(a)(2) requires a complaint to include 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015). "Rule 10(b) further provides [that] a party must state its claims or defenses in numbered paragraphs" and, "[i]f doing so would promote clarity, each claim. . . must be stated in a separate count[.]" *Id.* The Amended Complaint meets this low bar.

The Amended Complaint alleges four, plainly stated claims against all defendants, in carefully numbered paragraphs, and each describing a distinct legal wrong. *See, e.g.*, Dkt. 22 ¶¶ 141 (Count I: "*Defendants* made numerous false and defamatory statements," which are listed party by party in the proceeding paragraphs), 156 (Count II: "*Defendants* statements . . . were made with actual malice and reckless disregard for the truth"), 164 (Count III: " Defendants . . . combined and conspired with one another to defame Plaintiff and to place him in a false light"), 179 (Count IV: "Defendants . . . executed a common plan to deprive Plaintiff of his constitutional rights and privileges on account of his Jewish identity").

With respect to CAIR-Foundation, the Amended Complaint clearly identifies the conduct relative to each count. Dr. Winer alleges that CAIR Foundation defamed and portrayed him in a false light by producing and disseminating an Instagram post—complete with an Email Template and Phone Script to act on CAIR Foundation's message—in conspiracy with (at least) CAIR Georgia. *See* Dkt. 22 ¶¶ 5–6, 123, 148 (Count I), 155–56 (Count II), 164, 171 (Count III), 179 (Count IV). None of this is vague or boilerplate. It specifies the who, what, when, and how—satisfying Rules 8 and 10.

CAIR Foundation nonetheless insists that the Amended Complaint "is the epitome of a shotgun pleading." Dkt. 63-1 at 6. First, CAIR Foundation argues that the first paragraph of each Count "repeats and re-alleges each of the foregoing paragraphs as if set forth fully herein." *Id.* But read fairly, "this is not a situation where a failure to more precisely parcel out and identify the facts relevant to each claim materially increased the burden of understanding the factual allegations underlying each count." *Weiland*, 792 F.3d at 1325.

Each of the four claims is clearly pleaded, and each logically builds on the last. The factual allegation supporting Defamation (Count I) also support False Light Invasion of Privacy (Count II), and both serve as the predicate torts for the conspiracy claims in Counts III and IV. CAIR Foundation clearly understands this structure —indeed, it argues that "[a]bsent the underlying tort, there can be no liability for civil conspiracy." Dkt. 63-1 at 20 (quotation

omitted). "This may explain why [CAIR-Foundation] did not move for a more definite statement [pursuant to] Rule 12(e)"—because it "could and did understand the claims that [are] stated[.]" *Weiland*, 792 F.3d at 1324.

Next, CAIR-Foundation argues that the Amended Complaint does not specify which counts are asserted against which Defendants. Dkt. 63-1 at 6. That is plainly incorrect. Each of the four claims is expressly asserted against "Defendants," which clearly refers to all of them.

Finally, CAIR Foundation professes not to know what conduct it is alleged to have undertaken, and yet it accurately notes elsewhere that it "is mentioned in the [Amended Complaint] only 11 times." Dkt. 63-1 at 2. Indeed, CAIR-Foundation found a way to articulate reasons for dismissal as to each count—confirming that it fully understands the allegations. There is no genuine confusion, and the Amended Complaint is plainly not a shotgun pleading.[4]

## B. Dr. Winer's claims are not barred by Georgia's anti-SLAPP statute because the anti-SLAPP statute doesn't apply in federal court.

CAIR Foundation next argues that this Court must dismiss and award them attorney's fees under Georgia's anti-SLAPP statute. Dkt. 63-1 at 8.

---

[4] Regardless, re-pleading, not dismissal, is the ordinary remedy of first resort. *See Weiland*, 792 F.3d at 1323 n.10 (collecting cases). Should the Court deem that re-pleading appropriate here, Dr. Winer is prepared to do so.

