UNITED STATES DISTRICT COURT FOR THE NORTHERN
DISTRICT OF GEORGIA ATLANTA DIVISION

-----------------------------------------------------------------------------------------x

Joshua Winer,

        Plaintiff,

v.                                                                         Case No. 1:25-CV-02329

Umaymah Mohammad, AJP Educational Foundation, Inc.
A/K/A American Muslims for Palestine, WESPAC Foundation, Inc.,
Sean Eren as the representative of National Students for Justice in
Palestine, Doctors Against Genocide Society, CAIR-Nga Inc.
A/K/A CAIR-Georgia, CAIR Foundation Inc.,
A/K/A Council on Islamic Relations or CAIR, Rupa Marya,
Ibrahim Jouja as representative of Emory Students for Justice
in Palestine.

        Defendants.

-----------------------------------------------------------------------------------------x

**DEFENDANTS UMAYMAH MOHAMMAD'S BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

Defendant Umaymah Mohammad files this Brief in Support of her Motion to Dismiss Plaintiff's First Amended Complaint ("FAC") for failure to state a cause of action under FRCP 12(b)(6).

**PRELIMINARY STATEMENT**

Ms. Mohammad joins in the arguments made by Defendants CAIR National

and CAIR Georgia in their Memoranda of Law as to the FAC's failure to state a cause of action.

Ms. Mohammad especially wishes to call to this Court's attention that the original Complaint was based on diversity jurisdiction and asserted only Georgia tort claims. When counsel called to Plaintiff's attention that complete diversity did not exist (Ms. Mohammad is a resident of Georgia), he filed a First Amended Complaint adding a vague and dubious 1985(3) claim, flying in the face of case law limiting that statute's use against private actors to circumstances not present here. First and foremost, and as a threshold matter, this case should be dismissed for lack of a federal question.

## THE FACTS

Professor Winer sues a wide variety of defendant individuals and organizations for defamation, false light, civil conspiracy, and (as mentioned before) a clearly "ret-conned" 1985 claim. He accuses Ms. Mohammad, a student at his own medical school, of uttering defamatory statements (the other tort claims, and indeed the 1985 claim, are all based on the same utterances).

Ms. Mohammad joins the other moving defendants in asserting that all of the statements on which Dr. Winer bases his claims are First Amendment-protected speech; that they are also statements of opinion and not falsifiable facts, so cannot

be defamatory; that Dr. Winer, by his own actions such as publishing articles about his IDF service, is a public figure, yet the FAC only makes conclusory statements about actual malice, unsupported by any facts; and that injunctive relief would constitute an impermissible prior restraint on speech.

## ARGUMENT

### Point One

### THE STANDARD

"Rule 12(b)(6) allows for dismissal of a case when the complaint"fail[s] to state a claim upon which relief may be granted.' Fed. R. Civ. P. 12(b)(6). When evaluating a Rule 12(b)(6) motion, the court must take the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff. To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant [*5] is liable for the misconduct alleged. This requires more than mere labels and conclusions, and a formulaic recitation of a cause of action's elements. The plaintiff must allege facts that raise the right to relief above the speculative level", *Claros v Taylor Lee*

*& Assoc. LLC,* 2018 US Dist LEXIS 224591, at *4-5 (ND Ga Sep. 18, 2018, No. 1:18-CV-02204-CAP)*, citing Ashcroft v. Iqbal,* 556 U.S. 662, 678, (2009) and *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).[1]

**Point Two**

**THE FAC ASSERTS NO FEDERAL QUESTION**

Section 1985 claims are typically directed against private actors who have conspired with state actors to deny a plaintiff's civil rights. In a small subset of cases, a 1985 claim may lie against strictly private actors, but this is not one of them, *Prunty v Arnold & Itkin LLP,* 753 F App'x 731, 736 (11th Cir 2018) ("The only rights the Supreme Court has expressly declared enforceable against private conspirators under § 1985(3) are the right to interstate travel and the right against involuntary servitude.").

