IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| Joshua Winer, <br><br> Plaintiff, <br><br> v. <br><br> Umaymah Mohammad, AJP Educational Foundation, Inc. A/K/A American Muslims for Palestine, WESPAC Foundation, Inc., Sean Eren as the representative of National Students for Justice in Palestine, Doctors Against Genocide Society, CAIR-Nga Inc. A/K/A CAIR-Georgia, CAIR Foundation Inc., A/K/A Council on Islamic Relations or CAIR, Rupa Marya, Ibrahim Jouja as representative of Emory Students for Justice in Palestine. <br><br> Defendants. | Civil Action File <br> No. 1:25-CV-02329-TWT |

**DEFENDANT WESPAC FOUNDATION, INC'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS**
<u>**PLAINTIFF'S AMENDED COMPLAINT**</u>

Defendant WESPAC Foundation, Inc. ("WESPAC"), hereby files this Brief in Support of its Motion to Dismiss Plaintiff's Amended Complaint ("AC") for lack of personal jurisdiction and failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(2) and (b)(6).

**INTRODUCTION**

The AC is facially frivolous as to WESPAC. Out of its 104 pages, the word "WESPAC" appears a grand total of nine times – with three of those mentions being in

1

the case caption and introductory paragraph. Only three of its 190 paragraphs contain allegations against WESPAC. WESPAC is not among the Defendants alleged to have "published, reiterated or expanded upon" any "false statements about Plaintiff," or to have "worked with [Defendant] Mohammad to provide her with a platform to further amplify and disseminate [those] false statements." *See* AC ¶¶ 5-6. Nor is WESPAC alleged to have "individually defamed Plaintiff, placed him in a false light, and engaged in a civil conspiracy with Mohammad to further publicize Mohammad's defamatory statements about Plaintiff and place Plaintiff in a false light." *Id.* ¶ 6.

Indeed, the AC does not plausibly allege that WESPAC took any action at all in relation to Plaintiff, or that WESPAC had ever heard of Plaintiff before being haled into this case. Why did Plaintiff omit what would have been a critical discussion of WESPAC's efforts to harm Plaintiff? Because, of course, WESPAC made no such efforts.

Plaintiff and his counsel have sued WESPAC in this case not because WESPAC was involved in any of the four causes of action against Dr. Winer, but solely because WESPAC was a general fiscal sponsor to National Students for Justice in Palestine ("NSJP"). *Id.* ¶¶ 12, 14 (alleging that, "[u]pon information and belief, Mohammad is a cofounder and active member of DAG, a steering committee member of NSJP"; and that, as NSJP's fiscal sponsor, "WESPAC bears direct responsibility for overseeing and

2

approving the activities and expenditures of NSJP that are funded through this fiscal sponsorship arrangement.). This theory is entirely without legal basis.

Indeed, on June 13, 20225, Judge Stephen V. Wilson of the U.S. District Court for the Central District of California rejected this very position in a case brought against WESPAC and others by National Jewish Advocacy Center ("NJAC"), which also is counsel for Plaintiff in this action. *StandWithUs Center for Legal Justice v. CodePink et al.,* 24-cv-06253-SVW-PVC (C.D. Ca.), ECF 131, annexed hereto as Exhibit A. Specifically, Judge Wilson concluded that, with respect to the fiscal-sponsor theory peddled in that action and again here by NJAC, "Plaintiffs cite[d] *no legal authority* holding that fiscal sponsorship alone creates such liability, and the Court finds *none*." *Id.*, Ex. A, at 33 (emphasis added). Moreover, he concluded that "[t]he most relevant case Plaintiffs cite, *New York ex rel. TZAC, Inc. v. New Israel Fund*, 520 F. Supp. 3d 362 (S.D.N.Y.), *actually undercuts* their argument." *Id.* (emphasis added).

Judge Wilson found further that – in jurisdictional circumstances functionally identical to those here – there was no basis for a California court to exercise personal jurisdiction over WESPAC, a New York entity. *Id.* at 34-35. And Judge Wilson found that a 42 U.S.C. § 1985(3) claim NJAC brought failed, *inter alia,* because it did not allege state action, a fatal deficiency also found in the same claim brought by NJAC here.

