## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

Joshua Winer,                            |
                                         |    Civil Action No.: 1:25-cv-02329
    Plaintiff,       |
                                         |
v.                                       |
                                         |
Umaymah Mohammad, et. al.,               |
                                         |
    Defendants.      |

## DEFENDANT DOCTORS AGAINST GENOCIDE SOCIETY'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

Defendant Doctors Against Genocide Society ("DAG"), hereby files this Brief in Support of its Motion to Dismiss Plaintiff's First Amended Complaint for failure to state a claim upon which relief can be granted.

## INTRODUCTION

Doctors Against Genocide is a non-partisan, global coalition of reputable healthcare professionals dedicated to raising awareness on how to identify and prevent genocide around the world. Since October 7, 2023, DAG has organized multiple advocacy campaigns in support of the Palestinian people in Gaza, and in defense of medical professionals silenced for their anti-genocide advocacy. As an organization of medical professionals, DAG has been particularly attuned to

Israel's intentional and systematic destruction of Gaza's medical system, which

both DAG and international legal experts have condemned as a genocide.[1]

For context, this Court may take judicial notice that since October 2023,

the Israeli military has been accused of massacring more than 60,000 Palestinians

in Gaza, deliberately destroying almost every one of Gaza's 36 hospitals, and

engineering mass starvation and famine while indiscriminately targeting

civilians and civilian infrastructure.[2] Importantly, in *Def. for Children Int'l-*

*Palestine v. Biden,* a federal judge commented that the Israeli military's conduct in

Gaza "may plausibly constitute a genocide."[3]

---

[1] *See e.g.*, Doc. 41-2, 41-3, 41-4, and 41-5; *see also* Report by Francesca Albanese, UN Special Rapporteur on the situation of human rights in the Palestinian territories occupied since 1967, "Genocide as Colonial Erasure," A/79/384; International Court of Justice, *Application of the Convention on the Prevention and Punishment of the Crime of Genocide in the Gaza Strip (South Africa v. Israel)*, Order of 26 January 2024.

[2] This court may take judicial notice of the statements contained in the following sources. *See U.S. ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 812 n.4 (11th Cir. 2015). Wafaa Shurafa and Samy Magdy, Palestinian death toll in Israel-Hamas war passes 60,000, Gaza Health Ministry says, Reuters (07/29/2025); World Health Organization, Health System at Breaking Point as Hostilities Further Intensify in Gaza, (05/22/2025); United Nations, "Famine in Gaza: 'A failure of humanity itself', says UN chief" (08/22/2025).

[3] *Defense for Children International-Palestine v. Biden*, 714 F.Supp.3d 1160, 1163 (N.D. Cal. 2024)(stating that "the undisputed evidence before this Court comports with the finding of the ICJ and indicates that the current treatment of the Palestinians in the Gaza Strip by the Israeli military may plausibly constitute a genocide in violation of international law. Both the uncontroverted testimony of the Plaintiffs and the expert opinion proffered at the hearing on these motions as well as statements made by various officers of the Israeli government indicate that the ongoing military siege in Gaza is intended to eradicate a whole people

Defendants are some of the people and organizations that have spoken up against Israel's genocide in Gaza. Plaintiff brings this frivolous suit in retaliation for Defendants' criticism of his decision to enlist in the Israeli Defense Force ("IDF") voluntarily, during what many have concluded is a genocide. Plaintiff has failed to establish personal jurisdiction over DAG, and has failed to plausibly plead any of his invoked causes of action. Every statement attributable to DAG is a protected expression of opinion on a matter of significant public concern: the IDF's ongoing atrocities in Gaza and the responsibility to refuse complicity in that conduct. Plaintiff has similarly failed to plausibly plead a conspiracy to violate his civil rights.

## STANDARD OF REVIEW

### I.    Federal Rule of Civil Procedure 12(b)(6)

Rule of Civil Procedure 12(b)(6) allows the Court to dismiss a complaint for "failure to state a claim upon which relief can be granted." When reviewing a motion to dismiss, the Court must take the allegations of the complaint as true and must construe those allegations in the light most favorable to the plaintiff. *Rivell v. Priv. Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008) (per curiam). Although a court must accept well-pleaded facts as true and make reasonable inferences in favor of the plaintiff, it need not accept the plaintiff's

---

and therefore plausibly falls within the international prohibition against genocide").

legal conclusions or unwarranted deductions of fact. *Chandler v. Sec'y of Fla. Dep't of Transp.*, 695 F.3d 1194, 1199 (11th Cir. 2012). "To survive a Rule 12(b)(6) motion to dismiss, 'a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."'" *Martinez Claros v. Taylor Lee & Associates LLC*, 2018 WL 7079995 (N.D. Georgia, September 18, 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The plaintiff must allege facts that "raise the right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Moreover, a libel claim "is a traditionally disfavored cause of action and the courts tend to construe the complaint by a somewhat stricter standard." *Escort v. Verizon Commc'ns, Inc.*, 2005 WL 8155369, at *3 (N.D. Ga. 2005) (citation omitted). In a motion to dismiss, the Court may consider documents and matters "of which a court may take judicial notice." 7 *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (citations omitted).

