## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| Joshua Winer, | |
| Plaintiff, | |
| v. | Case No. 1:25-CV-02329 |
| Umaymah Mohammad, AJP Educational Foundation, Inc. A/K/A American Muslims for Palestine, WESPAC Foundation, Inc., Sean Eren as the representative of National Students for Justice in Palestine, Doctors Against Genocide Society, CAIR-Nga Inc. A/K/A CAIR-Georgia, CAIR Foundation Inc., A/K/A Council on Islamic Relations or CAIR, Rupa Marya, Ibrahim Jouja as representative of Emory Students for Justice in Palestine. | |
| Defendants. | |

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

Defendants Umaymah Mohammad; AJP Educational Foundation, Inc. A/K/A American Muslims for Palestine; WESPAC Foundation, Inc.; Doctors Against Genocide Society; CAIR-Nga Inc. A/K/A CAIR-Georgia; CAIR Foundation Inc., A/K/A Council on Islamic Relations or CAIR; Rupa Marya; Ibrahim Jouja as representative of Emory Students for Justice in Palestine CAIR-Nga, Inc. (collectively "Defendants") hereby file this Response in Opposition to Plaintiff's

Motion for Leave to File a Second Amended Complaint ("Motion") (Dkt. 109). For the reasons set forth below, Plaintiff's Motion should be denied.

## <u>INTRODUCTION</u>

Dr. Winer seeks to file Second Amended Complaint. He does so after more than 260 pages of briefing have been filed and after one defendant noted numerous incorrect citations in a brief Dr. Winer filed in response to a motion to dismiss. In moving to amend, Dr. Winer essentially admits that in order for his amended claim to prevail, the Court would be required to disregard a Supreme Court opinion. Perhaps most egregious of all, despite knowing that Title VII is barred a basis for § 1985(3) claims, and acknowledging that his claims were not based on Title VII in his response in opposition to CAIR GA's motion to dismiss, Dr. Winer now asserts that Title VII is a basis for his claim.

The proposed amendments here are futile, and Dr. Winer has already been given the opportunity to argue that § 1981 and Title VII could form the bases of his § 1985(3) claim. Allowing him another opportunity to do so would result in another meritless Complaint that would be dismissed for the same reasons Defendants have argued his First Amendment Complaint should be dismissed. Dr. Winer's third basis, Title VI, is likewise meritless as it is based on hypothetical harms.

Dr. Winer's motivation to seek futile amendments can be inferred. This effort to amend the complaint, if successful, would moot CAIR-GA's Motion to Dismiss,

and *ergo,* moot Dr. Winer's opposition brief that asserted numerous inaccurate citations. Indeed, Dr. Winer has already moved for leave to file an amended opposition brief seeking to "fix" several of those problematic citations, and the instant motion appears to be an even more aggressive attempt to expunge that brief entirely. The instant effort to amend is not only futile and prejudicial, but also could easily be interpreted as a bad faith attempt to avoid judicial scrutiny of citation errors.

## BACKGROUND FACTS

Dr. Winer filed a Complaint on April 28, 2025, against nine defendants. Dkt. 1. On May 20, 2025, he filed a First Amended Complaint ("FAC"), adding a claim for conspiracy to violate civil rights under 42 U.S.C. § 1985(3). Dkt. 22. Since that date, eight Defendants have moved to dismiss the FAC for failure to state a claim based on numerous defects in Dr. Winer's pleading. Dkts. 41, 63, 83, 94-97, 101. The aggregate briefing thus far spans more than 260 pages. Dkts. 41-1, 60, 63-1, 81, 83-1, 91, 94-1, 97-1, 101-1, 104-3, 106, 108, 112. In addition to opposing those motions, Dr. Winer has sought relief to "correct" quotations within his opposition brief filed in response to CAIR GA's Motion to Dismiss (Dkt. 104), seeking leave to file a new brief after numerous citation errors were identified.[1] (Dkt. 81 at 9-13; Dkt. 108 at 2-7).

---

[1] The citation errors speak for themselves.

Dr. Winer now seeks leave to amend his FAC, seeking leave to file a proposed Second Amended Complaint ("SAC"). Dkts. 109, 109-1. The proposed amendments do not create a cognizable claim. Specifically, Dr. Winer's proposed amendments include significant wordsmithing with no apparent purpose and the clarification of the three bases of his § 1983(3) claim: Titles VI and VII of the Civil Rights Act and § 1981. Dkt. 109-1, ¶ 193.

