IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| JOSHUA WINER,<br><br>   Plaintiff,<br><br>   v.<br><br>UMAYMAH MOHAMMAD, et al.,<br><br>   Defendants. | CIVIL ACTION FILE<br>NO. 1:25-CV-2329-TWT |

**OPINION & ORDER**

This is a defamation action. It is before the Court on the Plaintiff Joshua Winer's Motion to Amend the First Amended Complaint [Doc. 109]. For the following reasons, the Motion to Amend [Doc. 109] is GRANTED.

## I. Background

This action arises out of alleged defamatory statements that Defendant Umaymah Mohammad, a student at the Emory University School of Medicine ("SOM"), made about Plaintiff Joshua Winer, a physician and professor at Emory. (First Am. Compl. ¶¶ 11, 25). Mohammad, who is Palestinian, sent an email to the entire SOM student and faculty body on January 17, 2024, in which the Plaintiff alleges she "praised terrorism against Israel, expressed her hatred towards Israel and the United States, and stated that Israel, the United States, and Emory are perpetrating a genocide against Palestinians in Gaza." (*Id.* ¶¶ 25-26). Nearly two months later, in March 2024, the Plaintiff published an op-ed piece in an Israeli news publication sharing his decision to travel to

Israel to volunteer as a physician in the Israeli Defense Force ("IDF") following the October 7th Hamas attack on Israel. (*Id.* ¶¶ 31-33). The Plaintiff identifies as Jewish and maintains dual American and Israeli citizenship. (*Id.* ¶ 11). He is a surgical oncologist at Emory Winship Cancer Institute, a professor in the Department of Surgery, Division of Surgical Oncology at the SOM, and serves as the SOM Surgical Clerkship Director. (*Id.*).

In April 2024, Mohammad participated in an interview for a news organization called Democracy Now!. (*Id.* ¶ 35). In the interview, Mohammad was asked about the email she sent and was asked to explain the importance of the issue to her. (*Id.*). As part of her response, Mohammad referenced Winer by stating that

> one of the professors of medicine we have at Emory recently went to serve as a volunteer medic in the Israeli Offense Force [sic] and recently came back. This man participated in aiding and abetting a genocide, in aiding and abetting the destruction of the healthcare system in Gaza and the murder of over 400 healthcare workers, and is now back at Emory so-called teaching medical students and residents how to take care of patients.

(*Id.*). Mohammad was ultimately suspended from the SOM for one year based on her comments in the Democracy Now! interview. (*Id.* ¶ 48). In November 2024, Mohammad participated in a podcast hosted by the International Union of Scientists in which she made similar statements about the Plaintiff. (*Id.* ¶¶ 49-50). In January 2025, she made more statements about the Plaintiff's IDF service in the online publication Mondoweiss. (*Id.* ¶¶ 54-55). In the

2

Mondoweiss piece, Mohammad alluded that the Plaintiff "believe[d] in the legitimacy of apartheid, and that some human lives are not as important as others." (*Id.* ¶ 55). At the end of the piece, she provided a link to a social media post by Defendants National Students for Justice in Palestine ("NSJP") and Doctors Against Genocide ("DAG"), which ultimately led to a campaign on the website of Action Network that "contained additional false statements about Plaintiff and identified [him] by name." (*Id.* ¶ 59). NSJP and DAG also published posts on Instagram regarding the Action Network campaign, which directly quoted Mohammad's Democracy Now! interview. (*Id.* ¶¶ 77-86). These Defendants made a second Instagram post a few weeks later. (*Id.* ¶¶ 90-94). The Plaintiff alleges that Defendant WESPAC is NSJP's fiscal sponsor and, therefore, "knowingly funded and facilitated NSJP's coordinated efforts to vilify Plaintiff and pressure Emory to discipline [him]." (*Id.* ¶ 145).

