## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

Joshua Winer,                                )
                                             )
      Plaintiff,                       )
                                             )      CIVIL ACTION FILE
   v.                                   )      NO. 1:25-CV-02329-TWT
                                             )
Umaymah Mohammad, AJP Educational            )
Foundation, Inc. A/K/A American Muslims      )
For Palestine, WESPAC Foundation, Inc.,      )
Sean Eren as the representative of National  )
Students for Justice in Palestine, Doctors   )
Against Genocide Society, Cair-Nga Inc.      )
A/K/A CAIR-Georgia, CAIR Foundation          )
Inc., A/K/A Council on Islamic Relations or  )
CAIR, Rupa Marya, Ibrahim Jouja as           )
representative of Emory Students for Justice  )
in Palestine,                                )
                                             )
      Defendants.                      )

## DEFENDANT CAIR-FOUNDATION, INC.'S BRIEF IN SUPPORT OF MOTION TO DISMISS AND MOTION FOR ATTORNEY'S FEES

COMES NOW Defendant, CAIR-Foundation, Inc. ("CAIR-Foundation")[1]

and files this Brief in Support of its Motion to Dismiss pursuant to Federal Rule of

Civil Procedure 12(b)(6) and its Motion for Attorney's Fees.

## I. INTRODUCTION AND FACTUAL BACKGROUND

---

[1] Plaintiff's Second Amended Complaint misidentifies CAIR-Foundation, Inc. as "CAIR Foundation, Inc."

CAIR-Foundation is a non-profit organization whose mission is to enhance understanding of Islam, protect civil rights, promote justice, and empower Muslim Americans. Plaintiff asserted claims for defamation *per se* (Count I), false light invasion of privacy (Count II), civil conspiracy (Count III), and conspiracy to interfere with civil rights (Count IV) against nine defendants. (Doc. 130). While Plaintiff's 107-page Second Amended Complaint ("SAC") is lengthy, the sole basis of any of Plaintiff's claims against CAIR-Foundation is its collaboration on an Instagram Post that merely republished constitutionally protected political speech on a matter of public concern that was originally *uttered and published by other defendants and non-parties.* As such, the SAC fails to state any claim against CAIR-Foundation upon which relief may be granted and must be dismissed.

CAIR-Foundation's alleged liability is isolated to one limited instance—a February 11, 2025 Instagram post ("the IG Post"). (Doc. 130, ¶ 124). Plaintiff alleges that Defendant CAIR-Nga, Inc. ("CAIR-GA") and CAIR-Foundation "adopt[ed] the messages communicated" in the IG Post as their own, including (apparently) the WSB-TV Segment ("WSB-TV Segment") that contained footage from a *Democracy Now!* interview during which Defendant Umaymah Mohammad ("Mohammad") made allegedly false statements about an "'unnamed Emory doctor volunteering with the Israeli army.'" (*Id.*). Plaintiff does not allege that the IG Post contained any new content created by CAIR-Foundation. (*Id.*). Instead,

Plaintiff attempts to hold CAIR-Foundation responsible for content that was previously created and shared by other entities. (*Id.*). Glaringly, the republished content in the IG Post did not identify Plaintiff by name.



(*Id.*, ¶ 126).

Not only was CAIR-Foundation not responsible for the text accompanying the IG Post, the post was not about Plaintiff. In fact, there is no mention of Plaintiff, his professional position, his race or religious beliefs, his involvement with the Israeli Defense Forces, or anything else that could be construed as identifying information about Plaintiff. (*Id.*). Rather, the sole focus of the IG Post was about reinstating Mohammad after she was suspended from Emory University. (Doc. 130, ¶¶ 124-126). There is nothing defamatory about this text, and Plaintiff has not pled any other act attributable to CAIR-Foundation to support his claims

against it. Therefore, Plaintiff's alleged claims against CAIR-Foundation fail for myriad reasons and dismissal is warranted.

## II. ARGUMENT AND CITATIONS TO AUTHORITY

### A. Legal Standard

Dismissal is proper where it appears that the facts alleged fail to state a "plausible" claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); Fed. R. Civ. P. 12(b)(6). A pleading fails to state a claim when it does not contain allegations to support liability under any recognizable legal theory. *Iqbal*, 556 U.S. at 678. To survive a motion to dismiss, a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" " and "raise a right to relief above the speculative level." *Iqbal*, 556 U.S. at 678 (internal citations omitted); *Twombly*, 550 U.S. at 555. Further, while preemption under Section 230 of the United States Code is an affirmative defense, it can support a motion to dismiss if the barrier to suit is evident on the face of the complaint. *Ricci v. Teamsters Union Local 456*, 781 F.3d 25, 28 (2d Cir. 2015) (per curiam) (quoting *Klayman v. Zuckerberg*, 753 F.3d 1354, 1357 (D.C. Cir. 2014)).

