# EXHIBIT D

World    Middle East    War In Ukraine    Africa    Americas    Asia    Europe

# What qualifies as genocide? Breaking down the ICJ case against Israel.

Updated January 26, 2024    More than **1 year ago**

By Claire Parker, Annabelle Timsit and Adam Taylor

South Africa's case against Israel at the International Court of Justice alleges that Israel is violating international law by committing and failing to prevent genocidal acts "to destroy Palestinians in Gaza." The case has produced a showdown not only in the international court but in the court of public opinion.

Israel has condemned the claims. "We are fighting terrorists, and we are fighting lies," Prime Minister Benjamin Netanyahu said in remarks Thursday. "Today, again, we saw an upside down world, in which the State of Israel is accused of genocide at a time when it is fighting genocide."



**Podcast episode**

### What the U.N. court ruling means for Israel and Gaza

How the International Court of Justice's ruling on the Israel genocide case may change the trajectory of the war in Gaza.

Play now    21 min                    Follow on

But as preliminary hearings on the case earlier this month, South Africa's delegation pushed back against Israeli accusations of bias. "No matter how monstrous or appalling an attack or provocation, genocide is never a permitted response," said Vaughan Lowe, a member of South Africa's delegation.

The case hinges on the definition of genocide and whether the judges find that Israel's actions in and plans for the Gaza Strip meet that bar under international law. On Friday, the court announced that it had jurisdiction in the landmark case and said that South Africa's allegations of genocide in Gaza were "plausible."

This is just the start, however. It "can take years to resolve a case on the merits" at the International Court of Justice, said Adil Haque, an expert on ethics and law in wartime at Rutgers University.

Here's what to know.

**WHAT TO KNOW**

- What is the definition of 'genocide'?

- How do courts handle genocide cases?

- How hard is genocide to prosecute?

## What is the definition of 'genocide'?

The term "genocide" was coined by Polish lawyer Raphael Lemkin in 1944, in part to describe the Nazis' systematic murder of Jews during the Holocaust.

The Genocide Convention of 1948 codified genocide as an international crime, defining it as "acts committed with intent to destroy, in whole or in part, a national, ethnical, racial or religious group." Those acts include killings, inflicting serious harm on a group, making its living conditions impossible, preventing births within the group or forcibly transferring children to another group.

Under the convention, which was signed after the Holocaust, ratifying parties agreed to "prevent and to punish" genocide wherever it occurred; 153 member states of the United Nations have either ratified or acceded to the convention, while 41 have not.

Past genocides include the killing of more than 800,000 people — primarily Tutsis, but also moderate Hutus — in Rwanda by Hutu extremists in 1994, the massacre of Bosnian Muslim men and boys by Bosnian Serbs in Srebrenica in 1995, and the forced displacement of and attacks on ethnic groups by Sudanese forces and militias in the Darfur region in the early 2000s.

In a genocide, as opposed to crimes against humanity or war crimes, "there has to be an intention to destroy an ethnic or a national group," said Amichai Cohen, a law professor at the Ono Academic College in Israel.

## How do courts handle genocide cases?

Article 6 of the convention states that genocide is a crime under international law and should be tried under a "competent tribunal of the State in the territory of which the act was committed, or by such international penal tribunal."

The convention names the ICJ as the body to decide such allegations brought by states against states. It is the main judicial body of the United Nations. Founded after World War II to settle disputes among countries, it is empowered by the Genocide Convention to try the crime, but has done so only rarely over eight decades.

The only way to enforce an ICJ order is through a vote of the U.N. Security Council. Any of the council's five permanent members, including the United States, could veto any such measure.

Additionally, while the court's rulings are legally binding, they are not always enforced. Russia refused to comply with a 2022 order to cease its war against Ukraine.

The International Criminal Court, a newer international body that was set up to try individuals accused of the most serious international crimes, also can take up genocide cases. Like the ICJ, it is also based in The Hague.

Last year, judges for the ICC issued arrest warrants for Russian President Vladimir Putin and another top Russian official on charges related to the transfer of Ukrainian children, a crime that could count as genocide under the convention.

