# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

JOSHUA WINER,

  *Plaintiff*,

v.

UMAYMAH MOHAMMAD, *et al.*,

  *Defendants*.

Civil Action No.
1:25-cv-02329-TWT

## PLAINTIFF JOSHUA WINER'S RESPONSE TO CAIR-FOUNDATION INC.'S MOTION TO DISMISS AND MOTION FOR ATTORNEY'S FEES

Lauren Israelovitch
Mark Goldfeder
Ben Schlager
NATIONAL JEWISH
ADVOCACY CENTER, INC.
3 Times Square, Suite 512
New York, NY 10036
(914) 222-3828
lauren@njaclaw.org
*Pro Hac Vice*

David F. Katz
THE D.F. KATZ LAW FIRM, LLC
1158 Jones Bridge Rd
Ste 420 PMB1090
Johns Cerek, GA 30022
T: (404) 918-5707
Dkatz@dfkatzlawfirm.com
Ga. Bar. No. 408738

Josh Belinfante
Anna Edmondson
Miles Skedsvold
ROBBINS ALLOY BELINFANTE
 LITTLEFIELD LLC
500 14th Street, NW
Atlanta, GA 30318
T: (678) 701-9320
E: mskedsvold@robbinsfirm.com
Ga. Bar No. 371576

Esther Panitch
THE PANITCH LAW GROUP, PC
4243 Dunwoody Club Drive
Suite 205
Atlanta, GA 30350
esther@panitchlawgroup.com
Ga. Bar. No. 143197

# TABLE OF CONTENTS

INTRODUCTION ................................................................................... 1

BACKGROUND .................................................................................... 2

    I.   Factual Background .................................................................... 2

    II.  Procedural History ..................................................................... 5

ARGUMENT ......................................................................................... 5

    I.   CAIR-Foundation's procedural objections are meritless. .............. 5

        A.    Georgia's anti-SLAPP statute doesn't apply in federal court. .................................................................................. 5

        B.    Dr. Winer's claims are not barred by Section 230 because CAIR-Foundation intended to and did adopt the defamatory contents of the CAIR-Team Post as its own. ..... 6

    II.  The Second Amended Complaint states a claim against CAIR-Foundation for defamation per se. ............................................... 10

        A.    The defamatory statements here are provably false, not mere political opinions. ............................. 11

        B.    Dr. Winer is not a limited public figure and, even if he were, the Second Amended Complaint alleges actual malice. ............................... 13

    III.  The Second Amended Complaint states a claim against CAIR-Foundation for false light invasion of privacy .............................. 15

    IV.  The Second Amended Complaint states a claim against CAIR-Foundation for civil conspiracy. .................................................... 16

    V.   The Second Amended Complaint states a claim under 42 U.S.C. § 1985(3). .......................................................................... 17

        A.    CAIR-Foundation's participation in the conspiracy is plainly alleged. .................................................................. 19

        B.    CAIR-Foundation subjected Dr. Winer to discrimination on

the basis of his race............................................................... 20

C.    Title VI, Title VII, and 42 U.S.C. § 1981 are valid
      predicates for a § 1985(3) claim. .......................................... 21

VI.    CAIR-Foundation cannot seek dismissal of the prayer for
       injunctive relief. ...................................................... 24

CONCLUSION ............................................................................ 25

## INTRODUCTION

In some quarters, it is popular rhetoric to decry the Israel-Hamas war as genocide, and to paint anyone who does not militantly oppose Israel as complicit in that crime. Many bad opinions are protected speech, but tortious defamation is not. There is a line between abstract political views and personal, false accusations, and the conduct in this case crosses it.

Plaintiff Joshua Winer is a long-serving surgical oncologist and medical school professor at Emory University. After the atrocities of October 7, 2023, Dr. Winer volunteered to serve in the Israeli Defense Force as a physician. When he returned, he wrote about his call to serve—only to find an MD/PhD student accusing him, personally, of not only murder and racism, but participating in genocide, war crimes, and the destruction of the Gazan healthcare system. She and others named in this case amplified and solicited public participants in this smear campaign *precisely* for the purpose of persuading Emory that he was unfit to practice or teach medicine in the community.

The relevant defendant here, CAIR-Foundation, Inc., participated in this crusade by collaborating with one of its local chapters to design and disseminate an Instagram post adopting the defamatory statements just mentioned, along with defamatory talking points for supporters to use to

pressure Emory into terminating Dr. Winer. That is more than enough to allege defamation, false light invasion of privacy, and conspiracy.

CAIR-Foundation has moved to dismiss. It raises a pair of procedural objections—claiming immunity under Section 230 of the Communications Decency Act and invoking Georgia's anti-SLAPP statute—both of which are meritless. And it argues, on the merits, that *it* was not the main speaker of any defamatory statements, so it cannot be liable for the torts alleged. That is wrong, as the allegations of the Second Amended Complaint clearly show. Thus, Dr. Winer has plausibly alleged that CAIR-Foundation is liable, and the motion to dismiss must be denied.

