# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

Joshua Winer,

        *Plaintiff*,

v.

Umaymah Mohammad, AJP Educational Foundation, Inc. A/K/A American Muslims for Palestine, WESPAC Foundation, Inc., Sean Eren as the representative of National Students for Justice in Palestine, Doctors Against Genocide Society, CAIR-Nga Inc. A/K/A CAIR-Georgia, CAIR Foundation Inc., A/K/A Council on Islamic Relations or CAIR, Rupa Marya, Ibrahim Jouja as representative of Emory Students for Justice in Palestine.

        *Defendants*.

Civil Action File
No. 1:25-CV-02329-TWT

## DEFENDANT WESPAC FOUNDATION, INC.'S BRIEF
## IN SUPPORT OF MOTION TO DISMISS
## <u>PLAINTIFF'S SECONDED AMENDED COMPLAINT</u>

# TABLE OF CONTENTS

Introduction ..................................................................................................1

Background Facts ...........................................................................................6

Legal Argument .............................................................................................7

    I.    There Is No Basis to Exercise Personal Jurisdiction over WESPAC ........7

        A. There Is No Basis for Exercising General Personal Jurisdiction ..........9

        B. There Is No Basis for Exercising Specific Personal Jurisdiction .......10

        C. WESPAC Does Not Have Minimum Contacts with Georgia.............13

    II.    The Claims Against WESPAC Fail as a Matter of Law ..........................14

Conclusion ..................................................................................................17

Defendant WESPAC Foundation, Inc. ("WESPAC"), hereby files this Brief in Support of its Motion to Dismiss Plaintiff's Second Amended Complaint ("SAC") for lack of personal jurisdiction and failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(2) and (b)(6).

## INTRODUCTION

The SAC is as facially frivolous with respect to WESPAC as its two predecessor pleadings were. In Plaintiff's Amended Complaint, only three of its 190 paragraphs contained allegations against WESPAC. While the SAC manages to mention WESPAC in nine of its 200 paragraphs, none of the newly added allegations remotely cure the fatal jurisdictional and substantive defects that WESPAC addressed in its motion to dismiss the Amended Complaint. Rather, the newly added allegations essentially consist only of often incorrect statements of law.

Critically, WESPAC is still not among the Defendants alleged to have "published, adopted, reiterated and expanded upon" any "false statements about Plaintiff," or to have "worked with [Defendant] Mohammad to provide her with a platform to adopt, further amplify and disseminate [those] false statements." *See* SAC ¶¶ 5-6. Nor is WESPAC alleged to have "individually defamed Plaintiff, placed him in a false light, and engaged in a civil conspiracy with Mohammad to further publicize Mohammad's defamatory statements about Plaintiff and place Plaintiff in a false light." *Id*. ¶ 6.

1

In fact, the SAC does not plausibly allege that WESPAC took *any action* at all in relation to Plaintiff or even knew of Plaintiff before being haled into this case. Why did Plaintiff omit what would have been a critical discussion of WESPAC's efforts to harm him? Because, of course, WESPAC made no such efforts.

Plaintiff and his counsel nonetheless persist in bringing claims against WESPAC, not because WESPAC was involved in any of the conduct allegedly underlying the four causes of action asserted, but solely because WESPAC was a general fiscal sponsor to National Students for Justice in Palestine ("NSJP"). *See* SAC ¶ 13 (alleging that, "[o]n information and belief, Mohammad is . . . a steering committee member of NSJP"), ¶ 15 (alleging that, as NSJP's fiscal sponsor, "WESPAC bears direct responsibility for overseeing and approving the activities and expenditures of NSJP that are funded through this fiscal sponsorship arrangement"). Notwithstanding the SAC's inclusion of five new paragraphs that cite Internal Revenue Service ("IRS") rulings and make related assertions (*id*. ¶¶ 148-52)—the only newly made allegations relating to WESPAC—this theory remains entirely without legal basis.

