**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

Joshua Winer,

    Plaintiff,

v.

Umaymah Mohammad, et. al.,

    Defendants.

Civil Action No.: 1:25-cv-02329

**DEFENDANT DOCTORS AGAINST GENOCIDE SOCIETY'S BRIEF IN
SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S SECOND
AMENDED COMPLAINT**

Defendant Doctors Against Genocide Society ("DAG"), hereby files this

Brief in Support of its Motion to Dismiss Plaintiff's Second Amended Complaint

for failure to state a claim upon which relief can be granted.

**INTRODUCTION**

Doctors Against Genocide is a non-partisan, global coalition of reputable

healthcare professionals dedicated to raising awareness on how to identify and

prevent genocide around the world. Since October 7, 2023, DAG has organized

multiple advocacy campaigns in support of the Palestinian people in Gaza, and

in defense of medical professionals silenced for their humanitarian advocacy. As

an organization of medical professionals, DAG has been particularly attuned to

Israel's intentional and systematic destruction of Gaza's medical system, which both DAG and international legal experts have condemned as a genocide.[1]

This Court may take judicial notice that since October 2023, Israel has been accused of massacring more than 75,000 Palestinians in Gaza, deliberately destroying almost every one of Gaza's 36 hospitals, and engineering mass starvation and famine while targeting civilians and civil infrastructure.[2] A federal judge noted that Israel's conduct in Gaza "may plausibly constitute a genocide."[3] Defendants are some of the people and organizations that have spoken up against Israel's genocide in Gaza. Plaintiff brings this frivolous suit in retaliation

---

[1] *See e.g.*, Doc. 41-2, 41-3, 41-4, and 41-5; *see also* Report by Francesca Albanese, UN Special Rapporteur on the situation of human rights in the Palestinian territories occupied since 1967, "Genocide as Colonial Erasure," A/79/384; International Court of Justice, *Application of the Convention on the Prevention and Punishment of the Crime of Genocide in the Gaza Strip (South Africa v. Israel)*, Order of 26 January 2024.

[2] This court may take notice of the statements in the following sources. *U.S. ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 812 n.4 (11th Cir. 2015). Mohammad Mansour, Gaza death toll exceeds 75,000 as independent data verify loss, Al Jazeera (02/18/2026); World Health Organization, Health System at Breaking Point as Hostilities Further Intensify in Gaza, (05/22/2025); United Nations, "Famine in Gaza: 'A failure of humanity itself', says UN chief" (08/22/2025).

[3] *Defense for Children International-Palestine v. Biden*, 714 F.Supp.3d 1160, 1163 (N.D. Cal. 2024)(stating that "[b]oth the uncontroverted testimony of the Plaintiffs and the expert opinion proffered at the hearing on these motions as well as statements made by various officers of the Israeli government indicate that the ongoing military siege in Gaza is intended to eradicate a whole people and therefore plausibly falls within the international prohibition against genocide").

for Defendants' criticism of his decision to volunteer in the Israeli Defense Force ("IDF"), in order to silence and chill such criticisms and punish the speakers.

Plaintiff has failed to establish personal jurisdiction over DAG, and has failed to plausibly plead any of his invoked causes of action. Every statement attributable to DAG is a protected expression of opinion on a matter of significant public concern: the IDF's ongoing genocide in Gaza and the responsibility of each individual to not participate in that genocide. Because Plaintiff cannot plausibly allege that animus motivated DAG's posts in support of co-Defendants, he also cannot plead a conspiracy to violate his civil rights.

**STANDARD OF REVIEW**

### I.        Federal Rule of Civil Procedure 12(b)(6)

Rule of Civil Procedure 12(b)(6) allows the Court to dismiss a complaint for "failure to state a claim upon which relief can be granted." When reviewing a motion to dismiss, the Court must take the allegations of the complaint as true and must construe those allegations in the light most favorable to the plaintiff. *Rivell v. Priv. Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008) (per curiam). The Court need not accept a plaintiff's legal conclusions or unwarranted deductions of fact. *Chandler v. Sec'y of Fla. Dep't of Transp.*, 695 F.3d 1194, 1199 (11th Cir. 2012). "To survive a Rule 12(b)(6) motion to dismiss, 'a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."'" *Martinez Claros v. Taylor Lee & Associates LLC*, 2018 WL

7079995 (N.D. Georgia, September 18, 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). A plaintiff must allege facts that "raise the right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Moreover, libel "is a traditionally disfavored cause of action and the courts tend to construe the complaint by a somewhat stricter standard." *Escort v. Verizon Commc'ns, Inc.*, 2005 WL 8155369, at *3 (N.D. Ga. 2005) (citation omitted).

