UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JOSHUA WINER,

      Plaintiff,

v.

UMAYMAH MOHAMMAD, et al.,

      Defendants.

Civil Action No.: 1:25-cv-02329-TWT

## **DEFENDANT NSJP'S MOTION TO DISMISS PLAINTIFF'S**

## **SECOND AMENDED COMPLAINT**

1

**TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................ 7

II.   FACTUAL ALLEGATIONS RELEVANT TO NSJP ................................ 7

III.  STANDARD OF REVIEW ....................................................................... 9

IV.   ARGUMENT ............................................................................................ 10

    A.  Plaintiff Is, at Minimum, a Limited Purpose Public Figure ................... 10

        1.  The SAC Pleads a Public Controversy of Exceptional Salience ...... 10

        2.  Plaintiff Voluntarily Thrust Himself Into That Controversy ............ 11

            a.  Plaintiff's Public Op-Ed About His IDF Service in Gaza .......... 11

            b.  Plaintiff's Prestigious Role in Emory's Leadership is
                Precisely the Arena at Issue ....................................................... 12

        3.  The Challenged Speech is Germane to Plaintiff's Public Role ........ 13

    B.  The SAC Fails to Plausibly Allee Actual Malice by NSJP .................... 15

        1.  Actual Malice Requires Subjective Awareness of Probable
           Falsity, Not Merely Negligence or Hostility .................................. 16

        2.  The SAC's Allegations as to NSJP's State of Mind Are Purely
           Conclusory ..................................................................................... 17

        3.  NSJP's Characterizations Rest on Disclosed, Substantially
           True Facts and Wifely Debated Legal and Moral Judgments .......... 18

        4.  The SAC's Own Ideological Allegations Betray Any Inference
           of Fabrication ................................................................................ 19

    C.  NSJP's Statements Are Protected Opinion and
        Rhetorical Hyperbole ............................................................................ 21

D.  Plaintiff's Civil Conspiracy Claim Fails.................................................. 22

E.  Plaintiff's § 1985(3) Claim Fails.......................................................... 22

 1.  Section 1985(3) Does Not Reach Private Advocacy
   Targeting Rights Protected Only Against State Action................... 23

 2.  Plaintiff Has Not Pleaded Facts Alleging Class-Based Animus ..... 24

 3.  Plaintiff Has Not Alleged an Overt Act by NSJP That
   Deprived Him of Any Cognizable Federal Right............................ 25

F.  NSJP Is Entitled to Dismissal and Fees Under Georgia's
 Anti-SLAPP Statute ................................................................................. 25

 1.  Plaintiff's Claims Against NSJP Arise From Protected
   Petitioning and Free-Speech Activity .............................................. 25

 2.  Plaintiff Cannot Demonstrate a Probability of Prevailing
   Against NSJP ................................................................................... 26

 3.  NSJP Preserves the *Carbone* Issue and Requests Its Fees
   Under §9-11-11.1(b.1) .................................................................... 28

V.  CONCLUSION ................................................................................................ 29

## TABLE OF AUTHORITIES

### CASES

### United States Supreme Court

*Bray v. Alexandria Women's Health Clinic*,
506 U.S. 263, 267–68 (1993) .................................................................. 22,23,24

*Gertz v. Robert Welch, Inc.*,
418 U.S. 323, 339–40, 351 (1974) ........................................................ 10,11,13,19

*Greenbelt Coop. Publ'g Ass'n v. Bresler*, 398 U.S. 6, 13–14 (1970) ................... 19

*Griffin v. Breckenridge*, 403 U.S. 88, 102–03 (1971) .......................................... 23

*Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18–20 (1990) ...................... 10,18,19

*NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 915–16 (1982) ................... 23

*New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964) .......................... 15

*Old Dominion Branch No. 496 v. Austin*, 418 U.S. 264, 283–86 (1974) ......... 19,20

*St. Amant v. Thompson*, 390 U.S. 727, 731 (1968) .......................................... 15,19

*Snyder v. Phelps*, 562 U.S. 443, 458 (2011) ....................................................... 23

### United States Courts of Appeals

*Carbone v. CNN, Inc.*, 910 F.3d 1345 (11th Cir. 2018) ....................................... 28

*Fullman v. Graddick*, 739 F.2d 553,
557 (11th Cir. 1984) .............................................................................................. 22

*Jimenez v. Wellstar Health Sys.*,
596 F.3d 1304, 1312–13 (11th Cir. 2010) .............................................. 22,23,24

*Little v. Breland*, 93 F.3d 755, 757 (11th Cir. 1996) ........................................... 14

*McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036
(11th Cir. 2000) (en banc).................................................................... 21

*Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702–04 (11th Cir. 2016)....... 9,15,17

*Silvester v. Am. Broad. Co.*, 839 F.2d 1491, 1494–95 (11th Cir. 1988)....... *passim*

*Weiland v. Palm Beach Cnty. Sheriff's Off.*, '
792 F.3d 1313 (11th Cir. 2015) ................................................................. 9,17

**United States District Courts**

*Gurmessa v. Genocide Prevention in Ethiopia, Inc.,* No. 21-869-CFC,
2024 U.S. Dist. LEXIS 141596, at *8-9 (D. Del. Aug. 8, 2024),
2024 U.S. Dist. LEXIS 197686, at *3-4 (D. Del. Sep. 11, 2024)..................... 18,20

**Georgia Supreme Court**

*Am. Civil Liberties Union, Inc. v. Zeh*, 864 S.E.2d 422, 426–27 (Ga. 2021).
(anti-SLAPP probability-of-prevailing standard) ................................................. 26

*Wilkes & McHugh, P.A. v. LTC Consulting, L.P.*,
830 S.E.2d 119, 127 (Ga. 2019)................................................................. 26,27,28

**Georgia Court of Appeals**

*Barnwell v. Trivedi*, 898 S.E.2d 250, 255 (Ga. Ct. App. 2024)........................... 28

*Morgan v. Mainstreet Newspapers, Inc.*,
889 S.E.2d 217, 224 (Ga. Ct. App. 2023)....................................................... 27

*Mustaqeem-Graydon v. SunTrust Bank*, 258 G.A. Ap.. 200, 207 (2002) ............ 21

**STATUTES AND RULES**

**Federal Statutes**

42 U.S.C. § 1981 ...................................................................................... 22
.
42 U.S.C. § 1985(3)............................................................................22,23,24,27

## Federal Rules

Fed. R. Civ. P. 12(b)(6)) ............................................................................... 9,27,29

## Georgia Statutes

O.C.G.A. § 9-11-11.1(b) .................................................................................. 26

O.C.G.A. § 9-11-11.1(b.1)) ......................................................................... 29-30

O.C.G.A. § 9-11-11.1(c) ............................................................................... 26-27

## Constitutional Provisions

U.S. Const. amend. I (First Amendment: free speech, petition) ........... 7,15,19,21,23

## I.    INTRODUCTION

"People are simply making valid observations about your tactics, which are un-American and outright fascist. So I have a simple suggestion. If you don't want to be called a fascist regime or secret police, then stop acting like one."

> Statement of Rep. Dan Goldman, House Committee on Homeland Security, Oversight of the Department of Homeland Security: ICE, CBP, and USCIS, 119th Cong. (Feb. 10, 2026)

A wealthy physician has sued an unincorporated group of college students because he doesn't like their opinions.  National Students for Justice in Palestine (NSJP) repeated and amplified an opinion.  What is more, the opinion concerned someone who was at least a limited public figure.  Plaintiff's entire case against NSJP rests on core political advocacy protected by the First Amendment. The Second Amended Complaint ("SAC") fails to state a claim against NSJP on any count and should be dismissed with prejudice.

## II.    FACTUAL ALLEGATIONS RELEVANT TO NSJP

As this court is by now excruciatingly aware of the facts of this case, we limit our narrative to those directly concerning NSJP, which is an unincorporated association supporting over 350 Palestine solidarity organizations across the United States. [SAC ¶16].  Plaintiff alleges NSJP, jointly with Doctors Against

7

Genocide ("DAG"), published two Instagram posts. The first, on January 14, 2025, merely quoted an award winning news show's statement that an unnamed "Emory physician who recently served in the IOF" "participated in aiding and abetting a genocide, in aiding and abetting the destruction of the healthcare system in Gaza and the murder of over 400 healthcare workers." [¶78] The post linked to an Action Network website hosting an email template and telephone script. The linked material urged readers to contact Emory about "Dr. Joshua Winer, who recently served in the Israeli Defense Forces," asking whether "supporting genocide and war crimes" is acceptable at Emory, and calling for investigation of "faculty and students endorsing Israel's apartheid regime." [¶¶87–88]

The second post, on January 29, 2025 expressed the view that "any physician-faculty who served in the IDF these last 16 months perpetuated genocide," criticized Emory for employing Plaintiff, and again linked to the Email Template and Phone Script. [¶¶79(e), 91–95]

The SAC never even hints that NSJP created the statements which were originally broadcast, drafted the petition tools, or took any non-speech action against Plaintiff. NSJP stands accused of posting, sharing, or hyperlinking political speech in coalition with other advocacy organizations. [¶¶77–88, 145–147, 170–181, 195–196]. Nowhere is it alleged that NSJP knew this to be untrue.

