**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| Joshua Winer,<br><br>　　　　Plaintiff,<br><br>v.<br><br>Umaymah Mohammad, AJP Educational Foundation, Inc. A/K/A American Muslims for Palestine, WESPAC Foundation, Inc., Sean Eren as the representative of National Students for Justice in Palestine, Doctors Against Genocide Society, CAIR-Nga Inc. A/K/A CAIR-Georgia, CAIR Foundation Inc., A/K/A Council on Islamic Relations or CAIR, Rupa Marya, Ibrahim Jouja as representative of Emory Students for Justice in Palestine.<br><br>　　　　Defendants. | Case No. 1:25-CV-02329 |

**CAIR-NGA, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS
PLAINTIFF'S SECOND AMENDED COMPLAINT**

Defendant CAIR-Nga, Inc., A/K/A CAIR-Georgia ("CAIR-Georgia"), hereby files this Reply in Support of its Motion to Dismiss Plaintiff's Second Amended Complaint ("SAC") (Dkt. 130), and in response to the arguments set forth in Plaintiff Joshua Winer's Opposition Brief ("Opp." or "Opposition") (Dkt. 150).

**INTRODUCTION**

Dr. Winer's defamation claims are predicated on statements that arose within the context of a heated political debate, regarding a matter of the utmost public concern, and cast in non-factual language. In his Opposition, he disregards the context of the

1

statements, ignore the political climate in which they were made, and assigns factual meaning where none existed. His defamation and false light claims therefore fail, and as a result his civil conspiracy claim must also fail. Further, Dr. Winer has not alleged a proper predicate for his § 1985(3) claim, nor has he plausibly alleged racial animus. Either defect is fatal, and thus his § 1985(3) claim must fail.

### A. The defamation and false light claims fail.

#### 1. The statements were made about a matter of public concern.

Dr. Winer does not dispute that the statements at issue involve a matter of public concern. Rather, he asserts that the Court may not consider the public-concern status of the statements at the motion-to-dismiss stage. Opp. at 8. He asserts that because he alleged the statements to be false, the court must accept as fact that the statements are false. *Id.*

Dr. Winer's argument is premised on two incorrect legal points. First, the typical 12(b)(6) standard is not applied in libel cases. *See DeKalb Motor Escort v. Verizon Commc'ns Inc.,* 2005 U.S. Dist. LEXIS 57590, at *10 (N.D. Ga. Sep. 27, 2005) (Under the substantive law of Georgia, "a claim sounding in libel is a traditionally disfavored cause of action . . . [and] the courts tend to construe the complaint by a somewhat stricter standard.") (quoting *Willis v. United Family Life Ins.,* 226 Ga. App. 661, 662 (1997)). Second, a district *can* determine whether a statement is true or false at the motion-to-dismiss stage. *See Adventure Outdoors, Inc. v. Bloomberg,* 552 F.3d 1290, 1298 (11th Cir. 2008) (reiterating that it is plaintiff's burden to prove falsity in case involving 12(b)(6) dismissal).

**2. The statements at issue are not provably false statements of fact.**

Dr. Winer asks this Court to find that the statements at issue are provably false statements of fact. Opp. at 9. Specifically, he states:

> By accusing Dr. Winer, personally, of genocide, war crimes, the destruction of a healthcare system, and murder—and using those accusations to demand his termination—CAIR-GA made specific factual allegations of criminal conduct against an identifiable private individual and tried to hold him personally accountable for them. . . The SAC alleges that CAIR-GA's statements are false because Dr. Winer did not commit genocide, war crimes, murder, or participate in the destruction of a healthcare system.

Opp. at 10. Dr. Winer mischaracterizes the actual wording of the statements at issue, removing context, failing to acknowledge conjecture, and casting what are clearly non-provable statements as though they were factual. Indeed, every statement alleged against CAIR-Georgia is either true, or it is hyperbolic, conjecture, or otherwise non-actionable opinion.

**a. Dr. Winer must show that the statements are provably false.**

When a libel claim involves speech of public concern, "a plaintiff must show that the defamatory statement was false." *Aventure Outdoors,* 552 F3d at 1298 (quoting *Mathis v. Cannon*, 276 Ga. 16, 21 (2002)). A defamation claim can only proceed in the case of a provably false statement of fact because "a statement that reflects an opinion or subjective assessment, as to which reasonable minds could differ, cannot be proved false." *Cottrell v. Smith*, 299 Ga. 517, 523 (2016).

