**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

JOSHUA WINER,

     *Plaintiff,*

v.

UMAYMAH MOHAMMAD, *et al.*,

     *Defendants.*

Civil Action File

No. 1:25-cv-02329-TWT

**PLAINTIFF JOSHUA WINER'S RESPONSE TO UMAYMAH
MOHAMMAD AND IBRAHIM JOUJA'S MOTIONS TO DISMISS**

Lauren Israelovitch
Mark Goldfeder
Ben Schlager
NATIONAL JEWISH
ADVOCACY CENTER, INC.
3 Times Square
New York, NY 10036
lauren@njaclaw.org
*Pro Hac Vice*

David Forman Katz
THE D.F. KATZ LAW FIRM, LLC
EUSTER & KATZ, P.C.
1158 Jones Bridge Rd
Ste 420 PMB 1090
John's Creek, GA 30022
(404) 918-5707
dkatz@dfkatzlawfirm.com
Ga. Bar. No. 408738

Josh Belinfante
Anna Edmondson
Miles Skedsvold
ROBBINS ALLOY BELINFANTE
  LITTLEFIELD LLC
500 14th Street, NW
Atlanta, GA 30318
T: (678) 701-9320
E: mskedsvold@robbinsfirm.com
Ga. Bar No. 371576

Esther Panitch
THE PANITCH LAW GROUP, PC
4243 Dunwoody Club Drive
Suite 205
Atlanta, GA 30350
esther@panitchivory.com
Ga. Bar. No. 143197

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................... 1

BACKGROUND ............................................................................................ 3

    I.    Factual Background...................................................................... 3

    II.    Procedural History........................................................................ 5

ARGUMENT ................................................................................................. 6

    I.    This Court has federal question jurisdiction.................................. 7

    II.    The Second Amended Complaint is not a shotgun pleading. ...... 14

    III.    Dr. Winer's claims against Mohammad for defamation and false light state a claim for relief. ........................................................ 18

CONCLUSION............................................................................................. 25

CERTIFICATE OF COMPLIANCE................................................................ 26

CERTIFICATE OF SERVICE....................................................................... 27

**INTRODUCTION**

In some quarters, it is popular rhetoric to decry the Israel-Hamas war as genocide, and to paint anyone who did not militantly oppose Israel as complicit in that crime. Many bad opinions are protected speech, but tortious defamation is not. There is a line between abstract political views and personal, false accusations, and the conduct at issue in this case crosses it.

Plaintiff Joshua Winer is a long-serving surgical oncologist and medical school professor at Emory University. After the atrocities of October 7, 2023, Dr. Winer volunteered to serve in the Israel Defense Forces as a physician. When he returned, he wrote about his call to serve—only to find Defendant Umaymah Mohammad, an MD/PhD student at Emory, publicly accusing *him, personally*, of murder, genocide, and war crimes. She repeated these accusations on several occasions and through various outlets, cooperating with others named in this lawsuit to amplify and solicit public participation in a smear campaign *precisely* for the purpose of persuading Emory that Dr. Winer was unfit to practice or teach medicine in the community.

Dr. Winer sued to vindicate his good name, and Mohammad now moves to dismiss. She argues that this Court lacks jurisdiction, that the complaint is a shotgun pleading, and that her statements about Dr. Winer are protected expression, mere opinion, or both. None of those arguments has any merit.

First, this Court plainly has jurisdiction. Dr. Winer asserts claims under 42 U.S.C. § 1985(3), and his state law claims involve the same nucleus of operative fact, so this Court has original and supplemental jurisdiction over all the claims in this lawsuit. Mohammad seems to think that the § 1985(3) claim fails—which is wrong—but regardless, that is not the standard for deciding jurisdiction.

Second, the Second Amended Complaint is plainly not a shotgun pleading. Dr. Winer could hardly be clearer about what Mohammad has done and why she is liable for her actions. And judging by her arguments for dismissal, there is no serious suggestion that Mohammad cannot understand the claims against her.

Finally, the Second Amended Complaint more than plausibly alleges defamation, false light invasion of privacy, and conspiracy. Dr. Winer alleges that Mohammad knowingly made false, scandalous allegations about his own actions, for the purpose of causing him harm. This sort of baseless and vicious rhetoric is neither protected speech nor mere opinion. This Court should deny the motion to dismiss.[1]

---

[1] As described in the caption, this is also a response to Defendant Ibrahim Jouja's "Motion to Dismiss," such as it is. *See* Dkt. 154. Jouja filed an affidavit purporting to adopt Mohammad's motion to dismiss, *see* Dkt. 154-1 at 1–2. To whatever extent that is permissible, *see, e.g.*, L.R. 7.1(a)(1), Dr. Winer's responses here more than adequately show Jouja's "motion" is properly denied.

