**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| JOSHUA WINER,<br><br>    *Plaintiff*,<br><br>v.<br><br>UMAYMAH MOHAMMAD, *et al.*,<br><br>    *Defendants*. | Civil Action No.<br>1:25-cv-02329-TWT |

**PLAINTIFF JOSHUA WINER'S RESPONSE
IN OPPOSITION TO DEFENDANT RUPA MARYA's MOTION TO
DISMISS HIS SECOND AMENDED COMPLAINT**

Lauren Israelovitch
Mark Goldfeder
Ben Schlager
NATIONAL JEWISH
ADVOCACY CENTER, INC.
3 Times Square, Suite 512
New York, NY 10036
(914) 222-3828
lauren@njaclaw.org
*Pro Hac Vice*

David F. Katz
THE D.F. KATZ LAW FIRM, LLC
1158 Jones Bridge Rd
Ste 420 PMB1090
Johns Creek, GA 30022
T: (404) 918-5707
Dkatz@dfkatzlawfirm.com
Ga. Bar. No. 408738

Josh Belinfante
Anna Edmondson
Miles Skedsvold
ROBBINS ALLOY BELINFANTE
  LITTLEFIELD LLC
500 14th Street, NW
Atlanta, GA 30318
T: (678) 701-9320
E: mskedsvold@robbinsfirm.com
Ga. Bar No. 371576

Esther Panitch
THE PANITCH LAW GROUP, PC
4243 Dunwoody Club Drive
Suite 205
Atlanta, GA 30350
esther@panitchlawgroup.com
Ga. Bar. No. 143197

**INTRODUCTION**

This case arises from a coordinated campaign to destroy a physician's career. After volunteering to serve as a physician in the Israeli Defense Forces ("IDF") following the October 7, 2023 terrorist attacks ("October 7 attacks"), Defendants publicly accused Dr. Joshua Winer, a surgeon and professor at Emory University, of personally participating in genocide and war crimes solely because of his IDF service. Based on those accusations, Defendants declared him unfit to practice medicine, teach students, or treat patients and launched a public campaign to strip him of his faculty appointment and clinical privileges at Emory.

Defendant Rupa Marya was not a passive observer of that campaign. She was one of its most prolific and aggressive participants. As alleged in the operative Second Amended Complaint ("SAC"), Marya repeatedly identified Dr. Winer by name and photograph and used her substantial social media and publishing platforms to accuse him of participating in genocide, committing war crimes, murdering civilians, and posing a danger to students and patients. And she did not stop at defamation. Marya directed her followers to a coordinated call-to-action campaign to press for Dr. Winer's investigation and termination.

Marya's motion to dismiss the SAC ("Motion") attempts to recast such conduct as protected opinion or generalized political advocacy. It is neither. The SAC alleges a sustained course of targeted, factually false statements about a

1

specific individual, including accusations that Dr. Winer engaged in criminal conduct and is professionally unfit, made as part of a coordinated effort to have him removed from his profession. Taking those well-pleaded allegations as true, as the Court must at this stage, the SAC easily states claims against Marya for defamation per se, false light, and her participation in a broader civil conspiracy and conspiracy to interfere with civil rights. Her Motion should be denied in its entirety.

## BACKGROUND

Dr. Winer is a surgical oncologist at the Emory Winship Cancer Institute and professor and surgical clerkship director at the Emory University School of Medicine. Following the October 7, 2023 terrorist attacks, Dr. Winer took a leave of absence to serve in the IDF as a physician, providing medical care to wounded soldiers. Dkt. 130 ¶¶ 12, 32–34, 52.

Beginning in 2024, Defendant Umaymah Mohammad publicly accused Dr. Winer of participating in genocide and related crimes and repeated those accusations across multiple platforms. *Id*. ¶¶ 36–42, 50–66. As alleged in the SAC, those accusations did not remain isolated. Defendants, including Marya, adopted, amplified, and expanded them as part of a coordinated campaign to damage Dr. Winer's professional reputation and induce Emory to investigate and terminate him. *Id*. ¶¶ 5–6, 97–118, 177, 190.

2

Marya, a physician and professor with a substantial social media following, played a prominent role in that campaign. She repeatedly identified Dr. Winer by name and photograph and used her social media platforms to accuse him of participating in genocide, committing war crimes, and posing a danger to students and patients. She also directed her followers to coordinated campaign materials— including a phone script and email template—instructing them to demand Dr. Winer's investigation and termination. *Id*. ¶¶ 18, 99–100, 104–118.

