**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

Joshua Winer,

     Plaintiff,

v.

Umaymah Mohammad, et. al.,

     Defendants.

Civil Action No.: 1:25-cv-02329

`

**DEFENDANT DOCTORS AGAINST GENOCIDE SOCIETY'S REPLY IN
SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S SECOND
<u>AMENDED COMPLAINT</u>**

## I.    INTRODUCTION

Plaintiff is a physician and professor, who chose to volunteer with a foreign military during an offensive that the international community has widely condemned as a genocide. When Plaintiff returned to his teaching position after participating in that operation, he decided to use his platform to publish an op-ed in a major news outlet, the *Times of Israel*, legitimizing the IDF's actions and boasting about his participation in an "elite reconnaissance unit".

Later, one of Plaintiffs' Palestinian students discovered his op-ed and felt unsafe knowing that her professor had participated in a genocide against Palestinians just like her, providing support for military operations that mostly consisted of bombing hospitals and ambulances, demolishing civilian infrastructure, sniping doctors and nurses, and maiming and murdering children, the elderly, and the infirm. After the student shared her feelings on the matter with a friendly news outlet, Plaintiff brought this utterly frivolous lawsuit. When Palestinian doctors and organizations across the country spoke in defense of the student, Plaintiff turned his sites on them as well, dragging them into federal court on an entirely unsupported Civil Rights Act claim.

Not one single claim survives the minimal pleading requirement under Rule 12(b)(6), and this punitive and retaliatory campaign by Plaintiff must be dismissed with prejudice before he achieves his intended effect: chilling protected speech on a topic of utmost public concern—an ongoing genocide.

2

## II.    ARGUMENT

Plaintiff has failed to establish jurisdiction over DAG because he has not alleged any non-defamation conduct targeted at the forum, nor that DAG engaged in any persistent course of conduct in Georgia. Even if Plaintiff could establish jurisdiction, he nonetheless fails to plausibly plead any of his invoked causes of action. Plaintiff has failed to identify a single defamatory statement by DAG, and relies entirely on misquotes and misattributions of third-party speech. Plaintiff offers zero facts to plausibly show DAG agreed to a common design with any codefendant to accomplish an illegal end or a lawful end through illegal means. Nor has Plaintiff plead a single fact to support his bald claim that his Jewish ethnicity played any part *whatsoever* in motivating DAG's speech. Zionists and IDF volunteers are very obviously not protected classes under § 1985(3), and Plaintiff's civil rights conspiracy claim is incurably defective.

### A. Plaintiff Still Fails to Establish Personal Jurisdiction Over Doctors Against Genocide Under F.R.C.P. 12(b)(2)

Plaintiff concedes that DAG is not a resident of Georgia, but argues that jurisdiction exists under subsections (2) and (3) of Georgia's long-arm statute. O.C.G.A. § 9-10-91(2)-(3). Plaintiff cannot establish jurisdiction under either.

Plaintiff cannot establish jurisdiction under subsection (2) of the long-arm statute, which confers jurisdiction over any "tortious act or omission within this state, except as to a cause of action for defamation of character arising from the

3

act". O.C.G.A. § 9-10-91(2). The alleged culpable conduct for all three tort claims in the SAC is defamation of character, which is explicitly not a basis for long arm jurisdiction in Georgia. *Black v. Skinary App, Inc.*, 2024 US Dist LEXIS 136035, at *10 (N.D. Ga. Aug. 1, 2024) ("[T]o the extent that the 'tortious act' in question is defamation, the long-arm statute specifically excludes that from its reach"); *Mueller v. Ebay, Inc.*, 2021 US Dist LEXIS 201597, at *3-4 (N.D. Ga. Jan. 6, 2021) ("[P]ublication of defamatory information in Georgia standing alone is insufficient to establish personal jurisdiction under Georgia's long-arm statute... the commission of acts solely related and giving rise to a defamation claim do not fall within the Georgia longarm statute"). There is a good reason for this: "First Amendment considerations surrounding the law of libel require a greater showing of contact to satisfy the due process clause." *Weinstock v. Gannett, Inc.*, 2001 WL 1147214, *2 (N.D. Ga. June 20, 2001) (quoting *New York Times Co. v. Connor*, 365 F.2d 567 (5th Cir. 1966)).

