**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

Joshua Winer,

     Plaintiff,

v.

Umaymah Mohammad, et. al.,

     Defendants.

Civil Action No.: 1:25-cv-02329

`

**DEFENDANT NATIONAL STUDENTS FOR JUSTICE IN PALESTINE'S
REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S SECOND
AMENDED COMPLAINT**

## I.    INTRODUCTION

Dr. Winer essentially argues that because *he* avoided the word "genocide", his article, in a publication with eight million readers, could not be *about* genocide. As Lewis Carroll's Humpty Dumpty observed in *Through the Looking-Glass*, the power to assign meanings is ultimately a question of 'which is to be master.'" Lewis Carroll, *Through the Looking-Glass, and What Alice Found There* ch. 6, at 112 (Macmillan 1872).  So to, here, plaintiff thinks himself the master who can contort the meaning of NSJP's words to suit his argument.  That *he* stepped around the word, and the facts that word frighteningly describes does not free him from discussion of the very acts he has broadcasted so loudly.[1]

## II.    ARGUMENT

Plaintiff's claims are each subject to dismissal under Fed. R. Civ. Proc. 12(b)(6). Plaintiff cannot identify a single statement by NSJP that asserts a fact against him which is provably false. Nor has Plaintiff offered anything more than bald, conclusory assertions in support of his allegation that NSJP agreed with any other party to achieve an unlawful end through lawful means, nor a lawful end through unlawful means. Finally, Plaintiff has not identified a legal basis for

---

[1]  Undersigned counsel (Mark Kleiman) apologizes to the Court and to Plaintiff's counsel for being half a day late with this filing.  I have had a round of unplanned-for medical appointments and diagnostic tests that that consumed time I had planned to use for this Reply.

his § 1985(3) claim, nor any factual basis whatsoever to show unlawful animus motivated any of NSJP's statements.

### A. Plaintiff Still Cannot Plausibly Plead Defamation

#### i. Plaintiff is a limited public figure on the controversy of whether the IDF's conduct in Gaza is morally or legally defensible

Plaintiff is, at the very least, a limited public figure on the controversy of "the nature and legality of Israel's military campaign in Gaza following the October 7, 2023 Hamas attacks". ECF No. 166, at p. 10. Plaintiff does not bother to deny that this issue was clearly "being debated publicly" and the debate "had foreseeable and substantial ramifications for nonparticipants." *Silvester v. Am. Broad. Co.*, 839 F.2d 1491, 1494 (11th Cir. 1988).

Plaintiff argues that he did not voluntarily inject himself into the controversy, because his op-ed "does not, and could not reasonably be expected to, influence any broader public debate". ECF No. 177 at p. 7. Plaintiff significantly downplays his impassioned call to action in the op-ed, recasting the piece as merely about his "personal experience providing medical care in a conflict zone" and claims that he "did not advocate for or against" the IDF's actions in Gaza. *Id.*, at 8. Plaintiff should reread his op-ed, because he appears to have forgotten its contents.

Far from the personal reflection on conflict medicine that Plaintiff portrays it as in his opposition, the op-ed is decidedly *not* about conflict medicine.

3

Plaintiff's op-ed never mentions any particular medical operations the conflict-related challenges thereto. Instead, Plaintiff chose to focus exclusively on the importance of supporting the IDF campaign in Gaza. Indeed, the only specific incident that Plaintiff saw fit to recount from his four months in Gaza was a Shabbat dinner where the Rabbi reminded him of "why all of us were in Gaza *and why we must continue to fight*".  Plaintiff recounts how, feeling a "connection to each other and Am Yisrael", he and the other soldiers "sang loudly and proudly *as one nation*."

Plaintiff chose to legitimize the IDF's military campaign in Gaza, leaning on his ethos as a surgeon from "an elite reconnaissance unit" to assert: "What I saw in Gaza wasn't the revenge of a humiliated nation, rather it was a determination that nothing like Oct. 7 would ever happen again." Plaintiff states that his moving experience of Israeli nationalism, and the rabbi's lesson of "why we must continue to fight", left him with "a stronger sense of purpose": "[w]ithout the country of Israel there is no Am Yisrael".

