UNITED STATES DISTRICT COURT FOR THE NORTHERN
 DISTRICT OF GEORGIA ATLANTA DIVISION

------------------------------------------------------------------------------------------x

Joshua Winer,

        Plaintiff,

v.                                                                               Case No. 1:25-CV-
                                                                                          02329

Umaymah Mohammad, AJP Educational Foundation, Inc.
A/K/A American Muslims for Palestine, WESPAC Foundation, Inc.,
Sean Eren as the representative of National Students for Justice in
Palestine, Doctors Against Genocide Society, CAIR-Nga Inc.
A/K/A CAIR-Georgia, CAIR Foundation Inc.,
 A/K/A Council on Islamic Relations or CAIR, Rupa Marya,
Ibrahim Jouja as representative of Emory Students for Justice
 in Palestine.

        Defendants.

------------------------------------------------------------------------------------------x

## DEFENDANT UMAYMAH MOHAMMAD'S REPLY BRIEF IN FURTHER SUPPORT OF HER MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

Defendant Umaymah Mohammad files this Reply Brief in further Support of her Motion to Dismiss Plaintiff's Second Amended Complaint ("SAC") for failure to state a cause of action under FRCP 12(b)(6).

In his opposition, Dr. Winer doubles down on his insistence that Zionists are a protected class under federal discrimination laws. This position is untenable and therefore, the SAC must be dismissed.

## ARGUMENT

## ZIONISM IS NOT A PROTECTED CLASS

Dr. Winer follows a long tradition of litigants fruitlessly asking Courts to hold that criticism of Israel is antisemitic.  The SAC could not be clearer: it is based entirely on the assertion that Plaintiff's Zionism  places him in a protected class entitled to the protection of Section 1985(3): "The animus alleged in this case is not mere disagreement with Israeli policies. It is personal, racial, and aimed squarely at Plaintiff's identity as a Zionist Jew—someone who, in the wake of the October 7 attacks targeting Jews, chose to serve in the military of the world's only Jewish state in defense of his ancestral homeland" (SAC paragraph  8); "NSJP is an antiZionist movement that aims to ensure that 'students will continue to resist Zionism on campus' and that the 'world understands the Zionist entity as a fundamentally expansionist, colonial, and genocidal project'" (paragraph 16); "DAG is a 501(c)(3) non-profit corporation incorporated in Michigan whose stated mission is to oppose genocide, but has been widely criticized by media outlets and watchdog groups for promoting anti-Israel and anti-Zionist rhetoric" (paragraph 17); "Marya has used her social media platform to openly call for the dissolution of the State of Israel, assert that the presence of Zionism in US medicine is a structural impediment to health equity, [and] draw inflammatory comparisons

between Zionists and Nazis" (paragraph 18); "Mohammad also completely mischaracterizes Zionism, which in its essence, is the belief in the right of the Jewish people to self-determination in their ancestral homeland" (paragraph 29); "Marya's intent here is clear: Plaintiff is a proud Zionist, and for Marya that is disqualifying since she is on the record advocating that 'Zionism is a supremacist, racist ideology'" (paragraph 107)-- and so on, for a total of 96 uses of "Zionist" and "Zionism" in the SAC's 200 paragraphs.

Having resolutely advanced this unsupported position in the SAC, Dr, Winer doubles down  in footnote 4 of his Memorandum in Opposition: "For many Jews, including Dr. Winer, Zionism reflects the historic connection of the Jewish people to Zion, a place in Jerusalem identified in the Hebrew Bible as the origin of Jewish peoplehood. Treating that identity and connection as grounds for professional exclusion is precisely the type of discrimination civil rights law forbids... And Mohammad's contention that Zionism is merely a political philosophy—as opposed to a component of Jewish identity—simply because not all Jews are Zionists is as untenable as arguing that a religious practice falls outside the protection of civil rights law because it is not universally observed...[O]ne cannot single out Jews who identify with Zionism and strip them of protection by recharacterizing that identity as a mere political viewpoint. Civil rights law does

not allow defendants to redefine the contours of a protected class to exclude the very individuals they target." Run through the English-to-English translator, Dr. Winer claims magic word status for "Zionism": once the word is uttered in a pleading, it precludes evaluation as to its protected class status by the defendants or the Court.

This is obviously not so. What was fundamentally a misuse of the courts to achieve a political goal is coming to an end now, due to an extensive, well-elucidated and unanimous line of case law which holds that  anti-Zionism is not antisemitism,   *StandWithUs Ctr. for Legal Just. v Massachusetts Inst. Of Tech.*, 2025 U.S. App. LEXIS 27390, at \*18 (1st Cir Oct. 21, 2025, No. 24-1800) ( "Most of the conduct about which plaintiffs complain is speech protected by the First Amendment, and we do not construe Title VI as requiring a university to quash protected speech"); *Sussman et al v. Massachusetts Institute of Technology et al ,* 1:25-cv-11826-RGS (D Mass 2025) Docket No. 75, 1/5/2026 ("But the court sees no basis on which to distinguish the First Circuit's conclusion that anti-Israeli sentiment is not, without more, antisemitic messaging"); *Eyal Yakoby v Trustees of the Univ. of Pennsylvania,* 2025 US Dist LEXIS 103709, at \*18-19 (ED Pa June 2, 2025, No. 23-4789)  ("At worst, Plaintiffs accuse Penn of tolerating and permitting the expression of viewpoints which differ from their own"); *Landau v. Corp. of*

