**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

Joshua Winer,

     Plaintiff,

v.

Umaymah Mohammad, et. al.,

     Defendants.

Civil Action No.: 1:25-cv-02329

` **DEFENDANT DOCTORS AGAINST GENOCIDE SOCIETY'S BRIEF IN
SUPPORT OF MOTION FOR SANCTIONS UNDER RULE 11 OF THE
<u>FEDERAL RULES OF CIVIL PROCEDURE</u>**

Defendant Doctors Against Genocide Society ("DAG"), by and through undersigned counsel and pursuant to Rule 11 of the Federal Rules of Civil Procedure, respectfully moves this Court for sanctions against Plaintiffs' counsel and submits this incorporated memorandum of law in support of the motion.

## INTRODUCTION

Defendant files this motion for sanctions against Plaintiff's counsel at Robbins Alloy Belinfante Littlefield LLC, The D.F. Katz Law Firm, LLC, The Panitch Law Group, PC, and National Jewish Advocacy Center, Inc. (collectively "Plaintiffs' Counsel") because they violated their obligations under Rule 11 for two independent, but related, reasons: (1) in violation of Rule 11(b)(2) and 11(b)(3) they filed frivolous legal and factual claims against DAG in the Second Amended Complaint (SAC) and their Opposition to DAG's Motion to Dismiss ("Opposition"); and (2) in violation of Rule 11(b)(1), the claims against DAG are being pursued for an improper purpose: to chill, silence, and harass DAG for its' protected speech and advocacy on topics of public importance.

Plaintiff's claims against DAG are entirely unsupported by facts or law and have no reasonable chance of success. The allegations against DAG come nowhere close to stating a viable claim, and no nonfrivolous argument justifies departure from settled law. The SAC also targets DAG for impermissible reasons, to punish and harass DAG for its protected First Amendment activity.

## LEGAL STANDARD

1

"The purpose of Rule 11 is to deter baseless filings in district court and thus streamline the administration and procedure of federal courts." *Peer v. Lewis*, 606 F.3d 1306, 1311 (11th Cir. 2010). "Sanctions are appropriate: (1) when a party files a pleading that has no reasonable factual basis; (2) when the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; or (3) when the party files a pleading in bad faith for an improper purpose." *Diaz v. First Marblehead Corp.*, 643 F. App'x 916, 921 (11th Cir. 2016) (citation omitted). "There are two prongs to the Rule 11(b)(2) and (b)(3) inquiry: whether the legal claims or factual contentions are objectively frivolous, and, if so, whether a reasonably competent attorney should have known they were frivolous." *Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 665 (11th Cir. 2010). "Both inquiries measure attorney conduct under an objective reasonably competent attorney standard." *Id.* "A legal claim is frivolous if no reasonably competent attorney could conclude that it has any reasonable chance of success or is a reasonable argument to change existing law." *Id.* (citing *Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996)). "A factual claim is frivolous if no reasonably competent attorney could conclude that it has a reasonable evidentiary basis. Thus, where no evidence or only patently frivolous evidence is offered to support factual contentions, sanctions can be imposed."

*Thompson*, 610 F.3d at 665 (citations omitted). "Once a court concludes that either the factual or legal contentions are frivolous, the question becomes whether the attorney should have known they were frivolous." *Id.* The court asks "what was known or reasonably knowable when the paper was 'present[ed] to the court.'" *Id.* "Measured objectively, if a reasonable investigation would have revealed the error to a reasonably competent attorney, then sanctions can be imposed; if not, then sanctions cannot be imposed." *Id.* "The reasonableness of the inquiry turns on the totality of the circumstances, including, for example, the time available for investigation and whether the attorney had to rely on the client, another member of the bar, or others." *Id.* "Rule 11(b)(1) sanctions are appropriate when an attorney or party presents a paper for an improper purpose. Improper purpose is often inferred from circumstantial evidence." *Id.* at 665-66. "A 'motive to harass' can also be inferred from an attorney's filing of factually or legally frivolous claims." *Id.* "[B]ringing a legally or factually frivolous claim—is often probative of a Rule 11(b)(1) improper purpose violation." *Id.* at 664.

If a filing violates Rule 11(b), the Court may impose "an appropriate sanction" on the attorney responsible for the violation, which may include attorney's fees and other costs. *See* Fed. R. Civ. P. 11(c)(1)-(4).

**ARGUMENT**

I.    **The Claims Against DAG are Objectively Frivolous**

3

In sum, Plaintiff alleges that DAG and co-Defendants conspired to defame him, place him in false light, and interfere with his civil rights by criticizing his decision to participate in what they view as a genocide. SAC ¶¶ 5-6.

Plaintiff alleges that Umaymah Mohammad, a Palestinian student at the Emory University School of Medicine, accused him of aiding and abetting a genocide in Gaza based on the voluntary IDF service he disclosed in an op-ed he chose to publish in the Times of Israel. SAC ¶¶ 36-39. Plaintiff's op-ed even identified his affiliation with Emory. SAC ¶ 32, n.5. In April 2024, during an interview with Amy Goodman on Democracy Now!, Mohammad stated:

> "[O]ne of the professors of medicine we have at Emory recently went to serve as a volunteer medic in the Israeli Offense Force and recently came back. This man participated in aiding and abetting a genocide, in aiding and abetting the destruction of the healthcare system in Gaza and the murder of over 400 healthcare workers, and is now back at Emory so-called teaching medical students and residents how to take care of patients."

