**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

JOSHUA WINER,

  *Plaintiff,*

v.

UMAYMAH MOHAMMAD, *et al.*,

  *Defendants.*

Civil Action File

No. 1:25-cv-02329-TWT

**PLAINTIFF JOSHUA WINER'S RESPONSE TO DEFENDANT
DOCTORS AGAINST GENOCIDE SOCIETY'S MOTION FOR
SANCTIONS UNDER RULE 11 OF THE FEDERAL RULES OF CIVIL
PROCEDURE**

Lauren Israelovitch
Mark Goldfeder
Ben Schlager
NATIONAL JEWISH
ADVOCACY CENTER, INC.
3 Times Square
New York, NY 10036
lauren@njaclaw.org
*Pro Hac Vice*

David Forman Katz
THE D.F. KATZ LAW FIRM, LLC
1158 Jones Bridge Rd
Ste 420 PMB 1090
Johns Creek, GA 30022
(404) 918-5707
dkatz@dfkatzlawfirm.com
Ga. Bar. No. 408738

Josh Belinfante
Anna Edmondson
Miles Skedsvold
ROBBINS ALLOY BELINFANTE
 LITTLEFIELD LLC
500 14th Street, NW
Atlanta, GA 30318
T:  (678) 701-9320
E:  mskedsvold@robbinsfirm.com
Ga. Bar No. 371576

Esther Panitch
THE PANITCH LAW GROUP, PC
4243 Dunwoody Club Drive
Suite 205
Atlanta, GA 30350
esther@panitchivory.com
Ga. Bar. No. 143197

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................1

BACKGROUND ........................................................................................1

    I.     Factual Background..........................................................................1

    II.    Procedural History .........................................................................3

LEGAL FRAMEWORK ...........................................................................5

ARGUMENT ............................................................................................6

    I.     DAG asks for sanctions over a supposedly-incorrect assertion of fact despite (1) DAG raising the purported truth for the first time in its motion for sanctions and (2) Dr. Winer withdrawing the allegation for purposes of the motion to dismiss. ...........................6

    II.    DAG ignores clearly plausible inferences of intent to interfere with Dr. Winer's employment to claim that the allegation of an illegal purpose is frivolous. ...............................................................11

    III.   DAG ignores plausible inferences of conspiracy to claim that Dr. Winer's assertion of a conspiracy is frivolous. ..............................13

    IV.   DAG misconstrues Dr. Winer's allegations to argue that his race or national origin claim is frivolous. .............................................14

    V.    DAG ignores in-circuit authority and misrepresents the holdings of out of circuit authority to claim that the basis for exercising personal jurisdiction over it is frivolous.......................................15

    VI.   DAG begs the question of First Amendment privilege to claim that Dr. Winer's defamation claim is frivolous....................................17

    VII.  DAG ignores context to argue that Dr. Winer made "shockingly deceptive use of square brackets."................................................19

    VIII. DAG ignores settled precedent to claim that Dr. Winer's claim of belonging to a protected class is legally frivolous. .......................21

    IX.   DAG infers an improper motive only from the foregoing baseless arguments and speculation. .......................................................24

CONCLUSION .............................................................................................25

CERTIFICATE OF COMPLIANCE..............................................................27

CERTIFICATE OF SERVICE.......................................................................28

## INTRODUCTION

The Advisory Committee Notes to Rule 11 explain what every responsible lawyer knows: Rule 11 motions are not to be used to test legal sufficiency, increase costs, or intimidate an adversary. Fed. R. Civ. P. 11, advisory committee's note to 1993 amendment. Defendant Doctors Against Genocide Society's ("DAG") motion for sanctions is a textbook example of that misuse.

DAG largely repackages its motion to dismiss as a sanctions motion, arguing that the SAC is frivolous rather than merely insufficient. The remainder of its arguments concern a withdrawn allegation and trivial briefing issues. Each of these meritless contentions is addressed in turn below.

## BACKGROUND

### I.    Factual Background

This is a defamation case. Plaintiff Joshua Winer is a surgical oncologist and medical school professor at the Emory School of Medicine. SAC ¶ 12. After Dr. Winer returned from volunteer service as a physician in the Israel Defense Forces ("IDF") following the October 7, 2023, terror attack, *id.* ¶¶ 12, 34, he published a blog post reflecting on his experience (the "Op-Ed"). *Id.* ¶¶ 32–35. Based on this alone, Defendant Umaymah Mohammad (an Emory student) publicly and repeatedly accused Dr. Winer, personally, of aiding and abetting war crimes and the destruction of Gaza's healthcare system. *Id.* ¶¶ 13, 36–39.

Based on DAG's conduct after Mohammad's statements, Dr. Winer alleges that DAG conspired with Mohammad and the other codefendants to smear his reputation and pressure Emory to fire him. In particular, at the end of an op-ed in which Mohammad made further false statements about Dr. Winer, *see id.* ¶ 56, Mohammad provided a link to "'a community led effort' that had been launched to support her," i.e. an Instagram post by DAG and another defendant incorporating "additional false statements about [Dr. Winer]," *id.* ¶ 60. This post included offensive statements alluding to an Emory Physician who was readily, if not explicitly, identifiable as Dr. Winer, *id.* ¶ 78, and it linked to an Action Network campaign, which contained an email template ("Email Template") and phone script ("Phone Script") that *did* identify Dr. Winer by name, *id.* ¶¶ 86–88.

