IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JOSHUA WINER,

    *Plaintiff,*

v.

UMAYMAH MOHAMMAD, *et al.,*

    *Defendants.*

Civil Action No.
1:25-cv-02329-TWT

**MEMORANDUM IN SUPPORT OF DEFENDANT AJP EDUCATIONAL
FOUNDATION, INC.'s RULE 11 MOTION FOR SANCTIONS**

## I.    INTRODUCTION

Pursuant to Rule 11 of the Federal Rules of Civil Procedure, Defendant AJP Educational Foundation, Inc. d/b/a American Muslims for Palestine ("AMP") moves for sanctions against Plaintiff's counsel for their filing of the frivolous claims brought against AMP in this lawsuit. The Second Amended Complaint is objectively frivolous, and filed in bad faith. AMP respectfully requests this Court grant its motion and impose sanctions on Plaintiff's counsel.

## II.    LEGAL STANDARD

"The purpose of Rule 11 is to deter baseless filings in district court and thus streamline the administration and procedure of federal courts." *Peer v. Lewis*, 606

1

F.3d 1306, 1311 (11th Cir. 2010); *see also Massengale v. Ray,* 267 F.3d 1298, 1302 (11th Cir. 2001) (reiterating the goal of Rule 11 sanctions as to "reduce frivolous claims, defenses, or motions, and to deter costly meritless maneuvers").

A frivolous complaint warrants sanctions when (1) a party "files a pleading that has no reasonable factual basis"; (2) a party files a pleading based solely on a legal theory with "no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law"; or (3) a party files suit "in bad faith for an improper purpose." *Diaz v. First Marblehead Corp.*, 643 F. App'x 916, 921 (11th Cir. 2016) (citation omitted).

Courts apply a two-step analysis to decide whether to impose Rule 11 sanctions: (1) whether the party's claims objectively present as frivolous; and (2) whether the attorney signing the pleadings "should have been aware that they were frivolous." *Baker v. Alderman,* 158 F.3d 516, 524 (11th Cir. 1998). Applying this objective standard, "courts determine whether a reasonable attorney in like circumstances could believe his actions were factually and legally justified." *Kaplan v. DaimlerChrysler, A.G.,* 331 F.3d 1251, 1255 (11th Cir. 2003) (citing *Donaldson v. Clark,* 819 F.2d 1551, 1556 (11th Cir. 1987)); *Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 665 (11th Cir. 2010) ("Both inquiries measure attorney conduct under an objective reasonably competent attorney standard.") (Tjoflat, J., concurring in part).

Legal claims qualify as frivolous if "no reasonably competent attorney could conclude" that the facts present "any reasonable chance of success or [] a reasonable argument to change existing law." *Id.* (citing *Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996)). Factual bases qualify as objectively frivolous where no reasonably competent attorney could conclude that "a reasonable evidentiary basis" exists. *Thompson*, 610 F.3d at 665 (supporting the imposition of sanctions "where no evidence or only patently frivolous evidence is offered to support factual contentions")  (citations omitted).

If a court finds either the factual or legal contentions to be frivolous, "the question becomes whether the attorney should have known" that to be true.  *Id.* Courts evaluate what the attorney knew or reasonably should have known "when the paper was 'present[ed] to the court.'" *Id.* (quoting Fed. R. Civ. P. 11(b)). If reasonable investigative pre-suit diligence would reveal the error "to a reasonably competent attorney," sanctions apply; if not, sanctions do not apply. *Id.* The "reasonableness" inquiry turns on the totality of the circumstances, including the time available for investigation and whether the attorney ***had to*** rely on the client, another member of the bar, or others." *Id.* (emphasis added).

Courts also apply sanctions when a party purues claims "for an improper purpose," which courts often "infer[] from circumstantial evidence." *Id.* at 665-66. Courts also consider the possible existence of a "motive to harass" in an attorney's

3

filing of factually or legally frivolous claims. *Id.* If a filing violates Rule 11(b), courts may impose "an appropriate sanction" on the attorney responsible for the violation. *See* Fed. R. Civ. P. 11(c)(1). That sanction may include an award of attorneys' fees and other expenses directly resulting from the violation. *See* Fed. R. Civ. P. 11(c)(4).

