UNITED STATES DISTRICT COURT FOR THE NORTHERN
 DISTRICT OF GEORGIA ATLANTA DIVISION

-------------------------------------------------------------------------------------------x

Joshua Winer,

        Plaintiff,

v.

Umaymah Mohammad, AJP Educational Foundation, Inc.
A/K/A American Muslims for Palestine, WESPAC Foundation, Inc.,
Sean Eren as the representative of National Students for Justice in
Palestine, Doctors Against Genocide Society, CAIR-Nga Inc.
A/K/A CAIR-Georgia, CAIR Foundation Inc.,
 A/K/A Council on Islamic Relations or CAIR, Rupa Marya,
Ibrahim Jouja as representative of Emory Students for Justice
 in Palestine.

        Defendants.


-------------------------------------------------------------------------------------------x

Case No. 1:25-CV-02329

## DECLARATION OF JONATHAN WALLACE IN SUPPORT OF MOTION TO ACCEPT LATE FILING

Jonathan Wallace states as follows:

1. I am an attorney admitted to practice in the Southern District of New York, and pro hac vice in this matter. I am counsel to defendants Umaymah Mohammad, Rupa Marya and Ibrahim Jouja. I submit this declaration in support of our motion under FRCP Rule 6(b)(2)(B) for acceptance of our late-filed replies.

2. I made timely motions to dismiss for all three clients which are under consideration by this Court.

3. However, I filed reply briefs on those motions which were after the deadline set by the Court.

4. Plaintiff has a motion pending to strike these briefs, and I am bringing on this motion to urge this Court to exercise discretion to accept the late filing for the following reasons.

5. I am a 72 year old New York attorney who retired from the paid practice of law in 2023 as a civil litigator representing small and medium size businesses and businesspeople in litigation. I worked alone most of my career, though spent some years in firms of two to four people.

6. From 2012 on, I also as a sideline had an active *pro bono* practice representing protesters arrested at Occupy Wall Street, Black Lives Matter, Standing Rock and other demonstrations in criminal proceedings for violations and misdemeanors, and also in two kinds of civil litigation: plaintiffs' cases based on the First Amendment which included voting rights cases in the run up to the 2020 election; and in which my clients were defendants in cases which also implicated civil rights and liberties, for example professors named individually in an antisemitism lawsuit against the City University of New York filed in 2121.

7. During this time, I also represented students in conduct proceedings at Juilliard and NYU arising from First Amendment activity.

8. After October 7, 2023, people who knew me began referring clients and within a month or so, I had developed a full time *pro bono* practice in which, in the years since

then, I have counseled and represented about 3,500 students and 400 faculty, as well as doctors, schoolteachers and others, who are being fired, sued, expelled, suspended, investigated, doxed and harassed for pro-Palestinian expression.

9. I have appeared in about fifty litigations for plaintiffs and defendants, including federal cases in New York, New Jersey, Massachusetts, Georgia, Tennessee, Texas and California, and state cases in New York and New Jersey.

10. That is a much greater load than anyone should carry. I have taken cases whenever it appeared to me I am attorney of last resort, for an individual or group who would not find an attorney if not for me.

11. The great majority of the 1.4 million lawyers in America will not take matters representing clients who are accused of antisemitism, material support of terrorism, etc.

12. Other lawyers lack the skills for this very specialized kind of civil liberties representation, which requires knowledge not only of the First Amendment but of the Anti-Terrorism Act, the Alien Tort Claims Act, the Patriot Act, the Ku Klux Klan act, and other very specialized laws little used in other civil contexts.

13. Quite competent movement attorneys with the requisite skills, of whom there are fewer than twenty or thirty working at a given time, are maxed out and turning down new clients. Even when they are in a position to take on new matters, they must of necessity decline *pro bono* representation.

14. I am the only attorney I know of in America able to do this work full time for free right now.

15. I have relatively modest resources and am able to devote myself to this clientele full time because I own my house outright, took my social security early, drive a 2014 Honda, and cut my credit cards up twenty years ago.

16. I have no office, secretary, or associate. As of a few weeks ago, I now have a full time paralegal, who also will need a salary but has committed to the work on spec, in the hope we will be able to do some fundraising to pay her.

17. I believe that my three clients in this matter would be unable to find counsel but for me. Ms. Mohammad was a graduate student, Mr. Jouja a college student, and Dr. Marya was terminated by the University of California, San Francisco, for pro-Palestinian advocacy. They are all iconic First Amendment clients, are quite controversial, have limited or no funds, and no one else is offering to represent them. If I were not available, they would have to act *pro se,* with all the complications and risk that entails.

18. In May of this year, I either replaced or took over first chair responsibilities from other lawyers in several troubled cases in federal court in California, particularly *Weinberg v. NSJP,* 2:25-cv-03714 (CD Cal. 2025),  and *Radice v. Harara,* 3:25-cv-02060 (ND Cal. 2025), both of which were in the discovery phase (and badly off balance) when I took over. Righting these two matters has unfortunately consumed more than half of my time since May. This Court if it chooses can see from the docket the motions for discovery sanctions against the client and prior counsel I opposed, the

follow up motions to compel, the meets and confers with opposing counsel, and the magistrate conferences I attended to stabilize those cases.

19. Unfortunately, the informal system of paper calendaring I used in my earlier *pro bono* practice did not scale to meet present commitments. Active multiple-defendant cases are particularly difficult, since there are frequent filings that do not involve my clients, and in this case I missed one which did (the motion to strike). With the help of my newe paralegal, I am upgrading to a more professional calendaring system and will use best efforts to see there will never be a repetition. I will also adopt the approach, given the problems I had, of reviewing this docket every few days. I apologize to this Court and opposing counsel for the inconvenience of my late filings.

20. I would also argue that there is no prejudice to Plaintiff if my papers are accepted, as they have had plenty of time to review them-- nor do I raise any new issues or facts which would have warranted a sur-reply. I hope it will also weigh in that the core arguments I advance are jurisdictional (there is no long arm jurisdiction over Dr. Marya, and no federal question as to all defendants).

21. I therefore respectfully request that this Court exercise discretion to accept late filing of my replies under F.R.C.P. Rule 6(b)(1)(B).

22.Having reviewed this declaration, I declare, under penalty of perjury, that the foregoing is true and correct.

 Dated: Amagansett, NY
July 29, 2026

/s/ Jonathan Wallace
Jonathan Wallace
PO #728
Amagansett NY 11930
917-359-6234
jonathan.wallace80@gmail.com
Counsel for Defendants
Mohammad, Marya and Jouja
Admitted Pro Hac Vice