# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

JOSHUA WINER,

    *Plaintiff,*

v.

UMAYMAH MOHAMMAD, *et al.,*

    *Defendants.*

Civil Action File

No. 1:25-cv-02329-TWT

## PLAINTIFF JOSHUA WINER'S RESPONSE TO DEFENDANT AJP EDUCATIONAL FOUNDATION, INC. D/B/A AMERICAN MUSLIMS FOR PALESTINE'S MOTION FOR SANCTIONS UNDER RULE 11 OF THE FEDERAL RULES OF CIVIL PROCEDURE

Lauren Israelovitch
Mark Goldfeder
Ben Schlager
Rachel Sebbag
NATIONAL JEWISH
ADVOCACY CENTER, INC.
3 Times Square
New York, NY 10036
lauren@njaclaw.org
*Pro Hac Vice*

David Forman Katz
THE D.F. KATZ LAW FIRM, LLC
1158 Jones Bridge Rd
Ste 420 PMB 1090
Johns Creek, GA 30022
(404) 918-5707
dkatz@dfkatzlawfirm.com
Ga. Bar. No. 408738

Josh Belinfante
Anna Edmondson
Miles Skedsvold
ROBBINS ALLOY BELINFANTE
  LITTLEFIELD LLC
500 14th Street, NW
Atlanta, GA 30318
T: (678) 701-9320
E: mskedsvold@robbinsfirm.com
Ga. Bar No. 371576

Esther Panitch
THE PANITCH LAW GROUP, PC
4243 Dunwoody Club Drive
Suite 205
Atlanta, GA 30350
esther@panitchivory.com
Ga. Bar. No. 143197

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................. 3

    I.     Factual Background ........................................................................ 3

    II.    Procedural History ........................................................................ 4

LEGAL FRAMEWORK ..................................................................................... 5

ARGUMENT ...................................................................................................... 7

    I.     AMP recasts its Rule 12(b)(6) motion as a motion for sanctions. ....... 7

    II.    Pleading on information and belief is proper and is not sanctionable.  9

    III.   Dr. Winer had more than a reasonable basis to allege that AMP founded and controls NSJP ................................................................ 11

    IV.   AMP is not entitled to its own version of the facts, and its agency theory is a contested merits question—not a Rule 11 ground. .......... 14

    V.    AMP's Section 230 argument answers a claim no one is making. ..... 15

    VI.   AMP begs the First Amendment question to brand the defamation and false-light claims frivolous. .............................................................. 16

    VII.  AMP's civil-conspiracy argument is a Rule 12(b)(6) question, not a Rule 11 violation. .......................................................................... 18

    VIII. The Section 1985(3) claim travels under a settled rubric this Court has already found colorable ...................................................................... 19

    IX.   AMP's jurisdictional theory ignores controlling authority and is, at most, a contested merits dispute. ...................................................... 21

    X.    AMP infers an improper purpose only from its own baseless arguments. ....................................................................................... 22

CONCLUSION ................................................................................................. 23

## INTRODUCTION

The Advisory Committee Notes to Rule 11 warn against precisely the motion Defendant AJP Educational Foundation, Inc. d/b/a American Muslims for Palestine ("AMP") has filed. AMP brings a Rule 11 motion that, in substance, seeks to relitigate the merits of the claims asserted by Plaintiff Dr. Joshua Winer. But Rule 11 is not a substitute for a motion to dismiss, and it is not a vehicle to reargue the sufficiency of a complaint. It exists to deter filings that lack any reasonable factual or legal basis, not to relitigate issues already before the Court, pressure an opposing party to abandon its claims, or increase the cost of litigation. AMP's motion does exactly that.

In substance, the motion is indistinguishable from AMP's Rule 12(b)(6) motion. It reprises the same arguments on agency, the Communications Decency Act, actual malice, opinion, personal jurisdiction, civil conspiracy, and the elements of Section 1985(3). Those are merits questions already pending before this Court. Rule 11 does not permit AMP to repackage those same arguments as a sanctions request.

Nor does the failure to state a claim, even if AMP were correct on the merits, render a claim sanctionable. Sanctions are reserved for claims that no reasonably competent attorney could have thought had any chance of success. The Court granted leave to file the SAC and rejected defendants' futility arguments, explaining

that challenges of the kind AMP advances are properly addressed on a motion to dismiss. Dkt. 129. That procedural determination is incompatible with AMP's position that the same claims are sanctionable under Rule 11. And with respect to § 1985(3), a claim this Court deemed colorable cannot be one that no reasonable lawyer could have brought. *See id.* at 12.

AMP's factual contention fares no better. It asserts that there is no evidentiary basis for Dr. Winer's allegation that AMP founded and controls National Students for Justice in Palestine ("NSJP"), and that Dr. Winer's counsel therefore lacked an objectively reasonable basis to plead it. That is incorrect. Publicly available materials state that NSJP was founded and controlled by AMP, describe AMP's support for NSJP activity on campus, and identify AMP as NSJP's founder. Dr. Winer did not invent this allegation; he drew it from the public record, including AMP's own statements. That is a sufficient factual basis to plead the allegation, and it forecloses any claim that counsel acted frivolously.

