**Jonathan Wallace, Esq.**
**PO #728**
**Amagansett, New York 11930**
**917-359-6234**
**jonathan.wallace80@gmail.com**

July 1, 2026

To: Federal District Judges and Magistrate Judges
From: Jonathan Wallace
Re: Statement of Pro Bono Principles and Realities

Since my *pro bono* status and the limitations it imposes on resources and capabilities is commonly becoming an issue in cases, I am attempting to get out in front by filing this letter with each Court in which I am appearing, along with my initial filing.

**Personal**

I am a 71 year old attorney retired from a commercial practice in which I was a solo litigator and small firm partner representing small and medium size companies and individual business-people in litigation. I had always done *pro bono* work when possible, but the last fifteen years of my paid practice, I worked as much as half my time for free, defending people arrested at Occupy Wall Street, Black Lives Matter and Standing Rock protests, and bringing affirmative First Amendment civil litigation including voting rights cases. During these years, I represented some students in conduct proceedings at NYU and Juilliard, and some professors named as individual defendants in antisemitism litigation against the City University of New York. After October 7. 2023, people began sending me clients, and I now work full time, for free, representing faculty, students, doctors, schoolteachers, and other individuals and groups being terminated, suspended, expelled, investigated, doxed, defamed and sued. I have counseled approximately 3,500 students and 400 faculty members. I have appeared in more than fifty litigations in state and federal courts in New York, New Jersey, Massachusetts, Tennessee, Georgia, Texas and California. Google/Gemini says I should be carrying not more than fifteen matters. Historically, in my practice, a quarter or third of my cases would settle every year. Presently, I am setting only about ten percent, in large part because institutions are under tremendous pressure, from donors, trustees, the U.S. government, and the right wing media, not to settle.

I work from home and have no associate or secretary. I have a full time paralegal assisting me as of July 1, but I cannot afford to compensate her and her being able to continue will depend entirely on our being able to raise funds.

I am often, probably usually, the attorney of last resort for clients who would have to act *pro se,* and groups who would be in default, if not for me. There are a number of reasons my clients can't find other lawyers. Most attorneys, even civil liberties lawyers, are hesitant or afraid to take cases in which

there is an implication of antisemitism or "Hamas support", two frequent accusations levied at my clients. Attorneys who are able and willing to take cases in this space are now maxed out and cannot take new ones. Almost all lawyers lack the skills and experience necessary to defend these clients.

Out of 1.4 million lawyers in America, I may be the only one who is doing this work full time for free. I say this because I would probably know if anyone else like me existed, because I would have met them or heard their name, or been relieved to know I did not have to take a case, because they had. I do not need, like everyone else I know, to work at a day job because I own my house outright, and have no debt, having cut up my credit cards in 2002. I drive a 2014 Honda, and hope to get another couple years out of it. I took my social security early. I do sometimes go for a week or ten days at a time with less than $200 in cash available.

I am a proud Jewish person, bar mitzvahed at Temple Beth Elohim in Brooklyn in 1967 (Reform tradition). I regard myself as being of the Judaism of Maimonides, Mendelsohn, Spinoza, and Albert Einstein. I am highly distressed by the intentional conflation by a very vocal minority of anti-Zionism with antisemitism, even though our Courts have now unanimously ruled contrary, *StandWithUs Ctr. for Legal Just. v Massachusetts Inst. of Tech.,* 2025 U.S. App. LEXIS 27390, at *18 (1st Cir Oct. 21, 2025, No. 24-1800) ("Most of the conduct about which plaintiffs complain is speech protected by the First Amendment, and we do not construe Title VI as requiring a university to quash protected speech"). My Arab and Muslim clients, and their supporters of every other background, skin color and faith, strike me as being indistinguishable from the young people of my own community and family, and deserving of the same respect and protection, yet they are being demonized everywhere, fired from jobs, expelled or suspended from universities, and sued with abandon in cases accusing them of violating the Alien Tort Act, the Anti-Terrorism Act, the Patriot Act, and state laws of defamation and other torts. Many of these litigations seem intended to crush them under legal procedure, discovery , expense, public shaming and anxiety without ever reaching the merits.

**Principle**

I take these cases because that's what the person I always aspired to be, would do. I would be deeply ashamed if anyone who was really up against the wall went without counsel because I said no. I have avoided doing to, so far.

There is absolutely no up side for me other than knowing I did the right thing. I work for free and receive no financial or other gain. I am old, and not building a career, so there are no reputational benefits. In any event, I have already been attacked (doxed) in the *New York Post* and the *Washington Free Beacon* for my pains.

I believe that my role as attorney of last resort is also critical to the Constitution and our legal system; that it is preferable to have an attorney, even of very limited resources and bandwidth, representing a terrified twenty-two year old Arab American haled into Court for First Amendment-protected speech, than to force that individual to go it alone.

If the Court shares that premise, then most of what I say in this memorandum will make sense.

**Problems**

*Bandwidth.* I am aware that at some point I will have to say no. It is my goal that no one be sued for pro-Palestinian expression and be forced to go without counsel, if I can do anything about it. I also represent groups, such as the National Students for Justice in Palestine, which has been sued eight times in various state and federal courts in the past several years, who cannot represent themselves *pro se* and would be forced to default if I did not take their cases as attorney of last resort.

