IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| JOSHUA WINER,<br><br>Plaintiff,<br><br>v.<br><br>UMAYMAH MOHAMMAD, et al.,<br><br>Defendants. | CIVIL ACTION FILE<br>NO. 1:25-CV-2329-TWT |

**OPINION AND ORDER**

This is a defamation case. It is before the Court on Defendant CAIR-NGA, Inc.'s ("CAIR Georgia" or "CG") Motion to Dismiss [Doc. 140]. For the following reasons, Defendant CAIR Georgia's Motion to Dismiss [Doc. 140] is GRANTED in part and DENIED in part.

**I. Background**

This action arises out of alleged defamatory statements that Defendant Umaymah Mohammad, a student at the Emory University School of Medicine, made about Plaintiff Joshua Winer, a physician and professor at Emory. (2nd Am. Compl. ¶¶ 1-2). Mohammad, who is Palestinian, sent an email to the entire School of Medicine student and faculty body on January 17, 2024, in which the Plaintiff alleges she "praised terrorism against Israel, expressed her hatred towards Israel and the United States, and stated that Israel, the United States, and Emory are perpetrating a genocide against Palestinians in Gaza." (*Id.* ¶¶ 26-27). Nearly two months later, in March 2024, the Plaintiff published

an op-ed piece in an Israeli news publication sharing his decision to travel to Israel to volunteer as a physician in the Israeli Defense Force ("IDF") following the October 7th Hamas attack on Israel. (*Id.* ¶¶ 31-32). The Plaintiff identifies as Jewish and maintains dual American and Israeli citizenship. (*Id.* ¶ 12). He is a surgical oncologist at Emory Winship Cancer Institute, a professor in the Department of Surgery, Division of Surgical Oncology at the School of Medicine, and serves as the School of Medicine Surgical Clerkship Director. (*Id.*).

In April 2024, Mohammad participated in an interview for a news organization called Democracy Now!. (*Id.* ¶ 36). In the interview, Mohammad was asked about the email she sent and was asked to explain the importance of the issue to her. (*Id.*). As part of her response, Mohammad referenced Winer by stating that

> one of the professors of medicine we have at Emory recently went to serve as a volunteer medic in the Israeli Offense Force [sic] and recently came back. This man participated in aiding and abetting a genocide, in aiding and abetting the destruction of the healthcare system in Gaza and the murder of over 400 healthcare workers, and is now back at Emory so-called teaching medical students and residents how to take care of patients.

(*Id.*). Mohammad was ultimately suspended from the School of Medicine for one year based on her comments in the Democracy Now! interview. (*Id.* ¶ 49). In November 2024, Mohammad participated in a podcast hosted by the International Union of Scientists in which she made similar statements about

the Plaintiff. (*Id.* ¶¶ 50-51). In January 2025, she made more statements about the Plaintiff's IDF service in the online publication Mondoweiss. (*Id.* ¶¶ 55-56). In the Mondoweiss piece, Mohammad alluded that the Plaintiff "believe[d] in the legitimacy of apartheid, and that some human lives are not as important as others." (*Id.* ¶ 56). At the end of the piece, she provided a link to a social media post by Defendants National Students for Justice in Palestine ("NSJP") and Doctors Against Genocide ("DAG"), which ultimately led to a campaign on the website of Action Network that "contained additional false statements about Plaintiff and identified him by name." (*Id.* ¶ 60). NSJP and DAG also published posts on Instagram regarding the Action Network campaign, which directly quoted Mohammad's Democracy Now! interview. (*Id.* ¶¶ 78-87). These Defendants made a second Instagram post a few weeks later. (*Id.* ¶¶ 91-95). The Plaintiff alleges that Defendant WESPAC is NSJP's fiscal sponsor and, therefore, "knowingly funded and facilitated NSJP's coordinated efforts to vilify Plaintiff and pressure Emory to discipline [him]." (*Id.* ¶ 147).

In February 2025, Defendant CAIR Georgia held a press conference on the subject of Mohammad's suspension, during which she made the following statement:

> [Emory] disciplined me for exposing Emory's complicity in the destruction of Gaza in an interview where I mentioned an unnamed physician who served in the military, actively engaged in the genocidal campaign against the Palestinian people, my people . . . I cannot learn from a physician who might have fired one of the 355 bullets that landed in 6 year old Hind Rajab's body.

