IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JOSHUA WINER,

Plaintiff,

v.

UMAYMAH MOHAMMAD, et al.,

Defendants.

CIVIL ACTION FILE
NO. 1:25-CV-2329-TWT

**OPINION AND ORDER**

This is a defamation case. It is before the Court on Defendant CAIR-Foundation, Inc.'s ("CAIR Foundation" or "CF") Motion to Dismiss [Doc. 136]. For the following reasons, Defendant CAIR Foundation's Motion to Dismiss [Doc. 136] is GRANTED in part and DENIED in part.

## I. Background[1]

This action arises out of alleged defamatory statements that Defendant Umaymah Mohammad, a student at the Emory University School of Medicine, made about Plaintiff Joshua Winer, a physician and professor at Emory. (2nd Am. Compl. ¶¶ 1-2). Mohammad, who is Palestinian, sent an email to the entire School Of Medicine student and faculty body on January 17, 2024, in which the Plaintiff alleges she "praised terrorism against Israel, expressed her

[1] The Court accepts the facts as alleged in the Second Amended Complaint as true for purposes of the present Motion to Dismiss. *Wildling v. DNC Servs. Corp.*, 941 F.3d 1116, 1122 (11th Cir. 2019).

hatred towards Israel and the United States, and stated that Israel, the United States, and Emory are perpetrating a genocide against Palestinians in Gaza." (*Id.* ¶¶ 26-27). Nearly two months later, in March 2024, the Plaintiff published an op-ed piece in an Israeli news publication sharing his decision to travel to Israel to volunteer as a physician in the Israeli Defense Force ("IDF") following the October 7th Hamas attack on Israel. (*Id.* ¶¶ 31-32). The Plaintiff identifies as Jewish and maintains dual American and Israeli citizenship. (*Id.* ¶ 12). He is a surgical oncologist at Emory Winship Cancer Institute, a professor in the Department of Surgery, Division of Surgical Oncology at the School Of Medicine, and serves as the Surgical Clerkship Director. (*Id.*).

In April 2024, Mohammad participated in an interview for a news organization called Democracy Now!. (*Id.* ¶ 36). In the interview, Mohammad was asked about the email she sent and was asked to explain the importance of the issue to her. (*Id.*). As part of her response, Mohammad referenced Winer by stating that

> one of the professors of medicine we have at Emory recently went to serve as a volunteer medic in the Israeli Offense Force [sic] and recently came back. This man participated in aiding and abetting a genocide, in aiding and abetting the destruction of the healthcare system in Gaza and the murder of over 400 healthcare workers, and is now back at Emory so-called teaching medical students and residents how to take care of patients.

(*Id.*). Mohammad was ultimately suspended from the School Of Medicine for one year based on her comments in the Democracy Now! interview. (*Id.* ¶ 49).

In November 2024, Mohammad participated in a podcast hosted by the International Union of Scientists in which she made similar statements about the Plaintiff. (*Id.* ¶¶ 50-51). In January 2025, she made more statements about the Plaintiff's IDF service in the online publication Mondoweiss. (*Id.* ¶¶ 55-56). In the Mondoweiss piece, Mohammad alluded that the Plaintiff "believe[d] in the legitimacy of apartheid, and that some human lives are not as important as others." (*Id.* ¶ 56). At the end of the piece, she provided a link to a social media post by Defendants National Students for Justice in Palestine ("NSJP") and Doctors Against Genocide ("DAG"), which ultimately led to a campaign on the website of Action Network that "contained additional false statements about Plaintiff and identified him by name." (*Id.* ¶ 60). NSJP and DAG also published posts on Instagram regarding the Action Network campaign, which directly quoted Mohammad's Democracy Now! interview. (*Id.* ¶¶ 78-87). These Defendants made a second Instagram post a few weeks later. (*Id.* ¶¶ 91-95). The Plaintiff alleges that Defendant WESPAC is NSJP's fiscal sponsor and, therefore, "knowingly funded and facilitated NSJP's coordinated efforts to vilify Plaintiff and pressure Emory to discipline [him]." (*Id.* ¶ 147).

