**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| JOSHUA WINER,<br><br>*Plaintiff*,<br><br>v.<br><br>UMAYMAH MOHAMMAD, *et al.*,<br><br>*Defendants.* | Civil Action File<br><br>No. 1:25-cv-02329-TWT |

**PLAINTIFF JOSHUA WINER'S MOTION FOR RECONSIDERATION**

Plaintiff Dr. Joshua Winer respectfully moves for reconsideration of one narrow aspect of this Court's orders granting in part and denying in part the motions to dismiss filed by CAIR-NGA, Inc. and CAIR-Foundation, Inc. *See* Dkt. Nos. 192–93. Specifically, this Court held that Dr. Winer had not alleged "Emory's federal funding as the linchpin for his Title VI-based § 1985(3) claim." Dkt. 192 at 19; *see also* Dkt. 193 at 24–25 (treating CAIR-Foundation, alone, as the relevant recipient of federal funds).

Dr. Winer respectfully submits that his complaint *does* allege Emory's federal funding as one basis for the Title VI predicate underlying his § 1985(3) claim, and (as the briefing shows) the defendants understood Dr. Winer to be making that claim. To be clear, revising this one point does not alter the substance of the Court's order or require reconsideration of any legal question the Court has already decided. As a result, Defendants will

suffer no prejudice, and there is no reason not to revise the Court's prior orders. Dr. Winer sincerely appreciates the careful attention this Court gave to these motions to dismiss, and requests that the Court reconsider this narrow point and clarify that Dr. Winer may, in fact, pursue the Emory-based claim as the case proceeds.[1]

## STANDARD OF REVIEW

Rule 54(b) "governs a district court's reconsideration of interlocutory orders," including an order resolving a motion to dismiss. *Hornady v. Outokumpu Stainless USA, LLC*, 118 F.4th 1367, 1379 (11th Cir. 2024); Fed. R. Civ. P. 54(b) (an order "that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties ... may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.").

"Under Rule 54(b), district courts retain plenary power to reconsider an interlocutory order before the entry of final judgment," and whether or not to do so is a matter of the district court's discretion. *Hornady*, 118 F.4th at 1379. In deciding such a motion, district courts are not bound by the higher

[1] Dr. Winer respectfully submits that this motion is "absolutely necessary," per Local Rule 7.2(E), because Dr. Winer intends to pursue his § 1985(3) claim under this theory as alleged in the Second Amended Complaint. If the Court disagrees, Dr. Winer may need to seek leave to amend his complaint to address the Court's concern, potentially prompting another round of motion-to-dismiss briefing and further delaying the progress of this case.

"standards applicable to [motions under] Rules 59(e) or 60(b),"[2] though if a motion *does* meet those standards, "the district court should not hesitate to revisit its prior ruling." *Id.* at 1381.

## ARGUMENT

### I. Dr. Winer alleged that Emory's receipt of federal funds was part of his claim under 42 U.S.C. § 1985(3).

When Dr. Winer sought leave to file a second amended complaint, his claim under 42 U.S.C. § 1985(3) alleged that "Defendants conspired to induce Emory to fire him because of his Jewish identity—a result that would deprive him of the equal protection of the laws, or of equal privileges and immunities under the laws." Dkt. 109 at 15 (quotation omitted). When Defendants argued that such an amendment would be futile, Dr. Winer made clear that his arguments under Title VI would "appl[y] both to the conspiracy to induce Emory to terminate [him], and to CAIR-Foundation's own acts of discrimination as a recipient of federal funds." Dkt. 116 at 6 (citing Dkt. 109-1 ¶¶ 193–94). And in granting leave to amend, this Court recognized that Dr. Winer was relying on Emory's receipt of federal funding, rejecting

[2] "[T]hose standards" address "newly discovered evidence or manifest errors under Rule 59(e), or mistake, inadvertence, fraud, and the like under Rule 60(b)[.]" *Hornady*, 118 F.4th at 1379 (citing *Region 8 Forest Serv. Timber Purchasers Council v. Alcock*, 993 F.2d 800, 806 & n.5 (11th Cir. 1993) and *Toole v. Baxter Healthcare Corp.*, 235 F.3d 1307, 1315 (11th Cir. 2000), respectively). For the reasons discussed in this brief, Dr. Winer respectfully submits that the Emory funding linchpin holding constitutes manifest error.