That argument is foreclosed. The Eleventh Circuit has specifically held that "[federal courts] cannot apply the dismissal provision of Georgia's anti-SLAPP statute." *Carbone v. Cable News Network, Inc.,* 910 F.3d 1345, 1350 (11th Cir. 2018) (explaining that Georgia's anti-SLAPP statute requires a showing of merit (probability) that is inconsistent with Federal Rules 8 and 12 (plausibility) and 56 (genuine issue of material fact). It also improperly imposes an evidentiary burden before discovery absent a showing of good cause).[5]

## C.    The defamation and false light claims are not barred by Section 230.

Last among its procedural objections, CAIR-Foundation argues that, because its tortious conspiracy was carried out on a social media platform, Dr. Winer's defamation and false light claims are barred by Section 230 of the Communications Decency Act, dkt. 63-1 at 11–16, which provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1) (emphasis added). "Essentially," this means that "'providers and users of interactive computer services' are

---

[5] Even if the anti-SLAPP statute could be applied in federal court, the amended complaint alleges actionable torts (discussed below), so the anti-SLAPP defense therefore fails on the merits. CAIR Foundation's invocation of the anti-SLAPP argument simply repackages its other defenses, none of which withstand scrutiny. The claims here would not be barred in state court and certainly do not warrant dismissal here.

immunized from liability 'when the defamatory or obscene material is provided by someone else." *Tanisha Systems, Inc. v. Chandra*, No. 1:15-CV_2644, 2015 WL 10550967 at *8 (N.D. Ga. Dec. 4, 2015) (brackets omitted) (quoting 47 U.S.C. § 230(c)(1)). That argument fails for two reasons.

First, the Amended Complaint plausibly alleges that CAIR Foundation was indeed responsible for the content of the CAIR-Team Post—not merely that it passively shared defamatory statements made by others. The Amended Complaint specifically pleads that CAIR Georgia and CAIR Foundation "collaborated" on the CAIR-Team Post, dkt. 22 ¶ 123. Discovery will clarify whether CAIR-Foundation played a role in the content of the news segment or the drafting of the Email Template and Phone Script. The Amended Complaint clearly alleges that CAIR-Foundation did more than republish—it adopted and amplified the defamatory allegations by urging others to act against Dr. Winer. The adoption is clear by the framing of the CAIR-Team Post in which both CAIR-Foundation and CAIR-Georgia asserted that Defendant Umaymah Mohammad was "wrongfully suspended" and called for her reinstatement. *Id.* ¶ 124. *See Tanisha Systems,* 2015 WL 10550967 at *8 ("Tanisha Systems alleges that Jayaprakash and Chandra operated as a team to create the defamatory blog post at issue and to reinforce its impact . . . . This kind of assistance plausibly suggests that Chandra created or developed the information in whole or in part." (quotation

omitted)). *See also La Liberte v. Reid*, 966 F.3d 79, 89 (2d Cir. 2020) (the defendant "went way beyond her earlier retweet of Vargas in ways that intensified and specified the vile conduct that she was attributing to La Liberte.")

Second, Section 230 immunity is an affirmative defense, not an element of Dr. Winer's claims. *See Florida Abolitionist v. Backpage.com LLC*, 2018 WL 1587477, at *4–5 (M.D. Fla. Mar. 31, 2018). A plaintiff "need not anticipate and negate affirmative defenses." *Isaiah v. JP Morgan Chase Bank*, 960 F.3d 1296, 1304 (11th Cir. 2020). And a complaint should not be dismissed on the basis of an affirmative defense unless the defense is apparent on the face of the pleading. *See id.* Courts routinely deny motions to dismiss based on Section 230 immunity for exactly this reason. *Florida Abolitionist*, 2018 WL 1587477, at *5 (collecting cases). Because the Amended Complaint plausibly alleges CAIR-Foundation's active role in the creation, adoption, and dissemination of the defamatory materials, immunity is not apparent here. *See Doe v. GTE Corp.*, 347 F.3d 655, 657 (7th Cir. 2003).

CAIR-Foundation's contrary position simply misapplies the Rule 12(b)(6) standard. CAIR-Foundation insists that it merely shared a previously broadcasted news segment and a link to the Email Template and Phone Script that, in each case, was created by another information content provider. Dkt. 63-1 at 13. But on a motion to dismiss, it is Dr. Winer, not

CAIR Foundation, that is entitled to have the facts read in the most favorable light. The reasonable inference to be drawn from the facts here is that CAIR-Foundation did not merely re-post the defamatory material, but adopted and amplified them as their own, urging others to take up Mohammad's crusade against Dr. Winer.[6]

Simply put, "the issue of CDA immunity cannot be resolved on a Rule 12(b)(6) motion to dismiss in this case." *Florida Abolitionist*, 2018 WL 1587477, at *5. The Amended Complaint alleges direct responsibility for defamatory content, which forecloses dismissal on this ground.