Dr. Winer's Section 1985 claim, a clear afterthought, is severely incapacitated because shotgun-pled (see Point Three)-- counsel is, and predicts this Court will also be, unable to "ascertain exactly which facts formed the basis of the plaintiffs' federal law claims", *Strategic Income Fund, L.L.C. v Spear, Leeds & Kellogg Corp.,* 305 F3d 1293, 1295-1296 (11th Cir 2002) "[C]onclusory allegations of discrimination and conspiracy, without more, are not sufficient to

---

[1] Citations in this Memorandum are generally "cleaned up", with quotation marks and internal citations deleted.

support a § 1985 claim", *Santillana v. Florida State Court Sys.,* 450 F. App'x 840, 844 (11th Cir. 2012).

The FAC should be dismissed because it fails to state a federal cause of action.

## Point Three

### THE FAC IS AN IMPERMISSIBLE SHOTGUN PLEADING

The FAC includes numerous irrelevant and prejudicial assertions about Ms. Mohammad, for example, that she is "an anti-Israel organizer that[2] has repeatedly publicly praised terrorism against Israel and expressed her hatred towards the United States and Israel" (paragraph 12); "In the SOM Email, Mohammad praised terrorism against Israel, expressed her hatred towards Israel and the United States, and stated that Israel, the United States, and Emory are perpetrating a genocide against Palestinians in Gaza. The content of the email was laden with misinformation and closely mirrored the propaganda typically propagated by Hamas, a United States designated Foreign Terrorist Organization[3]....These views

---

2  Why not "who"?

3  It is ironic, and evinces a double standard, that Dr. Winer feels entitled to call Ms. Mohammad a terrorist, but argues it was in violation of his civil rights for her to call him a supporter of genocide-- and note that statements about genocide are opinions, see Point Six, while calling someone a terrorist is actually defamatory, *Khalil v Fox Corp.,* 630 F Supp 3d 568, 582-583 (SDNY 2022) ("[S]tatements in the tweets such as "Khalil is a liaison with Hezbollah"

are consistent with those expressed in her academic writing, in which she asserts that 'Zionist Judaism' and 'the Zionist Judaic project in Palestine' are 'being used to justify the ethnic cleaning of the Palestinians and the illegal acquisition of their lands in order to replace Palestine with the settler colonial project of apartheid Israel'" (paragraph 26); Mohammad also completely mischaracterizes Zionism, which in its essence, is the belief in the right of the Jewish people to self-determination in their ancestral homeland" (paragraph 28); "When Ms. Goodman questioned why Mohammad referred to the Israeli Defense Forces as the Israeli Occupation Force, Mohammad replied: '…we reject the idea that the Israeli Offense Force is defending anything legitimate. The Israeli Offense Force has always been on the offensive, effectively enacting ethnic cleansing against the Palestinians, effectively stealing land, creating illegal settlements, checkpoints, creating conditions that are highly unlivable for Palestinians. And that's why we use the language "Israeli Offense Force," not the IDF'" (paragraph 39); As Mohammad explains in her academic writing, it is her belief that "Zionist Judaism manifest [destiny] is being used to justify the ethnic cleaning of the Palestinians and the illegal acquisition of their lands in order to replace Palestine with the settler colonial project of apartheid Israel" (paragraph 58).

    In *Yakoby v. University of Pennsylvania,* (ED PA NO. 23-4789, June 2, are capable of being proven true or false").

2025), the Court stated, in dismissing an antisemitism complaint similar to Dr. Winer's for the second time: "Plaintiffs' 111-page amended complaint sets out a wide variety of general allegations, complaints, historical and current events, and alleged antisemitic incidents that allegedly took place not just on Penn's campus, but elsewhere in the United States and the world.  The amended complaint also includes sweeping allegations of ideological, philosophical, religious, and political concerns and grievances, that have nothing to do with a federal lawsuit.   It is unclear why Plaintiffs' counsel deemed it necessary to allege so many unrelated facts when doing so is directly contrary to federal pleading requirements".