More recently, on August 7, 2025, Judge Mary M. Rowland in the United States District Court for the Northern District of Illinois dismissed all claims against all defendants in another harassing lawsuit also predicated upon WESPAC's serving as a fiscal sponsor. *Manhart v. WESPAC et al.*, 24-cv-08209, 2025 WL 2257408 (N.D. Ill. Aug. 7, 2025). Judge Rowland then imposed sanctions, given that the claims were frivolous and pursued for an improper purpose, *id.* at *15-18, as they are here.[1] Echoing Judge Wilson's words with respect to WESPAC, Judge Rowland held that "Plaintiff cites no case or legal authority from any jurisdiction suggesting or even contemplating that *any* IRS rule could *ever* create a legal duty sufficient to substantiate a tort claim." *Manhart,* 2025 WL 2257408 at *12 (emphasis in original).[2] For these same reasons, Plaintiff's claims fail as a matter of law as to WESPAC, even putting aside the other threshold failings in all claims in this case.[3]

The AC against WESPAC also must be dismissed because it contains absolutely no allegations that might provide a basis to assert personal jurisdiction against

---

[1] Plaintiff's counsel's commentary makes clear that they have pursued WESPAC here and in *StandWithUs* to harass, punish and if possible destroy it. In the words of Mark Goldfeder, one of those lawyers with NJAC: "Incredibly proud to be one of the 'forces of darkness' bringing down WESPAC. Most of these cases have been brought by @[National Jewish Advocacy Center] and our partners." *See* https://x.com/MarkGoldfeder/status/1878836072530219427.

[2] The plaintiff in *Manhart* had cited a 1968 IRS Revenue Ruling in trying to attribute alleged conduct of a fiscal sponsoree to WESPAC. NJAC had cited the same IRS Revenue Ruling in *Standwithus* and may well cite it again in opposition to the instant motion. *See* AC ¶ 14 ("Pursuant to IRS guidelines governing fiscal sponsorship, WESPAC is required to maintain full control and discretion over the use of donated funds….").

[3] For the sake of brevity, WESPAC incorporates the arguments made by other Defendants as to the threshold failings of Plaintiff's claims.

WESPAC. Plaintiff does not allege that WESPAC has the "substantial" or "continuous" contacts with this forum that might meet the "demanding" standard for general personal jurisdiction as an exception to the normal rule that such jurisdiction may only be exercised where a corporation is organized or has its principal place of business, *i.e.,* New York in the case of WESPAC. In fact, he does not allege that WESPAC did *anything* in Georgia, which precludes long-arm jurisdiction as well.

In sum, Plaintiff's claims against WESPAC are without any legal or factual basis and should be summarily dismissed.

## BACKGROUND FACTS

With respect to WESPAC, there are virtually no facts to discuss. Plaintiff avers correctly that "WESPAC is a New York-based 501(c)(3) nonprofit corporation and has served as the fiscal sponsor for NSJP." AC ¶ 14. Otherwise, Plaintiff says nothing about WESPAC except for offering the conclusory statements that "WESPAC, as NSJP's fiscal sponsor, knowingly funded and facilitated NSJP's coordinated efforts to vilify Plaintiff" and that "WESPAC, as NSJP's fiscal sponsor, knowingly funded and facilitated NSJP's coordinated campaign to target and exert pressure on Emory University to investigate and terminate Plaintiff…." *Id.* ¶¶ 145, 168.

Utterly absent are any specific factual allegations supporting those statements that might buttress them or make them plausible. No details are alleged – nor could truthfully be alleged – as to how WESPAC supposedly knowingly funded or facilitated NSJP's

efforts to hurt Plaintiff or even that WESPAC knew who Plaintiff was before receiving the pleadings in this case. That there are no plausible factual assertions about WESPAC for Plaintiff to discuss is unsurprising, given that WESPAC took no action at all with respect to Plaintiff, and that WESPAC sent no funds to NSJP "to target and exert pressure on Emory University to investigate and terminate Plaintiff. That Plaintiff scarcely offers any factual allegations about WESPAC in a 190-paragraph complaint underscores the entirely frivolous nature of this action against it.

## LEGAL ARGUMENT

### I.  Standards

#### A.  Personal Jurisdiction

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over [defendants]." *Daimler AG v. Bauman*, 134 S. Ct. 746, 753 (2014) (citing Fed. R. Civ. P. 4(k)(1)(A)). However, Plaintiff must demonstrate that WESPAC has "certain minimum contacts" with Georgia, "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 66 S. Ct. 154, 158 (1945) (citation and quotation omitted). The strength of contacts required depends on which category of personal jurisdiction a plaintiff invokes: general or specific personal jurisdiction. *See Daimler*, 134 S. Ct. at 754.

The standard for obtaining general personal jurisdiction over a corporation is "demanding." *Daimler*, 134 S. Ct. at 750-751. For a corporation, "the place of incorporation and principal place of business are paradig[m] . . . bases for general

6

jurisdiction." *Id.* at 760 (internal quotations and citations omitted). Only in an "exceptional case" is general jurisdiction available elsewhere. *Id.* at 751 n.19. An "exceptional case" exists only if a defendant's contacts in the state are "substantial" or "continuous." *Bancroft & Masters, Inc. v. Augusta Nat. Inc.,* 223 F.3d 1082, 1086 (9th Cir. 2000) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 104 S. Ct. 1868 (1984)).