## II.    Federal Rule of Civil Procedure 12(b)(2)

"A plaintiff's complaint is subject to dismissal if there is a lack of personal jurisdiction over the defendant." Fed. R. Civ. P. 12(b)(2). The issue of whether personal jurisdiction is present is a question of law. A plaintiff seeking the

exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction. In a case where a non-resident defendant challenges the exercise of a court's jurisdiction over him, but where no evidence on the matter is submitted, the plaintiff has the burden of pleading a prima facie case of personal jurisdiction over the moving defendant. A prima facie case is established in such cases where the plaintiff alleges sufficient facts in his complaint to support a reasonable inference that the defendant can be subjected to jurisdiction within the state. The court must construe the non-conclusory allegations in the complaint as true, to the extent they are uncontroverted by evidence. "The Court must engage in a two-part analysis to determine if it may exercise jurisdiction over a non-resident defendant. First, the Court determines whether a defendant's activities satisfy the forum state's long-arm statute. Second, the Court determines whether the exercise of personal jurisdiction comports with the due process requirements of the Fourteenth Amendment". *Progressive Light, Inc. v Décor Selections, LLC,* 2021 WL 12315477, at *4 (N.D. Ga. Sep. 17, 2021, No. 1:20-cv-3840-AT) (Quotation marks and internal cites omitted).

## FACTUAL ALLEGATIONS

Plaintiff is a surgical oncologist at Emory Winship Cancer Institute and a professor at the Emory School of Medicine, who took a leave of absence to volunteer in an IDF unit, operating in Gaza, "in his capacity as a physician to

provide medical care to wounded soldiers." FAC ¶ 11. In a conclusory manner and through impermissible group pleadings, Plaintiff alleges Doctors Against Genocide ("DAG") and other Defendants acted in concert and conspired to defame him, place him in false light, and interfere with his civil rights. FAC ¶¶ 7-8. Plaintiff alleges almost no specific facts against DAG to render his conclusory claims plausible, and relies entire upon the publication of two Instagram posts.

In March 2024, Plaintiff published an op-ed in the Times of Israel detailing his "deep sense of duty to return to Israel and rejoin the IDF" to serve in Gaza. FAC ¶¶ 31-33. The article identified his affiliation with Emory University. FAC ¶ 31, n.4. In April 2024, during an interview with Amy Goodman on Democracy Now!, defendant Umaymah Mohammad stated:

> "[O]ne of the professors of medicine we have at Emory recently went to serve as a volunteer medic in the Israeli Offense Force [sic] and recently came back. This man participated in aiding and abetting a genocide, in aiding and abetting the destruction of the healthcare system in Gaza and the murder of over 400 healthcare workers, and is now back at Emory so-called teaching medical students and residents how to take care of patients."

FAC ¶ 35.

Plaintiff alleges that Ms. Mohammad accused him of aiding and abetting a genocide against the Palestinians in Gaza based on the voluntary IDF service he disclosed in his op-ed. FAC ¶¶ 36-39. Plaintiff repeatedly alleges that Ms. Mohammed did not explicitly identify him in her Democracy Now! Interview and only referenced "an Emory physician and professor who served in the IDF".

FAC ¶¶ 46, 56. On November 19, 2024, Ms. Mohammad was suspended from Emory University as a result of her interview. FAC ¶ 55.

Plaintiff alleges that DAG collaborated with other organizations in "a community-led initiative that was launched in response to Mohammad's suspension." FAC ¶ 76. Plaintiff alleges that DAG published an Instagram post with the above-cited excerpt from Ms. Mohammad's Democracy Now! interview. FAC ¶ 77. Plaintiff alleges that the Instagram post "called on readers to contact the deans… to demand that the suspension charges against Mohammad be rescinded" and that the schools hold accountable any students or faculty who have "participated in or legitimized the genocide in Gaza." FAC ¶¶ 83-4. Plaintiff alleges the Instagram post did not identify him by name, but that in a comment below the post "another user provided a link to the Plaintiff's op-ed," and that as a result, other unidentified third-party users identified him and "posted false and inflammatory statements" about him. FAC ¶ 79. Plaintiff alleges "neither NSJP nor DAG has removed the post from their Instagram platforms or taken any steps to moderate, restrict, or delete the comments." FAC ¶ 80.