## ARGUMENT

## I.    Applicable Legal Standard

Federal Rule of Civil Procedure 15(a) governs a party's right to amend its pleadings prior to trial. The rule provides that, once the deadline amend as a matter of course has expired, consent or leave to amend is required. Fed. R. Civ. P. 15(a)(2).

A District Court may exercise its discretion to deny a motion for leave to file an amended complaint for reasons "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Brewer-Giorgio v. Producers Video, Inc.*, 216 F.3d 1281, 1284 (11th Cir. 2000) ("[A] motion to amend may be denied on numerous grounds such as undue delay, undue prejudice to the defendants, and futility of the amendment.") (citations and internal quotation marks omitted).

4

"[A] court may find undue delay when the movant knew of facts supporting a new claim before the movant requested leave to amend, and the amendment would further delay the proceedings." *Campbell v. Emory Clinic*, 166 F.3d 1157, 1162 (11th Cir. 1999); see also *Tampa Bay Water v. HDR Eng'g, Inc.*, 731 F.3d 1171, 1186 (11th Cir. 2013) (where the district court denied relief and found that plaintiff "knew of the factual basis for . . . claims" and had unduly delayed bringing her motion for leave to amend).

An amended complaint renders moot a motion to dismiss the original complaint because that motion seeks to dismiss a pleading that has been superseded. *See Thomas v. Alcon Lab'ys*, 116 F. Supp. 3d 1361, 1365 n.5 (N.D. Ga. 2013) (Evans, J.) ("[A] motion to dismiss is rendered moot by an amended pleading"); *S. Pilot Ins. Co. v. CECS, Inc.*, 15 F. Supp. 3d 1284, 1287 n.1 (N.D. Ga. 2013) (Totenberg, J.) ("An amended complaint supersedes the original complaint, and thus renders moot a motion to dismiss the original complaint.").

## II.    Dr. Winer's Proposed Amendments Are Futile

Dr. Winer's proposed amended claims are futile because they would not survive a motion to dismiss. *See, e.g.*, *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007) ("Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant."); *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1263 (11th Cir.

2004) ("the district court properly denied Hall's motion to file a second amended complaint because the three new claims asserted, like those in her first amended complaint, would have been subject to dismissal as a matter of law."); *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999) ("[D]enial of leave to amend is justified by futility when the 'complaint as amended is still subject to dismissal.'") (quoting *Halliburton & Assoc., Inc. v. Henderson, Few & Co.*, 774 F.2d 441, 444 (11th Cir.1985)); 3 Moore's Federal Practice - Civil § 15.15 (2025) ("An amendment is futile if it merely restates the same facts as the original complaint in different terms, … fails to state a legal theory, or could not withstand a motion to dismiss.").

Dr. Winer's proposed SAC fails to state a claim. He does not and cannot establish that a violation of rights has occurred, and, moreover, Eleventh Circuit and Supreme Court precedent bar the bases for his § 1985(3). Dr. Winer's attempts to sidestep precedent relies on misstated law and three decades-old, out-of-circuit district court opinions. Finally, Dr. Winer has admitted that his claims are barred by precedent and has signaled that he intends to appeal a decision here in order to overturn 11th Circuit and Supreme Court precedent.

## A. Dr. Winer's Proposed § 1985(3) Claims Are Insufficient as a Matter of Law

Dr. Winer's proposed SAC specifies three bases to try to prop up his § 1985(3) claim: (1)Title VII, (2) 42 U.S.C. § 1981, and (3) Title VI. Dkt. 109 at 11, 13; Dkt. 109-1 at ¶¶ 189, 193-195. As an initial matter, Dr. Winer does not even allege, nor

can he establish, that violations of such rights have occurred. He fails to state a cognizable claim for that reason alone.

For example, he asserts that he seeks "to hold defendants accountable for a conspiracy to *provoke* Emory to terminate Dr. Winer because of his Jewish identity—a *result* that would violate Title VII." Dkt. 91 at 25 (emphasis in original); *see also id.* (referring to novel and baseless theory of "an 'indirect' deprivation of equal protection"). He does not allege that Emory *actually* terminated him or breached his employment contract. With only hypothetical harms, there can be no violation of Title VII, § 1981, or Title VI that could be remedied.