In February 2025, Defendant CAIR Georgia held a press conference on the subject of Mohammad's suspension, during which she made the following statement:

> [Emory] disciplined me for exposing Emory's complicity in the destruction of Gaza in an interview where I mentioned an unnamed physician who served in the military, actively engaged in the genocidal campaign against the Palestinian people, my people . . . I cannot learn from a physician who might have fired one of the 355 bullets that landed in 6 year old Hind Rajab's body. Or who might have helped make the decision to bomb one of the hospitals in Gaza. Or who might have celebrated the murder of our communities on the rubble still wet with Palestinian blood. A doctor who cannot see Palestinians as human beings will return

3

> to Atlanta to offer the same disposability to black and brown patients at home.

(*Id.* ¶¶ 60-61). CAIR Georgia, along with CAIR Foundation Inc., also issued a press release with a link to Mohammad's Democracy Now! interview and rebroadcasted this speech on its Instagram account. (*Id.* ¶¶ 118, 123). Mohammad's statements were later broadcasted and published by television stations and news outlets. (*Id.* ¶¶ 66-74). Defendant Emory SJP shared NJSP and DAG's posts on its Instagram account, and also made similar posts sharing the Democracy Now! interview and identifying the Plaintiff. (*Id.* ¶¶ 128-135). Defendant Rupa Marya works with Mohammad as a cofounder of DAG and, the Plaintiff alleges, she has "frequently identified Plaintiff by name and used her social media platforms to spread harmful and reputationally damaging statements about him," including blaming him for the termination of a Palestinian professor at Emory SOM and accusing him of participating in a genocide. (*Id.* ¶¶ 95-117).

The Plaintiff brought this action in April 2025 asserting four counts against all of the Defendants: defamation per se, in violation of O.C.G.A. § 51-5-4 (Count I); false light invasion of privacy, under state common law (Count II); civil conspiracy, under state common law (Count III); and conspiracy to interfere with civil rights, in violation of 42 U.S.C. § 1985(3). (*Id.* ¶¶ 136-90). The Plaintiff filed an amended complaint as of right before any of the Defendants filed a responsive pleading. [Doc. 22]. Thereafter, the

4

Defendants filed several motions to dismiss, which remain pending before the Court. [Docs. 41, 63, 83, 94-97, 101].[1] The Plaintiff then moved for leave to file a Second Amended Complaint, [Doc. 109], and that Motion is presently before the Court. The Defendants strenuously oppose granting the Plaintiff leave to amend. [Doc. 113].

## II. Legal Standards

When a party is not entitled to amend its pleading as a matter of course, it must obtain the opposing party's consent or the court's permission to file an amendment. Fed. R. Civ. P. 15(a)(2). Rule 15(a)(2) provides that a court should "freely" give leave to amend a pleading "when justice so requires." *Id.* This decision is discretionary, but the Eleventh Circuit has explained that "district courts should generally exercise their discretion in favor of allowing amendments to reach the merits of a dispute." *Pinnacle Advert. & Mktg. Grp., Inc. v. Pinnacle Advert. & Mktg. Grp., LLC*, 7 F.4th 989, 1000 (11th Cir. 2021). Generally, "where a more carefully drafted complaint might state a claim, a plaintiff must be given *at least one* chance to amend the complaint before the district court dismisses the action with prejudice." *Garcia v. Chiquita Brands*

---

[1] Also pending before the Court are the Plaintiff's Motion for Leave to File an Amended Brief in Opposition to Defendant CAIR Georgia's Motion to Dismiss, [Doc. 104], and Defendant AJP Educational Foundation, Inc.'s Motion for Reconsideration [Doc. 121] of the Court's November 5th Order granting the Plaintiff's Motion to Stay briefing of the pending Motions to Dismiss until a ruling is entered on the present Motion for Leave to File a Second Amended Complaint.

5

*Int'l, Inc.*, 48 F.4th 1202, 1220 (11th Cir. 2022) (citation omitted). There are three exceptions to this rule: "(1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile." *Id.* (citation and alteration omitted).