### B. Plaintiff's Defamation, False Light, and Civil Conspiracy Claims are Barred by the Communications Decency Act.

Count I alleges that CAIR-Foundation collaborated with CAIR-GA on Instagram to "adopt and further disseminate false and defamatory statements about Plaintiff through joint social media posts." (Doc. 130, ¶ 155). Count II alleges that this same singular "collaboration" supports a claim for false light against CAIR-Foundation and Count III asserts that the alleged collaboration to disseminate allegedly defamatory materials supports a claim for civil conspiracy. (*Id*. at ¶¶ 163-65, 179).[2] The IG Post is the sole basis for all three counts. The IG Post "published" the previously-aired WSB-TV Segment regarding CAIR-GA's press conference. (*Id*. at ¶ 124). According to Plaintiff, the WSB-TV Segment included video footage of Defendant Mohammed making allegedly false and inflammatory statements about Plaintiff. (*Id*. at ¶ 66).[3] Plaintiff argues that by collaborating on the IG Post that merely shared a previously-broadcast news story (which in turn included excerpts from the previously-broadcast *Democracy Now!* interview), CAIR-Foundation "further disseminate[d] false and defamatory statements about Plaintiff." (*Id*. at ¶ 155).

---

[2]    As discussed later herein, this single allegation is woefully insufficient to establish any colorable claim for civil conspiracy as to CAIR-Foundation.

[3]    Notably, neither *Democracy Now!* (whose YouTube channel was featured in the WSB-TV Segment) nor WSB-TV (who compiled and broadcasted the Segment) is named as a defendant in the instant lawsuit.

The Communications Decency Act ("CDA") provides that "[n]o provider or *user* of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1) (emphasis added). Thus, a defendant user of an interactive computer service is immune from liability "when the defamatory or obscene material is 'provided' by someone else." *Tanisha Systems, Inc. v. Chandra*, 2015 WL 10550967 at *8 (N.D. Ga. Dec. 4, 2015) (quoting *Batzel v. Smith*, 333 F.3d 1018, 1020 (9th Cir. 2003) (superseded by statute on other grounds)). The CDA preempts state law contrary to § 230(c)(1). *Id*. at § 230(e)(3); *see also McCall v. Zotos,* No. 22-11725, 2023 WL 3946827, at *1 (11th Cir. June 12, 2023).

Although preemption under the CDA is an affirmative defense, it can support a motion to dismiss if the barrier to suit is evident on the face of the complaint. *Ricci*, 781 F.3d at 28. Because the IG Post involves the precise circumstances contemplated by the CDA, CAIR-Foundation is entitled to immunity with respect to the IG Post because the content of the post—the WSB-TV Segment—was provided by other information content providers. *Carafano v. Metrosplash.com, Inc.,* 339 F.3d 1119, 1123 (9th Cir. 2003). Plaintiff does not allege that CAIR-Foundation took any other action regarding his claims. Instead, Plaintiff's claims against CAIR-Foundation are premised on one singular act—

collaborating on (but not generating) one Instagram post that merely republished part of a news story, which was created by other information content providers.

    1.  <u>CAIR-Foundation was the user of an interactive computer service.</u>

The CDA does not define "user," but Courts have looked to the plain meaning of the word and treated individuals who "availed themselves of and utilized" websites as users under the CDA. *Directory Assistants, Inc. v. Supermedia, LLC*, 884 F. Supp. 2d 446, 452 (E.D. Va. 2012); *see also Tanisha Systems, Inc.,* 2015 WL 10550967 at *8 (reasoning that the defendant was a "user" because he used his e-mail and the commenting features of a blog site). With respect to Instagram, Plaintiff himself employs this term to describe individuals that post on Instagram. (Doc. 103, ¶¶ 80, 81, 126, 134, 153(c-d)). Because CAIR-Foundation utilized Instagram when it "collaborated" on the IG Post, it necessarily qualifies as a "user" under the CDA.

The CDA defines "interactive computer services" to include "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server." 47 U.S.C. § 230(f)(2). Courts have generally held that "website exchange systems and online message boards are interactive computer services." *McCall,* 2023 WL 3946827, at *2; *see also Lawyers' Comm. For Civil Rights Under Law v. Craigslist, Inc.*, 519 F.3d 666, 671 (7th Cir. 2008) (applying definition to Craigslist); *Universal Commc'ns*

*Sys. v. Lycos, Inc.*, 478 F.3d 413, 419 (1st Cir. 2007) (applying definition to internet message board operator); and *Klayman*, 753 F.3d at 1357 (applying definition to Facebook)). By this reasoning, Instagram, which describes itself as a "free photo and video sharing app" through which "[p]eople can upload photos or videos to our service and share them with their followers" and can "view, comment and like posts,"[4] qualifies as an interactive computer service under the CDA.