However, the ICC does not try the accused in absentia, which has limited its ability to go after top individuals. Among U.N. members states, 123 are party to the court. Israel and the United States do not recognize its authority.

# How hard is genocide to prosecute?

Genocide is often viewed as the ultimate crime, even though it holds the same weight under international law as war crimes and crimes against humanity, experts said. But prosecuting it can be especially difficult.

According to the U.N. Office on Genocide Prevention and the Responsibility to Protect, proving intent is the "most difficult" part of any genocide case. "To constitute genocide, there must be a proven intent on the part of perpetrators to physically destroy a national, ethnical, racial or religious group. Cultural destruction does not suffice, nor does an intention to simply disperse a group," it said.

The bar for proving that a genocide has occurred is "so high," said Cohen, the law professor. The ICJ has previously said that crimes that may be abhorrent, such as those constituting ethnic cleansing, do not automatically fall under the definition of genocide, he added.

A. Dirk Moses, an expert on genocide at the City College of New York, said the legal definition of genocide "is extremely stringent and narrow" and added that he is "skeptical" it can be "a tool for recourse for those that are suffering mass violence."

The definition was set "not by the victims but by states, to ensure that the law cannot be used against them in meeting or confronting security threats," he said.

**What readers are saying**

The comments reflect a heated debate over the actions of Israel in Gaza, with many accusing Israel of genocide or ethnic cleansing, while others argue that Israel is defending itself against Hamas. Some comments highlight the complexity of the situation, noting the historical and... Show more

This summary is AI-generated. AI can make mistakes and this summary is not a replacement for reading the comments.

*Democracy Dies in Darkness*

Opinion

# Why it's wrong to call Israel's war in Gaza a 'genocide'

Critics have always been quick to hurl the word at Israel. It's more aptly applied to Hamas.

June 3, 2025

By Norman J.W. Goda and Jeffrey Herf

*Norman J.W. Goda is the Norman and Irma Braman professor of Holocaust studies at the University of Florida. Jeffrey Herf, the author of "Three Faces of Antisemitism: Right, Left and Islamist," is a professor emeritus of history at the University of Maryland at College Park.*

Recent weeks have brought a flood of new genocide accusations against Israel. The trigger has been Israel's recent blockade of aid to Gaza (now lifted), as well as its latest military actions there. But in fact, the charges of genocide began shortly after the Hamas massacres of Oct. 7, 2023. The accusations can be found everywhere, including in podcasts, TV interviews, op-eds and social media posts. Among the accusers are politicians, activists and influencers who hail from the Middle East, Europe and North America. Many today insist that it is critical — even morally required — that we use the word "genocide" to describe Israel's war in Gaza. No other term will do. Those not joining the chorus are allegedly complicit in genocide. Those questioning the nature of the accusation are labeled genocide deniers.

Why this insistence? Efforts to delegitimize Israel as colonial and racist began before the state was declared in 1948. Genocide, meanwhile, is the crime of crimes; a state committing genocide is forever illegitimate. Given this history and gravity, we should pose some questions. Israel's war against Hamas in the urban environments of Gaza has led to thousands of civilian casualties. But is genocide really the correct way to describe the war? Do the accusers define genocide accurately in terms of law, or have they stretched the definition of the crime? Is their evidence reliable? Finally, can we say that the genocide accusation, made against Israel and its supporters in this way, is antisemitic?

Genocide is a political as well as a legal term. Columbia University anthropologist Mahmood Mamdani once called it "a label to be stuck on your worst enemy, a perverse version of the Nobel Prize, part of a rhetorical arsenal that helps you vilify your adversaries." In this context, the internationally accepted legal definition of genocide ensconced in the U.N. Genocide Convention of 1948 has been frustrating for some. Physical destruction of a group based on ethnicity, religion or nationality is the heart of the crime. The definition excludes other actions, such as the movement of civilians from their homes and certain infractions that some call "cultural genocide."