## BACKGROUND

### I.    Factual Background

Dr. Joshua Winer is a Jewish resident of Atlanta, Georgia, with dual American and Israeli citizenship. Dkt. 130 ¶ 12. He is a practicing surgical oncologist and also teaches medicine at Emory University as the Surgical Clerkship Director. *Id.*

"Following the Hamas-led terror attacks in Israel on October 7, 2023, Dr. Winer felt a religious, moral, and national responsibility to protect the Jewish people and the Jewish homeland[.]" *Id.* "[H]e took a leave of absence to volunteer in one of the IDF's elite reconnaissance units, where he served in Gaza in his capacity to provide medical care to wounded soldiers." *Id.* ¶¶ 12,

33–34. He did not serve in a combat role, but "engaged in defensive combat solely in the event that his unit was directly attacked," otherwise "serv[ing] . . . exclusively in his capacity as a physician." *Id.* ¶ 37. Dr. Winer served with honor—he categorically did not commit, participate in, or aid and abet genocide, *id.* ¶ 2, he is not a racist, *id.* ¶ 153, and he in no way destroyed the Gazan healthcare system, *id.* ¶ 42.

In March 2024, Dr. Winer published an op-ed in the *Times of Israel* describing his decision to volunteer as a physician in the IDF. *Id.* ¶ 32. The op-ed reflected on his medical service and did not discuss combat, let alone war crimes or genocide. *See id.* ¶¶ 32–35.

A little over a month later, an MD/PhD candidate at Emory named Umaymah Mohammad appeared on a program called "Democracy Now!" and made a series of defamatory statements accusing Dr. Winer of genocide. *Id.* ¶ 36. Mohammad accused Dr. Winer of "participat[ing] in aiding and abetting a genocide, in aiding and abetting the destruction of the healthcare system in Gaza[,] and the murder of over 400 healthcare workers[.]" *Id.* Mohammad was later suspended from the Emory School of Medicine because these comments violated the institution's code of conduct. *Id.* ¶¶ 44–49. Nevertheless, she persisted in referencing Dr. Winer in subsequent media appearances and publications, identifying him with increasing detail and specificity. *Id.* ¶¶ 50–66.

In February of 2025, nonprofit organizations CAIR-Georgia and CAIR-Foundation collaborated on an Instagram post (the "CAIR-Team Post") that featured a televised news segment covering Mohammad's accusations. *Id.* ¶ 124. The CAIR-Team Post did not merely republish Mohammad's remarks. In response to a user comment inquiring how to support Mohammad, CAIR-Georgia replied with a link to an Email Template and Phone Script for contacting Emory on Mohammad's behalf. *Id.* ¶ 126. Both the Email Template and Phone Script "explicitly identified [Dr. Winer] by name, repeated false and inflammatory allegations against him, and demanded that Emory and the School of Medicine investigate [him] and/or terminate his employment." *Id.*; *see also id.* ¶¶ 87–88 (full text of the Email Template and Phone Script). Thus, by collaborating on the post, *see id.* ¶¶ 155, 179, CAIR-Foundation intended to and did "adopt[ ] the messages communicated in the CAIR Team Post as [its] own." *Id.*

These were not isolated expressions of separate speakers, but a coordinated campaign to target Dr. Winer based on his Jewish, Israeli, and Zionist[1] identity, as well as his association with the IDF. *Id.* ¶ 8. The object of this coordination was "to intimidate [Dr. Winer,] . . . suppress his rights to

---

[1] To be clear, for purposes of the Second Amended Complaint, Zionism refers to "the belief in the right of the Jewish people to self-determination in their ancestral homeland," the land of Israel or "Judea." Dkt. 130 ¶ 29.

the equal protection of the laws and of equal privileges and immunities under the laws," and "stigmatize, isolate, and eliminate [him] from . . . professional and academic life" in the Emory community. *Id.* ¶¶ 9, 11. CAIR-Foundation participated in this conspiracy by "publicizing knowingly false statements about [Dr. Winer] with the intent of damaging his reputation and career," as well as "encouraging others to echo and amplify these claims" through the Email Template and Phone Script. *Id.* ¶ 11; *see also id.* ¶¶ 124, 155, 179.

## II.    Procedural History

Dr. Winer filed this lawsuit in April of 2025, alleging Defamation, False Light Invasion of Privacy, and Civil Conspiracy. *See generally* Dkt. 1. He amended his complaint about a month later to add a claim for conspiracy to violate civil rights under 42 U.S.C. § 1985(3). *See generally* Dkt. 22. In response to motions to dismiss, Dr. Winer sought and obtained leave to file a Second Amended Complaint. *See generally* Dkt. Nos. 109, 129. The Second Amended complaint names several defendants, alleging each of the four claims just discussed against them all. *See id.* at pg. 1–2, 75, 94, 97, 101.

## ARGUMENT

## I.    CAIR-Foundation's procedural objections are meritless.

### A.    Georgia's anti-SLAPP statute doesn't apply in federal court.

CAIR-Foundation argues that this Court must dismiss Dr. Winer's claims against them and award them attorneys' fees under Georgia's anti-

SLAPP statute. Dkt. 136-1 at 18–21. That argument is foreclosed. The Eleventh Circuit has specifically held that "[federal courts] cannot apply the dismissal provision of Georgia's anti-SLAPP statute." *Carbone v. Cable News Network, Inc.,* 910 F.3d 1345, 1350–51 (11th Cir. 2018).