Indeed, there is even more authority on this point than when WESPAC initially moved to dismiss this case. As addressed in WESPAC's first motion to dismiss, on June 13, 2025, Judge Stephen V. Wilson of the U.S. District Court for the Central District of California had rejected this fiscal-sponsor argument in a case

brought against WESPAC and others by National Jewish Advocacy Center ("NJAC"), which also is counsel for Plaintiff in this action. *Helmann v. Codepink Women for Peace*, No. 2:24-CV-05704-SVW-PVC, 2025 WL 3030582 (C.D. Cal. June 13, 2025).[1] Specifically, Judge Wilson concluded that, with respect to the fiscal-sponsor theory peddled in that action and again here by NJAC, "Plaintiffs cite *no legal authority* holding that fiscal sponsorship alone creates such liability, and the Court finds *none*." *Id.* at *20 (emphasis added). Judge Wilson found further that—in jurisdictional circumstances functionally identical to those here—there was no basis for a California court to exercise personal jurisdiction over WESPAC, a New York entity. *Id*. at *21.[2]

Also as addressed in WESPAC's first motion to dismiss, on August 7, 2025, Judge Mary M. Rowland in the United States District Court for the Northern District of Illinois dismissed all claims against all defendants in another harassing lawsuit also predicated—as to WESPAC—upon WESPAC's serving as a fiscal sponsor. *Manhart v. WESPAC et al.*, 24-cv-08209, 2025 WL 2257408 (N.D. Ill. Aug. 7, 2025). Judge Rowland also imposed sanctions, given that the claims were frivolous

---

[1] NJAC represented the plaintiffs in *StandWithUs Center for Legal Justice v. CodePink et al*, 2:24-cv-06253-SVW-PVC, which was consolidated with *Helmann*, and dismissed as to WESPAC on June 13, 2025.

[2] The *Helmann* court also concluded that a 42 U.S.C. § 1985(3) claim NJAC brought failed, *inter alia*, because it did not allege state action, a fatal deficiency also found in the § 1985 claim brought by Plaintiff here.

and pursued for an improper purpose, *id.* at \*15-18, as they are here.[3] Echoing Judge Wilson with respect to WESPAC, Judge Rowland held that "Plaintiff cites no case or legal authority from any jurisdiction suggesting or even contemplating that *any* IRS rule could *ever* create a legal duty sufficient to substantiate a tort claim." *Id.* at \*12 (emphasis in original) (holding that IRS Revenue Ruling 68-489, 1968-2 C.B. 210 did not support liability).

Most recently, a third federal court dismissed claims against WESPAC in yet another improper lawsuit predicated on the same baseless fiscal-sponsorship theory that Plaintiff relies on here. *See Weinberg v. Nat'l Students for Just. in Palestine*, No. 2:25-CV-03714-MCS-JC, 2026 WL 184302 (C.D. Cal. Jan. 20, 2026). There, in addressing WESPAC's personal-jurisdiction argument, Judge Mark C. Scarsi held that "[t]he Court has not found any authority embracing Plaintiff's fiscal sponsorship theory. And, in fact, the only other court that has addressed Plaintiffs' broad reading of the IRS ruling [68-489] soundly rejected it." *Id.* at \*13 (citing *Manhart* at \*12).

Given these three cases, it is remarkable that Plaintiff went out of his way to insert citations in the SAC to the same Revenue Rulings that have already been

---

[3] Plaintiff's counsel's commentary makes clear that they have pursued WESPAC here and in *Helmann* to harass, punish and if possible, destroy it. In the words of Mark Goldfeder, one of Plaintiff's lawyers with NJAC: "Incredibly proud to be one of the 'forces of darkness' bringing down WESPAC. Most of these cases have been brought by @[National Jewish Advocacy Center] and our partners." *See* https://x.com/MarkGoldfeder/status/1878836072530219427.

rejected repeatedly when previously offered as the purported basis for WESPAC's liability. SAC ¶¶ 150, 152 (citing, *inter alia,* Revenue Ruling 68-489, 1968-2 C.B. 210). And these citations constitute the only purportedly new substantive allegations the SAC offers against WESPAC. As such and for reasons explained in those three cases—the only cases we are aware of addressing the fiscal-sponsor theory—Plaintiff's claims fail as a matter of law as to WESPAC once again, even putting aside the other threshold failings in all claims in this case.[4]

The SAC against WESPAC also must be dismissed because it contains absolutely no allegations that might provide a basis to exercise personal jurisdiction over WESPAC. Plaintiff does not allege that WESPAC has the "substantial" or "continuous" contacts with this forum that might meet the demanding standard for general personal jurisdiction as an exception to the normal rule that such jurisdiction may only be exercised where a corporation is organized or has its principal place of business, *i.e.*, New York in the case of WESPAC. Nor does Plaintiff plausibly allege that WESPAC did *anything* in or directed at Georgia, which precludes long-arm jurisdiction as well.