## II.    Federal Rule of Civil Procedure 12(b)(2)

"A plaintiff's complaint is subject to dismissal if there is a lack of personal jurisdiction over the defendant." Fed. R. Civ. P. 12(b)(2). The issue of whether personal jurisdiction is present is a question of law. A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the burden of sufficient facts alleging in the complaint to make out a prima facie case of jurisdiction. Where a non-resident defendant challenges the exercise of a court's jurisdiction over him, but where no evidence on the matter is submitted, the plaintiff has the burden of pleading a prima facie case of personal jurisdiction over the moving defendant by alleging sufficient face to support a reasonable inference that the defendant is subject to jurisdiction. To determine whether a

prima facie case has been plead, "[t]he Court must engage in a two-part analysis… First, the Court determines whether a defendant's activities satisfy the forum state's long-arm statute. Second, the Court determines whether the exercise of personal jurisdiction comports with the due process requirements of the Fourteenth Amendment". *Progressive Light, Inc. v Décor Selections, LLC,* 2021 WL 12315477, at *4 (N.D. Ga. Sep. 17, 2021, No. 1:20-cv-3840-AT) (Quotation marks and internal cites omitted).

## FACTUAL ALLEGATIONS

Plaintiff is a surgical oncologist at Emory Winship Cancer Institute and a professor at the Emory School of Medicine ("Emory"). SAC ¶ 12. In March 2024, Plaintiff published an op-ed in the Times of Israel justifying his decision to take a leave of absence to volunteer in an IDF combat unit operating in Gaza. SAC ¶¶ 32-33. The article identified Plaintiff's affiliation with Emory. SAC ¶ 32, n.5.

In a conclusory manner and through impermissible group pleadings, Plaintiff alleges Doctors Against Genocide ("DAG") and other Defendants conspired to defame him, place him in false light, and interfere with his civil rights by criticizing his decision to participate in what they view as a genocide. SAC ¶¶ 5-6.

Plaintiff alleges that Ms. Mohammad accused him of aiding and abetting a genocide against the Palestinians in Gaza based on the voluntary IDF service he disclosed in his op-ed. SAC ¶¶ 36-39. In April 2024, during an interview with

Amy Goodman on Democracy Now!, Umaymah Mohammad—a student at

Emory—stated:

> "[O]ne of the professors of medicine we have at Emory recently went to serve as a volunteer medic in the Israeli Offense Force [sic] and recently came back. This man participated in aiding and abetting a genocide, in aiding and abetting the destruction of the healthcare system in Gaza and the murder of over 400 healthcare workers, and is now back at Emory so-called teaching medical students and residents how to take care of patients."

SAC ¶ 36. Plaintiff alleges that Ms. Mohammed did not explicitly identify him in

her Democracy Now! Interview and referenced "an Emory physician and

professor who served in the IDF". *See e.g.* SAC ¶ 57. On November 19, 2024, Ms.

Mohammad was suspended from Emory due to her interview. SAC ¶ 49, 76.

Plaintiff alleges almost no specific facts against DAG to render his claims

against it plausible, and relies entirely on two Instagram posts made in support

of Mohammad after Emory University suspended her for her speech. Plaintiff

alleges that DAG collaborated with other organizations in "a community-led

initiative that was launched in response to Mohammad's suspension" by

publishing the two Instagram posts. SAC ¶ 77.

Plaintiff alleges that DAG published an Instagram post with the above-

cited excerpt from Ms. Mohammad's Democracy Now! interview. SAC ¶ 78.

Plaintiff alleges that the Instagram post "called on readers to contact the deans…

to demand *that the suspension charges against Mohammad be rescinded*" and that

Emory hold accountable *any* students or faculty who "participated in or

legitimized the genocide in Gaza." SAC ¶¶ 84. Plaintiff alleges the post did not identify him by name, but that in a comment below the post "another user provided a link to the Plaintiff's op-ed," and that as a result, other unidentified third-parties identified him and "posted false and inflammatory statements." SAC ¶ 80-81.

Plaintiff alleges that DAG's Instagram post linked to another website, Action Network, which included a script for supporters to use when contacting the university. SAC ¶ 86. Plaintiff alleges the phone script said "I'm alarmed by the institution's endorsement of faculty like Dr. Joshua Winer, who recently served in the Israeli Defense Forces", and asked Emory to drop the suspension of Ms. Mohammad, investigate any students and faculty "endorsing Israel's apartheid regime", and publicly apologize for targeting anti-genocide students and faculty. SAC ¶ 87. Plaintiff alleges the email script said:

> "Dr. Joshua Winer… has written openly about his participation in a military campaign that has been condemned as a genocide by countless international authorities… Why does Emory allow a physician who participated in this genocidal campaign to provide care without any investigation into his involvement in war crimes committed by the IDF in Gaza, war crimes that have now been documented in thousands of videos and widely shared across the Internet? Hold faculty and students accountable for their participation in or legitimization of the genocide of Palestinians."