8

### III.   STANDARD OF REVIEW

Dismissal under Rule 12(b)(6) is proper where "the facts alleged fail to state a plausible claim for relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is facially plausible when it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable." *Id.* Conclusory allegations that a defendant "knew" statements were false or acted "with malice" are insufficient. *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702–03 (11th Cir. 2016).

The SAC's allegations as to NSJP's state of mind are purely conclusory and impermissibly lump all defendants together. [SAC ¶¶ 164, 182, 195] Such undifferentiated "group pleading" does not satisfy Rule 8's requirement of a short and plain statement showing that *this* defendant is plausibly liable. *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 & n.13 (11th Cir. 2015) This is particularly so here, where as a limited purpose public figure Plaintiff must plead actual malice with non-conclusory facts. Actual malice—knowledge of falsity or reckless disregard—must be pleaded with concrete, non-conclusory facts. *Michel v. NYP Holdings, Inc.*, at 703-704.

Additionally, statements that are opinions or rhetorical hyperbole on matters of public concern are absolutely protected and cannot support defamation or false-

light claims. *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18–20 (1990); *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339–40 (1974).

## IV.    ARGUMENT

### A.    Plaintiff Is, at Minimum, a Limited-Purpose Public Figure

To determine whether a plaintiff is a limited-purpose public figure, courts first "isolate the public controversy" to which the alleged defamation relates. *Silvester v. Am. Broad. Co.*, 839 F.2d 1491, 1494 (11th Cir. 1988). A public controversy exists where an issue "was being debated publicly and if it had foreseeable and substantial ramifications for nonparticipants." *Id.* at 1495.

#### 1.    The SAC Pleads a Public Controversy of Exceptional Salience

The SAC itself makes clear that this case arises out of one of the most contentious public controversies of our time: the nature and legality of Israel's military campaign in Gaza following the October 7, 2023 Hamas attacks, including whether that campaign constitutes "genocide," "war crimes," or "apartheid," and whether U.S. institutions, including universities and medical systems, are "complicit" in that campaign. [SAC ¶¶1–11, 26–35, 41–42, 60–61, 65, 70, 84–88]

Plaintiff's own SAC makes the controversy clear, devoting pages of argument to the questions of "genocide" and "apartheid".  . [¶¶28–29]. Co-defendants' briefs highlight that, independent of this lawsuit, NGOs, UN actors,

and courts have publicly debated whether Israel's Gaza campaign is genocidal, further confirming the existence of a broad public controversy.

By pleading that the challenged speech concerns whether the IDF's Gaza campaign constitutes "genocide," whether participation in that campaign is ethically compatible with medical practice, and whether Emory is "complicit" in these alleged crimes, Plaintiff has pleaded a paradigmatic "public controversy" within the meaning of *Silvester* and *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1974).

### 2.    Plaintiff Voluntarily Thrust Himself Into That Controversy

The second step in the limited-public-figure analysis examines the plaintiff's "involvement in the controversy"—whether he "voluntarily inject[ed] himself or [was] drawn into a particular public controversy" in a way that invites comment. *Silvester*, 839 F.2d at 1494–95. The SAC's allegations leave no doubt that Plaintiff did precisely that.

### a.    Plaintiff's Public Op-Ed About His IDF Service in Gaza

The SAC alleges that on March 7, 2024, "the Times of Israel, an Israeli news outlet, published an op-ed written by the Plaintiff titled, 'An Ongoing Quest to Serve.'" [¶32] In that op-ed, Plaintiff discussed that "following the Hamas-led terror attacks in Israel on October 7, 2023," he "felt a religious, moral, and national

responsibility to protect the Jewish people and the State of Israel" and therefore "took a leave of absence" from Emory to volunteer with the IDF. [¶¶12, 32–35]. Plaintiff admits to serving in the IDF as a surgeon in Gaza with "one of the IDF's elite reconnaissance units" [¶34]. Finally, Plaintiff alleges that  this op-ed is publicly accessible and that a simple internet search of "Who is the Emory professor that served in the IDF?" returns Plaintiff's op-ed as an early result. [¶48 & n.8]

By writing a first-person op-ed in a major public news outlet and going on at some length about his decision to join the IDF in Gaza, in explicitly moral and political terms, Plaintiff voluntarily injected himself into the central controversy— whether the IDF's Gaza campaign is justifiable and what it means for a U.S. medical professor to participate. *See Silvester*, 839 F.2d at 1494–95 (plaintiff who voluntarily injected himself into public controversy held limited public figure). CAIR-Foundation's brief correctly notes that "by writing the op-ed ... Plaintiff injected himself into that exact public controversy," making him a "limited purpose public figure regarding the Israeli-Palestinian conflict."