### b. The context indicated that the statements were non-literal opinion.

Context is critical. "[B]oth the Supreme Court and this Court of Appeals have long recognized that a defamation claim may not be actionable when the alleged defamatory statement is based on non-literal assertions of 'fact.'" *Horsley v. Rivera*, 292 F.3d 695, 701 (11th Cir. 2002). "This provides assurance that public debate will not suffer for lack of 'imaginative expression' or the 'rhetorical hyperbole' which has traditionally added much to the discourse of our Nation." *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990). The inquiry is whether a reasonable person would perceive the statement to be asserting a literal fact. *See Greenbelt Coop. Publ'g Ass'n v. Bresler,* 398 U.S. 6, 13-14 (1970) (finding no statement of fact when "[n]o reader could have thought" that words were literally factual); *Horsley* 292 F.3d at 701 (finding no statement of fact where "no reasonable viewer" would have concluded that statement at issue was factual).

As stated in the leading treatise on defamation, "[p]otentially defamatory statements in the guise of statements of fact uttered during a bitter political debate are particularly likely to be understood to be rhetorical opinion,"[1] as are statements

---

[1] In support of this assertion from *Sack on Defamation,* FN 105, reproduced from the treatise verbatim*: Harris v. Warner*, 255 Ariz. 29, 527 P.3d 314, 319 (2023) (holding that talk radio host's statements suggesting, among other things, that a candidate and his supporters were "frightening" and "unhinged" thugs did not imply objective facts about the candidate); *Koch v. Goldway*, 817 F.2d 507, 14 Media L. Rep. (BNA) 1213 (9th Cir. 1987) (opponent allegedly suggested to be a Nazi war criminal); Arrington v. Palmer, 971 P.2d 669 (Colo. Ct. App. 1998); *Pullum v. Edwin Mac Johnson & Faith Bible Coll., Inc.*, 647 So. 2d 254 (Fla. Dist. Ct. App. 1994) (broadcast reference to plaintiff proponent of legalized alcohol sales in county as "drug pusher" is nonactionable rhetorical hyperbole); *Mast v. Overson*, 971 P.2d 928 (Utah Ct. App. 1998) (heated public debate about development of golf

4

"uttered as a time of high emotion, such as personal grief," which are "likely to be understood as expressions of rage rather than assertions of fact,"[2] as well as "statements made during the course of an ongoing public controversy."[3] Robert D. Sack, *Sack on Defamation: Libel, Slander, and Related Problems* § 4: 3. 1 (5th ed. 2023).

*All* such circumstances are present here. The statements at issue were made in the broader context of the international debate over a war resulting in the death of tens of thousands of Palestinian civilians, and within the context of the more localized debates over Dr. Winer's self-publicized IDF service, his subsequent role teaching Palestinian-American students, and the propriety of Umaymah Mohammad's suspension from medical school over her advocacy speech. Within

---

course); *Hoppe v. Hearst Corp.*, 53 Wash. App. 668, 770 P.2d 203, 207, 16 Media L. Rep. (BNA) 2076 (1989) (satirical column during political campaign questioning plaintiff's use of public funds to hire private detective protected).

[2] In support of this assertion from *Sack on Defamation,* FN 106, reproduced from the treatise verbatim: *Gonzalez v. Gray*, 69 F. Supp. 2d 561 (S.D.N.Y. 1999), aff'd, 216 F.3d 1072 (2d Cir. 2000); *see also Jorg v. Cincinnati Black United Front*, 153 Ohio App. 3d 258 (2003) (assertion that plaintiff police officer had "killed" an African-American person who died in police custody, where officer had been tried but not convicted of killing, made in the course of activists' appeal for performers to boycott the city by whom officer was employed because of alleged police brutality, was hyperbole protected under Ohio's categorical protection for opinion even though statement could reasonably be interpreted as a statement of fact).

[3] In support of this assertion from *Sack on Defamation,* FN 107, reproduced from the treatise verbatim: *Weyrich v. New Republic*, 235 F.3d 617, 624, 29 Media L. Rep. (BNA) 1257 (D.C. Cir. 2001); *Dworkin v. Hustler Mag., Inc.,* 867 F.2d 1188, 16 Media L. Rep. (BNA) 1113 (9th Cir.) (pornography), cert. denied, 493 U.S. 812 (1989); *Baird v. Roussin*, 6 Media L. Rep. (BNA) 1555 (D. Mass. 1980) (abortion).