## BACKGROUND

### I.    Factual Background

Dr. Joshua Winer is a Jewish resident of Atlanta, Georgia, with dual American and Israeli citizenship. Dkt. 130 ¶ 12. He is a practicing surgical oncologist and also teaches medicine at Emory University as the Surgical Clerkship Director. *Id.*

Following the Hamas-led terror attacks in Israel on October 7, 2023, Dr. Winer "felt a religious, moral, and national responsibility to protect the Jewish people and the Jewish homeland[.]" *Id.* "[H]e took a leave of absence to volunteer in one of the IDF's elite reconnaissance units," and was "deployed to Gaza in his capacity as a physician to provide medical care to wounded soldiers." *Id.* ¶¶ 11; *see also id.* ¶¶ 32–34. He did not serve in a combat role, but "engaged in *defensive* combat solely in the event that his unit was directly attacked," otherwise "serv[ing] . . . exclusively in his capacity as a physician." *Id.* ¶ 52. Dr. Winer served with honor—he categorically did not commit, participate in, or aid and abet genocide, *id.* ¶ 2, 42, he is not a racist, *id.* ¶ 153, and he in no way destroyed the Gazan healthcare system, *id.* ¶ 42.

In March 2024, Dr. Winer authored and published a blog post in the Times of Israel describing his decision to volunteer as a physician in the IDF.

*Id.* ¶¶ 32–35. The post reflected on his medical service and did not discuss combat, let alone war crimes or genocide. *See id*

About a month later, Defendant Umaymah Mohammad, a MD/PhD candidate at Emory, appeared on a program called "Democracy Now!" and made a series of defamatory statements accusing Dr. Winer of genocide. *Id.* ¶ 36. Mohammad accused Dr. Winer of "participat[ing] in aiding and abetting a genocide, [and] in aiding and abetting the destruction of the healthcare system in Gaza[,] and the murder of over 400 healthcare workers[.]" *Id.* "Mohammad reiterated the same false statements" and "further elaborated upon them on [1] a podcast, [2] in an op-ed that she authored for an online publication, [3] at a press conference, and [4] in an interview with a daily newspaper reporter." *Id.* ¶¶ 51,  3; *see also id.* ¶¶ 36–42, 55–60, 61–66.

To be clear, these statements are categorically false. *Id.* ¶ 42. And Mohammad knew these accusations were false, or at least said them with negligent and reckless indifference to their falsity—because, from the information she knew, Dr. Winer "had clearly done no such thing." *Id.* ¶ 37.

Mohammad was later suspended from the Emory School of Medicine because her comments clearly violated the institution's code of conduct. *Id.* ¶¶ 43–49. Nevertheless, she persisted in referencing Dr. Winer in subsequent media appearances and publications, identifying him with increasing detail and specificity. *Id.* ¶¶ 50–66.

Unfortunately, several individuals and nonprofits joined together with Mohammad to echo and amplify her campaign against Dr. Winer. *See, e.g., id.* ¶¶ 6, 8–9, 67–137. These were not isolated expressions of separate speakers, but a coordinated campaign to target Dr. Winer based on his Jewish, Israeli, and Zionist[2] identity, as well as his association with the IDF. *Id.* ¶ 8. The object of this coordination was "to intimidate [Dr. Winer,] . . . suppress his rights to free speech and association," and "stigmatize, isolate, and eliminate [him] from . . . professional and academic life" in the Emory community. *Id.* ¶¶ 9–11.

## II.   Procedural History

Dr. Winer filed this lawsuit in April of 2025, alleging Defamation, False Light Invasion of Privacy, and Civil Conspiracy. *See generally* Dkt. 1. He amended his complaint about a month later to add a claim for conspiracy to violate civil rights under 42 U.S.C. § 1985(3). *See generally* Dkt. 22. Following several defendants moving to dismiss, Dr. Winer sought and obtained leave of court to amend his complaint again. *See* Dkt. 129. The Second Amended Complaint names several defendants, including Umaymah Mohammad,

---

[2] To be clear, for purposes of the Amended Complaint, Zionism refers to "the belief in the right of the Jewish people to self-determination in their ancestral homeland," the land of Israel or "Judea." Dkt. 130 ¶ 29.

alleging each of the four claims just discussed against them all. *See id.* at pgs. 1, 75, 94, 97, 101.

Mohammad filed her motion to dismiss on March 12, 2026. *See* Dkt. 152-1. Pursuant to a consent motion, this Court set Dr. Winer's deadline to respond as April 28, 2026. *See* Dkt. 149.