## PROCEDURAL HISTORY

Dr. Winer filed this action in April 2025 alleging claims of defamation, false light invasion of privacy, and civil conspiracy. Dkt. 1. He subsequently amended his complaint, and added a claim under 42 U.S.C. § 1985(3). Dkt. 22. After several defendants moved to dismiss, Dr. Winer sought and obtained leave to amend his first amended complaint. See Dkt. 129. The operative SAC alleges each of the four claims just discussed against all Defendants. Dkt. 130 ¶¶ 138–200. Marya now moves to dismiss, purporting to "join" the arguments advanced by Mohammad and separately asserts that the Court lacks personal jurisdiction.

## ARGUMENT

### I. This Court Has Personal Jurisdiction Over Marya

Marya wrongly argues that this Court lacks personal jurisdiction over her by focusing on the absence of traditional contacts with Georgia. But jurisdiction is not limited to such contacts. It may also arise where a defendant purposefully directs

conduct at the forum and causes injury there. O.C.G.A. § 9-10-91(2). The SAC alleges exactly that: Marya targeted Dr. Winer, a Georgia physician and professor at Emory University, and participated in a coordinated campaign designed to induce his Georgia employer to investigate and terminate him. Dkt. 130 ¶¶ 96–118, 177, 190.

Dr. Winer does not contend that jurisdiction exists merely because Marya's statements were viewable in Georgia. Dkt. 153-1 at 7. The SAC alleges more: that Marya targeted a Georgia resident and his Georgia employer and participated in a coordinated effort to induce action against him in this forum. That is not passive publication; it is forum-directed conduct.

## A. Georgia's Long-Arm Statute Confers Jurisdiction

To determine whether personal jurisdiction exists, the Court applies a two-step inquiry: whether jurisdiction is authorized under Georgia's long-arm statute and whether exercising jurisdiction comports with due process. *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257–58 (11th Cir. 2010). Both requirements are satisfied.

Georgia's Long Arm Statute confers jurisdiction over a nonresident who "commits a tortious act or omission within this state[.]" O.C.G.A. § 9-10-91(2). The claims here arise from intentional tortious conduct purposefully directed at Georgia, making subsection (2) the relevant provision. Although subsection (2) excludes

4

defamation as a standalone basis for jurisdiction, that carveout does not apply where, as here, the plaintiff asserts non-defamation torts based on the same conduct. The SAC pleads false light and related conspiracy claims arising from the same course of conduct. Dkt. 130 ¶¶ 161–200. And where jurisdiction lies for false light, it extends to related claims arising from the same operative facts, including defamation. See *Mays v. Laurant Publishing, Ltd.*, 600 F. Supp. 29, 30 (N.D. Ga. 1984) ("If the court has personal jurisdiction as to the privacy claims it has jurisdiction as to all claims.") (citing *Mack Truck, Inc. v. Arrow Aluminum Castings, Co.*, 510 F.2d 1029 (5th Cir. 1975)).[1] The same reasoning applies here.

Marya's argument rests on a mischaracterization of both the statute and the SAC's allegations. She attempts to reduce her conduct to statements merely viewable in Georgia in order to place it within the defamation carveout. Dkt. 153-1 at 7. The SAC alleges something very different. Marya accused Dr. Winer of participating in genocide and war crimes, tied those accusations directly to his employment at Emory, asserted that he should not be permitted to work there on that basis, and used her claims to urge support for efforts to remove him from the Emory medical community. Dkt. 130 ¶¶ 99–118. In so doing, she targeted a Georgia physician and professor at Emory, and participated in a coordinated campaign

---

[1] *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) ("decisions of the United States Court of Appeals for the Fifth Circuit . . . handed down prior to" September 30, 1981, "shall be binding as precedent in the Eleventh Circuit").

designed to induce his Georgia employer to investigate and terminate him. She repeatedly identified Dr. Winer by name and photograph, invoked his role at Emory to frame her accusations, and directed her followers to coordinated campaign materials, including a phone script and email template, instructing them to demand his investigation and termination. This was not generalized commentary. Marya carried out a sustained effort to leverage Dr. Winer's Georgia-based employment to produce consequences in Georgia. That is not passive publication; it is intentional, forum-directed conduct.

Marya's remaining arguments fare no better. She expressly contends that a claim "fails jurisdictionally if on its face it fails to state a claim under 12(b)(6)," thereby collapsing the jurisdictional inquiry into the merits. *See* Dkt. 153-1 at 9–10. That is wrong. In assessing personal jurisdiction, the Court asks whether the SAC alleges conduct bringing Marya within the long-arm statute, not whether Plaintiff will ultimately prevail on any particular claim. See *Diamond Crystal*, 593 F.3d at 1257–58. The SAC plainly does so.