Plaintiff argues that the statute's explicit exemption of actions "solely related and giving rise to" defamation "is immaterial where, as here, the plaintiff asserts claims over which the court had jurisdiction." (ECF No. 175 at p. 5). Plaintiff ignores the fact that the same constitutional considerations that militate against exercising long-arm jurisdiction over defamation apply equally to "related causes of action" such as "false light and tortious interference". *Leise v. Vermont Hum. Rights Commn.*, 2023 US Dist LEXIS 50354, at *72-73 (D. Vt. Mar.

24, 2023) (citing *Farah v. Esquire Mag.*, 736 F.3d 528, 540 (D.C. Cir. 2013)); *Moldea v. NY Times Co.*, 22 F3d 310, 319 (1994) ("[A] plaintiff may not avoid the strictures of the burdens of proof associated with defamation by resorting to a claim of false light invasion" (internal citations omitted)).

Because the tortious conduct alleged in this case is defamatory speech, Plaintiff cannot get around the considered exemption of such conduct from the the state's long-arm statute by simply slapping a different label on his cause of action. Nor does his implausible assertion of animus as a motivation change the fact that the only conduct alleged to have been targeted at the forum was pure speech. Indeed, Plaintiff's civil rights conspiracy claim is in effect a claim for conspiracy to commit tortious interference through defamatory speech, with a conclusory assertion of animus tacked on top. Nor is Plaintiff's allegation of "the bare existence of a conspiracy" with Georgia defendants "enough to support long arm jurisdiction without a further showing of a 'contact' with the forum". *Sprint Nextel Corp. v. Ace Wholesale, Inc.*, 2014 US Dist. LEXIS 21598, at *23-25 (N.D. Ga. Feb. 20, 2014).

Plaintiff cannot establish jurisdiction under subsection (3) of the long-arm statute because he utterly failed to allege DAG engages in any "persistent course of conduct" in Georgia nor "regularly does or solicits business" there, nor "derives substantial revenue from goods" from any activity there. O.C.G.A. § 9-10-91(3). There is simply no allegation of any of this in the SAC, and Plaintiff

doesn't even attempt to cite to one in his Opposition brief. Instead, Plaintiff tries to salvage his claim by impermissibly adding new factual allegations in his Opposition. *See* ECF No. 175 at p. 6 (alleging "upon information and belief" that "DAG has co-founders and/or members (including Defendant Mohammad) who live and work in Georgia and create and/or implement DAG programming from within the state, target individuals in the state with its programming, and generally support DAG's mission from within the state"). None of these vague, general, brand-new assertions are supported by a single specific factual allegation that could render them plausible, and only the "co-founder" allegation was plead in the SAC. "A plaintiff cannot amend the complaint by arguments of counsel made in opposition to a motion to dismiss." *In re Androgel Antitrust Litig. (No. II)*, 687 F.Supp.2d 1371, 1381 (N.D. Ga. 2010) (quoting *Kuhn v. Thompson*, 304 F.Supp.2d 1313, 1321 (M.D. Ala. 2004)). Because none of these assertions were plead in the SAC, Plaintiff cannot plead them in the first instance in a brief.

Even if these four new assertions had been plead in the SAC, they would still be an abuse of pleading "upon information and belief" because none of them are supported by any specific facts that could render them plausible. *Price v. Howard*, 2023 WL 2767770, at *2 (N.D. Ga., March 31, 2023) ("Conclusory allegations made upon information and belief are not entitled to a presumption of truth, and allegations stated upon information and belief that do not contain any factual support fail to meet the *Twombly* standard"). The only fact alleged

6

that could even remotely relate to these conclusory assertions is that "[b]oth Mohammad and Marya recently presented as DAG panelists and hosted DAG webinars." ECF No. 130 at ¶ 17. This factual claim does not render plausible Plaintiff's inference that Marya and Mohammad are "co-founder(s)" of DAG, nor that they *create* any DAG programming or "target" it toward Georgia. The simple fact that two people in Georgia spoke on a panel or webinar supported by DAG provides no "factual support" for Plaintiff's new sweeping allegations upon information and belief. *Price*, 2023 WL 2767770, at *2.