These opinions, published in a prominent news outlet, specifically sought to legitimize the IDF's "fight" in Gaza in the months following October 7, 2023, and the importance of supporting Israel. These statements are clear evidence that Plaintiff "voluntarily inject[ed] himself" into the controversy identified above, and was in fact "purposely trying to influence the outcome". *Silvester*, 839 F.2d at 1494-95. The defamatory statements alleged by Defendants—accusing Plaintiff of

4

participating in the IDF's genocide and war crimes in Gaza—are clearly "germane to the plaintiff's participation in the controversy" because they relate to his "experience" and "motives". *Waldbaum v. Fairchild Publications, Inc.*, 627 F.2d 1287, 1298 (D.D.C. 1980). Because Plaintiff is clearly a limited public figure, he must plausibly allege that Defendants acted with actual malice.

### ii. Plaintiff still cannot plead actual malice NSJP had no doubt that its opinions on the controversy were accurate and truthful.

For a public or limited-purpose public figure, the First Amendment requires proof that each challenged statement was made "with knowledge that it was false or with reckless disregard of whether it was false or not." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964). Reckless disregard means the speaker "in fact entertained serious doubts as to the truth of his publication." *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968); *Berisha v. Lawson*, 973 F.3d 1304, 1312 (11th Cir. 2020).  This is because "[a]ctual malice is a subjective test, requiring the plaintiff to show that the defendant "actually entertained serious doubts as to the veracity of the published account, or was highly aware that the account was probably false.  (*Project Veritas v. CNN, Inc.* (11th Cir. 2024) 121 F.4th 1267, 1283.

Plaintiff's own op-ed proclaimed to millions of readers that he applied for "military and civilian" positions in the IDF, was active in "an elite reconnaissance unit" within the IDF, was in active duty for "four months",

ending the month before he posted his op-ed (which he now refers to as a mere "blog"), and was stationed inside Gaza—spending at least some time in Beit Hanoun, where the IDF is accused committing war crimes during the precise period when Plaintiff was there.[2]Defendants entertained no "serious doubts" that those admissions show Plaintiff's 'participation' in the IDF's genocide and destruction of Gaza. *St. Amant*, 390 U.S. at 731. Because Defendants' opinions are moral and political judgments about his undisputed conduct, expressed in the vocabulary of an ongoing, global debate, Plaintiff cannot show actual malice.

### iii. NSJP's statements are protected expressions of opinion, and Plaintiff cannot identify a single statement by NSJP that asserts a fact about him.

Plaintiff concedes that the topic of Israel's genocide in Gaza—and the role of the IDF—is a matter of public concern. ECF No. 166 at 27. The First Amendment therefore requires Plaintiff to show fault and falsity. *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 776 (1986). Plaintiff cannot show either.

The conduct Plaintiff identifies in support of his defamation claim against NSJP is limited to: (1) referring to the Israeli Defense Force as the "Israeli Offense Force" (ECF No. 130 at ¶ 145(a)); (2) "permit[ing] defamatory third-party comments to remain publicly visible" on their social media post (Id. at ¶ 145(b));

---

[2] With eight million monthly users and seventy-five million monthly page views Winer's efforts to demote Times of Israel to a "blog" betrays a remarkable lack of candor to this Court. (https://www.timesofisrael.com/advertise/, last visited May 12, 2026)

(3) making a post "includ[ing] a hyperlink" to a separate website that included a phone script asking Emory to "investigate" and "remove" any "faculty and students endorsing Israel's apartheid regime" (Id. at ¶ 145(c)); (4) making a post "includ[ing] a hyperlink" to a separate website that included an email script stating that Plaintiff "has written openly about his participation in a military campaign that has been condemned as a genocide" (Id.at ¶ 145(d)); and (5) stating that it agrees with Mohammad's "truthful statements, that any physician who served in the IDF within the prior sixteen months had perpetuated genocide" (Id. at ¶¶ 91, 145(e)). Not a single one of these statements even asserts any provably false fact against Plaintiff specifically, and none of them plausibly constitute defamation.

In fact, all that NSJP is shown to have said in the SAC is that it believes that any faculty or student who has participated in genocide should be held accountable. ECF No. 130 at ¶ 84. This is clearly a statement of "opinion" about what should be done on a topic of public concern, and "is not libelous". *Bergen v. Martindale-Hubbell*, 176 Ga. App. 745, 747 (1985). Not a single statement attributable to NSJP is defamatory because not a single one states a fact about *Plaintiff*, as opposed to general opinions about anyone who volunteers in the IDF during that Defendants and many in the international community view as a genocide.