*Haverford Col*l., No. 24-2044, 2025 U.S. Dist. LEXIS 1402, at *4-5 (E.D. Pa. Jan. 6, 2025) ("Plaintiffs seek[] to blur the line between Zionism as a political philosophy and Zionism as a component of Jewish identity, and in the process implicitly sweep any and all criticism of Israel into the basket of antisemitism. As a threshold matter,....I reject Plaintiffs' embedded proposition that any anti- Israel speech is intrinsically antisemitic, because reasonable people acting in good faith can challenge decisions of the Israeli government without harboring antisemitic views"); *Am. Assn. of Univ. Professors v Rubio,* 802 F Supp 3d 120, n 17 (D Mass 2025) ( "Criticisms of the State of Israel are not anti-Semitism, they're political speech, protected speech"); *Canel v Art Inst. of Chicago*, 2025 US Dist LEXIS 30309, at *24-25 (ND Ill Feb. 20, 2025, No. 23 CV 17064) ("[T]he banners and flyers reflect political points of view critical of the Israeli government.... From these allegations...the Court cannot also conclude that the banners and flyers represent discriminatory harassment of plaintiff on the ground of her Jewish or Israeli identities"); *Gerwaski v Nevada ex rel. Bd. of Regents of the NV Sys. of Higher Educ.*, 2025 US Dist LEXIS 84645, at *21-22 (D Nev May 5, 2025, No. 2:24-cv-00985-APG-MDC) ("As pleaded, AMP and SJP-UNLV's conduct alleged in the FAC is protected by the First Amendment"); *Newman v. Point Park Univ.*, No. 2:20-cv-00204, 2022 U.S. Dist. LEXIS 60722, at *78-79 (W.D. Pa. Mar. 31,

2022) ("Despite the sensitive and important the issues these conflicting viewpoints and actions raise, as an overarching matter, such debates... have been recognized to fall within First Amendment protections when efforts have been advanced to limit or impair such advocacy...Against that backdrop, Plaintiff has not shown that Defendant has subjected her to an objectively hostile work environment by its not suppressing, or otherwise protecting Plaintiff from, the personal views and academic interests of some of Defendant's professors and students related to these geopolitical topics").

The number of federal cases holding that anti-Zionism *is* antisemitism: 0.

Despite the overwhelming number, clarity and straightforwardness of the cases, some of which even  use the phrase "anti-Zionism is not antisemitism", Plaintiff phrased the SAC, as if these cases, referenced in Ms. Mohammad's motion to dismiss (pp. 11-13), did not exist. No attempt is made to distinguish them or argue for their reversal

Dr. Winer's pleading so completely falls short of the 12(b)(6) standard that it may well fall short of  Rule 11(b)(2)'s requirement as well, that "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law".  In fact, as his opposition confirms, he never goes so far as

to argue for a reversal or extension, but stands by the untenable position that Zionism *is* a protected class under existing law. Yet the Complaint was originally filed April 25, 2025, after the *Haverford, Canel*, and *Newman* cases were decided, *supra.* The FAC was filed May 20, 2025,  after the *Gerwaski* decision. The SAC was filed January 27, 2026,  after *all the cases in the string cite were available.*

Since a 1985(3) claim may not be based on Zionist identity, which is not a protected class, there is no federal question, and the SAC must be dismissed, *Holgate v Baldwin,* 425 F3d 671, 676 (9th Cir 2005)  (Claim that  "consumers looking to build their dream home" were a protected class "cited no case law recognizing such a class as meriting heightened protection");   *Rafiy v County of Nassau,* 2017 US Dist LEXIS 1001, at *11 (EDNY Jan. 4, 2017, No. 15-CV-6497 (JFB) (GRB))  ("Plaintiffs have not stated a plausible claim here because their complaint does not allege discrimination based on a protected class. They...do not point to any authority holding that medical doctors or other professionals qualify as a protected class under Section 1985, and the Court concludes that no such protected class exists under the law"); *Rodriguez v Nazario,* 719 F Supp 52, 56 (DPR 1989) ("Plaintiff makes no attempt to tie her Section 1985(3) action to any notion of racial animus. Instead, her underlying claim is based entirely on political animus").

## CONCLUSION

The FAC should be dismissed.

Dated: Amagansett, NY
 May 25, 2026

/s/ Jonathan Wallace
Jonathan Wallace
PO #728
Amagansett NY 11930
917-359-6234
jonathan.wallace80@gmail.com
Counsel for Defendant
Umaymah Mohammad
Admitted Pro Hac Vice

## CERTIFICATE OF COMPLIANCE WITH L.R. 5.1

I HEREBY CERTIFY that the foregoing document was prepared in Times New Roman, 14-point font, as approved by Local Rule 5.1.

s/ Jonathan Wallace
Jonathan Wallace
PO #728
Amagansett NY 11930
917-359-6234
jonathan.wallace80@gmail.com
Counsel for Defendant
Umaymah Mohammad
Admitted Pro Hac Vice