SAC ¶ 36. On November 19, 2024, Ms. Mohammad was suspended from Emory due to her interview. SAC ¶¶ 49, 76.

Plaintiff offers no "reasonable evidentiary basis" for his frivolous claims against DAG. *Thompson*, 610 F.3d at 665. In fact, Plaintiff alleges almost no specific facts against DAG whatsoever, and relies entirely on two Instagram posts made as part of "a community-led initiative that was launched *in response to Mohammad's suspension*" (emphasis added). SAC ¶ 77.

### A. Plaintiff's Pleading is Bereft of Specific Facts Pled Against DAG, and Each Cause of Action Relies on Frivolous Factual Claims and

### Blatant Misrepresentations in Violation of Rule 11(b)(3)

#### i. Plaintiff's Claim that Codefendants Mohammad and Marya are Founders of DAG is Factually Frivolous

In a flagrant abuse of pleading upon information and belief, Plaintiff has falsely asserted that Marya and Mohammad are "co-founder(s)" of DAG. SAC ¶¶ 13, 17, 96, 174, 177. Allegations pled on "information and belief" must still be supported by "specific facts." *Price v. Howard*, 2023 WL 2767770, at *2 (N.D. Ga., March 31, 2023). Plaintiff identified no specific facts that could support this allegation, which was repeated in all three complaints.

The SAC rests this allegation on the fact that "[b]oth Mohammad and Marya recently presented as DAG panelists and hosted DAG webinars." SAC ¶ 17. Marya and Mohammad's participation in DAG-supported programming was plainly insufficient to support an inference that they founded the organization, and no "reasonably competent" attorney could have concluded that someone's participation in a webinar or on a panel constituted a "reasonable evidentiary basis" to claim that they *founded* the host organization.

This is especially true where the actual founders of DAG are well-known and publicly-identified, including on Wikipedia and Google's AI .[1] Plaintiff not

---

[1] The Wikipedia page for Doctors Against Genocide identifies Nidal Jboor and Karameh Hawash-Kuemmerle as the organization's sole founders. *See* "Doctors Against Genocide", Wikipedia (last accessed April 19, 2026) <https://en.wikipedia.org/wiki/Doctors_Against_Genocide>. This information was publicly-available when Plaintiff made his misrepresentation. *See* Karameh Hawash-Kuemmerle and Nidal Jboor, "'In Pursuit of Peace,' Palestinians Founded Doctors Against Genocide", Common

only alleged without reasonable factual support, but engaged in "deliberate indifference to obvious facts"—conduct plainly subject to sanction. *Cap. Sec. Sys., Inc. v. NCR Corp.*, No. 1:23-CV-4691-TCB, 2025 WL 1358594, at *9 (N.D. Ga. Apr. 2, 2025), *aff'd*, No. 25-11532, 2026 WL 538086 (11th Cir. Feb. 26, 2026).

The fact that Plaintiff now offers an incoherent attempt to "clarif[y]" his knowing deception does not mitigate his culpability—it exacerbates it. On May 28, 2026, Plaintiff filed a Notice with the Court in which he "clarifies that, for the purposes of the pending motions to dismiss," he no longer "contend[s] that Mohammad or Marya are co-founders of DAG." ECF No. 183 at 2. Plaintiff states that he is abandoning the co-founder allegation because he "has recently become aware that publicly available materials identify Dr. Nidal Jboor and Dr. Karameh Hawash-Kuemmerle as Doctors Against Genocide's co-founders." *Id.* at 1-2. This confounds logic, since in the preceding paragraph, Plaintiff attempted to justify the thrice-plead allegation by stating that it was based on materials "reflecting that Mohammad and Marya worked in close coordination with Doctors Against Genocide *and its identified founders*." *Id.* at 1 (emphasis added). If Plaintiff based the co-founder claim, upon materials that "identified" DAG's founders, then his claim to have only "recently become aware" of them is incomprehensible.

---

Dreams (April 14, 2024) <https://www.commondreams.org/opinion/doctors-against-genocide>. On April 18, 2026, a Google search of "Who founded Doctors Against Genocide" returns the following AI overview, summarizing available information: "Doctors Against Genocide (DAG) was founded in 2023 by Palestinian-American physicians Dr. Nidal Jboor, an internist and geriatrician, and Dr. Karameh Hawash-Kuemmerle, a pediatric neurologist."

Regardless, Plaintiff's inclusion of this patently frivolous claim in three pleadings "exhibits a deliberate indifference to obvious facts " that he admits were publicly available on Wikipedia as well as Google's AI search results at all relevant times. This deliberate misrepresentation is sanctionable, and "clarif[ying]" it now "for the purposes" of a motion to dismiss does not "withdra[w] or appropriately correc[t]" the sanctionable conduct under Rule 11(b)(2). Plaintiff fabricated the cofounder claim in bad faith, in order to provide support for his conspiracy and jurisdiction claims.[2] DAG has now briefed and refuted the frivolous cofounder allegation three times, each time putting Plaintiff on notice that his allegation had no reasonable basis. The Rule 11 violation has already occurred and is inexcusable, and Plaintiff should be sanctioned for this misrepresentation under the Court's inherent authority. *See Roadway Exp., Inc. v. Piper,* 447 U.S. 752, 765-66 (1980); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991).