DAG's Instagram post quoted Mohammad's defamatory statement that he had "participated in aiding and abetting a genocide . . . the destruction of the healthcare system in Gaza[,] and the murder of over 400 healthcare workers." *Id.* ¶ 78. And the linked Email Template and Phone Script accused him of "participat[ing] in this genocidal campaign" and "involvement in war crimes," and it called on Emory to "[i]nvestigate faculty and students endorsing Israel's apartheid regime and remove them for patient safety," as well as "[h]old faculty and students accountable for their participation in or legitimization of the genocide of Palestinians." *Id.* ¶¶ 86, 88; *see also id.* ¶¶ 84,

86–87.

DAG later collaborated with the same codefendant on a second Instagram post, as well, which announced that they "stand unequivocally with Umaymah and her truthful statements[ ] that any physician-faculty who served in the IDF these last 16 months perpetuated a genocide[.]" *Id.* ¶ 91. This post also provided the name of Dr. Winer's blog post so that readers could identify him, and it rhetorically asked "[h]ow can individuals who inflict dismemberment, torture, and slaughter return to their daily routines as medical professionals[.]" *Id.*; *see also id.* ¶¶ 93–95 (DAG's second post also directed readers to contact Emory and the School of Medicine to "leave a message outlining the demands using the provided script").

## II.    Procedural History

Dr. Winer's operative Second Amended Complaint ("SAC") alleges that DAG's Instagram posts defamed him (Count I), placed him in a false light and invaded his privacy (Count II), conspired with other defendants to defame him and convince Emory to terminate him (Count III), and that this conspiracy was motivated by his Jewish Identity in violation of 42 U.S.C. § 1985(3), (Count IV).

After Dr. Winer consented to an extension of time for DAG to answer the First Amended Complaint, even though DAG's deadline to do so had already passed, *see* Dkt. Nos. 58, 66, DAG moved to dismiss, *see* Dkt. 101-1. DAG did

– 3 –

not argue that the amended complaint had misidentified Mohammad and Marya as co-founders of its organization. *Compare id. with* Dkt. 22 ¶ 16.

This Court later granted Dr. Winer's motion for leave to file the SAC, finding that his 42 U.S.C. § 1985(3) claim was at least "colorable" and that the proposed amendments were not futile. Dkt. 129 at 12.

Only then, in moving to dismiss the currently operative SAC, did DAG claim that Marya and Mohammad are not co-founders of DAG. *See* Dkt. 163-1 at 8–9. But DAG did not argue that someone else had actually founded DAG— let alone cite any publicly available information to the contrary. It simply claimed that Dr. Winer's basis for the allegation was insufficient. *See id.*

In the spirit of good faith, Dr. Winer's response to DAG's motion to dismiss softened the point: "[u]pon information and belief . . . DAG has co-founders and/or members (including Defendant Mohammad) who live and work in Georgia and create and/or implement DAG programming" or "support [its] mission from within the state[.]" Dkt. 175 at 6. DAG criticized this effort in its reply brief, but did not provide publicly available information about a different founder. Dkt. 179 at 6. After DAG raised the issue of its founding more specifically in its Rule 11 letter, Dr. Winer offered another show of good faith, filing a notice explaining that he accepted DAG's representations for the time being—i.e., he is not asking this Court to accept as true that Marya and Mohammad founded DAG. *See* Dkt. 183. DAG filed its Rule 11 motion anyway.

## LEGAL FRAMEWORK

"The purpose of Rule 11 is to deter baseless filings in district court and thus streamline the administration and procedure of federal courts." *Peer v. Lewis*, 606 F.3d 1306, 1311 (11th Cir. 2010) (quoting 2 James Wm. Moore et al., *Moore's Federal Practice* § 11.03 (3d ed. 2010) (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990)). "The rule is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories." Fed. R. Civ. P. 11 advisory committee's note to 1983 amendment.

On the one hand, "Rule 11(b)(1) sanctions are appropriate when an attorney or party presents a paper for an improper purpose." *Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 665 (11th Cir. 2010) (Tjoflat, J., concurring). An improper purpose is usually inferred from factors not present here, like "excessive persistence in pursuing a claim or defense in the face of repeated adverse rulings." *Id.* (quoting *Indus. Risk Insurers v. M.A.N. Gutehoffnungshütte GmbH,* 141 F.3d 1434, 1448 (11th Cir.1998)).

And on the other, Rule 11(b)(2)–(3) require courts to ask whether the claims are objectively frivolous and whether counsel should have known. *Peer*, 606 F.3d at 1311 (quoting *Byrne v. Nezhat*, 261 F.3d 1075, 1105 (11th Cir.2001)). Even if "the evidence supporting the claim is reasonable, but simply 'weak' or 'self-serving,' sanctions cannot be imposed." *Thompson*, 610 F.3d at 665 (Tjoflat, J., concurring) (citing *Davis v. Carl,* 906 F.2d 533, 536 (11th Cir.

– 5 –

1990)).

Finally, sanctions at the pleading stage are very unusual. Rule 11 is mainly concerned with "insisting upon a position after it is no longer tenable." *Peer*, 606 F.3d at 1311 (11th Cir. 2010) (quoting Fed. R. Civ. P. 11, advisory committee note to 1993)). That usually requires persisting with a contention once "evidentiary support is not obtained after a reasonable opportunity for further investigation or discovery[.]" *Id.*; *Anderson v. Smithfield Foods, Inc.,* 353 F.3d 912, 915–16 (11th Cir.2003) (affirming a district court's dismissal of a RICO count, but reversing the imposition of sanctions when there was "scant on-point authority" to guide the attorney to the conclusion that the claim had no chance of success).