### III.    FACTS AND PROCEDURAL HISTORY

Defendant AMP incorporated in California as a 501(c)(3) non-profit organization, with its headquarters now located in Virginia. *See* Second Amended Complaint ("SAC") at ¶ 14, (Doc. 130). The name "AJP Educational Foundation, Inc." applies to the single legal entity, with "American Muslims for Palestine" serving as the registered d/b/a since 2016.[1] Plaintiff alleges "AMP is the founder of" Defendant National Students for Justice in Palestine ("NSJP"), and that AMP exerts management and control of NSJP nationwide. SAC ¶ 14. Plaintiff also alleges, without supporting factual bases, that "AMP and NSJP share a social media manager" and that AMP manages NSJP's nationwide messaging. *Id*. Plaintiff further concludes that AMP's annual conference, which includes a "Youth Program" and a separate "Campus Activism Track," must have been "designed to strengthen

---

[1] This Court may take judicial notice of AMP's publicly available incorporation documents and fictitious name certificate, available through the Virginia Secretary of State's website and attached hereto as Exhibit A for convenience. *See Delhoyo v. Stewart Title Guar. Co.*, No. 1:20-cv-2777-TWT, 2021 U.S. Dist. LEXIS 28934, at *5 (N.D. Ga. Feb. 11, 2021) (Thrash, J.) (taking judicial notice of public records).

coordination and solidarity among SJP chapters." *Id.* He also concludes without supporting facts that NSJP, an unincorporated association, "operates as AMP's college campus brand[.]" *Id.* ¶ 16.

No corporate or other formal relationship exists between AMP and NSJP nor ever has, a fact which Plaintiff *de facto* recognized by alleging that an entirely different entity,  WESPAC, "served as the fiscal sponsor for NSJP since at least 2016." *Id.* ¶ 15. In reality and as a matter of public record, AMP provides only limited grants that go directly to specific campus' student organizations for previously planned events, after submission and approval of a written grant request subject to AMP's own available funds on hand.[2]  Plaintiff concludes that AMP controls NSJP's social media campaigns and that  NSJP  "operates merely as a program of AMP and WESPAC," believing that to somehow render AMP responsible for the speech and actions of others due to Plaintiff's conclusory assertions about "organizational control and oversight over NSJP[.]" *Id.* ¶¶ 152, 175.

Plaintiff alleges false statements about him were "disseminated by other Defendants through interviews, podcasts, press conferences, social media, or digital publications[.]" *Id.* ¶ 164. Plaintiff further claims that "Defendants"—collectively, apparently—"either knew these statements were false or acted with a high degree of

---

[2] American Muslims for Palestine, *America's Youth are Turning the Tide* (April 25, 2022), https://www.ampalestine.org/media/media-room/statements/americas-youth-are-turning-tide.

awareness of their probable falsity." *Id.* Plaintiff's governing Complaint also asserts without factual support that "Defendants" generally executed a plan to deprive him of his rights based on his Jewish identity and/or Zionist beliefs; Plaintiff fails to specify what, if any, involvement AMP purportedly had in those actions. *Id.* ¶ 189. Plaintiff's Second Amended Complaint identifies AMP/AJP a total of only fourteen times in over 100 pages. None of those references amounts to adequate pleading of any of the claims he asserts against AMP.

## IV.   ARGUMENT

The entirety of Plaintiff's claims against AMP rests on his unsupported conclusions that AMP "founded and maintains control over NSJP, and through this relationship, adopted, enabled and supported NSJP's dissemination of false, targeted rhetoric against Plaintiff." SAC ¶ 146; *see also id.* ¶ 175 ("Upon information and belief, AMP has organizational control and oversight over NSJP and knowingly authorized its use of official channels and social media to adopt and disseminate false and defamatory statements about Plaintiff."). But Plaintiff makes clear that his assertion about AMP "maintain[ing] organizational management and control of NSJP" derives only from his own "information and belief." *Id.* ¶ 14. This Court therefore need not credit that unsupported conclusion, absent supporting factual allegations. *Scott v. Experian Info. Sols., Inc.*, Case No. 18-CV-60178, 2018 U.S. Dist. LEXIS 110210, at *6 (S. D. Fla. June 29, 2018) ("Conclusory allegations made

upon information and belief are not entitled to a presumption of truth, and allegations stated upon information and belief that do not contain any factual support fail to meet the *Twombly* standard.").