At bottom, AMP's motion reflects a disagreement with the allegations and legal theories in the complaint. That is what Rule 12 is for. Invoking Rule 11 here was improper, and the motion should be denied.

## BACKGROUND

### I.    Factual Background

This is a defamation case. Plaintiff Joshua Winer is a surgical oncologist and medical school professor at the Emory School of Medicine. Dkt. 130 ¶ 12. After Dr. Winer returned from volunteer service as a physician in the Israel Defense Forces ("IDF") following the October 7, 2023, terror attack, *id.* ¶¶ 12, 34, he published a blog post reflecting on his experience (the "Op-Ed"). *Id.* ¶¶ 32–35. Based on this alone, Defendant Umaymah Mohammad, an Emory student, publicly and repeatedly accused Dr. Winer, personally, of aiding and abetting war crimes and the destruction of Gaza's healthcare system. *Id.* ¶¶ 13, 36–39, 50–66.

Among the defendants that leveled or amplified those accusations is NSJP. Dr. Winer alleges that AMP "is the founder of" NSJP and "maintains organizational management and control of NSJP, including the social media messaging of hundreds of college chapters across the country." *Id.* ¶ 14. He further alleges that "AMP's control over NSJP includes responsibility for its coordinated campaigns against individuals like Plaintiff [Dr. Winer]," *id.* ¶ 146, and that "AMP, as the founder of NSJP, is responsible for enabling, facilitating, authorizing and/or directing NSJP's participation in the conspiracy," *id.* ¶ 175. Through that relationship, Dr. Winer alleges, AMP "adopted, enabled and supported NSJP's dissemination of false, targeted rhetoric against" him. *Id.* ¶ 146.

The rhetoric was severe. NSJP's posts accused Dr. Winer—the only professor in the School of Medicine who served in the IDF following the October 7 attacks, *id.* ¶ 48—of "aiding and abetting a genocide, . . . the destruction of the healthcare system in Gaza and the murder of over 400 healthcare workers[.]" *Id.* ¶ 78. The posts and the campaign NSJP launched called on Emory to "remove . . . for patient safety" and to hold accountable the faculty who had "participated in or legitimized the genocide in Gaza[,]" *id.* ¶¶ 84, 87–88—a demand aimed squarely at Dr. Winer. These are not protected expressions of opinion. They are assertions of fact that Dr. Winer personally committed grave crimes, which NSJP used to support its claim that he is professionally unfit.

## II.    Procedural History

On January 27, 2026, the Court granted Dr. Winer's motion for leave to file the operative Second Amended Complaint ("SAC"), finding that the proposed amendments were not futile, Dkt. 129, and that his 42 U.S.C. § 1985(3) claim was at least colorable, *id.* at 12. The SAC was thereafter filed by the Clerk on the same date. Dkt. 130.

The SAC alleges that Instagram posts published by NSJP, for which AMP is responsible, defamed Dr. Winer (Count I), placed him in a false light and invaded his privacy (Count II), formed part of a conspiracy with other defendants to defame him and pressure Emory to terminate him (Count III), and that this conspiracy was

– 4 –

motivated by his Jewish identity in violation of 42 U.S.C. § 1985(3) (Count IV).

Dr. Winer and AMP subsequently filed a consent motion extending AMP's deadline to respond to the SAC to March 3, 2026. *See* Dkts. 131–132. AMP moved to dismiss the SAC on March 3, 2026. Dkt. 146. Dr. Winer filed his opposition on March 17, 2026, Dkt. 164, and AMP filed its reply on March 31, 2026, Dkt. 170.

AMP's motion to dismiss has been fully briefed since March 31, 2026. Only after that briefing was complete did AMP's counsel wait approximately six weeks, until May 14, 2026, to send a Rule 11 safe harbor letter and draft motion to Dr. Winer's counsel. Over two months later, AMP filed its Rule 11 motion on July 23, 2026. Dkt. 187.

## LEGAL FRAMEWORK

"The purpose of Rule 11 is to deter baseless filings in district court and thus streamline the administration and procedure of federal courts." *Peer v. Lewis*, 606 F.3d 1306, 1311 (11th Cir. 2010) (quoting 2 James Wm. Moore et al., *Moore's Federal Practice* § 11.03 (3d ed. 2010) (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990)). "The rule is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories." Fed. R. Civ. P. 11 advisory committee's note to 1983 amendment.