*Financial Resources.* This has been a particularly huge problem. I have no sources of funding to pay for filing fees, ediscovery software, court reporters, copying or anything else, and my young clients have no funds, while even many adults, faculty and the like are not well compensated, or have lost their jobs, and have very limited resources. Adversaries routinely try to bury me in vry broad discovery requests, quickly followed by motions to compel and for discovery sanctions.

In this area in particular, I find that Courts, with the best of intentions, make assumptions that everyone appearing before them is getting paid and is able to pay. After all, virtually all federal litigants who are not *pro se,* prisoners, or *in forma pauperis,* are represented either by salaried law firm attorneys or by lawyers employed by well-funded nonprofits like ACLU or NAACP. The spectacle of an impecunious lawyer working from his dining room table on his laptop, seems quite startling even to sympathetic judges.

*Travel.* I could not take a case in a distant state without assuming I will have to go there for trial. Some courts mandate that I travel for arguments of motions and other appearances, which is a serious financial hardship for me and for my clients. I have even bought non-reimbursable tickets for court dates which judges wound up canceling.

*Pro Hac Vice.* Finding local counsel to move me in *pro hac vice* is nightmarishly hard in many jurisdictions. Since we cannot afford to pay anyone, the range of possibilities is restricted to people able to take cases *pro bono,* but even local movement attorneys may be unwilling to take Palestine cases. The requirement for local counsel seems outmoded, given that courts have complete authority to sanction me and therefore have the amount of control required. It has taken me months to find local counsel in states like Georgia and Florida. This becomes a serious access to justice issue, cf. *Christopher v Harbury,* 536 US 403, 414-415 (2002) ("Whether an access claim turns on a litigating opportunity yet to be gained or an opportunity already lost, the very point of recognizing any access claim is to provide some effective vindication for a separate and distinct right to seek judicial relief for some wrong"). I will probably start moving as needed for waiver of this requirement, which I believe District Courts have discretion to order.

*Discovery.* Many plaintiffs in this space are represented by medium size and large law firms or well-funded organizations which have the capacity to assign many attorneys to a case, and to generate a large number of very broad discovery requests requiring substantial labor on my part. Some of these firms appear to be minded, as a tactical measure, to make motions to compel and to seek discovery sanctions as soon as there is an opportunity. Since (see "Volunteers", below), I am largely responsible for reviewing discovery alone (with the help, for now, of my paralegal), I will be asking Courts both to assign a magistrate judge to supervise discovery immediately, and to be mindful of the language in

FRCP 27 about the "parties' resources".

*Volunteers.* Although it is natural to think I can extend my own capacity, for researching motions and reviewing discovery, with volunteer help, I have learned the hard way this rarely works. And I have spoken to other pro bono attorneys who have had the same experience. Volunteer lawyers rarely meet deadlines, or deliver work product which is not useful, or require more time spent supervising than it would take to do the work. If I want to get anything done on time, at the right level of quality, I have to do it myself.

*Technological skill.* My abilities are very limited. I compile tables of cases and authorities manually, and it frequently takes me three hours to do so for a twenty page brief (sometimes longer than it took to write the brief). One week not long ago, I owed briefs in three federal cases. I already was working a sixty hour week, and after completing two tables, filed the third brief with a promise to file a revised version-- a promise I kept more than a week later. While I was able to brief a successful appeal to the Third Circuit alone, as it required only 14-point type and one-inch margins, formatting requirements in California district courts, which include numbered lines and printed copies on special paper, are beyond my abilities.

**Measures**

I have some good news to report: in an attempt to build infrastructure, especially to do discovery, I hired a full time paralegal and licensed e-discovery software. I cannot afford to pay her salary or the license fee of the software from my own pocket, however, so the permanence of these measures will depend very much on my ability to raise funds.

**Dangers**

There are three ways that attorneys working on Palestine cases have been put out of play these last few years. Some, from recent graduates who accepted a job, through partners of many years standing, have been fired. Others have been doxed on sites like Canary Mission, taking reputational harm that may influence their ability to get future jobs or win clients. And a third group gets inundated with discovery sanctions motions, Rule 11 and every other kind of motion likely to make this work too dangerous to do.

I am immune or resistant to the first two tactics, as I will not fire myself and do not, at this late date, much care what people say about me. However, given my very modest financial standing, the third line of attack represents an existential threat, and could even in a worst case, deprive me of shelter and food.

**What I Respectfully Request**

Much of the preventatives and solutions to the problems I sketch out may be found in the beautiful statement in FRCP 26(b): "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, *the parties' resources, t*he importance of the discovery in resolving the issues, and

whether the burden or expense of the proposed discovery outweighs its likely benefit." (My italics)

There is not a lot of case law on the meaning and applicability of "the parties resources", but my goal, given that I am uniquely situated and broke, is to call this provision to Courts' attentions and to aid in developing, I hope, some useful case law.

Also, I will request the immediate assignment of a magistrate judge to supervise discovery in each of my cases.

**Conclusion**

My clients deserve representation. I have the skills, the will and the lifestyle needed to provide it. I am writing in the hope that courts, mindful of my circumstances and in agreement that my clients should have an attorney, will assure a level playing field conducive to my being able to reach the merits.