> Or who might have helped make the decision to bomb one of the hospitals in Gaza. Or who might have celebrated the murder of our communities on the rubble still wet with Palestinian blood. A doctor who cannot see Palestinians as human beings will return to Atlanta to offer the same disposability to black and brown patients at home.

(*Id.* ¶¶ 62-63). CAIR Georgia, along with CAIR Foundation Inc. ("CAIR Foundation"), also issued a press release with a link to Mohammad's Democracy Now! interview and rebroadcasted this speech on its Instagram account on February 11, 2025. (*Id.* ¶¶ 119, 124). In this post, (the "IG Post"), CAIR Georgia also replied to comments by providing a link to a previously circulated email template and phone script that identified the Plaintiff by name and called for Emory to investigate him and/or terminate his employment. (*Id.* ¶ 126). Mohammad's statements were later broadcasted and published by television stations and news outlets. (*Id.* ¶¶ 67-76). Defendant Emory SJP shared NJSP and DAG's posts on its Instagram account, and also made similar posts sharing the Democracy Now! interview and identifying the Plaintiff. (*Id.* ¶¶ 130-137). Defendant Rupa Marya works with Mohammad as a cofounder of DAG and, the Plaintiff alleges, she has "frequently identified Plaintiff by name and used her social media platforms to spread harmful and reputationally damaging statements about him," including blaming him for the termination of a Palestinian professor at Emory School of Medicine and accusing him of participating in a genocide. (*Id.* ¶¶ 98-118).

The Plaintiff brought this action in April 2025 asserting four counts against all of the Defendants: defamation per se, in violation of O.C.G.A. § 51-5-4 (Count I); false light invasion of privacy, under state common law (Count II); civil conspiracy, under state common law (Count III); and conspiracy to interfere with civil rights, in violation of 42 U.S.C. § 1985(3) (Count IV). (*Id.* ¶¶ 138-200). The Plaintiff filed an amended complaint as of right before any of the Defendants filed a responsive pleading. [Doc. 22]. The Plaintiff then moved for leave to file a Second Amended Complaint, and the Court granted that motion. [Doc. 129]. Shortly thereafter, several Defendants moved to dismiss the Second Amended Complaint, including CAIR Georgia. Its Motion to Dismiss is presently before the Court. [Doc. 140].

## II. Legal Standards

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); Fed. R. Civ. P. 12(b)(6). A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. *See Quality Foods de Centro Am., S.A.*

*v. Latin Am. Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994-95 (11th Cir. 1983); *see also Sanjuan v. American Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff "receives the benefit of imagination"). Generally, notice pleading is all that is required for a valid complaint. *See Lombard's, Inc. v. Prince Mfg., Inc.*, 753 F.2d 974, 975 (11th Cir. 1985). Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555).

## III. Discussion

### A. Defamation

CAIR Georgia argues that the Plaintiff fails to state a defamation per se claim for several reasons. (CG's Mot. to Dismiss, at 8-9). First, it argues that the statements at issue were political opinions rather than facts, which are not actionable because they cannot be proven false. (*Id.* at 8-10). CAIR Georgia identifies six such statements from the Second Amended Complaint and contends that they cannot be proven false because whether Israel is committing genocide and whether "Black and Brown" Emory students and patients felt unsafe in his presence are not provable facts. (*Id.* at 11-15). It argues that the remaining statements at issue are not defamatory. (*Id.* at 15).

The Plaintiff responds that at the motion to dismiss stage, he has no

burden to "prove" anything because his factual allegations must be accepted as true. (Pl.'s Resp. in Opp'n to CG's Mot. to Dismiss, at 8-9). He also asserts that the statements at issue imply provably false facts about the Plaintiff, including his role in the IDF and his professional fitness, that are actionable as defamation. (*Id.* at 8-14). The Plaintiff contends that although the First Amendment protects political advocacy, "[i]t does not immunize false accusations of criminal conduct directed at an identifiable individual for the purpose of destroying his career." (*Id.* at 14).