In February 2025, Defendant CAIR Georgia held a press conference on the subject of Mohammad's suspension, during which she made the following statement:

> [Emory] disciplined me for exposing Emory's complicity in the destruction of Gaza in an interview where I mentioned an

> unnamed physician who served in the military, actively engaged in the genocidal campaign against the Palestinian people, my people . . . I cannot learn from a physician who might have fired one of the 355 bullets that landed in 6 year old Hind Rajab's body. Or who might have helped make the decision to bomb one of the hospitals in Gaza. Or who might have celebrated the murder of our communities on the rubble still wet with Palestinian blood. A doctor who cannot see Palestinians as human beings will return to Atlanta to offer the same disposability to black and brown patients at home.

(*Id.* ¶¶ 62-63). CAIR Georgia, along with CAIR Foundation Inc., also issued a press release with a link to Mohammad's Democracy Now! interview and rebroadcasted this speech on its Instagram account on February 11, 2025. (*Id.* ¶¶ 119, 124). Mohammad's statements were later broadcasted and published by television stations and news outlets. (*Id.* ¶¶ 67-76). Defendant Emory SJP shared NJSP and DAG's posts on its Instagram account, and also made similar posts sharing the Democracy Now! interview and identifying the Plaintiff. (*Id.* ¶¶ 130-137). Defendant Rupa Marya works with Mohammad as a cofounder of DAG and, the Plaintiff alleges, she has "frequently identified Plaintiff by name and used her social media platforms to spread harmful and reputationally damaging statements about him," including blaming him for the termination of a Palestinian professor at Emory School Of Medicine and accusing him of participating in a genocide. (*Id.* ¶¶ 98-118).

The Plaintiff brought this action in April 2025 asserting four counts against all of the Defendants: defamation per se, in violation of O.C.G.A. § 51-5-4 (Count I); false light invasion of privacy, under state common law

(Count II); civil conspiracy, under state common law (Count III); and conspiracy to interfere with civil rights, in violation of 42 U.S.C. § 1985(3) (Count IV). (*Id.* ¶¶ 138-200). The Plaintiff filed an amended complaint as of right before any of the Defendants filed a responsive pleading. [Doc. 22]. The Plaintiff then moved for leave to file a Second Amended Complaint, and the Court granted that motion. [Doc. 129]. Shortly thereafter, several Defendants moved to dismiss the Second Amended Complaint, including CAIR Foundation. Its Motion to Dismiss is presently before the Court. [Doc. 136].

## II. Legal Standards

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); Fed. R. Civ. P. 12(b)(6). A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. *See Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994-95 (11th Cir. 1983); *see also Sanjuan v. American Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff

"receives the benefit of imagination"). Generally, notice pleading is all that is required for a valid complaint. *See Lombard's, Inc. v. Prince Mfg., Inc.*, 753 F.2d 974, 975 (11th Cir. 1985). Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555).

## III. Discussion

CAIR Foundation argues that, as the Plaintiff pleads it, its alleged liability is limited to the February 11, 2025 Instagram post ("the IG Post"). (CF's Motion to Dismiss, at 2). Focusing on that post, CAIR Foundation asserts first that the Plaintiff's defamation, false light, and civil conspiracy claims are barred by the Communications Decency Act ("CDA"). (*Id.* at 5-10). It also contends that the Plaintiff's defamation per se, false light, and civil conspiracy claims fail as a matter of law. (*Id.* at 10-18). CAIR Foundation further argues that the Second Amended Complaint violates Georgia's Anti-SLAPP statute, permitting recovery for attorney's fees. (*Id.* at 18-21). Finally, it asserts that the Plaintiff's § 1985(3) claim fails as a matter of law. (*Id.* at 21-24). The Court addresses each contention in turn.

### 1. Communications Decency Act

CAIR Foundation argues that the IG Post merely republished a previously aired WSBTV segment covering CAIR Georgia's press conference

and, since it was not the original creator of the news story, it is immune from liability under the CDA. (CF's Mot. to Dismiss, at 5-7). The Plaintiff contends that CAIR Foundation is liable because its collaboration with CAIR Georgia on the IG Post qualifies it as an "information content provider" under the CDA. (Pl.'s Resp. in Opp'n to CF's Mot. to Dismiss, at 6-8). He also argues that CDA immunity is an affirmative defense, not an element of his claims, so dismissal is inappropriate on this basis where it is not "apparent on the face of the pleading" that the defense applies. (*Id.* at 8-9).