Defendants' futility argument (in part) *because* Dr. Winer alleged that Defendants "Conspired . . . to deprive him of rights protected by Title VI—by pressuring Emory, who [Dr. Winer] alleges also receives federal funding—to terminate him based on his national origin." Dkt. 129 at 14 (citing Dkt. 109-1 ¶¶ 12, 189–90, 196).

To that end, the as-filed Second Amended Complaint expressly alleges that "[o]n information and belief, Emory is a recipient of federal grants, making it a 'program or activity receiving Federal financial assistance' for the purposes of Title VI of the Civil Rights Act, 42 U.S.C. § 2000d." Dkt. 130 ¶ 12. That allegation must be read together with Paragraph 193, which alleged that, "[b]y targeting Plaintiff for expressing his Zionism, Defendants sought to punish and deter him for his Jewish identity by inducing Emory to terminate his employment on that basis, *a result* that would violate Title[ ] VI . . . of the Civil Rights Act[.]" *Id.* ¶ 193; *see also id.* ¶ 196(a) ("Defendants sought to . . . interfere with Plaintiff's employment with Emory" and "coerce Emory into terminating his employment in violation of Title VI"). That is why the following paragraph alleged, "*[i]n addition*, Defendant CAIR-Foundation receives federal funding, making *their* conduct in subjecting Plaintiff to discrimination"—as well as the other defendants, in conspiring with CAIR-Foundation—". . . a violation of Title VI of the Civil Rights Act." *Id.* ¶ 194 (emphasis added). The phrase "in addition" confirms that CAIR-Foundation's

receipt of federal funding was a separate theory under Title VI, not the only theory. *See also* Dkt. No. 144 (Response to CAIR-Foundation MTD) at 21 (advancing the Emory linchpin argument); Dkt. No. 150 (Response to CAIR-NGA MTD) at 19–20 (same).

Defendants' briefing on the Second Amended Complaint confirms they understood Dr. Winer's claim included Emory's receipt of federal funds. First and foremost, Defendants' joint opposition to Dr. Winer's motion for leave to amend recognized the Emory hook, and simply argued that "[h]e does not allege that Emory *actually* terminated him or breached his employment contract." Dkt. 113 at 7 (emphasis in original). "Dr. Winer's Title VI claim is even more flawed," Defendants said, "*to the extent that* it is based on Defendant CAIR-Foundation's alleged receipt of federal funding[.]" *Id.* (emphasis added). Thus, Defendants plainly recognized that the Emory linchpin was the primary basis for Dr. Winer's claim, and that CAIR-Foundation's receipt of federal funding was the alternative.

Similarly, in moving to dismiss, CAIR-NGA directly addressed Emory's receipt of federal funds—arguing that "Dr. Winer failed to allege that Emory receives federal funds for the *purposes* of providing employment," not that Dr. Winer did not allege Emory's funding was a linchpin for his claim. *See* Dkt. 140-1 at 19 (emphasis added) (citing *Jones v. Metro. Atlanta Rapid Transit Auth.*, 681 F.2d 1376, 1378 (11th Cir. 1982)). And Dr. Winer answered that

point: "*Jones* addresses the elements of a direct Title VI employment action against a funding recipient," not a claim "that Defendants conspired to *pressure* . . . a federally funded institution—to terminate him based on his Jewish identity." Dkt. 150 at 19–20. This exchange confirms that CAIR-NGA understood Dr. Winer to be relying on Emory's receipt of federal funds as a basis for his claim.

In concluding that Dr. Winer had not relied on Emory's receipt of federal funding as a basis for the Title VI predicate underlying his § 1985(3) claim, this Court cited pages 18–19 of Dr. Winer's response to CAIR-NGA's motion to dismiss. Dkt. 192 at 19. But nothing in Dr. Winer's response brief disclaimed or forswore any allegation that Emory's federal funding could be the hook for his § 1985(3) claim pursuant to Title VI. Quite the opposite. Dr. Winer reiterated that Defendants sought to induce *Emory* to terminate his employment, which is a result that would violate Title VI. Dkt. 150 at 19–20. This is not "a standalone Title VI claim against Emory," Dr. Winer acknowledged, *id.* at 19, but that did not mean that Emory's federal funding was not the basis of Dr. Winer's claim that *Defendants* sought to induce *Emory* to violate Title VI—and thus participated in a conspiracy to violate civil rights in violation of § 1985(3). *See id.* at 20 ("That is a *result* that would violate Title VI—not the direct Title VI claim at issue in *Jones*.").