## II. The Amended Complaint states a claim against CAIR-Foundation for defamation per se.

To prove a claim of defamation, a plaintiff is required to show: "(1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication to a third party; (3) fault by the defendant amounting at least to negligence; and (4) special harm or the actionability of the statement irrespective of special harm." *Infinite Energy, Inc. v. Pardue*, 713 S.E.2d 456, 460 (2011) (quoting *Mathis v. Cannon,* 573 S.E.2d 376 (Ga. 2002)).[7]

---

[6] In point of fact, it is not yet known who created the Template or the Script, though there is reason to think Mohammad participated in drafting the Phone Script. Dkt. 22 ¶ 86. So even if they originated before the CAIR-Team post, CAIR-Georgia and CAIR-Foundation may still be partially responsible for its contents.

[7] "Both libel and slander constitute defamation." *Swanson Towing & Recovery, LLC v. Wrecker 1, Inc.*, 802 S.E.2d 300, 305 (Ga. Ct. App. 2017).

The Amended Complaint easily states a claim under that rubric. Dr. Winer alleges that CAIR-Foundation is responsible for the CAIR-Team Post accusing Plaintiff of aiding and abetting genocide, war crimes, and the destruction of the Gazan healthcare system, and further branded him a racist supporter of apartheid, dkt. 22 ¶ 123, 124, 85–86, all of which are verifiably false, *see, e.g.*, *id.* ¶ 41. They are also of such gravity that "malice is inferred from the character of the charge" alone, O.C.G.A. § 51-5-5, and "damage is inferred." O.C.G.A. § 51-5-4. The Amended Complaint further alleges concrete reputational and emotional harm, including "significant, ongoing and enduring public embarrassment, emotional distress, and harm to his professional reputation," dkt. 22 ¶ 135; *see also id.* ¶ 151 (noting that the defamatory statements "were especially injurious because Plaintiff is a physician and medical school professor").

CAIR-Foundation raises a host of arguments as to why this claim should not proceed to discovery. None has merit.

### 1. The false statements here are not mere political opinions.

First, CAIR-Foundation argues "the statements in the [CAIR-Team] Post constitute opinion-based, political speech based on accurate, disclosed facts." Dkt. 63-1 at 6–7. That is wrong—twice over.

To start with, the statement "[t]his man *participated in* aiding and abetting a genocide, in aiding and abetting the destruction of the healthcare system in Gaza" dkt. 22 ¶ 123 (emphasis added), is plainly the kind of statement that "can reasonably be interpreted . . . to state or imply defamatory facts about the plaintiff that are capable of being proved false." *Gast v. Brittain,* 589 S.E.2d 63, 64 (Ga. 2003). Even if the belief that *the Israel-Hamas war* is a genocide could be characterized as an opinion—in the most abstract sense that any idea about world events may be called an opinion, however unfounded—Mohammad's statement goes further. It plainly asserts as a matter of fact that Dr. Winer personally "participated" in such unconscionable acts. *See* Dkt. 22 ¶ 123. Genocide and the destruction of a healthcare system are not matters of opinion; they are concrete acts which Dr. Winer either did or did not do—and he did not. *See id.* ¶ 41. To the extent CAIR-Foundation means to suggest that these statements should be read as merely expressing the opinion that *any* Israeli military service in Gaza constitutes "aiding and abetting," that is not only deeply offensive, but also an inference in CAIR-Foundation's favor, which is not permissible at the motion to dismiss stage.

What's more, the fact that "the Statement *involves* a matter of public concern—the Israel Palestinian conflict—" does not shield it from defamation liability. Dkt. 63-1 at 7. "There is ... no wholesale defamation exception for

anything that might be labeled 'opinion.'" *Gast,* 589 S.E.2d at 64. The defamatory statement here is *not* merely "that genocide has occurred," Dkt. 63-1 at 7, but that Dr. Winer himself aided and abetted genocide, war crimes, and the destruction of the Gazan healthcare system, dkt. 22 ¶ 148—all of which the Amended Complaint alleges is false, *id.* ¶ 41. At a minimum, that is the inference to be drawn viewing the facts alleged in the light most favorable to Dr. Winer. It may be popular rhetoric to decry the Israel-Hamas war as genocide, and common agitprop to paint anyone who doesn't militantly oppose Israel as complicit, but that does not transform the CAIR-Team Post into non-actionable opinion.