Eleventh Circuit cases similarly define what constitutes a "shotgun" pleading, *Halstead v Espinoza,* 2023 U.S. App. LEXIS 5529, at *3 (11th Cir Mar. 8, 2023, No. 21-13356)  ("[B]oth Halstead's complaints are quintessential shotgun pleadings because they contain several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions"); *Strategic Income Fund, L.L.C. v Spear, Leeds & Kellogg Corp.*, 305 F3d 1293, 1295-1296 (11th Cir 2002) ("The typical shotgun complaint contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (i.e., all but the first) contain

irrelevant factual allegations and legal conclusions. Consequently, in ruling on the sufficiency of a claim, the trial court must sift out the irrelevancies, a task that can be quite onerous. In this case, the proposed third amended complaint contains 127[4] paragraphs (six more than the second amended complaint) and nine counts, with each count incorporating by reference every paragraph that precedes it"); *Daewoo Motor Am. v GMC,* 459 F3d 1249, 1264, n 7 (11th Cir 2006), *cert. den.* 549 U.S. 1362 (2007)   ("The Amended Complaint [is] a typical 'shotgun pleading' containing multiple counts, each incorporating by reference all the (usually irrelevant) allegations of previous counts"). Speaking of irrelevant assertions, a number of paragraphs in the FAC are addressed to justifying and defending activities of the state of Israel, for example, paragraph #27: "Claims of apartheid are nonsensical because Arab Israeli citizens enjoy full and equal civil rights, including representation in the Knesset (the Israeli House of Representatives), and contribute to Israeli society as doctors, lawyers, and judges. Mohammad's accusations of Israel's engagement in ethnic cleansing is similarly false because the Arab population in Israel, including Judea and Samaria (also known as the West Bank), has grown annually since the establishment of the State of Israel". These assertions are irrelevant and add to the confusion of a shotgun pleading, because Israel is presumably not a "person" who can be defamed, *cf. Turner v*

---

4   The FAC is 190 paragraphs long.

*Corecivic Med. Dept.,* 2025 US Dist LEXIS 133531, at *3-4 (SD Ga July 14, 2025, No. 5:24-cv-77) . ("A collection of people... is... not a 'person' for the purposes of the statute"), nor would Dr. Winer have standing anyway to assert such a claim on behalf of Israel, *Warth v Seldin,* 422 US 490, 499 (1975) "[T]he plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties").

Another very shotgun-ish element of the FAC is that it is chock full of language alleging discrimination but does not actually include a Title VI, Title VII or related Georgia cause of action. The FAC, for example, asserts that defendants are antisemites (paragraphs 9, 16, and 29), and guilty of "class-based animus against Jewish, Israeli, and or Zionist individuals" (paragraph 9), and practice "discriminatory bias" (paragraph 186(d))-- but in addition to the vague, confusing 1985 claim, the FAC's causes of action, all of them state claims, are for defamation, "false light" and civil conspiracy.

The FAC also spends paragraphs 97-102 discussing the irrelevant case of Dr.Abeer Abouyabis, a physician previously terminated by Emory who is not a party to this action.

The FAC should be dismissed as a shotgun pleading.

## Point Four

## ANTI-ZIONISM IS NOT ANTISEMITISM

Dr. Winer's assertion that opposition to Zionism is a form of antisemitism (FAC paragraph #109) is an egregious ontological error. Not all Jewish people are Zionists or are offended by opposition to Zionism[5]; not all Zionists are Jews[6]; and, in fact, some Christian Zionists are antisemites[7].