With respect to specific jurisdiction, a federal court "undertakes a two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257-58 (11th Cir. 2010).

Georgia's long-arm statute states that a court "may exercise personal jurisdiction over any nonresident . . . as to a cause of action *arising from* any of the acts, omissions, ownership, use, or possession enumerated in this Code section, in the same manner as if he or she were a resident of this state," provided that he "[t]ransacts any business within this state." O.C.G.A. § 9-10-91 (emphasis added). Put differently, "Georgia's long-arm statute permits jurisdiction where a plaintiff's cause of action 'arises out of' a nonresident defendant's 'transact[ion] of any business within [Georgia].'" *Diamond Crystal*, 593 F.3d at 1264 (quoting O.C.G.A. § 9-10-91(1)).

7

### B.     Failure to State a Claim

A district court must dismiss a claim if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. Proc. 12(b)(6). Rule 8(a) of the Federal Rules of Civil Procedure requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (*citing Twombly*, 550 U.S. at 555). Courts need not accept as true conclusory legal allegations cast in the form of factual allegations. *See id.*; *see also Chandler v. Sec'y of Fla. Dep't of Transp.*, 695 F.3d 1194, 1199 (11th Cir. 2012).

## II.    There Is No Basis to Exercise Personal Jurisdiction Over WESPAC

Plaintiff does not allege – and cannot truthfully allege – facts sufficient to support the exercise of general or specific personal jurisdiction over WESPAC, a New York entity. Indeed, Plaintiff does not even attempt to articulate any basis for the exercise of personal jurisdiction over WESPAC.

Notably, the same deficiencies existed in the *Standwithus* action brought against WESPAC in California by NJAC. Judge Wilson's discussion of jurisdictional issues in

that case is instructive:

> Plaintiffs have failed to sufficiently allege the existence of personal jurisdiction over the Sponsoring Defendants.[4] Plaintiffs allege almost no contacts by the Sponsoring Defendants that would submit them to personal jurisdiction in California. The Sponsoring Defendants are not residents of California. Plaintiffs do not allege that the Sponsoring Defendants—or any of their members—organized or participated in the mob. Nothing in the Complaint suggests that the Sponsoring Defendants purposefully directed any activities at California or otherwise availed themselves of the privileges of California. In other words, there are no allegations sufficient to support general or specific jurisdiction.

*StandWithUs,* 24-cv-06253-SVW-PVC, Ex. A at 34-35.

### A.   There Is No Basis for Exercising General Personal Jurisdiction

The only assertion in the AC conceivably relevant to a general-jurisdiction analysis establishes that such jurisdiction would be improper here. Specifically, Plaintiff correctly asserts that WESPAC is New York entity. AC ¶ 14. Plaintiff does not assert WESPAC has had any contacts with Georgia, let alone contacts that are "substantial" or "continuous." As such, nothing is alleged even to suggest this is the "exceptional case" in which general jurisdiction is available outside New York. *See Daimler*, 134 S. Ct. at 751 n.19, 760.

### B.   There Is No Basis for Exercising Specific Personal Jurisdiction

As addressed, Georgia's long-arm statute allows for specific personal jurisdiction over a nonresident "if a plaintiff's cause of action 'arises out of' a nonresident defendant's 'transact[ion] of any business within [Georgia].'" *Diamond Crystal*, 593

---

[4] "Sponsoring Defendants" included WESPAC.

F.3d at 1264 (quoting O.C.G.A. § 9-10-91(1)). Plainly, the AC does not allege any transaction of business by WESPAC in Georgia, let alone any action in Georgia relating to Plaintiff's claims. Specific jurisdiction therefore may not be exercised.

### C.     WESPAC Does Not Have Minimum Contacts with Georgia

Because Plaintiff fails to allege facts sufficient to allow for the exercise of long-arm jurisdiction over WESPAC, the Court need not reach the issue of minimum contacts. However, the exercise of specific jurisdiction would likewise be improper as a matter of due process, which mandates that personal jurisdiction may not be exercised over a defendant unless he has "purposefully established minimum contacts within the forum State," *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985), "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co.*, 326 U.S. at 316 (internal quotation marks and citation omitted). These minimum contacts must be grounded in "some act by which the defendant purposefully avails itself of the privilege of conducting activities with the forum State, thus invoking the benefits and protections of its laws." *Burger King*, 471 U.S. at 475.

In *Walden v. Fiore*, 571 U.S. 277, 290 (2014), the Supreme Court emphasized that the due process inquiry turns on the defendant's conduct, not the effects on the plaintiff.

> Regardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with

the forum State. The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way.

Plaintiff does not come close to pleading facts to establish WESPAC has minimum contacts with this forum. Indeed, Plaintiff does not allege WESPAC did *anything* in Georgia. For all these reasons, Plaintiff's AC against WESPAC should be dismissed for lack of personal jurisdiction.