Plaintiff alleges that the Instagram post linked to another website, Action Network, which included a script for supporters to use when contacting the university. FAC ¶ 85. Plaintiff alleges the phone script said "I'm alarmed by the institution's endorsement of faculty like Dr. Joshua Winer, who recently served in the Israeli Defense Forces", and asked Emory to drop the suspension of Ms.

Mohammad, investigate any students and faculty "endorsing Israel's apartheid regime", and publicly apologize for targeting anti-genocide students and faculty. *Id.* Plaintiff alleges the email script said:

> "Dr. Joshua Winer… has written openly about his participation in a military campaign that has been condemned as a genocide by countless international authorities… Why does Emory allow a physician who participated in this genocidal campaign to provide care without any investigation into his involvement in war crimes committed by the IDF in Gaza, war crimes that have now been documented in thousands of videos and widely shared across the Internet? Hold faculty and students accountable for their participation in or legitimization of the genocide of Palestinians."

FAC ¶ 87. Plaintiff alleges "the Phone Script expressly demanded that Plaintiff be fired" but he has not provided any language from the Phone Script that includes that demand—only a demand to *investigate* his actions in Gaza. FAC ¶ 88.

Plaintiff alleges DAG also published a second Instagram post, again with other organizations, reiterating support for Ms. Mohammad and criticizing Emory for employing of an IDF soldier who served in Gaza during a genocide. FAC ¶¶ 90-94. Plaintiff alleges DAG's post did not identify him by name, but stated "any physician-faculty who served in the IDF these last 16 months perpetuated a genocide", and that one faculty member "proudly identified himself as an IDF reservist ready for deployment to perpetuate genocidal crimes in Gaza" in an op ed. FAC ¶ 90. Plaintiff alleges that DAG's characterization of the Israeli Defense Force as the "IOF" (Israeli Offense Force) is inflammatory and implies his participation in war crimes. FAC ¶ 143(a).

These are the only facts specifically alleged against DAG. Plaintiff makes additional, conclusory allegations against "Defendants" collectively, which cannot render his claims against *DAG* plausible: that they acted in concert to defame and place him in false light by publishing "numerous false statements that portrayed Plaintiff as someone who condones or engages in violence, lacks moral integrity, devalues certain human lives, and is unfit to treat patients or teach students—particularly those from marginalized communities" (FAC ¶ 155); that they acted "with malice and reckless disregard for the truth" (FAC ¶ 156); that they conspired "to target Plaintiff because of his race, ethnicity, and his affiliation with both Israel and the IDF" to "suppress his rights to free speech and association with the IDF" (FAC ¶ 8); and that they "plotted, coordinated, and executed a common plan to deprive Plaintiff of his constitutional rights and privileges on account of his Jewish identity and/or Zionist beliefs, including his rights to freedom of speech, freedom of association, and freedom to access and participate in professional and academic life on equal terms" (FAC ¶ 179).

## ARGUMENT

### I.  Plaintiff has Failed to Establish Personal Jurisdiction Over Doctors Against Genocide Under Rule 12(b)(2)

Plaintiff has pled no facts that permit the Court to find personal jurisdiction over DAG. Plaintiff pled that "DAG is a 501(c)(3) non-profit corporation incorporated in Michigan". FAC ¶ 16. DAG is therefore not a

resident of Georgia, so the Court can only exercise jurisdiction through the state's long arm statute. GA Code § 9-10-91 states that a "court of this state may exercise personal jurisdiction over any nonresident....as to a cause of action arising from any of the acts, omissions, ownership, use, or possession enumerated in this Code section, in the same manner as if he or she were a resident of this state, if in person or through an agent, he or she: (1) Transacts any business within this state; (2) Commits a tortious act or omission within this state, *except as to a cause of action for defamation of character arising from the act*; (3) Commits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state" (emphasis added). GA Code § 9-10-91.

Plaintiff has not alleged DAG transacts any business in Georgia, nor that it derives any revenue from services or goods rendered in Georgia. Any exercise of personal jurisdiction over DAG must therefore be based on subsection (2) of the long arm statute—the commission of a tortious act or omission in the state. All three of the torts alleged in the Amended Complaint are fundamentally actions for defamation of character, which is explicitly *not* a basis for long arm jurisdiction under the relevant subsection. *Black v Skinary App, Inc.,* 2024 US Dist LEXIS 136035, at *10 (ND Ga Aug. 1, 2024, No. 1:23-CV-5647-TWT) ("[T]o the extent that the 'tortious act' in question is defamation, the long-arm statute