Dr. Winer's Title VI claim is even more flawed to the extent it is based on Defendant CAIR-Foundation's alleged receipt of federal funding (Dkt. 109-1 at ¶ 194), as he does not allege that he was seeking (and was denied) benefits from CAIR-Foundation. Thus, Dr. Winer has failed to adequately plead interference with the purported rights he identifies in his proposed SAC. But even assuming *arguendo* that Dr. Winer could establish a violation of those rights, none is remediable under § 1985(3).

## 1.    Settled Case Law Forecloses Dr. Winer's Claims

Binding precedent precludes Dr. Winer's § 1985(3) claim across the board.

First, as to Title VII,[2] the Supreme Court has squarely rejected the type of relief set forth in Dr. Winer's claim, holding (as already explained (Dkt. 41-1 at 19)) that "deprivation of a right created by Title VII cannot be the basis for a cause of action under § 1985(3)." *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 377-78 (1979); *see also Jimenez*, 596 F.3d at 1312 ("[T]he Supreme Court has declared … the rights protected under Title VII insufficient to form the basis of § 1985(3) actions against private conspirators.") (citations omitted); *Gilmore v. Nat'l Mail Handlers Union Local*, 318, 517 F. App'x 784, 788-89 (11th Cir. 2013) ("Conspiracies to violate rights protected by Title VII … are not cognizable under § 1985(3)."). Because Title VII cannot be remedied through a § 1985(3) claim, Dr. Winer's proposed amendment to expressly allege such a violation is futile.

Dr. Winer's proposed § 1981 claim is also foreclosed by controlling precedent. The Eleventh Circuit, relying on *Novotny* and the court's analytical relationship between Title VII and § 1981 claims, held in *Jimenez v. Wellstar Health Systems*, that conspiracies to violate rights protected by § 1981 cannot sustain a

---

[2] Despite his protestations that his FAC "does not seek to enforce Title VII rights" (Dkt. 60 at 24; *see also* Dkt. 104-1 at 25 (proposed amended opposition asserting same)), Dr. Winer's proposed SAC merely makes express what was already assumed for the sake of argument (*see, e.g.*, Dkt. 41-1 at 19 ("Generously construed, the Complaint invokes a federal right to be free from employment discrimination by private actors, a right protected by Title VII.")), and thus his amendment does nothing to move the needle for this additional reason, only wasting more of the Court's and parties' resources.

§ 1985(3) claim (also as already explained (Dkt. 108 at 6)): "[W]e hold conspiracies to violate rights protected under § 1981 are likewise insufficient to form the basis of a § 1985(3) claim." 596 F.3d 1304, 1312 (11th Cir. 2010). Dr. Winer has even admitted that his § 1981 claims are not actionable and thus his request to add such claims is not only perplexing but also inconsistent with the orderly and efficient conduct of federal court litigation. Dkt. 60 at 22 ("While the Eleventh Circuit has held that conspiracies to violate rights secured under § 1981 are not actionable under § 1985(3), *see Jimenez* [], Dr. Winer's claim does not rely on §1981."); *see also* Dkt. 104 at 23 (proposed amended opposition asserting same)). Because Dr. Winer's asserted § 1981 rights are not capable of supporting a claim under § 1985(3), they are futile.

Lastly, *Jimenez* also conclusively resolves Dr. Winer's claim based on Title VI. As already explained (Dkt. 41-1 at 17; Dkt. 108 at 5), *Jimenez* held that, where the alleged conspirators are private actors, it would not expand § 1985(3)'s scope of protection beyond the right to interstate travel and the right against involuntary servitude. *Jimenez*, 596 F.3d at 1312 ("[R]ights constitutionally protected against private impairment … include only *select serious constitutional rights* …. The only rights the Supreme Court has expressly declared enforceable against private conspirators under § 1985(3) are the right to interstate travel and the right against involuntary servitude.") (emphasis added). Indeed, *Jimenez* expressly based its

9

holding as to § 1981 on the Supreme Court's Title VII jurisprudence (discussed below) and its limitation of rights that can be remedied under § 1985(3), concluding, "and because the Supreme Court has been conservative in designating which rights litigants may enforce against private actors under § 1985(3), we hold that conspiracies to violate rights protected under § 1981 are likewise insufficient to form the basis of a § 1985(3) claim." *Id.* at 1321. As such, the court's statements as to the two limited rights that can support a private complicacy under § 1985(3) have binding effect. *United States v. Caraballo-Martinez*, 866 F.3d 1233, 1244 (11th Cir. 2017) ("The holding of a case comprises both the result of the case and those portions of the opinion necessary to that result.") (internal quotation marks omitted)); *see also United States v. Gillis*, 938 F.3d 1181, 1199 (11th Cir. 2019) ("*McGuire's* categorical approach ruling—that the text of … [the statute at issue] requires use of the categorical approach … was 'necessary to [the] result,' and therefore part of the holding[.]").