### III. Discussion

The Plaintiff has moved to amend in an attempt to rectify several deficiencies with the First Amended Complaint that form the basis of the Defendants' several Motions to Dismiss. (Pl.'s Mot. to Amend, at 1-2). In sum, the Plaintiff seeks to "clarify supposed technical defects" as well as "clarify the nature of" his § 1985(3) claim. (*Id.* at 2). The Defendants primarily take issue with the latter amendments. They argue that two of the three bases the Plaintiff adds for his § 1985(3) claim are barred by precedent, and the third is based on hypothetical harms. (Defs.' Resp. in Opp'n to Mot. to Amend, at 2-3). They also contend that the proposed amendment is dilatory and would unduly prejudice them. (*Id.* at 17-18).[2]

---

[2] The Defendants additionally argue that the proposed Second Amended Complaint is deficient because it does not address issues raised by Defendants AJP Educational Foundation, Inc. and WESPAC Foundation, Inc. in their respective Motions to Dismiss. (Defs.' Resp. in Opp'n to Mot. to Amend, at 18-22). The Defendants' logic here conflates the Plaintiff's burdens at the leave to amend procedural posture with the Plaintiff's burdens in opposing a motion to dismiss. The Plaintiff is not required to address each and every

The Court has compared the Amended Complaint and the proposed Second Amended Complaint side by side. The changes between the two could be grouped into two categories: additions of detail to the facts section and clarifications to the legal bases underpinning the Plaintiff's § 1985(3) claim in Count IV. Because the Defendants do not appear to take issue with any of the factual details added to the proposed Second Amended Complaint, the Court will direct its attention to the Plaintiff's amendments to his § 1985(3) claim and apply the Rule 15(a)(2) standard to these proposed amendments.

## A. Futility

Leave to amend a complaint is considered futile "when the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant." *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007). The burden falls on the party opposing amendment to establish futility. *See Tims v. Golden*, 2016 WL 1312585, at *13 n.20 (S.D. Ala. Apr. 4, 2016) (collecting cases). If a proposed amendment is not clearly futile, then denial of leave to amend is improper. *See* 6 Wright & Miller, Federal

---

concern the Defendants raised in order to demonstrate that its proposed amendment is not futile; instead, it is the Defendants' burden to demonstrate futility. *See Tims*, 2016 WL 1312585, at *13 n.20. Rather, the Defendants' arguments would be better aimed in a motion to dismiss the Plaintiff's Second Amended Complaint. *See United States ex rel. Crutcher v. First Guar. Mortg. Corp.*, 2023 WL 4034197, at *4 ("Defendants' futility-based objections to the Motion to Amend should be more fully and fairly addressed in the context of any future motions to dismiss that Defendants may file in response to the Second Amended Complaint.").

7

Practice and Procedure § 1487 (3d ed. July 2022 update).

The Defendants first challenge the viability of Count IV in its entirety by asserting that the Plaintiff has not alleged that his rights under Title VI, VII, or § 1981 were actually violated since he was never terminated from his employment with Emory. (Defs.' Resp. in Opp'n to Mot. to Amend, at 6-7). This argument misconstrues both the Plaintiff's burden at the leave to amend stage and the elements for a civil conspiracy claim under § 1985(3). The Defendants are correct that the futility exception considers whether a proposed amendment could survive a motion to dismiss for failure to state a claim. *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999). However, "[i]f making that determination requires a 'complex factual inquiry,' the proposed amendment is clearly not insufficient on its face and should not be denied on the ground of futility." *Spearman v. Broker Sols., Inc.*, 2022 WL 1716438, at *2 (N.D. Ga. Feb. 16, 2022) (citation modified).

Section 1985(3) provides a cause of action against "two or more persons [who] in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." The statute has been interpreted to require a plaintiff to establish:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a

8

person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*Park v. City of Atlanta*, 120 F.3d 1157, 1161 (11th Cir. 1997). Contrary to the Defendants' position, the Plaintiff need only allege that the *purpose* of the conspiracy was to deprive him of the equal protection of the laws, which he has done, and that he suffered *either* an injury to his person *or* a deprivation of a right. *See id.*; (Proposed Second Amended Complaint ("PSAC"), Doc. 109-1, ¶¶ 189, 193, 196-98). The Plaintiff here has alleged in the proposed Second Amended Complaint that he suffered injury to his person in the form of reputational harm, emotional distress, fear for his safety, and economic injury. The Defendant raises no argument that this injury is insufficient, and the Court finds it facially sufficient for the purposes of the futility analysis. *See Spearman*, 2022 WL 1716438, at *2.