    2. <u>CAIR-Foundation was not a publisher or speaker of information.</u>

The CDA prohibits plaintiffs from treating users of interactive computer services as the publisher or speaker of information provided by another information content provider. 47 U.S.C. § 230(c)(1). The CDA defines "information content provider" as a person or entity "responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." 47 U.S.C. § 230(f)(3). Notably, "[t]here may be several information content providers of a single piece of content, each responsible for its creation or development in part." *McCall,* 2023 WL 3946827 at *2. Thus, sharing or re-posting allegedly defamatory content provided by another does not preclude immunity under the CDA. *Roca Labs, Inc. v. Consumer Opinion Corp.*, 140 F. Supp. 3d 1311, 1320 (M.D. Fla. 2015). A user is not entitled to CDA immunity, however, if the user materially contributes to the content's alleged

---

[4] ABOUT INSTAGRAM, https://help.instagram.com/424737657584573 (last visited July 14, 2025).

unlawfulness (*i.e.*, where "the content was not truly provided by 'another'"). *Tanisha Systems, Inc.,* 2015 WL 10550967 at \*9; *see also Fair Housing Council of San Fernando Valley v. Roomates.com, LLC,* 521 F.3d 1157, 1167–68 (9th Cir. 2008)). As the Court observed in *US Dominion, Inc. v. Byrne*, "while [the CDA] may provide immunity for someone who merely shares a link on Twitter, it does not immunize someone for making additional remarks that are allegedly defamatory." 600 F.Supp.3d 24, 36 (2022) (internal citations omitted).

Here, Plaintiff claims that CAIR-Foundation "adopted" and "published the WSB-TV Segment" and "collaborated" with CAIR-GA on the IG Post to "further disseminate false and defamatory statements". (Doc. 103, ¶¶ 124, 155, 179). To put a finer point on it, Plaintiff acknowledges that the allegedly defamatory content in the IG Post was provided by third parties and *not* by CAIR-Foundation.[5] (*Id.*). Yet, Plaintiff seeks to hold CAIR-Foundation responsible for statements made and published by others. (*Id.*, ¶ 123). There is no claim that CAIR-Foundation materially contributed to the IG Post or any other support to suggest that it could reasonably be categorized as an information content provider rather than a user of

---

[5]    To the extent Plaintiff attempts to hold CAIR-Foundation responsible for the content in the Email Template and Phone Script, such argument also fails. CAIR-Foundation did not comment, link, or otherwise provide the Email Template and Phone Script in the IG Post and Plaintiff admits that the Email Template and Phone Script were generated in January 2025 and initially circulated by other independent entities. (Doc. 103, ¶¶ 86-87). Thus, any re-sharing of the Email Template or Phone Script within the comments to the IG Post likewise falls within the protection of the CDA because they were generated by other content providers.

an interactive computer service. Thus, protection under the CDA is triggered because Plaintiff's claims against CAIR-Foundation are based solely on statements made by third parties. Consequently, Plaintiff's claims against CAIR-Foundation should be dismissed.

### C. Plaintiff's Defamation *Per Se*, False Light, and Civil Conspiracy Claims Fail As a Matter of Law.

Even if this Court were to find that Plaintiff's claims are not barred by the CDA, such claims still fail because he has not sufficiently pled facts to support essential elements of any of these claims. The at-issue Statement was not made by CAIR-Foundation. Instead, it was made by Defendant Mohammad: "This man participated in aiding and abetting a genocide, in aiding and abetting the destruction of the healthcare system in Gaza." (Doc. 130; ¶ 155) ("Statement"). Plaintiff's apparent theory that CAIR-Foundation somehow "adopted" the Statement, which was originally uttered by Mohammad during an interview with *Democracy Now!* and then re-broadcast during a news segment by WSB-TV, defies belief and attempts to hold CAIR-Foundation responsible for content generated by another. More importantly, Plaintiff cannot prove Defendant Mohammad's statement was false, which is a required element of all three claims.

1. Plaintiff's Defamation Claim Fails Because Plaintiff Cannot Prove Falsity.

To establish a claim for defamation, a plaintiff must satisfy four elements: (1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged

10

communication to a third party; (3) fault by the defendant amounting to at least negligence; and (4) special harm or the actionability of the statement irrespective of special harm." *American Civil Liberties Union, Inc. v. Zeh*, 312 Ga. 647, 650 (2021) (quoting *Mathis v. Cannon*, 276 Ga. 16, 20–21 (2002). Because the Statement involves a matter of public concern (*i.e.*, because the statement can "be fairly considered as relating to a[] matter of political, social, or other concern to the community" (*Snyder v. Phelps*, 562 U.S. 443, 453 (2011)) and is "a subject of general interest and of value to the public" (*City of San Diego v. Roe*, 543 U.S. 77, 83–84 (2004))), Plaintiff must prove fault and falsity. *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 776 (1986). Additionally, because Plaintiff's claims implicate CAIR-Foundation's constitutionally protected right of free speech in connection with an issue of public interest or concern, under O.C.G.A. § 9-11-11.1, Plaintiff must demonstrate that the SAC is legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment. *Wilkes & McHugh, P.A. v. LTC Consulting, L.P.*, 830 S.E.2d 119, 127 (Ga. 2019).

a. The Alleged Defamatory Statement is an Opinion.