There have been efforts to stretch the definition since the 1960s. In 1967, the Russell Tribunal, an unofficial court of intellectuals and activists, found the United States guilty of genocide for its war in Vietnam. Among other acts, the movement of Vietnamese civilians to strategic hamlets was said to have constituted genocide, because it disrupted social and cultural structures. Today's academic theory of settler colonialism redefines genocide further as a structural process that destroys indigenous peoples either through resettlement or assimilation. It is the centerpiece of many genocide accusations, including that by the U.N. Special Rapporteur for Palestine, Francesca Albanese, who thinks that litigating this argument against Israel will bring freedom for indigenous people everywhere. But this is activism, not law.

What is the difference? Few know the name Alice Wairimu Nderitu. From 2020 to 2024, the Kenyan human rights advocate was the U.N. special adviser on the prevention of genocide. Kofi Annan, secretary general from 1997 to 2006, created the office, which collects information on rights violations that might lead to genocide. After Israel began its response to the Oct. 7 attack, Nderitu would not say that it was committing genocide. Such a determination, she insisted, was legally and factually complex; it demanded detailed examination by a competent court with proper jurisdiction. Nderitu was pressured and received threats. One called her a "Zionist rat" who supported the "rape and murder of little kids by your bestial masters." Her mandate was not renewed.

Even without stretching the definition, many genocide accusations have problems. The June 1 Sunday Opinion column by Post columnist Shadi Hamid, "A genocide is happening in Gaza. We should say so.," was emblematic. No one thinks that the movement of Gaza's civilians away from military operations has not been dire. But Hamid sees purposeful ethnic cleansing, which he then uses to build his argument for genocide. His most important evidence is recently leaked comments by Prime Minister Benjamin Netanyahu that discuss prohibiting civilians from returning to the places from which they came after receiving aid from distribution centers, as they would mix with Hamas. But Maariv, the newspaper reporting these rather confusing comments, notes that they contradict statements by Israeli defense officials, which would allow return.

The argument for genocide relies heavily on casualties among noncombatants in Gaza. Hamid cites a January 2025 study in the British medical journal the Lancet, which argues that the Gaza Health Ministry has underreported civilian mortality figures by more than 40 percent. Those accusing Israel of genocide have long played a confidence game with casualty figures, proceeding initially from those provided by the Hamas-controlled health ministry. The ministry refuses to distinguish between civilian and combatant deaths, and it has inflated the numbers of women and children killed. The Lancet article expands these figures further based on an algorithm applied to casualty lists, in order, it says, "to provide an estimate of deaths not appearing on any list." It does not take a statistician to imagine problems here.

From the beginning of this terrible conflict, Israeli leaders made it very clear that their war is against Hamas, not the people of Gaza. On Dec. 29, 2023, Israel's legal representative Tal Becker, in his opening statement to the International Court of Justice, offered arguments that those who lob the word genocide ignore. These bear repeating. Hamas, Becker said, was pursuing "a reprehensible strategy of seeking to maximize civilian harm to both Israelis and Palestinians, even as Israel seeks to minimize it." He added that, "if there have been acts that may be characterized as genocidal, then they have been perpetrated against Israel. If there is a concern about the obligations of States under the Genocide Convention, then it is in relation to their responsibilities to act against Hamas's proudly declared agenda of annihilation, which is not a secret, and is not in doubt."

Those accusing Israel of genocide avoid describing Hamas's exterminatory ideology and the genocide, commenced on Oct. 7 and then interrupted, that followed from it. They also avoid facing the now extensively documented facts regarding the genocidal nature of actions of Hamas and other terrorist organizations in Gaza on Oct. 7. Further, the genocide accusation made from the earliest days of the war was an effort to force Israel to end, Becker said, "operations against the ongoing attacks of an organization that pursues an actual genocidal agenda." Becker further described Hamas's cynical strategy of waging war amid civilians who were denied access to the safety of its massive underground tunnel system, and he observed that "the appalling suffering of civilians — both Israeli and Palestinian — is first and foremost the result of this despicable [Hamas] strategy; the horrible cost of Hamas not only failing to protect its civilians but actively sacrificing them for its own propaganda and military benefit. And if Hamas abandons this strategy, releases the hostages and lays down its arms, the hostilities and suffering would end." Those accusing Israel of genocide fail to point to the responsibility of the aggressor, Hamas, for starting and continuing this war.