To its credit, CAIR-Foundation now *acknowledges* this fact, but it fails to acknowledge still more recent precedent that would bind even the *en banc* Eleventh Circuit. *See Berk v. Choy*, 607 U.S. ----, 2026 WL 135974, at *3 (U.S Jan. 20, 2026) ("when a Federal Rule of Civil Procedure is on point," even "state substantive law must yield" as long as the Federal Rule "answers the disputed question" and does not "exceed[ ] statutory authorization or Congress's rulemaking power.")

## B.  Dr. Winer's claims are not barred by Section 230 because CAIR-Foundation intended to and did adopt the defamatory contents of the CAIR-Team Post as its own.

CAIR-Foundation next argues that, because its tortious conspiracy was carried out on a social media platform, Dr. Winer's defamation and false light claims are barred by Section 230 of the Communications Decency Act, dkt. 136-1 at 5–10, which provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1) (emphasis added). "Essentially," this means that "'providers and users of interactive computer services' are immunized from liability 'when the

defamatory or obscene material is provided by someone else." *Tanisha Systems, Inc. v. Chandra*, No. 1:15-CV-2644, 2015 WL 10550967, at *8 (N.D. Ga. Dec. 4, 2015) (brackets omitted) (quoting 47 U.S.C. § 230(c)(1)). CAIR-Foundation's argument fails for two reasons.

First, the Second Amended Complaint plausibly alleges that CAIR-Foundation was indeed responsible for the content of the CAIR-Team Post, at least in part. A person is an "information content provider" when he is "responsible, in whole or in part, for the creation or development of information[.]" 47 U.S.C. § 230(f)(3). So "[t]here may be several information content providers of a single piece of content, each responsible for its creation or development in part." *McCall v. Zotos,* No. 22-11725, 2023 WL 3946827 at *2 (11th Cir. July 12, 2023); *FTC v. Accusearch Inc.*, 570 F.3d 1187, 1197 (10th Cir. 2009) (similar).

The Second Amended Complaint specifically alleges that CAIR-Georgia and CAIR-Foundation "collaborated" on the CAIR-Team Post. Dkt. 130 ¶ 124. In other words, CAIR-Foundation did more than republish defamatory content—it intended to and did adopt and amplify the defamatory allegations by urging others to act against Dr. Winer, as shown by the decision to provide a link to the Email Template and Phone Script in the comments. *See id.* ¶ 126. *See Tanisha Systems,* 2015 WL 10550967, at *8 (defendants "operated as a team to create the defamatory blog post at issue and to reinforce its impact

. . . . This kind of assistance plausibly suggests that Chandra created or developed the [defamatory] information in whole or in part." (quotation omitted)). *See also La Liberte v. Reid*, 966 F.3d 79, 89 (2d Cir. 2020) (defendant "went way beyond her earlier retweet . . . in ways that intensified and specified the vile conduct that she was attributing to La Liberte.")

CAIR-Foundation insists that it cannot be "responsible for the content" of the CAIR-Team post, even by reference to the Email Template and Phone Script, because it "did not comment, link, or otherwise provide the[m]." Dkt. 136-1 at 9 n.5. But again—Dr. Winer alleges that CAIR-Foundation "collaborated" with CAIR-Georgia, dkt. 130 ¶ 124, and that allegation must be credited as true, even if CAIR-Georgia was the one who pushed the button. *Tanisha Systems*, 2015 WL 10550967, at *8 ("it would make little sense to allow an individual to work in concert with another to defame someone, but allow him to disclaim liability because he worked behind the scenes.") What's more, it suffices for now that Dr. Winer alleges that CAIR-Foundation "materially contributed to the development of" the Instagram post and acted with CAIR Georgia "to reinforce its impact," which "plausibly suggests that [CAIR-Foundation] created or developed the information in whole or in part." *Id.* (quotation omitted).

Second, Section 230 immunity is an affirmative defense, not an element of Dr. Winer's claims. *See Florida Abolitionist v. Backpage.com LLC*, 2018

WL 1587477, at *4–5 (M.D. Fla. Mar. 31, 2018). A plaintiff generally "need not anticipate and negate affirmative defenses." *Isaiah v. JP Morgan Chase Bank*, 960 F.3d 1296, 1304 (11th Cir. 2020); *accord Doe v. GTE Corp.*, 347 F.3d 655, 657 (7th Cir. 2003). And a complaint should not be dismissed on the basis of an affirmative defense unless the defense is apparent on the face of the pleading. *See id.* Courts routinely deny motions to dismiss based on Section 230 immunity for exactly this reason. *See Florida Abolitionist*, 2018 WL 1587477, at *5 (collecting cases).