In sum, Plaintiff's claims against WESPAC are without any legal or factual basis and should be dismissed with prejudice, particularly given that this is

---

[4] For the sake of brevity, WESPAC incorporates the arguments made by other Defendants as to the threshold failings of Plaintiff's claims.

Plaintiff's third failed attempt to articulate either a jurisdictional or substantive basis for dragging WESPAC into this case.

## BACKGROUND FACTS

Most notable in this context is what Plaintiff does *not* allege. Even though we are told this case arises out of statements about Plaintiff purportedly made by a student and repeated by others, Plaintiff does not assert that WESPAC made these statements, repeated them, expressed any support for them, or even *knew* about them. *See* SAC ¶¶ 1-6. Nonetheless, Plaintiff claims WESPAC is somehow liable for his alleged injuries resulting from the statements.

Indeed, despite running 107 pages, the SAC offers only one purported factual basis for Plaintiff's claims against WESPAC, *i.e.,* a bald and equivocating assertion that, *"[o]n information and belief*, WESPAC, as NSJP's fiscal sponsor, knowingly funded and facilitated NSJP's coordinated efforts to vilify Plaintiff and pressure Emory to discipline Plaintiff, including through the distribution of false statements and hyperlinks to defamatory action tools." SAC ¶ 147 (emphasis added); *see also id.* ¶ 176.

Utterly absent are any specific factual allegations supporting this allegation. No details are alleged—nor could they truthfully be alleged—as to how WESPAC supposedly knowingly funded or facilitated NSJP's alleged efforts to hurt Plaintiff or that WESPAC even knew who Plaintiff was before being haled into court. And a

sworn statement from WESPAC's Executive Director, submitted herewith, vitiates the assertion—made only "[o]n information and belief"—that WESPAC had some role in funding activity relating to Plaintiff. Declaration of Nada Khader ("Khader Decl.") ¶¶ 7-8.

## LEGAL ARGUMENT

### I.    There Is No Basis to Exercise Personal Jurisdiction over WESPAC

It is well established that Plaintiff "bears the burden of establishing jurisdiction." *Horsley v. Feldt*, 128 F. Supp. 2d 1374, 1377 (N.D. Ga. 2000). Vague and conclusory allegations are insufficient to establish a prima facie case of personal jurisdiction. *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1318 (11th Cir. 2006). Furthermore, a plaintiff cannot aggregate factual allegations concerning a group of defendants generally to establish personal jurisdiction over an individual defendant. *Rush v. Savchuk*, 444 U.S. 320, 331-32 (1980).

Moreover, "[e]ven though a statute may permit a state to assert jurisdiction over a nonresident defendant, the due process clause of the United States Constitution protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Licciardello v. Lovelady*, 544 F.3d 1280, 1284 (11th Cir. 2008) (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)). Therefore, Plaintiff must demonstrate that WESPAC has "certain minimum

contacts" with Georgia, "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe*, 326 U.S. at 316 (citation and quotation omitted). The strength of contacts required depends on which category of personal jurisdiction a plaintiff invokes: general or specific personal jurisdiction. *See Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014).

Here, just as with Plaintiff's first two pleadings, the SAC does not—and cannot—allege facts sufficient to establish that either general or specific personal jurisdiction may be exercised over WESPAC, a New York entity. Rather, the only specific allegation offered relevant to this analysis demonstrates that personal jurisdiction may *not* be exercised, *i.e.,* Plaintiff concedes WESPAC is a New York-based organization. SAC ¶ 15.

Otherwise, Plaintiff solely relies on a generalized statement that it inserted into the SAC as a half-hearted attempt to address jurisdiction: "As to the remaining defendants, personal jurisdiction is proper because they expressly directed their tortious conduct toward Plaintiff in Georgia and should have reasonably anticipated that the effects of their actions would be felt in this State." *Id.* ¶ 24. And the only allegation that would conceivably support a contention that *WESPAC* (among the "remaining defendants") directed tortious conduct toward Plaintiff in Georgia is the SAC's statement, "[*o*]*n information and belief*," that WESPAC somehow funded

defamation. *Id.* ¶ 147 (emphasis added). But the sworn declaration of WESPAC's Executive Director definitively refutes that equivocal statement. As such, personal jurisdiction is simply lacking.