SAC ¶ 88. Plaintiff alleges "the Phone Script expressly demanded that Plaintiff be fired" but the complete "reproduction" of the Phone Script in the SAC does not include that demand—only a general demand to "[i]nvestigate faculty and

students endorsing Israel's apartheid regime and remove them for patient safety and compliance with international demands." SAC ¶ 87, 89.

Plaintiff alleges DAG also published a second Instagram post, again with other organizations, reiterating support for Ms. Mohammad and criticizing Emory for employing of an IDF soldier who served in Gaza during a genocide. SAC ¶¶ 91-94. Plaintiff alleges that DAG's second post also did not identify him by name, but stated "*any* physician-faculty who served in the IDF these last 16 months perpetuated a genocide", and that one faculty "proudly identified himself as an IDF reservist ready for deployment to perpetuate genocidal crimes in Gaza" in an op ed. SAC ¶¶ 91, 145(e). Plaintiff alleges that DAG's characterization of the Israeli Defense Force as the "IOF" (Israeli Offense Force) is inflammatory and implies his participation in war crimes. SAC ¶ 145(a).

In a flagrant abuse of pleadings upon information and belief, Plaintiff bizarrely asserts that both Rupa Marya and Umaymah Mohammad are "co-founder(s)" of DAG. SAC ¶¶ 13, 17, 96,  174, 177. Allegations made upon "information and belief" must still be supported by "specific facts." *Price v. Howard*, 2023 WL 2767770, at *2 (N.D. Ga., March 31, 2023) ("Conclusory allegations made upon information and belief are not entitled to a presumption of truth, and allegations stated upon information and belief that do not contain any factual support fail to meet the *Twombly* standard") (citing *Scott v. Experian Info. Sols., Inc.*, 2018 WL 3360754, at *6 (S.D. Fla. June 29, 2018) (citations

omitted)). The only facts offered to support the allegation that Marya and Mohammad are "founders of DAG" is that "[b]oth Mohammad and Marya recently presented as. DAG panelists and hosted DAG webinars." SAC ¶ 17. Marya and Mohammad's participation in DAG-supported programming is plainly insufficient to support an inference that they founded the organization and the Court need not credit this bald assertion.

These are the only facts specifically alleged against DAG. Plaintiff makes additional, conclusory allegations against "Defendants" collectively, which cannot render his claims against *DAG* plausible: that they acted in concert to defame and place him in false light by publishing "numerous false statements that portrayed Plaintiff as someone who condones or engages in violence, lacks moral integrity, devalues certain human lives, and is unfit to treat patients or teach students—particularly those from marginalized communities" (SAC ¶ 163); acted "with malice and reckless disregard for the truth" (SAC ¶ 164); conspired "to target Plaintiff because of his race, ethnicity, and his affiliation with both Israel and the IDF" to "suppress his rights to the equal protection of the laws and of equal privileges and immunities under the laws" (SAC ¶ 9); and "plotted, coordinated, and executed a common plan to deprive Plaintiff of the equal protection of the laws and his rights and privileges on account of his Jewish identity and/or Zionist beliefs, including his rights" under 42 U.S.C. § 1981, 42 U.S.C. § 2000e-2(a)(1), and 42 U.S.C. § 2000d. (SAC ¶ 189).

## ARGUMENT

### I.    Plaintiff has Failed to Establish Personal Jurisdiction Over Doctors Against Genocide Under Rule 12(b)(2)

Plaintiff has pled no facts that permit the Court to find personal jurisdiction over DAG. Plaintiff pled that "DAG is a 501(c)(3) non-profit corporation incorporated in Michigan". SAC ¶ 17. DAG is not a resident of Georgia, so the Court can only exercise jurisdiction through the state's long arm statute. GA Code § 9-10-91 states that a "court of this state may exercise personal jurisdiction over any nonresident....as to a cause of action arising from any of the acts, omissions, ownership, use, or possession enumerated in this Code section, in the same manner as if he or she were a resident of this state, if in person or through an agent, he or she: (1) Transacts any business within this state; (2) Commits a tortious act or omission within this state, *except as to a cause of action for defamation of character arising from the act*; (3) Commits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state" (emphasis added). GA Code § 9-10-91.