### b.    <u>Plaintiff's Prestigious Role in Emory's Leadership is Precisely the Arena at Issue</u>

Plaintiff's SAC stresses that he is a professor in the Department of Surgery, Division of Surgical Oncology, at the School of Medicine, and serves as the

Surgical Clerkship Director at the School of Medicine." [¶12].  (Being a Clerkship Director means that he directs the medical training of the doctors there.)

These allegations show that Plaintiff occupies a leadership role in medical education and patient care at a major university—the very setting whose ethics NSJP is publicly debating when it questions whether a physician who served in the IDF's terror campaign in Gaza should teach and treat Emory's students and patients. [¶¶36–38, 50–53, 60–61, 77–88, 120–122].

Plaintiff's own pleading thus establishes that, by virtue of his public op-ed and his prominent institutional role, he is at least a limited-purpose public figure as to the controversy over IDF service, Gaza, and Emory's complicity, "for a limited range of issues" within the meaning of *Gertz*.

### 3.      **The Challenged Speech Is Germane to Plaintiff's Public Role**

The third *Silvester* factor asks whether the alleged defamation is "germane to the plaintiff's participation" in the controversy. (839 F.2d at 1495.) The SAC again shows that the NSJP-related speech Plaintiff challenges focuses on his voluntary service in an IDF unit in Gaza and the implications of that service for his ongoing roles teaching medical students and treating patients at Emory.

For example: The January 14 post describes a reference to "an Emory physician who recently served in the IOF" and quotes Defendant Muhamad's

Democracy Now! statement that he aided and abetted a genocide and "he destruction of the healthcare system in Gaza and the murder of over 400 healthcare workers, and is now back at Emory so-called teaching medical students and residents how to take care of patients." [¶78]. The telephone script does essentially the same. [¶87].

And the email template links this directly to Plaintiff's public role, emphasizing that Plaintiff "has written openly about his participation in a military campaign that has been condemned as a genocide by countless international authorities" and questions the safety of patients and trainees under his care. [¶88]

NSJP's communications address precisely the same subject matter Plaintiff chose to place into public discourse: his IDF service in Gaza and his continued work as a physician and educator at Emory. They are therefore germane to his participation in the controversy and fall within the scope of his limited-purpose public-figure status under *Silvester* and *Little v. Breland*, 93 F.3d 755, 757 (11th Cir. 1996).

As a limited purpose public figure, Plaintiff must prove, and at the pleading stage must plausibly allege, that NSJP acted with "actual malice"—knowledge of falsity or reckless disregard—as to the challenged statements.

14

B.    **The SAC Fails to Plausibly Allege Actual Malice by NSJP**

1.    **Actual Malice Requires Subjective Awareness of Probable Falsity, Not Merely Negligence or Hostility**

For a public or limited-purpose public figure, the First Amendment requires proof that each challenged statement was made "with knowledge that it was false or with reckless disregard of whether it was false or not." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964). Reckless disregard means the speaker "in fact entertained serious doubts as to the truth of his publication." *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968), *Berisha v. Lawson*, 973 F.3d 1304, 1312 (11th Cir. 2020).

In the Eleventh Circuit, at the pleading stage a public-figure plaintiff must allege facts that, if true, make actual malice plausible—not merely recite the "actual malice" formula. *Michel v. NYP Holdings, Inc.*, at 702–03.  Conclusory allegations that a defendant "knew" statements were false or acted "maliciously" are insufficient under *Twombly* and *Iqbal*. *Id.*  NSJP joins its co-defendants who all point out that Plaintiff's SAC relies heavily on such formulaic recitations and fails to plead concrete facts showing any defendant's subjective awareness of probable falsity. The same is true, *a fortiori*, with respect to NSJP.

15

### 2.    The SAC's Allegations as to NSJP's State of Mind Are Purely Conclusory

Although the SAC occasionally asserts that "Defendants" acted "with actual malice" or "knew" statements were false, it offers no non-conclusory facts specific to NSJP's mental state. ." [¶¶164, 182].  Plaintiff never alleges a single fact plausibly showing that NSJP believed the challenged statements were false;

- Any contradictory information NSJP purportedly possessed when it posted or linked the materials; or

- Any facts suggesting NSJP "in fact entertained serious doubts" about the truth of characterizing Plaintiff's IDF service as complicit in "genocide," "war crimes," or "apartheid."