5

this context, Ms. Mohammad was speaking at a press conference hosted by a Muslim advocacy organization in the immediate aftermath of her suspension from medical school. *See* SAC ¶¶ 49, 61. Her statements were later republished as part of a political petition to reinstate her as a medical student, circulated on the website of a Muslim advocacy group. *Id.* ¶ 124. Any individual who encountered the statements at issue here would be presented with every contextual indicator that Ms. Mohammad's statements were political statements prompted by moral and emotional outrage – in other words, not literal. Dr. Winer ignores these obvious contextual clues, assuming without basis that anyone encountering the statements at issue took them literally.

### c.  Speculation is not a statement of fact.

Dr. Winer also ignores the clear signals that, in many cases, the statements at issue are conjectural. Conjecture is not an actionable false fact. *See Collins v. Cox Enters.*, 215 Ga. App. 679, 680 (1994) (statement not actionable because it "does not imply an assertion of objective fact that might be proved false; rather, it is merely speculation"); *Partington v. Bugliosi*, 56 F.3d 1147, 1156 (9th Cir. 1995) (when allegedly defamatory statement is "speculat[ion] on the basis of the limited facts available," it is non-actionable); *Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1227 (7th Cir. 1993) ("[I]f it is plain that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts, the statement is not actionable."); *Gray v. St. Martin's Press, Inc.*, 221 F.3d 243, 250 (1st Cir. 2000) (If "the statement is properly understood as purely speculation or, alternatively, implies that the speaker or writer

6

has concrete facts that confirm or underpin the truth of the speculation" it is not actionable); *Gascard v. Hall*, 175 N.H. 462 (2022) (a "statement, couched as conjecture, does not imply it is grounded on undisclosed defamatory facts.").

### d. The term "genocide" is not factual.

Dr. Winer asserts that the *Gurmessa v. Genocide Prevention in Ethiopia, Inc.,*[4] case is irrelevant because it concerned an accusation of *supporting* genocide, whereas the present case concerns accusation of *aiding in* an army that committed genocide. Opp. at 11. Dr. Winer misses the point. The *Gurmessa* opinion followed the same reasoning CAIR-Georgia asserts here, finding that the term "genocide" was "an amorphous phrase," "not objectively verifiable as true or false." CAIR-Georgia did not assert that the *facts* were identical; rather it asserted that the *reasoning* was persuasive and on point.

### e. No statement asserted against CAIR-Georgia is actionable.

The below table identifies each statement asserted against CAIR-Georgia and the specific analysis as to its failure to include a provably false statement of fact.

| | |
|---|---|
| "The man participated in *aiding and abetting* a genocide, in *aiding and abetting* the destruction of the healthcare system in Gaza and the murder of over 400 healthcare workers." SAC ¶ 35 (emphasis added). | Dr. Winer does not dispute that he served in the IDF, or that the IDF was responsible for the death of 400 healthcare workers or the destruction of Gaza's healthcare system. To the extent his IDF service constitutes "aiding and abetting," within the lay meaning of these words, he could not factually prove that his IDF service was not "aiding or abetting" the actions of |

---

[4] 2024 U.S. Dist. LEXIS 141596 at *17 (D. Del. Aug. 8, 2024) (*adopted in relevant part at Gurmessa v. Genocide Prevention in Ethiopia, Inc.,* 2024 U.S. Dist. LEXIS 197686, at *4 (D. Del. Sep. 11, 2024).