## ARGUMENT

Mohammad seeks dismissal on essentially three grounds. First, she claims this Court lacks jurisdiction over this case. Second, she claims that the complaint is a shotgun pleading. Finally, she claims that Dr. Winer's claims for defamation and false light (and therefore, presumably, the claims for civil conspiracy) fail because her statements were either protected speech or mere opinion.[3]

None of these arguments has any merit. First, this Court has federal question jurisdiction because Dr. Winer asserts a claim under 42 U.S.C. § 1985(3)—Mohammad believes this claim is meritless, but she never so much as argues that it is so frivolous that it fails to even confer jurisdiction. And

_____

[3] Mohammad begins her brief by joining "the arguments made by Defendants CAIR National and CAIR Georgia in their Memoranda of Law[.]" Dkt. 152-1 at 1–2. It is not clear what Mohammad means by this, since those Defendants make arguments predicated on the notion that they were not the speakers of allegedly defamatory statements—*Mohammad*'s allegedly defamatory statements. Regardless, to whatever extent those arguments are applicable to Mohammad and incorporation in this fashion is permissible, Dr. Winer stands by the arguments made in response to those motions.

indeed, it isn't. That gives this Court supplemental jurisdiction over Dr. Winer's integrally related state law claims, as well. Second, the complaint is not a shotgun pleading. It could hardly be clearer what Mohammad is alleged to have done, and none of the reincorporation-by-reference she complains of at all stands in the way of her understanding the claims against her—as shown by her thoughtful and detailed motion to dismiss them. Finally, Dr. Winer has more than plausibly stated claims for relief. Mohammad cannot purposefully accuse Dr. Winer, personally, of some of the most horrific acts imaginable, with the intent to banish him from the Emory community, and then claim she didn't know better or was merely stating an opinion. Mohammad had absolutely no reasoned basis to believe her accusations were true, and they are plainly the sort that can (and will) be shown to be false. So even if Dr. Winer *must* show actual malice, he plainly can, and that is enough to state a claim for relief. Mohammad's motion to dismiss fails across the board.

## I.  This Court has federal question jurisdiction.

28 U.S.C. § 1331 provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." And (except for circumstances not relevant here) "[i]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all

– 7 –

other claims that are so related to . . . that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

As alleged in the complaint, this Court has jurisdiction over this case because Dr. Winer alleges a federal claim under 42 U.S.C. § 1985(3) "for civil conspiracy to deprive [Dr. Winer] of his rights and privileges as a citizen of the United States . . . [t]hrough a coordinated campaign of knowingly false and defamatory statements," *see* dkt. 130 ¶¶ 9; *see also id.* ¶ 189, which also forms the basis of his claims for defamation (*id.* ¶¶ 138–160), false light invasion of privacy (*id.* ¶¶ 161–169), and civil conspiracy (*id.* ¶¶ 170–186), giving this Court supplemental jurisdiction under 28 U.S.C. § 1367, *id.* ¶ 23.

Mohammad argues that the First Amended Complaint asserts no federal question at all, apparently on the theory that the claim under 42 U.S.C. § 1985(3) is not viable. In particular, Mohammad argues that there is only a "small subset of cases" in which a 1985 claim may lie against private actors," dkt. 152-1 at 4; the complaint is a shotgun pleading, *id.*; and, relatedly, that there are only "[c]onclusory allegations of discrimination and conspiracy," *id.* at 5. But of course, the (supposed) failure to state a claim is not the same thing as a failure to give rise to a federal question, so Mohammad's argument is a non-starter.

"In determining whether the district court has subject matter jurisdiction, we respect the important distinction between the lack of subject matter jurisdiction and the failure to state a claim upon which relief can be granted." *Resnick v. KrunchCash, LLC*, 34 F.4th 1028, 1034 (11th Cir. 2022) (quotation and brackets omitted). "The test ordinarily applied for determining whether a claim arises under federal law is whether a federal question appears on the face of the plaintiff's well-pleaded complaint." *Id.* (quotation omitted); *Bell v. Hood*, 327 U.S. 678, 685 (1946) (a complaint should not be dismissed for lack of subject matter jurisdiction if "the right of the plaintiffs to recover under their complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another"). Thus, "[a] federal court may dismiss a federal question claim for lack of subject matter jurisdiction only if: (1) the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction, or (2) such a claim is wholly insubstantial or frivolous." *Resnick, LLC*, 34 F.4th at 1034 (quotation omitted). This category—"'wholly insubstantial and frivolous'"—"is exceedingly narrow." *Id.*(quotation omitted) (collecting cases). The federal claim "must have no plausible foundation, or the court must conclude that a prior Supreme Court decision clearly forecloses the claim." *Id.* at 1035.