Nor is Dr. Winer "recharacterizing" defamation as false light to evade the statute. *See* Dkt. 153-1 at 10. Defamation and false light may be pleaded simultaneously based on the same statements, with false light asserted in the alternative to the extent the statements are not actionable as defamation. If the Court finds the statements constitute defamation per se, the false-light claim is subsumed.

6

*Bollea v. World Championship Wrestling, Inc.*, 610 S.E.2d 92, 96 n.1 (Ga. App. 2005). If any statements fall short of defamation yet still portray Dr. Winer in a false and highly offensive manner, the false-light claim remains independently actionable. Either way, Marya's attempt to invoke the defamation carveout to defeat jurisdiction fails.

### B. Exercising Jurisdiction Comports with Due Process

The exercise of jurisdiction also satisfies due process. The Eleventh Circuit asks  whether (1) the plaintiff's claims "arise out of or relate to" at least one of the defendant's contacts with the forum; (2) the nonresident defendant "purposefully availed" itself of the privilege of conducting activities within the forum state; and (3) exercising jurisdiction comports with "traditional notions of fair play and substantial justice." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013); *Del Valle v. Trivago GMBH*, 56 F.4th 1265, 1275 (11th Cir. 2022). Each requirement is satisfied. With respect to the second prong—purposeful availment—the Eleventh Circuit recognizes two relevant frameworks: the *Calder* effects test and the traditional minimum-contacts analysis. *Del Valle*, 56 F.4th at 1275. The latter is relevant here,  and asks whether the defendant's forum contacts (1) relate to the plaintiff's cause of action, (2) reflect purposeful availment of the privilege of conducting activities within the forum, and (3) are such that the defendant should reasonably anticipate being haled into court there. *Id.*

7

Dr. Winer's claims arise directly out of Marya's contacts with Georgia. The SAC alleges that Marya engaged in a coordinated campaign to induce Emory to investigate and terminate him, and those actions form the basis of each of his claims. Dkt. 130 ¶¶ 96–118, 177, 190. The resulting injury—damage to Dr. Winer's professional reputation and standing within the Emory and Georgia medical community—was suffered in Georgia. The required nexus between Marya's contacts with the forum and Dr. Winer's claims is therefore direct and substantial.

Purposeful availment is likewise satisfied. Marya did not merely publish statements accessible in Georgia. She acted with the aim of prompting action by a Georgia institution, directing others to contact Dr. Winer's employer and demand consequences there. Dkt. 130 ¶¶ 105–106, 108–109, 111, 113, 117. Conduct undertaken with the objective of producing effects in the forum state is neither random nor attenuated; it reflects a deliberate choice to engage the forum. Having repeatedly participated in a campaign designed to produce consequences in Georgia, Marya cannot plausibly deny that she purposefully directed her conduct at this forum.

Exercising jurisdiction is also reasonable. Georgia has a strong interest in adjudicating claims involving harm to its residents and institutions. *See, e.g., Paul, Hastings, Janofsky & Walker, LLP v. City of Tulsa*, OK, 245 F. Supp. 2d 1248, 1259 (N.D. Ga. 2002); *Jekyll Island-State Park Auth. v. Polygroup Macau Ltd.*, 140 F.4th

8

1304, 1328 (11th Cir. 2025). Marya cannot claim unfair surprise at being haled into a Georgia court where, as alleged, she sought to mobilize pressure against a Georgia employer and alter the employment status of a Georgia physician and professor. Litigating in this forum imposes no unfair burden on Marya.

Accordingly, Marya's motion to dismiss for lack of personal jurisdiction should be denied.

## II. Marya cannot obtain dismissal by "joining" arguments that do not address her conduct

Marya's attempt to "join" Mohammad's brief does not resolve claims based on Marya's distinct publications and conduct.[2] Unlike Mohammad, whose alleged misconduct centers on her own statements, Marya is alleged to have gone further— actively amplifying the campaign against Dr. Winer. She published accusations across her own platforms, paired them with identifying information about Dr. Winer, and repeatedly directed followers to use coordinated phone scripts and email templates to call for his investigation and termination. Id. ¶¶ 96–118.