Finally, due process concerns also weigh against an exercise of jurisdiction. If mere encouragement of Emory to reinstate Mohammad and investigate and hold accountable any employees who participated in genocide were sufficient, Plaintiff could sue every single person who sent the template email or made the phone call. Anyone in the country who so much as shared an Instagram post calling for Emory to investigate Plaintiff based on his IDF activities would be subject to suit. No Defendant would "reasonably anticipate being haled into court" on such minimal contacts with the forum, and such speech does not show "purposeful availment of the privilege of conducting activities within the forum". *Del Valle v. Trivago GMBH*, 56 F.4th 1265, 1275 (11th Cir. 2022).

7

Because Plaintiff failed to "alleg[e] in the complaint sufficient facts to make out a prima facie case of jurisdiction," this case must be dismissed.[1]

### B. Plaintiff Still Cannot Plausibly Plead a Single Cause of Action Against DAG

Plaintiff's claims are each subject to dismissal under Rule 12(b)(6). Plaintiff cannot identify a single statement by DAG that asserts a fact against him that is provably false. Nor has Plaintiff offered anything more than bald conclusions to support his allegation that DAG agreed with any other party to pursue a common design of achieving an unlawful end through lawful means or a lawful end through unlawful means. Finally, Plaintiff has not identified a valid legal basis for his § 1985(3) claim, nor any factual basis whatsoever to show unlawful animus motivated any of DAG's statements.

### i. Plaintiff still cannot identify a single false and defamatory statement attributable to DAG.

Plaintiff concedes that the topic of Israel's genocide in Gaza—and the role of the IDF—is a matter of public concern. ECF No. 163-1 at 14-15. Plaintiff must

---

[1] Plaintiff has not moved for jurisdictional discovery but asserts that he is entitled to it "as of right". ECF No. 175, at p. 6, n. 3. Plaintiff is wrong—he must still establish prima facie jurisdiction without the help of discovery, and "bald assertions. . . cannot suffice". *See Diulus v. American Express Travel Related Services Company, Inc.*, 823 Fed. Appx. 843 (11th Cir. 2020) (in case arising in N.D. Ga., a plaintiff is not entitled to jurisdictional discovery "if 'the complaint was insufficient as a matter of law to establish a *prima facie* case that the district court had jurisdiction'") (quoting *Butler v. Sukhoi Co.*, 579 F.3d 1307, 1314 (11th Cir. 2009); *see also Weinstock*, 2001 WL 1147214, *4.

therefore show fault and falsity. *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 776 (1986). Plaintiff cannot show either.[2]

The conduct Plaintiff identifies in support of his defamation claim against DAG is limited to: (1) referring to the Israeli Defense Force as the "Israeli Offense Force" (ECF No. 130 at ¶ 145(a)); (2) "permit[ing] defamatory third-party comments to remain publicly visible" on social media posts (*Id.* at ¶ 145(b)); (3) making a post "includ[ing] a hyperlink" to a website that asked Emory to "investigate" and "remove" "faculty and students endorsing Israel's apartheid regime" (*Id.* at ¶ 145(c)); (4) "includ[ing] a hyperlink" to a website that included an email stating that Plaintiff "has written openly about his participation in a military campaign that has been condemned as a genocide" (*Id.*at ¶ 145(d)); and (5) stating that it agrees with Mohammad's "truthful statements, that any physician who served in the IDF within the prior sixteen months had perpetuated genocide" (*Id.* at ¶¶ 91, 145(e)). Not a single one of these asserts a false fact against Plaintiff, and none of them plausibly constitute defamation.