Plaintiff has also failed to adequately rebut NSJP's argument that allegations of "genocide" express a "subjective view, an interpretation, a theory, conjecture, or surmise." *Gurmessa v. Genocide Prevention in Ethiopia, Inc.*, 2024 WL 3728020, at *5-7 (D. Del. Aug. 8, 2024) (adopted in relevant part at *Gurmessa v. Genocide Prevention in Ethiopia, Inc.*, 2024 U.S. Dist. LEXIS 197686, at *4 (D. Del. Sep. 11, 2024)); ECF No. 166 at p. 18. Plaintiff's only response is to assert, with no support, that *Gurmessa* is inapplicable here because the *Gurmessa* court only considered allegations of "supporting" genocide, not of "personally participating in it." ECF No. 177 at 16-17. But the *Gurmessa* court did not focus its analysis on the meaning of "supporting" — it squarely assessed the "divergent views over" whether "genocide" was "the appropriate characterization of" the conflict in Ethiopia. *Gurmessa*, 2024 WL 3728020, at *5. The Court specifically rejected the plaintiff's argument that "genocide is both well-defined and codified" and is therefore an actionable assertion of fact. Id., at *6. The Court was "not persuaded by [the plaintiff's] unsupported argument that, in determining what constitutes actionable defamation, allegations of being 'racist' should be treated differently that allegations of 'genocide' or of 'supporting genocide'…" Id. (emphasis added).

Because the only statements actually attributable to NSJP are plainly expressions of opinion on a matter of public importance, they are not actionable as defamation, and Plaintiff has failed to plead a claim.

### B. Plaintiff Still Cannot Plead Civil Conspiracy Because He Fails to Allege Any Actual Agreement Among Defendants

"The principal elements of conspiracy are an 'agreement between parties to inflict a wrong against or injury upon another, and an overt act that results in that damage.'" *Aque v. Home Depot U.S.A., Inc.*, 629 F.Supp.2d 1336, 1345-46 (N.D. Ga. February 2, 2009) (quoting *Northrup v. Conseco Fin. Corp.*, 141 F.Supp.2d 1372, 1375 (M.D. Ga. 2001)). Plaintiff argues that no agreement is required for a civil conspiracy claim (ECF No. 177, at p. 17-18), but he distorts the caselaw he cites, which affirms that an agreement or common design is a "principal element[]" of a conspiracy cause of action. *See Aque v. Home Depot U.S.A., Inc.*, 629 F. Supp. 2d 1336, 1345 (N.D. Ga. 2009) (holding that "an agreement between parties" if one of the "principal elements of conspiracy") (internal citations omitted); *Wright v. Apartment Inv. & Mgmt. Co.*, 315 Ga. App. 587, 595 (2012) (holding that while a plaintiff need not prove "an express agreement or compact", it must nonetheless show a "common design" among the wrongdoers); *Mustaqeem-Graydon v. SunTrust Bank*, 573 S.E.2d 455, 461 (Ga. Ct. App. 2002) (affirming grant of summary judgment where the plaintiff's underlying tort claim failed, without reaching the merits of plaintiff's conspiracy claim or the adequacy of pleadings).

Plaintiff alleges no facts whatsoever that could support an inference that NSJP entered an agreement or common design with Defendants Mohammad and DAG to achieve any illegal objective or any lawful objective by illegal means.

Conclusory assertions of an conspiracy between Defendants, without specific facts alleged in support, at inadequate to plead a claim. *Parm v. National Bank of California, N.A.*, 242 F.Supp.3d 1321, 1350 (N.D. Ga. 2017). The only alleged conduct by NSJP—publication of the two Instagram posts with DAG "tagged" as a "collaborator"—is insufficient to show any particular agreement or common design between defendants to pursue any specific course of action with regard to Plaintiff, and only shows parallel conduct by myriad different communities and organizations in support of Mohammad. Plaintiff alleges no particular communication at all between NSJP and any other Defendant, and offers no factual support for his bald, conclusory allegation of an agreement.

### C. Plaintiff Still Cannot Plead a Claim Under § 1985(3)

Plaintiff concedes that imposing § 1985(3) liability on NSJP for engaging in core political advocacy—including criticism of a public-controversy participant and petitions to a university—would itself violate the First Amendment. *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 915–16 (1982) (boycotts, advocacy, and petitioning activity protected; civil-rights statutes cannot be construed to penalize such speech absent unprotected conduct); *Snyder v. Phelps*, 562 U.S. 443, 458 (2011).