### ii. Plaintiff's Claim that DAG had the Purpose of Achieving an Illegal Objective is Factually Frivolous

Plaintiff has no "reasonable factual basis" to claim that DAG conspired with Defendants Mohammad and NSJP to achieve any illegal objective. *Diaz*, 643 F. App'x at 921. The only alleged conduct by DAG—publication of the two Instagram posts—offers no factual support at all for Plaintiff's claim that DAG

---

[2] The fact that Plaintiff sought to use these allegations as the hook for jurisdictional discovery—presumably into DAG's membership and other information protected from disclosure by the First Amendment—confirms his improper motive of intimidation and harassment.

was motivated by an unlawful purpose. Neither of the posts even mention Plaintiff's name (SAC ¶¶ 78, 91, 145(e)), and the indisputable focus of the posts was on supporting a Palestinian student suspended for her protected speech.

Plaintiff falsely states that the second post linked to another website containing a phone script for Mohammad's supporters that "expressly demanded that Plaintiff be fired." SAC ¶ 87-9. This assertion appears to be yet another flagrant, sanctionable misrepresentation, since the SAC's own full "reproduction" of the Phone Script contains no such demand—either expressly or even by implication. SAC ¶ 88. The script—which DAG did not even publish, but which was hosted on a separate website that DAG allegedly linked to—calls for an "investigation into [Plaintiff's] involvement in war crimes." *Id.* As a separate demand, the statement calls upon Emory to "[h]old faculty and students *accountable* for their participation in or legitimization of the genocide of Palestinians." SAC ¶ 88. The latter demand is not targeted at Plaintiff but at any faculty or student found to have participated in or legitimized genocide, and calls for them to be held accountable. There is simply nothing in the script that could be described as an "expres[s] deman[d] that Plaintiff be fired."

This factually frivolous claim, based on a blatant misrepresentation of the evidence, is even more egregious because the frivolous assertion that DAG sought "that Plaintiff be fired" and intended to interfere with Plaintiff's employment contract—is the lynch pin of Plaintiff's entire claim under 42 U.S.C.

8

1985(3). SAC ¶¶ 190, 193. Without this factual misrepresentation, Plaintiff would have no actionable claim because he could not plausibly allege an intent to deprive him of equal protection under Titles VI and VII of the Civil Rights Act or under 42 U.S.C. § 1981. Plaintiff, through counsel, misrepresented facts in his own pleadings in order to concoct a legal claim where none would otherwise exist, and he must be sanctioned for this deception.

### iii. Plaintiff's Claim that DAG Conspired with a Defendant Receiving Federal Financial Assistance, or With Any Other Codefendant for Any Purpose, is Factually Frivolous

Plaintiff offers "no evidence" *at all* in support of his frivolous assertion that DAG conspired with any other Defendant, for any purpose *whatsoever*, and the claim is the quintessential example of a factually frivolous contention. *Thompson*, 610 F.3d at 665. Plaintiff alleges no communication at all between DAG and any Defendant except NSJP, and no reasonable attorney could have concluded that there was a reasonable factual basis to allege an agreement between DAG and the remaining Defendants. Plaintiff offers no facts in support of his allegation that DAG conspired with CAIR-Foundation—the only Defendant alleged to receive federal funding—and no reasonably competent attorney could have concluded that there was a reasonable factual basis for that allegation.

### iv. Plaintiff's Claim that DAG Conspired With Any Defendant for the Purpose of Depriving Him of Equal Protection of the Laws on the Basis of his "Jewish Identity" is Frivolous

9

Plaintiff frivolously claims that Defendants were motivated by his "Jewish identity," yet alleges not a single fact against DAG that could reasonably support this claim. Plaintiff fails to identify a single statement or communication by DAG referencing his religion *whatsoever*, and instead relies upon the preposterous suggestion that opposition to his IDF service is *per se* antisemitic. SAC ¶¶ 8, 10, 17, 192. This claim smacks of bad faith, and no reasonably competent attorney could have concluded that such an absurd overgeneralization has any reasonable basis in fact. Indeed, Plaintiff cannot cite a *single* court that has found that opposition to the IDF's conduct in Gaza could, as a matter of fact, plausibly show antisemitic motive. The proposition itself is facially frivolous and in bad faith.[3]

Because there is not a *single fact* offered or alleged that could provide nonfrivolous support for Plaintiff's assertion that DAG was motivated by his Jewish identity, the claim is sanctionable. *Thompson*, 610 F.3d at 665 (sanctions are proper "where no evidence or only patently frivolous evidence is offered to

---

[3] This Court may take judicial notice, for example, that even before Israel's most recent genocide in Gaza, a poll by the Jewish Electorate Institute found that "38% of Jews under 40 think Israel's an apartheid state, 43% think Israel's racism is comparable to the United States', and 33% think the country is carrying out a genocide against Palestinian people. In fact, 20% of Jewish voters under 40 said that Israel does not have a right to exist." *See* Michael Arria, "Mondoweiss: New Poll: 25% of U.S. Jews Think Israel is Apartheid State," Jewish Electorate Institute (July 13, 2021) (last accessed April 19, 2026) <https://www.jewishelectorateinstitute.org/p6971>. A more recent survey of American Jews conducted by the Jerusalem Center for Security and Foreign Affairs showed that 30% of all American Jews agreed that Israel was committing genocide, with a plurality (34%) viewing the campus demonstrations as anti-war and pro-peace. *See* The Jerusalem Center, "Survey Among American Jews: Over 51% Support for Biden's Decision to Withhold Arms Shipments to Israel" (May 31, 2024) (last accessed April 19, 2026) <https://jcpa.org/survey-among-american-jews-over-51-support-for-bidens-decision-to-withhold-arms-shipments-to-israel/>.

support factual contentions"). This is especially true since Plaintiff relies entirely on this assertion for his § 1985(3) claim. Plaintiff has hauled DAG into federal court based on its anti-Zionist and anti-genocide speech *alone* and his frivolous allegation of animus is a thin veil for this plainly abusive litigation.