## ARGUMENT

DAG offers a litany of arguments that Dr. Winer's claims against it are sanctionable. Each lacks any arguable merit, and most simply rehash 12(b)(6) arguments with extra invective or *ad hominem*s. None of this comes anywhere close to a sanctionable violation of Rule 11.

**I. DAG asks for sanctions over a supposedly-incorrect assertion of fact despite (1) DAG raising the purported truth for the first time in its motion for sanctions and (2) Dr. Winer withdrawing the allegation for purposes of the motion to dismiss.**

DAG's first bid for sanctionable conduct relates to the SAC's allegation that codefendants Mohammad and Marya are co-founders of DAG. *See, e.g.,*

SAC ¶ 13. According to DAG, this is incorrect. But rather than contest this factual supposition in discovery, DAG suggests that it is sanctionably frivolous. Dkt. 184-1 at 5–7. That argument is thoroughly baseless.

DAG primarily complains that Dr. Winer based this allegation on the factual premise that "[b]oth Mohammad and Marya recently presented as DAG panelists and hosted DAG webinars." SAC ¶ 17. This, DAG argues, is insufficient to infer that they are co-founders. *See* Dkt. 184-1 at 5.

As DAG itself acknowledges, the allegation is made "[u]pon information and belief[.]" *Id.;* SAC ¶ 17.  And "[e]very day in pleadings filed across the country, allegations are made upon information and belief. In fact, it is a perfectly proper and well-accepted practice for parties to so hedge their allegations, and good lawyers routinely use this tactic." *Satco Products, Inc. v. Seoul Semiconductor Co., Ltd.*, 551 F. Supp. 3d 1329, 1335 (N.D. Ga. July 27, 2021) (citing 5 Charles Alan Wright et al., Federal Practice & Procedure § 1224 (3d ed. 2004)). Thus, "pleading on information and belief is a desirable and essential expedient when matters that are necessary to complete the statement of a claim are not within the knowledge of the plaintiff[,] but he has sufficient data to justify interposing an allegation on the subject." *Id.*

DAG seems to think that because the SAC did not provide more on-point specific factual premises to support the claim, this allegation is frivolous. The only case DAG cites to support that notion is a nonbinding district court case,

which did not consider sanctions.[1] DAG, in other words, lacks *any* legal basis for its contention.

Regardless, this is (at most) a minor error, and Dr. Winer has already eliminated any potential harm to DAG. Dr. Winer accepts (for present purposes) DAG's representation that it was actually founded by Nidal Jboor and Karameh Hawash-Kuemmerle. *See* Dkt. 183. There was no *need* to do so—Dr. Winer is entitled to plead facts on information and belief, as well as to have his factual allegations assumed true for purposes of a motion to dismiss. But it reflects good faith, and that should end the matter.

Rather than return the gesture, DAG spits on the olive branch. DAG imagines that the allegation was made with "deliberate indifference to obvious facts," Dkt. 184-1 at 6 (quotation omitted), and goes so far as to suggest that it was fabricated in bad faith. *See id.* at 7. The truth is far less sinister.

---

[1] Indeed, while "[s]ome cases suggest that when allegations are made on the basis of information and belief, the facts on which the pleader's belief is founded should also be alleged," the Eleventh Circuit does not appear to have said so, and the leading federal practice treatise explains that such a requirement would be "unnecessary and inconsistent with the philosophy of the federal pleading rules, except when the stricter requirements of Federal Rule of Civil Procedure 9" apply. Wright & Miller, supra § 1224.

And to be clear, even the courts requiring identification of facts leading to the pleader's belief merely hold that the failure to do so (at most) results in a failure to state a claim—not sanctions. *See, e.g.*, *Menard v. CSX Transp., Inc.,* 698 F.3d 40 (1st Cir. 2012); *Duane v. Altenburg*, 297 F.2d 515, 518-19 (7th Cir. 1962); *Simonian v. Edgecraft Corp.*, 2010 WL 3781262, *3 (N.D. Ill. 2010); *Aetna Cas. & Sur. Co. of Hartford, Conn. v. Porter,* 7 F.R.D. 238, 239 (E.D. Pa. 1946).

Dr. Winer's allegation that Mohammad and Marya are co-founders of DAG was based on public-source evidence showing their close coordination with DAG and its founders. *See, e.g.* Timothy Pratt, *A Palestinian American Medical Student Objected to Working Alongside IDF Soldiers. The University Suspended Her, The Guardian* (Mar. 24, 2025, 12:00 PM) available at https://www.theguardian.com/us-news/2025/mar/24/emory-university-student-suspended-gaza-protest ("Mohammad and Marya have connected and are now part of a small group, including the founders of Doctors Against Genocide, who are launching a Zoom course aimed at healthcare workers and medical students who want to 'speak up about the genocide in Gaza'"). Cards on the table: Dr. Winer's counsel originally thought this article identified Mohammad and Marya *as* the co-founders. That may have been an incorrect inference, but a mistake is not bad faith.[2] And again: none of this should matter, because Dr. Winer has promptly offered a correction. *See* Dkt. 183.