The same holds true for Plaintiff's conclusory statement that AMP "founded" NSJP, since Plaintiff alleges no factual bases for this presumption either. SAC ¶ 14. To the extent Plaintiff alleges AMP actively funds and operates NSJP, his own Complaint belies that presumption because he also alleges that another entity, WESPAC, "served as the fiscal sponsor for NSJP since at least 2016." SAC ¶ 15.

NSJP's founding bears no relation on AMP's purported liability for NSJP's alleged statements. Liability for NSJP's alleged statements could only attach to AMP if Plaintiff demonstrates AMP "expressly directed [NSJP] to or authorized [NSJP] to slander" Plaintiff, as "an agent acting within the scope of employment" for AMP. *See Dougherty v. Harvey*, 317 F. Supp. 3d 1287, 1293 (N.D. Ga. 2018) (quoting *Smith v. Tr. Co. Bank*, 450 S.E.2d 866, 869–70 (Ga. Ct. App. 1994)). Because Plaintiff does not, and cannot, plead factual allegations supporting his conclusion that NSJP serves merely as an agent of AMP or that AMP directed and authorized NSJP's statements, Plaintiff's efforts to hold AMP liable for third party conduct fail.

Even if Plaintiff sufficiently alleged connections between AMP and the statements he himself attributes to NSJP, Plaintiff's allegations remain objectively frivolous. Properly stripping the Second Amended Complaint of these conclusory

allegations reveals it devoid of any conduct that could render AMP liable. His factual assertions constitute no more than naked conclusions devoid of factual enhancement. His governing Complaint, therefore, warrants sanctions. *Thompson*, 610 F.3d at 665 (supporting an award of sanctions "where no evidence or only patently frivolous evidence is offered to support factual contentions") (Tjoflat, J., concurring in part).

## A.    Plaintiff Makes an Objectively Frivolous Defamation Claim

The Second Amended Complaint alleges in Count I that "defendants" bear liability for defamation *per se* under O.C.G.A. § 51-5-4. The only allegation against AMP, however, again relies on its purported "responsibility" for two Instagram posts which Plaintiff alleges NSJP made, and comments by third parties in response. SAC ¶ 146. Plaintiff also blames AMP for comments about him made by readers of NSJP's Instagram post. *Id.* at ¶ 145(b). But Plaintiff cannot justify any liability on the part of AMP for comments published by third parties in response to another third party's Instagram posts: Section 230 of the Communications Decency Act (the "CDA") preempts that attempt. Even if Plaintiff did sufficiently plead facts that if true could show AMP controlled NSJP's Instagram posts, AMP bears no liability under the CDA for comments generated by third parties' responses. And Plaintiff's claims relying on Instagram posts fail because he does not plead facts that could demonstrate the requisite degree of fault: actual malice. While Plaintiff disagrees with viewpoints that categorize the events in Gaza as genocide or apartheid, Plaintiff

8

fails to sufficiently allege facts to disprove those claims. He does not provide sufficient factual support for any inference that AMP acted with actual malice. Nor does he plead statements with defamatory meaning. Under Georgia law and as bound by the First Amendment, opinions and matters on which reasonable persons may disagree do not equate to defamation. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339–40 (1974); *Bergen v. Martindale-Hubbell*, 337 S.E.2d 770, 771-72 (Ga. Ct. App. 1985). Public commentary on disputed or controversial facts, particularly political speech, warrants heavy protection under the First Amendment. *Partington v. Bugliosi*, 56 F.3d 1147, 1154 (9th Cir. 1995) (recognizing "the robust debate among people with different viewpoints that is a vital part of our democracy would surely be hampered"). The statements at issue here—whether Plaintiff participated in a genocide, an "apartheid regime" or "war crimes" by virtue of his admitted service in the Israeli military during its occupation of Gaza—constitute protected free speech. Doc. 140-1 at 8-13. Plaintiff's Second Amended Complaint fails to tie AMP to these posts; the statements contained in these posts nonetheless warrant protection under the First Amendment. Because no "reasonable chance of success" exists on this claim, Plaintiff's claims against AMP for defamation qualify as no more than objectively frivolous claims. *Thompson*, 610 F.3d at 665 (Tjoflat, J., concurring in part).