Rule 11 contemplates two broad categories of sanctionable attorney conduct. "Rule 11(b)(1) sanctions are appropriate when an attorney or party presents a paper

for an improper purpose." *Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 665 (11th Cir. 2010) (Tjoflat, J., concurring). An improper purpose is usually inferred from factors not present here, like "excessive persistence in pursuing a claim or defense in the face of repeated adverse rulings[.]" *Indus. Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH*, 141 F.3d 1434, 1448 (11th Cir. 1998) (quoting *Pierce v. Commercial Warehouse*, 142 F.R.D. 687, 690–91 (M.D.Fla. 1992)) *overruled on other grounds by Corporacion AIC, SA v. Hidroelectrica Santa Rita, S.A.*, 66 F.4th 876, 880 (11th Cir. 2023) (addressing the grounds upon which an arbitral award can be vacated).

Meanwhile, Rule 11(b)(2)–(3) requires courts to ask whether the claims are objectively frivolous and whether counsel should have known as much. *Peer*, 606 F.3d at 1311 (quoting *Byrne v. Nezhat*, 261 F.3d 1075, 1105 (11th Cir.2001)). Even if "the evidence supporting the claim is reasonable, but simply 'weak' or 'self-serving,' sanctions cannot be imposed." *Thompson*, 610 F.3d at 665 (Tjoflat, J., concurring) (emphasis omitted) (citing *Davis v. Carl,* 906 F.2d 533, 536 (11th Cir. 1990)).

Sanctions at the pleading stage are very unusual. In assessing the propriety of Rule 11 sanctions, courts ask "(1) whether the party's claims are objectively frivolous, and (2) whether the person who signed the pleadings should have been aware that they were frivolous." *Peer*, 606 F.3d at 1311 (quotation omitted). In

– 6 –

applying that standard, courts look to the Advisory Committee's guidance, which emphasizes that Rule 11 targets "insisting upon a position after it is no longer tenable." *Id.* (quoting Fed. R. Civ. P. 11, advisory committee note of 1993). That usually requires persisting with a contention once "evidentiary support is not obtained after a reasonable opportunity for further investigation or discovery[.]" *Id.* (quotation omitted); *Anderson v. Smithfield Foods, Inc.,* 353 F.3d 912, 915–16 (11th Cir.2003) (affirming a district court's dismissal of a RICO count, but reversing the imposition of sanctions when there was "scant on-point authority" to guide the attorney to the conclusion that the claim had no chance of success).

## ARGUMENT

### I. AMP recasts its Rule 12(b)(6) motion as a motion for sanctions.

AMP offers a series of arguments as to why Dr. Winer's claims against it are sanctionable. Nearly all are reprises of its motion to dismiss, now recast under Rule 11. None comes anywhere close to satisfying the standard for Rule 11 sanctions.

The overlap is not merely conceptual. AMP's motion tracks its motion to dismiss, argument for argument and citation for citation—at times verbatim. AMP's agency theory (Dkt. 187-1 at 7) is lifted from its motion to dismiss (Dkt. 146-1 at 10–11), down to the quotation of *Dougherty v. Harvey* 317 F. Supp. 3d 1287, 1293 (N.D. Ga. 2018); its Section 230 argument (Dkt. 187-1 at 8) from Dkt. 146-1 at 12–14 and its reply (Dkt. 170 at 3–4); its "opinion" and First Amendment argument

(Dkt. 187-1 at 9) from Dkt. 146-1 at 18–19, including the identical citation to its co-defendant's brief in support of its motion to dismiss, "Doc. 140-1 at 8–13"; its false-light argument (Dkt. 187-1 at 10) from Dkt. 146-1 at 20–21; its civil-conspiracy argument (Dkt. 187-1 at 10–12) from Dkt. 146-1 at 21–22; its Section 1985(3) argument (Dkt. 187-1 at 12–13) from Dkt. 146-1 at 22–24; and its jurisdictional argument (Dkt. 187-1 at 15) from its reply, which pared the same challenge down to the assertion that Dr. Winer "relies solely on his conclusory statement that AMP maintains complete operational control of NSJP," Dkt. 170 at 2. Dr. Winer answered each of these arguments months ago. *See* Dkt. 164.

AMP's motion to dismiss argued that "[p]roperly stripping the Complaint of these conclusory allegations reveals it as devoid of any conduct for which AMP could be held liable," and sought dismissal on that basis. Dkt. 146-1 at 11. Its Rule 11 motion reprises that same premise, asserting that the pleading is "devoid of any conduct that could render AMP liable" and recasting that argument as a demand for sanctions. Dkt. 187-1 at 7–8. A pleading does not become sanctionable because the defendant changed the label.

That the two briefs are substantively interchangeable is dispositive. The Advisory Committee could not have been clearer that Rule 11 "should not be employed . . . to test the legal sufficiency or efficacy of allegations in the pleadings; other motions are available for those purposes." Fed. R. Civ. P. 11, advisory

committee's note to 1993 amendment. And the Eleventh Circuit enforces that line: a complaint may be dismissed and still not be sanctionable, because "[n]ot every Federal Rule of 12(b)(6) dismissal will warrant sanctions[.]" *Thompson*, 610 F.3d at 665; *Anderson*, 353 F.3d at 915–16. The point is only sharper here, where this Court has not yet ruled on AMP's motion to dismiss at all.