To state a claim for defamation, a plaintiff must allege: "(1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication to a third party; (3) fault by the defendant amounting at least to negligence; and (4) special harm or the actionability of the statement irrespective of special harm." *Smith v. DiFranceso*, 341 Ga. App. 786, 787 (2017) (citation modified). Under O.C.G.A. § 51-5-4, "[m[aking charges against another in reference to his trade, office, or profession, calculated to injure him therein" constitutes defamation per se. "The kind of aspersion that constitutes defamation per se under O.C.G.A § 51-5-4(a)(3) must be one that is especially injurious to the plaintiff's reputation because of the particular demands or qualifications of plaintiff's vocation." *North Atlanta Golf Operations, LLC v. Ward*, 363 Ga. App. 259, 261 (2022). But a defamation action can only lie for a statement of fact, since statements "that reflect[ ] an opinion or subjective

assessment, as to which reasonable minds could differ, cannot be proved false." *Id.* (citation modified). Still, there is no opinion exception to defamation, and "[a]n opinion can constitute actionable defamation if the opinion can reasonably be interpreted, according to the context of the entire writing in which the opinion appears, to state or imply defamatory facts about the plaintiff that are capable of being proved false." *Id.* at 262 (citation modified) (citing *Cottrell v. Smith*, 299 Ga. 517, 522 (2016)).

As an initial matter, the Plaintiff is correct that he has no burden to "prove" anything at this stage because the Plaintiff's obligation is only to allege facts that state a plausible claim for relief. *Iqbal*, 556 U.S. at 678. But CAIR Georgia is correct that the Plaintiff must allege fault and falsity to state a claim for defamation per se, and this is true regardless of whether the speech relates to matters of public concern. *See Smith*, 341 Ga. App. at 787 (noting that the statement at issue must be "false and defamatory" and that there must be "fault by the defendant amounting at least to negligence"). The Court turns to the statements the Plaintiff alleges defamed him to determine whether they constitute non-actionable opinion or actionable statements of fact.

As the Court reads the Second Amended Complaint, the Plaintiff has identified the following statements in his defamation per se count as attributable to CAIR Georgia:

(1) Mohammad's statements during the Democracy Now! interview, including her statements that the Plaintiff "aid[ed] and abet[ed] a

genocide, . . . aid[ed] and abet[ed] the destruction of the healthcare system in Gaza and the murder of over 400 healthcare workers," which CAIR Georgia republished in the IG Post on its Instagram account, and on which CAIR Georgia added links to a defamatory phone script and email in the comments (2nd Am. Compl. ¶¶ 144a., 155);

(2) Mohammad's speech on February 11, 2025, during a press conference hosted by CAIR Georgia, in which she stated "[h]aving a physician faculty member who participated in a military convicted of committing genocide against Palestinians makes me feel unsafe. It makes black and brown medical students feel unsafe. It makes black and brown and indigenous patients feel unsafe . . . or who might have helped make the decision to bomb one of the hospitals in Gaza . . . a doctor who cannot see Palestinians as human beings will return to Atlanta to offer the same disposability to black and brown patients at home" (*Id.* ¶¶ 144d., 154b.);

(3) CAIR Georgia's issuance of a press release on its Facebook page on February 11, 2025 that included links to a phone script and email template that named the Plaintiff, implied he support genocide, war crimes, and apartheid, in addition to with Mohammad's Democracy Now! interview (*Id.* ¶¶ 145c., d., 154a.);

(4) CAIR Georgia's executive director's statement, during the February 11, 2025 press conference, that Plaintiff's employment was indicative of Emory's support for "Israel's perpetration of war crimes" (*Id.* ¶ 154c.);

(5) CAIR Georgia's March 24, 2025 post on its Instagram that, among other things, stated that Mohammad was challenging Emory's "medical professionals' complicity in the genocide in Gaza" (*Id.* ¶ 154d.)

(6) CAIR Georgia's executive director's March 24, 2025 statement that "[Mohammad] joined the field trying to understand inequities and the role of medicine in violence. To have to work side by side with an IDF soldier is exacerbating, and makes it uniquely painful for her." (*Id.* ¶ 154e.).