The CDA provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). An information content provider is "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." 47 U.S.C. § 230(f)(3). "This definition covers even those who are responsible for the development of content only in part. . . . There may be several information content providers of a single piece of content, each responsible for its creation or development in part." *McCall v. Zotos*, 2023 WL 3946827, at *2 (11th Cir. June 12, 2023) (citations modified)). When it applies, the CDA grants immunity to interactive computer service providers and users from claims seeking to hold them accountable as speakers or publishers of information

provided by "another information content provider." *See, e.g.*, *id.* at *1-2.

In the Second Amended Complaint, the Plaintiff alleges that CAIR Georgia held a press conference in which it called on Emory to reinstate Mohammad and issued a press release, which included a hyperlink to the Democracy Now! interview. (2nd Am. Compl. ¶ 119). He alleges that during the press conference, Mohammad delivered a "pre-written CAIR speech" containing numerous false statements, and that both CAIR Georgia and CAIR Foundation collaborated on a post that published WSB-TV footage of the Democracy Now! interview. (*Id.* ¶¶ 124-25). The Plaintiff alleges that the post was published to each group's respective Instagram account and that both CAIR Foundation and CAIR Georgia adopted the messages communicated in the post as their own views. (*Id.* ¶ 124). Critical to understanding whether CAIR Foundation should be considered an information content provider under the CDA, or simply a user of an interactive computer service—in this case, that service is Instagram—is understanding how collaborative posts work on the platform.

> Instagram Collabs allow you to co-author posts with other accounts, sharing the post with both sets of followers and listing both accounts as authors. To create one, tap Tag people and then Invite collaborator before publishing your post; the invited user must then accept the invite via their messages to be added.

*Help Center: Create Collaborative Posts on Instagram*, Instagram, https://help.instagram.com/5861247717337470/ (last visited Aug. 17, 2026).[2] With this context, it is apparent from the face of the Second Amended Complaint that CAIR Foundation served as a co-author of the IG Post and therefore cannot be considered a benign user under the CDA. *See* 47 U.S.C. § 230(c)(1). CAIR Foundation argues that it is not an information content provider under the Act because it WSB-TV "provided" the segment and the IG Post "merely shared a previously-broadcast news story." (CF's Mot. to Dismiss, at 5). But this is not an accurate application of the CDA to the facts of this case.

It is true that CDA immunity generally applies to reposting content, as many courts have concluded that private individuals reposting are "users." *See, e.g.*, *Life Mastery Network LLC v. Haygarth*, 2026 WL 1622887, at *15-16 (D. Haw. May 22, 2026) (collecting cases). But the CDA does not immunize someone who posts original content, so "it makes sense that adding comments to something that is re-posted would not trigger CDA immunity." *Id.* at *16. As

[2] The Court takes judicial notice of the official Instagram website to define "Instagram Collaboration" because this determination is critical to resolving CAIR Foundation's CDA argument. *See Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999) (noting that Fed. R. Evid. P. 201(b) permits judicial notice of facts "that are not subject to reasonable dispute because they are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned"). While the Plaintiff relies on a YouTube video from an unknown source for this proposition, the Court relies on the official Instagram website in compliance with Fed. R. Evid. P. 201(b).

the Plaintiff pleads it, CAIR Foundation did not simply reshare the WSB-TV segment, nor was it just a tagged user in CAIR Georgia's post. Instead, it co-authored and published a post to its own Instagram page. (2nd Am. Compl. ¶¶ 124). Even assuming, as CAIR Foundation alleges, that it did not contribute to authoring the post, it at minimum accepted the collaboration invitation from CAIR Georgia knowing it would be tagged as a collaborator with the post published on its own Instagram profile. (*Id.* ¶ 126 (showing screenshot of the post with Instagram handle @cair_national as an author). Moreover, the IG Post did not "merely share" the WSB-TV segment, but included additional commentary in the caption, with comments from CAIR Georgia on the post sharing links. (*See id.*).

Like the Eleventh Circuit held in *McCall*, a jury could find that CAIR Foundation was responsible in part for the creation or development of the IG Post, including the added commentary. *McCall*, 2023 WL 3946827, at *2. ("In other words, Amazon can be liable for defamatory content if it was responsible for the development of that content in part."). At this stage, the Court must accept the Plaintiff's version of the facts as true, and the Plaintiff has pled that CAIR Foundation jointly collaborated to publish the IG Post on its individual accounts, thereby adopting the messages communicated in the post as their own, including the comments made on the post. (*Id.* ¶¶ 124-26); *Quality Foods de Centro Am., S.A.*, 711 F.2d at 994-95. This is enough for now for the Plaintiff

to avoid dismissal on CDA grounds. *Twombly*, 550 U.S. at 556 (noting that a complaint can survive a motion to dismiss even if it is "improbable" that a plaintiff would be able to prove the facts in the complaint).