Thus, Dr. Winer alleged that Emory's receipt of federal funds was a

"linchpin for his Title VI-based § 1985(3) claim," Dkt. 192 at 19, and so he respectfully requests that this Court reconsider its holding to the contrary (*see* Dkt. Nos. 192 at 19, 193 at 24).

## II. Reconsidering the Emory linchpin does not require any substantive modification to the Court's reasoning.

In denying CAIR-Foundation and CAIR-NGA's motions to dismiss Dr. Winer's § 1985(3) claim predicated upon Title VI, this Court correctly held, in relevant part, that "no nexus between . . . receipt of federal funding and [Defendants'] alleged conspiratorial actions . . . is required." Dkt. 192 at 19 (citing *Alexander v. Sandoval*, 532 U.S. 275, 303 (2001)). The Court dismissed only those portions of Dr. Winer's § 1985(3) claim predicated on Title VII and 42 U.S.C. § 1981 because it concluded that those claims were barred by precedent. *Id.* at 17. Thus, reconsidering the holding that Dr. Winer did not "allege Emory's federal funding as the linchpin for his Title VI-based § 1985(3) claim," *see id.* at 19, does not contradict, cause tension with, or otherwise require any substantive revision to this Court's reasoning in denying CAIR-Foundation and CAIR-NGA's motions to dismiss.

The only implication of granting this motion is that it will be clear to all parties, without need for further motions practice or delay, that Dr. Winer can pursue and build a record on the Emory linchpin in discovery going forward.

## III. Defendants will suffer no prejudice as a result of this reconsideration.

Finally, there is no unfairness or surprise to Defendants in granting this motion for reconsideration. As discussed, Defendants are well aware that Dr. Winer alleged Emory's funding as a linchpin for his § 1985(3) claim via Title VI. Reconsidering the Emory linchpin holding will not create any undue delay, expense, or inconvenience—it will merely clarify the scope of Dr. Winer's surviving § 1985(3) claim. It will also avoid the need for Dr. Winer to seek leave to file a third amended complaint (and, even worse, potentially restart motion-to-dismiss briefing while the Court is still resolving the remaining motions).

Thus, this Court should grant this motion for reconsideration.

## CONCLUSION

For these reasons, Dr. Winer respectfully moves this Court to reconsider that portion of its orders (Dkt. 192 at 19 & Dkt. No. 193 at 24) holding that Dr. Winer did not allege Emory's federal funding as a linchpin for his § 1985(3) claim pursuant to Title VI. A proposed order is attached for the Court's convenience.

Respectfully submitted this 22nd day of September, 2026.

Lauren Israelovitch
Mark Goldfeder
Ben Schlager
NATIONAL JEWISH

*<u>/s/ Miles C. Skedsvold</u>*
Josh Belinfante
Anna Edmondson
Miles Skedsvold

ADVOCACY CENTER, INC.
3 Times Square
New York, NY 10036
lauren@njaclaw.org
*Pro Hac Vice*

ROBBINS ALLOY BELINFANTE
LITTLEFIELD LLC
500 14th Street, NW
Atlanta, Georgia 30318
T: (678) 701-9320
E: mskedsvold@robbinsfirm.com
Ga. Bar. No. 371576

David Forman Katz
WEISSMANN ZUCKER
EUSTER & KATZ, P.C.
3495 Piedmont Road
Building 11, Suite 950
Atlanta, GA 30305
dkatz@wzlegal.com
Ga. Bar. No. 408738

Esther Panitch
THE PANITCH LAW GROUP, PC
4243 Dunwoody Club Drive
Suite 205
Atlanta, GA 30350
esther@panitchivory.com
Ga. Bar. No. 143197

## CERTIFICATE OF COMPLIANCE

By signature below, counsel certifies that the foregoing motion was prepared in Century Schoolbook, 13-point font, in compliance with Local Rule 5.1(C).

*/s/ Miles C. Skedsvold*
Miles C. Skedsvold

## CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically filed the within and foregoing **PLAINTIFF JOSHUA WINER'S MOTION FOR RECONSIDERATION** with the Clerk of Court using the CM/ECF electronic filing system, which suffices for service on all counsel of record who have entered an appearance in the case under L.R. 5.1(A)(3).

This 22nd day of September, 2026.

*/s/ Miles C. Skedsvold*
Miles C. Skedsvold