Finally, CAIR-Foundation omits other defamatory statements alleged in the Amended Complaint. Paragraph 171 alleges that "CAIR National collaborated with CAIR-Georgia to disseminate defamatory materials online, including . . .the Email Template and Phone Script." And those materials are, if anything, even more clearly defamatory. *See id.* ¶¶ 86, 87. CAIR Foundation denies responsibility for the content of those scripts, dkt. 63-1 at 15 n.5, but that denial is premature—the Amended Complaint alleges CAIR-Foundation's involvement, dkt. 22 ¶ 171, and further pleads that the CAIR-Team Post promoted the scripts in response to a specific question about how to support Mohammad.

###### 2.    Dr. Winer is not a limited public figure and, even if he is, the Amended Complaint alleges actual malice.

Next, CAIR-Foundation argues that Dr. Winer was a limited public figure for purposes of the Israel-Hamas conflict, which would require him to show actual malice to prevail on his defamation claim, on the basis that he wrote an op-ed about his service in the IDF. Dkt. 63-1 ¶¶ 17–19. *See Krass v. Obstacle Racing Media,* LLC, 667 F.Supp.3d 1177, 1210 (N.D. Ga. Mar. 21, 2023) ("actual malice is . . . knowledge that a statement is false or a reckless disregard as to its truth"). But Dr. Winer does not allege he is a public figure, limited or otherwise, and CAIR-Foundation cites no authority holding that a single Op-Ed discussing a matter of public concern transforms a person into a limited public figure for purposes of *defamatory* accusations *about that person's* own conduct.

Regardless, limited-public-figure status would not warrant dismissal. CAIR-Foundation's only argument that Dr. Winer cannot show actual malice is its argument that he would have to "disprove that genocide in Gaza has occurred," dkt. 63-1 at 19—a premise that is incorrect for the reasons already discussed.  Dr. Winer *can* show that *he* did not aid and abet genocide, war crimes, the destruction of the Gazan healthcare system and that he is not a racist that supports apartheid, dkt. 22 ¶ 41, 148, and thus can plainly establish actual malice.

### 3.    An incorrect statutory citation is not grounds for dismissal.

Last, CAIR-Foundation seeks a quick out of this case by pointing out that the statute cited at the beginning of the defamation per se claim is O.C.G.A. § 51-5-4(a), which covers slander (the spoken-word species of defamation), not libel (the written form). Dkt. 63-1 at 16–17. That argument does not carry, especially since the standards for slander per se and libel per se are the same. Dkt. 22 ¶ 139; supra note 8.

"[C]itation to the wrong provision of a statute is not proper grounds for dismissal." *Cherry v. Allen*, 765 F. Supp. 3d 1321, 1350 (S.D. Ga. Feb. 4, 2025) (collecting cases); *Garrett v. Unum Life Ins. Co. of America*, 427 F. Supp. 2d 1158, 1161 (M.D. Ga. Dec. 22, 2005) (even "the failure in a complaint to cite" an applicable statute "in no way affects the merits of a claim" (quotation omitted)). At most, re-pleading would be warranted, but even that would serve little purpose here: the Amended Complaint makes clear that CAIR-Foundation is alleged to have committed libel, *see* dkt. 22 ¶¶ 123, 148, 171—as evidenced by CAIR-Foundation's own lengthy substantive analysis of that claim on the merits.[8]

---

[8] Under the same heading, CAIR-Foundation suggests in passing that Dr. Winer did not identify any portion of the CAIR-Team Post as being calculated to injure him with respect to his trade. That's wrong twice over.  He did in fact make such allegations, *see* dkt. 22 ¶ 135, 151, and such allegations are not necessary here in any event, *see* O.C.G.A. § 51-5-4(b) ("damage is

* * *

In short, Dr. Winer alleges that CAIR Foundation falsely accused him, personally, of aiding and abetting genocide, war crimes, the destruction of Gazan healthcare, and of being a racist who supports an apartheid regime. Those statements cross the line from opinion to falsifiable fact, and Dr. Winer has more than sufficiently stated a claim for relief.[9]

### III. The Amended Complaint states a claim against CAIR-Foundation for false light invasion of privacy.

To state a claim for false light invasion of privacy, a plaintiff must (1) "show the existence of false publicity that depicts the plaintiff as something or someone which he is not" and (2) "must demonstrate that the false light in which he was placed would be highly offensive to a reasonable person." *Doe v. Roe*, 864 S.E.2d 206, 216 (Ga. Ct. App. 2021) (quotation omitted).