Conflating all criticism of Israel with antisemitism would place an entire area of First Amendment-protected political, legal and ethical discussion off limits, withdrawing it from free speech guarantees. As the Court said in *Landau v. Corp. of Haverford Coll.,* No. 24-2044, 2025 U.S. Dist. LEXIS 1402, at *4-5 (E.D. Pa. Jan. 6, 2025): "Plaintiffs also dedicate a full eight pages of their Complaint to their effort to link Judaism to Zionism, while simultaneously insisting that they are not asking the Court to resolve any religious issues. Plaintiffs' equivocation is

---

5 Peter Beinart, "Debunking The Myth That Anti-Zionism Is Anti-Semitic", *The Forward* February 27, 2019 https://forward.com/opinion/419988/debunking-the-myth-that-anti-zionism-is-anti-semitic/ ; Shaul Magid, "'Anti-Zionism = Antisemitism' isn't Just Wrong, It's the Problem", *Religion Dispatches* December 13, 2023 https://religiondispatches.org/anti-zionism-is-antisemitism-isnt-just-wrong-its-the-problem/ .
6 william N. Dale, "The Impact of Christian Zionism on American Policy", *American Diplomacy* Volume IX, Number 2, 2004 https://ciaotest.cc.columbia.edu/olj/ad/ad_v9_2/daw01.html
7 Julian Sayarer, "The Antisemitic Face of Israel's Evangelical Allies", *Jacobin Magazine* February 20, 2022 https://jacobin.com/2022/02/israeli-us-evangelical-alliance-zionism-antisemitism

disingenuous, but likely strategic, seeking to blur the line between Zionism as a political philosophy and Zionism as a component of Jewish identity, and in the process implicitly sweep any and all criticism of Israel into the basket of antisemitism. As a threshold matter,....I reject Plaintiffs' embedded proposition that any anti-Israel speech is intrinsically antisemitic, because reasonable people acting in good faith can challenge decisions of the Israeli government without harboring antisemitic views"; *see also Canel v Art Inst. of Chicago,* 2025 US Dist LEXIS 30309, at *26-27 (ND Ill Feb. 20, 2025, No. 23 CV 17064) (Citing *Haverford;* "Plaintiff effectively asked the Court to conflate" "expressions of political viewpoints" with antisemitism); *Newman v. Point Park Univ.*, No. 2:20-cv-00204, 2022 U.S. Dist. LEXIS 60722, at *78-79 (W.D. Pa. Mar. 31, 2022) ("Despite the sensitive and important the issues these conflicting viewpoints and actions raise, as an overarching matter, such debates... have been recognized to fall within First Amendment protections when efforts have been advanced to limit or impair such advocacy...Against that backdrop, Plaintiff has not shown that Defendant has subjected her to an objectively hostile work environment by its not suppressing, or otherwise protecting Plaintiff from, the personal views and academic interests of some of Defendant's professors and students related to these geopolitical topics").

  This Court, as a state actor, in holding Zionism to be a protected class,

would in fact violate the Establishment Clause as well as the Defendant's freedom of speech. The argument that Zionism and a right to the Holy Land are cornerstones of the Jewish religion ignores both that many Jewish people do not believe this, and also that two other faiths, Christian and Muslim, also formulated such claims to the same land. A finding by this Court that anti-Zionism is antisemitism would violate the Establishment Clause by enacting one religious claim into law and penalizing competing religious claims, *Commack Self-Service Kosher Meats, Inc. v. Weiss,* 294 F.3d 415, 418 (2d Cir. 2002) (state law enforcing Orthodox Jewish standards for foods sold as "kosher" violated First Amendment by privileging one Jewish group over others).

The assertion that anti-Zionism constitutes antisemitism is therefore a nonstarter.

## Point Five

### MS. MOHAMMAD'S STATEMENTS ABOUT DR. WINER WERE FIRST AMENDMENT PROTECTED SPEECH

While Ms. Mohammad's statements about Israel and genocide were therefore in no way antisemitic, it would not matter for First Amendment purposes if they were, *Snyder v Phelps*, 562 US 443, 448 (2011) (First Amendment right to

carry signs outside soldier's funeral which said, "God Hates the USA/Thank God for 9/11," "America is Doomed," "Don't Pray for the USA," "Thank God for IEDs," "Thank God for Dead Soldiers," "Pope in Hell," "Priests Rape Boys," "God Hates Fags," "You're Going to Hell," and "God Hates You"). "[I]f there is any principle of the Constitution that more imperatively calls for attachment than any other, it is the principle of free thought -- not free thought for those who agree with us, but freedom for the thought that we hate", *United States v. Schwimmer,* 279 U.S. 644, 654-655 (1929) (Justice Holmes, dissenting).