### III. The Claims Against WESPAC Fail as a Matter of Law

Plaintiff's claims against WESPAC are based on a bald, conclusory assertion, the essence of which is stated twice, *i.e.,* "WESPAC, as NSJP's fiscal sponsor, knowingly funded and facilitated NSJP's coordinated efforts to vilify Plaintiff and pressure Emory to discipline Plaintiff" and "WESPAC, as NSJP's fiscal sponsor, knowingly funded and facilitated NSJP's coordinated campaign to target and exert pressure on Emory University to investigate and terminate Plaintiff…." AC ¶¶ 145, 168. Plaintiff does not offer a single substantiating factual allegation in connection with these (false) conclusory statements, let alone one that would make plausible the assertion that WESPAC knowingly funded or facilitated any efforts to harm Plaintiff – which it did not. Thus, the two cited allegations fail entirely to state a claim that is "plausible on its face." *Twombly*, 550 U.S. at 570. Put differently, Plaintiff has not even remotely pleaded "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Ultimately, though, we do not expect Plaintiff to claim he has any evidence that WESPAC engaged in any funding or other activity related to him, but instead will contend that WESPAC is liable because "[p]ursuant to IRS guidelines governing fiscal sponsorship, WESPAC is required to maintain full control and discretion over the use of donated funds and is legally responsible for ensuring that all disbursed funds are used exclusively for legitimate charitable purposes. Accordingly, WESPAC bears direct responsibility for overseeing and approving the activities and expenditures of NSJP that are funded through this fiscal sponsorship arrangement." AC ¶ 14.

However, this theory is utterly baseless, without an iota of legal support, and has now been rejected twice. Indeed, even when offered the opportunity to fully brief this issue on motions to dismiss in the *StandWithUs* case, NJAC "cite[d] *no legal authority* holding that fiscal sponsorship alone creates such liability." *StandWithUs*, Ex. A at 33 (emphasis added). And Judge Wilson, despite best efforts, found "none." *Id.* Judge Wilson also concluded that "[t]he most relevant case Plaintiffs cite, *New York ex rel. TZAC, Inc. v. New Israel Fund*, 520 F. Supp. 3d 362 (S.D.N.Y.), *actually undercuts* their argument." *Id.* (emphasis added).

Similarly, in *Manhart*, Judge Rowland dismissed claims against WESPAC that were predicated upon WESPAC's serving as a fiscal sponsor, following full briefing. Judge Rowland held that "Plaintiff cites no case or legal authority from any

jurisdiction suggesting or even contemplating that *any* IRS rule could *ever* create a legal duty sufficient to substantiate a tort claim." *Manhart,* 2025 WL 2257408 at *12 (emphasis in original). As addressed, Judge Rowland also imposed sanctions given that the entire action was frivolous.

In sum, Plaintiff cannot offer any legal authority for its claims against WESPAC. And two courts have soundly rejected – as a legal fabrication -- Plaintiff's theory that a fiscal sponsor is strictly liable to anyone, anywhere in the world, who feels aggrieved by the allegedly tortious action of its fiscal sponsoree, regardless of whether the sponsor funded or even knew of the action in advance. Nothing better explains the extent to which Plaintiff's claims against WESPAC are frivolous, warrant immediate dismissal, and are sanctionable if Plaintiff and his counsel continue to maintain them.

## CONCLUSION

For the reasons addressed above, WESPAC respectfully requests that this Court grant its motion pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) to dismiss Plaintiff's Amended Complaint in its entirety as against WESPAC, with prejudice, and grant such additional relief to WESPAC as the Court may deem appropriate and proper.

DATED: August 28, 2025

        HERBST LAW PLLC

        By: /s/ Robert L. Herbst
        Robert L. Herbst (admitted *pro hac vice*)
        420 Lexington Avenue, Suite 300
        New York, New York 10170
        Tel: 914-450-8163
        rherbst@herbstlawny.com

        HUMAN RIGHTS FIRST
        Joshua Colangelo-Bryan (*pro hac vice* application pending)
        121 West 36th Street
        PMB 520
        New York, NY 10018
        Tel: 212-845-5243
        colangeloj@humanrightsfirst.org

        AWAD LEGAL TEAM, LLC
        Muneer Othman Awad
        Georgia Bar No. 683647
        244 Roswell Street
        Suite 500
        Marietta, GA 30060
        Tel: 404-445-8443

        *Attorneys for Defendant WESPAC Foundation, Inc.*

## **CERTIFICATE OF COMPLIANCE WITH L.R. 5.1**

I HEREBY CERTIFY that the foregoing document was prepared in Times New Roman, 14-point font, as approved by Local Rule 5.1.

/s/ *Robert L. Herbst*
Robert L. Herbst
Admitted *pro hac vice*

*Attorney for Defendant WESPAC Foundation, Inc.*