specifically excludes that from its reach"; *Worthy v Eller,* 265 Ga App 487, 488, 594 SE2d 699, 700 (2004), *cert. den.* 2004 Ga. LEXIS 514 (2004) ( "The language of the statute is clear, unequivocal and unambiguous in mandating the exclusion of an action predicated on defamation"); *Mahendra Amin v O'Brien,* 2025 US Dist LEXIS 7223, at *12 (SD Ga Jan. 14, 2025, No. CV 5:24-022) (" Defendant O'Brien is not subject to suit in Georgia for acts allegedly constituting defamation"); *Mueller v Ebay, Inc.,* 2021 US Dist LEXIS 201597, at *3-4 [ND Ga Jan. 6, 2021, No. 1:20-cv-2581-SCJ]) ("[P]ublication of defamatory information in Georgia standing alone is insufficient to establish personal jurisdiction under Georgia's long-arm statute... the commission of acts solely related and giving rise to a defamation claim do not fall within the Georgia long-arm statute").

Plaintiff should not be permitted to evade the limitations on subsection (2) by recharacterizing his defamation claim as false light or other tort claims, cf. *Leise v Vermont Hum. Rights Commn.,* 2023 US Dist LEXIS 50354, at *72-73 (D Vt Mar. 24, 2023, No. 2:22-cv-00009) ("A plaintiff may not use related causes of action to avoid the constitutional requisites of a defamation claim. The First Amendment considerations that apply to defamation therefore apply also to [the plaintiff's] counts for false light and tortious interference", citing *Farah v. Esquire Mag.,* 736 F.3d 528, 540 (D.C. Cir. 2013)); *Moldea v NY Times Co.,* 22 F3d 310, 319 (1994) ("[A] plaintiff may not avoid the strictures of the burdens of proof associated with defamation by resorting to a claim of false light invasion").

Even where a Defendant allegedly conspired with a resident Defendant to commit defamation, the Court cannot assert jurisdiction over the non-resident defendant without due process implications. *Sprint Nextel Corp. v Ace Wholesale, Inc.,* 2014 US Dist LEXIS 21598, at *23-25 (ND Ga Feb. 20, 2014, No. 1:12-cv-02902-JEC) ("[T]he bare existence of a conspiracy is not enough to support long arm jurisdiction without a further showing of a 'contact' with the forum"); *Wells Fargo Bank v Berkman,* 2011 US Dist LEXIS 16484, at *13 (ND Ga Feb. 16, 2011, No. 1:10-CV-2286-TWT). Where DAG's alleged conduct is protected speech, the First Amendment weighs against exercising personal jurisdiction.

Because Plaintiff has failed to plausibly allege any non-defamation tortious conduct by DAG in Georgia or plead a cognizable claim under § 1985(3), the Court lacks personal jurisdiction over DAG and his claim must be dismissed.

## II.    Plaintiff has failed to Plausibly Plead a Claim Under Rule 12(b)(6)

### a.  Plaintiff has failed to Allege that Doctors Against Genocide Committed Defamation *Per Se*

"Under Georgia law, a claim for defamation has four elements: (1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication to a third party; (3) fault by the defendant amounting to at least negligence; and (4) special harm or the actionability of the statement irrespective of special harm." *American Civil Liberties Union v. Zeh*, 312 Ga. 647, 650 (Ga., 2021) (citation omitted).

Where speech relates to a matter of public concern, Plaintiff must prove fault and falsity. *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 776 (1986). A statement is one of public concern when it can "be fairly considered as relating to any matter of political, social, or other concern to the community." *Id* at 453. At the pleadings stage, "the crucial burden on a plaintiff in making a defamation or defamation-type claim is to show the falsity of the statements made." *Brock v. Viacom Int'l, Inc.*, 2005 U.S. Dist. LEXIS 12217, at *13 (N.D. Ga. Feb. 28, 2005).

When speech merely expresses an opinion "on 'matters with respect to which reasonable men might entertain differing opinions'", that speech cannot be proven false and "is not libelous." *Bergen v. Martindale-Hubbell*, 176 Ga. App. 745, 747 (1985). Where an opinion can be reasonably interpreted to include a statement of defamatory facts about the plaintiff that could be proven false, an action for defamation may still proceed. *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18 (1990); *Jaillet v. Ga. Tv Co.*, 238 Ga. App. 885, 890 (1999). Whether a statement constitutes fact or opinion is a question of law. *Old Dominion Branch No. 496, Nat'l Assoc. of Letter Carriers v. Austin*, 418 U.S. 264, 283-84 (1974). Speech about politics and public controversy and impassioned statements "heavily laden with emotional rhetoric and moral outrage" are not likely to be perceived as factual. *Milkovich*, 497 U.S. at 32 (Brennan, J. dissenting); *Bennett v. Hendrix*, 2007 U.S. Dist. LEXIS 102156, at *10 (N.D. Ga. 2007) (Thrash, J.) (Dismissing complaint because flyers "however offensive—were political speech of the highest order