Moreover, the Eleventh Circuit has consistently reiterated § 1985(3)'s limited scope, which excludes Dr. Winer's Title VI claim. *See, e.g., Prunty v. Arnold & Itkin LLP*, 753 F. App'x 731, 736 (11th Cir. 2018) (unpublished) ("The only rights the Supreme Court has expressly declared enforceable against private conspirators under § 1985(3) are the right to interstate travel and the right against involuntary servitude.") (quoting *Jimenez*, 596 F.3d at 1312); *Shuler v. Swatek*, 465 F. App'x

10

900, 903 (11th Cir. 2012) (unpublished) ("[T]he only claims that have been recognized by the Supreme Court as viable under § 1985(3) against private defendants are claims for deprivation of the right to interstate travel and freedom from involuntary servitude."); *Johnson v. Wilbur*, 375 F. App'x 960, 964 (11th Cir. 2010) (unpublished) ("So far, the only rights that the Supreme Court has expressly declared enforceable against private conspirators under § 1985(3) are the right to interstate travel and the right against involuntary servitude."). This precedent conclusively establishes as a matter of law that Dr. Winer's § 1985(3) claim also cannot be based on Title VI.

Dr. Winer's proposed amendments to his § 1985(3) claims are thus futile. To the extent the proposed amendments "clarif[y] the theory of relief under 42 U.S.C. § 1985(3)," they only underscore already-existing inadequacies and what has been established in Defendants' pending motions to dismiss: Dr. Winer cannot state a cause of action under § 1985(3). In short, Dr. Winer's proposed SAC cannot be characterized as addressing "technical concerns" and "fixable problems" (Dkt. 109 at 2, 12), and his proposed § 1985(3) claims are futile in their entirety.

## 2. Dr. Winer's Arguments Against Established Precedent Are Meritless

Dr. Winer's weak attempts to get around all of these precedents fail. He first tries to argue that *Jimenez* simply "also said" § 1981 claims could not be remedied through § 1985(3) and then questions whether the court's "*reasoning* constitutes a

*holding*," Dkt. 109 at 14 (emphasis added). Dr. Winer's musings, in a disservice to this Court's and the Defendants' resources, *ignore* the operative language, "*we hold* conspiracies to violate rights protected under § 1981 are likewise insufficient to form the basis of a § 1985(3) claim." *Jimenez*, 596 F.3d at 1312. There is thus no room for doubt that *Jimenez* has direct application to, and directly controls, this case.

In sum, Dr. Winer provides no substantive arguments to support his position and merely offers up three decades-old district court decisions that *Jimenez* court *expressly rejected*, 596 F.3d at 1312 n.7. (Dkt. 109 at 14). The "extent a § 1981 predicate is barred by *Jimenez*" (Dkt. 109 at 14) is not in question: It is completely precluded. Dr. Winer's arguments lack candor and credibility.

Dr. Winer again takes liberties with precedent in his arguments regarding his Title VII claims. His questioning of the *Jimenez* opinion's interpretation of *Novotny* is another non-starter. Dkt. 109 at 14-15. As noted above, the reasoning of an opinion necessary to its result constitutes part of its holding. *Caraballo-Martinez*, 866 F.3d at 1244. In *Jimenez*, the court relied on the Supreme Court's limited endorsement of the rights subject to relief through 1985(3) and the Supreme Court's express holding in *Novotny* as to Title VII claims specifically. 596 F.3d at 1312 ("[B]ecause conspiracies to violate rights protected by Title VII cannot form the basis of § 1985(3) suits, *Novotny*, 442 U.S. at 378 ….").