### a. Title VII and 42 U.S.C. § 1981

In the PSAC, the Plaintiff alleges that the Defendants sought to:

> interfere with Plaintiff's employment with Emory as a physician and educator by, *inter alia*, fostering distrust, disrespect, and doubt among his students through repeated defamatory statements falsely alleging that he had participated in war crimes in order to coerce Emory into terminating his employment in violation of Title VI, Title VII, and 42 U.S.C. § 1981.

(PSAC ¶ 196). The Defendants contend that the Plaintiff's reliance on Title VII makes his § 1985(3) claim futile because the Supreme Court foreclosed this basis for a § 1985(3) claim in *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*,

9

442 U.S. 366, 377-78 (1979). The Defendants also argue that the claim is futile as based on § 1981 as well because the Eleventh Circuit has extended *Novotny*'s reach to § 1981 claims. (Defs.' Resp. in Opp'n to Mot. to Amend, at 8-11). The Plaintiff contends that courts interpreting the *Novotny* decision, including the Eleventh Circuit, have "overread" its reach "such that it does not reject all use of Title VII as a predicate violation for § 1985(3), but merely as a predicate for claims against one's employer." (Pl.'s Reply in Supp. of Mot. to Amend, at 5-6). The Plaintiff thus asserts that *Novotny* does not bar his claim here and, even if it does, he will argue the precedent should be revisited on appeal. (Pl.'s Mot. to Amend, at 11-12).

In *Novotny*, the Supreme Court addressed a situation where the plaintiff, who had been terminated by his employer for a reason he believed to be discriminatory, brought a § 1985(3) claim against his employer on the grounds that his Title VII rights had been violated. *Novotny*, 442 U.S. at 368-69. The Supreme Court held that Title VII could not serve as the basis for a § 1985(3) claim because, otherwise, a plaintiff "could avoid most if not all" of the "detailed administrative and judicial process" for resolving Title VII claims. *Id.* at 373-76 ("Perhaps most importantly, the complaint could completely bypass the administrative process, which plays such a crucial role in the scheme established by Congress in Title VII."). Put another way, the Supreme Court stated that "[u]nimpaired effectiveness can be given to the plan put

10

together by Congress in Title VII only by holding that deprivation of a right created by Title VII cannot be the basis for a cause of action under § 1985(3)." *Id.* at 378.

In *Jimenez v. Wellstar Health System*, which involved a plaintiff suing his former employer for what he believed was a racially motivated suspension of his hospital privileges, the Eleventh Circuit interpreted *Novotny* as a brightline rule that Title VII can never form the basis of a § 1985(3) claim. 596 F.3d 1304, 1312 (11th Cir. 2010) ("[T]he Supreme Court has declared . . . the rights protected under Title VII . . . insufficient to form the basis of § 1985(3) actions against private conspirators." (citation modified)). The Eleventh Circuit similarly applied *Novotny* to conclude that "conspiracies to violate rights protected under § 1981 are likewise insufficient to form the basis of a § 1985(3) claim." *Id.*

The Court agrees with the Defendants that the Eleventh Circuit seems to have applied *Novotny* in a brightline fashion to bar § 1985(3) claims predicated on Title VII and § 1981. However, based on the Court's research, the Eleventh Circuit does not appear to have addressed a § 1985(3) claim predicated on either Title VII or § 1981 in circumstances similar to the present case. Here, the Plaintiff is suing a third-party who he alleges acted with the intent to induce his employer to violate his rights under these statutes. Indeed, both *Novotny* and *Jimenez* involved plaintiffs suing their former employers