Notwithstanding that the Statement cannot reasonably be attributed to CAIR-Foundation, the determinative inquiry is whether the Statement "can reasonably be interpreted as stating or implying defamatory *facts* about [P]laintiff and, if so, whether the defamatory assertions are capable of being proved false."

11

*Jaillett v. Ga. Tv Co.*, 520 S.E.2d 721, 725–26 (Ga. Ct. App. 1999) (emphasis added). If the Statement is opinion, then it cannot be false. *Gertz v. Robert Welch*, 418 U.S. 323, 339 (1974). "A writer cannot be sued for simply expressing his opinion of another person, however unreasonable or vituperous the expressing of it may be." *Bergen v. Martindale-Hubbell, Inc.*, 337 S.E. 2d 770, 772 (Ga. Ct. App. 1985). "However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas." *Gertz,* 418 U.S. at 339–40. "The expression of opinion on 'matters with respect to which reasonable men might entertain differing opinions' is not libelous." *Bergen*, 337 S.E. 2d at 771 (citation omitted).

While summarily concluding that the Statement is false, Plaintiff axiomatically recognizes that Mohammad's speech was based on her "political views" "expressed in her academic writing" and as "political rhetoric with which he vehemently disagreed." (*See* Doc. 130, ¶¶ 27, 30). Even if it could be attributed to CAIR-Foundation (which is disputed), the Statement enjoys "special protection" under the First Amendment and "cannot be restricted simply because it is upsetting or arouses contempt." *Snyder*, 562 U.S. at 458. The Statement enjoys the same protection provided to "imaginative expression" and "rhetorical hyperbole" that "has traditionally added much to the discourse of our Nation" and which protection "provides assurance that public debate will not suffer." *Milkovich v. Lorain*

12

*Journal Co.*, 497 U.S. 1, 20 (1990). Much like the terms "traitor" employed in a union publication in the context of a union dispute (*Old Dominion Branch No. 496 v. Austin*, 418 U.S. 264, 284 (1974)) or "blackmail" published in a newspaper amidst a public dispute (*Greenbelt Cooperative Pub. Ass'n v. Bresler*, 398 U.S. 6, 14 (1970)), the Statement in its context here falls into the category of "rhetorical hyperbole" protected from state defamation claims. *Bresler*, 398 U.S. at 14 ("[E]ven the most careless reader must have perceived that the word was no more than rhetorical hyperbole, a vigorous epithet used by those who considered Bresler's negotiating position extremely unreasonable."). Terms like "genocide," "apartheid," or "war crimes" in political discourse lack objective, judicially manageable standards for truth or falsity when applied to individual actors in public debate, and therefore fall squarely within protected opinion. At least one Court recently found that "genocide" is not actionable because it expresses a "subjective view, an interpretation, a theory, conjecture, or surmise," rather than one "claiming to be in possession of objectively verifiable facts." *Gurmessa v. Genocide Prevention in Ethiopia, Inc.*, 2024 U.S. Dist. LEXIS 141596, at *15 (D. Del. Aug. 8, 2024) (adopted in relevant part by *Gurmessa v. Genocide Prevention in Ethiopia, Inc.*, 2024 U.S. Dist. LEXIS 197686 (D. Del. Sep. 11, 2024) (quoting *Cousins v. Goodier*, 283 A.3d 1140, 1155 n.84, 1157 n.99) (Del. 2022)). Thus, Plaintiff's defamation *per se* claim against CAIR-Foundation cannot succeed

13

because the Statement cannot be reasonably understood to imply defamatory facts about Plaintiff made by CAIR-Foundation.

> ### b. Plaintiff Was A Limited Public Figure and Has Not Shown Actual Malice.

Where a plaintiff voluntarily injects himself into a public controversy, he becomes "a public figure for a limited range of issues," and actual malice must be proven to establish liability where the alleged defamatory material "involves issues of legitimate public concern." *Little v. Breland*, 93 F.3d 755, 757 (11th Cir. 1996) (citing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 343 (1974) and *Silvester v. Am. Broad. Co.*, 839 F.2d 1491, 1493 (11th Cir. 1988)). The Eleventh Circuit employs a three-part test to determine whether a plaintiff is a limited public figure: "(1) isolat[ing] the public controversy, (2) examin[ing] the plaintiff's involvement in the controversy, and (3) determin[ing] whether the alleged defamation was germane to the plaintiff's participation in the controversy." *Silvester*, 839 F.2d at 1494 (internal citations omitted). "If the issue was being debated publicly and if it had foreseeable and substantial ramifications for nonparticipants, it was a public controversy." *Id.* at 1495.