Given the depth of these distortions, the question must be asked: Are today's accusations antisemitic? The genocide accusation hurled against Israel draws on deep wells of fear and hatred, both conscious and unconscious, that lurk in radical interpretations of both Christianity and Islam. These currents view Jews as uniquely evil and murderous. The Gaza genocide accusation has shifted opprobrium from Jews as a religious/ethnic group to the state of Israel, which it depicts as inherently evil.

And in fact, genocide charges against Israel litter the records of the United Nations throughout Israel's existence, from 1948 to the present. In 1983, Israel was charged with poisoning Palestinian girls in the West Bank as part of a genocidal plan. In 1997, it was accused of infecting Palestinian children with HIV, also said to be part of a genocidal campaign. Mass poisoning and especially the depraved killing of children are among the oldest antisemitic tropes. The latter has been used liberally today by Palestinian and other nongovernmental organizations, which argue that Israeli snipers deliberately target Palestinian children with shots to the head. All such accusations are false.

The genocide accusation also threatens diaspora Jews. During episodes of actual genocide in Bosnia and Rwanda in the 1990s, no one attacked Serbs living in Germany or Hutus living in Belgium. But the lethal implications for Jews are now plain, with the brutal May 21 murders in Washington of two Israeli Embassy staffers, one of whom, Sarah Milgrim, was a U.S. citizen. The alleged killer, Elias Rodriguez, referred to the allegations of Israeli genocide. His last letter proclaimed: "Those of us against the genocide take satisfaction in arguing that the perpetrators and abettors have forfeited their humanity." Susan Abulhawa, a noted Palestinian American writer whose books are read on university campuses, was unapologetic. "Now," she complained, "we're supposed to feel bad for two genocide cheerleaders after watching these colonizer baby killers slaughter people by the hundreds every day for two years." Abulhawa added: "No genocidal Zionist should be safe anywhere in the world."

As historians, we conclude with a cautionary note. Today, no one has an accurate figure of how many people have died in this war, how many deaths are those of Hamas fighters and how many of Gazan civilians. The world press readily repeats casualty figures and predictions of starvation made by the Gaza Health Ministry. It needs to practice more humility and skepticism. There is no reason to view a Hamas-controlled entity as a credible source regarding ongoing events, especially since Hamas has for years used the civilian casualties that its mode of warfare brings about as a central element of its political warfare against Israel.

Historians, journalists and governments should view every assertion made by this proudly antisemitic terrorist organization with great skepticism, and they also should give weight to the assertions of the government of Israel, which, unlike Hamas, must face a political opposition and a free press. This is not to deny that this war has brought enormous suffering to the people of Gaza. But the central cause of that suffering is the war that Hamas began and, as Tal Becker observed 18 months ago, refuses to end.

**What readers are saying**

The comments overwhelmingly criticize Israel's actions in Gaza, with many labeling them as genocide or ethnic cleansing. Commenters argue that the scale of civilian casualties, destruction of infrastructure, and blockade of essential resources fit the definition of genocide. They... Show more

This summary is AI-generated. AI can make mistakes and this summary is not a replacement for reading the comments.

### *No, protesters, Israel is not committing genocide | Opinion*

The Miami Herald

May 8, 2024 Wednesday

Copyright 2024 The Miami Herald All Rights Reserved

**The Miami Herald**
Found on Miami.com

**Section:** *opinion*

**Length:** 696 words

**Byline:** Michael Igel

Miami Herald

## Body

*Genocide*.

That word makes me think about how my family suffered as targets of the Nazis' antisemitic extermination campaign.

For more than 30 years, The Florida Holocaust Museum has been teaching people what *genocide* is, what causes it, and how to prevent it. We now find ourselves in the unexpected position of teaching what *genocide* is not.

*Genocide* has become a central allegation for anti-*Israel* activists at campus protests. They use the word as a cudgel, applying it to *Israel* and anything - whether universities or cancer hospitals - even tangentially associated with it.

*Israel* is not beyond scrutiny or reproach, but advocacy requires truth. If, after learning the actual facts, you disagree with *Israel*'s response to the brutal terrorism of Oct. 7th, you can call it tragic, inappropriate, and disproportionate - but you can't accurately call it *genocide*.