CAIR-Foundation says otherwise, but its cases do not support its point. CAIR-Foundation relies, for example, on *Ricci v. Teamsters Union Local 456*, 781 F.3d 25 (2d Cir. 2015) and *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119 (9th Cir. 2003). But *Ricci* involved a mere "refus[al] to remove" certain content from an internet service provider's web servers, 781 F.3d at 28 (internal quotation marks omitted), and *Carafano* dealt with content solely created by users but "formulated in response to" a service provider's questionnaire, 339 F.3d at 1124 ("Matchmaker was not responsible, even in part," for the offending content). Neither has anything to say about a user's collaboration—on and responsibility for—a defamatory post, let alone holds that immunity is apparent on the face of a complaint like Dr. Winer's.

Thus, "the issue of CDA immunity cannot be resolved on a Rule 12(b)(6) motion to dismiss in this case." *Florida Abolitionist*, 2018 WL 1587477, at *5.

## II.    The Second Amended Complaint states a claim against CAIR-Foundation for defamation per se.

To prove a claim of defamation, a plaintiff is required to show: "(1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication to a third party; (3) fault by the defendant amounting at least to negligence; and (4) special harm or the actionability of the statement irrespective of special harm." *Infinite Energy, Inc. v. Pardue*, 713 S.E.2d 456, 460 (2011) (quoting *Mathis v. Cannon,* 573 S.E.2d 376 (Ga. 2002)).

The Second Amended Complaint easily states a claim under that rubric. Dr. Winer alleges that CAIR-Foundation is jointly responsible for the CAIR-Team Post, which accuses him of aiding and abetting genocide, war crimes, and the destruction of the Gazan healthcare system—to say nothing of branding him a racist supporter of apartheid, dkt. 130 ¶ 124–126, 86–87, all of which are verifiably false, *see, e.g.*, *id.* ¶ 42. They are also of such gravity that "malice is inferred from the character of the charge" alone, O.C.G.A. § 51-5-5, and "damage is inferred." O.C.G.A. § 51-5-4. The Second Amended Complaint further alleges concrete reputational and emotional harm, including "significant, ongoing and enduring public embarrassment,

emotional distress, and harm to his professional reputation," dkt. 130 ¶ 137; *see also id.* ¶ 159.

Besides its already debunked suggestions that it cannot be liable because "[t]he at-issue Statement[s were] not made by CAIR-Foundation," and because Dr. Winer's claims must survive anti-SLAPP analysis, dkt. 136-1 at 10–11, CAIR-Foundation raises a host of arguments as to why this claim should not proceed to discovery. None has merit.

### A.   The defamatory statements here are provably false, not mere political opinions.

First, CAIR-Foundation argues that "the alleged defamatory statement[s are] opinion[s]." Dkt. 136-1 at 11. That is wrong.

To start with, the statement "*[t]his man participated in* aiding and abetting a genocide, [and] in aiding and abetting the destruction of the healthcare system in Gaza" dkt. 22 ¶ 125 (emphasis added), is plainly the kind of statement that "can reasonably be interpreted . . . to state or imply defamatory facts about the plaintiff that are capable of being proved false." *Gast v. Brittain,* 589 S.E.2d 63, 64 (Ga. 2003). Even if the *belief* that the Israel-Hamas war is a genocide could be characterized as an opinion—in the most abstract sense that any idea about world events may be called an opinion, however unfounded—the statements at issue here go further. *Contrast Gurmessa v. Genocide Prevention in Ethiopia, Inc.*, 21-C.A. No.-869,

2024 WL 3728020, at *4, 6 (D. Del. August 8, 2024) (Report and Recommendation) (concluding that "whether [a person] *supports* genocide" was a matter of political opinion). It plainly asserts as a matter of fact that Dr. Winer personally "participated" in such unconscionable acts. *See* Dkt. 22 ¶ 125. Dr. Winer either did or did not do these things—and he most certainly did not. *See id.* ¶ 42. To the extent CAIR-Foundation means to suggest that these sorts of statements merely express the opinion that *any* Israeli military service in Gaza constitutes "aiding and abetting" genocide—regardless of what Dr. Winer actually did, *see* dkt. 136-1 at 13—then that is not only deeply offensive, but also an impermissible inference against the plaintiff.

What's more, the fact that the Statement *involves* a matter of public concern does not shield CAIR-Foundation from defamation liability. "There is . . . no wholesale defamation exception for anything that might be labeled 'opinion.'" *Gast,* 589 S.E.2d at 64. The defamatory statement here is *not* merely that genocide has occurred, which might or might not be an opinion, but rather that Dr. Winer *himself* aided and abetted genocide, war crimes, and the destruction of the Gazan healthcare system, dkt. 22 ¶ 155—all of which the Second Amended Complaint alleges is false, *id.* ¶ 42. At a minimum, that is the inference to be drawn viewing the facts alleged in the light most favorable to Dr. Winer. It may be familiar rhetoric in certain advocacy circles to decry the Israel-Hamas war as genocide, and common

agitprop to paint anyone who doesn't militantly oppose Israel as complicit, but that does not transform the CAIR-Team Post into non-actionable opinion.