### A.    There Is No Basis for Exercising General Personal Jurisdiction

The standard for obtaining general personal jurisdiction over a corporation is demanding. For a corporation, "the place of incorporation and principal place of business are paradig[m] . . . bases for general jurisdiction." *Daimler*, 134 S. Ct. at 760 (internal quotations and citations omitted). A court may assert general jurisdiction over a foreign corporation "only when the corporation's affiliations with the State in which suit is brought are so constant and pervasive 'as to render [it] essentially at home in the forum State.'" *Id.* at 751 (internal citations omitted).

Here, the only assertion in the SAC conceivably relevant to a general-jurisdiction analysis establishes that such jurisdiction would be improper. Specifically, Plaintiff correctly asserts that WESPAC is New York based. SAC ¶ 15. Beyond that, Plaintiff does not actually assert that WESPAC has had *any* contacts with Georgia (beyond the conclusory allegation that all "remaining defendants . . . expressly directed their tortious conduct toward Plaintiff in Georgia"), let alone contacts that are "continuous" or "systematic." *See also* Khader Decl. ¶¶ 3-4 (establishing that WESPAC's offices are in New York, and it has no offices, employees, bank accounts, or other property in Georgia).

**B.    There Is No Basis for Exercising Specific Personal Jurisdiction**

With respect to specific jurisdiction, a federal court "undertakes a two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257-58 (11th Cir. 2010).

Plaintiff does not cite any provision of Georgia's long-arm statute, but presumably would seek to rely on O.C.G.A. § 9-10-91(3), providing for personal jurisdiction over a nonresident who "[c]ommits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engaged in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state." *See* SAC ¶ 24 ("As to the remaining defendants, personal jurisdiction is proper because they expressly directed their tortious conduct toward Plaintiff in Georgia and should have reasonably anticipated that the effects of their actions would be felt in this State.")

In support of such argument, Plaintiff would presumably point to his allegation that, *"[o]n information and belief*, WESPAC, as NSJP's fiscal sponsor, knowingly funded and facilitated NSJP's coordinated efforts to vilify Plaintiff and pressure Emory to discipline Plaintiff, including through the distribution of false

statements and hyperlinks to defamatory action tools." SAC ¶ 147 (emphasis added), *see also id.* ¶ 176. But this conclusory statement, which Plaintiff offers with the equivocating language of "[o]n information and belief," does not suffice.

This is particularly true because Plaintiff's assertion is definitively refuted by sworn statements from WESPAC's Executive Director that WESPAC has never transferred funds to Georgia (i) for the general benefit of or use by NSJP or (ii) for use in connection specifically with any action relating to Emory University or Plaintiff. *See* Khader Decl. ¶¶ 6-7; *Segment Consulting Mgmt., Ltd. v. Bliss Nutraceticals, LLC*, No. 1:20-CV-1837-TWT, 2022 WL 252309 at *2 (N.D. Ga. Jan. 27, 2022) (Thrash, J.) (in assessing personal jurisdiction, the court construes complaint's allegations as true if "they are uncontroverted by defendant's affidavits . . . Where the defendant contests the allegations of the complaint through affidavits, the burden shifts back to the plaintiff to produce evidence supporting personal jurisdiction . . . ." (internal quotations and citations omitted).

Beyond not alleging adequately a relevant wrongful act, the 200-paragraph SAC utterly fails to assert that WESPAC "regularly does or solicits business, or engaged in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in" Georgia. O.C.G.A. § 9-10-91(3); *compare* Khader Decl. ¶¶ 3-4 (WESPAC's offices are in New York, and it

has no offices, employees, bank accounts, or other property in Georgia). Thus, Plaintiff does not remotely satisfy any element of O.C.G.A. § 9-10-91(3).

To whatever extent Plaintiff might alternatively invoke a jurisdictional theory based on the simple fact of WESPAC's status as a fiscal sponsor, such tack would be entirely unavailing. In *Helmann*, the court held that WESPAC's "fiscal sponsorship of PYM [was] not enough to . . . support personal jurisdiction . . . ." 2025 WL 3030582 at *20 (noting specifically that, even assuming WESPAC complied with IRS Revenue Ruling 68-499—which Plaintiff cites here—WESPAC's "role as PYM's fiscal sponsor[] does not create a sufficient link to PYM's conduct to support . . . personal jurisdiction").