Plaintiff has not alleged DAG transacts any business in Georgia, nor that it derives any revenue from services or goods rendered in Georgia. Any exercise of personal jurisdiction over DAG must therefore be based on subsection (2) of the

long arm statute—the commission of a tortious act or omission. The alleged

culpable conduct for all three tort claims in the SAC is defamation of character,

which is explicitly *not* a basis for long arm jurisdiction in Georgia. *Black v Skinary*

*App, Inc.,* 2024 US Dist LEXIS 136035, at *10 (ND Ga Aug. 1, 2024, No. 1:23-CV-

5647-TWT) ("[T]o the extent that the 'tortious act' in question is defamation, the

long-arm statute specifically excludes that from its reach"; *Worthy v Eller,* 265 Ga

App 487, 488, 594 SE2d 699, 700 (2004), *cert. den.* 2004 Ga. LEXIS 514 (2004) ("The

language of the statute is clear, unequivocal and unambiguous in mandating the

exclusion of an action predicated on defamation"); *Mahendra Amin v O'Brien,*

2025 US Dist LEXIS 7223, at *12 (SD Ga Jan. 14, 2025, No. CV 5:24-022)

("Defendant O'Brien is not subject to suit in Georgia for acts allegedly

constituting defamation"); *Mueller v Ebay, Inc.,* 2021 US Dist LEXIS 201597, at *3-4

[ND Ga Jan. 6, 2021, No. 1:20-cv-2581-SCJ]) ("[P]ublication of defamatory

information in Georgia standing alone is insufficient to establish personal

jurisdiction under Georgia's long-arm statute... the commission of acts solely

related and giving rise to a defamation claim do not fall within the Georgia long-

arm statute").

Plaintiff should not be permitted to evade the limitations on subsection (2)

by recharacterizing his defamation claim as false light or other tort claims, cf.

*Leise v Vermont Hum. Rights Commn.,* 2023 US Dist LEXIS 50354, at *72-73 (D Vt

Mar. 24, 2023, No. 2:22-cv-00009) ("A plaintiff may not use related causes of

action to avoid the constitutional requisites of a defamation claim. The First Amendment considerations that apply to defamation therefore apply also to [the plaintiff's] counts for false light and tortious interference") (citing *Farah v. Esquire Mag.*, 736 F.3d 528, 540 (D.C. Cir. 2013)); *Moldea v NY Times Co.*, 22 F3d 310, 319 (1994) ("[A] plaintiff may not avoid the strictures of the burdens of proof associated with defamation by resorting to a claim of false light invasion").

Even where a Defendant allegedly conspired with a resident Defendant to commit defamation, the Court cannot assert jurisdiction over the non-resident without infringing on due process. *Sprint Nextel Corp. v Ace Wholesale, Inc.*, 2014 US Dist LEXIS 21598, at *23-25 (ND Ga Feb. 20, 2014, No. 1:12-cv-02902-JEC) ("[T]he bare existence of a conspiracy is not enough to support long arm jurisdiction without a further showing of a 'contact' with the forum"); *Wells Fargo Bank v Berkman*, 2011 US Dist LEXIS 16484, at *13 (ND Ga Feb. 16, 2011, No. 1:10-CV-2286-TWT). Where DAG's alleged conduct is protected speech, the First Amendment also weighs heavily against exercising personal jurisdiction.

Because Plaintiff has failed to plausibly allege any non-defamation tortious conduct by DAG in Georgia or to plead a cognizable claim under § 1985(3), the Court lacks personal jurisdiction over DAG and his claim must be dismissed.

## II.    Plaintiff has Failed to Plausibly Plead a Claim Under Rule 12(b)(6)

### a. Plaintiff has Failed to Allege that Doctors Against Genocide Committed Defamation *Per Se*

"Under Georgia law, a claim for defamation has four elements: (1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication to a third party; (3) fault by the defendant amounting to at least negligence; and (4) special harm or the actionability of the statement irrespective of special harm." *American Civil Liberties Union v. Zeh*, 312 Ga. 647, 650 (Ga., 2021) (citation omitted).

Where speech relates to a matter of public concern, Plaintiff must prove fault and falsity. *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 776 (1986). A statement is one of public concern when it can "be fairly considered as relating to any matter of political, social, or other concern to the community." *Id* at 453. At the pleadings stage, "the crucial burden on a plaintiff in making a defamation or defamation-type claim is to show the falsity of the statements made." *Brock v. Viacom Int'l, Inc.*, 2005 U.S. Dist. LEXIS 12217, at *13 (N.D. Ga. Feb. 28, 2005).

When speech expresses an opinion "on 'matters with respect to which reasonable men might entertain differing opinions'", that speech cannot be proven false and "is not libelous." *Bergen v. Martindale-Hubbell*, 176 Ga. App. 745, 747 (1985). Whether a statement constitutes fact or opinion is a question of law. *Old Dominion Branch No. 496, Nat'l Assoc. of Letter Carriers v. Austin*, 418 U.S. 264, 283-84 (1974). Speech about politics and public controversy and impassioned statements "heavily laden with emotional rhetoric and moral outrage" are not likely to be perceived as factual. *Milkovich*, 497 U.S. at 32 (Brennan, J. dissenting);