Instead, the SAC itself shows that NSJP:

- Relied on Plaintiff's own Times of Israel op-ed describing his service as a physician in an IDF reconnaissance unit in Gaza and publicizing that fact. [¶¶32–35, 48, 80]

- Operated within a broader advocacy ecosystem (DAG, Emory SJP, CAIR) in which accusations of genocide and apartheid against the IDF were already being made based on widespread reporting about civilian casualties and destruction in Gaza. [¶¶16–21, 65, 70, 77–88, 120–128, 173–181]

16

These allegations are not consistent with a subjective awareness of probable falsity. They show, at most, that NSJP accepted and amplified an activist framing of Plaintiff's publicly acknowledged IDF service—precisely the scenario *Michel* describes as insufficient to support actual malice. 816 F.3d at 703–04, and which *Weiland* abjures conclusory group pleadings.  792 F.3d  at 1323 & n.13.

### 3.     NSJP's Characterizations Rest on Disclosed, Substantially True Facts and Widely Debated Legal and Moral Judgments

Even if some of NSJP's language is treated as factual rather than purely opinion, the SAC still fails to show actual malice because the challenged statements are rooted in substantially true, disclosed facts and in widely aired legal and moral judgments.  The SAC concedes that:

- Plaintiff "volunteered" to serve an "elite reconnaissance unit" operating in the midst of the genocide. [¶¶12, 32–35, 37, 52]

- Plaintiff publicly boasted about this service and its claimed moral significance in a Times of Israel op-ed. [¶¶32–35, 48]

- International bodies and human-rights organizations have, at a minimum, debated whether Israel's Gaza campaign constitutes "genocide," as CAIR-GA details with citations to reports and court decisions. [¶65]

17

Against this backdrop, NSJP's statements—that Plaintiff "participated in aiding and abetting a genocide," that any physician-faculty serving in the IDF "perpetuated genocide," and that Emory is "supporting genocide and war crimes" by employing him [¶¶78–79(e), 87–88]—are value-laden characterizations of his undisputed conduct, expressed in the vocabulary of an ongoing, global debate.

When a speaker discloses the underlying facts and offers a moral or legal excuse for them, courts treat that excuse or conclusion as non-actionable opinion. *Milkovich*, 497 U.S. at 18–20. CAIR-Georgia persuasively argues that whether Israel is committing "genocide" is not an objectively verifiable fact but a contested legal and moral conclusion, analogous to the statements held non-actionable in *Gurmessa v. Genocide Prevention in Ethiopia, Inc.* No. 21-869-CFC, 2024 U.S. Dist. LEXIS 141596, at *8-9 (D. Del. Aug. 8, 2024), aff'd in relevant part, at 2024 U.S. Dist. LEXIS 197686, at *3-4 (D. Del. Sep. 11, 2024)

### 4.    The SAC's Own Ideological Allegations Betray Any Inference of Fabrication

The SAC's own ideological allegations betray Plaintiff's claim of fabrication. Plaintiff describes NSJP as an "anti-Zionist movement" that views the "Zionist entity" as "fundamentally expansionist, colonial, and genocidal." [¶16] These allegations show deep political opposition to Zionism and the IDF. They do not show that NSJP thought its statements were false.

18

Under *St. Amant*, actual malice is not established by ill will or hostility; it turns on the defendant's "serious doubts" about truth. 390 U.S. at 731. The SAC alleges hostility but not those doubts.

**C.**   **NSJP's Statements Are Protected Opinion and Rhetorical Hyperbole**

Under the First Amendment, there is "no such thing as a false idea." *Gertz*, 418 U.S. at 339–40. To be actionable, a challenged statement must be reasonably understood as asserting a provably false factual assertion about the plaintiff. *Milkovich*, 497 U.S. at 18–20.

Georgia courts and the Supreme Court have repeatedly held that "imaginative expression" and "rhetorical hyperbole"—especially in political disputes—are constitutionally protected. *See Greenbelt Coop. Publ'g Ass'n v. Bresler*, 398 U.S. 6, 13–14 (1970) (use of "blackmail" in zoning dispute non-actionable hyperbole); *Old Dominion Branch No. 496 v. Austin*, 418 U.S. 264, 283–86 (1974) (use of "traitor" in union literature protected).

As CAIR-GA explains, speech about "genocide," "apartheid," and "war crimes" in the Israel-Palestine context is paradigmatic political speech, raising moral and legal questions reasonable people vigorously dispute. The SAC attributes to NSJP, through joint posts and links, statements that: (1) adopt Mohammad's Democracy Now! characterization; (2) link to scripts calling Plaintiff

19

someone who "recently served in the Israeli Defense Forces" and asking whether "supporting genocide and war crimes" is acceptable; and (3) declare that "any physician-faculty who served in the IDF these last sixteen months perpetuated genocide." [¶¶78–88]

In each instance, NSJP's statements are explicitly grounded in Plaintiff's admitted IDF service in Gaza, his public op-ed, and widely reported allegations that the IDF's Gaza campaign is genocidal. NSJP then draws the movement's harshest moral conclusion: that participation amounts to "aiding and abetting genocide."