| | |
|---|---|
| | the IDF, or at least that such was not substantially true. |
| "I cannot learn from a physician who *might have* fired one of 355 bullets that landed in [a child's] body." *Id.* ¶¶ 61-62 (emphasis added). | Dr. Winer does not dispute that he served in the IDF, or that the IDF was responsible for a child killed with 355 bullets. This statement is not an assertion of fact, but theoretical speculation based on the disclosed fact that Dr. Winer served in the IDF. |
| The physician "*might have* helped make the decision to bomb one of the hospitals." *Id.* (emphasis added). | Dr. Winer does not dispute that he served in the IDF, or that the IDF bombed hospitals. This statement is not an assertion of fact, but theoretical speculation based on the disclosed fact that Dr. Winer served in the IDF. |
| The physician "*might have* celebrated the murder of our communities on the rubble still wet with Palestinian blood." *Id.* (emphasis added). | Dr. Winer does not dispute that he served in the IDF, or that the IDF killed tens of thousands of Palestinians. This statement is not an assertion of fact, but theoretical speculation based on the disclosed fact that Dr. Winer served in the IDF. |
| Emory "faculty and students have joint[ly] support[ed] Israel's perpetration of war crimes." *Id.* ¶ 122. | This statement contains no assertion regarding Dr. Winer. |
| "A Palestinian medical student [] specifically joined the field trying to understand inequities and the role of medicine in violence. To have to work side by side with an IDF soldier is exacerbating, and makes it uniquely painful for her." *Id.* ¶ 128. | This statement contains no statement of fact about Dr. Winer other than that he is an "IDF soldier," which is indisputably true. That Ms. Mohammad has had a "painful" experience is an opinion about Ms. Mohammad, not Dr. Winer. |
| Dr. Winer's presence makes "black and brown medical students feel unsafe" and "black and brown indigenous patients feel unsafe." *Id.* ¶¶ 61–64, 120. | Nothing within this statement contains a false statement of fact, as Dr. Winer cannot prove that brown students feel safe with him. Rather, this is hyperbolic opinion based on the disclosed fact of Dr. Winer's IDF service. |

8

In summary, no statement asserted against CAIR-Georgia contains a provably false statement of fact. Moreover, all of these statements were made on the platform of a Muslim advocacy group, within the context of heated debates regarding genocide, faculty IDF service, the limits of free speech within a university setting, and the suspension of a prominent student. No reasonable person would interpret any statements at issue here as suggesting that Dr. Winer is an actual criminal. His defamation and false light claims therefore fail. *See S & W Seafoods Co. v. Jacor Broad. of Atlanta,* 194 Ga. App. 233, 237 (1989) ("[A] constitutionally privileged statement of opinion cannot form the basis of a claim for invasion of privacy by placing a person in a false light.").

**B. Dr. Winer Failed to State a Claim Under 42 U.S.C. § 1985(3).**

Dr. Winer's Amended Complaint fails to state a § 1985(3) claim for two independent reasons: (1) he failed to identify any right protected against private impairment that can support a § 1985(3) claim; and (2) he failed to plausibly plead racial animus. Either defect alone is fatal. Count IV must be dismissed.

**1. Dr. Winer Failed to Identify a Cognizable Right Under § 1985(3).**

**a. Section 1981**

Dr. Winer's § 1981 theory fails as a matter of binding precedent. The Eleventh Circuit held: "[W]e hold conspiracies to violate rights protected under § 1981 are likewise insufficient to form the basis of a 1985(3) claim." *Jimenez v. WellStar Health Sys.*, 596 F.3d 1304, 1312 (11th Cir. 2010). Dr. Winer argues that CAIR-

Georgia's reliance on this established precedent "overreads existing precedent and ignores the materially different posture of this case."[5] Opp. at 19–20.

Dr. Winer's sole attempt to evade *Jimenez* rests on the quotation above being dictum. *Id.* at 20. The plain text of the holding belies this argument: the court states what it "hold[s]," and it does so directly. *Jimenez*, 596 F.3d at 1312. Even still, Dr. Winer argues that the holding is merely dictum, offering that the subsequent sentence contains the actual holding: "Further, even if interference with contract and property rights could sustain a § 1985(3) claim, Jimenez has not adequately pled interference with any such rights here." Opp. at 20.

Contrary to Dr. Winer's argument, the Eleventh Circuit's holding that § 1981 cannot serve as the basis for a § 1985(3) claims was necessary to the result the Court reached. The district court dismissed the § 1985(3) and directed defendants to answer, ending the § 1985(3) theory as pled. *Jimenez v. Wellstar Health Sys.*, 2008 U.S. Dist. LEXIS 130159, at *38 (N.D. Ga. Nov. 25, 2008). On appeal, the Eleventh Circuit affirmed the dismissal by holding that § 1981 rights cannot serve as the basis for a § 1985(3) conspiracy. *Jimenez*, 596 F.3d at 1312. If the Eleventh Circuit had only held that Jimenez "ha[d] not adequately pled interference with any such rights here," the plaintiff could have sought leave to replead interference and revive the theory. The Eleventh Circuit did not leave that door open. Its holding forecloses § 1981 as a predicate for § 1981(3) claims.