Here, Mohammad does not so much as argue that Dr. Winer's § 1985(3) claim is insubstantial or frivolous; and indeed, it is plainly not. To state a cause of action under 42 U.S.C. § 1985(3), a plaintiff must allege (1) a conspiracy (2) for the purpose of depriving either directly or indirectly, a person or class of persons of the equal protection of the laws, or the equal privileges and immunities; (3) an overt act in furtherance; and (4) an injury or deprivation of a right. *See Dean v. Warren*, 12 F.4th 1248, 1255 (11th Cir. 2021).

Count IV alleges that the defendants conspired to deprive Dr. Winer "of the equal protection of the laws and his rights and privileges" under the laws "on account of his Jewish identity and/or Zionist beliefs," including

> his [1] "right in every state to make and enforce contracts" on the same terms "as is enjoyed by white citizens," 42 U.S.C. § 1981, his right to be free from employment discrimination on the basis of "race . . . religion . . . or national origin," 42 U.S.C. § 2000e-2(a)(1), and his right not to be "subjected to discrimination under any program or activity receiving Federal financial assistance" "on the ground of race . . . or national origin." 42 U.S.C. § 2000d.

Dkt. 130 ¶ 189. Specifically, "Defendants undertook a coordinated effort to interfere with [Dr. Winer's] rights by publicly demanding that Emory investigate and/or terminate his employment because of their false accusations," *id.* ¶ 190, which were predicated on "[Dr. Winer's] lawful military service and expressed sense of duty to serve the Jewish homeland, which is integral to his racial identity as a jew," *id.* ¶ 191. In doing so,

"Defendants sought to" induce Emory "to terminate his employment [because of his race], a result that would violate Titles VI and VII of the Civil Rights Act, as well as 42 U.S.C. § 1981." *Id.* ¶ 193.

As this Court has already concluded, dkt. 129 at 7–15, that claim is *at least* colorable because the Supreme Court has held that § 1985(3) reaches purely private conspiracies where the right at issue is one that can be violated without state action, *see Griffin v. Breckenridge*, 403 U.S. 88 (1971), and Jewish identity qualifies as a protected class and racial group,[4] *Shaare-Tefila Congregation v. Cobb*, 481 U.S. 615, 617–18 (1987); *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 448, (2008); *see also* dkt. 129 at 12 (Plaintiff's

---

[4] For many Jews, including Dr. Winer, Zionism reflects the historic connection of the Jewish people to Zion, a place in Jerusalem identified in the Hebrew Bible as the origin of Jewish peoplehood. Treating that identity and connection as grounds for professional exclusion is precisely the type of discrimination civil rights law forbids. *See Shaare-Tefila Congregation v. Cobb*, 481 U.S. at 617–18. At the pleading stage, these allegations are more than sufficient to allege class-based animus. And Mohammad's contention that Zionism is merely a political philosophy—as opposed to a component of Jewish identity—simply because not all Jews are Zionists is as untenable as arguing that a religious practice falls outside the protection of civil rights law because it is not universally observed. Zionism, for many Jews, is not an abstract policy preference; it is bound up with Jewish peoplehood as an expression of the historic and religious connection to Zion itself. The fact that not all Jews share or prioritize that aspect of identity is legally irrelevant. Not all Jews keep kosher, but that does not permit discrimination against those who do on the ground that kosher observance is merely a "choice" rather than an aspect of Jewish identity. The same principle applies here: one cannot single out Jews who identify with Zionism and strip them of protection by recharacterizing that identity as a mere political viewpoint. Civil rights law does not allow defendants to redefine the contours of a protected class to exclude the very individuals they target.

argument under Title VII and § 1981 is "colorable," and the Title VI claim "facially satisf[ies] the elements of a § 1985(3) claim[.]"). That is more than enough to confer jurisdiction. *See Resnick,* 34 F.4th at 1035 (claim was not so insubstantial as to provide no basis for jurisdiction where the plaintiffs had "a colorable argument").

Indeed, while "the rights protected under Title VII" have been held "insufficient to form the basis of § 1985(3) actions against private conspirators," *Jimenez v. Wellstar Health System*, 596 F.3d 1304, 1312 (11th Cir. (2010), those cases relied on the detailed remedial scheme in place for a Title VII plaintiff against their employer. *See Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366 (1979). Here, by contrast, the Complaint does not seek to bypass the remedial scheme for a Title VII claim against Emory, but rather to hold the defendants accountable for a conspiracy to provoke Emory to terminate Dr. Winer because of his Jewish identity—a result that would violate Title VII. *See* 42 U.S.C. § 1985(3) (conspiracies are actionable if their "purpose" is to deprive the plaintiff of rights, "either directly or indirectly," so long as the plaintiff is "injured in his person or property" even if his rights are not ultimately violated). So, properly understood, *Novotny* and *Jimenez* pose no bar to Dr. Winer's § 1985(3) claims predicated on Title VII. *See Resnick,* 34 F.4th at 1038 (Agreeing that the plaintiffs' "Fourteenth Amendment claim [was] not 'clearly foreclosed' by" a U.S. Supreme Court