---

[2] Marya begins her brief by purportedly "joining" the arguments advanced by Mohammad. Dkt. 153-1 at 1–2. That approach is particularly problematic because Mohammad's brief, in turn, incorporates the arguments of CAIR Foundation and CAIR Georgia. By adopting Mohammad's brief wholesale, Marya attempts to import arguments premised on the CAIR entities' alleged lack of involvement as speakers—arguments that have no application to Marya, who is alleged to have made her own statements. She makes no effort to show otherwise. To the extent the Court considers the arguments advanced by CAIR Foundation and CAIR Georgia, Dr. Winer relies on and incorporates his responses to those briefs.

Marya's Motion does not engage with a single allegation against her and instead simply substitutes Mohammad's arguments for any analysis of her own conduct—an approach that is untenable given that those arguments are directed at different statements and different actors. Courts in this District have rejected such incorporation by reference where it "foists upon the Court the burden of sifting through" multiple filings to identify the relevant arguments. *Biedermann v. Ehrhart*, No. 1:20-CV-01388-JPB, 2021 WL 1061794, at *1 (N.D. Ga. Mar. 19, 2021) citing *FNB Bank v. Park Nat. Corp.*, No. CIV.A. 13-0064-WS-C, 2013 WL 6842778, at *1 (S.D. Ala. Dec. 27, 2013). Marya makes no showing that Mohammad's arguments apply to her, yet adopts them wholesale. Given that Marya relies on those arguments, Dr. Winer addresses them below as applied to her own conduct. None provides a basis for dismissal.

## III. Dr. Winer States Claims Against Marya

### A. Marya's Statements Are Actionable and Not Protected Opinion

False statements that impute criminal conduct and professional unfitness to a particular person are plainly the kind of statements that are defamatory per se. *Andrews v. D'Souza*, 696 F. Supp. 3d 1332, 1352 (N.D. Ga. 2023); *Smith v. DiFrancesco*, 802 S.E.2d 69, 72 (Ga. App. 2017).

Marya's adoption of Mohammad's First Amendment argument fails at the outset. The SAC alleges concrete, verifiable statements of fact—not protected opinion. See Dkts. 153-1 at 1–2; 152-1 at 14–17.

Marya repeatedly accused Dr. Winer of personally participating in genocide, war crimes, and the destruction of the Gazan healthcare system, and declared him unfit to teach or practice medicine. Dkt. 130 ¶¶ 99–118. Those are not abstract views about geopolitics. They are direct accusations of specific misconduct by an identified individual.

The SAC alleges that Marya's statements about Dr. Winer are false, and it does so unequivocally. Following the October 7 terrorist attacks, Dr. Winer served in the IDF exclusively as a physician-medic and, at most, would have engaged in force only in a defensive capacity if his unit were attacked. *Id.* ¶ 37. Marya's accusations have no grounding in that conduct. She asserts, as a matter of fact, that Dr. Winer personally participated in genocide and other war crimes—terms that denote large-scale, intentional acts of extreme violence. Yet she identifies no specific conduct by Dr. Winer that would support those accusations. Instead, she invokes sweeping labels that necessarily imply particular acts of violence without alleging any corroborating acts. The SAC alleges that Dr. Winer engaged in no such conduct. *Id.* ¶ 42. Marya's statements are concrete, verifiable assertions of fact and, as pleaded, are false.

11

Marya's attempt to recast those accusations as opinion fails outright. Dkt. 152-1 at 17–18. She relies on cases that deal with statements about what another person thought or believed, as opposed to statements about what another person actually did. *See, e.g.*, *Gurmessa v Genocide Prevention in Ethiopia, Inc.*, No. 21–869–CFC, 2024 WL 4604400, at * 1 (D. Del. Sep. 11, 2024) (stating that Plaintiff "openly supports genocide, glorifying torture, lynching, massacre, and ethnic cleansing of Amhara ethnic groups in [the] Oromia Region of Ethiopia" were statements of opinion); *Turkish Coalition of Am., Inc. v. Bruininks*, 678 F3d 617, 625 (8th Cir 2012) (stating that a website discussing Armenian genocide was not credible was "essentially an opinion, not capable of being proven true or false"); *Turner v Wells*, 879 F3d 1254, 1270 (11th Cir 2018) ("the Defendants' classification of [a] gift—a male blow-up doll given to a player taunted for his supposed sexual orientation–as homophobic taunting is subjective and not readily capable of being proven true or false"); *Monge v Madison County Record, Inc.*, 802 F Supp 2d 1327, 1336 (ND Ga 2011) (Statement that plaintiff lawyer had "torpedoed" defendant client's case "is an opinion that is not actionable"); *Info. Sys. & Networks Corp. v City of Atlanta*, 281 F3d 1220, 1228 (11th Cir 2002) (statement that performance on a contract was "inadequate" was "an opinion—and thus subjective by definition—[and therefore] not capable of being proved false").