Plaintiff cites *Andrews v. D'Souza* for the proposition that accusations "imputing criminal conduct and professional unfitness to a particular person"

---

[2] Plaintiff argues, in a footnote, that this Court should reject DAG's request for judicial notice of these widespread and serious accusations because it involves facts "inherently subject to dispute". *See* ECF No. 175, at p. 10, n. 4. But the fact that the accusation has been made by overwhelming numbers of human rights institutions and found plausibly alleged by a federal district court is not "subject to reasonable dispute", and is therefore properly subject to judicial notice.

are "defamatory *per se*." ECF No. 175 at 8 (citing *Andrews*, 696 F.Supp. 3d 1332 1352 (N.D. Ga. 2023)). But the *Andrews* Court made it clear that such accusations are only defamatory *per se* if the statement "give[s] the impression that the crime is actually being charged against the individual". 696 F.Supp. 3d at 1352. Plaintiff never alleges any statement by DAG that plausibly gives the impression that he has actually been charged with the criminal offense of genocide, nor could he.

In a belated attempt to overcome his obvious failure to plead, Plaintiff blatantly misquotes DAG in his Opposition, inserting text in square brackets to give the false impression that DAG's statements were targeted against him individually, when the original quotes in the SAC make it clear that DAG's statements were general expressions of opinion. Plaintiff quotes DAG as having called for Emory to "hold [Dr. Winer] accountable", when the original text does not single out Plaintiff at all. *Compare* ECF No. 175 at p. 3 *with* ECF No. 130 at ¶ 88 ("Hold faculty and students accountable for their participation in or legitimization of the genocide of Palestinians"). In a more egregious example, Plaintiff pretends to quote DAG as having stated, verbatim, "'*[t]his man* [i.e., Dr. Winer] *participated in* aiding and abetting a genocide, in aiding and abetting the destruction of the healthcare system in Gaza,' '*perpetuated* a genocide'; and '*inflict[ed]* dismemberment, torture, and slaughter.'" ECF No. 175 at 9 (emphasis added by Plaintiff). These quotes do not appear in the cited paragraph of the SAC, and for good reason—they are (edited) quotes from Mohammad's

Democracy Now! interview, deceptively strung together with snippets of DAG's different posts, each yanked out of context, to give the false impression of being one continuous statement made by DAG, alleging specific facts about Plaintiff.

In fact, all that DAG is shown to have said in the SAC is that it believes that *any* faculty or student who *has* participated in genocide *should* be held accountable. ECF No. 130 at ¶ 84. This is clearly a statement of "opinion" about what should be done on a topic of public concern, and "is not libelous". *Bergen v. Martindale-Hubbell*, 176 Ga. App. 745, 747 (1985). Plaintiff has failed to rebut the argument that allegations of "genocide" express a "subjective view, an interpretation, a theory, conjecture, or surmise." *Gurmessa v. Genocide Prevention in Ethiopia, Inc.*, 2024 U.S. Dist. LEXIS 141596, at *13–15 (D. Del. Aug. 8, 2024) (adopted in relevant part at *Gurmessa v. Genocide Prevention in Ethiopia, Inc.*, 2024 U.S. Dist. LEXIS 197686, at *4 (D. Del. Sep. 11, 2024)); ECF No. 163-1 at p. 18, n. 6.

Plaintiff argues that Section 230 of the Communications Decency Act does not shield DAG's republication of third-party content (in this case the phone and email scripts and Mohammad's speeches and interviews). *See* ECF No. 175 at p. 12. But the caselaw Plaintiff cites in support is inapposite here, because he has not alleged any defamatory content for which DAG was "responsible, in whole or in part". *Malwarebytes, Inc. v. Enigma Software Grp. USA, LLC*, 141 S. Ct. 13, 16 (2020). The only content that allegedly called for Emory to fire Plaintiff was on the websites that DAG shared in its social media posts. DAG is not alleged to

have "create[ed]" or "develop[ed]" the allegedly defamatory content on these sites "in whole or in part", nor even to have contributed to it. *Id..*