### i. Plaintiff's invoked basis for his claims are not actionable under § 1985(3)

NSJP adopts the fulsome briefing and arguments of codefendant CAIR-NGA, that none of the three bases proffered by Plaintiff for his § 1985(3) claim are viable, and none have even a shred of support from any existing caselaw. *See* ECF No. 167, at pp. 9-13. Because Plaintiff has failed to plead a violation of an underlying constitutional right subject to enforcement through § 1985(3), his claim must be dismissed. ]

### ii.  Plaintiff cannot plausibly allege any anti-Jewish animus

Plaintiff's § 1985(3) claim requires "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Dean v. Warren*, 12 F.4th 1248, 1255 (11th Cir. 2021) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971)).

Plaintiff baldly claims that Defendants were motivated by his "Jewish identity," but there is not one single fact alleged against NSJP that could render this assertion plausible. Plaintiff cannot cite a *single* statement or communication by NSJP referencing his religion *whatsoever*, nor even targeting him for his national origin. The NSJP posts reproduced in the SAC evince a purpose that is obviously more plausible than Plaintiffs' unadorned conclusions: supporting a suspended Palestinian student and calling on Emory to make sure anyone who participated in or legitimized genocide is held accountable in some manner. ECF No. 130 at ¶¶ 85, 95. Plaintiff's allegation of antisemitic animus is "no more than [a] conclusion[]" and is "not entitled to the assumption of truth". *Ashcroft v. Iqbal*,

11

556 U.S. 662, 678-79 (2009). Plaintiff must allege specific facts that render his conclusions plausible—here, he cannot identify a single fact that supports an inference of antisemitic motive. Because there is not a single fact offered or alleged that could render Plaintiff's anti-Jewish animus allegation plausible, he has failed to plead his claim.

### iii.   The First Amendment prohibits treating anti-Zionist political expression as class-based animus

Because he cannot plausibly allege any defendant was motivated by animus toward Jewish people, Plaintiff asserts that Defendants targeted him "for expressing his Zionism" (ECF No. 130 at ¶ 193), his "Zionist beliefs" (*Id.* at ¶ 189), his "association with Zionism" (*Id.* at ¶ 192), or his "association with the IDF" (*Id.* at ¶ 10)—a Zionist military" (*Id.* at ¶ 197). Plaintiff has no legal support whatsoever for this vast, dangerous expansion of § 1985(3).

This Court has held, numerous times, that national identity and political beliefs are not cognizable as protected classes under § 1985(3). *See Fiske v. Lockheed-Georgia Co., Div. of Lockheed Corp.*, 568 F. Supp. 590 (N.D. Ga. 1983) (§ 1985(3) does not reach politically motivated conspiracies); *Smith v. Turner*, 764 F. Supp. 632, 1991 U.S. Dist. LEXIS 7131 (N.D. Ga. 1991) (§ 1985(3) does not provide remedy for "every concerted effort by one political group to nullify influence of or do other injury to competing group by use of otherwise unlawful means"); *Bauge v. Jernigan*, 671 F. Supp. 709 (D. Colo. 1987) (plaintiff's claim of

discrimination based on his Norwegian citizenship is not within the scope of §

1985 protection). As foreign citizens are not a protected class, neither are soldiers

in a foreign military.

Plaintiff's briefs in opposition to the various Motions to Dismiss cite three

cases to support his assertion, and variously represents them as supporting his

sweeping proposition that Zionism is "a component of Jewish identity" such that

anti-Zionist political advocacy is animus against a protected class. ECF No. 177 at

23-4, citing *Shaare-Tefila Cong. v. Cobb*, 481 U.S. 615, 617–18 (1987); *see also* ECF

No. 175 at 23, citing *LeBlanc-Stenberg v. Fletcher*, 781 F. Supp. 261, 267 (S.D.N.Y.

1991); and *Sinai v. New Eng. Tel. & Tel. Co.*, 3 F.3d 471, 474–75 (1st Cir. 1993).

None of these cases includes the word "Zion" and only *Sinai* even mentions

"Israel". In *Sinai* the court did *not* hold that "Israeli" is plausibly a protected

class—it merely affirmed a jury instruction that "national origin discrimination

could be used, *together with other evidence*, to arrive at a conclusion vis-à-vis race

discrimination." 3 F.3d at 475 (emphasis added). In this case, Plaintiff offers not

one shred of "other evidence" that could render antisemitic animus plausible.