### B.  All Four Causes of Action in the SAC Rely on Frivolous Legal Claims in Violation of Rule 11(b)(2)

#### i.  Plaintiff's Claim that this Court has Personal Jurisdiction Over DAG is Frivolous

Plaintiff identifies no facts that would permit the Court to find personal jurisdiction over DAG, and the claim is legally frivolous. Plaintiff pled that "DAG is a 501(c)(3) non-profit corporation incorporated in Michigan". SAC ¶ 17. As Plaintiff concedes that DAG is not a resident of Georgia, the Court can only exercise jurisdiction through the state's long arm statute. That statute states that a "court of this state may exercise personal jurisdiction over any nonresident... if in person or through an agent, he or she: (1) Transacts any business within this state; (2) Commits a tortious act or omission within this state, *except as to a cause of action for defamation of character arising from the act*; (3) Commits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state" (emphasis added). GA Code § 9-10-91.

Plaintiff does not claim that DAG transacts any business in Georgia, nor that it derives any revenue from services or goods rendered in Georgia. Any exercise of personal jurisdiction over DAG must therefore be based on subsection (2) of the long arm statute—the commission of a tortious act or omission. The alleged culpable conduct for all three tort claims in the SAC is defamation of character, which is explicitly *not* a basis for long arm jurisdiction in Georgia. *Black v Skinary App, Inc.,* 2024 US Dist LEXIS 136035, at *10 (ND Ga Aug. 1, 2024, No. 1:23-CV-5647-TWT) ("[T]o the extent that the 'tortious act' in question is defamation, the long-arm statute specifically excludes that from its reach"; *Worthy v Eller,* 265 Ga App 487, 488, 594 SE2d 699, 700 (2004), *cert. den.* 2004 Ga. LEXIS 514 (2004) ("The language of the statute is clear, unequivocal and unambiguous in mandating the exclusion of an action predicated on defamation"); *Mahendra Amin v O'Brien,* 2025 US Dist LEXIS 7223, at *12 (SD Ga Jan. 14, 2025, No. CV 5:24-022) ("Defendant O'Brien is not subject to suit in Georgia for acts allegedly constituting defamation"); *Mueller v Ebay, Inc.,* 2021 US Dist LEXIS 201597, at *3-4 [ND Ga Jan. 6, 2021, No. 1:20-cv-2581-SCJ]) ("[P]ublication of defamatory information in Georgia standing alone is insufficient to establish personal jurisdiction under Georgia's long-arm statute... the commission of acts solely related and giving rise to a defamation claim do not fall within the Georgia long-arm statute").

Nor can Plaintiff evade the limitations of subsection (2) by recharacterizing his defamation claim as false light or other torts, cf. *Leise v Vermont Hum. Rights Commn.*, 2023 US Dist LEXIS 50354, at \*72-73 (D Vt Mar. 24, 2023) ("A plaintiff may not use related causes of action to avoid the constitutional requisites of a defamation claim. The First Amendment considerations that apply to defamation therefore apply also to [the plaintiff's] counts for false light and tortious interference") (citing *Farah v. Esquire Mag.*, 736 F.3d 528, 540 (D.C. Cir. 2013)); *Moldea v NY Times Co.*, 22 F3d 310, 319 (1994) ("[A] plaintiff may not avoid the strictures of the burdens of proof associated with defamation by resorting to a claim of false light invasion").

Even if there were evidence to show that DAG conspired with any resident Defendant to commit defamation—which there is not—the Court cannot assert jurisdiction over the non-resident as a matter of law without infringing on due process. *Sprint Nextel Corp. v Ace Wholesale, Inc.*, 2014 US Dist LEXIS 21598, at \*23-25 (ND Ga Feb. 20, 2014, No. 1:12-cv-02902-JEC) ("[T]he bare existence of a conspiracy is not enough to support long arm jurisdiction[.]"); *Wells Fargo Bank v Berkman*, 2011 US Dist LEXIS 16484, at \*13 (ND Ga Feb. 16, 2011, No. 1:10-CV-2286-TWT). Where DAG's alleged conduct is protected speech, the First Amendment also weighs heavily against exercising personal jurisdiction.

Because Plaintiff has not claimed any non-defamation tortious conduct by DAG in Georgia, nor a cognizable claim under § 1985(3), any reasonably

13

competent attorney would have concluded that the Court lacks personal jurisdiction. Because Plaintiff offers no "reasonable argument to change existing law" with regard to the explicit limitations in Georgia's long arm statute, the assertion that the Court has personal jurisdiction over DAG is legally frivolous.