Failing that, DAG suggests that the inclusion of this factual assertion in the SAC is still sanctionable because the truth was "publicly available on Wikipedia as well as Google's AI search results at all relevant times." Dkt. 184-1 at 7. But DAG's representation that Dr. Winer "admits" this information was

---

[2] For this same reason, DAG's insistence that Dr. Winer's correction is "incoherent," and somehow betrays an ill motive, is similarly baseless. Dkt. 184-1 at 6.

available "at all relevant times" is false. *Id.*; *compare* Dkt. 183 at 1–2 ("Dr. Winer has *recently* become aware that publicly available materials identify" other people as DAG's co-founders (emphasis added)).

DAG's argument depends on the premise that *Wikipedia* and Google AI are such authoritative sources that contrary allegations are sanctionable. That premise is untenable. *See, e.g.* Thomas Barrabi, *Google's AI Overviews Spew Millions of False Answers Per Hour, Bombshell Study Reveals*, AOL News (Apr. 9, 2026), https://www.aol.com/news/google-ai-overviews-spew-millions-192124910.html; Dick Jones Commc'ns, *Most Wikipedia Entries About Companies Contain Factual Errors, Study Finds*, ScienceDaily (Apr. 17, 2012), www.sciencedaily.com/releases/2012/04/120417113527.htm ("Sixty percent of Wikipedia articles about companies contain factual errors. But when public relations professionals try to correct them the rules often get in the way, experts say.")

One other point bears mention. DAG asserts that it has "has now briefed and refuted the frivolous cofounder allegation three times, each time putting Plaintiff on notice that his allegation had no reasonable basis." Dkt. 184-1 at 7. That is misleading. DAG has only ever argued that the facts alleged do not *support* Dr. Winer's allegation regarding DAG's co-founders. *See* Dkt. Nos. 163-1 at 8–9, 179 at 6. Until this Rule 11 motion, DAG never identified anyone else as the founder.

In sum, DAG has no colorable basis to argue that Dr. Winer's allegation regarding DAG's co-founders is frivolous or sanctionable, especially because Dr. Winer has already withdrawn that allegation per Fed. R. Civ. P. 11(c)(2).

## II.    DAG ignores clearly plausible inferences of intent to interfere with Dr. Winer's employment to claim that the allegation of an illegal purpose is frivolous.

DAG next argues that Dr. Winer's allegation that it conspired with National Students for Justice in Palestine ("NSJP") is factually frivolous because "[t]he only alleged conduct by DAG—publication of the two Instagram posts—offers no factual support at all for Plaintiff's claim that DAG was motivated by an unlawful purpose," since "[n]either of the posts even mention [Dr. Winer's] name . . . and the indisputable focus of the posts was . . . supporting a Palestinian student[.]" Dkt. 184-1 at 7–8. DAG acknowledges that "the lynch pin [*sic*] of Plaintiff's entire claim under 42 U.S.C. § 1985(3)" is that the defendants here "intended to interfere with [Dr. Winer's] employment contract [with Emory,]" but DAG claims there is no suggestion that it participated in an effort to get Dr. Winer fired. *Id.* at 8–9. These contentions simply blink reality.

DAG's first Instagram post referred to "an Emory physician who recently served in the Israeli Occupation Forces [*sic*]" and quoted Mohammad's statement that this physician "'participated in aiding and abetting a genocide, in aiding and abetting the destruction of the healthcare system in Gaza and

the murder of over 400 healthcare workers[.]'" SAC ¶ 78. This post called on Emory to "hold accountable those students and faculty who have 'participated in or legitimized the genocide in Gaza,'" *id.* ¶ 84—which was intended to include Dr. Winer since there is no other professor in the School of Medicine that served in the IDF following the October 7 attacks, *id.* ¶ 48.

DAG's second Instagram post not only announced that DAG "[stood] unequivocally with Umaymah Mohammad and her truthful statements" about Dr. Winer, but also added that the relevant "IDF soldier and faculty member" in question "published his own op-ed for the Times of Israel titled, 'An ongoing quest to serve.'" The post ended by rhetorically asking how such "individuals who inflict dismemberment, torture, and slaughter [can] return to their daily lives as medical professionals[.]" *Id.* ¶¶ 91, 95.

Finally, both posts linked to the Email Template and Phone Script, *id.* ¶¶ 86, 93, which referred to Dr. Winer by name, *id.* ¶¶ 87–88, and called for Emory to "*remove* [faculty and students endorsing Israel's apartheid regime] for patient safety and compliance with international demands," *id.* ¶ 87 (emphasis added), or "[*h]old* faculty and students *accountable* for their participation in or legitimization of the genocide of Palestinians," *id.* ¶ 88 (emphasis added). It is hardly a stretch to understand "remove" and "hold . . . accountable" as referring to termination of employment. After all, if Dr. Winer really had participated in a genocide, wouldn't termination be the bare

minimum level of accountability that would be due?

Yet in DAG's view, it is somehow an overstatement—indeed, "a flagrant, sanctionable misrepresentation" to allege that "the second post linked to . . . a phone script . . . which 'expressly demanded that Plaintiff be fired.'" Dkt. 184-1 at 8 (quoting SAC ¶¶ 87–89). DAG may disagree that its post "expressly" called for Dr. Winer's termination. But sanctionably frivolous? Surely not.

### III.    DAG ignores plausible inferences of conspiracy to claim that Dr. Winer's assertion of a conspiracy is frivolous.