**B.      Plaintiff Makes Frivolous False Light/Invasion of Privacy Claims**

To prevail on his claims of false light invasion of privacy, Plaintiff must show that AMP knowingly or recklessly published falsehoods about him and placed him in a false light that a reasonable person would find highly offensive. *Azizan v. Manning,* No. 1:25-cv-1112-MLG, 2026 Dist. LEXIS 24756, at *10-11 (N.D. Ga. Feb. 6, 2026) (citing *Smith v. Stewart*, 660 S.E.2d 822, 834 (Ga. Ct. App. 2008)). Plaintiff fails to allege facts to support his conclusion that AMP had any involvement in any statements cited in his Complaint. The statements cited in the Complaint publish admitted truths about him: for example, he voluntarily joined the Israeli military during its occupation of Gaza. *See* SAC ¶¶ 12, 34. While Plaintiff dislikes the characterization by others of his military service, he <u>did</u> serve in the Israeli military, in Gaza, during a military occupation. *See id.* ¶¶ 12, 34, 37. Plaintiff cannot overcome the fact that opinions about his military service qualify as protected speech. *S & W Seafoods Co. v. Jacor Broad. of Atlanta*, 390 S.E.2d 288, 231 (Ga. Ct. App. 1989). These failures render his claim his claim for false light invasion of privacy objectively frivolous.

**C.      Plaintiff Brings Objectively Frivolous Claims of Civil Conspiracy**

Plaintiff alleges civil conspiracy liability against AMP. Under Georgia law, civil conspiracy exists when "two or more persons, acting in concert, [are] engaged in conduct that constitutes a tort." *Mustaqeem-Graydon v. SunTrust Bank*, 573

S.E.2d 455, 461 (Ga. Ct. App. 2002). "Absent the underlying tort, there can be no liability for civil conspiracy." *O'Neal v. Home Town Bank of Villa Rica*, 514 S.E.2d 669, 675 (Ga. Ct. App. 1999). Plaintiff once again relies on unsupported conclusory statements, asserting only that AMP "as the founder of NSJP is responsible for enabling, facilitating, authorizing and/or directing NSJP's participation in the conspiracy." SAC ¶ 175. Plaintiff also asserts that AMP controls NSJP and "knowingly authorized its use of official channels and social media to adopt and disseminate false and defamatory statements about Plaintiff." *Id.* He recognizes he bases these allegations on no more than his own beliefs. *Id*. That does not suffice.

Plaintiff cannot sustain his conspiracy claim predicated on defamation and false light/invasion of privacy, because the underlying torts on which they rest fail for the same reasons set forth above. *See Mustaqeem-Graydon*, 258 Ga. App. at 207 ("[B]ecause Graydon's underlying fraud claim fails, he cannot maintain a cause of action for conspiracy to defraud"). Even if Plaintiff could establish a surviving underlying tort, he fails to satisfy the standard set forth in *Twombly* to tie AMP to any alleged conspiracy. And even if Plaintiff's underlying allegations did suffice, merely "permit[ting]" NSJP to use NSJP's own social media to disseminate the two Instagram posts fails to meet the required elements of civil conspiracy claims under Georgia law. *Bailey v. Bd. of Cnty. Comm'rs of Alachua Cnty., Fla.*, 956 F.2d 1112, 1122 (11th Cir. 1992) (recognizing "the linchpin for conspiracy" as agreement,

11

"which presupposes communication"); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) (acknowledging that plaintiffs cannot "simply aver in the complaint that a conspiracy existed"). These failures render Plaintiff's civil conspiracy claims objectively frivolous as well.

**D.    Plaintiff Makes Objectively Frivolous Conspiracy to Interfere Claims**

To state proper claims under 42 U.S.C. § 1985(3) ("Section 1985"), plaintiffs must establish four elements; Plaintiff here satisfies none of those elements. To succeed, plaintiffs alleging Section 1985 claims must assert the defendant did the following:

> (1) conspired or went in disguise on the highway or on the premises of another;
> (2) for the purpose of depriving, either directly or indirectly, any person or class of persons the equal protection of the laws, or of equal privileges and immunities under the laws;
> (3) took or caused an action in furtherance of the conspiracy's object; and
> (4) injured an individual's person or property, or deprived the plaintiff of exercising any right or privilege of a United States citizen.