AMP asks the Court to brand as "frivolous" the same claims it has asked the Court to evaluate under Rule 12(b)(6), before the Court has ruled on them. And even if the Court ultimately grants that motion, dismissal alone would not make these claims sanctionable. The Court can and should resolve AMP's arguments where they belong, on the motion to dismiss, and deny sanctions because AMP's motion is not directed at any Rule 11 violation, but simply repackages its Rule 12 arguments.

## II.    Pleading on information and belief is proper and is not sanctionable.

AMP's lead argument is that because Dr. Winer alleges AMP's control over NSJP "[u]pon information and belief," Dkt. 130 ¶ 14, the Court "need not credit" the allegation and the allegation is itself sanctionable. Dkt. 187-1 at 6–7. AMP made this identical argument—word for word—in its motion to dismiss. Dkt. 146-1 at 9–11. Recast as a demand for sanctions, it fails for the same reason.

"Every day in pleadings filed across the country, allegations are made upon information and belief. In fact, it is a perfectly proper and well-accepted practice for parties to so hedge their allegations, and good lawyers routinely use this tactic."

*Satco Products, Inc. v. Seoul Semiconductor Co.*, 551 F. Supp. 3d 1329, 1335 (N.D. Ga. 2021) (citing 5 Charles Alan Wright et al., *Federal Practice & Procedure* § 1224 (3d ed. 2004)). The practice remains proper after *Twombly* and *Iqbal*, and is "a desirable and essential expedient when matters that are necessary to complete the statement of a claim are not within the knowledge of the plaintiff[,] but he has sufficient data to justify interposing an allegation on the subject." 5 Charles Alan Wright et al., *Federal Practice & Procedure* § 1224 (3d ed. 2004). It is especially appropriate where, as here, "the facts are peculiarly within the possession and control of the defendant." *Levers v. Govinda's Cafe*, No. 1:22-CV-2417-TWT, 2023 WL 3729096, at *2 (N.D. Ga. May 30, 2023) (quoting *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)). The internal governance and management of AMP and NSJP are quintessential examples of facts within the defendant's possession and control.

AMP's single authority proves the point against it. *Scott v. Experian Information Solutions, Inc.* addressed whether conclusory information-and-belief allegations satisfy *Twombly* at the pleading stage. *See* Dkt. 187-1 at 6–7 (citing 18-CV-60178, 2018 U.S. Dist. LEXIS 110210, at *6 (S.D. Fla. June 29, 2018)). It did not consider sanctions, and it does not hold that pleading on information and belief is sanctionable. At most, AMP's argument establishes a Rule 12(b)(6) point—that particular allegations should not be credited as true. Whether an allegation states a

claim and whether counsel violated Rule 11 by making it are different questions with different answers. Rule 11 asks whether counsel had a reasonable basis after an inquiry reasonable under the circumstances. Fed. R. Civ. P. 11(b). As the next section shows, Dr. Winer did.

## III.  Dr. Winer had more than a reasonable basis to allege that AMP founded and controls NSJP

AMP's insistence that Dr. Winer's counsel "objectively knew that no facts exist" to support the allegation that AMP founded and controls NSJP, Dkt. 187-1 at 15, is refuted by the public record—much of it authored by the government or by AMP itself. Rule 11 measures counsel's conduct against whether "what was reasonable to believe at the time the pleading . . . was submitted." *Peer*, 606 F.3d at 1311 (quoting Fed. R. Civ. P. 11, advisory committee note of 1983). Judged by that standard, Dr. Winer's allegation rests on a substantial evidentiary foundation.

*First,* the United States House Committee on Oversight states as fact that NSJP was "founded and controlled" by AMP. In a May 29, 2024 letter—addressed to NSJP in care of AMP's Executive Director, at AMP's own address—the Committee wrote that "National Students for Justice in Palestine (National SJP) . . . is founded and controlled by American Muslims for Palestine (AMP)," and footnoted that "American Muslims for Palestine is the controlling entity of National

Students for Justice in Palestine."[1]

*Second,* that same congressional letter reports that "National SJP founder Dr. Hatem Bazian serves as the Chairman of the National Board of AMP, further solidifying the current relationship between National SJP and AMP." *Id.* The founder of NSJP chairs AMP's board.

*Third,* AMP's own website admits its role in campus organizing. AMP's public FAQ, in response to the question "What does AMP do," states: "We also work in broad-based coalitions and support campus activism through Students for Justice in Palestine and Muslim Student Associations."[2]

*Fourth,* AMP's "Our Team" page on its own website reflects the shared personnel that Dr. Winer alleges, confirming that Hatem Bazian—NSJP's founder—serves as AMP's National Board Chairman. [3]

*Fifth,* AMP's website separately states that AMP provides NSJP with "information, materials, speakers, trainings and financial support."[4]

---

[1] Letter from Rep. James Comer, Chairman, House Committee on Oversight and Accountability, to National Students for Justice in Palestine (May 29, 2024), https://perma.cc/ED8N-2RJ5.