The Court begins with statement (1), which includes Mohammad's statements that the Plaintiff "aid[ed and abett[ed] a genocide" and "aid[ed] and abett[ed] the destruction of the healthcare system in Gaza." (2nd Am. Compl. ¶¶ 155). Regardless of whether these statements express protected political opinion in the first place, construing the facts in the Plaintiff's favor, these statements could reasonably "imply defamatory facts about the plaintiff that are capable of being proved false." *North Atlanta Golf Operations, LLC*, 363 Ga. App. at 262. This is because Mohammad's statements—that CAIR Georgia co-posted with supporting commentary—imply that the Plaintiff actively participated in combat operations during his service in the IDF, but the Plaintiff pled that he served

> solely in his capacity as a physician, providing medical care to wounded soldiers. His involvement in combat was limited to situations in which his unit came under direct attack . . . Mohammad had no factual basis to claim that Plaintiff participated in or approved the bombing of hospitals in Gaza [or] celebrated the killing of Palestinians.

(2nd Am. Compl. ¶¶ 66). At this stage, this allegation is enough to satisfy the "false and defamatory statement" element of his defamation per se claim. *Smith*, 341 Ga. App. at 787.

The same is true of parts of statement (2). There are parts of the statement that express Mohammad's opinion, such as the part that the Plaintiff's military service makes her, and "black and brown medical students," feel unsafe. This is a subjective assessment that cannot be proved false. *See*

*North Atlanta Golf Operations, LLC*, 363 Ga. App. at 261. But the part of the statement that suggests the Plaintiff might have been involved in combat decisions and accuses him of not "see[ing] Palestinians as human beings" and offering "the same disposability to black and brown patients" at Emory certainly implies that the Plaintiff engaged in combat operations while serving in the IDF and that patients of certain races are not safe in his care. The Plaintiff has alleged counter-facts that if, accepted as true, prove these portions of the statement false, so the Plaintiff states a claim as to these portions of statement (2).

Statements (3), (4), and (5) can fairly be grouped together for analytical purposes because each statement, when read in the entire context, implies that the Plaintiff supports and participated in a genocide, committed war crimes, and believes in apartheid, which imply facts that can be proven false. (*See* 2nd Am. Compl. ¶¶ 145, 154). But again, because the Court accepts as true the Plaintiff's allegations that his service in the IDF was limited to practicing medicine and defensive response only, (*id.* ¶ 66), and that he does not support apartheid, (*id.* ¶¶ 190, 192 (framing the apartheid accusation as false)), this portion of the Plaintiff's defamation per se claim may proceed at this stage. In other words, these allegations are enough to satisfy the "false and defamatory statement" element of the Plaintiff's defamation per se claim. *Smith*, 341 Ga. App. at 787.

The Court agrees with CAIR Georgia, however, that statement (6) does not contain any actionable defamatory statements. The only factual portion of the statement is that the Plaintiff served as an IDF soldier, which he admits, and that he now works "side by side" with Mohammad, referencing the fact that both parties either study or work at Emory. Whether Mohammad finds working alongside the Plaintiff" "uniquely painful" is a matter of opinion not capable of being proved false. Thus, the Court will dismiss the portion of the Plaintiff's defamation per se claim predicated on this statement, as well as the opinion portions of statement (2). But, for the foregoing reasons, CAIR Georgia's Motion to Dismiss will be denied as to the rest of the defamation per se claim.

**B. False Light**

Next, CAIR Georgia reiterates its arguments against the Plaintiff's defamation claim and asserts that, because the challenged statements are opinion, a false light claim cannot lie. (CG's Mot. to Dismiss, 15-16). The Plaintiff responds by reiterating that the challenged statements contain provably false facts. (Pl.'s Resp. in Opp'n to CG's Mot. to Dismiss, at 14-15).

A false light claim is a subspecies of the tort of invasion of privacy where the tortfeasor causes "publicity which places the plaintiff in a false light in the public eye." *Bazemore v. U.S. Bank Nat'l Ass'n*, 363 Ga. App. 723, 730-31 (2022). To establish a claim of false light, a plaintiff must establish the

existence of false publicity that depicts the plaintiff as someone he is not, and that the false light he was placed in would be highly offensive to a reasonable person. *Id.* at 731.