**2. Georgia's Anti-SLAPP Statute**

Next, CAIR Foundation argues that Georgia's Anti-SLAPP statute prohibits claims arising from the acts of an entity that could reasonably be construed as an act in furtherance of the entity's rights of petition or free speech in connection with an issue of public interest, unless the plaintiff establishes a probability of prevailing. (CF's Mot. to Dismiss, at 18-19). CAIR Foundation contends that the Israeli-Palestinian conflict undoubtedly involves a matter of public concern, Defendant Mohammad's political views about the conflict were the basis for the statements at issue, and resharing a public post of these views on a public forum constitutes protected activity. (*Id.* at 19-20). The Plaintiff asserts that this argument is barred by precedent because the Eleventh Circuit has held that federal courts cannot apply the dismissal provision of the Anti-SLAPP statute, citing *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345 (11th Cir. 2018). (Pl.'s Resp. in Opp'n to CF's Mot. to Dismiss, at 5-6). The Court agrees with the Plaintiff. Regardless of whether the Anti-SLAPP statute applies in this case, the Court could not grant dismissal under the statute. *Carbone*, 910 F.3d at 1350. CAIR Foundation's argument for dismissal on this ground therefore fails.

### 3. Defamation Per Se Claim

CAIR Foundation argues that the Plaintiff's defamation per se claim fails because the Plaintiff cannot prove the statement it made on a matter of public concern was a false statement of fact. (CF's Mot. to Dismiss, at 10-11). It contends that the statement was a matter of political opinion, which necessarily cannot be false. (*Id.* at 11-12). The Plaintiff responds that the Second Amended Complaint alleges joint responsibility for the IG Post and the statement was of such character that malice and damage could be inferred, although he also alleged several forms of harm he has suffered. (Pl.'s Resp. to CF's Mot. to Dismiss, at 10-11). He contends that the statement is provably false because Defendant Mohammed stated that he "personally participated" in an alleged genocide as a matter of fact, an issue of did he or didn't he, and he states that he did not. (*Id.* at 11-13). Finally, the Plaintiff asserts that CAIR Foundation fails to challenge other statements he alleges were defamatory in the Second Amended Complaint. (*Id.* at 13).

To state a claim for defamation, a plaintiff must allege: "(1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication to a third party; (3) fault by the defendant amounting at least to negligence; and (4) special harm or the actionability of the statement irrespective of special harm." *Smith v. DiFranceso*, 341 Ga. App. 786, 787 (2017) (citation modified). Under O.C.G.A. § 51-5-4, "[m[aking charges against

another in reference to his trade, office, or profession, calculated to injure him therein" constitutes defamation per se. "The kind of aspersion that constitutes defamation per se under O.C.G.A § 51-5-4(a)(3) must be one that is especially injurious to the plaintiff's reputation because of the particular demands or qualifications of plaintiff's vocation." *North Atlanta Golf Operations, LLC v. Ward*, 363 Ga. App. 259, 261 (2022). But a defamation action can only lie for a statement of fact, since statements "that reflect[ ] an opinion or subjective assessment, as to which reasonable minds could differ, cannot be proved false." *Id.* (citation modified). Still, there is no opinion exception to defamation, and "[a]n opinion can constitute actionable defamation if the opinion can reasonably be interpreted, according to the context of the entire writing in which the opinion appears, to state or imply defamatory facts about the plaintiff that are capable of being proved false." *Id.* at 262 (citation modified) (citing *Cottrell v. Smith*, 299 Ga. 517, 522 (2016)).

The Court begins this analysis by turning to the Second Amended Complaint. The Plaintiff frames the statement at issue as the February 11, 2025 IG Post and the comments on the post. (2nd Am. Compl. ¶ 155). The Court agrees with the Plaintiff that CAIR Foundation can be liable for defamation per se even if the IG Post represented political opinion if the opinion can be reasonably interpreted to imply false facts about the Plaintiff, so long as the Plaintiff can prove those facts are false. *See North Atlanta Golf Operations,*