The Amended Complaint satisfies both prongs. First, CAIR-Foundation is jointly responsible for the CAIR-Team post accusing Plaintiff of aiding and abetting genocide, war crimes, the destruction of the Gazan healthcare system, and of supporting apartheid. Dkt. 22 ¶¶ 123, 148(a), 171. Needless to say, the Amended Complaint alleges those scandalous accusations are false.

---

inferred" from the nature of the statements here).

[9] CAIR Foundation also purports to incorporate CAIR-Georgia's arguments in its motion to dismiss. Dkt. 63-1 at 6. To whatever extent that is permitted, Dr. Winer's brief in response to CAIR-Georgia's motion responds to those arguments.

Dr. Winer served in the IDF exclusively in his capacity as a physician and only engaged in defensive combat when directly attacked. *Id.* ¶ 36. Second, the Amended Complaint alleges that such a false light is highly and objectively offensive. *Id.* ¶¶ 157–58.

Unable to contest this on the merits, CAIR Foundation instead argues that Dr. Winer failed to state a claim for false light because CAIR Foundation "is not even mentioned in Count II of Plaintiff's Amended Complaint." Dkt. 63-1 at 20. But again: all four claims are clearly alleged against all Defendants, and the Amended Complaint makes unmistakably clear what CAIR-Foundation did to commit this tort.

## IV. The Amended Complaint states a claim against CAIR-Foundation for civil conspiracy.

"To recover damages for a civil conspiracy claim, a plaintiff must show that two or more persons, acting in concert, engaged in conduct that constitutes a tort." *Mustaqeem-Graydon v. SunTrust Bank*, 573 S.E.2d 455, 461 (Ga. App. 2002). Here, the Amended Complaint alleges that (through the CAIR-Team Post, which included the link to the Email Template and Phone Script) CAIR-Foundation collaborated with CAIR-Georgia and Mohammad to defame Dr. Winer and portray him in a false light, with the intent of tarnishing his reputation in the Emory community. Dkt. 22 ¶¶ 123, 148, 162–

76. That is more than sufficient to plead coordinated action in furtherance of a common, unlawful design.

Beyond its recycled and meritless arguments about shotgun pleading and Section 230, CAIR Foundation's principal argument is that it "did not create the post, did not comment on the post, and did not provide any additional information that could be construed as defamatory[.]" Dkt. 63-1 at 21. Once again, CAIR Foundation disregards the standard of review. Dr. Winer plainly alleges that CAIR-Foundation collaborated on the post, dkt. 22 ¶¶ 123, 148, 171, which is to say CAIR-Foundation took affirmative steps in furtherance of the conspiracy. CAIR-Foundation's suggestion that it "was merely tagged as a collaborator," dkt. 63-1 at 21, is not only wrong as a technical matter,[10] but also relies on technical details not alleged in the Amended Complaint, and fails to read the facts regarding those details in the light most favorable to Dr. Winer.

---

[10] *See* Techrona, *How To Do A Joint Post On Instagram 2025* (iPhone & Android), YOUTUBE (Apr. 7, 2025) https://www.youtube.com/watch?v=-J16hODzNQk (explaining that one user must create the post, select "Invite Collaborators" (0:32) and choose the user it wishes to jointly share the post with (0:43), and the invited user must affirmatively accept the invitation to jointly share the post (0:56)).

## V.    The Amended Complaint states a claim under 42 U.S.C. § 1985(3).

To state a cause of action under 42 U.S.C. § 1985(3), a plaintiff must allege (1) a conspiracy (2) for the purpose of depriving either directly or indirectly, a person or class of persons of the equal protection of the laws, or the equal privileges and immunities; (3) an overt act in furtherance; and (4) an injury or deprivation of a right. *See Dean v. Warren*, 12 F.4th 1248, 1255 (11th Cir. 2021). Count IV alleges that the defendants conspired to deprive Dr. Winer of his rights on account of his Jewish identity and Zionist beliefs, including by branding him a war criminal and racist based on his Israeli military service, and by urging Emory to terminate his employment. Dkt. 22 ¶¶ 179–82, 187.