Though Dr. Winer failed to assert a Title VI, Title VII or state discrimination claim, he appears to argue that Ms. Mohammad's speech is withdrawn from First Amendment protection because discriminatory. The Court in the recent case of *Gartenberg v Cooper Union for the Advancement of Science & Art,* 765 F Supp 3d 245, 271 (SDNY 2025), asserting a hostile antisemitic environment at Cooper Union, analyzed the boundary line between the First Amendment and Title VI: "Regardless of whether this expression is better characterized as righteous protest in support of a noble cause, as the vulgar celebration of terrorism and antisemitism, or as something in-between, it is not a proper basis on which to impose civil liability on Cooper Union. The content of the protest slogans, fliers, and other expressions described above related to the ongoing Israeli-Palestinian

13

conflict and touched upon topics like Zionism, colonialism, and racism... [A]part from a conclusory suggestion that this speech included 'threats of violence,' the Complaint does not plausibly allege that any of this expressive conduct constituted true threats, incitement, fighting words, obscenity, or any other category of traditionally unprotected speech under the Supreme Court's First Amendment jurisprudence. To the contrary, as described in the Complaint, this expression qualifies as pure speech on matters of public concern because it can be fairly considered as relating to [a] matter of political, social, or other concern to the community" and was communicated in a manner reasonably calculated to contribute to an ongoing public debate of considerable political significance."

Ms. Mohammad's First Amendment rights are implicated in a legal dispute between private parties, Dr. Winer and the individual defendants, none of whom are state entities, for the sole but very important reason that, as the *Cooper Union* court recognized, this Court is itself a government actor. "Although the primary method of enforcement of the harassment prohibition is through civil actions between private parties, imposition of liability by the courts under federal and state statutes easily falls within the definition of 'state action.'" *Gartenberg, supra,* at 260-261; *New York Times Co. v. Sullivan,* 376 U.S. 254, 265 (1964) ("Alabama courts....applied a state rule of law which petitioners claim to impose invalid

14

restrictions on their constitutional freedoms of speech and press"); *Shelley v. Kraemer,* 334 U.S. 1, 17-18 (1948) (reviewing circumstances in which court orders in civil disputes are "state action of the sort prohibited by the Amendment's guaranties of freedom of discussion"); *Perry v. Schwarzenegger*, 591 F.3d 1126, 1139 (9th Cir. 2010) (Court enforcement of subpoena would violate First Amendment); *Yelling v. St. Vincent's Health Sys.,* 82 F.4th 1329, 1344-1345 (11th Cir. 2023) ("A court cannot enforce a law in a dispute between private parties if doing so requires it to impose invalid restrictions on [a person's] constitutional freedoms of speech and press"); *Tappe v. Alliance Capital Mgmt. L.P.,* 177 F. Supp. 2D 176, 182 (SDNY 2001) ("Thus, the Court, in interpreting the statute, becomes the 'government actor'").

"The injunction issued in this case, which prohibits the appellants from republishing... particular statements, is a paradigmatic example of a prior restraint...There is a strong presumption that prior restraints on speech are unconstitutional", *Sindi v El-Moslimany,* 896 F3d 1, 31-32 (1st Cir 2018).

Ms. Mohammad's statements complained of in the FAC were "pure speech" protected by the First Amendment.

## Point Six

## MS. MOHAMMAD'S STATEMENTS ABOUT DR. WINER WERE OPINIONS

In addition to being First Amendment-protected pure speech, Ms. Mohammad's pronouncements are also nonactionable because they are expressions of opinion, not falsifiable facts. In *Gurmessa v Genocide Prevention in Ethiopia, Inc.,* 2024 US Dist LEXIS 197686, at *3-4 (D Del Sep. 11, 2024, No. 21-869-CFC) (Defendant stated that Plaintiff "openly supports genocide, glorifying torture, lynching, massacre, and ethnic cleansing of Amhara ethnic groups in [the] Oromia Region of Ethiopia." The Court held that these were statements of opinion "about matters of public concern and are...not provably false"); *Turkish Coalition of Am., Inc. v Bruininks,* 678 F3d 617, 625 (8th Cir 2012) (Statement that website discussing Armenian genocide was not credible was "essentially an opinion, not capable of being proven true or false").