and deserving of the highest protection"); *Koch v. Goldway*, 817 F.2d 507, 509 (9th Cir. 1987) (statement more likely to be opinion when made in the general context "of a heated political debate, where certain remarks are necessarily understood as ridicule or vituperation"); *Hoppe v. Hearst Corp.*, 53 Wash. App. 668, 675, 770 P.2d 203, 207 (1989) ("In the context of an ongoing political controversy, 'the audience is prepared for mischaracterizations and exaggerations, and is likely to view such representations with an awareness of the subjective biases of the speaker'"). The forum and context of the speech also affect whether the speech is perceived as fact or opinion. *See Glob. Telemedia Int'l, Inc. v. John Doe 1*, 132 F. Supp. 2d 1261, 1267 (C.D. Cal. 2001) (Internet postings "are full of hyperbole, invective, short-hand phrases and language not generally found in fact-based documents"); *Ganske v. Mensch*, 480 F. Supp. 3d 542, 545 (S.D.N.Y. 2020) ("If the Internet is akin to the Wild West... Twitter is, perhaps, the shooting gallery, where verbal gunslingers engage in prolonged hyperbolic crossfire.").

Here, the speech at issue is an *opinion* expressed on a matter of *public concern*. The debate regarding Israel's actions in Gaza, the rights of Palestinians, and the ongoing humanitarian crisis have been a matter of intense international debate since at least October 2023. Because DAG's statements regard matters of public concern, it is Plaintiff's burden to show that those statements are false. The speech at issue expresses an opinion, with no specific provably false facts, and Plaintiff has failed to plausibly plead a cause of action.

Plaintiff only makes the following specific allegations against DAG: (1) DAG "falsely stated that Plaintiff had recently served in the 'IOF', an abbreviation of 'Israeli Offense Force'… a deliberately inflammatory mislabeling of" the IDF (FAC ¶ 143(a)); (2) DAG "permitted defamatory third-party comments to remain publicly visible in the comments section" of the Instagram post, and some of those comments by third parties accused Plaintiff of participating in a genocide (FAC ¶ 143(b)); (3) DAG shared a link to a phone script that encouraged supporters to tell Emory that Plaintiff "recently served in the Israeli Defense Forces" and calling on Emory to "[i]nvestigate faculty and students endorsing Israel's apartheid regime and remove them" (FAC ¶ 143(c); (4) DAG shared a link to an email script that said Plaintiff "has written openly about his participation in a military campaign that has been condemned as a genocide (FAC ¶ 143(d)); and (5) DAG published an Instagram post stating "that any physician-faculty who served in the IDF these last sixteen months perpetuated genocide" and that Plaintiff "published his own op ed for the Times of Israel… in which he proudly identified himself as an IDF reservist ready for deployment to perpetuate genocidal crimes in Gaza" (FAC ¶ 143(e)).

Of these, every single statement attributable to DAG is either an innocent statement of fact consistent with Plaintiff's own public representations about himself (i.e. the claim that he recently served in the IDF), or irrefutably an opinion regarding a matter of public concern (i.e. re-characterizing the IDF as the

IOF, calling for an investigation of faculty who support genocide, and opining that voluntary service in the IDF since October 7, 2023 amounts to participating in and prolonging the ongoing genocide). Not a single one of these statements can render DAG liable under Plaintiff's invoked causes of action.

Plaintiff articulates no legal theory that could hold DAG liable for allegedly defamatory comments made by unidentified third parties in response to DAG's Instagram posts. Federal courts have foreclosed liability based on content published online by third parties under 47 U.S.C. § 230.[4] *See generally NetChoice, LLC v. Att'y Gen., State of Florida,* 34 F.4th 1196 (11th Cir. 2022) (finding content-moderation decisions by social media companies are protected First Amendment activities immune from liability); *Doe v. Fenix Int'l Ltd. (OnlyFans)*, CASE NO. 22-cv-62176 (S.D. Fla. Mar. 28, 2024) (dismissing claim under §230 premised on user-uploaded content for failure to demonstrate that the computer service provider had "actual knowledge" of illegal content). Although existing case-law has predominantly focused on social media platforms, the same protections apply to DAG, because § 230(c) protections extend to users as well as

---

[4] "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."  47 U.S.C. § 230(c)(1).

providers.[5] DAG has no duty to monitor, restrict, or remove comments published by third-party users on their social media posts.