The Eleventh Circuit has also reaffirmed its broad and binding interpretation

12

of *Jimenez* as noted above, *Prunty*, 753 F. App'x at 736 (quoting *Jimenez*), and the Court should reject Dr. Winer's invitation to "shut its ears" when the Eleventh Circuit speaks to how to apply its precedent, *cf. Lange v. Hou. Cty.*, No. 22-13626, 2025 LX 321770, at *21 (11th Cir. Sep. 9, 2025) ("As lower court judges, we cannot shut our ears when the Supreme Court tells us how to apply its precedents.").

Dr. Winer misreads case law again in wrongly describing *Novotny*, which even absent *Jimenez*, obviously compels denial of his claim as a decision of the Supreme Court. *Novotny* held:

> The only question here … is whether the rights created by Title VII may be asserted within the remedial framework of § 1985 (3). … [W]e conclude that *§ 1985(3) may not be invoked to redress violations of Title VII*. … Unimpaired  effectiveness can be given to the plan put together by Congress in Title VII only by holding that *deprivation of a right created by Title VII cannot be the basis for a cause of action under § 1985(3)*.

442 U.S. at 377-78 (emphasis added). It is nonsensical to suggest that *Novotny* could be read as narrowly as Dr. Winer asserts. Dkt. 109 at 14-15. Although the Court rested its decision on concerns regarding circumvention of Title VII's remedial scheme,[3] the Court also noted "other considerations discussed in this opinion," 442 U.S. at 378, which included, "[t]he legislative history of § 2 of the Civil Rights Act

---

[3] Even assuming *arguendo* Dr. Winer's argument as to the purpose of the *Novotny* holding (Dkt. 109 at 15), his flawed claim seeks to do exactly what the Court sought to avoid: Dr. Winer is attempting to evade the requirements of Title VII because he cannot and does not state a proper claim for relief under that statute.

of 1871, of which § 1985 (3) was originally a part," *Novotny*, 442 U.S. at 370.

Lastly, the Court need not address Dr. Winer's arguments about Seventh Circuit case law relating to his proposed Title VI-based claim (Dkt. 109 at 15-16), because *Jimenez* controls that claim as well, as discussed above.

### 3. Dr. Winer's Claim Against CAIR-Foundation Is Futile

To the extent Plaintiff intends to assert a separate cause of action against CAIR-Foundation under Title VI of the Civil Rights Act ("Title VI"), permitting such an amendment would be futile, as such a claim would be subject to dismissal on its face for failure to state a claim. Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.

Plaintiff intends to allege that "CAIR-Foundation receives federal funding, making their conduct in subjecting Plaintiff to discrimination 'on the ground[s]' of his 'race' and 'national origin' a violation of Title VI of the Civil Rights Act." *See* Dkt. 109-1, ¶ 194. Notably, the alleged "discrimination" is merely Plaintiff's conclusion; there are no factual allegations explaining how CAIR-Foundation discriminated against Plaintiff (*i.e.*, Plaintiff does not allege that he was excluded from participation in, denied the benefits of, or subjected to discrimination under CAIR-Foundation—a non-profit organization whose mission is to enhance

understanding of Islam, protect civil rights, promote justice, and empower American Muslims).

The proposed SAC leaves to the imagination any possible connection between CAIR-Foundation's alleged status as a recipient of federal funding and any violation of Plaintiff's civil rights cognizable under Title VI. The proposed SAC appears to suggest that CAIR-Foundation somehow discriminated against Plaintiff by simply collaborating on an Instagram Post that re-shared a previously-aired news segment regarding issues of legitimate public concern, and that such collaboration amounts to a conspiracy to deprive Plaintiff of his rights under Title VI. Admitting that an actual violation of Plaintiff's rights under Title VI would only arise if Emory University (which is notably absent from the lawsuit) had terminated Plaintiff's employment as a result the alleged conspiracy, Plaintiff appears to suggest that CAIR-Foundation is somehow responsible for a hypothetical violation that would be carried out by a third party. The proposed SAC cites no legal authority for such an indirect application of Title VI, nor is CAIR-Foundation aware of any basis for the same.

### 4.    Dr. Winer Admits His Claims Are Barred by Precedent

Ultimately, Dr. Winer effectively admits that his claims are barred by

precedent and, grasping at straws, he foreshadows an appeal. Dkt. 109 at 2, 12, 14.[4] Acknowledging the necessity for such review operates as a *de facto* concession of the futility of his claims. Moreover, Dr. Winer fails to appreciate the full scope of his proposed course of action.