11

directly for wrongful termination. The Supreme Court's reasoning in *Novotny* underscores this backdrop—there, the court expressly shared its concern that allowing § 1985(3) claims predicated on Title VII would undermine the statutory regime designed by Congress for pursuing Title VII claims. But in a case such as this, the Plaintiff has no standalone Title VII or § 1981 claims against the Defendants because they were not his employer. Thus, while the Court agrees that current Eleventh Circuit precedent may bar the Plaintiff's § 1985(3) claim as predicated on either Title VII or § 1981, there is a colorable argument that, under the circumstances presented in this case, the claim is not barred by precedent. Whether or not that is the case is not a question before the Court at the leave to amend stage, however, and the fact that it is arguably plausible means the amendment to add these statutes as bases for the Plaintiff's § 1985(3) claim is not clearly futile. *See* 6 Wright & Miller, Federal Practice and Procedure § 1487 (3d ed. July 2022 update) (noting that if a proposed amendment is not clearly futile, then denial of leave to amend is improper). The Court also notes that, while the Defendants may ultimately be correct about the Plaintiff's chances of getting the Eleventh Circuit to agree with him on appeal, he cannot raise this argument on appeal at all if it is not first presented before this Court. Thus, under the totality of the circumstances, the Court concludes that justice requires allowing amendment here. *See* Rule 15(a)(2).

### b. Title VI

The Defendant similarly argues that Eleventh Circuit precedent also bars the Plaintiff's reliance on Title VI as a basis for his § 1985(3) claim, relying on cases in which the court stated that the Supreme Court has only expressly recognized the right to interstate travel and the right against involuntary servitude as cognizable predicate rights to underpin a § 1985(3) claim. (*See* Defs.' Resp. in Opp'n to Mot. to Amend, at 10-11 (citing *Jimenez*, 596 F.3d at 1312)). This is an accurate statement of the law, but the fact that neither the Supreme Court nor the Eleventh Circuit appear to have expressly considered this issue with regard to Title VI means it is not barred by precedent. At the very least, the Defendants have not pointed to any such case, and it is their burden to establish futility. *See Tims*, 2016 WL 1312585, at *13 n.20.

The Defendants further argue that a Title VI claim is futile as against Defendant CAIR Foundation for the additional reason that the PSAC fails to explain how CAIR Foundation specifically discriminated against the Plaintiff or describe any connection between CAIR Foundation's receipt of federal funding and any violation of the Plaintiff's rights under Title VI. (Defs.' Resp. in Opp'n to Mot. to Amend, at 14-15). For starters, the Plaintiff is not seeking to assert a standalone Title VI claim against CAIR Foundation, he seeks to assert a § 1985(3) claim predicated on a Title VI violation against all of the Defendants. As explained previously, to state such a claim, he does not have to

allege that his rights under Title VI were actually violated, but instead only that the Defendants (including CAIR Foundation) acted with the intent to deprive the Plaintiff of his rights. *Park v*, 120 F.3d at 1161. Title VI prevents a person from being discriminated against by any program or activity receiving Federal financial assistance because of his race, color, or national origin. 42 U.S.C. § 2000d. In the PSAC, the Plaintiff alleges that CAIR Foundation receives federal funding and that the Defendants who do not receive such funding conspired with CAIR Foundation to deprive him of rights protected by Title VI—by pressuring Emory, who the Plaintiff alleges also receives federal funding—to terminate him based on his national origin. (PSAC ¶¶ 12, 189-90, 196). He alleges that CAIR Foundation's discriminatory actions, as summarized in the fact section above, were taken as part of the administration of its "program or activities" as that phrase is used in § 2000d.

These allegations facially satisfy the elements of a § 1985(3) claim: the Plaintiff alleges a conspiracy among the Defendants for the purpose of depriving him of his employment by a University receiving financial assistance on the basis of his national origin, he alleges that one of the Defendants receives federal funding and acted discriminatorily in the course of administering its programs and activities, and he alleges that he suffered reputational, emotional, and economic harm as a result. *See Park*, 120 F.3d at 1161. The bulk of the Defendants' opposition here raises arguments in the

14

nature of Rule 12(b)(6) that go to the factual intricacies of the Plaintiff's claims to argue that the claim must fail on the merits. But again, the procedural posture of a motion for leave to amend is not the proper stage for the Court to address these arguments. *Spearman*, 2022 WL 1716438, at *2 ("If making that determination requires a 'complex factual inquiry,' the proposed amendment is clearly not insufficient on its face and should not be denied on the ground of futility."); *Crutcher*, 2023 WL 4034197, at *4 ("Defendants' futility-based objections to the Motion to Amend should be more fully and fairly addressed in the context of any future motions to dismiss that Defendants may file in response to the Second Amended Complaint."). Thus, futility does not bar this portion of the Plaintiff's proposed amendment to his § 1985(3) claim, either.