Plaintiff penned an opinion article titled "An Ongoing Quest to Serve," highlighting the public significance of the Israeli-Palestinian conflict and "stressed the vital importance of Israel's existence for the survival of the Jewish people, asserting that even from abroad, the influence of the State of Israel is profoundly

felt." (Doc. 103, ¶ 35). By writing the op-ed, which was published by the *Times of Israel*, Plaintiff injected himself into that exact public controversy. (*See* Doc. 103, ¶ 32 at note 5). Plaintiff's article "highlighted the profound and far-reaching impact of the October 7 attacks on Jewish communities worldwide" and contextualized his service in the Israeli Defense Forces as his attempt to "support [Israel] in its time of need." (Doc. 103, ¶¶ 33, 35).

Plaintiff alleges that his service in the IDF provided the background for the Statement. (Doc. 103, ¶¶ 35, 36, and 48 ("[U]pon information and belief, Mohammad only became aware of the Plaintiff's service in the IDF through his op-ed in the *Times of Israel*.")). Thus, the alleged defamatory statement Plaintiff attempts to ascribe to CAIR-Foundation derives directly from Plaintiff's participation in the Israeli-Palestinian conflict and his choice to publish the op-ed about that participation, making him a limited purpose public figure regarding the Israeli-Palestinian conflict. Therefore, he must prove actual malice as to CAIR-Foundation. *Little v. Breland*, 93 F.3d 755, 757 (11th Cir. 1996).

As a limited public figure, Plaintiff must show by *clear and convincing evidence* that CAIR-Foundation acted with actual malice, *i.e.*, with knowledge of falsity or with reckless disregard of whether the Statement was false or not. *Silvester*, 839 F.2d at 1498 (citing *Sullivan*, 376 at 279–80). Specifically, Plaintiff must show that by collaborating on the IG Post, CAIR-Foundation acted with

knowledge that the Statement was false or with reckless disregard of whether it was false. *New York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964). "The actual malice inquiry is based on what the writer knew when he wrote it, and the [plaintiff] must show that the writer had a 'subjective awareness of probable falsity' when the material was published." *Jones v. Albany Herald Publishing Co.*, 290 Ga. App. 126, 132 (658 S.E.2d 876, 882) (2008) (citations omitted). However, Plaintiff pled no facts to suggest that CAIR-Foundation acted with actual malice when it accepted an invitation to collaborate on the IG Post calling for Mohammad's reinstatement (and omitting any mention of Plaintiff). Plaintiff likewise alleged no facts to support that CAIR-Foundation participated in the development of or had prior knowledge of the Statement, the *Democracy Now!* interview, the WSB-TV Segment, or the IG Post caption. Because there are no facts pled to allow the Court to draw a reasonable inference that CAIR-Foundation specifically acted with actual malice (a difficult element to plead where CAIR-Foundation simply re-posted a third-party news segment), Plaintiff's claims against CAIR-Foundation should be dismissed.

2. CAIR-Foundation Did Not Place Plaintiff in a False Light.

Because constitutionally-privileged statements of opinion cannot support a claim for false light under Georgia law, that claim must also fail. *S & W Seafoods Co. v. Jacor Broad. of Atlanta,* 390 S.E.2d 228, 231 (Ga. Ct. App. 1989). To

sustain a false light claim in Georgia, a plaintiff must show that the defendant "knowingly or recklessly published falsehoods about him or her and, as a result, placed him or her in a false light which would be highly offensive to a reasonable person." *Smith v. Stewart,* 660 S.E.2d 822, 834 (Ga. Ct. App. 2008) (citing *Thomason v. Times-Journal,* 379 S.E.2d 551, 554 (Ga. Ct. App. 1989)). Notably, neither CAIR-Foundation nor the IG Post is mentioned in Count II of the SAC. (*See generally* Doc. 103 at Count II). Again, the IG Post did not mention Plaintiff; thus, Plaintiff has failed to allege that CAIR-Foundation specifically published anything about Plaintiff, much less a statement placing Plaintiff in a false light. (Doc. 103, ¶ 126). Because Plaintiff failed to allege any conduct of CAIR-Foundation to support his false light claim, this claim necessarily fails.

3. Plaintiff's Civil Conspiracy Claim Also Fails As a Matter of Law.

A claim for civil conspiracy must show that "two or more persons, acting in concert, engaged in conduct that constitutes a tort." *Mustaqeem-Graydon v. SunTrust Bank*, 573 S.E.2d 455, 461 (Ga. Ct. App. 2002). "Absent the underlying tort, there can be no liability for civil conspiracy." *O'Neal v. Home Town Bank of Villa Rica*, 514 S.E.2d 669, 675 (Ga. Ct. App. 1999); *see also Ray v. Atkins*, 421 S.E.2d 317, 321 (Ga. Ct. App. 1992) ("The gravamen of any civil conspiracy claim is not the alleged collusion, but tortious conduct committed against the plaintiff which proximately causes an injury.")