The United Nations Convention on the Prevention and Punishment of the Crime of *Genocide* rigorously defines the crime, placing a justifiably high burden of proof on accusations of *genocide*.

That convention has come under threat from activists, celebrities, and even openly antisemitic UN officials employing the term against *Israel*.

Per the convention, *genocide* means killing, harming, or stealing people from a national, ethnic, racial or religious group with the intent to destroy that group. *Israel*'s war is against Hamas, an avowedly genocidal terrorist organization that represents no nation, ethnicity, race or religion.

Amanda Hyland

No, protesters, Israel is not committing genocide | Opinion

As in every example of urban warfare, civilians have been killed, injured, and displaced by the fighting, a tragedy that stirs emotion in every civilized person, including every Jewish person I know.

Palestinians as a group, however, are not being deliberately targeted. This fact has been confirmed at the highest levels of authority; in testimony before the U.S. Senate, Secretary of Defense Lloyd Austin confirmed that there was "no evidence of *__genocide__*" being committed by *__Israel__*.

Far from declining, the Palestinian population has actually been growing faster than the Israeli population for more than 30 years.

These facts matter because characterizing *__Israel__*'s actions as genocidal isn't just inaccurate; it's offensive and dangerous.

Every time an unfounded accusation of *__genocide__* is leveled, the word loses some of its necessary gravity, making it harder to call out real *__genocides__* as they occur. Under the protesters' definition, every war could be labeled a *__genocide__* - at which point the word would no longer have meaning at all.

The problem is so pervasive that some journalists let allegations of *__genocide__* pass unchallenged rather than provide proper context. Too many reporters are apparently either unaware of the convention's terms or don't think it's important enough to merit clarification. Their inaction lets guests make emotional appeals - who doesn't abhor *__genocide__*? - to an audience that may not be aware of the term's correct use.

*__Genocide__* accusations inform absurd comparisons of *__Israel__* to Nazi Germany, an equivalency that is necessarily antisemitic according to the internationally accepted IHRA definition of antisemitism.

The repugnant idea that supporting *__Israel__*'s existence is Nazism has defaced schools, signs, and synagogues.

If you were a Holocaust Survivor, many of whom fled to *__Israel__* because no other country would accept them, imagine how these comparisons would feel. As the nephew and grandson of survivors, they certainly sicken me.

Today, 63% of millennials and Gen Zs don't know that six million Jews were murdered in the Holocaust.

 It is vital that they understand the difference between an urban antiterrorist campaign and an organized effort to snuff out the Jewish people - just ask the Jewish students who have been targeted for violence, intimidation, and harassment at anti-*__Israel__* demonstrations.

The Holocaust was based on lies, endlessly repeated until people believed them. Enough is enough.

The lessons of the past should always be used to improve the future, and using the word "*__genocide__*" correctly is another step in the direction of a better and safer world.

Michael Igel is the Interim CEO and Chair Emeritus of the Florida Holocaust Museum.

## Classification

**Language:** ENGLISH

**Publication-Type:** Newspaper

**Subject:** *GENOCIDE* (96%); NEGATIVE NEWS (92%); ETHNIC CONFLICTS (91%); ANTISEMITISM (90%); CRIME, LAW ENFORCEMENT & CORRECTIONS (90%); FASCISM (90%); HUMAN RIGHTS VIOLATIONS (90%); MIDDLE EAST PROTESTS & UPRISINGS (90%); NATIONAL SECURITY & FOREIGN RELATIONS (90%); NEGATIVE MISC NEWS (90%); RACE & ETHNICITY (90%); RACISM & XENOPHOBIA (90%); TERRORISM (90%); TERRORIST ORGANIZATIONS (90%); WAR & CONFLICT (90%); HOLOCAUST (89%); ACTIVISM (78%); HAMAS (78%); JEWS & JUDAISM (78%); TRENDS & EVENTS (78%); WORLD WAR II (78%); DISPLACED PERSONS (74%); REPORTS, REVIEWS & SECTIONS (74%); TERRORISM & COUNTERTERRORISM (74%); UNITED NATIONS (74%); RELIGION (70%); GOVERNMENT ADVISORS & MINISTERS (68%); LEGISLATIVE BODIES (68%); TREATIES & AGREEMENTS (68%); UNITED NATIONS INSTITUTIONS (68%); WRITERS (60%); EDITORIALS & *OPINIONS* (59%); US CONGRESS (50%)