Finally, CAIR-Foundation fails to reckon with other defamatory statements alleged in the Second Amended Complaint. Paragraph 179 alleges that "CAIR-Foundation collaborated with CAIR-Georgia" to "adopt[] and "disseminat[e]" the Email Template and Phone Script, as well. And those materials are, if anything, even more clearly defamatory. *See id.* ¶¶ 86–87. CAIR-Foundation denies responsibility for their contents, dkt. 136-1 at 9 n.5, but that denial is beside the point—allegations of fact must be credited at this stage.

### B. Dr. Winer is not a limited public figure and, even if he were, the Second Amended Complaint alleges actual malice.

Next, CAIR-Foundation argues that Dr. Winer was a limited public figure for purposes of the Israel-Hamas conflict, which would require him to show actual malice to prevail on his defamation claim, on the basis that he wrote an op-ed about his service in the IDF. Dkt. 136-1 at 14–15 (citing Dkt. 130 ¶¶ 32–35). *See Little v. Breland,* 93 F.3d 755, 757 (11th Cir. 1996)*; Krass v. Obstacle Racing Media,* LLC, 667 F.Supp.3d 1177, 1210 (N.D. Ga. Mar. 21, 2023) ("actual malice is . . . knowledge that a statement is false or a reckless disregard as to its truth"). But Dr. Winer does not allege he is a public figure, limited or otherwise, and CAIR-Foundation cites no authority holding that a

single Op-Ed discussing a matter of public concern transforms a person into a limited public figure for any and all accusations about *his own* conduct.

Regardless, the upshot of being a limited public figure would be that Dr. Winer "cannot recover damages for defamation unless [he] prove[d] that an untrue statement was made 'with knowledge that it was false or with reckless disregard of whether it was false or not." *Dershowitz v. Cable News Network, Inc.*, 153 F.4th 1189, 1193 (11th Cir. 2025) (quoting *Sullivan*, 376 U.S. at 279). And Dr. Winer can plainly make that showing.

Dr. Winer alleges that these smears on his reputation are false, dkt. 130 ¶ 42, and that Mohammad's statements—which CAIR-Foundation "adopted, reiterated, and expanded upon," *id.* ¶¶ 5, 124, were made with *at least* reckless disregard for the truth because they were based entirely on information obtained from the Op-Ed, which made clear that Dr. Winer "had [ ] done no such thing[s]," *id.* ¶¶ 37–38. That is more than sufficient at the motion to dismiss stage. *See Veritas v. Cable News Network, Inc.*, 121 F.4th 1267, 1283 (11th Cir. 2024) ("at the pleadings stage, [the plaintiff] need only allege sufficient facts to permit the inference that [the defendant] published [the offending] statements with actual malice," and allegations "that [the defendant] actually entertained serious doubts about the veracity" of the statements is sufficient).

CAIR-Foundation insists that Dr. Winer has "pled no facts to suggest that CAIR-Foundation acted with actual malice," dkt. 136-1 at 16, but that claim simply cannot be squared with the Second Amended Complaint.

## III. The Second Amended Complaint states a claim against CAIR-Foundation for false light invasion of privacy.

To state a claim for false light invasion of privacy, a plaintiff must (1) "show the existence of false publicity that depicts the plaintiff as something or someone which he is not" and (2) "must demonstrate that the false light in which he was placed would be highly offensive to a reasonable person." *Doe v. Roe*, 864 S.E.2d 206, 216 (Ga. Ct. App. 2021) (quotation omitted).

The Second Amended Complaint satisfies both prongs. First, CAIR-Foundation is jointly responsible for the CAIR-Team post accusing Plaintiff of aiding and abetting genocide, war crimes, the destruction of the Gazan healthcare system, and of supporting apartheid. Dkt. 130 ¶¶ 124–26, 155, 179. Needless to say, the Second Amended Complaint alleges those scandalous accusations are false. *Id.* ¶ 42. Dr. Winer served in the IDF exclusively in his capacity as a physician and only engaged in defensive combat when directly attacked. *Id.* ¶ 37. Second, the Second Amended Complaint alleges that such a false light is highly and objectively offensive. *Id.* ¶¶ 166.

Unable to contest this on the merits, CAIR-Foundation instead argues that (1) "constitutionally-privileged statements of opinion cannot support a claim for false light" and (2) "neither CAIR-Foundation nor the IG Post is mentioned in Count II[.]" Dkt. 136-1 at 16–17. But of course, the statements alleged here *are not* constitutionally privileged, and all four claims are clearly alleged against all Defendants, building on the defamation claim already discussed. *See* Dkt. 130 ¶ 163–167. Thus, Dr. Winer has stated a claim against CAIR-Foundation for false light invasion of privacy.

## IV.    The Second Amended Complaint states a claim against CAIR-Foundation for civil conspiracy.

"To recover damages for a civil conspiracy claim, a plaintiff must show that two or more persons, acting in concert, engaged in conduct that constitutes a tort." *Mustaqeem-Graydon v. SunTrust Bank*, 573 S.E.2d 455, 461 (Ga. App. 2002). Here, the Second Amended Complaint alleges that (through the CAIR-Team Post, which included the link to the Email Template and Phone Script), CAIR-Foundation collaborated with CAIR-Georgia and Mohammad to defame Dr. Winer and portray him in a false light, with the intent of tarnishing his reputation in the Emory community. Dkt. 130 ¶¶ 124–26, 155, 163–166, 179. That is more than sufficient to plead coordinated action in furtherance of a common, unlawful design.