Similarly, and more recently, in *Weinberg*, Judge Scarsi held that the court could not exercise specific personal jurisdiction over WESPAC based on its fiscal sponsorship of NSJP and NSJP's alleged instate activity:

> WESPAC's only other pleaded connection with California is its fiscal sponsorship of NSJP. . . . WESPAC argues that the mere fact that it serves as NSJP's fiscal sponsor is not sufficient to subject it to the Court's personal jurisdiction. . . . The Court agrees for the reasons persuasively explained in a recent decision from this district. . . . The Court has not found any authority embracing Plaintiff's fiscal sponsorship theory. And, in fact, the only other court that has addressed Plaintiffs' broad reading of the IRS ruling soundly rejected it.

*Weinberg,* 2026 WL 184302 at *13. The reasoning in *Helmann* and *Weinberg* applies comfortably in the present case, underscoring that there would be no basis to fabricate a jurisdictional theory solely from fiscal-sponsor status.

## C.    WESPAC Does Not Have Minimum Contacts with Georgia

Because Plaintiff fails to allege facts sufficient to allow for the exercise of long-arm jurisdiction over WESPAC, the Court need not reach the issue of minimum contacts. However, the exercise of specific jurisdiction would likewise be improper as a matter of due process, which mandates that personal jurisdiction may not be exercised over a defendant unless he has "purposefully established minimum contacts within the forum State," *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985), "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe*, 326 U.S. at 316 (internal quotation marks and citation omitted). These minimum contacts must be grounded in "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, (1958).

In *Walden v. Fiore*, 571 U.S. 277, 290 (2014), the Supreme Court emphasized that the due process inquiry turns on the defendant's conduct, not the effects on the plaintiff.

> Regardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State. The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way.

*See also id.* at 285 ("plaintiff cannot be the only link between the defendant and the forum.").

Plaintiff does not come close to pleading facts to establish WESPAC has minimum contacts with this forum. Indeed, Plaintiff does not allege WESPAC did *anything* in Georgia and does not even address minimum contacts in the SAC. For these reasons as well, specific personal jurisdiction does not exist as to WESPAC.

## II.    The Claims Against WESPAC Fail as a Matter of Law

Plaintiff's claims against WESPAC continue to be based on the bald, conclusory assertion that, "[o]n information and belief, WESPAC, as NSJP's fiscal sponsor, knowingly funded and facilitated NSJP's coordinated efforts to vilify Plaintiff and pressure Emory to discipline Plaintiff, including through the distribution of false statements and hyperlinks to defamatory action tools." SAC ¶ 147.[5] As with the original Complaint and the Amended Complaint, the SAC does not offer a single substantiating factual allegation in connection with that (false) conclusory statement, let alone one that would make plausible any assertion that WESPAC knowingly funded or facilitated any efforts to harm Plaintiff—which it did not. *See* Khader Decl. ¶¶ 5-8.

For these reasons, the cited allegation fails entirely to state a claim that is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Put differently, Plaintiff has not even remotely pleaded "factual content that allows

---

[5] Plaintiff offers a similar allegation not on information and belief, but there is no reason to believe the omission of that prefatory phrase was intentional. *See* SAC ¶ 176.

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Segment Consulting*, 2022 WL 252309 at *4 n.1 ("[c]onclusory allegations made upon information and belief are not entitled to a presumption of truth, and allegations stated upon information and belief that do not contain any factual support fail to meet the Twombly standard.") (citations omitted).

Ultimately, though, we do not expect Plaintiff to claim he has any evidence that WESPAC actually engaged in funding or other activity related to him, but instead will contend that WESPAC is liable simply because it was NSJP's fiscal sponsor:

> Pursuant to IRS guidelines governing fiscal sponsorship, WESPAC is required to maintain full control and discretion over the use of donated funds and is legally responsible for ensuring that all disbursed funds are used exclusively for legitimate charitable purposes. Accordingly, WESPAC bears direct responsibility for overseeing and approving the activities and expenditures of NSJP that are funded through this fiscal sponsorship arrangement.

SAC ¶ 15. In fact, the SAC doubles down on the theory that a fiscal sponsor is strictly liable for anything a sponsoree allegedly does anywhere in the world, given that the SAC's newly offered assertions as to WESPAC are all citations to IRS Revenue Rulings. *Id.* ¶¶ 150, 152.[6]

---

[6] The SAC also contains newly offered allegations about how a generic fiscal-sponsorship relationship purportedly works. *See* SAC ¶¶ 148-49, 151. At most, these allegations constitute legal conclusions that do not remotely state a claim.