*Bennett v. Hendrix*, 2007 U.S. Dist. LEXIS 102156, at \*10 (N.D. Ga. 2007) (Thrash, J.) (Dismissing complaint because flyers "however offensive—were political speech of the highest order and deserving of the highest protection"); *Koch v. Goldway*, 817 F.2d 507, 509 (9th Cir. 1987) (statement more likely to be opinion when made in the general context "of a heated political debate, where certain remarks are necessarily understood as ridicule or vituperation"); *Hoppe v. Hearst Corp.*, 53 Wash. App. 668, 675, 770 P.2d 203, 207 (1989) ("In the context of an ongoing political controversy, 'the audience is prepared for mischaracterizations and exaggerations, and is likely to view such representations with an awareness of the subjective biases of the speaker'"). The forum and context of the speech also affect whether the speech is perceived as fact or opinion. *See Glob. Telemedia Int'l, Inc. v. John Doe 1*, 132 F. Supp. 2d 1261, 1267 (C.D. Cal. 2001) (Internet postings "are full of hyperbole, invective, short-hand phrases and language not generally found in fact-based documents"); *Ganske v. Mensch*, 480 F. Supp. 3d 542, 545 (S.D.N.Y. 2020) ("If the Internet is akin to the Wild West... Twitter is, perhaps, the shooting gallery, where verbal gunslingers engage in prolonged hyperbolic crossfire.").

Here, the speech at issue is an *opinion* expressed on a matter of *public concern*. The debate regarding Israel's genocide in Gaza and the ongoing humanitarian crisis have been a matter of intense international debate since at least October 2023. Because DAG's statements regard matters of public concern,

it is Plaintiff's burden to show that those statements are false. The speech at issue expresses an opinion, with no specific provably false facts, and Plaintiff has failed to plausibly plead a cause of action.

Plaintiff only makes the following specific allegations against DAG: (1) DAG "falsely stated that Plaintiff had recently served in the 'IOF', an abbreviation of 'Israeli Offense Force'… a deliberately inflammatory mislabeling of" the IDF (SAC ¶ 145(a)); (2) DAG "permitted defamatory third-party comments to remain publicly visible in the comments section" of the Instagram post, and some of those comments by third parties accused Plaintiff of participating in a genocide (SAC ¶ 145(b)); (3) DAG shared a link to a phone script that encouraged supporters to tell Emory that Plaintiff "recently served in the Israeli Defense Forces" and call on Emory to "[i]nvestigate faculty and students endorsing Israel's apartheid regime and remove them" (SAC ¶ 145(c); (4) DAG shared a link to an email script that said Plaintiff "has written openly about his participation in a military campaign that has been condemned as a genocide" (SAC ¶ 145(d)); and (5) DAG published an Instagram post stating "that any physician-faculty who served in the IDF these last sixteen months perpetuated genocide" and that Plaintiff "published his own op ed for the Times of Israel… in which he proudly identified himself as an IDF reservist ready for deployment to perpetuate genocidal crimes in Gaza" (SAC ¶ 145(e)).

Of these, every single statement attributable to DAG is either an innocent statement of fact consistent with Plaintiff's own public representations about himself (i.e. the claim that he recently served in the IDF), or irrefutably an opinion regarding a matter of public concern (i.e. re-characterizing the IDF as the IOF, calling for an investigation of faculty who support genocide, and opining that voluntary service in the IDF since October 7, 2023 amounts to participating in and prolonging the ongoing genocide). Not a single one of these statements can render DAG liable under Plaintiff's invoked causes of action.

Plaintiff articulates no legal theory that could hold DAG liable for allegedly defamatory comments made by unidentified third parties in response to DAG's Instagram posts. Federal courts have foreclosed liability based on content published online by third parties under 47 U.S.C. § 230.[4] *See generally NetChoice, LLC v. Att'y Gen., State of Florida,* 34 F.4th 1196 (11th Cir. 2022) (finding content-moderation decisions by social media companies are protected First Amendment activities immune from liability); *Doe v. Fenix Int'l Ltd. (OnlyFans),* CASE NO. 22-cv-62176 (S.D. Fla. Mar. 28, 2024) (dismissing claim under §230 premised on user-uploaded content for failure to demonstrate that the computer

---

[4] "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."  47 U.S.C. § 230(c)(1).

service provider had "actual knowledge" of illegal content). The same protections apply here because § 230(c) extends to users as well as providers.[5]