This is precisely the type of "subjective view, an interpretation, a theory, conjecture, or surmise" that courts hold to be non-actionable opinion. *See Gurmessa* (holding "openly supports genocide" statement non-actionable opinion). NSJP's rhetoric reflects a contested interpretation of disclosed facts, not a verifiable assertion that Plaintiff has been convicted of a specific crime.

The context in which the statements were made further establishes their character as hyperbole. The statements appear as Instagram graphics, captions, and activist call-to-action scripts for contacting Emory administrators. [¶¶77–88, 145–147, 173–181] In student-movement advocacy on social media about a widely covered war, reasonable readers anticipate "vigorous epithets," "exaggeration," and "emotional rhetoric." *Old Dominion*, 418 U.S. at 284. Plaintiff himself

acknowledges these views as "political views," "political rhetoric," and "political propaganda." [¶¶27, 30–31]

Because NSJP's challenged speech concerns a matter of undeniable public concern; is rooted in disclosed, substantially true facts; and constitutes political opinion and rhetorical hyperbole, the First Amendment bars Plaintiff's defamation and false-light claims as a matter of law.

### D.    Plaintiff's Civil-Conspiracy Claim Fails

Under Georgia law, "absent the underlying tort, there can be no liability for civil conspiracy." *Mustaqeem-Graydon v. SunTrust Bank*, 573 S.E.2d 455, 461 (Ga. Ct. App. 2002). The Eleventh Circuit likewise holds that "the gist of the action is not the conspiracy alleged but the wrong committed." *McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir. 2000) (en banc).

Plaintiff's civil-conspiracy count (Count III) is expressly derivative of his failed defamation and false-light theories. [SAC ¶¶170–181] Because the SAC fails to state a claim for defamation or false light against NSJP, the conspiracy claim necessarily fails. *Mustaqeem-Graydon*, 573 S.E.2d at 461.

Even assuming *arguendo* that some underlying tort claim survives against another defendant, the conspiracy claim fails as to NSJP because Plaintiff has not pleaded facts showing an actual "agreement" to commit any unlawful act. The SAC's allegations of "coordination" among advocacy groups (joint Instagram

posts, shared petition tools) describe standard coalition advocacy, not a specific agreement to publish defamatory falsehoods. Courts routinely reject such generalized "parallel conduct" as insufficient. *Fullman v. Graddick*, 739 F.2d 553, 557, (11th Cir. 1984).

### E.      Plaintiff's § 1985(3) Claim Fails

#### 1.      Section 1985(3) Does Not Reach Private Advocacy Targeting Rights Protected Only Against State Action

Where alleged conspirators are private actors, a § 1985(3) plaintiff may recover only for conspiracies aimed at rights "protected against private, as well as official, encroachment," such as the right to interstate travel and the right to be free from involuntary servitude. *Jimenez v. Wellstar Health Sys.*, 596 F.3d 1304, 1312 (11th Cir. 2010) (quoting *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267–68 (1993)). In the Eleventh Circuit conspiracies to violate rights protected by 42 U.S.C. § 1981 or Title VII cannot serve as the predicate for § 1985(3) claims against private actors. *Jimenez*, 596 F.3d at 1312–13.

Plaintiff's § 1985(3) theory against NSJP rests entirely on speech: joint posts, scripts, and petitions urging Emory to investigate or discipline him. [¶¶189–197] Plaintiff nonetheless insists that NSJP conspired to deprive him of rights under § 1981, Title VI, and Title VII by "targeting Plaintiff for expressing his Zionism" and pressuring Emory regarding his employment. [¶¶189–193] This is

22

precisely the kind of attempt to use § 1985(3) as an all-purpose speech-restriction tool that *Bray* and *Jimenez* forbid.

Moreover, imposing § 1985(3) liability on NSJP for engaging in core political advocacy—including criticism of a public-controversy participant and petitions to a university—would itself violate the First Amendment. *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 915–16 (1982) (boycotts, advocacy, and petitioning activity protected; civil-rights statutes cannot be construed to penalize such speech absent unprotected conduct); *Snyder v. Phelps*, 562 U.S. 443, 458 (2011).