---

[5] It is unclear what the "materially different posture of this case" is compared to *Jimenez v. Wellstar Health Systems*. In *Jimenez*, the Eleventh Circuit considered whether a motion to dismiss was properly granted. Jimenez, 596 F.3d at 1313. The instant case is currently at the motion to dismiss phase.

### b. Title VII

*Jimenez* also forecloses Title VII as a predicate right against private conspirators, holding that Title VII rights are "insufficient to form the basis of § 1985(3) actions against private conspirators." *Id.* Dr. Winer correctly notes that *Jimenez* relied in part on *Novotny*, but *Jimenez* did not rely on *Novotny* alone. The court also emphasized that Supreme Court "has been conservative in designating which rights litigants may enforce against private actors under § 1985(3)" and affirmed dismissal on that basis as well. *Id.*

Moreover, where "the alleged § 1985(3) conspirators are private actors," a plaintiff may only recover for conspiracies that were "aimed at rights constitutionally protected against private impairment." *Id.* Title VII cannot serve as the basis for a § 1985(3) claim because, as applied, it does not implicate rights *constitutionally* protected against private impairment.[6] Dr. Winer grounds his Title VII theory in 42 U.S.C. § 2000e-2(a)(1). SAC at ¶ 189. That statute rests on Congress's Commerce Clause authority. *See Krauss v. Sacramento Inn*, 314 F. Supp. 171, 176 (E.D. Cal. 1970) ("I assume without deciding that 42 U.S.C.A. § 2000e-2(a)(1) (1970), is a valid exercise of Congress' power under the Commerce Clause."). The commerce clause does not create rights "constitutionally protected

---

[6] Dr. Winer failed to respond to this core argument raised in CAIR-Georgia's Motion to Dismiss (Dkt. 140-1 at 18), and thus it has abandoned this portion of its claim. *See Richards v. Childers*, 2019 WL 13227187, at *1 (N.D. Ga. July 18, 2019) (collecting cases) ("[W]hen an argument is raised that a claim is subject to dismissal, and the non-moving party fails to respond to such an argument, such claims are deemed abandoned.").

11

against private impairment," so Title VII cannot serve as the basis for a § 1985(3) claim against private actors.

### c. Title VI

Dr. Winer's asserts § 1985(3) liability predicated on Title VI under two theories: (1) CAIR-Georgia's alleged conspiracy to induce Emory to terminate Dr. Winer (the "Emory Theory") and (2) CAIR-Georgia's alleged conspiracy with CAIR-Foundation (the "CAIR-Foundation Theory"). (SAC ¶¶ 192–93). As an initial matter, Dr. Winer failed to respond to CAIR-Georgia's arguments that it cannot be liable under the CAIR-Foundation Theory (Dkt. 140-1, pp. 19–20). Thus, he has abandoned this theory of the claim against CAIR-Georgia.[7]

Dr. Winer offers two points on the Emory Theory. First, he claims the *Jones* case cited by CAIR-Georgia is distinguishable because it involves a direct Title VI claim, not a § 1985(3) claim based on Title VI. (Opp. at 18–19). This is a distinction without a difference. Dr. Winer alleges a conspiracy to deprive him of equal protection. If the hypothetical harm that would have resulted from the alleged conspiracy would not amount to a Title VI violation, Title VI cannot supply the predicate right for § 1985(3) liability.

Second, Dr. Winer relies on the Seventh Circuit's opinion in *Ahern.* A close reading of the case reveals that Dr. Winer's reliance is misguided. The court agreed with the Department of Education that "the Title VI ban against discrimination in federal programs might be violated by certain *patterns* of faculty and staff assignments" and that "that Title VI authorizes remedial action if *employment*

---

[7] *See id.*

*practices tend to exclude* from participation, deny benefits to, or otherwise subject the primary beneficiaries of a federal program to discrimination in violation of 42 U.S.C. § 2000d." *Ahern v. Bd. of Educ.*, 133 F.3d 975, 977 (7th Cir. 1998) (emphasis added).

The context matters here. The *Ahrens* case and the cases it cites in support deal with district-wide policies affecting students—the primary beneficiaries of the federal funds. *Id.* (collecting cases). However, Dr. Winer offers no authority showing that his hypothetical termination from Emory, in isolation, could rise to the level of a Title VI violation. Dr. Winer has not and cannot show a *pattern*.