– 12 –

case because "Plaintiffs say that their claim is distinguishable from" that case for plausible reasons).[5]

Similarly, while the Eleventh Circuit has also rejected a § 1985(3) claim predicated on § 1981 in *Jimenez*, that was principally based on the Court's conclusion that "even if interference with contract and property rights could sustain a § 1985(3) claim, Jimenez ha[d] not adequately pled interference with any such rights" because interference with his relationship with patients and the "suspension of medical staff privileges" did not "implicate any contractual relationship" as a matter of Georgia law. 596 F3d at 1310, 1312. Here, Dr. Winer alleges straightforward interference with his employment relationship with Emory—which is and can be the subject of a contractual relationship under Georgia law.

Of course, *Jimenez* also said that "conspiracies to violate rights protected under § 1981 are . . . insufficient to form the basis of a § 1985(3) claim" because (it thought) Title VII claims were barred, and "[t]his Circuit has routinely and systematically grouped Title VII and § 1981 claims for analytic purposes." *Id.* at 1312. But given the fact that Jimenez could not even plead a contract, this broader statement is dicta. *See In re BFW Liquidation, LLC*, 899 F.3d 1178, 1186 (11th Cir. 2018) ("If a statement is not

---

[5] For more detail on how Title VI, Title VII, and § 1981 form valid predicates for a claim under § 1985(3), *see* Dkt. 144 at 21–24.

necessary to the result the Court reached in the case, then the statement is dictum." (quotation omitted)).

Finally, and in all events, neither the Supreme Court nor the Eleventh Circuit has ever held that Title VI is not a valid predicate for a § 1985 claim. *See* Dkt. 109 at 15–16 (explaining why a Seventh Circuit decision on this point is wrong).

Thus, Mohammad has not shown that Dr. Winer's federal claims do not properly invoke federal jurisdiction, so the usual rule stands: this Court has jurisdiction under 28 U.S.C. § 1331 and 1367(a).

## II.    **The Second Amended Complaint is not a shotgun pleading.**

The rules for pleading a claim in federal court are not onerous or even particularly technical. "Rule 8(a)(2) requires a complaint to include 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015).  And "Rule 10(b) . . . provides [that] a party must state its claims or defenses in numbered paragraphs" and, "[i]f doing so would promote clarity, each claim. . . must be stated in a separate count[.]" *Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015).

The Second Amended Complaint meets this low bar. It alleges four, plainly stated claims against all defendants, in carefully numbered paragraphs, and each describing a distinct legal wrong.  *See, e.g.*, Dkt. 130 at

– 14 –

¶ 144 (Count I: "Mohammad made the following false and defamatory statements"); 165 (Count II: these statements "presented [Dr. Winer] in a deeply misleading and offensive light"), 172 (Count III: " Defendants . . . combined and conspired with one another to defame Plaintiff and to place him in a false light"), 179 (Count IV: in doing so, "Defendants . . . executed a common plan to deprive Plaintiff of the equal protection of the laws and his rights and privileges on account of his Jewish identity").

As to Mohammad, the Second Amended Complaint could hardly be clearer: "Mohammad . . . made false statements about Plaintiff . . . which were defamatory per se and placed Plaintiff in a false light." *Id.* ¶ 1. For example, "Mohammad maliciously and falsely stated that Plaintiff directly participated in and aided and abetted a genocide in Gaza . . . further asserting that . . . Plaintiff is unfit to teach medical students or provide medical care to patients." *Id.* ¶ 2; *see also id., e.g.* ¶¶ 3 (discussing the Democracy Now Interview and her "reiterat[ion of] the same false statements . . . on a podcast, in an op-ed . . . at a press conference, and in an interview with a daily newspaper reporter"), 6 (alleging that the other defendants "each individually worked with Mohammad to provide her with a platform to adopt, further amplify and disseminate her false statements about [Dr. Winer]," thereby "engag[ing] in a civil conspiracy with Mohammad to further publicize [her] defamatory statements about [Dr. Winer] and place [him] in a false

light"), 8–9 (alleging the same conspiracy violated 42 U.S.C. § 1985(3) because it was predicated on "depriv[ing Dr. Winer] of his rights and privileges as a citizen of the United States" based on his "Jewish national identity"). In other words, the claims against Mohammad are plenty clear, and there is no serious suggestion that the claims against her should be dismissed as shotgun pleadings.