Accusing a specific individual of committing genocide or war crimes necessarily conveys factual assertions—at a minimum, that he personally engaged in large-scale, offensive acts of violence. The SAC alleges the opposite. Marya's statements are not commentary; they are factual allegations, and they are false.

Marya's reliance on generalized First Amendment principles is misplaced. She invokes cases addressing speech on matters of public concern, including *Snyder v. Phelps*, 562 U.S. 443 (2011), and *Gartenberg v. Cooper Union*, 765 F. Supp. 3d 245 (S.D.N.Y. 2025). Dkt. 152-1 at 14–15. Those decisions protect even offensive or unpopular expression about public issues. They do not immunize false statements of fact about an identifiable individual. The SAC does not challenge abstract commentary about Israel, Zionism, or the Israel–Hamas conflict. It challenges Marya's repeated assertions that Dr. Winer himself actually engaged in genocide and related atrocities. The First Amendment does not protect that kind of statement.

To the extent Marya means to suggest that these statements should be read as merely expressing the opinion that any Israeli military service in Gaza constitutes "aiding and abetting" war crimes, that is not only *deeply* offensive, but also an inference in Marya's favor, which is not permissible at the motion to dismiss stage.

Having accused Dr. Winer of committing some of the gravest crimes imaginable without any factual basis, Marya cannot now evade liability by invoking the First Amendment.

13

## B.  The SAC Adequately Pleads Actual Malice

Marya adopts Mohammad's argument that Dr. Winer is a public figure and must therefore plead that she acted with actual malice. Dkt. 152-1 at 18–19. That argument fails. Dr. Winer does not hold a position "with such pervasive fame or power" that would render him a public figure for all purposes. *Almanzar v. Kebe,* No. 1:19-CV-01301-WMR, 2021 WL 5027798, at *6 (N.D. Ga. July 8, 2021) citing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1974). Nothing in the SAC suggests that Dr. Winer possesses anything remotely approaching the pervasive fame or influence required to meet that standard.

Even under the more forgiving framework applicable to limited-purpose public figures, Marya's argument still fails. Whether a person qualifies as a limited-purpose public figure requires the court to (1) isolate the relevant public controversy, (2) examine the plaintiff's involvement in it, and (3) determine whether the alleged defamation was germane to that participation. *Silvester v. Am. Broad. Companies, Inc.*, 839 F.2d 1491, 1494 (11th Cir. 1988) (internal citation omitted); *Bennett v. Hendrix*, 426 F. App'x 864, 866 (11th Cir. 2011) (internal citation omitted). The SAC alleges only that Dr. Winer's piece in the *Times of Israel*, an Israeli news outlet, described his personal experience serving as a physician in the IDF and the motivations underlying that decision. Dkt. 130 ¶¶ 32–35. Dr. Winer's piece was published on the outlet's open blogging platform, which has an express disclaimer

14

that its contents are not vetted or endorsed and appeared beside Dr. Winer's article.[3] That is not the sort of publication that transforms its author from private individual into a public figure of any kind. Nor does it reflect any attempt by Dr. Winer to influence the outcome of a public controversy. *See Little v. Breland*, 93 F.3d 755, 758 (11th Cir. 1996). Here, the "public controversy" that Mohammad seeks to drag Dr. Winer into is the war in Gaza. But Dr. Winer did not opine on the war in Gaza in any way that makes him a public figure with regard to that controversy. Rather, his blog post reflected on the impact that the October 7 attacks had on him. Dkt. 130 ¶¶ 32–35. He discussed volunteering in Israel in fewer than 200 words, and even more briefly on volunteering in the IDF. *Id.* Any widespread attention Dr. Winer received on the topic of the war in Gaza was the result of Marya and her codefendants' conduct. *See Hutchinson v. Proxmire*, 443 U.S. 111, 135 (1979) ("To the extent the [plaintiff] became a matter of controversy, it was a consequence of [defendant's actions]. Clearly, those charged with defamation cannot, by their own conduct, create their own defense by making the claimant a public figure."). In any event, the public-figure inquiry is fact-intensive and cannot be resolved at the

---

[3] Joshua Winer, *An Ongoing Quest to Serve,* March 7, 2024, https://blogs.timesofisrael.com/an-ongoing-quest-to-serve/ (last visited April 22, 2026).

15

pleading stage prior to discovery. *Krass v. Obstacle Racing Media*, LLC, 1:19-cv-05785, 2021 WL 4824110, at *3 (N.D. Ga. Feb. 2, 2021).