Plaintiff's citation to *Tanisha Systems, Inc. v. Chandra* actually proves DAG's defense: the Court held that a defendant's "adoption" of and "vouching" for content created and published by a third party, coupled with the republication of a blog link, were "insufficient to show he helped develop or create the content of the blog post." *Tanisha Sys. Inc.*, 2015 WL 10550967, at *8 (N.D. Ga. Dec. 4, 2015). That case is on point here, and DAG's "vouching" for, "adoption" of, and reposting of the link to third party content that contained allegedly defamatory speech does not subject it to liability under the CDA. *See also Internet Brands v. Jape*, 760 S.E.2d 1,4 (Ga.Ct.App.2014) ("the test is not whether the objectionable content was 'endorsed,' but instead whether the content was 'independently created or developed by third-party users.'"); *Directory Assistants, Inc. v. Supermedia, LLC*, 884 F.Supp.2d, 446, 451 (E.D. Va. 2012) ("a user of an interactive computer service who finds and forwards via e-mail that content posted online in an interactive computer service by others is immune from liability").

Plaintiff argues that immunity under Section 230 is an affirmative defense not properly raised in a motion to dismiss, but where an affirmative defense "is apparent on the face of the complaint" — as here, where the SAC makes it clear that DAG merely republished and "vouched" for third party content — the defense is properly considered in a Motion to Dismiss. *See Isaiah v. JPMorgan*

12

*Chase Bank*, 960 F.3d 1296, 1304 (11th Cir. 2020) (citing *Bingham v. Thomas*, 654

F.3d 1171, 1175 (11th Cir. 2011) and *Jones v. Bock*, 549 U.S. 199, 215 (2007)).

> ### ii. Plaintiff has still failed to plead any fact that could plausibly show an agreement with any other party sufficient to plead civil conspiracy of civil rights conspiracy.

Plaintiff alleges no facts whatsoever that could support an inference that

DAG conspired with Defendants Mohammad and NSJP to achieve any illegal

objective or any lawful objective by illegal means. Conclusory assertions of an

agreement between Defendants, without specific facts alleged in support, are

inadequate to plead a claim for conspiracy. *Parm v. National Bank of California,*

*N.A.*, 242 F.Supp.3d 1321, 1350 (N.D. Ga. 2017). The only alleged conduct by

DAG—publication of the two Instagram posts with NSJP "tagged" as a

"collaborator"—is insufficient to show any specific agreement or common design

between Defendants to take any particular course of action, rather than parallel

conduct in support of Mohammad. Plaintiff alleges no particular communication

at all between DAG and any other Defendant, and offers no factual support for

his bald, conclusory allegation of an agreement.

> ### iii. Plaintiff has failed to marshal a single piece of factual support to render his animus allegation remotely plausible.

Plaintiff's § 1985(3) claim requires "some racial, or perhaps otherwise

class-based, invidiously discriminatory animus behind the conspirators' action."

13

*Dean v. Warren*, 12 F.4th 1248, 1255 (11th Cir. 2021) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971)).

Plaintiff baldly claims that Defendants were motivated by his "Jewish identity," but there is not one single fact alleged against DAG that could render this assertion plausible. Plaintiff cannot cite a *single* statement or communication by DAG referencing his religion *whatsoever*, nor even targeting his national origin. The DAG posts reproduced in full in the SAC plainly evince a purpose that is obviously more plausible than Plaintiffs' unadorned conclusions: supporting a suspended Palestinian student and calling on Emory to make sure anyone who participated in or legitimized genocide is held accountable in some manner. ECF No. 130 at ¶¶ 85, 95. Plaintiff's allegation of antisemitic animus is "no more than [a] conclusion[]" and is "not entitled to the assumption of truth". *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). Plaintiff must allege specific facts that render his conclusions plausible—but here, he cannot identify a single fact that supports an inference of antisemitic motive. Because there is not a single fact offered or alleged that could render Plaintiff's anti-Jewish animus allegation plausible, he has failed to plead his claim.