None of Plaintiff's citations provide support for his claim that Zionists—or even

Israelis—are a protected class under § 1985(3), nor that Zionism is a "component

of" a protected identity.

Nor is Plaintiff's citation to his own counsel's law review article, in which

he asserts that Jewish identity is expressed through "self-determination *in their*

*nation state*" (emphasis added) (ECF No. 177 at n. 2), entitled to any weight. Even if it were, it would not provide any support for his failed attempt to show class-based animus through anti-Zionist speech alone, especially when contrasted with clearly established caselaw rejecting national identity and political beliefs as the basis for a protected class under § 1985(3).

The case *Landau v. Corporation of Haverford College* is on point, and rejected the exact equivalency Plaintiff proffers here. 780 F. Supp. 3d 548 (E.D. Pa. 2025). The *Landau* court rejected the premise that anti-Zionism or criticism of Israel is antisemitic, and rejected the plaintiffs' attempt to "blur the line between Zionism as a political philosophy and Zionism as a component of Jewish identity" and "implicitly sweep any and all criticism of Israel into the basket of antisemitism." *Id.* The Court "reject[ed] Plaintiffs' embedded proposition that any anti-Israel speech is intrinsically antisemitic, because reasonable people acting in good faith can challenge decisions of the Israeli government without harboring antisemitic views." *Id.*

### D. Defendants are entitled to dismissal and fees under Georgia's anti-SLAPP Statute

Nothing in *Berk v. Choy*, 607 U.S. 187 (2026) is clearly irreconcilable with Georgia's anti-SLAPP law.  The Supreme Court in *Berk* described its analysis as a "straightforward" application of settled precedents. *Id*. at 192. The question was whether Delaware's affidavit-of-merit requirement for medical malpractice claims

14

applied in federal court. *Id*. The Court asked "whether [a] Federal Rule 'answers the question in dispute.'" *Id.* (quoting *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.* (2010) 559 U.S. 393, 398 "If a Federal Rule answers the disputed question, it governs." *Id.*

This was well-trodden ground. As Justice Jackson explained in concurrence, the Court has articulated this same "central inquiry in various ways" for decades, which included using the "'attemp[t] to answer the same question'" formulation in *Shady Grove* (Jackson, J., concurring) (quoting *Shady Grove*, 559 U.S. at 399) (alteration in *Berk*); *see also, e.g.*, *id.* at 201 (noting that the Court had previously asked "whether 'the applicable Federal Rule is in direct collision with the [state] law'" (quoting *Hanna v. Plumer*, 380 U.S. 460, 472 (1965))). *Berk* did not alter that framework.

An anti-SLAPP motion based on purely legal arguments will not collide or be irreconcilable with Rules 8 or 12 of the Federal Rules of Civil Procedure. Although discovery restrictions may be displaced by Rule 26, et. seq., the anti-SLAPP statute's right to attorneys' fees is entirely independent of these Rules and should not be disturbed by *Berk*.

## III.    CONCLUSION

Plaintiff has now had three opportunities to plead a cause of action against NSJP, and each time he has failed. The docket in this case now includes more

than 175 entries, and the issues in this brief have been briefed multiple times by each of nine defendants. The defects in Plaintiff's causes of action are incurable, and this case should be dismissed with prejudice.

Respectfully submitted this 14th day of May, 2026.

*/s/ Amir Naim*
Amir Naim (GA Bar No. 423232)
P.O. Box 48013
Atlanta, GA 30362
404-444-9189
Amirnaim27@gmail.com

*/s/ Mark Kleiman*
Mark Kleiman (Cal. SBN 115919)
*(pro hac vice)*
KLEIMAN/RAJARAM
12121 Wilshire Blvd., Ste. 810
Los Angeles, CA 90025
Tel: 310-392-5455
Fax: 310-306-8491
mark@krlaw.us

*Attorneys for SEAN EREN on behalf of*
*NATIONAL STUDENTS FOR*
*JUSTICE IN PALESTINE*

## CERTIFICATE OF COMPLIANCE WITH L.R. 5.1

I HEREBY CERTIFY that the foregoing document was prepared in Book Antiqua 13-point font, as approved by Local Rule 5.1.

Dated: May 14, 2026                                        */s/ Mark Kleiman*
                                                          Mark Kleiman