### ii. Plaintiff's Assertion that DAG's Statements are Defamatory is Legally Frivolous

"Under Georgia law, a claim for defamation has four elements: (1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication to a third party; (3) fault by the defendant amounting to at least negligence; and (4) special harm or the actionability of the statement irrespective of special harm." *American Civil Liberties Union v. Zeh*, 312 Ga. 647, 650 (Ga., 2021). Where the speech is about a matter of public concern, a party must show fault and falsity. *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 776 (1986).

When speech expresses an opinion "on 'matters with respect to which reasonable men might entertain differing opinions'", it cannot be proven false and "is not libelous." *Bergen v. Martindale-Hubbell*, 176 Ga. App. 745, 747 (1985). Whether a statement constitutes fact or opinion is a question of law. *Old Dominion Branch No. 496, Nat'l Assoc. of Letter Carriers v. Austin*, 418 U.S. 264, 283-84 (1974). Speech about politics and public controversy and impassioned statements "heavily laden with emotional rhetoric and moral outrage" are not likely to be perceived as factual. *Milkovich*, 497 U.S. at 32 (Brennan, J. dissenting);

14

*Bennett v. Hendrix*, 2007 U.S. Dist. LEXIS 102156, at *10 (N.D. Ga. 2007) (Thrash, J.); *Koch v. Goldway*, 817 F.2d 507, 509 (9th Cir. 1987) (statement more likely to be opinion when made in the general context "of a heated political debate, where certain remarks are necessarily understood as ridicule or vituperation"); *Hoppe v. Hearst Corp.*, 770 P.2d 203, 207 (1989) ("In the context of an ongoing political controversy, 'the audience is prepared for mischaracterizations and exaggerations, and is likely to view such representations with an awareness of the subjective biases of the speaker'"). The forum and context of the speech also affect whether it is perceived as fact or opinion. *See Glob. Telemedia Int'l, Inc. v. John Doe 1*, 132 F. Supp. 2d 1261, 1267 (C.D. Cal. 2001) (Internet postings "are full of hyperbole, invective, short-hand phrases and language not generally found in fact-based documents"); *Ganske v. Mensch*, 480 F. Supp. 3d 542, 545 (S.D.N.Y. 2020) ("If the Internet is akin to the Wild West... Twitter is, perhaps, the shooting gallery, where verbal gunslingers engage in prolonged hyperbolic crossfire.").

The conduct Plaintiff identifies in support of his defamation claim against DAG is limited to: (1) referring to the Israeli Defense Force as the "Israeli *Offense* Force" (SAC ¶ 145(a)); (2) "permit[ing] defamatory third-party comments to remain publicly visible" on their social media post (SAC ¶ 145(b)); (3) making a post "includ[ing] a hyperlink" to a separate website that included a phone script asking Emory to "investigate" and "remove" any "faculty and students endorsing Israel's apartheid regime" (SAC ¶ 145(c)); (4) making a post

15

"includ[ing] a hyperlink" to a separate website that included an email script stating that Plaintiff "has written openly about his participation in a military campaign that has been condemned as a genocide" (SAC ¶ 145(d)); and (5) stating that it agrees with Mohammad's "truthful statements, that any physician who served in the IDF within the prior sixteen months had perpetuated genocide" (SAC ¶¶ 91, 145(e)). Not a single one of these is actionable defamation, and Plaintiff's claims against DAG have no chance whatsoever of succeeding as a matter of law. Any reasonable competent attorney should know that.

The first statement is patently the sort of "hyperbole, invective, short-hand phras[e]" readily distinguishable as opinion in the context of social media posts. *Glob. Telemedia Int'l Inc.*, 132 F.Supp.2d at 1267. Allegation 2 is not even a statement attributable to DAG, but seeks to hold DAG accountable for third party comments in response to its social media posts—something that is explicitly barred by statute, and for which Plaintiff has no reasonable argument to expand existing law. 47 U.S.C. § 230(c)(1) ("No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider"). Allegations three and four are equally frivolous, as both seek to hold DAG liable for content published by third parties. Allegation 3 is not even a factual claim to begin with but rather a request that Emory University take certain actions. Statement number 4 does state a fact; however, it relies entirely on Plaintiff's own public

16

op-ed—which he now seeks to minimize by relabeling it a "blog" for the first time in his Opposition, and in which he confessed his voluntary service in the IDF's military campaign in Gaza. DAG's comment that the campaign "has been condemned as a genocide" is irrefutably true based on a simple Google search. Plaintiff's fifth and final accusation is clearly an expression of *opinion*—an agreement with the view that the IDF is committing a genocide and that all active-duty IDF soldiers in Gaza are perpetuating that genocide.

Not a single one of these statements comes anywhere near the sort of falsifiable statement of fact that gives rise to defamation, and Plaintiff had no good faith, non-frivolous basis for including DAG in this lawsuit. The only way Plaintiff could remotely state a claim against DAG would be if the statement "the IDF is committing genocide" were actionable defamation against every individual IDF soldier, sufficient to haul the speaker into federal court. Such an asinine outcome is anathema to the First Amendment and has no chance of success, and the frivolousness of this claim shows Plaintiff's improper purpose in filing this lawsuit: silencing Israel's critics through abusive SLAPP suits like this one. Plaintiff must be sanctioned to stop him from bringing another frivolous suit the next time his students criticize him (or even the IDF in general) on Instagram.