DAG next argues that Dr. Winer offers "no evidence at all" in support of the assertion that DAG conspired with any defendant who receives federal financial assistance, "or with any other codefendant for any purpose[.]" Dkt. 184-1 at 9 (title case omitted) (quotation omitted). Nonsense.

Dr. Winer plainly alleges that DAG and its codefendant NSJP collaborated on the two social media posts at issue in Dr. Winer's claims against DAG. SAC ¶¶ 77, 91. And he alleges that defendant Mohammad "provided a link . . . to the First NSJP and DAG Post," *id.* ¶ 60, in which DAG itself declared "[w]e stand unequivocally with Umaymah [Mohammad,]" *id.* ¶ 91. Given these defendants' awareness and references to one another's work, it is at least plausible that DAG was collaborating with Mohammad, as well. Dr. Winer believes these facts add up to a plausible inference of conspiracy but,

even if this Court disagrees, that's a matter for Rule 12(b)(6), not Rule 11.[3]

## IV. DAG misconstrues Dr. Winer's allegations to argue that his race or national origin claim is frivolous.

Continuing on the same theme, DAG next argues that Dr. Winer "alleges not a single fact against DAG that could reasonably support the claim" that DAG and the other Defendants were motivated by Dr. Winer's "Jewish Identity." Dkt. 184-1 at 10. DAG's point here seems to be that its joint posts with NSJP did not mention his Jewish identity or national origin directly, so Dr. Winer's claim must be that any "opposition to his IDF service is *per se* antisemitic." *Id.* The SAC says otherwise on its face.

Dr. Winer alleges *facts* to support the inference that Defendants' conspiracy was motivated by his Jewish identity. *See* Dkt. 184-1 at 10 (citing SAC ¶¶ 8, 10, 17, 192). Specifically, Dr. Winer alleges that Defendants' actions in "equating Jewish . . . military service with crimes against humanity[ ] is emblematic of modern-day antisemitic tropes," SAC ¶ 10, such as "comparing Israeli military actions in response to the Hamas led October 7 attacks to those

---

[3] DAG's argument that Dr. Winer does not directly allege an agreement between DAG and CAIR-Foundation is irrelevant, as this Court has already explained. Dkt. 129 at 13–14 (Order Granting Leave to Amend) ("For starters, the Plaintiff is not seeking to assert a standalone Title VI claim against CAIR Foundation, he seeks to assert a § 1985(3) claim predicated on a Title VI violation against all of the Defendants . . . by pressuring Emory, who the Plaintiff alleges also receives federal funding—to terminate him based on his national origin.").

of Nazi Germany," *id.* ¶ 17. DAG may not like that chain of reasoning, but it is the kind of reasoning deployed in race discrimination cases every day—and it in no way "smacks of bad faith[.]" Dkt. 184-1 at 10.[4] *See* O.C.G.A. § 50-1-12.

## V. DAG ignores in-circuit authority and misrepresents the holdings of out of circuit authority to claim that the basis for exercising personal jurisdiction over it is frivolous.

As the parties have already discussed in briefing DAG's motion to dismiss, DAG thinks this Court lacks personal jurisdiction over it because Georgia's long arm statute does not assert jurisdiction over "a cause of action for defamation of character arising from the act[.]" Dkt. 184-1 at 11 (citing O.C.G.A. § 9-10-91(2)). Indeed, DAG thinks this is so clear that Dr. Winer's assertion that the Court *has* personal jurisdiction over DAG is frivolous. But this point is well answered in Dr. Winer's response to DAG's motion to dismiss.

The defamation exclusion in the long arm statute "is immaterial where, as here, the plaintiff asserts claims over which the court has jurisdiction." Dkt.

---

[4] Not that it matters for purposes of this motion, but DAG's suggestion that the Court can take judicial notice of the substance of public opinion polls is demonstrably wrong. *See* Dkt. 184-1 at 10 n.3. Judicial notice is "a highly limited process[,]" *Shahar v. Bowers*, 120 F.3d 211, 214 (11th Cir. 1997), reserved for facts that are "not subject to reasonable dispute" because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Ev. 201(b). This "[i]ndisputability is a prerequisite" to judicial notice. *Grayson v. Warden, Comm'r, Alabama Doc*, 869 F.3d 1204, 1225 (11th Cir. 2017). Courts use it for such straightforward matters as days of the week or who the president was on a given date and time. DAG cites no authority at all for the proposition that private polling is judicially noticeable, let alone for its substance, rather than its existence.

175 at 5 (citing *Mays v. Laurant Publ'g, Ltd.*, 600 F. Supp. 29, 30 (N.D. Ga. 1984) and *Mark Truck, Inc. v. Arrow Aluminum Castings Co.*, 510 F.2d 1029, 1032–34 (5th Cir. 1975)). Per *Mays*: "[i]f plaintiff's entire complaint was based on an allegation of defamation, defendant would be correct that paragraph (2) would be inapplicable. However, plaintiff has also stated a cause of action for invasion of privacy, specifically false light . . . . If the court has personal jurisdiction as to the privacy claims[,] it has jurisdiction as to all claims." 600 F. Supp. 29, 30. And per *Mark Truck*, Georgia's long arm statute "gives rise to jurisdiction for all theories of relief related to [a] tort[.]"510 F.2d 1032.