*Dean v. Warren*, 12 F.4th 1248, 1255 n.8 (11th Cir. 2021) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971)).

The second element above in particular, the intent to deprive a person of legal protections, requires plaintiffs "allege 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus' for the defendant's actions in furtherance of the conspiracy." *Bagby v. Clayton Cnty. Sheriff*, No. 1:24-cv-03439-SDG, 2025

12

U.S. Dist. LEXIS 59745, at *13 (N.D. Ga. Mar. 31, 2025) (citing *Dean v. Warren*, 12 F.4th 1248, 1255 (11th Cir. 2021)). To succeed in properly bringing this claim, plaintiffs must allege a defendant acted "*because of* the adverse effects" intended to cause injury. *Id.* (emphasis in original).

As set forth above, Plaintiff fails to plead facts sufficient to support his allegation that AMP participated in any civil conspiracy. He alleges no specific class-based animus on behalf of AMP. *See generally* SAC ¶¶ 188-200. Instead, he relies on only his own conclusory statement that "Defendants supplied the ideological foundation for the conspiracy to deprive Plaintiff of his rights based solely on his association with Zionism, which is an integral part of Jewish identity for a very significant number of Jews." *Id.* at ¶ 192. Plaintiff further fails to sufficiently allege facts that could show AMP injured his person or property, or deprived him of the exercise of any right or privilege. SAC ¶ 199 (alleging only that Plaintiff suffered unspecified "significant harm"). Plaintiff's Section 1985 claim against AMP therefore fails as a matter of law. *See Weinberg v. Nat'l Students for Just. In Pal.*, Case No. 2:25-cv-03714-MCS-JC, 2026 U.S. Dist. LEXIS 10380 (C.D. Cal. Jan. 20, 2026) (dismissing conspiracy claims against AMP and other defendants for similar failures under Section 1985).

**E.    Plaintiff's Filing Warrants Rule 11 Sanctions**

This Court granted Plaintiff the opportunity to amend his Complaint a second

time already. Yet even his newest complaint falls far short of what Rule 11 requires

of litigants and counsel. Therefore, and for all the reasons explained further above,

### 1. Notice to Plaintiff

On May 14, 2026, AMP's counsel notified Plaintiff's counsel of AMP's intent

to seek Rule 11 sanctions via an emailed letter demanding correction, retraction, or

withdrawal of their sanctionable complaint within 21 days. *See* Declaration of

Samira Elhosary. AMP served Plaintiff's counsel with the Motion via U.S. Certified

Mail on May 26, 2026. *Id.* In compliance with FRCP 11(c)(2) and FRCP 5(b)(2),

counsel for AMP attached a copy of the instant motion to the email and mailed it to

Plaintiff's counsel.[3] *Id.*

Because Plaintiff failed to correct, retract or withdrawn his Second Amended

Complaint ("SAC"), AMP now files the instant Motion for Sanctions under Rule 11.

### 2. Plaintiff's Counsel Knew or Should Have Known that No Evidence Supports Plaintiff's Allegations

As explained above, Plaintiff must allege facts, that, taken as true, could

demonstrate AMP's actual malice. Plaintiff's SAC makes no showing of actual

malice, and instead relies only on Plaintiff's own conclusory assumptions about

AMP's alleged "responsibility" for the social media posts of others and third-party

---

[3] Due to a lack of clarity regarding Plaintiff's counsel's mailing address, AMP's counsel mailed the motion and cover letter to the address listed on Plaintiff's counsel's filings and the mailing address listed on their website.

comments on those posts. SAC ¶¶ 145-46. Further, Plaintiff does not plead statements capable of defamatory meaning, instead merely voicing his disagreement with the characterization of his actions by others. *Id.* ¶¶ 77-95. Similarly, Plaintiff alleges no facts to support his false light claim against AMP. Even though Plaintiff fails to plead any connection between AMP and the statements made about him, the assertions in the SAC reflect objective truth about Plaintiff's military service. *Id.* ¶¶ 12, 34, 37. Plaintiff's counsel objectively knew that no facts exist that support the defamation or false light claims against AMP, therefore warranting sanctions.