[2] American Muslims for Palestine, https://perma.cc/CR4D-Z3AS (last visited Aug. 6, 2026).

[3] American Muslims for Palestine, https://perma.cc/W2ZF-75JJ (last visited Aug. 6, 2026).

[4] American Muslims for Palestine, *Help AMP Bring Palestine to the American Public* (Dec. 7, 2011), https://perma.cc/G3S6-CZRU.

*Sixth,* sworn congressional testimony by a former United States Treasury terrorism-finance analyst describes AMP as "arguably the most important sponsor and organizer for [National] Students for Justice in Palestine ([N]SJP)," reports that "AMP even has a campus coordinator on staff whose job is to work directly with [N]SJP," and states that AMP spent $100,000 on campus activities in a single year.[5]

That is not "no evidence[.]" *Thompson*, 610 F.3d at 665. It is a congressional oversight committee, sworn congressional testimony, and AMP's own website, all supporting what Dr. Winer alleged. Nor is any of this news to AMP. Dr. Winer set out the evidence in support in his opposition to AMP's motion to dismiss, Dkt. 164 at 8–9, and AMP replied to that opposition, Dkt. 170, without rebutting a word of it. A defendant that has read the plaintiff's evidence and declined to answer it cannot then represent to this Court that the evidence does not exist. AMP remains free to argue in discovery that these sources are mistaken or that the relationship is more attenuated than they suggest. But an allegation grounded in a federal committee's findings, sworn congressional testimony, and a defendant's own public statements is not one that "no reasonably competent attorney could" have made. *Id.* AMP's

---

[5] Jonathan Schanzer, Written Testimony Before the U.S. House Committee on Foreign Affairs, Subcommittees on Terrorism, Nonproliferation, and Trade and on the Middle East and North Africa, at 24 (Apr. 19, 2016), https://perma.cc/XCM8-NV3Y.

contrary assertion asks this Court to sanction counsel for believing the House Oversight Committee, congressional testimony and AMP's own statements on its website.

### IV.     AMP is not entitled to its own version of the facts, and its agency theory is a contested merits question—not a Rule 11 ground.

AMP devotes much of its motion to its own account of the facts: that "[n]o corporate or other formal relationship exists between AMP and NSJP"; that WESPAC, not AMP, "served as the fiscal sponsor for NSJP"; and that AMP provides only "limited grants" upon written request. Dkt. 187-1 at 5. Those assertions are contested, and a defendant cannot manufacture a Rule 11 violation by substituting its version of the facts for the plaintiff's. On a motion to dismiss, Dr. Winer's well-pleaded allegations are assumed true; on a Rule 11 motion, the question is whether he had a reasonable basis for them. AMP's competing narrative goes to neither question. It is a fact dispute for discovery—the very thing Rule 11 "should not be employed as a discovery device" to resolve. Fed. R. Civ. P. 11, advisory committee's note to 1993 amendment.

AMP's legal corollary fails for the same reason. AMP argues that it cannot be liable for NSJP's statements unless Dr. Winer shows AMP "expressly directed [NSJP] to or authorized [NSJP] to slander" him as "an agent acting within the scope of employment." Dkt. 187-1 at 7 (quoting *Dougherty v. Harvey*, 317 F. Supp. 3d 1287, 1293 (N.D. Ga. 2018)). That is verbatim the argument AMP pressed in its

motion to dismiss, Dkt. 146-1 at 10–11, and that Dr. Winer answered in his opposition, Dkt. 164 at 9–10—explaining that *Dougherty* addresses respondeat-superior liability in an employment relationship and does not govern here. Whether Dr. Winer's allegations of organizational control and a "formal liaison role," Dkt. 130 ¶ 14, suffice to plead that relationship is a merits question. Dr. Winer alleges precisely that AMP "authorized" NSJP's "use of official channels and social media to adopt and disseminate false and defamatory statements" about Dr. Winer, *id.* ¶ 175, and that AMP is "responsible for enabling, facilitating, authorizing and/or directing NSJP's participation in the conspiracy," *id.* Whether those allegations state a claim is a merits question to be resolved on a motion to dismiss; they do not come close to sanctionable conduct.

### V. AMP's Section 230 argument answers a claim no one is making.

AMP argues that Section 230 of the Communications Decency Act bars Dr. Winer's defamation claim because AMP cannot be liable for "comments published by third parties in response to another third party's Instagram posts." Dkt. 187-1 at 8. But that is not Dr. Winer's claim. His defamation claim rests on NSJP's posts themselves and AMP cannot claim immunity where the SAC alleges it founded, managed, and directed NSJP's activities. Dkt. 130 ¶¶ 14, 16, 146, 175.