For most of the same reasons that the Court found the Plaintiff has stated a defamation per se claim as to statements (1) through (5), he has also stated a false light claim against CAIR Georgia predicated on these statements. CAIR Georgia does not argue that it did not create or cause publicity about the Plaintiff or that the publicity would not be "highly offensive to a reasonable person." *Bazemore*, 363 Ga. App. at 730-31. So, this issue turns on whether the publicity was false and depicted the Plaintiff as someone he is not. *Id.* at 731. As previously explained, the false statements the Plaintiff alleges CAIR Georgia made and republished are with regard to his active participation in combat operations, his beliefs about apartheid, and the safety of patients in his care. (2nd Am. Compl. ¶¶ 145, 154-55). Construing the Plaintiff's allegations in his favor, these statements arguably placed the Plaintiff in a false light because he served in his capacity as a physician, engaging in defensive combat only when directly attacked, he does not believe in apartheid, and he is "committed" to caring for his patients. (*Id.* ¶¶ 12, 37, 66, 190, 192). Thus, as alleged, this publicity depicted the Plaintiff as someone he was not. *Bazemore*, 363 Ga. App. at 731. For these reasons as well as those explained in the defamation per se section *supra*, the Plaintiff has stated a

claim for false light invasion of privacy as to CAIR Georgia based on statements (1) and (3) through (5), along with the the fact-based portions of statement (2).

### C. Civil Conspiracy

Building on its arguments against the Plaintiff's defamation and false light claims, CAIR Georgia contends that the only statements the Plaintiff relies on to support his civil conspiracy claim are the statements he alleges defamed him and placed him in a false light. (CG's Mot. to Dismiss, at 16). But, it argues, these statements are all statements that CAIR Georgia either made itself or republished, and there are no allegations that it agreed, took part in, or had any knowledge of other torts allegedly committed by other defendants. (*Id.*). CAIR Georgia further argues that because the underlying tort claims fail, the Plaintiff's claim that it conspired to commit those torts must also fail. (*Id.*). The Plaintiff responds that his false light and defamation claims are properly stated, so his civil conspiracy claim is too, and that the Second Amended Complaint clearly alleges conspiratorial agreements between CAIR Georgia and Defendants Mohammad and CAIR Foundation. (Pl.'s Resp. in Opp'n to CG's Mot. to Dismiss, at 15-17).

To establish a civil conspiracy claim, a plaintiff must demonstrate that "two or more persons, acting in concert, engaged in conduct that constitutes a tort." *Mustaqeem-Graydon v. SunTrust Bank*, 258 Ga. App. 200, 207 (2002).

"Absent the underlying tort, there can be no liability for civil conspiracy." *Id.* (citation omitted). The Plaintiff's civil conspiracy claim hinges on his false light and defamation claims. (2nd Am. Compl. ¶¶ 172-73, 179, 181). As the Court has already found, the Plaintiff has plausibly alleged those claims under Georgia law. The Court agrees with the Plaintiff that, based on the allegations in the Second Amended Complaint, the Plaintiff has plausibly alleged that CAIR Georgia took concerted actions by holding a press conference and allowing Mohammad to speak at it, reposting the WSB-TV segment on its Instagram account with CAIR Foundation, and providing links to the phone and email script on Instagram. (*Id.* ¶ 178). Accordingly, the Plaintiff has stated a claim for civil conspiracy under Georgia law.

**D. 42 U.S.C. § 1985(3)**

Finally, CAIR Georgia argues that the Plaintiff has failed to state a § 1985(3) claim for several reasons. First, § 1981 and Title VII cannot serve as the basis for a § 1985(3) claim under established precedent. (CG's Mot. to Dismiss, at 17-18). Second, CAIR Georgia asserts that the Plaintiff has failed to establish a violation of Title VI as a basis for his § 1985(3) claim because he has not pled that Emory receives federal funding for the primary purpose of employment. (*Id.* at 19). Third, CAIR Georgia argues that it cannot be liable solely because it receives federal funding; instead, the Plaintiff would have had to plead that it denied him some benefits, but the Plaintiff never sought any

benefits from it. (*Id.* at 19-20). Separately, CAIR Georgia contends that the Plaintiff has failed to plead a class-based, invidiously discriminatory animus behind its alleged actions. (*Id.* at 20-23).

The Plaintiff responds that all three statutes are valid predicates for a § 1985(3) claim. (Pl.'s Resp. in Opp'n to CG's Mot. to Dismiss, at 18-22). With regard to the Title VI predicate, the Plaintiff contends that he does not assert a standalone Title VI claim against Emory but alleges that the Defendants conspired together to deprive him of rights protected by Title VI by pressuring Emory, a federally funded institution, to terminate him based on his Jewish identity. (*Id.* at 18-19). The Plaintiff also argues that he properly alleged a class-based, invidiously discriminatory animus because, contrary to CAIR Georgia's reframing, opposition to his Zionist beliefs and service in the IDF is synonymous with opposition to his Jewish identity because these are "associated markers of that identity." (*Id.* at 22-24).