*LLC*, 363 Ga. App. at 261. To that end, the Plaintiff asserts that parts of Mohammad's statement in the WSB-TV segment are demonstrably false, including her statements that the Plaintiff "aid[ed and abett[ed] a genocide" and "aid[ed] and abett[ed] the destruction of the healthcare system in Gaza." (2nd Am. Compl. ¶¶ 155). Regardless of whether these statements express protected political opinion in the first place, construing the facts in the Plaintiff's favor, these statements could reasonably "imply defamatory facts about the plaintiff that are capable of being proved false." This is because Mohammad's statements—that CAIR Foundation co-posted with supporting commentary—imply that the Plaintiff actively participated in combat operations during his service in the IDF, but the Plaintiff pled that he served

> solely in his capacity as a physician, providing medical care to wounded soldiers. His involvement in combat was limited to situations in which his unit came under direct attack . . . Mohammad had no factual basis to claim that Plaintiff participated in or approved the bombing of hospitals in Gaza [or] celebrated the killing of Palestinians.

(2nd Am. Compl. ¶¶ 66). At this stage, this allegation is enough to satisfy the "false and defamatory statement" element of his defamation per se claim. *Smith*, 341 Ga. App. at 787.

CAIR Foundation also asserts that the Plaintiff voluntarily stepped into a public controversy by publishing his op-ed piece, making him a limited public figure such that he must establish actual malice to state a claim. (CF's Mot. to Dismiss, at 14-15). But, CAIR Foundation argues, he has not pled any facts

demonstrating that it acted with actual malice in accepting CAIR Georgia's invitation to collaborate on the IG Post or that it actually participated in the creation of the IG Post. (*Id.* at 15-16). The Plaintiff disputes that he is a limited public figure but asserts that, even if he was, he has alleged actual malice. (Pl.'s Resp. in Opp'n to CAIR Foundation's Mot. to Dismiss, at 13-14).

When "an individual voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues," the plaintiff must show "by clear and convincing evidence that false and defamatory statements were published with actual malice." *Cottrell*, 299 Ga. at 525. To determine whether an individual is a limited purpose public figure, a court must (1) isolate the public controversy; (2) examine the plaintiff's involvement in the controversy; and (3) determine whether the alleged defamation was germane to the plaintiff's participation in the controversy. *Id.* (citation modified). With regard to demonstrating malice, "[a]ctual malice in a constitutional sense is not merely spite or ill will, or even outright hatred; it must constitute actual knowledge that a statement is false or a reckless disregard as to its truth or falsity." *Id.* (citation modified).

Viewing the facts in the light most favorable to the Plaintiff, the Court cannot say based on the allegations in the Second Amended Complaint that the Plaintiff is a limited purpose public figure such that the actual malice requirement applies at this stage. CAIR Foundation's contention is essentially

that the Plaintiff injected himself into the Israeli-Palestinian conflict controversy by writing his op-ed piece. (CF's Mot. to Dismiss, at 14-15). "Whether a person has voluntarily injected himself into a public controversy in order to have an impact on its outcome cannot be determined solely by reference to the actor's subjective motives. The court must ask whether a reasonable person would have concluded that [the plaintiff] would play or was seeking to play a major role in determining the outcome of the controversy." *Atlanta Journal-Constitution v. Jewell*, 251 Ga. App. 808, 819 (2001). Accepting CAIR Foundation's contention that the controversy at issue here was the Israel-Palestinian conflict itself, there are no allegations either in CAIR Foundation's Motion to Dismiss or in the Second Amended Complaint that the Plaintiff intended to play a major role in determining the outcome of the conflict by publishing the op-ed piece about his IDF service. Nor does the Court believe a reasonable person would conclude that the Plaintiff intended to sway the outcome of an ongoing global conflict in this way; the Plaintiff explains that he wrote the op-ed as a "reflection on his service" to "highlight[ ] the profound and far-reaching impact of the October 7 attacks on Jewish communities worldwide" and stated that his goal in rejoining the IDF was to "support" Israel as a physician. (2nd Am. Compl. ¶¶ 33-35). Thus, construing the facts in the Plaintiff's favor, the Plaintiff did not inject himself in into the Israel-Palestine conflict in such a way as to make himself a limited purpose

public figure under Georgia law. As a result, the Plaintiff did not need to plead allegations of actual malice in order for his defamation per se claim to proceed against CAIR Foundation. *See Cottrell*, 299 Ga. at 525.