CAIR-Foundation argues that the § 1985 claim is not alleged against it. Dkt. 63-1 at 22.  Again, that is incorrect—CAIR Foundation is one of the defendants, and its role is more than adequately described.

CAIR-Foundation further argues that the Amended Complaint does not establish how its collaboration on the CAIR-Team post constitutes a conspiracy. *Id.* at 23. But the Amended Complaint is clear: CAIR Foundation collaborated with CAIR-Georgia to create and promote the defamatory CAIR-Team Post to destroy Dr. Winer's career, reputation, and livelihood by pressuring Emory University to sever all ties with him. These actions were

allegedly driven by anti-Jewish animus, and intended to expel Dr. Winer from public and professional life.

Although "the rights protected under Title VII" have been held "insufficient to form the basis of § 1985(3) actions against private conspirators," *Jimenez v. Wellstar Health System*, 596 F.3d 1304, 1312 (11th Cir. (2010) (citing *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366 (1979)), those cases relied on the detailed remedial scheme in place for a Title VII plaintiff *against their employer*. *See Novotny*, 442 U.S. at 378. Here, by contrast, the Amended Complaint does not seek to bypass the remedial scheme for a Title VII claim against Emory, but rather to hold the defendants accountable for a conspiracy to *provoke* Emory to terminate Dr. Winer because of his Jewish identity—a *result* that would violate Title VII. A conspiracy calculated to produce that unlawful outcome is an "indirect" deprivation of equal protection squarely within § 1985(3).

Section 1985(3) also extends to conspiracies burdening the constitutional right to interstate travel. *Griffin v. Breckenridge*, 403 U.S. 88 (1971). By branding Dr. Winer a "genocidal war criminal," which could subject him to arrest and prosecution, *see* 18 U.S.C. § 2441, the defendants sought to erect barriers to his ability to move, teach and practice medicine across state lines—an "indirect" deprivation that § 1985(3) prohibits.

Next, CAIR-Foundation argues that the CAIR-Team Post was not meant to harm Dr. Winer, but rather to support Mohammad. Dkt. 63-1 at 24. That argument is not only unpersuasive, it improperly rests on inferences drawn in CAIR-Foundation's favor, not Dr. Winer's.

Finally, CAIR-Foundation argues that a §1985(3) claim must involve a state actor and a racial or class-based discriminatory animus. However, the Supreme Court has held that a §1985(3) reaches purely private conspiracies where the right at issue is one that can be violated without state action. *See Griffin*, 403 U.S. 88. Additionally, Jewish identity qualifies as a protected class. As the Supreme Court recognized in *Shaare-Tefila Congregation v. Cobb*, 481 U.S. 615, 617–18 (1987), Jews constitute a protected racial group. *See also CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 448, (2008).

CAIR-Foundation's attempt to rely on CAIR-Georgia's argument that they were merely engaging in "anti-Zionist" advocacy fails. For many Jews, Zionism is not merely political, but an expression of racial and ethnic identity. *See LeBlanc-Stenberg v. Fletcher*, 781 F. Supp. 261, 267 (S.D.N.Y. 1991) ("Because Jewish culture, ancestry, and ethnic identity are intricately bound up with Judaic religious beliefs, racial and religious discrimination against jews cannot be . . . easily distinguished," which is why the Supreme Court has found "that Jews are entitled to the protections of §§ 1981 and 1982.") Anti-Zionist campaigns that single out Jewish professionals for

exclusion, humiliation, and reputational destruction operate as a proxy for anti-Jewish discrimination. References in the Amended Complaint to Dr. Winer's Zionist beliefs, Israeli citizenship, political views, religion, and military service are not separate identity markers—they are part and parcel of Dr. Winer's identity as a Jew. Defendants cannot insulate their conduct by rebranding it as political when, in substance, it is racial. *See Emanuel v. Barry*, 724 F. Supp. 1096, 1101 (E.D.N.Y. 1989) ("Finding . . . anti-Semitic animus actionable under section 1985(3).") The Amended Complaint alleges precisely that: Defendants branded a Jewish physician a genocidal war criminal, unfit to teach or practice medicine, and urged his employer to terminate him—all because of his Jewish identity as expressed through his Zionist beliefs, including his Israeli military service following the most brutal and extensive attack against Jews since the Holocaust. This is the type of racial animus § 1985(3) was designed to reach.