Ms. Mohammad's alleged statements about Dr. Winer are analogous to others characterized as opinion in 11th Circuit courts, *Turner v Wells,* 879 F3d 1254, 1270 (11th Cir 2018) ("[T]he Report's conclusion that Coach Turner engaged in homophobic taunting is a nonactionable opinion"); *Monge v Madison County Record, Inc.,* 802 F Supp 2d 1327, 1336 (ND Ga 2011) (Statement that

16

plaintiff lawyer had "torpedoed" defendant client's case "is an opinion that is not actionable"; *Info. Sys. & Networks Corp. v City of Atlanta*, 281 F3d 1220, 1228 (11th Cir 2002) (statement that performance on a contract was "inadequate" was "an opinion -- and thus subjective by definition – [and therefore] not capable of being proved false").

Ms. Mohammad's statements about Dr. Winer were all non-actionable opinions.

**Point Seven**

**DR. WINER IS A PUBLIC FIGURE, YET FAILED TO ASSERT ACTUAL MALICE**

Dr. Winer describes himself in paragraph 11 of the FAC as "a board-certified surgical oncologist at Emory Winship Cancer Institute, a professor in the Department of Surgery, Division of Surgical Oncology, at the School of Medicine, and serves as the Surgical Clerkship Director at the School of Medicine". Later, he states, in paragraph 31, that "on or about March 7, 2024, the *Times of Israel*, an Israeli news outlet, published an op-ed written by the Plaintiff titled, 'An Ongoing Quest to Serve'. In the piece, Plaintiff shared his decision to travel to Israel to volunteer as a physician following the October 7 attacks".

Dr. Winer is a public figure, *Jackson v Atl. Monthly Co.,* 324 F Supp 1302,

1303 (ND Ga 1971) (Plaintiff was a physician who "was also the author of several books and articles of national note...a lecturer and [a] public speaker"). As a public figure, Dr. Winer is required by *New York Times Co. v. Sullivan,* 376 US 254 (1964), to allege actual malice in his defamation complaint.

The FAC contains a number of conclusory statements about malice, for example, "Mohammad maliciously and falsely stated that Plaintiff directly participated in and aided and abetted a genocide in Gaza" (paragraph 2); see also paragraphs 7, paragraph 156, and 190. Mere conclusory statements are insufficient to survive a 12(b)(6) motion, *Reed v Chamblee*, 2025 U.S. App. LEXIS 16669, at *6 (11th Cir July 8, 2025, Nos. 24-10058, 24-10070) ("Reed's complaints include a litany of conclusory allegations that are merely formulaic recitations of the 'actual malice' element which, alone, are insufficient").

Dr. Winer's failure to set forth any facts supporting actual malice, as opposed to conclusory statements, requires dismissal of the FAC.

## CONCLUSION

The FAC should be dismissed.

Dated: Amagansett, NY
August 22, 2025

/s/ Jonathan Wallace
Jonathan Wallace
PO #728
Amagansett NY 11930
917-359-6234
jonathan.wallace80@gmail.com
Counsel for Defendant
Umaymah Mohammad
Admitted Pro Hac Vice

## CERTIFICATE OF COMPLIANCE WITH L.R. 5.1

I HEREBY CERTIFY that the foregoing document was prepared in Times New Roman, 14-point font, as approved by Local Rule 5.1.

                                           s/ Jonathan Wallace
                                           Jonathan Wallace
                                           PO #728
                                           Amagansett NY 11930
                                           917-359-6234
                                           jonathan.wallace80@gmail.com
                                           Counsel for Defendant
                                           Umaymah Mohammad
                                           Admitted Pro Hac Vice