The statements that Plaintiff recently served in the IDF are based on Plaintiff's own claims in his public op ed, and are therefore not defamatory. *Brock*, 2005 U.S. Dist. LEXIS 12217, at *13. Calling the Israeli Defense Force the 'Israeli Offense Force' is not defamatory because it is clearly the sort of political hyperbole "necessarily understood as ridicule or vituperation" in the context "of a heated political debate." *Koch*, 817 F.2d at 509. Plaintiff also cannot show an injury from Defendant's re-labelling of the IDF as the IOF, even if it was a false statement. Similarly, the assertion that anyone who volunteers for the IDF during the current genocide is guilty of prolonging and sustaining the genocide is "heavily laden" with the exact kind of "emotional rhetoric and outrage" that typifies a political opinion. *Milkovich*, 497 U.S. at 32 (Brennan, J. dissenting). The characterization of IDF enlistment as "deployment to perpetuate genocidal crimes in Gaza" (FAC ¶ 143(e)) is also an obvious expression of a political opinion and hyperbole on a matter "with respect to which reasonable men might entertain differing opinions." *Bergen*, 176 Ga. App. at 747. As such, these

---

[5] Immunity under Section 230 requires: "(1) defendant be a service provider or user of an interactive computer service; (2) the cause of action treats a defendant as a publisher or speaker of information; and (3) a different information content provider provided the information." *Roca Labs, Inc. v. Consumer Opinion Corp. et al*, 140 F.Supp.3d 1311, 1319 (M.D. Fla. 2015) (quoting *Whitney Info. Network, Inc. v. Verio, Inc.*, 2006 WL 66724, *2 (M.D. Fla. Jan. 11, 2006).

statements are not subject to being proven false and are "not libelous." *Id.*

Because Plaintiff has failed to identify a single factual claim by DAG that is

provably false, he cannot plausibly plead a claim for defamation.

Even if Plaintiff could factually disprove DAG's political opinions, he

cannot plead defamation because he is a public figure—by virtue of both his

position and his publications—and has failed to allege that DAG acted with

actual malice. *Jackson v. Atl. Monthly Co.*, 324 F.Supp. 1302, 1303 (N.D. Ga. 1971)

(Plaintiff was a public figure where he was a physician who "was also the author

of several books and articles of national note… a lecturer and [a] public

speaker"); *Little v. Breland*, 93 F.3d 755, 757 (11th Cir. 1996) (public figures

claiming defamation must establish actual malice where the allegedly

defamatory material "involves issues of legitimate public concern"). In the

alternative, DAG adopts codefendant CAIR Foundation's argument that Plaintiff

is at the very least a limited public figure on the topic of the war in Gaza by

virtue of his own op ed, and must still show actual malice. Doc. 63-1, at 17-19.

Plaintiff has not alleged actual malice, and offers no facts that plausibly

show DAG acted with knowledge or reckless disregard of any statement's falsity.

*New York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964). DAG's statements were

based upon Plaintiff's own op ed (which DAG cites in its posts, FAC ¶ 90, and

which Plaintiff pleads was "publicly available and easily accessible", FAC ¶ 47).

Defendant CAIR Georgia has filed exhibits showing the lively and ongoing

public debate over whether the IDF is committing genocide in Gaza. Doc. 41-2,
41-3, 41-4, 41-5. Given this public debate and Plaintiff's own disclosure of his IDF
service, DAG did not recklessly or knowingly make any false statements of fact,
and Plaintiff fails to state a claim.

### b. Plaintiff has Failed to Plausibly Allege that Doctors Against Genocide Committed False Light Invasion of Privacy

For the same reasons Plaintiff fails to plausibly allege defamation, his false
light invasion of privacy claim is equally defective. In order to plead a false light
claim, Plaintiff must show that DAG knowingly or recklessly published
falsehoods about him and placed him in a false light highly offensive to a
reasonable person. *Smith v. Stewart*, 291 Ga. App. 86 (Ga. Ct. App. 2008). In false
light cases, "the interest protected is clearly that of reputation, with the same
overtones of mental distress as in defamation." *Cabaniss v. Hipsley*, 114 Ga. App.
367, 370 (1966). "[A] constitutionally privileged statement of opinion cannot form
the basis of a claim for invasion of privacy by placing a person in a false light." *S
& W Seafoods Co. v. Jacor Broad. of Atlanta,* 194 Ga. App. 233, 237 (1989).

Plaintiff's false light claim is insufficiently pled because: (1) he fails to
allege a provably false statement by DAG; (2) he fails to allege DAG's opinions
on matters of public interest are unprotected by the First Amendment; and (3) he
fails to allege that DAG published falsehoods knowingly or recklessly.