Dr. Winer's path cannot be to simply to seek review from the Eleventh Circuit. Such a hypothetical appeal would require the Eleventh Circuit to overturn clear precedent that a three-judge panel cannot overrule, thereby necessitating a petition for rehearing *en banc* on an issue that the Eleventh Circuit has re-affirmed as recently as 2018 in *Prunty*. That petition would be denied based on clear Supreme Court precedent in *Novotny* that directly (Title VII) and by extension (§ 1981 and Title VI through *Jimenez*) rejects his claims. At that point, Dr. Winer's only redress would be to seek rarely-granted certiorari review from the Supreme Court; and if granted, would require an effort to convince the Supreme Court to overrule *Novotny* on the basis of three stale district court decisions.

This plan is unrealistic and lacks credibility. His proposed SAC fails to state a claim under § 1985(3), and his requested amendments are therefore futile.

---

[4] In a further waste of judicial and party resources, Dr. Winer's realization comes barely more than two weeks after he repeatedly argued wrongly that *Jimenez* actually supported the vaguely described claims in his FAC (Dkt. 108 at 4-6; Dkt. 81 at 12-13)—including going so far as to request leave to file what is effectively the same erroneous brief (Dkts. 104, 104-1, 104-2).

**B.  Dr. Winer's Motion to Leave is requested in bad faith**

If leave to amend were granted, CAIR GA's motion to dismiss would be moot, and *ergo,* Dr. Winer's opposition brief would also be moot. Bearing in mind that this opposition brief asserted numerous nonexistent and misleading citations, the Motion for Leave could be construed as a strategic means to eliminate judicial review of the brief that contained those citations. If the Court were to determine that the amendments have been pursued for this purpose, such would constitute bad faith and provide additional grounds to deny leave to amend. *Foman*, 371 U.S. at 182 (identifying bad faith as cause to deny leave to amend).

**C.  Dr. Winer's Proposed Second Amendment Complaint is Dilatory and will cause Prejudice to Defendants**

The prejudice to Defendants is significant in this case, and could have been avoided entirely by a more prompt request for leave to amend. Here, Dr. Winer waited until eight defendants had filed their motions to dismiss—including opposing and allowing two of the motions to be fully briefed—and only then requested leave, based not on new facts or legal developments, but on a new, equally futile legal theory. The eight defendants—all nonprofits and students—have already incurred great expense seeking dismissal of the First Amended Complaint. They should not be required to incur this expense again, particularly when Dr. Winer has been in possession of the facts supporting his claim since the day he filed this lawsuit. *See Tampa Bay Water*, 731 F.3d at 1186 (because plaintiff "knew of the factual basis for

. . . claims" at the time she filed her initial complaint, she unduly delayed bringing her motion for leave to amend).

###    D.    Dr. Winer's Proposed Second Amended Complaint Fails to Address Issues Raised by Defendant American Muslims for Palestine

Separately, Defendant AJP Educational Foundation, Inc. d/b/a American Muslims for Palestine ("AMP") continues to assert its challenges to this Court's personal jurisdiction over it in this action. Dr. Winer's proposed SAC does nothing to remedy this defect. AMP asserts in its Motion to Dismiss that Plaintiff fails to state any facts that subject it to this Court's jurisdiction. *See* Dkt. 83-1 at 7. Plaintiff's proposed SAC adds next to nothing in terms of allegations against AMP specifically, and therefore still fails to state facts sufficient to make out a prima facie showing of jurisdiction. Plaintiff does not address this failing in his Motion for Leave to Amend. Because Plaintiff cannot show this Court's personal jurisdiction over AMP, leave to amend is futile, and this Court should deny Plaintiff's Motion.

Relatedly, Plaintiff's SAC remains a shot-gun pleading as to AMP. AMP is clearly named only a handful of times, and otherwise, Plaintiff relies solely on blanket allegations about "defendants" as a whole. Plaintiff's SAC makes very few changes on this front and it therefore remains deficient.

### E.    Dr. Winer's Proposed Second Amended Complaint Fails to Address Issues Raised by Defendant WESPAC Foundation, Inc.

As set forth in its motion to dismiss, there is no basis to exercise personal jurisdiction over Defendant WESPAC Foundation, Inc. ("WESPAC") in this action. WESPAC is a New York entity that Dr. Winer has not alleged took any action in Georgia, let alone an action relating to his claims. Dkt. 97-1 at 8-11. The proposed amended pleading does nothing to remedy this fatal—and inescapable—defect.