### B. Undue Delay and Prejudice

Finally, the Defendants oppose amendment on the grounds that the Plaintiff could have sought leave to amend sooner and that a finding of undue delay is warranted because he did not seek leave to amend until after the Defendants had moved to dismiss. (Defs.' Resp. in Opp'n to Mot. to Amend, at 17-18). They contend that the expense incurred in drafting their motions to dismiss warrants a finding of prejudice should leave to amend be granted, as does the fact that the PSAC asserts a "new, equally futile legal theory" with regard to the Plaintiff's § 1985(3) claim. (*Id.*). But contrary to the Defendants' contentions otherwise, the Plaintiff's amendment does not involve an entirely

15

new legal theory and instead clarifies the claims he asserted in the Amended Complaint. *Contra Tampa Bay Water v. HDR Eng'g, Inc.*, 731 F.3d 1171, 1186 (11th Cir. 2013), *abrogated on other grounds by CSX Transp., Inc. v. Gen. Mills, Inc.*, 846 F.3d 1333 (11th Cir. 2017) (citation modified) (noting that prejudice is "likely to exist if the amendment involves new theories of recovery or would require additional discovery."). And the overwhelming weight of authorities holds that the expenditure of time, effort, or money to litigate an amendment does not constitute undue prejudice. *See, e.g.*, *D.H. Pace Co. v. OGD Equip. Co.*, 515 F. Supp. 3d 1316, 1323 (N.D. Ga. 2021); *Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 455 (S.D.N.Y. 2016); *United States ex rel. Westrick v. Second Chance Body Armor, Inc.*, 301 F.R.D. 5, 9-10 (D.D.C. 2013). Thus, the Court sees no prejudice in granting leave to amend here.

As to delay, this case has been pending for less than a year. Moreover, the Plaintiff moved for leave to amend merely two months after the first motion to dismiss was filed and only one day after the most recent one was filed, and the Court stayed discovery in this matter pending rulings on the motions to dismiss. This can hardly be considered undue delay. *See, e.g., Campbell v. Emory Clinic*, 166 F.3d 1157, 1162 (11th Cir. 1999) (affirming the denial of leave to amend where the district court had granted such leave twice before discovery closed and denied further leave only when such motions "were filed more than one year after discovery had ended, after dispositive motions had

16

been filed, and between five-and-six years after the lawsuits were begun").

## IV. Conclusion

For the foregoing reasons, the Plaintiff Joshua Winer's Motion to Amend the First Amended Complaint [Doc. 109] is GRANTED. The Clerk is directed to docket Winer's proposed Second Amended Complaint [Doc. 109-1] as the operative complaint in this action. As a result, the following pending motions are DENIED as moot:

- Defendant CAIR-NGA, INC.'s Motion to Dismiss [Doc. 41]
- Defendant CAIR Foundation, Inc.'s Motion to Dismiss and for Attorney's Fees [Doc. 63]
- Defendant AJP Educational Foundation, Inc.'s Motion to Dismiss and for Attorneys' Fees [Doc. 83]
- Defendant Rupa Marya's Motion to Dismiss [Doc. 94]
- Defendant Umaymah Mohammad's Motion to Dismiss [Doc. 95]
- Defendant Ibrahim Jouja's Motion to Dismiss [Doc. 96]
- Defendant WESPAC Foundation, Inc.'s Motion to Dismiss [Doc. 97]
- Defendant Doctors Against Genocide Society's Motion to Dismiss [Doc. 101]
- Plaintiff Joshua Winer's Motion for Leave to File Amended Opposition Brief [Doc. 104]
- Defendant AJP Educational Foundation, Inc.'s Motion for

Reconsideration [Doc. 121]

SO ORDERED, this ___27th___ day of January, 2026.

*Thomas W. Thrash*
THOMAS W. THRASH, JR.
United States District Judge