17

Plaintiff's claim for civil conspiracy against CAIR-Foundation is precluded by the CDA because it treats CAIR-Foundation as the publisher or speaker of the information contained in the WSB-TV Segment, which is not supported by the allegations pled. In fact, Plaintiff concedes that the allegedly defamatory materials that were disseminated online were content created by other independent entities, not CAIR-Foundation (specifically, "direct quotations from Mohammad" and the "Email Template and Phone Script"). (Doc. 103, ¶ 179). Further, CAIR-Foundation did not create the IG post, did not comment on the post, and did not provide any additional information that could be construed as defamatory against Plaintiff. (*Id.*, ¶ 126). Instead, it was merely tagged as a collaborator on a post that consisted exclusively of a non-defamatory introduction and republication of a news story created by an independent entity, and such "tagging" does not establish any type of agreement or concerted action for the purposes of a civil conspiracy claim. As such, there is no underlying tort and Plaintiff's claim for civil conspiracy against CAIR-Foundation also necessarily fails as a matter of law.

### D. Plaintiff's Amended Complaint Violates Georgia's Anti-SLAPP Statute And Permits For the Recovery of Attorney's Fees.[6]

Strategic Lawsuits Against Public Participation ("SLAPPs") are "meritless

---

[6]    CAIR-Foundation acknowledges the 11th Circuit's current precedent in *Carbone v. CNN, Inc.* as to the applicability of the dismissal provision of O.C.G.A. § 9-11-11.1 in federal court, but raises this argument to preserve the same for challenge on appeal. 910 F.3d 1345, 1350 (11th Cir. 2018).

lawsuits brought not to vindicate legally cognizable rights, but instead to deter or punish the exercise of constitutional rights of petition and free speech by tying up their target's resources and driving up the costs of litigation." *Wilkes & McHugh, P.A. v. LTC Consulting, L.P.*, 830 S.E.2d 119, 124 (Ga. 2019). Georgia's anti-SLAPP statute prohibits claims arising from the acts of an entity which could reasonably be construed as an act in furtherance of the entity's right of petition or free speech under the Constitution of the United States and/or Georgia in connection with an issue of public interest or concern *unless* the plaintiff establishes there is a probability that he will prevail on the claim. O.C.G.A. § 9-11-11.1. This includes "[a]ny written or oral statement or writing or petition made in a place open to the public or a public forum in connection with an issue of public interest or concern." *Id*. To analyze an anti-SLAPP motion to dismiss, the Court must conduct a two-step inquiry: 1) did the movant make a threshold showing that the claim arises from protected activity and 2) has Plaintiff "established that there is a probability that the [plaintiff] will prevail on the claim." *Am. Civil Liberties Union, Inc. v. Zeh*, 864 S.E.2d 422, 426–27 (Ga. 2021).

Because Plaintiff's sole allegation against CAIR-Foundation is that it collaborated on the IG Post, the Court must first determine whether the IG Post, which included footage of the Statement, constitutes protected activity. A movant meets this burden by "demonstrating that the act underlying the challenged claim

could reasonably be construed as fitting within one of the categories" outlined in §

9-11-11.1. *See Giraldi v. Bowen*, 912 S.E.2d 724, 729 (Ga. Ct. App. 2025). The

Statement unquestionably involves a matter of public concern—the Israeli-

Palestinian conflict. Plaintiff admits this, alleging that Defendant Mohammad's

"political views about Israel and the United States were the basis" for her alleged

defamatory statements, including the Statement. (Doc. 130, ¶ 27). Moreover, the

IG Post involves the re-sharing of the Statement by CAIR-GA and CAIR-

Foundation on Instagram, a public forum, and this re-sharing of content involving

a public concern in a public forum is paradigmatic protected activity under

O.C.G.A. § 9-11-11.1.

Having met the first requirement, the Court must then "look to the evidence

from the moving party to determine if it defeats the [non-movant's] showing as a

matter of law." *Morgan v. Mainstreet Newspapers, Inc.*, 889 S.E.2d 217, 224 (Ga.