**Organization:** HAMAS (54%)

**Industry:** MUSEUMS & GALLERIES (72%); WRITERS (60%); CANCER HOSPITALS (55%)

**Geographic:** FLORIDA, USA (79%); *ISRAEL* (96%); STATE OF PALESTINE (92%); UNITED STATES (79%); GERMANY (50%)

**Load-Date:** May 8, 2024

---

**End of Document**

## *The Genocide Charge Against Israel Is a Moral Obscenity; Bret Stephens*

The New York Times

January 16, 2024 Tuesday 15:35 EST

Copyright 2024 The New York Times Company All Rights Reserved

**Section:** *OPINION*

**Length:** 957 words

**Highlight:** In a war, the killing ends when one side stops fighting. In a ***genocide***, that's when the killing begins.

## Body

In recent decades, as many as three million people *perished* in a famine in North Korea that was mainly government-induced. Hundreds of thousands of Syrians were gassed, bombed, starved or tortured to death by the Assad regime, and *an estimated 14 million* were forced to flee their homes. China has *put more than a million* Uyghurs through gulag-like re-education camps in a thinly veiled attempt to suppress and erase their religious and cultural identity.

But North Korea, Syria and China have never been charged with ***genocide*** at the International Court of Justice. ***Israel*** has. How curious. And how obscene.

It's obscene because it politicizes our understanding of ***genocide***, fatally eroding the moral power of the term. The war between ***Israel*** and Hamas is terrible — as is every war. But if this is ***genocide***, what word do we have for the killing fields in Cambodia, Stalin's *Holodomor* in Ukraine, the Holocaust itself?

Words that come to mean much more than originally intended eventually come to mean almost nothing at all — a victory for future *génocidaires* who'd like the world to think there's no moral or legal difference between one kind of killing and another.

It's obscene because it perverts the definition of ***genocide***, which *is precise*: "acts committed with intent to destroy, in whole or in part, a national, ethnical, racial or religious group, as such." Notice two key features of this definition: It speaks of acts whereas part of the ***genocide*** case against ***Israel*** involves the misinterpretation of quotes from Israeli officials who have vowed Hamas's elimination, not the elimination of Palestinians. And it uses the term as such — meaning the acts are genocidal only if they are directed at Palestinians as Palestinians, not as members of Hamas or, heartbreakingly, as collateral deaths in attempts to destroy Hamas.

If ***Israel*** were trying to commit ***genocide***, it wouldn't be putting its soldiers at risk or allowing humanitarian relief to arrive from Egypt or withdrawing many of its forces from Gaza. It would simply be killing Palestinians everywhere, in vastly greater numbers, as Germans killed Jews or Hutus killed Tutsis.

It's obscene because it puts the wrong party in the dock. Hamas is a genocidal organization by conviction and design. Its *founding charter calls for **Israel** to be "obliterated"* and for Muslims to kill Jews as they

"hide behind stones and trees." On Oct. 7, Hamas murdered, mutilated, tortured, incinerated, *raped* or kidnapped everyone it could. Had it not been stopped it would not have stopped. One of its leaders has since vowed to do it "*a second, a third, a fourth*" time.

It's Hamas, not **Israel**, that started the war, keeps it going, and would resume it the moment it has the arsenal and the opportunity.

It's obscene because it validates Hamas's illegal and barbaric strategy of hiding between, behind and beneath Palestinian civilians. From the beginning of the war, Hamas has had a double aim: to kill as many Jews as possible, and to incur Palestinian fatalities to gain international sympathy and diplomatic leverage.

What is happening now at The Hague will never be a victory for ordinary Gazans, no matter the I.C.J.'s verdict. Their victory will come only when they have a government interested in building a peaceful and prosperous state, rather than destroying a neighbor. But it will serve Hamas as an unparalleled propaganda triumph — quite a turn for a group that only months ago *proudly filmed itself murdering children*.