In addition to its recycled arguments under Section 230, CAIR Foundation complains that it "did not create the post, did not comment on the post, and did not provide any additional information that could be construed as defamatory," dkt. 136-1 at 18. Once again, however, this argument ignores the standard of review. Dr. Winer plainly alleges that CAIR-Foundation collaborated on the post, dkt. 130 ¶¶ 124—26, 155, 179, which is to say CAIR-Foundation took affirmative steps in furtherance of the conspiracy. CAIR-Foundation's suggestion that it "was merely tagged as a collaborator," dkt. 136-1 at 18, is not only wrong as a technical matter,[2] but also relies on technical details not alleged in the Second Amended Complaint, and fails to read the facts regarding those details in the light most favorable to Dr. Winer.

## V.    The Second Amended Complaint states a claim under 42 U.S.C. § 1985(3).

To state a cause of action under 42 U.S.C. § 1985(3), a plaintiff must allege (1) a conspiracy (2) for the purpose of depriving either directly or indirectly, a person or class of persons of the equal protection of the laws, or

---

[2] *See* Techrona, *How To Do A Joint Post On Instagram 2025* (iPhone & Android), YOUTUBE (Apr. 7, 2025) https://www.youtube.com/watch?v=-J16hODzNQk (explaining that one user must create the post, select "Invite Collaborators" (0:32) and choose the user it wishes to jointly share the post with (0:43), and the invited user must affirmatively accept the invitation to jointly share the post (0:56)).

the equal privileges and immunities; (3) an overt act in furtherance; and (4) an injury or deprivation of a right. *See Dean v. Warren*, 12 F.4th 1248, 1255 (11th Cir. 2021).

Count IV alleges that the defendants conspired to deprive Dr. Winer "of the equal protection of the laws and his rights and privileges" under the laws "on account of his Jewish identity and/or Zionist beliefs," including

> his [1] "right in every state to make and enforce contracts" on the same terms "as is enjoyed by white citizens," 42 U.S.C. § 1981, his right to be free from employment discrimination on the basis of "race . . . religion . . . or national origin," 42 U.S.C. § 2000e-2(a)(1), and his right not to be "subjected to discrimination under any program or activity receiving Federal financial assistance" "on the ground of race . . . or national origin." 42 U.S.C. § 2000d.

Dkt. 130 ¶ 189. Specifically, "Defendants undertook a coordinated effort to interfere with [Dr. Winer's] rights by publicly demanding that Emory investigate and/or terminate his employment because of their false accusations," *id.* ¶ 190, which were predicated on "[Dr. Winer's] lawful military service and expressed sense of duty to serve the Jewish homeland, which is integral to his racial identity as a jew," *id.* ¶ 191. In doing so, "Defendants sought to" induce Emory "to terminate his employment [because of his race], a result that would violate Titles VI and VII of the Civil Rights Act, as well as 42 U.S.C. § 1981." *Id.* ¶ 193. Indeed, CAIR-Foundation itself is a recipient of federal funding, "making

[its] conduct in subjecting [Dr. Winer] to discrimination" on the basis of race and national origin an independent violation of Title VI. *Id.* ¶ 194.

Beyond its already-discussed suggestion that Dr. Winer has not plausibly alleged the existence of a conspiracy, dkt. 136-1 at 21–22, CAIR-Foundation raises a handful of already-refuted points.

## A. CAIR-Foundation's participation in the conspiracy is plainly alleged.

First, CAIR-Foundation suggests that the Second Amended Complaint "leaves CAIR-Foundation's participation . . . to the imagination." Dkt. 136-1 at 21–22. Nonsense. *See* Dkt. 130 ¶ 195(a) ("Defendants," which includes CAIR-Foundation, published "knowingly false and defamatory statements accusing Plaintiff of genocide, war crimes," etc.,) 195(b) (Defendants organized "social media efforts that explicitly demanded Plaintiffs' termination or investigation"), 195(d) (Defendants "coordinated mass-email and phone campaigns" designed to pressure Emory into investigating or terminating Dr. Winer). Given the allegations against CAIR-Foundation, discussed at length already in this brief, *see id.* ¶¶ 124–26, 155, 179, *nothing* about CAIR-Foundation's alleged conduct is uncertain or unclear.

CAIR-Foundation retorts that the CAIR-Team Post "did not demand his termination or mention him by name," dkt. 136-1 at 23, but Dr. Winer alleges that "he is readily identifiable as the individual being referenced"

since he is "the only faculty member at the School of Medicine who served in the IDF following the October 7 attacks," dkt. 130 ¶ 129; *see also id.* ¶ 126. And at a minimum, "[t]he Email Template and Phone Script explicitly identified [Dr. Winer] by name," dkt. 130 ¶ 87, and Dr. Winer alleges (on information and belief) that posting them in the comments of the CAIR-Team Post was part of CAIR-Foundation and CAIR-Georgia's collaboration on the post. *See id.* ¶ 155.