Fatal to this theory is the utter absence of any legal authority, which has led three courts to reject it. In *Helmann*, the court explained that IRS Revenue Ruling 68-499 requires fiscal sponsors to retain "control and discretion" over how donated funds are used, "but only in order to preserve their tax-exempt status—*not to create an agency relationship or vicarious liability*." 2025 WL 3030582 at *20 (emphasis added). The court concluded further that "Plaintiffs cite[d] *no legal authority* holding that fiscal sponsorship alone creates [] liability, and the Court finds *none*." *Id.* (emphasis added).

Moreover, it held that "[t]he most relevant case Plaintiffs cite, *New York ex rel. TZAC, Inc. v. New Israel Fund*, 520 F. Supp. 3d 362 (S.D.N.Y.), *actually undercuts* their argument." *Id.* (emphasis added). This was because, in *TZAC*, the court only allowed the grantees' conduct to be attributed to the nonprofit for the narrow purpose of assessing whether the nonprofit had misled the state on its tax forms—a question not at issue in this case. *Id*. The *Helmann* court noted that the *TZAC* court "did not hold the nonprofit liable for grantees' actions themselves." *Id*.

Similarly, in *Manhart*, the court dismissed claims against WESPAC that were predicated upon WESPAC's serving as a fiscal sponsor, holding that "Plaintiff cites

---

*Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and courts need not accept as true conclusory legal allegations cast in the form of factual allegations); *see also Chandler v. Sec'y of Fla. Dep't of Transp.*, 695 F.3d 1194, 1199 (11th Cir. 2012).

no case or legal authority from any jurisdiction suggesting or even contemplating that *any* IRS rule could *ever* create a legal duty sufficient to substantiate a tort claim." 2025 WL 2257408 at *12 (emphasis in original). As addressed, the court also imposed sanctions given that the entire action was frivolous.

And in *Weinberg*, the plaintiffs invoked IRS Revenue Ruling 68-489 as a purported basis to impose liability on WESPAC for a sponsoree's conduct, but the court (in ruling on a jurisdictional challenge) did "not [find] any authority embracing Plaintiff's fiscal sponsorship theory." 2026 WL 184302 at *13.

In sum, Plaintiff cannot offer any legal authority for his theory that a fiscal sponsor is strictly liable to anyone, anywhere in the world, who feels aggrieved by a sponsoree's allegedly tortious action, regardless of whether the sponsor funded or even knew of the action in advance. And three courts have soundly rejected that theory. Nothing better explains the extent to which Plaintiff's claims against WESPAC are frivolous, warrant immediate dismissal, and are sanctionable if Plaintiff and his counsel continue to maintain them.

## CONCLUSION

For the reasons addressed above, WESPAC respectfully requests that this Court grant its motion pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) to dismiss Plaintiff's Second Amended Complaint in its entirety as against

WESPAC, with prejudice, and grant such additional relief to WESPAC as the Court

may deem appropriate and proper.

DATED: March 3, 2026

HUMAN RIGHTS FIRST

By: _/s/Joshua Colangelo-Bryan_____
Joshua Colangelo-Bryan (*pro hac vice*)
121 West 36th Street
PMB 520
New York, NY 10018
Tel: 212-845-5243
colangeloj@humanrightsfirst.org

HERBST LAW PLLC
Robert L. Herbst (*pro hac vice*)
420 Lexington Avenue, Suite 300
New York, New York 10170
Tel: 914-450-8163
rherbst@herbstlawny.com

ASIAN AMERICANS
ADVANCING JUSTICE - ATLANTA
Samantha C. Hamilton
Georgia Bar No. 326618
5680 Oakbrook Pkwy. Suite 148
Norcross, GA 30093
Tel: 470-816-3319
shamilton@advancingjustice-atlanta.org

AWAD LEGAL TEAM, LLC
Muneer Othman Awad
Georgia Bar No. 683647

18

244 Roswell Street
Suite 500
Marietta, GA 30060
Tel: 404-445-8443
muneer@awadlegalteam.com

*Attorneys for Defendant WESPAC*
*Foundation, Inc.*

## <u>CERTIFICATE OF COMPLIANCE WITH L.R. 5.1</u>

I HEREBY CERTIFY that the foregoing document was prepared in Times New Roman, 14-point font, as approved by Local Rule 5.1.

<u>/s/ Joshua Colangelo-Bryan</u>
Joshua Colangelo-Bryan
Admitted *pro hac vice*

Attorney for Defendant
WESPAC Foundation, Inc.