The statements that Plaintiff recently served in the IDF are based on Plaintiff's own claims in his public op-ed and are not defamatory. *Brock*, 2005 U.S. Dist. LEXIS 12217, at *13. Calling the Israeli Defense Force the 'Israeli Offense Force' is not defamatory because it is clearly the sort of political hyperbole "necessarily understood as ridicule or vituperation" in the context "of a heated political debate." *Koch*, 817 F.2d at 509. Plaintiff cannot show an injury from Defendant's re-labelling of the IDF as the IOF. Similarly, the assertion that anyone who volunteers in IDF combat units in Gaza is guilty of prolonging and sustaining the genocide is "heavily laden" with the exact kind of "emotional rhetoric and outrage" that typifies a political opinion. *Milkovich*, 497 U.S. at 32 (Brennan, J. dissenting). The characterization of IDF enlistment as "deployment to perpetuate genocidal crimes in Gaza" (SAC ¶ 145(e)) is also an obvious expression of a political opinion and hyperbole on a matter "with respect to which reasonable men might entertain differing opinions." *Bergen*, 176 Ga. App. at 747. As such, these statements are not subject to being proven false and are

---

[5] Immunity under Section 230 requires: "(1) defendant be a service provider or user of an interactive computer service; (2) the cause of action treats a defendant as a publisher or speaker of information; and (3) a different information content provider provided the information." *Roca Labs, Inc. v. Consumer Opinion Corp. et al*, 140 F.Supp.3d 1311, 1319 (M.D. Fla. 2015) (quoting *Whitney Info. Network, Inc. v. Verio, Inc.*, 2006 WL 66724, *2 (M.D. Fla. Jan. 11, 2006).

"not libelous." *Id.* Because Plaintiff has failed to identify a single factual claim by DAG that is provably false, he cannot plausibly plead a claim for defamation.[6]

Even if Plaintiff could factually disprove DAG's political opinions, he cannot plead defamation because he is a public figure—by virtue of both his position and his publications—and fails to allege that DAG acted with actual malice. *Jackson v. Atl. Monthly Co.*, 324 F.Supp. 1302, 1303 (N.D. Ga. 1971) (Plaintiff was a public figure where he was a physician who "was also the author of several books and articles of national note… a lecturer and [a] public speaker"); *Little v. Breland*, 93 F.3d 755, 757 (11th Cir. 1996) (public figures claiming defamation must establish actual malice where the allegedly defamatory material "involves issues of legitimate public concern"). In the alternative, DAG adopts CAIR Foundation's argument that Plaintiff is at the very least a limited public figure on the topic of the war in Gaza by virtue of his own op-ed, and must still show actual malice. ECF Dkt. 136-1, at 14-15.

Plaintiff has not alleged actual malice and offers no facts that plausibly show DAG acted with knowledge or reckless disregard of any statement's falsity. *New York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964). DAG's statements were based upon Plaintiff's own op-ed (which DAG cites in its posts, SAC ¶ 91, and

---

[6] DAG also joins and incorporates co-Defendant CAIR-NGA, Inc.'s argument that allegations of "genocide", "apartheid", or "war crimes" are protected opinions not actionable as defamation. *See* ECF Dkt. 140-1, at 13.

which Plaintiff pleads was "publicly available and easily accessible", SAC ¶ 48). CAIR Georgia has filed exhibits showing the ongoing public debate over whether the IDF is committing genocide in Gaza. Doc. 41-2, 41-3, 41-4, 41-5. Given this debate and Plaintiff's own disclosure of his IDF service, DAG did not recklessly or knowingly make any false statements of fact, and Plaintiff fails to state a claim.

### b. Plaintiff has Failed to Plausibly Allege that Doctors Against Genocide Committed False Light Invasion of Privacy

For the same reasons Plaintiff fails to plausibly allege false light invasion of privacy. In order to plead a false light claim, Plaintiff must show DAG knowingly or recklessly published falsehoods about him and placed him in a false light highly offensive to a reasonable person. *Smith v. Stewart*, 291 Ga. App. 86 (Ga. Ct. App. 2008). "[A] constitutionally privileged statement of opinion cannot form the basis of a claim for invasion of privacy by placing a person in a false light." *S & W Seafoods Co. v. Jacor Broad. of Atlanta,* 194 Ga. App. 233, 237 (1989). Plaintiff's false light claim is insufficiently pled because: (1) he fails to allege a provably false statement by DAG; (2) he fails to allege DAG's opinions on matters of public interest are unprotected by the First Amendment; and (3) he fails to allege that DAG published falsehoods knowingly or recklessly.

### c. Plaintiff has Failed to Plausibly Allege that Doctors Against Genocide Committed Civil Conspiracy

Civil conspiracy requires: "[1] an agreement between two or more people [2] to achieve an illegal objective, [3] an overt act in furtherance of that illegal

objective, and [4] a resulting injury to the plaintiff." *McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir. 2000) (en banc). Plaintiff fails to plausibly allege DAG agreed with any other defendant to achieve an illegal objective. He alleges no specific facts to show DAG possessed an unlawful objective, and in fact has plead statements by DAG that show a far more plausible, lawful objective: "that the suspension charges against Mohammad be rescinded and that both Emory and the School of Medicine hold accountable those students and faculty who have 'participated in or legitimized the genocide in Gaza.'" SAC ¶ 84. Because Plaintiff has failed to plausibly state a claim for the underlying torts of defamation and false light invasion of privacy, his civil conspiracy claim also fails. *Mustaqeem-Graydon v. SunTrust Bank*, 258 Ga. App. 200, 207 (2002) ("Absent the underlying tort, there can be no liability for civil conspiracy").