### 2. <u>Plaintiff Has Not Pleaded Facts Alleging Class-Based Animus</u>

Plaintiff also fails to allege "class-based, invidiously discriminatory animus." *Griffin v. Breckenridge*, 403 U.S. 88, 102–03 (1971). He characterizes NSJP's actions as driven by its anti-Zionist political ideology and opposition to the IDF. [¶16, ¶59, ¶109] Courts have consistently rejected attempts to treat political or ideological opposition—whether to Zionism, foreign ethnostates, or particular wars—as the sort of "class-based" animus § 1985(3) targets.

Even assuming Plaintiff adequately alleges animus based on his Jewish identity (which NSJP disputes), his § 1985(3) claim still founders on the independent defects described above: it seeks to punish private political advocacy

23

and rests on predicates (Title VI, Title VII, § 1981) that do not support § 1985(3) liability against private actors. *Jimenez*, 596 F.3d at 1312–13.

### 3. Plaintiff Has Not Alleged an Overt Act by NSJP That Deprived Him of Any Cognizable Federal Right

Finally, § 1985(3) requires an "act in furtherance of the conspiracy" whereby the plaintiff is "injured" in person or property or "deprived of any right or privilege of a citizen of the United States." *Bray*, 506 U.S. at 268. The only "acts" the SAC attributes to NSJP are speech acts: publishing or co-publishing social-media posts, linking to scripts, and participating in a public campaign urging Emory to act. [¶¶77–88, 145–147, 173–181, 195–196]

The SAC does not allege that NSJP itself took any employment action against Plaintiff, denied him any benefit, or otherwise exercised power over his legal rights; at most, it alleges NSJP tried to persuade Emory to take action. [¶¶84–88, 136–137, 195–196] That is constitutionally protected petitioning activity, not an actionable "deprivation" of rights by NSJP. *Claiborne Hardware*, 458 U.S. at 915–16.

For all these reasons, Count IV should also be dismissed with prejudice as to NSJP.

**F.    NSJP Is Entitled to Dismissal and Fees Under Georgia's Anti-SLAPP Statute**

Not only must Plaintiff's claims against NSJP be dismissed; to the extent Georgia's anti-SLAPP statute, O.C.G.A. § 9-11-11.1, applies to this federal action, NSJP is entitled to its reasonable attorneys' fees and expenses. NSJP expressly joins and incorporates by reference CAIR-Foundation's anti-SLAPP arguments and authorities.

**1.    Plaintiff's Claims Against NSJP Arise From Protected Petitioning and Free-Speech Activity**

Georgia's anti-SLAPP statute applies to "any claim" arising from an act "in furtherance of the right of petition or free speech under the Constitution of the United States or the Constitution of the State of Georgia in connection with an issue of public interest or concern." O.C.G.A. § 9-11-11.1(b). This expressly includes "[a]ny written or oral statement or writing or petition made in a place open to the public or a public forum in connection with an issue of public interest or concern." *Id.* § 9-11-11.1(c).

As CAIR-Foundation rightly notes, claims targeting social-media posts about the Israeli-Palestinian conflict "involve[] the re-sharing of [a] Statement ... on Instagram, a public forum," and thus are "paradigmatic protected activity under O.C.G.A. § 9-11-11.1." The same is true here, *a fortiori*, as to NSJP:

25

- Every act Plaintiff attributes to NSJP is **speech**: joint Instagram posts with DAG, captions, comments, and hyperlinks to petition tools (an Action Network email template and phone script) urging members of the public to contact Emory about Plaintiff's IDF service and Emory's alleged complicity. [SAC ¶¶77–88, 145–147, 170–181, 195–196]

- Those communications took place on Instagram and Action Network—quintessential "public forum" platforms—and concern issues at the core of public debate: the IDF's conduct in Gaza, allegations of genocide and war crimes, and the obligations of U.S. universities and medical institutions. [¶¶1–11, 16, 32–38, 41–42, 60–61, 65, 70, 84–88]

Under *Wilkes & McHugh, P.A. v. LTC Consulting, L.P.*, 830 S.E.2d 119 (Ga. 2019), and *Am. Civil Liberties Union, Inc. v. Zeh*, 864 S.E.2d 422 (Ga. 2021), the first step in the anti-SLAPP analysis is thus satisfied: NSJP's alleged conduct is squarely within § 9-11-11.1(c).

## 2. <u>Plaintiff Cannot Demonstrate a Probability of Prevailing Against NSJP</u>

Once the defendant makes this threshold showing, Georgia courts require the plaintiff to "establish[] there is a probability that [he] will prevail on the claim." *Zeh*, 864 S.E.2d at 426–27 (interpreting § 9-11-11.1). CAIR-Foundation explains that the court must "look to the evidence from the moving party to determine if it

defeats the [plaintiff's] showing as a matter of law." *Morgan v. Mainstreet Newspapers, Inc.*, 889 S.E.2d 217, 224 (Ga. Ct. App. 2023).