### 2.  Dr. Winer cannot properly allege racial animus.

Dr. Winer also fails to plead "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action . . ." *Dean v. Warren*, 12 F.4th 1248, 1255 (11th Cir. 2021). CAIR-Georgia does not dispute that Jews are a protected class, nor does it dispute that the SAC alleges that CAIR-Georgia was motivated by racial animus. However, Dr. Winer fails to plead facts that *plausibly* show Dr. Winer's race motivated CAIR-Georgia's political speech.

In support of his argument, Dr. Winer relies on a sole case and omits facts that render the case inapposite. Opp. at 23 (citing *Sumrall v. Ali* , 793 F. Supp. 3d 199 (D.D.C. 2025). The case involved a battery, not protected expressive conduct. *Sumrall,* 793 F.Supp.3d at 209. The court also noted the defendant had no reason to believe the plaintiff affiliated with the Israeli government, and its analysis focused on physical symbols such as the Star of David. Here, Dr. Winer alleges no physical attack, admits to his IDF service, and identifies no physical symbol tied to his race.

*Landau v. Corporation of Haverford College* better fits this case. 780 F. Supp. 3d 548 (E.D. Pa. 2025). The *Landau* court rejected the premise that criticism of Israel is inherently antisemitic, explaining that the plaintiffs' disingenuously attempted to "blur the line between Zionism as a political philosophy and Zionism as a component of Jewish identity" and "implicitly sweep any and all criticism of Israel into the basket of antisemitism." *Id.* The Court harkened back to one of its previous opinions and again "reject[ed] Plaintiffs' embedded proposition that any anti-Israel speech is intrinsically antisemitic, because reasonable people acting in good faith can challenge decisions of the Israeli government without harboring antisemitic views." *Id.* Dr. Winer repeats the same move here. He seeks to reframe criticism of his actions and CAIR-Georgia's political speech as racial animus.

The SAC alleges criticism of what Dr. Winer *did*, not who he *is*. Dr. Winer effectively asks the Court to insulate any Jewish person from criticism of their actions because they are Jewish. Dr. Winer simply cannot allege racial animus without facts supporting the claim while simultaneously attributing Defendants' speech to their political views[8] and other compelling explanations, including Dr. Winer's Zionist beliefs, Israeli citizenship, political affiliations, and—most accurately—his *military service and military affiliation*.[9] Further, Dr. Winer conflates being Jewish with participation in the IDF. However, there is nothing in the SAC to suggest that CAIR-Georgia has criticized any other Jewish person, nor that it would not criticize any non-Jew who participates in the war on Gaza.

---

[8] *See* Dkt. 140-1, pp. 21–22, 22 n.8, citing to SAC ¶¶ 30–31, 76.
[9] *See id.* at pp. 22–23, citing to SAC ¶¶ 189, 191–93, 197.

In other words, Dr. Winer has failed to properly allege racial animus by (1) offering no support that CAIR-Georgia's actions were based on his racial identity and (2) admitting that CAIR-Georgia's political beliefs and Dr. Winer's participation in Israel's war on Gaza motivated CAIR-Georgia's statements. Accordingly, Count IV must be dismissed.

## CONCLUSION

Nothing in Dr. Winer's Opposition casts any actual doubt on the merits of CAIR-Georgia's arguments set forth in its Motion to Dismiss and brief in support of same, and its Motion to Dismiss should be granted in its entirety.

Respectfully submitted this 19th day of March, 2025.

**BUCHALTER LLP**

/s/ *Amanda G. Hyland*
Amanda G. Hyland
Georgia Bar No. 325115
Austin C. Vining
Georgia Bar No. 362473
3475 Piedmont Road NE, Ste. 1100
Atlanta, GA 30305
(404) 832-7350 Telephone
ahyland@buchalter.com
avining@buchalter.com

*Attorneys for Defendant CAIR-Georgia*

15

## <u>CERTIFICATE OF COMPLIANCE WITH L.R. 5.1</u>

I HEREBY CERTIFY that the foregoing document was prepared in Times New Roman, 14-point font, as approved by Local Rule 5.1.

/s/ *Amanda G. Hyland*
Amanda G. Hyland
Georgia Bar No. 325115

*Attorney for Defendant CAIR-Georgia*

16