Mohammad nonetheless insists that the complaint is a shotgun pleading because it includes "numerous irrelevant and prejudicial assertions about Ms. Mohammad," and "justif[ies] and defend[s] activities of the state of Israel[.]" Dkt. 152-1 at 6, 9. But since the actual allegations of Mohammad's culpable conduct are clear, the fact that she dislikes some of the surrounding allegations does not make the complaint a shotgun pleading. A shotgun pleading is one that is so confused or overstuffed that it is likely to confuse the opposing party and the court in violation of rules 8 and 10. Since there is no serious argument that Mohammad cannot understand what she is alleged to have done relevant to this case, her complaints are better directed at Rule 12(f), which allows a court to "strike from a pleading . . . any . . . immaterial, impertinent, or scandalous matter."[6]

---

[6] Of course, the allegations Mohammad complained of are not scandalous or impertinent—as Mohammad points out, Dr. Winer may have an obligation in this case to show that she made her statements with "actual malice," and

Mohammad also cites several cases that discuss the potential to abuse incorporating prior allegations by reference. Dkt. 152-1 at 8–9. This, too, is meaningless boilerplate. Reading Dr. Winer's complaint fairly, "this is not a situation where a failure to more precisely parcel out and identify the facts relevant to each claim materially increased the burden of understanding the factual allegations underlying each count." *Weiland*, 792 F.3d at 1325. Each of the four claims is clearly pleaded, and each logically builds on the last. The factual allegation supporting Defamation (Count I) also supports False Light Invasion of Privacy (Count II), and both serve as the predicate torts for the conspiracy claims in Counts III and IV. Mohammad clearly understands this structure, given her detailed arguments for dismissal of the underlying claims. This "may explain why [Mohammad] did not move for a more definite

---

allegations that Mohammad has special reason to sabotage Dr. Winer is relevant to that end. *See Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 668 (1989) (while not sufficient by itself to show actual malice, "it cannot be said that evidence concerning motive or care never bears any relation to the actual malice inquiry").

And, not for nothing, Dr. Winer's complaint does not "call Ms. Mohammad a terrorist[.]" Dkt. 152-1 at 6 n.3. The very allegations that Mohammad recites say nothing of the kind. Rather, they allege that Mohammad organizes anti-Israel demonstrations, has praised terrorism against Israel, parroted talking points promulgated by Hamas, and mischaracterize Zionism, the IDF, and so on. *See id.* (citing Dkt. 22 ¶¶ 12, 26, 28, 39, 58). It is folly to compare the accusation that a doctor and professor personally participated in a genocide with factual allegations that a student espouses anti-Israeli rhetoric.

statement [pursuant to] Rule 12(e)"—because she "could and did understand the claims that [are] stated[.]" *Weiland*,792 F.3d at 1324.

Thus, Mohammad cannot remotely show that the complaint is a shotgun pleading.[7]

## III.    Dr. Winer's claims against Mohammad for defamation and false light state a claim for relief.

To prove a claim of defamation, a plaintiff is required to show: "(1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication to a third party; (3) fault by the defendant amounting at least to negligence; and (4) special harm or the actionability of the statement irrespective of special harm." *Infinite Energy, Inc. v. Pardue*, 713 S.E.2d 456, 460 (2011) (quoting *Mathis v. Cannon*, 573 S.E.2d 376 (Ga. 2002)).[8] Similarly, to state a claim for false light invasion of privacy, a plaintiff must (1) "show the existence of false publicity that depicts the plaintiff as something or someone which he is not" and (2) "must demonstrate that the false light in which he was placed would be highly offensive to a reasonable person." *Doe v. Roe*, 864 S.E.2d 206, 216 (Ga. Ct. App. 2021) (quotation omitted). The Second Amended Complaint easily satisfies both rubrics.

---

[7] Regardless, re-pleading, not dismissal, is the ordinary remedy of first resort for shotgun pleadings. *See Weiland*, 792 F.3d at 1323 n.10 (collecting cases).

[8] "Both libel and slander constitute defamation." *Swanson Towing & Recovery, LLC v. Wrecker 1, Inc.*, 802 S.E.2d 300, 305 (Ga. Ct. App. 2017).

Start with defamation. The Second Amended Complaint alleges that "Mohammad maliciously and falsely stated that Plaintiff directly participated in and aided and abetted a genocide in Gaza as a result of Plaintiff's service in the Israeli Defense Forces" making him "unfit to teach medical students or provide medical care to patients." Dkt. 130 ¶ 2; *see also id.* ¶¶ 3, 36–42, 50–54, 55–60, 61–66. Needless to say, the Second Amended Complaint alleges those scandalous accusations are false, *id.* ¶ 42, unprivileged, *id.* ¶¶ 7–8, 38, made with malicious knowledge of falsity (certainly negligence or recklessness), *see id.*, and they are also of such gravity that damages are both "inferred," *id.* ¶ 139, and actually suffered in this case, *see id.* ¶ 168 (alleging "significant, ongoing and enduring public embarrassment, emotional distress, and harm to his professional reputation"), 159 (the defamatory statements "were especially injurious because Plaintiff is a physician and medical school professor"). That is a textbook defamation claim.