Even if Dr. Winer were required to plead actual malice, the SAC easily satisfies that standard. Malice is "knowledge that a statement is false or a reckless disregard as to its truth." *Krass v. Obstacle Racing Media, LLC*, 667 F. Supp. 3d 1177, 1210 (N.D. Ga. 2023) (quotation omitted). The SAC alleges that Marya accused Dr. Winer of participating in genocide and war crimes despite having no factual basis and despite information available to her demonstrating the contrary. Dkt. 130 ¶¶ 37, 42, 99–100, 104–109, 111–118.

Marya's own conduct supplies that inference. She posted a link to Dr. Winer's piece in the *Times of Israel*, which expressly stated that he served in the IDF as a physician. Dkt. 130 ¶¶ 100, 114. The disconnect between the source material and Marya's accusations supports a straightforward inference that she acted with at least reckless disregard for the truth. *See Veritas v. Cable News Network, Inc.*, 121 F.4th 1267, 1283–84 (11th Cir. 2024).

Accordingly, Dr. Winer is not a public figure, limited or otherwise, and even if he were, the SAC plausibly alleges actual malice. Marya's arguments therefore provide no basis for dismissal.

16

## C. The SAC Is Not a Shotgun Pleading

Marya's adoption of Mohammad's shotgun-pleading argument fails. The SAC complies with Rules 8 and 10. It sets forth clearly delineated claims in numbered paragraphs and provides detailed, defendant-specific allegations. As to Marya, the SAC identifies numerous statements attributed directly to her, specifies when and where they were made, and explains why they are false and actionable. Dkt. 130 ¶¶ 96–118, 153, 163–166, 177, 190. There is no confusion as to what Marya is alleged to have done.

Nor is this a case where "a failure to more precisely parcel out and identify the facts relevant to each claim materially increased the burden of understanding the factual allegations underlying each count." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1324 (11th Cir. 2015). Each claim is clearly pleaded and logically builds on the prior one: the facts supporting Defamation (Count I) also support False Light (Count II) and those torts serve as the predicates for Dr. Winer's conspiracy claims (Counts III–IV).

Marya's attempt to adopt and rely on Mohammad's detailed merits arguments demonstrates that she fully understands the claims against her. As *Weiland* explains, "[t]his may explain why the defendants did not move for a more definite statement under Federal Rule of Civil Procedure 12(e) or otherwise assert that they were

17

having difficulty knowing what they were alleged to have done and why they were liable for doing it." *Id.*

Accordingly, the SAC is not a shotgun pleading, and Marya's attempt to characterize it as such fails.

**D. The SAC States a Valid Claim Under 42 U.S.C. § 1985(3)**

Marya's adoption of Mohammad's arguments regarding § 1985(3) fails. Dkt. 152-1 at 4–5. To state a cause of action under 42 U.S.C. § 1985(3), a plaintiff must allege (1) a conspiracy; (2) for the purpose of depriving either directly or indirectly, a person or class of persons of the equal protection of the laws, or the equal privileges and immunities; (3) an overt act in furtherance; and (4) an injury or deprivation of a right. *Dean v. Warren*, 12 F.4th 1248, 1255 (11th Cir. 2021). Count IV alleges that *all* Defendants, which plainly includes Marya, conspired to deprive Dr. Winer "of the equal protection of the laws and his rights and privileges" under the laws "on account of his Jewish identity and/or Zionist beliefs," including

> his [1] "right in every state to make and enforce contracts" on the same terms "as is enjoyed by white citizens," 42 U.S.C. § 1981, his right to be free from employment discrimination on the basis of "race . . . religion . . . or national origin," 42 U.S.C. § 2000e-2(a)(1), and his right not to be "subjected to discrimination under any program or activity receiving Federal financial assistance" "on the ground of race . . . or national origin." 42 U.S.C. § 2000d.

Dkt. 130 ¶ 189. Specifically, "Defendants undertook a coordinated effort to interfere with [Dr. Winer's] rights by publicly demanding that Emory investigate and/or terminate his employment because of their false accusations," *id.* ¶ 190, which were

18

predicated on "[Dr. Winer's] lawful military service and his expressed sense of duty to serve the Jewish homeland, which is integral to his racial identity as a Jew," *id*. ¶ 191. In doing so, "Defendants sought to" induce Emory "to terminate his employment [because of his race], a result that would violate Titles VI and VII of the Civil Rights Act, as well as 42 U.S.C. § 1981." *Id*. ¶ 193.