Because he cannot plausibly allege any defendant was motivated by animus toward Jewish people, Plaintiff asserts that Defendants targeted him "for expressing his Zionism" (ECF No. 130 at ¶ 193), his "Zionist beliefs" (*Id.* at ¶ 189), his "association with Zionism" (*Id.* at ¶ 192), or his "association with the

14

IDF" (*Id.* at ¶ 10) — a Zionist military" (*Id.* at ¶ 197). Plaintiff has no legal support whatsoever for this vast, dangerous expansion of § 1985(3). This Court has held, numerous times, that national identity and political beliefs are not cognizable as protected classes under § 1985(3). *See Fiske v. Lockheed-Georgia Co., Div. of Lockheed Corp.*, 568 F. Supp. 590 (N.D. Ga. 1983) (§ 1985(3) does not reach politically motivated conspiracies); *Smith v. Turner*, 764 F. Supp. 632, 1991 U.S. Dist. LEXIS 7131 (N.D. Ga. 1991) (§ 1985(3) does not provide remedy for "every concerted effort by one political group to nullify influence of or do other injury to competing group by use of otherwise unlawful means"); *Bauge v. Jernigan*, 671 F. Supp. 709 (D. Colo. 1987) (plaintiff's claim of discrimination based on his Norwegian citizenship is not within the scope of § 1985 protection). As foreign citizens are not a protected class, neither are soldiers in a foreign military.

Plaintiff's Opposition string-cites three cases to support his baseless legal claim, and represents them as standing for the proposition that "a foundational element of Jewish identity includes a profound tie to Zion, the birthplace of Jewish peoplehood, located in modern-day Israel." ECF No. 175 at 23, citing *Shaare-Tefila Cong. v. Cobb*, 481 U.S. 615, 617–18 (1987); *LeBlanc-Stenberg v. Fletcher*, 781 F. Supp. 261, 267 (S.D.N.Y. 1991); and *Sinai v. New Eng. Tel. & Tel. Co.*, 3 F.3d 471, 474–75 (1st Cir. 1993). None of these cases provide support for Plaintiff's claim that Zionists — or even Israelis — are a protected class under § 1985(3). None of these cases includes the word "Zion" and only *Sinai* even mentions "Israel". In

15

*Sinai* the court did *not* hold that "Israeli" is plausibly a protected class—it merely affirmed a jury instruction that "national origin discrimination could be used, *together with other evidence*, to arrive at a conclusion vis-à-vis race discrimination." *Sinai*, 3 F.3d at 475 (emphasis added). Because Defendants' anti-Zionism is the *only* evidence Plaintiff offers to show animus here, this case is distinguishable.

The case *Landau v. Corporation of Haverford College* is far more on point, and rejected the exact equivalency Plaintiff proffers here. 780 F. Supp. 3d 548 (E.D. Pa. 2025). The *Landau* court rejected the premise that anti-Zionism or criticism of Israel is antisemitic, and rejected the plaintiffs' attempt to "blur the line between Zionism as a political philosophy and Zionism as a component of Jewish identity" and "implicitly sweep any and all criticism of Israel into the basket of antisemitism." *Id.* The Court "reject[ed] Plaintiffs' embedded proposition that any anti-Israel speech is intrinsically antisemitic, because reasonable people acting in good faith can challenge decisions of the Israeli government without harboring antisemitic views." *Id.*

## III.   CONCLUSION

Plaintiff has now had three opportunities to plead a cause of action against DAG, and each time he has failed. The docket in this case now includes more than 175 entries, and the issues in this brief have been briefed multiple times by each of nine defendants. The defects in Plaintiff's causes of action are incurable, and this case should be dismissed with prejudice.

16

Respectfully submitted this 12th day of May, 2026.

/s/ Collin Poirot
Collin Poirot
(*pro hac vice*)
New York SBN: 5673405
2603 Oak Lawn Ave., Ste 300
Dallas, TX 75219
(214) 392-2281
Cpoirot.law@gmail.com

/s/ Akil Secret
Akil Secret
Georgia Bar No. 634075
The Secret Firm PC
P.O. Boc 91028
Atlanta, GA 30364
(404) 524-5300
asecret@thesecretfirm.com

*Attorneys for Doctors Against Genocide
Society (DAG)*

17

## CERTIFICATE OF COMPLIANCE WITH L.R. 5.1

I HEREBY CERTIFY that the foregoing document was prepared in Book Antiqua 13-point font, as approved by Local Rule 5.1.


Dated: May 12, 2026                          */s/ Collin Poirot*
                                             Collin Poirot