Lastly, Plaintiff's shockingly deceptive use of square brackets—literally inserting extra words into DAG's statements in order to make them seem defamatory—should be sanctioned. For example, Plaintiff's Opposition quotes

17

DAG as having called for Emory to "hold [Dr. Winer] accountable", when the original text does not single out Plaintiff at all. ECF No. 175 at p. 3. The original text states: "Hold faculty and students accountable for their participation in or legitimization of the genocide of Palestinians." ECF No. 130 at ¶ 88. This misuse of square brackets was deliberate, to misrepresent a general demand for accountability for any guilty party as targeted discrimination against Plaintiff.

An even more egregious example of this sanctionable conduct is where Plaintiff—again in his Opposition—pretends to quote DAG directly as having stated "'[t]his man [i.e., Dr. Winer] *participated in* aiding and abetting a genocide, in aiding and abetting the destruction of the healthcare system in Gaza,' '*perpetuated* a genocide'; and '*inflict[ed]* dismemberment, torture, and slaughter.'" ECF No. 175 at 9 (emphasis added by Plaintiff). These quotes do not appear in the cited paragraph of the SAC, and for good reason—they are (edited) quotes from Mohammad's Democracy Now! interview, deceptively strung together with fragments from DAG's posts to give the false impression of being one continuous statement, by DAG, specifically about Plaintiff. At this point, it is difficult to even keep track of Plaintiff's myriad deceptions, misrepresentations, and frivolous allegations, and he must be sanctioned for this abuse.

### iii. Plaintiff's Assertion that Zionist Beliefs or Association with the IDF Could Establish a Protected Class Under § 1985(3) is Legally Frivolous

Plaintiff's § 1985(3) claim requires "some racial, or perhaps otherwise

class-based, invidiously discriminatory animus behind the conspirators' action." *Dean v. Warren*, 12 F.4th 1248, 1255 (11th Cir. 2021) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971)). Plaintiff claims that Defendants targeted him due to his "Zionist beliefs" (SAC ¶ 189), "association with the IDF" (SAC ¶ 10), "affiliation with both Israel and the IDF" (SAC ¶ 9), and "identity as a Zionist Jew" (SAC ¶ 8), and were motivated by his enlisting in the IDF during what they and many in the international community agree is a genocide.

Plaintiff's claim is frivolous and has no reasonable chance of success because it contradicts clearly established caselaw, and Plaintiff offers no plausible argument to expand existing law to encompass his claim. This Court has held, numerous times, that national identity and political beliefs are not cognizable as protected classes under § 1985(3). *See Fiske v. Lockheed-Georgia Co., Div. of Lockheed Corp.*, 568 F. Supp. 590 (N.D. Ga. 1983) (§ 1985(3) does not reach politically motivated conspiracies); *Smith v. Turner*, 764 F. Supp. 632, 1991 U.S. Dist. LEXIS 7131 (N.D. Ga. 1991) (§ 1985(3) does not provide remedy for "every concerted effort by one political group to nullify influence of or do other injury to competing group by use of otherwise unlawful means"); *Bauge v. Jernigan*, 671 F. Supp. 709 (D. Colo. 1987) (plaintiff's claim of discrimination based on his Norwegian citizenship is not within the scope of § 1985 protection). As foreign citizens are not a protected class, neither are soldiers in a foreign military.

Plaintiff's Opposition string-cites three cases in support of this frivolous

19

legal claim, and misrepresents them as standing for the proposition that "a foundational element of Jewish identity includes a profound tie to Zion, the birthplace of Jewish peoplehood, located in modern-day Israel." ECF No. 175 at 23, citing *Shaare-Tefila Cong. v. Cobb*, 481 U.S. 615, 617–18 (1987); *LeBlanc-Stenberg v. Fletcher*, 781 F. Supp. 261, 267 (S.D.N.Y. 1991); and *Sinai v. New Eng. Tel. & Tel. Co.*, 3 F.3d 471, 474–75 (1st Cir. 1993). None of these cases includes the words "Zion" or "Zionist" and only *Sinai* even mentions "Israel". In *Sinai* the court did *not* hold that "Israeli" is plausibly a protected class—it merely affirmed a jury instruction that "national origin discrimination could be used, together with other evidence, to arrive at a conclusion vis-à-vis race discrimination. 3 F.3d at 475. None of these cases provide support for Plaintiff's frivolous claim that Zionists—or even Israelis—are a protected class under § 1985(3).

More importantly, Plaintiff ignores a tidal wave of federal court rulings in recent years that have specifically and repeatedly rejected his legal claim. *See e.g., StandWithUs Ctr. for Legal Just. v Massachusetts Inst. Of Tech.*, 2025 U.S. App. LEXIS 27390, at \*18 (1st Cir. 2025); *Eyal Yakoby v. Trustees of the Univ. of Pennsylvania*, 2025 US Dist. LEXIS 103709, at \*18-19 (E.D. Pa. June 2, 2025); *Landau v. Corp. of Haverford Coll.*, 780 F.Supp.3d 548, 555 (E.D. Pa. Jan. 6, 2025); *Canel v. Art Inst. of Chicago*, 2025 US Dist LEXIS 30309, at \*24-25 (N.D. Ill. Feb. 20, 2025); *Gerwaski v. Nevada ex rel. Bd. of Regents of the NV Sys. of Higher Educ.*, 2025 US Dist. LEXIS 84645, at \*21-22 (D. Nev. May 5, 2025); *Sussman et al v. Massachusetts*

20

*Institute of Technology et al.*, 1:25-cv-11826-RGS, Electronic Order, Docket No. 75, (D. Mass. Jan. 5, 2025) ("anti-Israeli sentiment is not, without more, antisemitic messaging"); *Am. Assn. of Univ. Professors v Rubio*, 802 F Supp 3d 120, at n. 17 (D. Mass. 2025) ("Criticisms of the State of Israel are not anti-Semitism, they're political speech, protected speech"); *Newman v. Point Park Univ.*, 2022 U.S. Dist. LEXIS 60722, at *78-79 (W.D. Pa. Mar. 31, 2022).