DAG has never even addressed these authorities. And the cases DAG does cite do not even involve a false-light invasion of privacy claim. *See Black v. Skinary App, Inc.*, 1:23-CV-5647-TWT, 2024 WL 3626642 (N.D. Ga. Aug. 1, 2024); *Worthy v. Eller,* 265 Ga App 487 (2004); *Amin v. O'Brien*, CV 5:24-cv-022, 2025 WL 90116 (S.D. Ga. Jan. 14, 2025); *Mueller v. eBay, Inc.*, 1:20-cv-2581-SCJ, 2021 WL 4814999 (N.D. Ga. Jan. 6, 2021). Plus: not one of these orders sanctioned anyone.

The closest DAG comes to joining the issue is asserting that Dr. Winer "can[not] evade the limitations of subsection (2) by recharacterizing his defamation claim as false light or other torts[.]" Dkt. 184-1 at 13; *see also id.* (asserting that it is similarly obvious that the exercise of personal jurisdiction would violate due process). For this, DAG cites a pair of district court decisions

– 16 –

from across the country—which would not be binding on this Court even if they were on point, and they are not. The first blithely observes: "a plaintiff may not use related causes of action to avoid the constitutional requisites of a defamation claim. The First Amendment considerations that apply to defamation therefore apply also to [the plaintiff's] counts for false light and tortious interference." *Leise v Vermont Hum. Rights Commn.*, 2:22-cv-0009, 2023 WL 2633341, *28 (D Vt Mar. 24, 2023). The second is similar: "a plaintiff may not avoid the strictures of the burdens of proof associated with defamation by resorting to a claim of false light invasion." *Moldea v. NY Times Co.*, 22 F.3d 310, 319 (D.C. Cir. 1994) (quotation omitted). Neither of those cases has anything to do with personal jurisdiction, let alone Georgia's long arm statute.

To be clear: DAG is citing snippets of non-binding district court decisions that, on their face, discuss the applicability of First Amendment principles to false light claims—and DAG is representing that these cases show that Dr. Winer's false light claim not only fails to confer personal jurisdiction, but is also *sanctionably frivolous*. Pot: meet kettle.

## VI. DAG begs the question of First Amendment privilege to claim that Dr. Winer's defamation claim is frivolous.

DAG next claims that the assertion that its statements were defamatory is similarly frivolous. Dkt. 184-1 at 14–18. DAG's argument savages a straw man, focusing on statements included in the SAC only to show anti-Jewish

animus, *not* as the basis of the defamation claim. Dr. Winer's defamation claim rests on DAG's own accusations that he personally aided and abetted genocide and the destruction of Gaza's healthcare system, not on third-party comments DAG permitted to remain on its posts. DAG's appeal to 47 U.S.C. § 230 therefore answers a claim no one is making. *Id.* at 15–17. The only attention DAG gives to the *actual* subject of Dr. Winer's defamation claim is to assert that its statements are "clearly an expression of *opinion*[.]" *Id.* at 17. That ignores the law.

There is no separate privilege for "opinion" when words imply an assertion of fact that can be proven true or false. *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19–21 (1990). Accusing Dr. Winer of aiding and abetting genocide, of destroying a hospital system, and of helping murder hundreds of health workers is not the "loose, figurative, or hyperbolic language" that marks opinion. *See id.* at 21. It charges specific crimes and career-ending conduct, which is defamatory per se. O.C.G.A. § 51-5-4(a)(1), (3), (b). DAG knows this— the authority it cites for the elements of defamation confirms the per se rule it now ignores. *See Am. C.L. Union, Inc. v. Zeh*, 312 Ga. 647, 661 n.15 (2021); Dkt. 184-1 at 14.

Imputing criminal conduct and professional unfitness to a particular person states or implies defamatory facts "capable of being proved false," *Gast v. Brittain*, 589 S.E.2d 63, 64 (Ga. 2003), and is defamatory per se. *Andrews v.*

*D'Souza*, 696 F. Supp. 3d 1332, 1352 (N.D. Ga. 2023). Even without the thumb on the scale due to Dr. Winer at the motion to dismiss stage, *see Veritas v. Cable News Network, Inc.*, 121 F.4th 1267, 1274 (11th Cir. 2024), does anyone seriously think that the statement that a particular person was part of a group that "inflict[ed] dismemberment, torture, and slaughter," SAC ¶ 91, is opinion? Or that claiming otherwise is frivolous?

DAG also refutes itself. Its motion concedes that at least one challenged statement "does state a fact." Dkt. 184-1 at 16. A defamation claim resting on a statement DAG admits is factual cannot be frivolous. DAG's answer, that the accusation is true because "a simple Google search" says so, *id.* at 17, is a merits defense to be proven at trial, not a basis for sanctions. DAG is litigating the merits and labeling it Rule 11.

## VII. DAG ignores context to argue that Dr. Winer made "shockingly deceptive use of square brackets."

DAG claims that Dr. Winer's response brief misleadingly used brackets to "insert[ ] extra words into DAG's statements in order to make them seem defamatory[.]" Dkt. 184-1 at 17. Its examples do not show anything of the kind.

Start with DAG's first example, page 3 of Dr. Winer's response brief:

> The first NSJP-DAG Post, published on or about January 13, 2025, regurgitated Mohammad's statements and linked to a campaign launched against Dr. Winer, which implored readers to contact Emory and demand it "hold *[Dr. Winer]* accountable" for his crimes by investigating and/or terminating him, using the provided pre-written email template and phone script.