3.      Plaintiff's Counsel Knew or Should Have Known
        That No Legal Basis Exists for Plaintiff's Claims

Courts may sanction plaintiffs for haling defendants into courts that plainly lack jurisdiction over them, as occurred here. Plaintiff rests purely on his own conclusion that AMP maintains some control over NSJP, and thus directed a social media campaign against a Georgia resident. *Id.* ¶ 146 (alleging only that "AMP's control over NSJP includes responsibility for its coordinated campaigns against individuals like Plaintiff"). Plaintiff pleads no facts that could show AMP's activities in Georgia, plainly failing to sufficiently plead jurisdiction.

Plaintiff further fails to overcome the Communications Decency Act's ("CDA") bar on AMP's liability for online statements made by others. AMP's counsel made Plaintiff aware of this issue in its first Motion to Dismiss, filed prior to Plaintiff filing his Second Amended Complaint. ECF No. 83-1 at 12. Yet

15

Plaintiff's SAC still fails to add any new factual allegations that could address the requisite bar. Therefore, Plaintiff's counsel had objective knowledge of the legal insufficiency of the Second Amended Complaint before filing it and filed it anyway with those failures, warranting sanctions.

Plaintiff's counsel also had objective knowledge of the legal insufficiency of Plaintiff's conspiracy claim against AMP. As explained above, Plaintiff fails to plead facts that, if true, could suffice to meet several of the elements of his conspiracy claim. He alleges no facts to support the foundation of, or AMP's participation in, any conspiracy against Plaintiff. *See generally* SAC ¶¶ 188-200. Plaintiff's counsel knew of the absence of support for these key elements of the claims asserted against AMP. The actions of Plaintiff's counsel therefore support the imposition of sanctions.

## V.    CONCLUSION

For the reasons set forth above, Defendant AMP respectfully requests this Court require Plaintiffs' counsel to pay AMP's reasonable attorneys' fees and costs incurred in responding to Plaintiff's very lengthy Second Amended Complaint. *See* Fed. R. Civ. P. 11(c)(4). Because Plaintiff's allegations fall far short of the minimal standards imposed by Rule 11, Defendant AMP further respectfully requests this Court impose sanctions against Plaintiff's counsel.

Dated: July 23, 2026

Respectfully submitted,

/s/ James M. Slater
James M. Slater
Georgia Bar No. 169869
Slater Legal PLLC
2296 Henderson Mill Rd NE #116
Atlanta, Georgia 30345
Tel. (404) 458-7283
james@slater.legal

Christina A. Jump
(*pro hac vice* granted)
Jump Start Legal Justice Center PLLC
100 N. Central Expressway, Suite 537
Richardson, Texas 75080
(972) 992-5060
cjump@jump-start-legal.com

Samira S. Elhosary
(*pro hac vice* granted)
Christina A. Boyd
(*pro hac vice* granted)
Constitutional Law Center for
Muslims in America*
100 N. Central Expy. Suite 1010
Richardson, Texas 75080
Tel: (972) 914-2507
Fax: (972) 692-7454
selhosary@clcma.org
ali.boyd@mlfa.org

**COUNSEL FOR DEFENDANT
AJP EDUCATION FOUNDATION,
INC., d/b/a AMERICAN MUSLIMS
FOR PALESTINE**

17

*The Constitutional Law Center for Muslims in America is the legal division of the Muslim Legal Fund of America*

## CERTIFICATE OF COMPLIANCE WITH L.R. 5.1

I certify that the foregoing document was prepared in Times New Roman 14-point font, as approved by Local Rule 5.1.

Dated: July 23, 2026

/s/ James M. Slater
James M. Slater
Georgia Bar No. 169869

18

## <u>CERTIFICATE OF COMPLIANCE WITH FRCP 11(c)(2)</u>

I certify that counsel for Defendant served Plaintiff's counsel of record notice of the claims raised herein and a draft of this motion by email on May 14, 2026, and by certified mail, received May 26, 2026.

Dated: July 23, 2026

/s/ *James M. Slater*
James M. Slater
Georgia Bar No. 169869