In all events, Section 230 is an affirmative defense to be adjudicated on the merits—which is exactly where AMP first raised it, in its motion to dismiss (Dkt.

– 15 –

146-1 at 12–14) and its reply (Dkt. 170 at 3–4). As explained in Dr. Winer's response (Dkt. 164 at 12–14), Section 230 is a defense, not an element of his claim and in any event, the SAC alleges that AMP was "responsible, in whole or in part, for the creation or development" of the content, and not just a passive host. That AMP believes it will ultimately prevail on the defense does not render Dr. Winer's claim frivolous. If it did, any plaintiff confronted with a viable defense would be subject to sanctions. That is not the law. Again, it is a motion to dismiss in the guise of a Rule 11 motion.

VI.     **AMP begs the First Amendment question to brand the defamation and false-light claims frivolous.**

AMP contends that NSJP's statements about Dr. Winer are non-actionable "opinion" and "protected free speech," and that he has failed to plead actual malice. Dkt. 187-1 at 8–10. AMP advanced each of these contentions in its motion to dismiss—the "opinion" and First Amendment argument at Dkt. 146-1 at 18–20, the actual-malice argument at Dkt. 146-1 at 14–18—and Dr. Winer answered them at Dkt. 164 at 10–17. Each is a merits argument, each is contested, and none makes the claim frivolous.

There is no separate privilege for "opinion" where the words imply a provably false assertion of fact. *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18–19 (1990) (couching a statement as opinion does not negate its implication of a false assertion of fact). Accusing Dr. Winer of aiding and abetting genocide, of destroying a

– 16 –

hospital system, and of helping to murder hundreds of health workers charges specific crimes and career-ending professional misconduct—not protected opinion—and is defamatory *per se*.  O.C.G.A. § 51-5-4(a)(1), (3), (b). AMP's own authorities merely mark the boundary between fact and opinion; they do not establish that placing Dr. Winer's case on the actionable side of that line is frivolous. Dkt. 187-1 at 9; *see Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339–40 (1974); *Bergen v. Martindale-Hubbell, Inc.*, 337 S.E.2d 770, 771–72 (Ga. Ct. App. 1985); *Partington v. Bugliosi*, 56 F.3d 1147, 1154 (9th Cir. 1995). At most, they frame a debate for Rule 12(b)(6).

AMP's contention that Dr. Winer has not pleaded actual malice, Dkt. 187-1 at 8–9, is likewise a Rule 12(b)(6) argument that Dr. Winer has answered. *See* Dkt. 164 at 11, 14–16. "[A]t the pleadings stage, [a plaintiff] need only allege sufficient facts to permit the inference that [the defendant] published [the] statements with actual malice." *Veritas v. Cable News Network, Inc.*, 121 F.4th 1267, 1283 (11th Cir. 2024) (citing *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702–03 (11th Cir. 2016)). No reasonable reader could extract from Dr. Winer's Op-Ed the accusation that he is a genocidal war criminal who endangers his patients. The chasm between what he wrote, and what was said about him, supports the inference that the accusations were published with reckless disregard for their truth. Even if Dr. Winer had not adequately pleaded actual malice (and he did), that would not render his claim

– 17 –

frivolous. Countless defamation claims are dismissed for failure to plead actual malice adequately. AMP's position would render each such claim sanctionable. That is not, and cannot be, the rule.

Nor does AMP's false-light argument change the analysis. AMP asserts that the statements are non-actionable because it is true that Dr. Winer served in the Israeli military in Gaza. Dkt. 187-1 at 10, 15. But that is not the accusation. NSJP's statements assert that he "participated in aiding and abetting a genocide, in aiding and abetting the destruction of the healthcare system in Gaza and the murder of over 400 healthcare workers[.]" Dkt. 130 ¶¶ 78, 85. Dr. Winer was further accused of "inflict[ing] dismemberment, torture, and slaughter," *id*. ¶¶ 91, 95, and was deemed unfit to return to his daily life as a medical professional as a result, *id.* 87–88.

Whether those accusations are substantially true is a classic merits question. AMP's own authorities confirm as much. Dkt. 187-1 at 10, citing *Azizan v. Manning,* No. 1:25-CV-1112-MLB, 2026 WL 321432, at *5 (N.D. Ga. Feb. 6, 2026) (citing *Smith v. Stewart*, 660 S.E.2d 822, 834 (Ga. Ct. App. 2008); *S & W Seafoods Co. v. Jacor Broad. of Atlanta,* 390 S.E.2d 228, 231 (1989)).