Section 1985(3) "created a cause of action against private individuals who, among other things, undertake conspiracies for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." *Dean v. Warren*, 12 F.4th 1248, 1257 (11th Cir. 2021) (citation modified). "That § 1985(3) reaches private action does not, however, mean that it was intended to apply to all tortious, conspiratorial interferences with the rights of others."

*Id.* (citation modified).

In *Jimenez*, the Eleventh Circuit foreclosed reliance on § 1981 as the basis for a § 1985(3) claim. *Id.* ("[W]e hold conspiracies to violate rights protected under § 1981 are likewise insufficient to form the basis of a § 1985(3) claim."). So, the Court will dismiss this portion of the Plaintiff's § 1985(3) claim against CAIR Georgia. Similarly, the Supreme Court has held that the "deprivation of a right created by Title VII cannot be the basis for a cause of action under § 1985(3)." *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 378 (1979); *see also Jimenez*, 596 F.3d at 1312 (recognizing that "the Supreme Court has declared the freedom of speech and the rights protected under Title VII insufficient to form the basis of § 1985(3) actions against private conspirators." (citation modified)). The Court will thus dismiss the portion of the Plaintiff's § 1985(3) claim that is premised on 42 U.S.C. § 2000e-2(a)(1) as well.

This leaves only the portion of the Plaintiff's § 1985(3) claim that relies on 42 U.S.C. § 2000d, also known as Title VI. The Eleventh Circuit does not appear to have addressed whether a violation of Title VI is enforceable against a private conspirator under § 1985(3), but other courts have. In *Boulahanis v. Board of Regents*, the Seventh Circuit held that it is not. *Boulahanis v. Bd. of Regents*, 198 F.3d 633, 641 (7th Cir. 1999), overruled on other grounds by *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246 (2006). In so holding, the

Seventh Circuit relied on *Novotny* and said that "pleading under [§ 1985(3)] would also allow plaintiffs to circumvent the comprehensive structure Congress created to address the problem of racial discrimination at federally-funded institutions." *Id.* The Court does not necessarily find this one out-of-circuit decision persuasive, so it will address the merits of this portion of the Plaintiff's § 1985(3) claim.

To state a claim under § 1985(3), a plaintiff must establish that the defendant has

> (1) conspired or gone in disguise on the highway or on the premises of another, (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, (3) taken or caused an action to be taken in furtherance of the conspiracy's object, and (4) injured an individual's person or property or deprived her of exercising any right or privilege of a United States citizen.

*Dean*, 12 F.4th at 1255 n.8 (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971)). Title VI provides that no one shall "be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance" on the ground of his "race, color, or national origin." 42 U.S.C. § 2000d. The Plaintiff does not allege that CAIR Georgia receives federal funding, which would make § 2000d enforceable against it. Instead, he alleges that the defendant who do not receive such funding "conspired with those who did" to deprive him of his rights under Title VI. (2nd Am. Compl. ¶ 194). The only defendant the Plaintiff alleges is

federally funded is CAIR Foundation. (*Id.* ¶ 194). While the Plaintiff states in his response brief that his claim is that "Defendants conspired to pressure Emory—a federally funded institution—to terminate him based on his Jewish identity . . . a result that would violate Title VI," nowhere in the Second Amended Complaint does the Plaintiff allege Emory's federal funding as the linchpin for his Title VI-based § 1985(3) claim. (*See* Pl.'s Resp. in Opp'n to CG's Mot. to Dismiss, at 18-19). So, the only arguably proper factual basis for this portion of the Plaintiff's § 1985(3) claim is his allegation that CAIR Georgia conspired with CAIR Foundation—which he alleges is federally funded—"to interfere with [his] rights by publicly demanding that Emory investigate and/or terminate his employment" via the IG Post and the allegedly defamatory and false accusations therein. (2nd Am. Compl. ¶¶ 124-26,190, 194, 195b.). He also asserts that this discrimination was carried out "in the administration of CAIR Foundation's program or activities receiving Federal financial assistance." (*Id.* ¶ 196b.).