**4. False Light Claim**

CAIR Foundation also argues that because the statement at issue was a constitutionally protected opinion, it cannot support a claim for false light under Georgia law. (CF's Mot. to Dismiss, at 16-17). It contends that the IG Post is not mentioned in this Count, and the IG Post did not mention the Plaintiff, much less anything false about him. (*Id.* at 17). The Plaintiff reiterates that he alleged that CAIR Foundation is jointly responsible for the post and that it accused him of aiding and abetting and participating in a genocide, which he asserts is a demonstrably false and offensive fact. (Pl.'s Resp. in Opp'n to CF's Mot. to Dismiss, at 15).

A false light claim is a subspecies of the tort of invasion of privacy where the tortfeasor causes "publicity which places the plaintiff in a false light in the public eye." *Bazemore v. U.S. Bank Nat'l Ass'n*, 363 Ga. App. 723, 730-31 (2022). To establish a claim of false light, a plaintiff must establish the existence of false publicity that depicts the plaintiff as someone he is not, and that the false light he was placed in would be highly offensive to a reasonable person. *Id.* at 731.

First, the Court does not find it dispositive that the Plaintiff did not

expressly mention the IG Post in Count II because the Count is worded broadly so as to encompass the alleged "numerous false statements that portrayed Plaintiff as someone who condones or engages in violence . . . ." and the Count is asserted against all of the Defendants. (*See* 2nd Am. Compl. ¶ 163). The Count goes on to state that the false statements included those "adopted and disseminated by the other Defendants through interviews, podcasts, press conferences, social media, or digital publications . . . ." (*Id.* ¶ 164). Though not a model of clarity, it is apparent from these allegations that this Count encompasses the IG Post. Second, the Court finds CAIR Foundation's assertion that the IG Post "did not mention Plaintiff" to be disingenuous. As previously explained, the IG Post included footage of a WSB-TV segment featuring parts of Mohammad's Democracy Now! interview, and although Plaintiff was not mentioned by name in the WSB-TV segment, the post itself provided context that would enable his identification. (*Id.* ¶¶ 124-25).

For many of the same reasons that the Court found the Plaintiff has stated a defamation per se claim, he has also stated a false light claim against CAIR Foundation. CAIR Foundation does not argue that it did not create or cause publicity about the Plaintiff or that the publicity would not be "highly offensive to a reasonable person." *Bazemore*, 363 Ga. App. at 730-31. So, this issue turns on whether the publicity was false and depicted the Plaintiff as someone he is not. *Id.* at 731. The case CAIR Foundation relies on in support

of its position that constitutionally privileged opinions cannot support a false light claim relies on a Ninth Circuit decision that simply reiterates the general law with regard to defamation, libel, and false light claims that opinions cannot give rise to these claims because they cannot express false ideas. *S & W Seafoods Co. v. Jacor Broadcasting of Atlanta*, 194 Ga. App. 233, 237 (1989) (citing *Ault v. Hustler Magazine*, 860 F.2d 877, 880 (9th Cir. 1988)).

In *Ault*, the Ninth Circuit also stated that the court must determine as a threshold matter whether a challenged statement "constitutes the expression of an opinion rather than of factual statements." *Ault*, 860 F.2d at 880. As explained previously, as the Plaintiff pleads it, the false statements the Plaintiff alleges CAIR Foundation republished are with regard to his active participation in combat operations. (*See* Pl.'s Resp. in Opp'n to C.F.'s Mot. to Dismiss, at 15); (2nd Am. Compl. ¶ 37). Reading the facts in the Plaintiff's favor, then, the IG Post arguably placed the Plaintiff in a false light because he served in his capacity as a physician, engaging in defensive combat only when directly attacked. (2nd Am. Compl. ¶ 37). Thus, as alleged, this publicity depicted the Plaintiff as someone he was not—a regular combat soldier in the IDF. (*See id.* ¶ 52). For these reasons, the Plaintiff has stated a claim for false light invasion of privacy as to CAIR Foundation.

**5. Civil Conspiracy Claim**

Next, CAIR Foundation argues that even if this claim is not precluded by the CDA, it was merely a collaborator on the IG Post, which does not establish any agreement or concerted action as required to state a civil conspiracy claim. (CF's Mot. to Dismiss, at 18). In response, the Plaintiff reiterates that he alleged CAIR Foundation was jointly responsible for the IG Post and that collaboration on Instagram requires the invited user to affirmatively accept a collaboration invitation, which constitutes an action in furtherance of the conspiracy. (*Id.*).