Thus, CAIR-Foundation has not shown that the § 1985(3) claim must be dismissed.

## VI.   CAIR-Foundation cannot seek dismissal of the prayer for injunctive relief.

CAIR Foundation also challenges the request for an order to cease and desist, arguing it a "prior restraint" and therefore "not an appropriate remedy." Dkt. 63-1 at 24.

This, also, is meritless at this stage. For one thing, injunctions against defamation are not categorically impermissible. *See, e.g., Cohen v. Advanced Med. Grp.*, 269 Ga. 184, 496 S.E.2d 710, 711 (1998). Regardless, a challenge to one form of relief is not a basis for dismissal. Even where a complaint requests "inappropriate relief," a court "will not dismiss [that request] for failure to state a claim." *MI Windows & Doors, LLC v. Liberty Mut. Fire Ins. Co.*, 123 F. Supp. 3d 1332, 1341 (M.D. Fla. 2015) (quotation omitted); *see also Fla. Action Comm., Inc. v. Seminole Cnty.*, 212 F. Supp. 3d 1213, 1229 (M.D. Fla. 2016).

## CONCLUSION

For these reasons, the Court should deny CAIR-Foundation's motion to dismiss.

Respectfully submitted this 21st day of August, 2025.

Lauren Israelovitch
Mark Goldfeder
Ben Schlager
NATIONAL JEWISH
   ADVOCACY CENTER, INC.
3 Times Square
New York, NY 10036
lauren@njaclaw.org
*Pro Hac Vice*

*/s/ Miles C. Skedsvold*
Josh Belinfante
Anna Edmondson
Miles Skedsvold
ROBBINS ALLOY BELINFANTE
   LITTLEFIELD LLC
500 14th Street, NW
Atlanta, Georgia 30318
T: (678) 701-9320
E: mskedsvold@robbinsfirm.com
Ga. Bar. No. 371576

(Additional counsel on next page)

David Forman Katz
WEISSMANN ZUCKER
   EUSTER & KATZ, P.C.
3495 Piedmont Road
Building 11, Suite 950
Atlanta, GA 30305
dkatz@wzlegal.com
Ga. Bar. No. 408738

Esther Panitch
THE PANITCH LAW GROUP, PC
4243 Dunwoody Club Drive
Suite 205
Atlanta, GA 30350
esther@panitchivory.com
Ga. Bar. No. 143197

## **CERTIFICATE OF COMPLIANCE**

By signature below, counsel certifies that the foregoing pleading was prepared

in Century Schoolbook, 13-point font, in compliance with Local Rule 5.1(C).

_/s/ Miles C. Skedsvold_
Miles C. Skedsvold

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day electronically filed the within and foregoing **PLAINTIFF JOSHUA WINER'S RESPONSE TO CAIR-FOUNDATION INC.'S MOTION TO DISMISS** with the Clerk of Court using the CM/ECF electronic filing system, which suffices for service on all counsel of record who have entered an appearance in the case under L.R. 5.1(A)(3).

This 21st day of August, 2025.

*/s/ Miles C. Skedsvold*
Miles C. Skedsvold

I further certify that I have this day served the foregoing **PLAINTIFF JOSHUA WINER'S RESPONSE TO CAIR-FOUNDATION INC.'S MOTION TO DISMISS** via U.S. Mail upon the following parties:

Defendant Umaymah Mohammed
c/o Jonathan Wallace
P.O. Box #728
Amagansett, NY 11930

Defendant AJP Educational
    Foundation, Inc.
c/o Registered Agent Osama Abu Irshaid
6404 Seven Corners Pl, Suite N
Falls Church, VA 22044

Defendant Rupa Marya
c/o Jonathan Wallace
P.O. Box #728
Amagansett, NY 11930

Defendant Sean Eren, as
Representative of National
Students for Justice in Palestine
710 Riverside Drive
Apt. 2C
New York, NY 10031

Defendant Ibrahim Jouja, as
Representative of Emory Students for
Justice in Palestine
6301 Glen Hill Road
Louisville, KY 40222

Defendant Doctors Against
Genocide Society
c/o Registered Agent Nidal Jboor
25614 Ford Road
Dearborn Heights, MI 48127

Defendant WESPAC Foundation, Inc.
77 Tarrytown Road, Suite 2W
White Plains, NY 10607


This 21st day of August, 2025.

/s/ Miles C. Skedsvold
Miles C. Skedsvold