### c. Plaintiff has failed to Plausibly Allege that Doctors Against Genocide Committed Civil Conspiracy

In the Eleventh Circuit, civil conspiracy requires: "[1] an agreement between two or more people [2] to achieve an illegal objective, [3] an overt act in furtherance of that illegal objective, and [4] a resulting injury to the plaintiff." *McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir. 2000) (en banc).

Plaintiff fails to plausibly allege DAG agreed with any other defendant to achieve an illegal objective. He alleges no specific facts to show DAG possessed an unlawful objective, and in fact has included statements by DAG that plead a far more plausible, lawful objective: "that the suspension charges against Mohammad be rescinded and that both Emory and the School of Medicine hold accountable those students and faculty who have 'participated in or legitimized the genocide in Gaza.'" FAC ¶ 83. Plaintiff states that Defendants were motivated by religious animus, but only offers a conclusory assertion with no supporting facts to render the claim plausible. There is not one mention of Plaintiff's religion in any statement attributable to DAG.

Plaintiff's civil conspiracy claim also relies on the same underlying torts alleged in Count I and Count II of the Amended Complaint, discussed above. Because Plaintiff has failed to plausibly state a claim for the underlying torts—defamation and false light invasion of privacy—his civil conspiracy claim also fails. *Mustaqeem-Graydon v. SunTrust Bank*, 258 Ga. App. 200, 207 (2002) ("Absent the underlying tort, there can be no liability for civil conspiracy").

### d. Plaintiff has Failed to Plausibly Allege that Doctors Against Genocide Committed Conspiracy to Interfere with Civil Rights

In order to plead a claim under 42 U.S.C. § 1985(3), "the plaintiff must allege and prove four elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *United Broth. of Carpenters and Joiners of America, Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 828–29 (1983). As requirements for pleading the second element, Plaintiff must plausibly allege "(1) that 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus [lay] behind the conspirators' action,' and (2) that the conspiracy 'aimed at interfering with rights' that are 'protected against private, as well as official, encroachment.'" *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267–68 (1993) (citations omitted).

### i. Plaintiff Fails to Plausibly Allege a Conspiracy Against Rights Protected by Private Encroachment

Where "the alleged § 1985(3) conspirators are private actors," a plaintiff may only recover for conspiracies that were "aimed at rights constitutionally protected against private impairment." *Jimenez v. Wellstar Health Sys.*, 596 F.3d 1304, 1312 (11th Cir. 2010) (citations omitted). "These rights include only select serious constitutional rights"; "[t]he only rights the Supreme Court has expressly

declared enforceable against private conspirators under § 1985(3) are the right to interstate travel and the right against involuntary servitude." *Jimenez*, 596 F.3d at 1312 (cleaned up); *see also Prunty v. Arnold & Itkin LLP*, 753 F. App'x 731, 736 (11th Cir. 2018); *Shuler v. Swatek*, 465 F. App'x 900, 903 (11th Cir. 2012).

Plaintiff has erected a moving target when it comes to identifying the federally-protected right Defendants allegedly conspired to violate. First, the Amended Complaint indicates that the alleged conspiracy was intended to deprive him of his rights to free speech and association, and to access and participate in professional and academic life on equal terms. FAC ¶ 179. The first two rights come from the First Amendment (FAC ¶ 184), and are not enforceable against private conspiracies. "[A]n alleged conspiracy to infringe First Amendment rights is not a violation of § 1985(3) unless it is proved that the State is involved in the conspiracy or that the aim of the conspiracy is to influence the activity of the State." *United Bhd. of Carpenters & Joiners, Local 610 v. Scott*, 463 U.S. 825, 830 (1983). Plaintiff has not alleged that DAG conspired with the State or aimed to influence State activities. FAC ¶¶ 12-20, 179-80, 185-86.

Plaintiff now appears to have abandoned his First Amendment argument, and instead claims an amorphous right against "reputational harm based on his racial identity[.]" Doc. 60, at 23. Plaintiffs identifies no basis in federal law for this purported right, but instead insists that it arises from § 1985(3) itself. This is a bald and improper attempt to turn § 1985(3) into a general federal tort law for

any act committed with discriminatory intent. *Benton v. Cousins Properties, Inc.*, 230 F.Supp.2d 1351, 1383 (N.D. Ga. 2002) ("Section 1985 does not itself *create* any substantive rights; rather, it serves only as a vehicle for vindicating specific federal rights and privileges which have been defined elsewhere… Section 1985 is not intended to be used as a 'general federal tort law'"). Plaintiff's claimed right "to access and participate in professional and academic life on equal terms" (FAC § 179) is defective for the same reason—he identified no independent source for the proffered right under federal law.