More specifically, Dr. Winer's only attempt to address this issue appears in paragraph 24 of the SAC, which would assert that, "[a]s to the remaining defendants, personal jurisdiction is proper because they expressly directed their tortious conduct toward Plaintiff in Georgia and should have reasonably anticipated that the effects of their actions would be felt in this State." This proposed language both implicitly acknowledges the jurisdictional failings of Dr. Winer's pleadings to date and is completely ineffective in addressing them. Indeed, this conclusory statement about what all "defendants" supposedly did is not accompanied by any specific factual allegation of what *WESPAC* did to direct its "tortious conduct" toward Plaintiff in Georgia to make the exercise of personal jurisdiction proper here. Indeed, as we note below, Plaintiff does not specifically allege that any money from WESPAC was ever used to support NSJP's alleged activities in Georgia that Plaintiff alleges harmed him. Accordingly, this amendment would be flatly futile.

19

Threshold jurisdictional failings aside, nothing in the proposed pleading would remedy the defects in Dr. Winer's claims that are specific to WESPAC. As detailed in WESPAC's motion to dismiss, the claims against WESPAC in Dr. Winer's first two pleadings are not premised on an allegation that WESPAC did *anything* in relation to Dr. Winer. Rather, the claims against WESPAC are based on WESPAC's having been a fiscal sponsor to NSJP.[5] To put it simply, there is no legal basis for this theory, as two sister courts have recently held. *See* Dkt. 97-1 at 8-11

The proposed SAC does not include any new factual allegations about actions WESPAC took in connection with Dr. Winer—since no such allegations could legitimately be made.  The SAC simply repeats the previously made conclusory allegation that "WESPAC, as NSJP's fiscal sponsor, knowingly funded and facilitated NSJP's coordinated efforts to vilify Plaintiff and pressure Emory to discipline Plaintiff." SAC ¶ 147. In a remarkable concession, however, Dr. Winer has added the phrase "on information and belief" before this allegation, making clear he has no evidence of WESPAC's funding or facilitation of such efforts. And the additional language that follows in paragraphs 148-152 does not add a single factual allegation that might make the conclusory funding or facilitation allegation

---

[5] The SAC contains new allegations that "WESPAC funds" NSJP and "knowingly collects donations for" it, which is perhaps the most common and fundamental activity of a fiscal sponsor. SAC ¶ 16.

plausible.[6] Thus, it is clear that Dr. Winer can offer nothing other than the outlandish theory that a fiscal sponsor has strict liability for anything a sponsoree allegedly does to anyone anywhere in the world.

Of course, the proposed SAC does not cite any new legal authority to salvage this bankrupt theory. Rather, the SAC invokes IRS Revenue Rulings 66-79, 1966-1 C.B. 48 and 68-489, 1968-2. *See* SAC ¶¶ 150-152. The first deals with the deductibility of contributions paid to a domestic organization earmarked for a foreign organization. The second holds that an organization will not jeopardize its tax exemption by distributing funds to non-exempt organizations provided it retains control and discretion over the use of the funds for section 501(c)(3) purposes. If those Rulings create any duty on the part of a fiscal sponsor, it is to the government in return for the tax exemption, not to a tort plaintiff. Thus, the Rulings do not provide any basis for holding a sponsor liable for the actions of a sponsoree.

As Judge Rowland in the Northern District of Illinois observed, "Plaintiff cites no case or legal authority from any jurisdiction suggesting or even contemplating that *any* IRS rule could *ever* create a legal duty sufficient to substantiate a tort claim." *Manhart v. WESPAC et al.*, 24-cv-08209, 2025 WL 2257408, at *12 (N.D. Ill. Aug.

---

[6] As WESPAC noted in its motion to dismiss (Dkt. 97-1 at 5-6), there was no such funding or facilitation.

21

7, 2025) (emphasis in original); *see Manhart,* 24-cv-08209 (N.D. Ill.), Dkt. 69 ¶ 14 (Second Amended Complaint in *Manhart,* citing Rev. Rul. 68-489, 1968-2).

Equally fatal to Plaintiff's claims against WESPAC is that the SAC, like the FAC, does not allege that one dime of money coming from donors contributing to NSJP through WESPAC was ever used to support NSJP's alleged activities in Georgia that Plaintiff alleges harmed him. Thus, even if *arguendo* there were a legal duty to Plaintiff—rather than to the government in return for WESPAC's tax exemption—arising from the use or misuse of donations from WESPAC spent by NSJP to harm Plaintiff, the fact that no money from WESPAC was directed to Georgia, or used or misused to harm Plaintiff, entirely disposes of Plaintiff's claims against WESPAC.