Ct. App. 2023) (internal citations omitted). Here, Plaintiff's claims against CAIR-

Foundation fail as a matter of law because Plaintiff cannot prove the elements of

his defamation *per se* claim premised on a Statement that is politically protected

opinion. Because CAIR-Foundation's singular act represents its exercise of free

speech involving a matter of public concern, and because Plaintiff has not

demonstrated a probability of success on the merits of his claims against CAIR-

Foundation, Plaintiff's claims against CAIR-Foundation should be dismissed

pursuant to O.C.G.A. § 9-11-11.1 and CAIR-Foundation is entitled to an award of its attorney's fees and expenses of litigation. O.C.G.A. § 9-11-11.1(b.1); *see also Barnwell v. Trivedi*, 898 S.E.2d 250, 255 (Ga. Ct. App. 2024). Such an award is not only required by the statute, but also serves to deter claims like Plaintiff's that target protected speech and burden organizations like CAIR-Foundation with meritless claims based on mere participation in public discourse.[7]

### E. Plaintiff's 42 U.S.C. § 1985(3) Claim Should Be Properly Dismissed.

To succeed on a claim under 42 U.S.C. § 1985(3), a plaintiff must prove:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*Park v. City of Atlanta*, 120 F.3d 1157, 1161 (11th Cir. 1997) (*citing Lucero v. Operation Rescue*, 954 F.2d 624, 627 (11th Cir. 1992). The SAC fails to establish any of the required elements for Plaintiff's § 1985(3) claim. Even if Plaintiff sufficiently alleged the existence of a conspiracy (he did not), the SAC leaves CAIR-Foundation's participation in the alleged conspiracy to the imagination. Plaintiff did not sufficiently plead that CAIR-Foundation engaged in any of the

---

[7]     Should this Court award CAIR-Foundation its attorney's fees and litigation expenses, CAIR-Foundation respectfully requests that the Court reserve ruling on the amount of such fees and costs to allow CAIR-Foundation to submit its supporting invoices.

overt acts cited by Plaintiff as the basis for his § 1985(3) claim (*i.e.*, as pled, CAIR-Foundation did not perform any act in furtherance of the alleged conspiracy). (Doc. 130, ¶ 195(a-d)). Moreover, he failed to allege that CAIR-Foundation violated his right to interstate travel and/or his right against involuntary servitude – the only rights the Supreme Court has declared enforceable against private actors. *(Jimenez*, 596 F.3d at 1312).

Plaintiff bases his § 1985(3) claim on an alleged conspiracy to violate his rights under 42 U.S.C. § 1981, Title IV, and Title VII, yet alleged no facts to support his conclusion that CAIR-Foundation "subject[ed] Plaintiff to discrimination 'on the ground[s]' of his 'race' and 'national origin'" and therefore violated Title VI. (Doc. 130, ¶ 194). Nor is it clear how CAIR-Foundation as an alleged recipient of federal funding could subject Plaintiff to discrimination given that he does not allege he was denied (or even seeking) benefits from CAIR-Foundation. Even if Plaintiff is not asserting a standalone claim against CAIR-Foundation under Title IV, there must be some nexus between Plaintiff's perceived "discrimination" and CAIR-Foundation's actual programs and activities. Plaintiff has alleged none. Plaintiff's attempted reliance on CAIR-Foundation's alleged federal funding is simply an attempt to make an end-run around the fact that any basis for his § 1985(3) claim under Title VI, Title VII or § 1981 as to private actors is barred by established precedent.

### 1. Plaintiff Failed To Plausibly Allege That CAIR-Foundation Engaged in Any Conspiracy.

It is clear on the face of the SAC that CAIR-Foundation did not engage in any overt acts to support a § 1985(3) claim against it. (Doc. 130, ¶ 195(a-d)). The only act Plaintiff identifies on behalf of CAIR-Foundation is its singular act of accepting an invitation to collaborate on an Instagram post that merely republished part of a previously broadcast news story. But the IG Post did not demand "Plaintiff's termination or investigation" or disseminate Plaintiff's name, photograph, and professional title." (Doc. 130, ¶¶ 124-126, 196(b-c)). In fact, neither the IG Post nor the excerpt from the WSB-TV Segment mention Plaintiff by name. (*Id.* at ¶¶ 124-125). Further, CAIR-Foundation did not circulate "coordinated mass-email and phone campaigns," as none were contained in the IG Post.[8] (*Id.* at ¶¶ 124-126). Finally, CAIR-Foundation did not publish "knowingly false and defamatory statements" about Plaintiff.[9] Even a cursory review shows that the purpose of the IG Post was not to defame, conspire against, or otherwise harm Plaintiff, but instead to raise awareness and support for the reinstatement of Mohammad as a student at Emory. (*Id.*, screenshot included in Doc. 130, ¶ 126). Simply put, there is nothing about the IG Post that could arguably constitute any

---

[8]    As highlighted above, CAIR-Foundation did not comment, link, or otherwise provide the Email Template and Phone Script in the IG Post. (Doc. 103, ¶ 126).

[9]    CAIR-Foundation incorporates by reference its arguments above explaining why Plaintiff's claims for defamation against CAIR-Foundation fail.

kind of infringement of Plaintiff's civil rights, and Plaintiff failed to plausibly allege any participation by CAIR-Foundation in the alleged conspiracy. Absent sufficient allegations of a conspiracy to interfere with rights protected from private encroachment under § 1985(3), section 1985(2) cannot be used as a mechanism to punish or deter public speech on matters of public concern.