It's obscene because it's historically hypocritical. The United States, Britain and other allied nations killed a staggering number of German and Japanese civilians on the path to defeating the regimes that had started World War II — often known as the Good War. Events such as the bombings of Dresden or Tokyo, to say nothing of Hiroshima and Nagasaki, were tragic and far more indiscriminate than anything **Israel** stands accused of doing. But no serious person holds Franklin Roosevelt to be on a moral par with Adolf Hitler. What the Allies did were acts of war in the service of a lasting peace, not **genocide** in the service of a fanatical aim.

The difference? In war, the killing ends when one side stops fighting. In a **genocide**, that's when the killing begins.

It's obscene because of its strange selectivity. Reasonable people can argue that **Israel** has been excessive in its use of force, or deficient in its concern for Palestinian civilians, or unwise in thinking through the endgame. I disagree, but fine.

But how curious that the discussion has turned to **genocide** (and did so from almost the first day of the war) because it's the behavior of the Jewish state that's in question. And how telling that the accusation is the same one that rabid bigots *have been making* for years: that the Jews are, and have long been, *the real Nazis* — guilty of humanity's worst crimes and deserving of its worst punishments. A verdict against **Israel** at the I.C.J. would signal that another international institution, and the people cheering it, has adopted the moral outlook of antisemites.

It's been nearly 50 years since Daniel Patrick Moynihan condemned the U.N.'s "Zionism is racism" resolution as "this infamous act."

"The abomination of antisemitism," he *warned*, "has been given the appearance of international sanction." Maybe the I.C.J. will make a similar mistake. If so, the shame and disgrace will rest with the accusers, not the accused.

The Times is committed to publishing *a diversity of letters* to the editor. We'd like to hear what you think about this or any of our articles. Here are some *tips*. And here's our email: *letters@nytimes.com*.

Follow the New York Times *Opinion* section on *Facebook*, *Instagram*, *TikTok*, *X* and *Threads*.

This article appeared in print on page A23.

## Classification

**Language:** ENGLISH

**Document-Type:** *Op*-Ed

**Publication-Type:** Web Publication

**Subject:** NEGATIVE NEWS (92%); *GENOCIDE* (91%); ETHNIC CONFLICTS (90%); FAMINE (90%); HUMAN RIGHTS VIOLATIONS (90%); NEGATIVE PERSONAL NEWS (90%); OBSCENITY (90%); STARVATION (90%); EDITORIALS & *OPINIONS* (89%); HAMAS (89%); JEWS & JUDAISM (89%); MURDER (89%); RELIGION (89%); TORTURE (89%); WAR & CONFLICT (89%); 2023 GAZA-*ISRAEL* CONFLICT (79%); ISRAELI-PALESTINIAN CONFLICTS (79%); CRIMINAL CONVICTIONS (78%); HOLOCAUST (78%); INTERNATIONAL COURTS & TRIBUNALS (78%); INTERNATIONAL LAW (78%); RACE & ETHNICITY (78%); RELIEF ORGANIZATIONS (78%); MUSLIMS & ISLAM (77%); REPORTS, REVIEWS & SECTIONS (74%); HUMANITARIAN AID (73%); KIDNAPPING & ABDUCTION (73%); CUSTOMS & CULTURAL HERITAGE (71%); UNITED NATIONS INSTITUTIONS (58%); *Israel*-Gaza War (2023- ) (%); War Crimes, *Genocide* and Crimes Against Humanity (%); International Court of Justice (UN) (%); Civilian Casualties (%); Jews and Judaism (%); *Israel* (%); Gaza Strip (%); Palestinians (%)

**Organization:** HAMAS (56%)

**Industry:** FAMINE (90%)

**Geographic:** *ISRAEL* (97%); STATE OF PALESTINE (96%); CHINA (92%); NORTH KOREA (92%); SYRIA (92%); NETHERLANDS (88%); CAMBODIA (79%); EGYPT (79%); UKRAINE (79%)

**Load-Date:** January 17, 2024

---

**End of Document**