Along those lines, CAIR-Foundation insists that it did not circulate the Email Template or Phone Script, dkt. 136-1 at 23, and that the CAIR-Team Post was meant to support Mohammad, not defame Dr. Winer. *Id.* But again, CAIR-Foundation is not entitled to its preferred version of the facts on a motion to dismiss. Dr. Winer alleges otherwise. *See* Dkt. 130 ¶¶ 155, 179.

### B.    CAIR-Foundation subjected Dr. Winer to discrimination on the basis of his race.

From there, CAIR-Foundation pretends that Dr. Winer has not alleged any facts suggesting that CAIR-Foundation acted as it did because of Dr. Winer's race. But he plainly has, *see* dkt. 130 ¶ 191 (Defendants "false accusations" were predicated on his "expressed sense of duty to serve the Jewish homeland, which is integral to his racial identity as a jew," i.e., "Defendants sought to punish and deter him for his Jewish identity"). And it is well-settled that Jewish identity qualifies as a protected racial group under

the Civil Rights Act. *See Shaare-Tefila Congregation v. Cobb*, 481 U.S. 615, 617–18 (1987); *LeBlanc-Stenberg v. Fletcher*, 781 F. Supp. 261, 267 (S.D.N.Y. 1991); *Emanuel v. Barry*, 724 F. Supp. 1096, 1101 (E.D.N.Y. 1989).[3]

### C.    Title VI, Title VII, and 42 U.S.C. § 1981 are valid predicates for a § 1985(3) claim.

Finally, CAIR-Foundation repeats its already-rejected argument that the only rights that can be vindicated against private actors are the constitutional rights to travel and against involuntary servitude. Dkt. 136-1 at 22–24. As Dr. Winer has explained, and this Court has held in granting leave to amend, this is simply bad logic. *See* Dkt. 116 at 7. "[T]he fact that neither the Supreme Court nor the Eleventh Circuit appear to have expressly" accepted any other claims against private parties does not mean that the use of any other predicate violation "is . . . barred by precedent." Dkt.

---

[3] CAIR-Foundation also complains, in passing, that it is not "clear how CAIR-Foundation . . . could subject [Dr. Winer]" to discrimination "as an alleged recipient of federal funding" in its own right, since "he does not allege [that] he was denied (or even seeking) benefits from CAIR-Foundation." Dkt. 136-1 at 22. The answer is that Title VI prohibits discrimination "under any program or activity receiving Federal financial assistance"—which Dr. Winer alleges includes CAIR-Foundation—and, in response to exactly the sort of argument CAIR-Foundation makes here, "Congress amended the definition of 'program or activity' to include 'all . . . operations of . . . a department, agency, . . . or other instrumentality" *McMullen v. Wakulla Cnty. Bd. of Cnty. Commissioners*, 650 F. App'x 703, 705–06 (11th Cir. 2016) (quoting Pub. L. 100-259 ("An Act to restore the broad scope of coverage and clarify the application of . . . title VI of the Civil Rights Act of 1964"); 42 U.S.C. § 2000d-4a(3)(A)(i).

129 at 13; *see also Jimenez v. Wellstar Health System*, 596 F.3d 1304, 1312 (11th Cir. 2010) ("[o]ther than the few rights the Supreme Court has addressed, district and circuit courts differ as to which rights warrant § 1985(3) protection.").

And indeed, common sense points the other way. Section 1985(3) provides a cause of action against conspiracies to deprive a person "of the equal protection of the laws, or of equal privileges and immunities under the laws[.]" That plainly goes beyond the Equal Protection *clause,* or the Privileges and Immunities *clause*, since the Supreme Court has held that § 1985(3) can be used to enforce the 13th Amendment and the right to travel. *See Griffin v. Breckenridge,* 403 U.S. 88, 105 (1979). So, when it comes to deciding which "laws" § 1985(3) can vindicate, it would be strange to exclude Title VI, Title VII, and § 1981—since, after all, they are part and parcel of the same Civil Rights Act to which § 1985(3) belongs. And, contrary to CAIR-Foundation's suggestion, precedent does not foreclose Dr. Winer's claims.

First, and to be sure, "the rights protected under Title VII" have been held "insufficient to form the basis of § 1985(3) actions against private conspirators." *Jimenez*, 596 F.3d at 1312 (citing *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366 (1979)). But those cases held that a plaintiff cannot use 42 U.S.C. § 1985(3) to do an end-run around the remedial framework for asserting a Title VII claim against *one's employer. See* 442 U.S.

at 376–77 (explaining that, "[i]f a violation of Title VII could be asserted through § 1985(3), a complaint could avoid most if not all of" the detailed remedial provisions of Title VII.") Here, by contrast, the Second Amended Complaint does not seek to bypass the remedial scheme for a Title VII claim against Emory, but rather to hold the defendants accountable for a conspiracy to *provoke* Emory to terminate Dr. Winer because of his Jewish identity—a *result* that would violate Title VII. *See* 42 U.S.C. § 1985(3) (conspiracies are actionable if their "purpose" is to deprive the plaintiff of rights, "either directly or indirectly," so long as the plaintiff is "injured in his person or property" even if his rights are not ultimately violated). So, properly understood, *Novotny* and *Jimenez* pose no bar to Dr. Winer's § 1985(3) claims predicated on Title VII.