### d.  Plaintiff has Failed to Plausibly Allege that Doctors Against Genocide Committed Conspiracy to Interfere with Civil Rights

To plead a claim under 42 U.S.C. § 1985(3), Plaintiff must allege "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *United Broth. of Carpenters and Joiners of America, Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 828–

29 (1983). Plaintiff must also allege "(1) that 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus [lay] behind the conspirators' action,' and (2) that the conspiracy 'aimed at interfering with rights' that are 'protected against private, as well as official, encroachment.'" *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267–68 (1993) (citations omitted).

### i. Plaintiff Fails to Plausibly Allege a Conspiracy Against Rights Protected by Private Encroachment

Plaintiff alleges that Defendants conspired to deprive him of the right to: (1) make and enforce contracts under 42 U.S.C. §1981; (2) be free from employment discrimination under Title VII; and (3) protection against discrimination under Title VI. SAC ¶ 189. Where "the alleged § 1985(3) conspirators are private actors," a plaintiff may only recover for conspiracies "aimed at rights constitutionally protected against private impairment." *Jimenez v. Wellstar Health Sys.*, 596 F.3d 1304, 1312 (11th Cir. 2010) (citations omitted). The Courts have limited § 1985(3) claims against private conspirators to a narrow category of serious constitutional rights, including interference with the right to interstate travel and the right against involuntary servitude. *Jimenez*, 596 F.3d at 1312 (cleaned up); *see also Prunty v. Arnold & Itkin LLP*, 753 F. App'x 731, 736 (11th Cir. 2018); *Shuler v. Swatek*, 465 F. App'x 900, 903 (11th Cir. 2012).

The Eleventh Circuit and other Courts have explicitly held that conspiracies to violate §1981 rights cannot form the basis of a §1985(3) claim.

*Jimenez*, 596 F.3d at 1312; *see also Brown v. Philip Morris Inc.*, 250 F.3d 789, 805-06 (3d Cir. 2001) (finding alleged § 1981 violations impermissible for a § 1985(3) claim because the statute protects contractual rights rather than constitutional rights actionable against private conspirators); *Novotny* v. *Great Am. Fed. Sav. & Loan Ass'n,* 442 U.S. 366, 378 (1979) (holding that statutory rights created by federal civil rights statutes cannot be vindicated through §1985(3)); *Griffin v. Breckenridge*, 403 U.S. 88, 97 (1971) (explaining that §1985(3) does not create substantive rights). Allowing Plaintiff to transform a §1981 claim into a §1985(3) conspiracy would improperly expand §1985(3) beyond its narrow scope and circumvent the Supreme Court's limitations on the statute.

It is well-established that conspiracies to violate Title VII rights cannot form the basis of a §1985(3) claim in the Eleventh Circuit. *Dickerson v. Alachua County Commission*, 200 F.3d 761, 767-68 (11th Cir. 2000); *Jimenez*, 596 F. 3d at 1312 ("conspiracies to violate rights protected by Title VII cannot form the basis of § 1985(3) suits"). Title VII protects statutory rights, not constitutional rights against private conspirators, and the Fourteenth Amendment's Equal Protection and Privileges or Immunities Clauses apply only to state actors, not private conspiracies. U.S. Const. Amend. XIV, § 1. Plaintiff cannot plead a §1985(3) claim based on Title VII because he has cannot show involvement by a state actor.

Plaintiff's §1985(3) claim against DAG cannot be supported by Title VI because he has not alleged that DAG interfered with any rights protected under

the statute. Title VI prohibits discrimination in programs or activities receiving federal financial assistance, and any viable employment-based claim would require proof that an employer receives federal funds primarily for the purpose of providing employment. *See Jones v. Metro. Atlanta Rapid Transit Auth.*, 681 F.2d 1376, 1378 (11th Cir. 1982) (requiring plaintiff to show federal funds are provided for employment purposes to assert Title VI employment claim). Plaintiff does not allege that DAG—nor even Emory—receives federal funds for the purpose of employment, a critical deficiency that warrants dismissal of the claim. *See also*, *Reynolds v. School District No. 1, Denver, CO*, 69 F.3d 1523, 1531 (10th Cir. 1995) (motion to dismiss granted where plaintiff failed to show primary purpose of federal assistance was employment); *Ass'n Against Discrimination in Emp. v. City of Bridgeport*, 647 F.2d 256, 276 (2d Cir. 1981), *cert. denied*, 455 U.S. 988 (1982) (plaintiff could not prove employment discrimination because defendant did not receive federal funds primarily for employment).