For the reasons set out in NSJP's Rule 12(b)(6) arguments and those of its co-defendants:

- As a limited purpose public figure Plaintiff must establish *right now* that he will probably prevail in his claim that NSJP recklessly disregarded serious doubts about the truth of its statements.

- The defamation and false-light claims fail because the challenged NSJP speech is protected opinion and rhetorical hyperbole on matters of public concern, not provably false factual assertions, and because Plaintiff is at least a limited-purpose public figure who has not plausibly alleged actual malice.

- The civil-conspiracy and § 1985(3) prevail despite NSJP's lack of malice, despite its expression of opinion in a highly charged political context, and despite the constitutional armor surrounding political speech.

Thus, even if the Court considers materials beyond the pleadings for anti-SLAPP purposes, Plaintiff cannot show a "probability" of prevailing against NSJP on any claim. *See Wilkes*, 830 S.E.2d at 127 (plaintiff must make a prima facie showing sufficient to sustain a favorable judgment).

27

Because NSJP's alleged conduct constitutes protected petitioning/free-speech activity and Plaintiff has no probability of success, § 9-11-11.1 requires dismissal of the claims against NSJP "arising from" that activity.

### 3.    NSJP Preserves the *Carbone* Issue and Requests Its Fees Under § 9-11-11.1(b.1)

NSJP acknowledges the Eleventh Circuit's decision in *Carbone v. CNN, Inc.*, 910 F.3d 1345 (11th Cir. 2018), addressing the interplay between Georgia's anti-SLAPP statute and the Federal Rules in federal-court proceedings. NSJP joins CAIR-Foundation in raising O.C.G.A. § 9-11-11.1 and its fee-shifting provision to preserve these issues for appellate review, while respectfully submitting that the statute's substantive protections—including its mandatory fee remedy—may properly be applied here.

Section 9-11-11.1(b.1) provides that, when a claim is dismissed under the statute, "the court shall award the moving party attorney's fees and expenses of litigation" unless the plaintiff establishes that the action was substantially justified or that special circumstances make an award unjust. Georgia courts treat this fee award as mandatory. *Wilkes*, 830 S.E.2d at 127; *Barnwell v. Trivedi*, 898 S.E.2d 250, 255 (Ga. Ct. App. 2024).

Here, Plaintiff's claims against NSJP "target protected speech and burden [an] organization[] ... with meritless claims based on mere participation in public

28

discourse." There is no plausible basis to find the SAC "substantially justified" as to NSJP's political speech, nor any "special circumstances" that would make a fee award unjust.

Accordingly, to the extent the Court finds § 9-11-11.1 applicable, NSJP respectfully requests: (1) dismissal of all claims against it pursuant to O.C.G.A. § 9-11-11.1; and (2) an award of its reasonable attorneys' fees and litigation expenses under O.C.G.A. § 9-11-11.1(b.1), with the amount to be determined upon submission of appropriate billing records.

## V.    CONCLUSION

For the foregoing reasons, NSJP respectfully requests that the Court:

1.     Dismiss all claims against NSJP with prejudice pursuant to Fed. R. Civ. P. 12(b)(6);

2.     To the extent applicable, dismiss all claims pursuant to O.C.G.A. § 9-11-11.1 and award NSJP its reasonable attorneys' fees and litigation expenses under O.C.G.A. § 9-11-11.1(b.1); and

3.     Grant such other and further relief as the Court deems just and proper.

Dated: March 18, 2026

Respectfully submitted,

*/s/ Amir Naim*
_____

Amir Naim (GA Bar #423232)
P.O Box 48013
Atlanta GA  30362
404-444-9189
amirnaim@27@gmail.com

*/s/ Mark Kleiman*
_____

Mark Kleiman (Cal. SBN 115919)
*(admitted pro hac vice)*
KLEIMAN / RAJARAM
12121 Wilshire Blvd., Ste. 810
Los Angeles, CA  90025
Tel:310-392-5455
Fax: 310-306-8491
mark@krlaw.us

Counsel for SEAN EREN on behalf
of  NATIONAL STUDENTS FOR
JUSTICE IN PALESTINE

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.1(D), I certify that the foregoing has been prepared in

compliance with Local Rule 5.1(B) in Times New Roman 14-point typeface.


Dated:  March 18, 2026

*/s/ Mark Kleiman*

_____

Mark Kleiman (Cal. SBN 115919
(*admitted pro hac vice*)
KLEIMAN RAJARAM
12121 Wilshire Blvd.  Suite 810
Los Angeles, California 90025
Tel:  310 392-5455
Fax: 310 306-8491
mark@krlaw.us

31