Ditto for false light. These same facts plainly allege that Mohammad's statements cultivated publicity that depicted Dr. Winer as something he is not (a participant in genocide), and that these same comments are highly and objectively offensive to a reasonable person. *Id.* ¶¶ 165–66.

Mohammad appears to contend that the claims for defamation and false light fail because "Mohammad's statements about Dr. Winer were First Amendment protected speech." Dkt. 152-1 at 14 (title case omitted); *see also*

*id.* at 17–18. Her arguments on this point are somewhat difficult to follow but, at bottom, Mohammad appears to be making an argument under *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964). Of course, Dr. Winer does not allege that he is a public figure, limited or otherwise, and Mohammad cites no authority holding that a single blog post discussing a matter of public concern transforms a person into a limited public figure for purposes of defamatory accusations about that person's own conduct.

To the contrary. Dr. Winer is certainly not a public figure writ large, since that requires "clear evidence of general fame or notoriety in the community, and pervasive involvement in the affairs of society[.]" *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 352 (1974). And he is not a limited-purpose public figure, because he did not "thrust [himself] to the forefront of particular public controversies in order to influence the resolution of the issues involved." *Id.* at 345; *see Silvester v. Am. Broad. Cos.*, 839 F.2d 1491, 1494 (11th Cir. 1988) (to determine if an individual is a limited-purpose public figure, "the court must (1) isolate the public controversy, (2) examine the plaintiff['s] involvement in the controversy, and (3) determine whether the alleged defamation was germane to the plaintiff['s] participation in the controversy." (quotation and brackets omitted)).

Here, the "public controversy" that Mohammad seeks to drag Dr. Winer into is the war in Gaza. But Dr. Winer did not opine on the war in Gaza in

any way that makes him a public figure with regard to that controversy. Rather, his blog post[9] reflected on the impact that the October 7 Massacre had on him. Dkt. 130 ¶¶ 32–35. He discussed volunteering in Israel in fewer than 200 words, and even more briefly on volunteering in the IDF. *Id.* Any widespread attention Dr. Winer received on the topic of the war in Gaza was the result of Mohammad's conduct. *See Hutchinson v. Proxmire*, 443 U.S. 111, 135 (1979) ("To the extent the [plaintiff] became a matter of controversy, it was a consequence of [defendant's actions]. Clearly, those charged with defamation cannot, by their own conduct, create their own defense by making the claimant a public figure.").

Regardless, the upshot of being a limited public figure for purposes of *anything* even *tangentially* related to the Israel-Hamas war would be that Dr. Winer "cannot recover damages for defamation unless [he] prove[d] that an untrue statement was made 'with knowledge that it was false or with reckless disregard of whether it was false or not." *Dershowitz v. Cable News Network, Inc.*, 153 F.4th 1189, 1193 (11th Cir. 2025) (quoting *Sullivan*, 376 U.S. at 279).

---

[9] Dr. Winer's blog post, sometimes referred to in the pleadings as an "op-ed," was published on the *Times of Israel* Blogs, which is an unmoderated, unedited platform on which any member of the public may publish.

And Dr. Winer can plainly make that showing. Dr. Winer alleges that he did not aid and abet genocide, war crimes, or the destruction of the Gazan healthcare system, and that he is not a racist that supports apartheid, dkt. 130 ¶ 42. He alleges that Mohammad's statements were made with *at least* reckless disregard for the truth because, based on the information Mohammad knew from the blog post, Dr. Winer "had clearly done no such thing[s]," *id.* ¶ 37. *See Veritas v. Cable News Network, Inc.*, 121 F.4th 1267, 1283 (11th Cir. 2024) ("at the pleadings stage, [the plaintiff] need only allege sufficient facts to permit the inference that [the defendant] published [the offending] statements with actual malice," and allegations "that [the defendant] actually entertained serious doubts about the veracity" of the statements is sufficient).

Failing that, Mohammad also suggests that her "pronouncements are also nonactionable because they are expressions of opinion, not falsifiable facts." Dkt. 152-1 at 17. Balderdash.