The SAC plausibly alleges the required conspiracy. It alleges that Defendants, including Marya, undertook a coordinated effort to interfere with Dr. Winer's employment by publicly accusing him of genocide and demanding that Emory investigate and terminate him because of his Jewish identity and associated Zionist beliefs. Dkt. 130 ¶¶ 189–193. It further pleads facts supporting a plausible inference of agreement. Marya repeatedly amplified Mohammad's accusations, expressed support for her, and directed her followers to the same email template and phone script calling for Dr. Winer's investigation and termination. *Id*. ¶¶ 99–100, 104–118. She did so in close temporal proximity to Mohammad's statements and, at times, expressly referenced them while promoting the same campaign materials. *Id*. That conduct supports a plausible inference of agreement and, at minimum, constitutes overt acts in furtherance of the conspiracy.

Marya's reliance on cases limiting § 1985(3) claims against private actors is misplaced. As this Court has already concluded, dkt. 129 at 7–15, Dr. Winer's claim is *at least* colorable because the Supreme Court has held that a §1985(3) reaches

19

purely private conspiracies where the right at issue is one that can be violated without state action, *see Griffin v. Breckenridge*, 403 U.S. 88 (1971), and Jewish identity qualifies as a protected class and racial group, *Shaare-Tefila Congregation v. Cobb*, 481 U.S. 615, 617–18 (1987); *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 448, (2008); *see also* dkt. 129 at 12 (Plaintiff's argument under Title VII and § 1981 is "colorable," and the Title VI claim "facially satisf[ies] the elements of a § 1985(3) claim[.]").

Indeed, while "the rights protected under Title VII" have been held "insufficient to form the basis of § 1985(3) actions against private conspirators," *Jimenez v. Wellstar Health System*, 596 F.3d 1304, 1312 (11th Cir. 2010), those cases relied on the detailed remedial scheme in place for a Title VII plaintiff against their employer. *See Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366 (1979). Here, by contrast, the SAC does not seek to bypass the remedial scheme for a Title VII claim against Emory, but rather to hold the defendants accountable for a conspiracy to provoke Emory to terminate Dr. Winer because of his Jewish identity—a result that would violate Title VII. *See* 42 U.S.C. § 1985(3) (conspiracies are actionable if their "purpose" is to deprive the plaintiff of rights, "either directly or indirectly," so long as the plaintiff is "injured in his person or property" even if his rights are not ultimately violated). Therefore, properly understood, *Novotny* and *Jimenez* pose no bar to Dr. Winer's § 1985(3) claims predicated on Title VII. *See*

20

*Resnick v. KrunchCash, LLC*, 34 F.4th 1028, 1038 (11th Cir. 2022) (Agreeing that the plaintiffs' "Fourteenth Amendment claim [was] not 'clearly foreclosed' by" a U.S. Supreme Court case because "Plaintiffs say that their claim is distinguishable from" that case for plausible reasons).[4]

Similarly, while the Eleventh Circuit has also rejected a § 1985(3) claim predicated on § 1981 in *Jimenez*, that was principally based on the Court's conclusion that "even if interference with contract and property rights could sustain a § 1985(3) claim, Jimenez ha[d] not adequately pled interference with any such rights" because interference with his relationship with patients and the "suspension of medical staff privileges" did not "implicate any contractual relationship" as a matter of Georgia law. 596 F3d at 1310, 1312. Here, Dr. Winer alleges straightforward interference with his employment relationship with Emory, which is a proper subject of a contractual relationship under Georgia law.

Of course, *Jimenez* also stated that "conspiracies to violate rights protected under § 1981 are . . . insufficient to form the basis of a § 1985(3) claim" because (it thought) Title VII claims were barred, and "[t]his Circuit has routinely and systematically grouped Title VII and § 1981 claims for analytic purposes." *Id*. But given the fact that Jimenez could not even plead a contract, this broader statement is

---

[4] For more detail on how Title VI, Title VII, and § 1981 form valid predicates for a claim under § 1985(3), *see* Dkt. 144 at 21–24.

21

dicta. *See In re BFW Liquidation, LLC*, 899 F.3d 1178, 1186 (11th Cir. 2018) ("If a statement is not necessary to the result the Court reached in the case, then the statement is dictum." (quotation omitted)).

Finally, and in all events, neither the Supreme Court nor the Eleventh Circuit has ever held that Title VI is not a valid predicate for a § 1985 claim. *See* Dkt. 109 at 15–16 (explaining why a Seventh Circuit decision on this point is wrong); *See also* Dkt. 129 at 13.