The case *Landau v. Corporation of Haverford College* is on point, and rejected the exact equivalency Plaintiff proffers here. 780 F. Supp. 3d at 555. The *Landau* court rejected the premise that anti-Zionism or criticism of Israel is antisemitic, because to "blur the line between Zionism as a political philosophy and Zionism as a component of Jewish identity" would "implicitly sweep any and all criticism of Israel into the basket of antisemitism." *Id.* The Court "reject[ed] Plaintiffs' embedded proposition that any anti-Israel speech is intrinsically antisemitic, because reasonable people acting in good faith can challenge decisions of the Israeli government without harboring antisemitic views." *Id.* Plaintiff repeats this same frivolous move.

## II.    Plaintiffs' Counsel Was or Should Have Been Aware that the Claims Against DAG Were Frivolous

Plaintiff is now represented by four law firms, comprising at least fifty attorneys—eight of whom have entered appearances in this matter. If even a single one of them is reasonably competent, they should have known these

21

claims were frivolous. Moreover, the fact that Plaintiffs' Counsel amended the original complaint *twice* to supplement his allegations suggests that he put some consideration into their sufficiency. It is clear that after a reasonable inquiry, Plaintiffs' Counsel should have known that the claims against DAG were not grounded in facts and law. *See, e.g., Diaz v. First Marblehead Corp.*, 643 F. App'x 916, 923 (11th Cir. 2016) (affirming Rule 11 sanctions where the defendant obviously could not be held liable based on the facts pleaded in the complaint).

### III.    This Lawsuit Names DAG for Improper Purposes of Harassment, Intimidation, and Burdening Protected Political Speech that Plaintiff Disagrees With, in Violation of Rule 11(b)(1)

Where, as here, a legal filing includes "factually or legally frivolous claims", "a 'motive to harass' can also be inferred." *Thompson*, 610 F.3d at 665-6. An improper purpose can also be "inferred from circumstantial evidence." *Id.* at 665. Two improper motives are readily discernible from Plaintiff's pleadings.

First, the three complaints in this case were filed for the improper purpose of intimidating Palestinians and their supporters from engaging in public speech and advocacy on this important political topic by burdening them with expensive litigation costs. Plaintiff intends to abuse this Court to chill public discourse and opinions on a political topic of utmost importance—Israel's genocide in Gaza. Second, the complaints were filed for the improper purpose of penalizing anyone who publicly supported or associated with Mohammad in defending against her unjust suspension. Indeed, the actionable conduct alleged

22

against each organizational Defendant consists of public speech with the primary topic and motive of defending Mohammad against suspension. These are not permissible purposes for which to bring a lawsuit and violate Rule 11(b)(1).

Plaintiff's first impermissible purpose is silencing criticisms of Israel — abusing the legal system to bully and tax his political opponents. Deploying litigation as a strategic tool to burden an opposing party, rather than to resolve a genuine legal dispute, is an improper purpose. *Florida Commercial Banks v. Culverhouse*, 772 F.2d 1513, 1519 (11th Cir. 1985). The Complaint targets Defendant's protected expression and advocacy, yet fails to articulate any viable legal theory tethered to that speech. This jarring disconnect between the allegations put forward and any cognizable cause of action is not incidental; it is indicative of a filing primarily intended to burden DAG for its expression and chill and silence critics of Israel, rather than to pursue a good faith legal claim.

Plaintiff hopes to send a chilling message that anyone who accuses Israel or the IDF of apartheid, genocide, or ethnic cleansing risks a federal lawsuit. Plaintiff asserts that it is defamatory to opine that:

- Israel is "perpetrating a genocide" (SAC ¶ 27);

- Serving in the IDF perpetuates the genocide (SAC ¶ 145(e));

- Zionism has been used to "justify the ethnic cleansing of the Palestinians and the illegal acquisition of their lands" (SAC ¶¶ 27, 29);

- Israel is an apartheid state (SAC ¶ 28); or that

23

- The IDF is more accurately labeled the "IOF" (SAC ¶ 145(a)).

Plaintiff's Counsel from the National Jewish Advocacy Center (NJAC) has pursued a pattern of litigation against individuals and entities who criticize Israel in precisely these ways, or engage in Palestine-related advocacy.[4] NJAC is part of an international coalition of pro-Israel organizations that coordinate legal campaigns to combat "efforts that delegitimatize Israel."[5] Plaintiff's other Counsel have also publicly denounced pro-Palestinian speech and suggested that it is unlawful. Attorney Panitch is an elected official who has repeatedly and publicly spoken in defense of Israel and uses derogatory terms to characterize Palestine solidarity groups.[6] Plaintiff's counsel is clearly attempting to send a chilling message that anyone criticizing Israel should fear being pulled into utterly frivolous lawsuits, and should refrain from speaking up.