Dkt. 175 at 3 (citing SAC ¶¶ 59, 76–88) (emphasis added).

DAG argues that bracketing Dr. Winer's name here is "shockingly deceptive" because the Email Template calls on Emory to "Hold faculty and students accountable for their participation in or legitimization of the genocide of Palestinians." SAC ¶ 88. But read the context: The Email Template had just rhetorically asked: "How can we feel safe knowing Emory employs and protects physicians *like Dr. Joshua Winer* who has written openly about his participation in a military campaign that has been condemned as a genocide" and who "participated in this genocidal campaign[.]" *Id.* ¶ 88 (emphasis added). Presumably, Dr. Winer—whom Emory "employs" and whom DAG had just said "participated in [a] genocidal campaign"—is among the "faculty" whom DAG thinks should be "[he]ld . . . accountable for . . . participation in . . . the genocide of Palestinians" *id.* ¶ 88, no?

DAG next jumps to page 9 of Dr. Winer's brief opposing its motion to dismiss. Dr. Winer's brief explains:

> The Posts accused Dr. Winer personally of committing or aiding and abetting genocide and war crimes, and urged Emory to investigate and terminate him on that basis. DAG stated "*[t]his man* [i.e., Dr. Winer] *participated in* aiding and abetting a genocide, in aiding and abetting the destruction of the healthcare system in Gaza," "*perpetuated* a genocide'; and '*inflict[ed]* dismemberment, torture, and slaughter." Dkt. 130 ¶ 91 (emphasis added).

DAG observes that "[t]hese quotes do not appear in the cited paragraph of the SAC," but instead are "edited[ ] quotes from Mohammad's Democracy

– 20 –

Now! interview, deceptively strung together with fragments from DAG's posts to give the false impression of being one continuous statement[.]" Dkt. 184-1 at 18. And to be sure, the statement "this man participated in aiding and abetting a genocide" is not found in paragraph 91 of the SAC. That is because it is in paragraph 78 of the SAC, which discusses the first DAG Instagram post and quotes Mohammad's defamatory statements at length, while paragraph 91, discusses DAG's *second* post, where DAG stated that it "stand[s] unequivocally with Umaymah [Mohammad] and her truthful statements[.]" Recall that Dr. Winer's brief stated that "[t]he *Posts*"—plural—"accused Dr. Winer personally of committing or aiding and abetting genocide and war crimes[.]" Dkt. 175 at 9.

A misplaced pincite is not a fraud. The quotations are in the SAC. A mistaken citation to paragraph 91 rather than paragraph 78 is a correctable slip, not sanctionable conduct, and does not affect the substance of the argument: DAG leveled these accusations across both posts. DAG calls that "shockingly deceptive." It is neither shocking nor deceptive to read a complaint as a whole.

## VIII. DAG ignores settled precedent to claim that Dr. Winer's claim of belonging to a protected class is legally frivolous.

Next, DAG argues that Dr. Winer's assertion that his Jewish identity—what DAG calls "Zionist Beliefs or Association with the IDF"—is a protected

class "is legally frivolous." Dkt. 184-1 at 18. DAG insists "that national identity and political beliefs are not cognizable as protected classes under [42 U.S.C.] § 1985(3)" and that Dr. Winer "offers no plausible argument to expand existing law to encompass his claim." *Id.* at 19.[5] But DAG is again misrepresenting Dr. Winer's allegations.

DAG meticulously avoids the core allegation: "Defendants . . . executed a common plan to deprive Plaintiff of the equal protection of the laws and his rights and privileges *on account of his Jewish identity*[.]" SAC ¶ 189. As explained in Dr. Winer's response to DAG's motion to dismiss: "a foundational element of Jewish identity includes a profound tie to Zion, the birthplace of Jewish peoplehood, located in modern-day Israel." Dkt. 175 at 22–23; *see also* SAC ¶¶ 8, 193. Jewish identity is a protected racial group under the Civil Rights Act. *See Shaare-Tefila Cong. v. Cobb*, 481 U.S. 615, 617–18 (1987); *LeBlanc-Sternberg v. Fletcher*, 781 F. Supp. 261, 267 (S.D.N.Y. 1991); *Sinai v. New Eng. Tel. & Tel. Co.*, 3 F.3d 471, 474–75 (1st Cir. 1993).

Section 1985(3) reaches a conspiracy driven by "racial, or perhaps otherwise class-based, invidiously discriminatory animus," *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971); *Bray v. Alexandria Women's Health*

---

[5] DAG insists that Dr. Winer's claim here "contradicts . . . clearly established caselaw," but it cites only district court opinions, which do not bind anyone— including other district courts. Dkt. 184-1 at 19.

*Clinic*, 506 U.S. 263, 268 (1993), and anti-Jewish animus fits squarely within that rule. Dr. Winer pleads the latter. DAG's own authority confirms that conspiracies targeting a racial group fall within the statute's core. *Dean v. Warren*, 12 F.4th 1248, 1255 (11th Cir. 2021).