## VII. AMP's civil-conspiracy argument is a Rule 12(b)(6) question, not a Rule 11 violation.

AMP argues that Dr. Winer's civil-conspiracy claim is frivolous because the underlying torts fail and because he has not adequately pleaded an agreement. Dkt. 187-1 at 10–12. That is, once again, AMP's motion-to-dismiss argument verbatim—

copied from Dkt. 146-1 at 21–22—and Dr. Winer answered it in his opposition, Dkt. 164 at 18–19.

The argument that the conspiracy claim falls with the underlying torts, Dkt. 187-1 at 11 (citing *Mustaqeem-Graydon v. SunTrust Bank*, 573 S.E.2d 455, 461 (Ga. Ct. App. 2002), and *O'Neal v. Home Town Bank of Villa Rica*, 514 S.E.2d 669, 675 (Ga. Ct. App. 1999)), presupposes that the defamation and false-light claims fail. They do not, for the reasons set out above. AMP's fallback—that Dr. Winer has not pleaded an "agreement," *id.* at 11–12 (citing B*ailey v. Bd. of Cnty. Comm'rs of Alachua Cnty., Fla.*, 956 F.2d 1112, 1122 (11th Cir. 1992), and *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984))—is the paradigmatic Rule 12(b)(6) question of whether the alleged coordination among the defendants supports a plausible inference of agreement. That is a question for the motion to dismiss, not a ground for sanctions.

## VIII.    The Section 1985(3) claim travels under a settled rubric this Court has already found colorable.

AMP argues that Dr. Winer's Section 1985(3) claim is frivolous because he alleges no "specific class-based animus" and only "significant harm." Dkt. 187-1 at 12–13. This too is AMP's motion-to-dismiss argument, nearly verbatim—from Dkt. 146-1 at 22–24—answered in Dr. Winer's opposition, Dkt. 164 at 19–23. Every premise is wrong or, at best, contested; and this Court has already held the claim colorable. Dkt. 129 at 12.

AMP's assertion that Dr. Winer alleges "no specific class-based animus," Dkt. 187-1 at 13, blatantly ignores the SAC. Dr. Winer alleges that the defendants "executed a common plan to deprive Plaintiff of the equal protection of the laws and his rights and privileges on account of his Jewish identity[.]" SAC ¶ 189. Jewish identity is a protected class within the reach of the civil-rights conspiracy statutes. *See Shaare Tefila Congregation v. Cobb*, 481 U.S. 615, 617–18 (1987); *LeBlanc-Sternberg v. Fletcher*, 781 F. Supp. 261, 267 (S.D.N.Y. 1991); *Emanuel v. Barry*, 724 F. Supp. 1096, 1101 (E.D.N.Y. 1989).

AMP's injury argument fares no better. AMP represents that the SAC alleges only "unspecified 'significant harm,'" Dkt. 187-1 at 13, but ¶ 199 in fact specifies that the harm Dr. Winer endured includes "reputational damage, emotional distress, fear for his safety, economic injury, and impairment of his constitutional rights." And this Court has already rejected AMP's theory, holding that Dr. Winer "need only allege that the *purpose* of the conspiracy was to deprive him of the equal protection of the laws, which he has done, and that he suffered either an injury to his person *or* a deprivation of a right." Dkt. 129 at 9 (emphasis in original).

A claim this Court has already deemed "colorable," *id.* at 12, is not one that no "reasonably competent attorney" could bring. *See Thompson*, 610 F.3d at 665. AMP's lone out-of-circuit citation, *Weinberg v. National Students for Justice in Palestine*, No. 2:25-cv-03714-MCS-JC (C.D. Cal. Jan. 20, 2026), is a nonbinding

– 20 –

decision on a different record; it does not make Dr. Winer's claim frivolous, still less one that "settled precedent clearly bars." *Thompson*, 610 F.3d at 665.

### IX.   AMP's jurisdictional theory ignores controlling authority and is, at most, a contested merits dispute.

AMP suggests that sanctions are warranted because Dr. Winer "plainly fail[ed] to sufficiently plead jurisdiction," asserting that he "pleads no facts that could show AMP's activities in Georgia." Dkt. 187-1 at 15. This too is a reprise of AMP's motion to dismiss (Dkt. 146-1 at 5–8) and its reply (Dkt. 170 at 2–3), which Dr. Winer answered in full (Dkt. 164 at 3–6). It is a striking basis for sanctions given law and the record. Dr. Winer's jurisdictional theory is fully briefed on the motion to dismiss, and it rests on authority AMP does not confront.

Under Georgia's long-arm statute, the exclusion of defamation is immaterial where, as here, the plaintiff asserts claims over which the court has jurisdiction, including a false-light claim arising from the same conduct, *Mays v. Laurant Publ'g, Ltd.*, 600 F. Supp. 29, 30 (N.D. Ga. 1984) (citing *Mack Truck, Inc. v. Arrow Aluminum Castings Co.*, 510 F.2d 1029, 1032 (5th Cir. 1975)). At a minimum, a jurisdictional position supported by on point authority from this District is not one that "no reasonably competent attorney" could advance. *See Thompson*, 610 F.3d at 665. A defendant that disputes personal jurisdiction moves to dismiss under Rule 12(b)(2). It does not move for sanctions.