Construing the factual allegations in the Plaintiff's favor, the Plaintiff has stated a § 1985(3) claim predicated on Title VI at this stage. Although CAIR Georgia argues that there is no nexus between CAIR Foundation's receipt of federal funding and its alleged conspiratorial actions, no such nexus is required. *See Alexander v. Sandoval*, 532 U,S, 275, 303 (noting § 2000d's "broadly worded commitment"). To state a claim under § 2000d, a plaintiff

must only allege that the defendant receives federal funds, that it discriminated against the plaintiff on the basis of race, color, or national origin, and that it did so in the course of a federally funded program. *Burton v. City of Belle Glade*, 178 F.3d 1775, at 1202 (11th Cir. 1999). The Plaintiff has made those allegations here.

CAIR Georgia also argues that the Plaintiff has failed to allege racial or other class-based animus behind the conspirators' actions. (CG's Mot. to Dismiss, at 20). The second element of a § 1985(3) claim, the deprivation element, "requires a showing of some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Childree v. UAP/GA CHEM, Inc.*, 92 F.3d 1140, 1147 (11th Cir. 1996) (citation modified). "Two types of classes come within § 1985(3)'s protection: (1) classes having common characteristics of an inherent nature—i.e., those kinds of classes offered special protection under the equal protection clause, and (2) classes that Congress was trying to protect when it enacted the Ku Klux Klan Act." *Id.* CAIR Georgia asserts that the Plaintiff alleges its actions were not motivated by his Jewish identify, but by its opposition to Zionism and his service in the IDF. (CG's Mot. to Dismiss, at 21-22). But that is not exactly what the Plaintiff alleges. He says that CAIR Georgia was motivated by "his Jewish identity and/or Zionist beliefs," going on to say that his military service resulted from a "sense of duty to serve the Jewish homeland, which is integral to his racial

identity as a Jew" and that his association with Zionism is also "an integral of Jewish identity for a very significant number of Jews." (2nd Am. Compl. ¶¶ 189, 191-92). In essence, the Plaintiff alleges that his military service and association with Zionism are "markers" of his Jewish identity, and that his Jewish heritage is a protected class. (*See* Pl.'s Resp. in Opp'n to CG's Mot. to Dismiss, at 23). The traditionally recognized classes for equal protection purposes are "race, religion, sex, or national origin." *Alford v. Consol. Gov't of Columbus, Ga.*, 438 F. App'x 837, 839 (11th Cir. 2011). While CAIR Georgia contend that the Plaintiff actually pleads that the Defendants were motivated by a desire to express their political views, taking that view would require the Court to construe the Second Amended Complaint's allegations narrowly and in their favor, a task which the Court may not do. Taking the facts as the Plaintiff has alleged them, CAIR Georgia conspired with CAIR Foundation to create the IG Post in hopes of pressuring Emory to discipline or terminate him because of their views of the Plaintiff's Jewish identity, as expressed through his Zionist beliefs and IDF military service. (2nd Am. Compl. ¶¶ 189, 191-92); *Quality Foods de Centro Am., S.A.,* 711 F.2d at 994-95. Critical to this interpretation is the Plaintiff's allegations that his IDF service was tied to the duty he felt based on his nationality and the significance of Zionism in Jewish culture. These allegations suffice at this stage to demonstrate that a discriminatory animus based on a protected class—the Plaintiff's national

origin— motivated CAIR Georgia's actions, not mere political differences. *See Twombly*, 550 U.S. at 556 (nothing that a complaint may survive a motion to dismiss even if the possibility of recovery is extremely remote and unlikely). Whether this claim could withstand summary judgment is a different issue, and not one that is before the Court today. For these reasons, the Court will grant CAIR Georgia's Motion to Dismiss as to the portions of the Plaintiff's § 1985(3) claim that are premised on § 1981 and Title VII, but will deny it as to the portion premised on Title VI.

## IV. Conclusion

For the foregoing reasons, the Defendant CAIR-NGA, Inc.'s Motion to Dismiss [Doc. 140] is GRANTED in part and DENIED in part.

SO ORDERED, this 26th day of August, 2026.

THOMAS W. THRASH, JR.
United States District Judge