To establish a civil conspiracy claim, a plaintiff must demonstrate that "two or more persons, acting in concert, engaged in conduct that constitutes a tort." *Mustaqeem-Graydon v. SunTrust Bank*, 258 Ga. App. 200, 207 (2002). "Absent the underlying tort, there can be no liability for civil conspiracy." *Id.* (citation omitted). The Plaintiff's civil conspiracy claim hinges on his false light claim. (2nd Am. Compl. ¶¶ 172-73, 179, 181). As the Court has already found, the Plaintiff has plausibly alleged that CAIR Foundation co-authored the IG Post and has stated a claim for false light under Georgia law. The Court agrees with the Plaintiff that, based on the allegations in the Second Amended Complaint and the Court's understanding of how Instagram collaborations work, the Plaintiff has plausibly alleged that CAIR Foundation took concerted action by accepting the collaboration invitation which published the IG Post to its Instagram profile. Accordingly, the Plaintiff has stated a claim for civil

conspiracy under Georgia law.

**6. 42 U.S.C. § 1985(3) Claim**

Lastly, CAIR Foundation argues that the Plaintiff fails to state a claim under § 1985(e) because he does not allege that CAIR Foundation committed any of the overt acts he cited as the basis for this claim. (CF's Mot. to Dismiss, at 21-23). It also contends that the Supreme Court has only recognized the rights to interstate travel and the right against involuntary servitude as enforceable against private actors, neither of which are implicated here. (*Id.* at 22, 34). Moreover, CAIR Foundation argues that even as a recipient of federal funding, the Plaintiff has not alleged that it denied him any benefits or that there was any nexus between the discrimination he alleges he suffered and CAIR Foundation's programs and activities. (*Id.* at 22). The Plaintiff responds to these allegations by reciting the allegations in the Second Amended Complaint that he says support his claim. (Pl.'s Resp. in Opp'n to CF's Mot. to Dismiss, at 17-21). He also contends that the fact that the Supreme Court and the Eleventh Circuit have not yet recognized private actions under § 1985(3) to enforce other rights does not mean that the use of these rights as predicates is barred by precedent. (*Id.* at 21-24).

Section 1985(3) "created a cause of action against private individuals who, among other things, undertake conspiracies for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal

protection of the laws, or of equal privileges and immunities under the laws." *Dean v. Warren*, 12 F.4th 1248, 1257 (11th Cir. 2021) (citation modified). "That § 1985(3) reaches private action does not, however, mean that it was intended to apply to all tortious, conspiratorial interferences with the rights of others." *Id.* (citation modified).

The Plaintiff hinges his § 1985(3) claim on the alleged violations of his rights under three federal laws: 42 U.S.C. § 1981, 42 U.S.C. § 2000e-2(a)(1), and 42 U.S.C. § 2000d. (2nd Am. Compl. ¶ 189). Although CAIR Foundation is correct that the Supreme Court has not recognized any of these statutes as enforceable against private conspirators under § 1985(3), that does not mean that the Plaintiff's reliance on them is foreclosed. *See, e.g., Jimenez v. Wellstar Health Sys.*, 596 F.3d 1304, 1312 (11th Cir. 2010) ("Other than the few rights the Supreme Court has addressed, district and circuit courts differ as to which rights warrant § 1985(3) protection."). However, in *Jimenez*, the Eleventh Circuit foreclosed reliance on § 1981 as the basis for a § 1985(3) claim. *Id.* ("[W]e hold conspiracies to violate rights protected under § 1981 are likewise insufficient to form the basis of a § 1985(3) claim."). So, the Court will dismiss this portion of the Plaintiff's § 1985(3) claim.

Similarly, the Supreme Court has held that the "deprivation of a right created by Title VII cannot be the basis for a cause of action under § 1985(3)." *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 378 (1979); *see*

*also Jimenez*, 596 F.3d at 1312 (recognizing that "the Supreme Court has declared the freedom of speech and the rights protected under Title VII insufficient to form the basis of § 1985(3) actions against private conspirators." (citation modified)). The Court will thus dismiss the portion of the Plaintiff's § 1985(3) claim that is premised on 42 U.S.C. § 2000e-2(a)(1) as well.