Because Plaintiff fails to identify a basis in federal law for his claimed rights and seeks to treat § 1985(3) itself as the source, he fails to state a plausible entitlement to relief under the statute and his claim must be dismissed.

### ii.  Plaintiff Fails to Plausibly Allege a Discriminatory Animus

Plaintiff's § 1985(3) claim fails for a second, independent reason: he has failed to plausibly allege "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Dean v. Warren*, 12 F.4th 1248, 1255 (11th Cir. 2021) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971)). As the basis for class-based discrimination, Plaintiff pled that Defendants' actions were based on his race or ethnicity (FAC, ¶¶ 179, 185, 187), IDF military service (FAC ¶¶ 181-85(a)), Zionist religious belief (FAC ¶¶ 179, 182–85(a), 187), Israeli citizenship (FAC ¶¶ 182, 185, 187), and political beliefs (FAC ¶ 187). The only plausible inference based on the specific facts

Plaintiff has plead—including where he has quoted Defendants' own statements in his Amended Complaint—is that Defendants were specifically and exclusively motivated by Plaintiff's IDF service. Plaintiff has offered no evidence to render an inference of religious animus even remotely plausible.

Even if Plaintiff could plead Defendants were motivated by something other than his voluntary IDF service, he would still fail to plead a claim under § 1985. Courts have routinely held that religious beliefs, national identity, and political beliefs are not cognizable as protected classes under § 1985(3). *See Fiske v. Lockheed-Georgia Co., Div. of Lockheed Corp.*, 568 F. Supp. 590 (N.D. Ga. 1983) (§ 1985(3) does not reach politically motivated conspiracies); *Smith v. Turner*, 764 F. Supp. 632, 1991 U.S. Dist. LEXIS 7131 (N.D. Ga. 1991) (§ 1985(3) does not provide remedy for "every concerted effort by one political group to nullify influence of or do other injury to competing group by use of otherwise unlawful means"); *Word of Faith World Outreach Ctr. Church v. Sawyer*, 90 F.3d 118 (5th Cir. 1996) (§ 1985(3) does not apply to conspiracies motivated by religious rather than racial animus); *Bauge v. Jernigan*, 671 F. Supp. 709 (D. Colo. 1987) (plaintiff's claim of discrimination based on his Norwegian citizenship is not within the scope of § 1985 protection). As foreign citizenship is not a protected class for the purposes of § 1985(3) analysis, it follows that service to a foreign military likewise fails to constitute a protected class.

The only remaining question for the Court is whether Plaintiff has plausibly alleged that Defendants were motivated by his "Jewish identity." There is not one single fact alleged against DAG that could render such an inference remotely plausible. Plaintiff cites not a single statement by DAG referencing his religion *whatsoever*. Instead, he relies entirely upon the frivolous claim that opposition to his IDF service is *per se* antisemitic. FAC ¶ 9. This dangerous attempt to conflate legitimate criticism of a foreign army's genocidal conduct with religious animus improperly sweeps "any and all criticism of Israel into the basket of antisemitism." No. CV 24-2044, 2025 WL 5469, at *1 (E.D. Pa. Jan. 6, 2025). Plaintiff himself pleads that Defendants were motivated by his IDF service, not his religion. FAC ¶ 187. Moreover, he cites no case in which a federal court has found that service in a foreign military gives rise to actionable animus under § 1985(3). The Court's longstanding jurisprudence limiting § 1985(3) to racial animus forecloses Plaintiff's claim.

## CONCLUSION

The Amended Complaint must be dismissed under Rule 12(b)(2) and 12(b)(6) for failure to establish personal jurisdiction and failure to state a claim against DAG and the other Defendants.

Respectfully submitted this 28th day of August, 2025.

*/s/ Collin Poirot*
Collin Poirot
(*pro hac vice*)

New York SBN: 5673405
2603 Oak Lawn, Suite 300
Dallas, TX  75219
(214) 392-2281
cpoirot.law@gmail.com

*/s/ Akil Secret*
Akil Secret
Georgia Bar No. 634075
The Secret Firm PC
P.O. Box 91028
Atlanta, GA 30364
(404) 524-5300
asecret@thesecretfirm.com

*Attorneys for Doctors Against
Genocide Society (DAG)*

## CERTIFICATE OF COMPLIANCE WITH L.R. 5.1

I HEREBY CERTIFY that the foregoing document was prepared in Book

Antiqua 13-point font, as approved by Local Rule 5.1.

*/s/ Collin Poirot*
Collin Poirot
(*pro hac vice*)
New York SBN: 5673405
2603 Oak Lawn, Suite 300
Dallas, TX  75219
(214) 392-2281
cpoirot.law@gmail.com