Because the SAC is fatally deficient and fails to cure those same defects in the FAC, leave to amend against WESPAC should be denied as futile.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiff's Motion.

Respectfully submitted this 29th day of September, 2025.

**SWIFT, CURRIE,
McGHEE & HIERS**

/s/ *Mollie W. Amick*

Kori E. Wagner
Georgia State Bar No. 155438
Mollie W. Amick
Georgia State Bar No. 406371
1420 Peachtree Street, N.E.
Suite 800
Atlanta, Georgia 30309
Tel: 404.874.8800
Fax: 470.600.5990
kori.wagner@swiftcurrie.com
molliebeth.amick@swiftcurrie.com

*Counsel for Defendant
CAIR-Foundation, Inc.*

**AWAD LEGAL TEAM, LLC**

/s/ *Robert Herbst*

Muneer Othman Awad
Georgia Bar No. 683647
244 Roswell Street, Suite 500
Marietta, GA 30060
(404) 445-8443
muneer@awadlegalteam.com

**HERBST LAW PLLC**
Robert Herbst
Admitted Pro Hac Vice
420 Lexington Avenue, Suite 3000
New York, NY 10170
(914) 450-8163
rherbst@herbstlawny.com

**BUCHALTER APC**

/s/ *Amanda G. Hyland*

Amanda G. Hyland
Georgia Bar No. 325115
Austin C. Vining
Georgia Bar No. 362473
Cory M. Mull
Georgia Bar No. 595376
3475 Piedmont Road NE, Ste. 1100
Atlanta, GA 30305
(404) 832-7350 Telephone
ahyland@buchalter.com
avining@buchalter.com
cmull@buchalter.com

*Counsel for Defendant CAIR-Georgia*

**SLATER LEGAL PLLC**

/s/ *James M. Slater*

James M. Slater
Georgia Bar No. 169869
2296 Henderson Mill Rd NE #116
Atlanta, Georgia 30345
Tel. (404) 458-7283
james@slater.legal

**CONSTITUTIONAL LAW
CENTER FOR MUSLIMS
IN AMERICA**
Christina A. Jump
(admitted *pro hac vice*)
Samira S. Elhosary
(admitted *pro hac vice*)

*Counsel for WESPAC Foundation, Inc.*

**THE SECRET FIRM, P.C.**

/s/ *Collin Poirot*

Akil K. Secret
Georgia Bar No. 634075
Post Office Box 91028
Atlanta, GA 30364
(404) 524-5300
asecret@thesecretfirm.com

Collin Poirot
Admitted Pro Hac Vice
2603 Oak Lawn Ave.
Dallas, TX 75219
(214) 392-2281
cpoirot.law@gmail.com

*Counsel for Doctors Against Genocide*

Christina A. Boyd
(admitted *pro hac vice*)
Constitutional Law Center
for Muslims in America*
100 N. Central Expy. Suite 1010
Richardson, Texas 75080
Tel: (972) 914-2507
Fax: (972) 692-7454
cjump@clcma.org
selhosary@clcma.org
ali.boyd@mlfa.org

*Counsel for Defendant*
*AJP Educational Foundation, Inc.*
*d/b/a American Muslims for Palestine*

**THE SECRET FIRM, P.C.**

/s/ *Jonathan Wallace*

Akil K. Secret
Georgia Bar No. 634075
Post Office Box 91028
Atlanta, GA 30364
(404) 524-5300
asecret@thesecretfirm.com

Jonathan Wallace
Admitted Pro Hac Vice
P.O. Box 728
Amagansett, NY 11930
jonathan.wallace80@gmail.com

*Counsel for Defendants*
*Umaymah Mohammad,*
*Rupa Marya, and Ibrahim Jouja*

## **CERTIFICATE OF COMPLIANCE WITH L.R. 5.1**

I HEREBY CERTIFY that the foregoing document was prepared in Times

New Roman, 14-point font, as approved by Local Rule 5.1.

/s/ *Amanda G. Hyland*
Amanda G. Hyland
Georgia Bar No. 325115

*Attorney for Defendant CAIR-Georgia*