### 2. Established Precedent Bars Plaintiff's Reliance on Title VI, Title VII, and 42 U.S.C. § 1981 is Misplaced.

"Deprivation of a right created by Title VII cannot be the basis for a cause of action under § 1985(3). *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 378 (1979). Similarly, the Eleventh Circuit has held that conspiracies to violate § 1981 rights are "insufficient to form the basis of a § 1985(3) claim." *Jimenez v. WellStar Health Sys.*, 596 F.3d 1304, 1312 (11th Cir. 2010); *see also Gilmore v. Nat'l Mail Handlers Union Local 318*, 517 Fed. Appx. 784, 788–89 (2013). The Eleventh Circuit has repeatedly recognized that "the only rights the Supreme Court has expressly declared enforceable against private conspirators under § 1985(3) are the right to interstate travel and the right against involuntary servitude," and Plaintiff cannot base his § 1985(3) claim on rights protected under Title VI either. *Prunty v. Arnold & Itkin, LLC*, 753 Fed. Appx. 731, 736 (11th Cir. 2018) (unpublished) (quoting *Jimenez*, 596 F.3d at 1312). Thus, Plaintiff cannot allege a conspiracy to violate rights protected under Titles VI, VII, or § 1981 to support a § 1985(3) claim. (Doc. 103, ¶ 189).

### F. Injunctive Relief Is Not An Appropriate Remedy.

A prior restraint on expression (*i.e.*, a restraint enacted before the expression occurs) carries a "heavy presumption against its constitutional validity." *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963). "The special vice of a prior restraint is that communication will be suppressed . . . before an adequate determination that it is unprotected by the First Amendment." *Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations*, 413 U.S. 376, 390 (1973). Plaintiff's request for an injunction against CAIR-Foundation impermissibly restrains potentially protected speech, which is disfavored by the Courts, especially prior to an adjudication of any claims, and should be denied.

## III. CONCLUSION

Plaintiff's claims seek to impermissibly infringe on CAIR-Foundation's freedom of speech, are precluded by the CDA as to CAIR-Foundation, and are improper under Georgia's anti-SLAPP statute. Moreover, Plaintiff cannot establish essential elements of any of the claims asserted against CAIR-Foundation. Accordingly, Defendant CAIR-Foundation, Inc. respectfully requests that the Court grant its Motion and dismiss all claims against CAIR-Foundation with prejudice and award its attorney's fees and litigation expenses pursuant to O.C.G.A. § 9-11-11.1(b.1).

Respectfully submitted this 10th day of February, 2026.

SWIFT, CURRIE, McGHEE & HIERS

By:    */s/ Mollie W. Amick*
Kori E. Wagner
Georgia State Bar No. 155438
Mollie W. Amick
Georgia State Bar No. 406371
***Attorneys for Defendant CAIR-Foundation, Inc.***

1420 Peachtree Street, N.E.
Suite 800
Atlanta, Georgia  30309
Tel:   404.874.8800
Fax:  470.600.5990
kori.wagner@swiftcurrie.com
molliebeth.amick@swiftcurrie.com

## <u>LOCAL RULE 5.1(C) CERTIFICATION</u>

By signature below, counsel certifies that the foregoing pleading was prepared in Times New Roman, 14-point font in compliance with Local Rule 5.1(C).

SWIFT, CURRIE, McGHEE & HIERS

By:    ***/s/ Mollie W. Amick***
      Kori E. Wagner
      Georgia State Bar No. 155438
      Mollie W. Amick
      Georgia State Bar No. 406371
      ***Attorneys for Defendant CAIR-Foundation, Inc.***

1420 Peachtree Street, N.E.
Suite 800
Atlanta, Georgia  30309
Tel:  404.874.8800
Fax:  470.600.5990
kori.wagner@swiftcurrie.com
molliebeth.amick@swiftcurrie.com

27

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day electronically filed the within and foregoing **DEFENDANT CAIR-FOUNDATION, INC.'S BRIEF IN SUPPORT OF MOTION TO DISMISS AND MOTION FOR ATTORNEY'S FEES** with the Clerk of Court using the CM/ECF electronic filing system, which suffices for service on all counsel of record who have entered an appearance in the case under L.R. 5.1(A)(3).

This 10th day of February, 2026.

SWIFT, CURRIE, McGHEE & HIERS

By:    */s/ Mollie W. Amick*
        Kori E. Wagner
        Georgia State Bar No. 155438
        Mollie W. Amick
        Georgia State Bar No. 406371
        *Attorneys for Defendant CAIR-Foundation, Inc.*

1420 Peachtree Street, N.E.
Suite 800
Atlanta, Georgia  30309
Tel:   404.874.8800
Fax:  470.600.5990
kori.wagner@swiftcurrie.com
molliebeth.amick@swiftcurrie.com

28