Similarly, while the Eleventh Circuit has also rejected a § 1985(3) claim predicated on § 1981 in *Jimenez*, that was principally based on the Court's conclusion that "even if interference with contract and property rights could sustain a § 1985(3) claim, Jimenez ha[d] not adequately pled interference with any such rights" because interference with his relationship with patients and the "suspension of medical staff privileges" did not "implicate any contractual relationship" as a matter of Georgia law. 596 F3d at 1310, 1312. Here, Dr. Winer alleges straightforward interference with his

employment relationship with Emory—which is and can be the subject of a contractual relationship under Georgia law.

Of course, *Jimenez* also said that "conspiracies to violate rights protected under § 1981 are . . . insufficient to form the basis of a § 1985(3) claim" because (it thought) Title VII claims were barred, and "[t]his Circuit has routinely and systematically grouped Title VII and § 1981 claims for analytic purposes." *Id.* at 1312. But given the fact that Jimenez could not even plead a contract, this broader statement is dicta. *See In re BFW Liquidation, LLC*, 899 F.3d 1178, 1186 (11th Cir. 2018) ("If a statement is not necessary to the result the Court reached in the case, then the statement is dictum." (quotation omitted)).

Finally, and in all events, the Eleventh Circuit has never held that Title VI may not be a valid predicate for a § 1985 claim. *See* Dkt. 109 at 15–16 (explaining why a Seventh Circuit decision on this point is wrong).

Thus, the Second Amended Complaint states a claim under 42 U.S.C. §1985(3), and nothing CAIR-Foundation has said shows that this claim must be dismissed.

## VI. CAIR-Foundation cannot seek dismissal of the prayer for injunctive relief.

Last of all, CAIR-Foundation challenges Dr. Winer's request for an order to cease and desist its defamation, arguing that such an order is a

"prior restraint" and therefore "not an appropriate remedy." Dkt. 136-1 at 25 (title case omitted). This, also, is meritless. For one thing, injunctions against defamation are not categorically impermissible. *See, e.g., Cohen v. Advanced Med. Grp.*, 269 Ga. 184, 496 S.E.2d 710, 711 (1998). For another, a challenge to one form of relief is not a basis for dismissal. Even where a complaint requests "inappropriate relief," a court "will not dismiss [that request] for failure to state a claim." *MI Windows & Doors, LLC v. Liberty Mut. Fire Ins. Co.*, 123 F. Supp. 3d 1332, 1341 (M.D. Fla. 2015) (quotation omitted); *A.W. by & through J.W. v. Coweta Cnty. Sch. Dist.*, 110 F.4th 1309, 1315 (11th Cir. 2024) ("Requesting an improper remedy is not fatal to a claim.")

## CONCLUSION

For these reasons, the Court should deny CAIR-Foundation's motion to dismiss.

Respectfully submitted this 24th day of February, 2026.

|  |  |
|---|---|
| | */s/ Miles C. Skedsvold* |
| Lauren Israelovitch | Josh Belinfante |
| Mark Goldfeder | Anna Edmondson |
| Ben Schlager | Miles Skedsvold |
| NATIONAL JEWISH | ROBBINS ALLOY BELINFANTE |
| ADVOCACY CENTER, INC. | LITTLEFIELD LLC |
| 3 Times Square, Suite 512 | 500 14th Street, NW |
| New York, NY 10036 | Atlanta, GA 30318 |
| (914) 222-3828 | T: (678) 701-9320 |
| lauren@njaclaw.org | E: mskedsvold@robbinsfirm.com |
| *Pro Hac Vice* | Ga. Bar No. 371576 |

David F. Katz
THE D.F. KATZ LAW FIRM, LLC
1158 Jones Bridge Rd
Ste 420 PMB1090
Johns Cerek, GA 30022
T: (404) 918-5707
Dkatz@dfkatzlawfirm.com
Ga. Bar. No. 408738

Esther Panitch
THE PANITCH LAW GROUP, PC
4243 Dunwoody Club Drive
Suite 205
Atlanta, GA 30350
esther@panitchlawgroup.com
Ga. Bar. No. 143197

## CERTIFICATE OF COMPLIANCE

By signature below, counsel certifies that the foregoing pleading was prepared in Century Schoolbook, 13-point font, in compliance with Local Rule 5.1(C).

/s/ Miles C. Skedsvold
Miles C. Skedsvold

**CERTIFICATE OF SERVICE**

I hereby certify that I have this day electronically filed the within and foregoing **PLAINTIFF JOSHUA WINER'S RESPONSE TO CAIR-FOUNDATION INC.'S MOTION TO DISMISS AND MOTION FOR ATTORNEY'S FEES** with the Clerk of Court using the CM/ECF electronic filing system, which suffices for service on all counsel of record who have entered an appearance in the case under L.R. 5.1(A)(3).

This 24th day of February, 2026.

*/s/ Miles C. Skedsvold*
Miles C. Skedsvold