Plaintiff erroneously attempts to implicate DAG by referencing CAIR-Foundation's alleged federal funding, but he does not allege that he sought or was denied any benefit from DAG, and has not plausibly plead that DAG conspired with Emory. SAC ¶ 194. Plaintiff therefore cannot plausibly allege that DAG owed or deprived him of any rights under a federally funded program. SAC ¶ 193. Because Plaintiff fails to allege that DAG deprived him of rights under Title VI, his §1985(3) claim cannot succeed. Moreover, §1985(3) claims

based on statutory rights like Title VI are impermissible as a matter of law because §1985(3) is narrowly construed to provide remedies only for conspiracies interfering with constitutional rights enforceable against private actors.

### ii.  Plaintiff Fails to Plausibly Allege a Discriminatory Animus

Plaintiff's § 1985(3) claim fails for a second reason: he has failed to plausibly allege "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Dean v. Warren*, 12 F.4th 1248, 1255 (11th Cir. 2021) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971)). Plaintiff claims that Defendants targeted him on the basis of his "Zionist beliefs" (SAC ¶ 189), "association with the IDF" (SAC ¶ 10), "affiliation with both Israel and the IDF" (SAC ¶ 9), and "identity as a Zionist Jew" (SAC ¶ 8), and were motivated by his volunteer enlistment in the IDF during what they and the majority of the international community agree is a genocide. The fact that Plaintiff summarily and conclusory alleges that Defendants also targeted him due to his Israeli national origin, race, or ethnicity (SAC ¶ 9, 10), and "identity, as a Jewish Israeli" (SAC ¶112) cannot render their animus claim plausible in the face of far more plausible motives, pled directly in the SAC.

Even if Plaintiff could plead Defendants were motivated by something other than his IDF service, he would still fail to plead a claim. Courts have routinely held that national identity and political beliefs are not cognizable as protected classes under § 1985(3). *See Fiske v. Lockheed-Georgia Co., Div. of Lockheed*

*Corp.*, 568 F. Supp. 590 (N.D. Ga. 1983) (§ 1985(3) does not reach politically motivated conspiracies); *Smith v. Turner*, 764 F. Supp. 632, 1991 U.S. Dist. LEXIS 7131 (N.D. Ga. 1991) (§ 1985(3) does not provide remedy for "every concerted effort by one political group to nullify influence of or do other injury to competing group by use of otherwise unlawful means"); *Bauge v. Jernigan*, 671 F. Supp. 709 (D. Colo. 1987) (plaintiff's claim of discrimination based on his Norwegian citizenship is not within the scope of § 1985 protection). As foreign citizens are not a protected class, neither are soldiers in a foreign military.

The only remaining question for the Court is whether Plaintiff has plausibly alleged that Defendants were motivated by his "Jewish identity." There is not one single fact alleged against DAG that could render such an inference remotely plausible. Plaintiff does not cite a single statement by DAG referencing his religion *whatsoever*. Instead, he relies entirely upon the preposterous claim that opposition to his IDF service is *per se* antisemitic. SAC ¶¶ 8, 10, 17, 192. This dangerous attempt to conflate criticism of Israel's conduct with religious animus improperly sweeps "any and all criticism of Israel into the basket of antisemitism." No. CV 24-2044, 2025 WL 5469, at *1 (E.D. Pa. Jan. 6, 2025).

## CONCLUSION

The Amended Complaint must be dismissed under Rule 12(b)(2) and 12(b)(6) for failure to establish personal jurisdiction and failure to state a claim against DAG and the other Defendants.

Respectfully submitted this 17th day of March, 2026.

/s/ *Collin Poirot*
Collin Poirot
(*pro hac vice)*
New York SBN: 5673405
2603 Oak Lawn, Suite 300
Dallas, TX  75219
(214) 392-2281
cpoirot.law@gmail.com

/s/ *Akil Secret*
Akil Secret
Georgia Bar No. 634075
The Secret Firm PC
P.O. Box 91028
Atlanta, GA 30364
(404) 524-5300
asecret@thesecretfirm.com

*Attorneys for Doctors Against*
*Genocide Society (DAG)*

**CERTIFICATE OF COMPLIANCE WITH L.R. 5.1**

I HEREBY CERTIFY that the foregoing document was prepared in Book Antiqua 13-point font, as approved by Local Rule 5.1.


Dated:        March 17, 2026                    */s/ Collin Poirot*
                                                Collin Poirot
                                                (*pro hac vice*)
                                                New York SBN: 5673405
                                                2603 Oak Lawn, Suite 300
                                                Dallas, TX  75219
                                                (214) 392-2281
                                                cpoirot.law@gmail.com