For one thing, the statement "[t]his man participated in aiding and abetting a genocide, in aiding and abetting the destruction of the healthcare system in Gaza" dkt. 130 ¶ 67 (emphasis added), is plainly the kind of statement that "can reasonably be interpreted . . . to state or imply defamatory facts about the plaintiff that are capable of being proved false." *Gast v. Brittain*, 589 S.E.2d 63, 64 (Ga. 2003). Even if the belief that the

Israel-Hamas war is a genocide could be characterized as an opinion—in the most abstract sense that any idea about world events may be called an opinion, however unfounded—Mohammad's statement goes further. It plainly asserts as a matter of fact that Dr. Winer personally "participated" in such unconscionable acts. *See* Dkt. 130 ¶ 67. Committing genocide and destroying a healthcare system are not matters of opinion; they are concrete acts which Dr. Winer either did or did not do—and he did not. *See id.* ¶ 42. To the extent Mohammad means to suggest that these statements should be read as merely expressing the opinion that any Israeli military service in Gaza constitutes "aiding and abetting," that is not only *deeply* offensive, but also an inference in Mohammad's favor, which is not permissible at the motion to dismiss stage.

For another, all of Mohammad's cases deal with statements about what another person thought or believed, not a concrete action they actually did or did not do. *See, e.g. Gurmessa v Genocide Prevention in Ethiopia, Inc.*, No. 21–869–CFC, 2024 WL 4604400, at * 1 (D. Del. Sep. 11, 2024) (stating that Plaintiff "openly supports genocide, glorifying torture, lynching, massacre, and ethnic cleansing of Amhara ethnic groups in [the] Oromia Region of Ethiopia" were statements of opinion); *Turkish Coalition of Am., Inc. v. Bruininks*, 678 F3d 617, 625 (8th Cir 2012) (stating that a website discussing Armenian genocide was not credible was "essentially an opinion, not capable

of being proven true or false"); *Turner v Wells*, 879 F3d 1254, 1270 (11th Cir 2018) ("the Defendants' classification of [a] gift—a male blow-up doll given to a player taunted for his supposed sexual orientation–as homophobic taunting is subjective and not readily capable of being proven true or false"); *Monge v Madison County Record, Inc.*, 802 F Supp 2d 1327, 1336 (ND Ga 2011) (Statement that plaintiff lawyer had "torpedoed" defendant client's case "is an opinion that is not actionable"); *Info. Sys. & Networks Corp. v City of Atlanta*, 281 F3d 1220, 1228 (11th Cir 2002) (statement that performance on a contract was "inadequate" was "an opinion—and thus subjective by definition—[and therefore] not capable of being proved false").

In short, Dr. Winer has more than plausibly alleged that Mohammad defamed him and portrayed him in a false light. Mohammad's arguments fail because her statements accusing him, personally, of participating in a genocide, are readily attributable to actual malice, and are not mere statements of opinion. Thus, the claims against Mohammad cannot be dismissed.

## CONCLUSION

For these reasons, the Court should deny Umaymah Mohammad's and Ibrahim Jouja's motions to dismiss.

Respectfully submitted this 28th day of April, 2026.

Lauren Israelovitch
Mark Goldfeder
Ben Schlager
NATIONAL JEWISH
   ADVOCACY CENTER, INC.
3 Times Square
New York, NY 10036
lauren@njaclaw.org
*Pro Hac Vice*

*/s/ Miles C. Skedsvold*
Josh Belinfante
Anna Edmondson
Miles Skedsvold
ROBBINS ALLOY BELINFANTE
   LITTLEFIELD LLC
500 14th Street, NW
Atlanta, Georgia 30318
T: (678) 701-9320
E: mskedsvold@robbinsfirm.com
Ga. Bar. No. 371576


David Forman Katz
THE D.F. KATZ LAW FIRM, LLC
EUSTER & KATZ, P.C.
1158 Jones Bridge Rd
Ste 420 PMB 1090
John's Creek, GA 30022
(404) 918-5707
dkatz@dfkatzlawfirm.com
Ga. Bar. No. 408738

Esther Panitch
THE PANITCH LAW GROUP, PC
4243 Dunwoody Club Drive
Suite 205
Atlanta, GA 30350
esther@panitchivory.com
Ga. Bar. No. 143197

## CERTIFICATE OF COMPLIANCE

By signature below, counsel certifies that the foregoing pleading was prepared in Century Schoolbook, 13-point font, in compliance with Local Rule 5.1(C).

*/s/ Miles C. Skedsvold*
Miles C. Skedsvold

## CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically filed the within and foregoing **PLAINTIFF JOSHUA WINER'S RESPONSE TO UMAYMAH MOHAMMAD AND IBRAHIM JOUJA'S MOTION TO DISMISS** with the Clerk of Court using the CM/ECF electronic filing system, which suffices for service on all counsel of record who have entered an appearance in the case under L.R. 5.1(A)(3).

This 28th day of April, 2026.

*/s/ Miles C. Skedsvold*
Miles C. Skedsvold