The SAC also plausibly alleges the required class-based, invidiously discriminatory animus required for a § 1985(3) claim. As discussed above, it is well settled that Jewish identity constitutes a protected class under federal civil rights law. Marya's adoption of the argument that "anti-Zionism is not antisemitism" mischaracterizes the SAC and does not defeat its allegations that Defendants targeted Dr. Winer because of his Jewish identity. *See* Dkt. 152-1 at 10–13. The SAC does not assert that all criticism of Israel or Zionism is antisemitic. It alleges that Defendants seized on Dr. Winer's Jewish identity—expressed through his Zionist beliefs and his service in the IDF—to brand him a genocidal war criminal, declare him unfit to teach or practice medicine, and demand that Emory terminate his employment. *See, e.g.,* Dkt. 130 ¶¶ 8–11, 107–111.

For many Jews, including Dr. Winer, Zionism reflects the historic connection of the Jewish people to Zion, a place in Jerusalem identified in the Hebrew Bible as

22

the origin of Jewish peoplehood.[5] Treating that identity and connection as grounds for professional exclusion is precisely the type of discrimination civil rights law forbids. *See*, *e.g.*, *Shaare-Tefila Congregation*, 481 U.S. at 617–18. At the pleading stage, these allegations are more than sufficient to allege class-based animus. And Mohammad's contention that Zionism is merely a political philosophy—as opposed to a component of Jewish identity—simply because not all Jews are Zionists is as untenable as arguing that a religious practice falls outside the protection of civil rights law because it is not universally observed. Zionism, for many Jews, is not an abstract policy preference; it is bound up with Jewish peoplehood as an expression of the historic and religious connection to Zion itself. The fact that not all Jews share or prioritize that aspect of identity is legally irrelevant. Not all Jews keep kosher, but that does not permit discrimination against those who do on the ground that kosher observance is merely a "choice" rather than an aspect of Jewish identity. Not all Christians observe Lent, but that does not permit discrimination against those who do on the ground that Lenten observance is merely a "choice" rather than an aspect of Christian identity. The same principle applies here: one cannot single out Jews who identify with Zionism and strip them of protection by recharacterizing that

---

[5] Mark Goldfeder, *Codifying Antisemitism*, 127 Penn St. L. Rev. 405, 421–22 (2023) ("the primary collective expression of Jewish identity is through Jewish self-determination in their nation state").

identity as a mere political viewpoint. Civil rights law does not allow defendants to redefine the contours of a protected class to exclude the very individuals they target.

Accordingly, Dr. Winer has plausibly alleged a conspiracy motivated by class-based animus that resulted in concrete injury to his rights. The § 1985(3) claim should not be dismissed.

## CONCLUSION

For the foregoing reasons, Defendant Marya's Motion to Dismiss the SAC should be denied in its entirety.

Dated: April 28, 2026    Respectfully Submitted,

/s/ Lauren Israelovitch    Josh Belinfante
Lauren Israelovitch     Anna Edmondson
Mark Goldfeder      Miles Skedsvold
Ben Schlager      ROBBINS ALLOY BELINFANTE
NATIONAL JEWISH       LITTLEFIELD LLC
ADVOCACY CENTER, INC.   500 14th Street, NW
3 Times Square, Suite 512   Atlanta, GA 30318
New York, NY 10036    T: (678) 701-9320
(914) 222-3828      E: mskedsvold@robbinsfirm.com
lauren@njaclaw.org     Ga. Bar No. 371576
Pro Hac Vice


/s/ David F. Katz
David F. Katz      Esther Panitch
THE D.F. KATZ LAW FIRM, LLC THE PANITCH LAW GROUP, PC
1158 Jones Bridge Rd    4243 Dunwoody Club Drive
Ste 420 PMB1090     Suite 205
Johns Creek, GA 30022   Atlanta, GA 30350
T: (404) 918-5707     esther@panitchlawgroup.com
Dkatz@dfkatzlawfirm.com   Ga. Bar. No. 143197
Ga. Bar. No. 408738

25

## CERTIFICATE OF COMPLIANCE

By signature below, counsel certifies that the foregoing pleading was prepared in Times New Roman, 14-point font, in compliance with Local Rule 5.1(C).

/s/ Lauren Israelovitch
Lauren Israelovitch

26

## CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically filed the within and foregoing **RESPONSE IN OPPOSITION TO RUPA MARYA'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT** with the Clerk of Court using the CM/ECF electronic filing system, which suffices for service on all counsel of record who have entered an appearance in the case under L.R. 5.1(A)(3).

This 28th day of April, 2026

*/s/ Lauren Israelovitch*
Lauren Israelovitch

27