Plaintiff's second improper purpose was to retaliate against DAG for supporting Mohammad. Plaintiff has brought this suit based on two Instagram

---

[4] Since 2023, NJAC has filed multiple federal lawsuits against individuals, organizations or student groups critical of Israel's genocide and/or supportive of Palestine-related advocacy. *Parizer v. Am. Muslims for Palestine*, No. 1:24-cv-00724 (E.D. Va. filed May 1, 2024) (dismissed); *Lavi v. UNRWA USA Nat'l Comm., Inc.*, No. 1:24-cv-00294 (D. Del. filed Mar. 8, 2024) (dismissed); *Christian Friends of Israeli Cmtys. v. Albanese*, No. 1:25-cv-02805 (D. Colo. filed Sept. 8, 2025); *Nat'l Jewish Advocacy Ctr. v. City of Northampton* (D. Mass. filed 2026). *See* Nat'l Jewish Advocacy Ctr., Strategic Impact Litigation, <https://www.njaclaw.org/strategic-impact-litigation>.

[5] Nat'l Jewish Advocacy Ctr., IJAC, <https://www.njaclaw.org/ijac> (visited Apr. 29, 2026).

[6] Sasha Heller, *Panitch Honored for Unwavering Support of Israel*, Atlanta Jewish Times (May 28, 2025), <https://www.atlantajewishtimes.com/panitch-honored-for-unwavering-support-of-israel/>; Menachem Wecker, *My Southern Jewish Way of Saying "Bless Their Hearts," Says State Rep Who Buys Trees in Israel for Trolls*, St. Louis Jewish Light (Apr. 19, 2024), <https://stljewishlight.org/antisemitism/my-southern-jewish-way-of-saying-bless-their-hearts-says-state-rep-who-buys-trees-in-israel-for-trolls/>.

posts published explicitly for the purpose of supporting Mohammad and demanding her reinstatement, made as part of "a community-led initiative that was launched in response to Mohammad's suspension." SAC ¶ 77. Upon information and belief, Plaintiff sought out any organizations that had supported Mohammad in the face of her unjust suspension by Emory, and decided to drag them into costly litigation as punishment for associating with her.

## IV.    DAG Should Be Awarded Reasonable Attorneys' Fees and Costs

The Court should require Plaintiffs' Counsel to pay DAG's reasonable attorneys' fees and costs incurred in responding to his three complaints. Fed. R. Civ. P. 11(c)(4). *See e.g. Lindsay v. Emory University*, 2025 WL 4057075, *10 (N.D. Ga. June 30, 2025); *Capital Security Systems, Inc. v. NCR Corporation*, 2025 WL 1358594, *10 (N.D. Ga. April 2, 2025); *Cairobe v. Zwicker & Associates, P.C.*, 2024 WL 4720381, *7 (N.D. Ga. Sept. 27, 2024); *IOU Central, Inc. v. Embryolisse USA, Inc.*, 2024 WL 3313351, *2 (N.D. Ga. May 1, 2024). Additionally, because the purpose of Rule 11 is "to *deter* baseless filings in district court" (emphasis added), DAG respectfully asks the Court to inquire as to any approximate quantity of funds raised by Plaintiff's counsel based on their prosecution and promotion of this lawsuit, and to require disgorgement of any unjustly obtained funds.

## CONCLUSION

For the reasons stated above, DAG respectfully submits that Plaintiffs' Counsel should be sanctioned severely under Rule 11, to deter future abuses.

25

Respectfully submitted,


*/s/ Collin Poirot*
Collin Poirot
(*pro hac vice*)
New York SBN: 5673405
2603 Oak Lawn, Suite 300
Dallas, TX  75219
(214) 392-2281
cpoirot.law@gmail.com

*/s/ Akil Secret*
Akil Secret
Georgia Bar No. 634075
The Secret Firm PC
P.O. Box 91028
Atlanta, GA 30364
(404) 524-5300
asecret@thesecretfirm.com

*Attorneys for Doctors Against Genocide Society (DAG)*

26

## CERTIFICATE OF COMPLIANCE WITH L.R. 5.1

I HEREBY CERTIFY that the foregoing document was prepared in Book Antiqua 13-point font, as approved by Local Rule 5.1.

Dated:        June 1, 2026                          */s/ Collin Poirot*
                                                    Collin Poirot
                                                    (*pro hac vice)*
                                                    New York SBN: 5673405
                                                    2603 Oak Lawn, Suite 300
                                                    Dallas, TX  75219
                                                    (214) 392-2281
                                                    cpoirot.law@gmail.com

27

## CERTIFICATE OF COMPLIANCE WITH FRCP 11(c)(2)

I HEREBY CERTIFY that I served Plaintiff's counsel of record notice of the claims raised herein and a draft of this motion by email on May 9, 2026, and by certified mail.

Dated:       June 1, 2026                    */s/ Collin Poirot*
                                             Collin Poirot
                                             (*pro hac vice*)
                                             New York SBN: 5673405
                                             2603 Oak Lawn, Suite 300
                                             Dallas, TX  75219
                                             (214) 392-2281
                                             cpoirot.law@gmail.com