DAG's lead case is its own undoing. DAG invokes *Landau v. Corporation of Haverford College* for the idea that anti-Zionism is not antisemitism. 780 F. Supp. 3d 548 (E.D. Pa. 2025). Read past the sentence DAG quotes. The same court accepted that "a commitment to the existence of a Jewish state . . . is a piece of ethnic identity for many . . . Jewish people," *id.* at 557 n.8, and faulted the defendant for branding Zionism "strictly a political philosophy" while denying that it can, in context, be an element of Jewish identity, *id.* at 555 n.2. *Landau* rejected only the overbroad claim that all criticism of Israel is intrinsically antisemitic, which Dr. Winer does not make. And *Landau* is a nonbinding district court decision dismissing a Title VI hostile-environment complaint on the pleadings, without prejudice. It says nothing about whether a § 1985(3) claim grounded in anti-Jewish animus is frivolous.

Dr. Winer's 42 U.S.C. § 1985(3) claim travels under a well-established legal rubric. Even if DAG were right that the facts alleged do not meet that standard, that does not make his claim legally frivolous.

– 23 –

## IX. DAG infers an improper motive only from the foregoing baseless arguments and speculation.

Finally, DAG argues that it was sued for improper purposes like harassment, intimidation, and to punish protected political speech. Dkt. 184-1 at 22. But it offers no support for that assertion, instead conflating its merits argument with an improper purpose showing. *Id.* at 22–24.

The theory fails at a more basic level. The First Amendment protects the right to bring non-frivolous litigation regardless of motive. A lawsuit may not be treated as a sham unless it is objectively baseless. *See Pro. Real Estate Invs., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60 (1993). The same principle governs Rule 11: where claims are not frivolous, alleged improper purpose does not stand alone. DAG has not shown frivolousness. This Court has already found the claims colorable. Dkt. 129 at 12.

DAG's real point is *ad hominem*: it alleges a "pattern" by Dr. Winer's counsel targeting Israel's critics and faults counsel for speaking publicly about antisemitism and anti-Zionism. *Id.* at 24. DAG's "pattern" is just lawyering. Civil-rights advocacy and public opposition to bigotry are not bad faith. *Florida Commercial Banks v. Culverhouse*, 772 F.2d 1513, 1519 (11th Cir. 1985) is inapposite; it concerned the misuse of a corporate cause of action by incumbent management to burden a takeover through unsupported litigation, not a plaintiff vindicating his name. Dr. Winer sued to answer a direct accusation of

– 24 –

genocide—that is precisely what defamation law is for. As the briefing in this case well shows, there is a line between protected speech and actionable defamation, and DAG's actions crossed it. This case is about vindicating Dr. Winer's good name. That is not an improper motive, even if DAG doesn't like being sued.

One last point, on remedy. Even if sanctions were warranted (they are not), DAG seeks unavailable relief. Rule 11 permits only deterrent sanctions, such as a penalty to the court or fees caused by a violation, not disgorgement of funds. Fed. R. Civ. P. 11(c)(4); *Fox v. Acadia State Bank*, 937 F.2d 1566, 1571 (11th Cir. 1991). No court has ordered the forfeiture of third-party fundraising as a Rule 11 sanction, and for good reason: such a remedy would punish donors who are strangers to this litigation—an especially untenable result where DAG characterizes its own conduct as mere associational support for Mohammad. DAG cites no authority for such relief, and none exists. The request should be denied.

## CONCLUSION

In sum, DAG's motion is thoroughly baseless, committing every sin the Advisory Committee Notes warn against with respect to abuses of Rule 11 procedure. This Court should deny it promptly.

Respectfully submitted this 15th day of June, 2026.

*/s/ Lauren Israelovitch*
Lauren Israelovitch
Mark Goldfeder
Ben Schlager
NATIONAL JEWISH
   ADVOCACY CENTER, INC.
3 Times Square
New York, NY 10036
lauren@njaclaw.org
*Pro Hac Vice*

*/s/ Miles C. Skedsvold*
Josh Belinfante
Anna Edmondson
Miles Skedsvold
ROBBINS ALLOY BELINFANTE
   LITTLEFIELD LLC
500 14th Street, NW
Atlanta, Georgia 30318
T: (678) 701-9320
E: mskedsvold@robbinsfirm.com
Ga. Bar. No. 371576

*/s/ David F. Katz*
David Forman Katz
THE D.F. KATZ LAW FIRM, LLC
1158 Jones Bridge Rd
Ste 420 PMB 1090
Johns Creek, GA 30022
(404) 918-5707
dkatz@dfkatzlawfirm.com
Ga. Bar. No. 408738

*/s/ Esther Panitch*
Esther Panitch
THE PANITCH LAW GROUP, PC
4243 Dunwoody Club Drive
Suite 205
Atlanta, GA 30350
esther@panitchivory.com
Ga. Bar. No. 143197

## CERTIFICATE OF COMPLIANCE

By signature below, counsel certifies that the foregoing pleading was prepared in Century Schoolbook, 13-point font, in compliance with Local Rule 5.1(C).

*/s/ Miles C. Skedsvold*
Miles C. Skedsvold

## CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically filed the within and foregoing **PLAINTIFF JOSHUA WINER'S RESPONSE TO DEFENDANT DOCTORS AGAINST GENOCIDE SOCIETY'S MOTION FOR SANCTIONS UNDER RULE 11 OF THE FEDERAL RULES OF CIVIL PROCEDURE** with the Clerk of Court using the CM/ECF electronic filing system, which suffices for service on all counsel of record who have entered an appearance in the case under L.R. 5.1(A)(3).

This 15th day of June, 2026.

*/s/ Miles C. Skedsvold*
Miles C. Skedsvold