– 21 –

## X.    AMP infers an improper purpose only from its own baseless arguments.

AMP asserts that the SAC was filed for an improper purpose, but offers no support for that claim. Dkt. 187-1 at 1. Instead, it simply repackages its merits arguments as evidence of bad faith.

The theory fails at a more basic level. Rule 11 does not permit a finding of improper purpose based on non-frivolous claims. Where a complaint has a reasonable factual and legal basis, allegations of bad faith do not stand on their own. AMP has not shown that the SAC is frivolous. To the contrary, this Court has already found some of Dr. Winer's claims to be at least colorable, Dkt. 129 at 12. The Court further granted Dr. Winer's motion for leave to file the SAC and rejected defendants' futility arguments. *See generally* Dkt. 129.

AMP's real argument is that it disagrees with the claims asserted against it and believes they should be dismissed. That is a merits argument, not a basis for sanctions. Dr. Winer brought this action to respond to a public accusation that he participated in genocide. Vindicating one's good name against such a charge is a core and entirely proper use of defamation law.

AMP's request for fees confirms the point. It seeks to recover its attorneys' fees and costs incurred in responding to the SAC. But AMP has already sought that same relief in its motion to dismiss under Georgia's anti-SLAPP statute. See Dkt. 146-1 at 24–25. After Dr. Winer explained that the Eleventh Circuit forecloses

– 22 –

application of that statute in federal court, Dkt. 164 at 24–25, AMP repackaged the same request under Rule 11.

Rule 11 does not authorize fee-shifting for an entire pleading. Any monetary sanction must be limited to fees directly resulting from a specific violation and must be imposed for deterrence, not compensation. Fed. R. Civ. P. 11(c)(4); *Showan v. Pressdee,* 922 F.3d 1211, 1224 (11th Cir. 2019). AMP identifies no such violation. Its sweeping request for fees, untethered to any specific conduct, confirms that the motion seeks to shift the ordinary costs of defending claims it disputes on the merits. Rule 11 does not permit that.

## CONCLUSION

AMP's motion is its motion to dismiss under the guise of Rule 11, largely duplicating the Rule 12(b)(6) briefing that remains pending before this Court. It tests the sufficiency of the pleadings, reargues the merits, and seeks to shift the cost of litigation—uses of Rule 11 the Advisory Committee expressly forbids. Its lone factual charge, that "no evidence" supports the allegation that AMP founded and controls NSJP, is contradicted by a congressional oversight letter, written congressional testimony, and AMP's own website—materials AMP has already seen and declined to address. The motion should be denied.

Respectfully submitted this 6th day of August, 2026.


/s/ Lauren Israelovitch
Lauren Israelovitch
Mark Goldfeder
Ben Schlager
Rachel Sebbag
NATIONAL JEWISH
    ADVOCACY CENTER, INC.
3 Times Square
New York, NY 10036
lauren@njaclaw.org
Pro Hac Vice


/s/ David F. Katz
David Forman Katz
THE D.F. KATZ LAW FIRM, LLC
1158 Jones Bridge Rd
Ste 420 PMB 1090
Johns Creek, GA 30022
(404) 918-5707
dkatz@dfkatzlawfirm.com
Ga. Bar. No. 408738

/s/ Miles C. Skedsvold
Josh Belinfante
Anna Edmondson
Miles Skedsvold
ROBBINS ALLOY BELINFANTE
    LITTLEFIELD LLC
500 14th Street, NW
Atlanta, Georgia 30318
T:  (678) 701-9320
E:  mskedsvold@robbinsfirm.com
Ga. Bar. No. 371576


/s/ Esther Panitch
Esther Panitch
THE PANITCH LAW GROUP, PC
4243 Dunwoody Club Drive
Suite 205
Atlanta, GA 30350
esther@panitchivory.com
Ga. Bar. No. 143197

## CERTIFICATE OF COMPLIANCE

By signature below, counsel certifies that the foregoing pleading was prepared in Times New Roman, 14-point font, in compliance with Local Rule 5.1(C).

*/s/ Lauren Israelovitch*
Lauren Israelovitch

## CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically filed the within and foregoing **PLAINTIFF JOSHUA WINER'S RESPONSE TO DEFENDANT AJP EDUCATIONAL FOUNDATION, INC. D/B/A AMERICAN MUSLIMS FOR PALESTINE'S MOTION FOR SANCTIONS UNDER RULE 11 OF THE FEDERAL RULES OF CIVIL PROCEDURE** with the Clerk of Court using the CM/ECF electronic filing system, which suffices for service on all counsel of record who have entered an appearance in the case under L.R. 5.1(A)(3).

This 6th day of August, 2026.

/s/ Lauren Israelovitch
Lauren Israelovitch

– 26 –