This leaves only the portion of the Plaintiff's § 1985(3) claim that relies on 42 U.S.C. § 2000d, also known as Title VI. The Eleventh Circuit does not appear to have addressed whether a violation of Title VI is enforceable against a private conspirator under § 1985(3), but other courts have. In *Boulahanis v. Board of Regents*, the Seventh Circuit held that it is not. *Boulahanis v. Bd. of Regents*, 198 F.3d 633, 641 (7th Cir. 1999), overruled on other grounds by *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246 (2006). In so holding, the Seventh Circuit relied on *Novotny* and said that "pleading under [§ 1985(3) would also allow plaintiffs to circumvent the comprehensive structure Congress created to address the problem of racial discrimination at federally-funded institutions." *Id.* The Court does not necessarily find this one out-of-circuit decision persuasive, so it will address the merits of this portion of the Plaintiff's § 1985(3) claim.

To state a claim under § 1985(3), a plaintiff must establish that the defendant has

> (1) conspired or gone in disguise on the highway or on the premises of another, (2) for the purpose of depriving, either

> directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, (3) taken or caused an action to be taken in furtherance of the conspiracy's object, and (4) injured an individual's person or property or deprived her of exercising any right or privilege of a United States citizen.

*Dean*, 12 F.4th at 1255 n.8 (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971). Title VI provides that no one shall "be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance" on the ground of his "race, color, or national origin." 42 U.S.C. § 2000d. The Plaintiff alleges that CAIR Foundation receives federal funding, making § 2000d enforceable against it. More specifically, he alleges that CAIR Foundation received federal funding, that it conspired with some of the co-defendants to subject him to discrimination based on his race and national origin by posting the IG Post, which he alleges was defamatory and filled with false accusations, and that this discrimination was carried out "in the administration of CAIR Foundation's program or activities receiving Federal financial assistance." (2nd Am. Compl. ¶¶ 194-96). Although CAIR Foundation asserts that there is no nexus between CAIR Foundation's receipt of federal funding and its alleged conspiratorial actions, no such nexus is required. *See Alexander v. Sandoval*, 532 U,S, 275, 303 (noting § 2000d's "broadly worded commitment"). To state a claim under § 2000d, a plaintiff must only allege that the defendant receives federal funds, that it discriminated against the plaintiff on the basis of race,

color, or national origin, and that it did so in the course of a federally funded program. *Burton v. City of Belle Glade*, 178 F.3d 1775, at 1202 (11th Cir. 1999). The Plaintiff has thus made those allegations here.

CAIR Foundation also argues that there are no allegations supporting an overt act taken in support of the conspiracy. (CF's Mot. to Dismiss, at 23). The Court disagrees. Again, the Plaintiff plainly alleged that CAIR Foundation took or caused to be taken an act in support of the conspiracy by co-publishing the IG Post with CAIR Georgia on account of his Jewish identity and Zionist beliefs, which he says placed him in a false, defamatory light and deprived him of his rights under 42 U.S.C. § 2000d. (2nd Am. Compl. ¶¶ 189-92, 194-96). That is all he has to allege at this stage. *See Dean*, 12 F.4th at 1255 n.8. The Court reiterates its previous findings with regard to CAIR Foundation's contentions that the IG Post did not mention the Plaintiff by name and "was not done to defame, conspire against, or otherwise harm Plaintiff." (CF's Mot. to Dismiss, at 23). Because the Court is constrained to view the facts in the light most favorable to the Plaintiff at this stage, those arguments are better suited for summary judgment. For these reasons, the Court will grant CAIR Foundation's Motion to Dismiss with regard to the Title VII and § 1981 portions of the Plaintiff's § 1985(3) claim, but will deny it as to the Title VI portion.[3]

---

[3] Because of the Court's rulings on the merits of the Plaintiff's

## IV. Conclusion

For the foregoing reasons, the Defendants' CAIR-Foundation, Inc.'s Motions to Dismiss [Doc. 136] is GRANTED in part and DENIED in part.

SO ORDERED, this 26th day of August, 2026.

THOMAS W. THRASH, JR.
United States District Judge

---

claim, the Court finds CAIR Foundation's request to grant it attorney's fees premature at this time. The Court also finds CAIR Foundation's request to dismiss the Plaintiff's request for injunctive relief premature at this stage but, even if injunctive relief is an improper remedy, dismissal is not the proper procedural vehicle. "A demand for a certain kind of relief is not a 'claim' under Rule 12(b)(6) and 'courts will not dismiss for failure to state a claim merely because the complaint requests inappropriate relief.'" *Driggers v. Forest River, Inc.*, 2022 WL 3646311, at *3 (M.D. Fla. Aug. 24, 2022) (citation modified).