**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| Joshua Winer,<br><br>Plaintiff,<br><br>v.<br><br>Umaymah Mohammad, AJP Educational Foundation, Inc. A/K/A American Muslims for Palestine, WESPAC Foundation, Inc., Sean Eren as the representative of National Students for Justice in Palestine, Doctors Against Genocide Society, CAIR-Nga Inc. A/K/A CAIR-Georgia, CAIR Foundation Inc., A/K/A Council on Islamic Relations or CAIR, Rupa Marya, Ibrahim Jouja as representative of Emory Students for Justice in Palestine.<br><br>Defendants. | Case No. 1:25-CV-02329 |

**DEFENDANT CAIR-NGA, INC.'S BRIEF IN SUPPORT OF ITS MOTION FOR RECONSIDERATION OR, IN THE ALTERNATIVE, TO AMEND ORDER TO CERTIFY FOR INTERLOCUTORY APPEAL**

Pursuant to L.R. 7.2(E) and the Court's inherent authority, Defendant CAIR-Nga, Inc. ("CAIR-Georgia"), respectfully moves for reconsideration of this Court's Opinion and Order [Doc. 192] filed on August 26, 2026 (the "Order"), denying in part CAIR-Georgia's Motion to Dismiss Plaintiff's Second Amended Complaint [Doc. 140]. In the alternative, CAIR-Georgia respectfully moves the Court to certify the Order for immediate appellate review by the U.S. Court of Appeals for the Eleventh Circuit pursuant to 28 U.S.C. § 1292(b) and Fed. R. App. P. 5(a)(3).

## INTRODUCTION

Based on Supreme Court and Eleventh Circuit precedent, the Court ruled that Plaintiff's § 1985(3) claim could not be predicated on a conspiracy to violate Title VII or § 1981 rights. However, the Court also sua sponte raised a Seventh Circuit opinion holding that a § 1985(3) claim could not be predicated on Title VI. The decision was based on the same Supreme Court precedent that disallowed the Title VII predicate, but the Court elected not to follow the Seventh Circuit's persuasive opinion. Because the analysis from the Supreme Court and Eleventh Circuit also applies to the Title VI predicate, the Order is internally inconsistent and allowing it to stand creates manifest injustice. The Court should dismiss the one federal claim remaining, decline to exercise supplemental jurisdiction over Dr. Winer's state law claims, and terminate the case.

In the alternative, the legal basis—or lack thereof—for Dr. Winer's sole federal claim presents an appropriate reason to certify the Court's Order for immediate appeal to avoid the expense and waste caused by a litigation that has no legal foundation. Dr. Winer's remaining § 1985(3) claim presents an outcome-determinative question of law as to which the Order creates a split of authority:

> Whether the rights created by Title VI may be asserted within the remedial framework of § 1985(3).

The Court should certify the foregoing question for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

## PROCEDURAL AND FACTUAL BACKGROUND

Dr. Winer filed this suit in April 2025 against nine defendants asserting three state law claims: defamation (Count I) [Doc. 1 at ¶¶ 125–39], false light invasion of privacy (Count II) [*id.* at ¶¶ 140–48], and civil conspiracy [*id.* at ¶ 149–62]. Dr. Winer's initial Complaint asserted diversity jurisdiction as a basis for his lawsuit [Doc. 1 at ¶ 17] but also alleged that both Dr. Winer and at least one other defendant are residents of Georgia [*id.* at ¶¶ 8, 14].

Dr. Winer then filed his first Amended Complaint on May 20, 2025, as of right before any of the defendants filed a responsive pleading [Doc. 22], asserting federal question and supplemental jurisdiction [*id.* at ¶¶ 21–22], rather than diversity jurisdiction. The First Amended Complaint included the same three state law claims in Counts I–III. [*Id.* at ¶¶ 136–76]. But to support his claim for federal-question jurisdiction, Dr. Winer added a fourth count, alleging a conspiracy to interfere with civil rights, invoking 42 U.S.C. § 1985(3) [*id.* at ¶¶ 177–90]. The First Amended Complaint did not specify any particular bases[1] for the § 1985(3) claim but vaguely asserted that the defendants had conspired to deprive Dr. Winer of his rights to free

[1] *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 376 (1979) ("Section 1985(3) … *creates* no rights. It is a purely remedial statute, providing a civil cause of action when some otherwise defined federal right -- to equal protection of the laws or equal privileges and immunities under the laws -- is breached by a conspiracy in the manner defined by the section.") (emphasis in original); *see also Thigpen v. Bibb Cty.*, 223 F.3d 1231, 1238-39 (11th Cir. 2000) ("[S]ection 1985(3) … is a purely remedial statute that 'provides no substantive rights itself' but instead provides a civil cause of action when some elsewhere-defined federal right has been violated.") (citing *Novotny*, 442 U.S. at 372).

speech, freedom of association, and freedom to access and participate in professional and academic life in his employment on equal terms. [Doc. 22 at ¶ 179].

Upon being met with numerous motions to dismiss [Docs. 41, 63, 83, 94–97, 101], Dr. Winer then pivoted again and sought leave to amend the First Amended Complaint [Doc. 109], providing for the first time a premise for his § 1985(3) claim [*id.* at 2, 5; *see also* Doc. 129 at 6 (describing motion)]. In particular, Dr. Winer identified 42 U.S.C. § 1981 and Titles VI and VII of the Civil Rights Act as bases for that claim. [Doc. 109-1 at ¶¶ 189–96]. The Court granted Dr. Weiner's Motion to Amend the First Amended Complaint on January 27, 2026 [Doc. 129], and several defendants, including CAIR-Georgia, again moved to dismiss. [Docs. 140, 146, 148, 152–54, 166].

On August 26, 2026, the Court issued its Order ruling on CAIR-Georgia's motion to dismiss. [Doc. 192].[2] As to the § 1985(3) claim, the Court agreed with CAIR-Georgia that § 1981 and Title VII could not form the basis for Dr. Winer's § 1985(3) claim based on settled Supreme Court and Eleventh Circuit precedent. The Court accordingly granted CAIR-Georgia's Motion to Dismiss the Second Amended Complaint as to the portions of the § 1985(3) claim premised on assertion of § 1981 and Title VII rights. [*Id.* at 22]. The Court denied, however, the motion to dismiss as to the portion of the § 1985(3) claim based on Title VI. [*Id.*]. As to the

[2] Plaintiff filed a motion for reconsideration of the Order. [Doc. 198]. Plaintiff's motion addresses an issue beyond the threshold question of whether Title VI may serve as the basis for a § 1985(3) claim. Should the Court grant CAIR-Georgia's motion for reconsideration, Plaintiff's motion would be moot. CAIR-Georgia intends to provide a more robust response in opposition to Plaintiff's motion by the response deadline.

threshold issue of whether rights protected under Title VI can properly provide a basis for a § 1985(3) claim, the Court stated:

> The Eleventh Circuit does not appear to have addressed whether a violation of Title VI is enforceable against a private conspirator under § 1985(3), but other courts have. In *Boulahanis v. Board of Regents*, the Seventh Circuit held that it is not. *Boulahanis v. Bd. of Regents*, 198 F.3d 633, 641 (7th Cir. 1999), *overruled on other grounds by Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246 (2006). In so holding, the Seventh Circuit relied on *Novotny* and said that "pleading under [§ 1985(3)] would also allow plaintiffs to circumvent the comprehensive structure Congress created to address the problem of racial discrimination at federally-funded institutions." *Id.* The Court does not necessarily find this one out-of-circuit decision persuasive, so it will address the merits of this portion of the Plaintiff's § 1985(3) claim.

[Doc. 192 at 17–18]. The Court issued the same decision regarding defendant CAIR Foundation Inc.'s motion to dismiss [Doc. 136] in a separate Opinion and Order [Doc. 193 at 23].

## APPLICABLE LEGAL STANDARDS

### I. Motion for Reconsideration

"The Federal Rules of Civil Procedure do not specifically authorize motions for reconsideration. Nevertheless, such motions are common in practice." *Mitchom v. Holloway*, No. 1:21-CV-2727-TWT, 2022 U.S. Dist. LEXIS 97921, at *2–3 (N.D. Ga. Apr. 7, 2022). Local Rule 7.2 provides that motions for reconsideration are not to be filed "as a matter of routine practice," but only when "absolutely necessary." Although a motion for reconsideration cannot be employed as a vehicle to present new arguments or evidence that should have been raised earlier, introduce novel legal theories, or repackage familiar arguments, "[a] motion for reconsideration

should be granted if it is necessary to correct a clear error or to prevent manifest injustice." *Frascona v. Minn. Mut. Life Ins. Co.*, 53 F. Supp. 2d 1282, 1283 (N.D. Ga. 1998).

**II. Motion to Amend Order to Certify for Interlocutory Appeal**

28 U.S.C. § 1292(b) is an exception to the final-judgment rule, permitting district courts to certify an order for immediate appeal. *McFarlin v. Conseco Servs.*, 381 F.3d 1251, 1253 (11th Cir. 2004). The statute sets forth three requirements for certification: (1) the order "involves a controlling question of law"; (2) "as to which there is substantial ground for difference of opinion"; and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *McFarlin*, 381 F.3d at 1253. The party seeking to appeal bears the burden of establishing that the requirements of § 1292(b) are met. *In re Scientific-Atlanta, Inc.*, NO. 1:01-CV-1950-RWS, 2003 U.S. Dist. LEXIS 27749, at *10 (N.D. Ga. Apr. 15, 2003).

If a district court determines that the foregoing criteria are met, the court "shall so state in writing in such order." 28 U.S.C. § 1292(b); *see also* Fed. R. App. P. 5(a)(3) (recognizing district court's authority to amend order to include language permitting interlocutory appeal). "When a district court certifies an order for appeal, it should specify the controlling question of law it has in mind." *McFarlin*, 381 F.3d at 1264. "The legal question must be stated at a high enough level of abstraction to lift the question out of the details of the evidence or facts of a particular case and give it general relevance to other cases in the same area of law." *Id.*

## ARGUMENT

For the reasons stated below, the Court should reconsider its Order and grant CAIR-Georgia's motion to dismiss. In the alternative, the Court should certify the following question for immediate appeal: Whether the rights created by Title VI may be asserted within the remedial framework of § 1985(3). *Cf. Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 377 (1979) ("The only question here, therefore, is whether the rights created by Title VII may be asserted within the remedial framework of § 1985(3).") (emphasis omitted).

### I. The Court Should Reconsider Its Order and Dismiss the Case in Its Entirety

The Order currently presents internal inconsistencies that rise to the level of manifest injustice. As a result, CAIR-Georgia respectfully requests that the Court reconsider the Order and dismiss the § 1985(3) claim, decline to exercise supplemental jurisdiction regarding the remaining state law claims, and ultimately dismiss this case in its entirety.

#### A. Title VI Rights Are Not Cognizable Within § 1985(3)

Based on Supreme Court and Eleventh Circuit precedent, the Court dismissed the Title VII and § 1981 bases for Plaintiff's § 1985(3) claims. The Court likewise sua sponte discussed *Boulahanis* for the first time, considering whether Title VI could ever serve as the predicate for a § 1985(3) claim. The Court concluded that because there was no binding precedent against permitting Title VI to serve as a predicate for Plaintiff's § 1985(3) claims and that it did "not necessarily" find the Seventh Circuit's decision on the subject persuasive, that Plaintiff's § 1985(3) claim

could survive. The analysis in this part of the Order was not briefed by the parties in connection with the motion to dismiss,[3] but now that the Court has revisited the issue, CAIR-Georgia respectfully seeks reconsideration based on the Court's decision regarding the Title VII and § 1981 predicates, the underlying rationale for those holdings, and the Seventh Circuit's rationale in *Boulahanis v. Board of Regents*, 198 F.3d 633 (7th Cir. 1999) *overruled on other grounds by Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246 (2006), to prevent manifest injustice.

**1. Supreme Court and Eleventh Circuit Precedent Foreclose Dr. Winer's Only Remaining Federal Cause of Action**

The Eleventh Circuit has carefully considered that "the Supreme Court has been conservative in designating which rights litigants may enforce against private actors under § 1985(3)." *Jimenez v. WellStar Health Sys.*, 596 F.3d 1304, 1312 (11th Cir. 2010). The High Court's restraint, coupled with its rejection of Title VII as a predicate for § 1985(3) claims, led the Eleventh Circuit to conclude that § 1981 also could not serve as the basis for a § 1985(3) claim in *Jimenez*. *Id.*

That rationale applies in equal force here where (1) the Supreme Court has not recognized any additional bases for § 1985(3) claims; and (2) Title VI is closely related to Title VII and § 1981. Indeed, the Eleventh Circuit's observation that the Supreme Court has been conservative in designating which rights litigants may enforce under § 1985(3), absent any justification from Plaintiff, is reason enough for this Court to dismiss the § 1985(3) claim based on Title VI.

[3] *Cf.* Doc. 113 at 6–16.

The second part of the *Jimenez* analysis likewise supports dismissal. The court extended *Novotny's* prohibition on Title VII predicates to § 1981 predicates due to the Eleventh Circuit's routine grouping of Title VII and § 1981 claims for analytic purposes due to their similarity. *Id.* at 1312. The same reasoning extends from § 1981 predicates to Title VI predicates because "[r]acial discrimination claims under Title VI . . . and § 1981 are analyzed under the same framework. *Farmer v. Bd. of Regents of the Univ. Sys. of Ga.*, 589 F. App'x 913, 915 (11th Cir. 2014) (citing *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1325 n. 14 (11th Cir. 2011)) (non-precedential); *Elston v. Talladega Cnty. Bd. of Educ.*, 997 F.2d 1394, 1406 n.11 (11th Cir. 1993). Moreover, the Eleventh Circuit has repeatedly looked to Title VII standards when deciding Title VI claims. *Zadoorian v. Gwinnett Tech. Coll.*, No. 22-14206, 2024 U.S. App. LEXIS 8634, at *4 (11th Cir. Apr. 10, 2024) (citing *Ga. State Conf. of Branches of NAACP v. State of Ga.*, 775 F.2d 1403, 1417 (11th Cir. 1985)) ("Further, standards that govern claims under Title VII are instructive in Title VI cases."); *Pouyeh v. UAB Dep't of Ophthalmology*, 625 F. App'x 495, 498 (11th Cir. 2015) (non-precedential).

### 2. The Seventh Circuit's Analysis in *Boulahanis* Reveals the Order's Internal Inconsistency

As explained in the Order, the Eleventh Circuit has not considered whether a violation of Title VI is enforceable against a private conspirator under § 1985(3). [Doc. 192 at 17]. However, the only circuit court that has, the Seventh Circuit, reached the opposite conclusion from the Order—that Title VI cannot serve as a predicate for a § 1985(3) claim. This is important because the Seventh Circuit's

reasoning is based in large part on *Novotny*, the same case the Court relied on to dismiss Dr. Winer's Title VII predicate and the same case the *Jimenez* court—which the Court relied on to dismiss the § 1981 predicate—incorporated in its analysis. Allowing the Title VI predicate to proceed where persuasive authority based on the same analysis used in binding authority to dismiss the Title VII and § 1981 predicates creates internal inconsistency in the Order.

As the *Novotny* Court concluded with Title VII and the *Jimenez* court concluded with § 1981, the Seventh Circuit held that a claim based on Title VI could not be brought pursuant to § 1985(3). *Boulahanis*, 198 F.3d at 641. The *Boulahanis* court cited its previous decision in *Alexander v. Chicago Park District* for the proposition that where a statute provides its own comprehensive enforcement scheme that scheme may not be bypassed by pleading an underlying violation of the statute and bringing suit directly under [another statute]." *Alexander v. Chicago Park District*, 773 F.2d 850, 856 (7th Cir. 1985).

The *Alexander* court, citing to *Novotny* and comparing Title VI to Title VII, reasoned that Title VI both (1) provides its own administrative enforcement procedure, and, importantly, (2) limits remedies in some cases to declaratory and injunctive relief, "a limitation that would be lost in the broad grant of a remedy at law or equity." *Id.* Therefore, allowing 1985(3) claims to be predicated on Title VI would allow "plaintiffs to circumvent the comprehensive structure Congress created to address the problem of racial discrimination at federally-funded institutions." *Boulahanis*, 198 F.3d at 641; *see also id.* ("Where Congress has set up an enforcement mechanism with full remedies, as it has with Title VI, that regulatory

structure may not be bypassed by resort to laws of more general applicability like . . . Section 1985(3)") (citing *Middlesex Cty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 20 (1981)).

Finally, to the extent the Court is inclined to view the comprehensive structure Congress created through Title VI as less thorough than that of Title VII because it does not require administrative exhaustion, CAIR-Georgia notes that neither does § 1981, which the Eleventh Circuit has likewise held cannot serve as the basis for a § 1985(3) claim. Therefore, CAIR-Georgia respectfully requests that the Court reconsider its Order and dismiss Count IV in its entirety to prevent manifest injustice.

### B. The Court Should Decline to Exercise Supplemental Jurisdiction over the Remaining State Law Claims

The only basis Dr. Winer has alleged for the Court to have subject matter jurisdiction over his state law claims is the supplemental jurisdiction statute, 28 U.S.C. § 1367. [Doc. 130 ¶ 23]. Therefore, if the Court dismisses Count IV of the Complaint, it should decline to exercise supplemental jurisdiction over Dr. Winer's state law claims (Counts I–III) and dismiss them for lack of subject matter jurisdiction.[4]

[4] CAIR-Georgia maintains that Dr. Winer's state law claims should be dismissed on the merits for the reasons set forth in its Motion to Dismiss Second Amended Complaint [Doc. 140], but given the Court's substantial narrowing (and upon reconsideration if the Court agrees with CAIR-Georgia, negation altogether) of the federal claims, the state law claims can and should also now be disposed of through relinquishment of supplemental jurisdiction.

As the Supreme Court held in *United Mine Workers of America v. Gibbs*, the case from which 28 U.S.C. § 1367 was codified, "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." 383 U.S. 715, 726 (1966); *see also* 28 U.S.C. § 1367(c) (giving district courts discretion to decline to exercise supplemental jurisdiction in enumerated situations, including where "the district court has dismissed all claims over which it has original jurisdiction"); *Ameritox, Ltd. v. Millennium Labs., Inc.*, 803 F.3d 518, 530 (11th Cir. 2015) (noting that courts should dismiss state claims to avoid "needless decision[s]" as to state law after federal claims are dismissed before trial); *Fey v. Panacea Mgmt. Grp. LLC*, 261 F. Supp. 3d 1297, 1314 (N.D. Ga. 2017) (declining to exercise supplemental jurisdiction over state law claim after granting summary judgment as to plaintiff's federal claims). In short, the Eleventh Circuit has "encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial." *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004).

To the extent that the Court takes into account judicial economy, convenience, fairness, and comity, *see, e.g., Baggett v. First Nat'l Bank of Gainesville*, 117 F.3d 1342, 1353 (11th Cir. 1997) ("While § 1367(c) permits a court to dismiss any state law claims where the court has dismissed all the claims over which it had original jurisdiction, the court also can consider [those] other factors."), those considerations weigh against allowing this action to proceed in federal court. As discussed below, *infra* Part II.C, this case is in its early stages and the investment of potentially years' time in a case that was improvidently brought in federal court is not justified. As to

convenience, there is no basis to conclude that federal court would be more convenient than state court for resolution of Dr. Winer's state law claims. Considerations of fairness also counsel against the exercise of continued jurisdiction. Dr. Winer brought his state law claims in federal court based on the assertion of a theory that had been flatly rejected as to two-thirds of its bases (§ 1981 and Title VII) and was one-third (Title VI) questionable at best. Indeed, the most Dr. Winer can say for his novel § 1985(3)/Title VI claim is that it has not been directly rejected by the Supreme Court or the Eleventh Circuit yet. He offers no compelling affirmative reason why Title VI *should* be within the scope of § 1985(3), particularly where the stated presumption of the Supreme Court and the Eleventh Circuit is *precisely the opposite*, i.e., that rights cognizable under § 1985(3) should be narrowly construed. The fairness factor accordingly weighs against supplemental jurisdiction. *See, e.g., Ameritox*, 803 F.3d at 539 (noting that when litigants bring state law claims in federal court, they must realize that jurisdiction is tentative and they knowingly risk dismissal of pendant claims).

Lastly, comity further favors dismissal. Matters of state law should be left to state courts. *Hardy*, 954 F.2d at 1553 ("Resolution of Plaintiffs' state law claims depends on determinations of state law. State courts, not federal courts, should be the final arbiters of state law."). Here, particularly as to defamation claims, Georgia state courts have important procedures not available in federal courts. *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1350 (11th Cir. 2018) (holding that motion-to-strike procedure of Georgia's anti-SLAPP (Strategic Lawsuits Against Public Participation) statute does not apply in federal court). The preference of the

Georgia legislature should control under these circumstances. To hold otherwise would allow litigants to make a blatant end run around state law by appending specious federal claims to cases that predominantly involve matters of state law.

Judicial economy, fairness, convenience, and comity thus all dictate having Dr. Winer's state law claims decided by a Georgia court. With no claims remaining in the case to support federal jurisdiction, the Court should dismiss the lawsuit in its entirety.[5]

## II. In the Alternative, the Court Should Certify the Order for Interlocutory Appeal

If the Court declines CAIR-Georgia's request for reconsideration, the Court should amend the Order to certify it for immediate appeal and administratively close the case pending appeal. "The Interlocutory Appeals Act of 1958, 28 U.S.C. § 1292(b), 23 was enacted to meet the recognized need for prompt review of certain nonfinal orders." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 474 (1978). Interlocutory appeals of denials of motions to dismiss were a specific impetus for enacting § 1292(b). *See, e.g.,* P.L. 85-919, S. Rep. No. 85-2434, 1958 U.S.C.C.A.N. 5255, 5256 (1958) (discussing scenario in which district court denied motion to dismiss, case took eight months to resolve, and "[h]ad the court of appeals entertained such a motion [for interlocutory review] and reached the conclusion which it ultimately did, it would have resulted in a saving of the time of the district court and considerable expense on the part of the litigants").

[5] As noted *supra*, Dr. Winer is a resident of Atlanta, Georgia [Doc. 130 at 6 ¶ 12], as are numerous other defendants [*see, e.g., id.* at 7 ¶ 13, 10 ¶ 19]. Dr. Winer therefore cannot amend his complaint to (re)allege diversity jurisdiction.

The Order meets the three criteria of § 1292(b). It involves (1) a controlling issue of law (2) as to which there are substantial grounds for difference of opinion and (3) for which an immediate appeal will materially advance the ultimate termination of the litigation. The Court should accordingly amend its Order to certify the following controlling question (the "Proposed Question") for immediate appeal to the Eleventh Circuit:

> Whether the rights created by Title VI may be asserted within the remedial framework of § 1985(3).

### A. The Order Involves a Controlling Question of Law

The Court's holding that a claim alleging violation of Title VI rights can be maintained within the framework of § 1985(3) presents a question of law. *See, e.g., Bishop v. Reno*, 210 F.3d 1295, 1298 (11th Cir. 2000) ("Questions of statutory … interpretation present legal questions[.]"); *United States v. Lawson*, 809 F.2d 1514, 1517 (11th Cir. 1987) (holding that whether criminal conduct fell within scope of federal statute was question of law). Resolution of the Proposed Question involves only a determination of whether a statutorily-defined category of rights (Title VI rights) can be asserted within § 1985(3). *Cf. Novotny*, 442 U.S. at 378 (holding, without resolution of any factual issues, that Title VII claims cannot be the basis for a § 1985(3) cause of action); *Jimenez*, 596 F.3d at 1312 (holding, without resolution of any factual issues, that Title VII claims cannot be the basis for a § 1985(3) cause of action). Indeed, the Court answered that question without the need to resolve or address any factual issues. [Doc. 192 at 17–18]. Questions as to "the meaning of a statutory … provision" that do not "require[] rooting through the

record in search of the facts or of genuine issues of fact" are well within the purview of § 1292(b) appeals. *McFarlin*, 381 F.3d at 1259; *see also id.* ("§ 1292(b) appeals were intended, and should be reserved, for situations in which the court of appeals can rule on a pure, controlling question of law without having to delve beyond the surface of the record in order to determine the facts."). The Eleventh Circuit would be able to decide this issue "quickly and cleanly without having to study the record." *Id.* (quoting *Ahrenholz v. Board of Trustees of the Univ. of Illinois*, 219 F.3d 674 (7th Cir. 2000)). It is therefore an appropriate question of law.

CAIR-Georgia's Proposed Question is also a controlling question. Whether a question of law is controlling depends on its effect on the remainder of the case. *McFarlin*, 381 F.3d at 1257 (noting that exemplary § 1292(b) cases "involve potentially dispositive legal questions collateral to the merits that might render unnecessary a lengthy trial"); *Ga. State Conference of the NAACP v. Fayette Cty. Bd. of Comm'rs*, 952 F. Supp. 2d 1360, 1362 (N.D. Ga. 2013) (noting that a question of law is considered "controlling" if it "has the potential of substantially accelerating disposition of the litigation") (quotation and citation omitted). "[A] question of law is considered 'controlling' if the reversal of the district court's order would terminate the action." *In re Scientific-Atlanta*, 2003 U.S. Dist. LEXIS 27749, at *11; 19 James W. Moore et al., *Moore's Federal Practice* § 203.31 (2026) ("[I]f resolution of the question being challenged on appeal will terminate the action in the district court, it is clearly controlling."). Here, resolution of the Proposed Question will determine whether Dr. Winer's remaining § 1985(3) claim exists as a matter of law and, if resolved in CAIR-Georgia's favor, would end the litigation as discussed *supra* Part

I.B. It thus meets the "controlling" requirement. *In re Suntrust Banks, Inc.*, No. 1:08-CV-3384-RWS, 2011 U.S. Dist. LEXIS 421, at *13 (N.D. Ga. Jan. 3, 2011) (granting motion to certify where, *inter alia*, "[i]f the Eleventh Circuit agrees with Defendants … [as to their interpretation of statutory provision at issue], then Plaintiffs' remaining claims in this action would need to be dismissed, thus ending the proceedings in this Court"); 19 *Moore's* § 203.31 ("Controlling questions of law … include the question of whether a claim exists as a matter of law …."). The Proposed Question accordingly satisfies the first statutory condition for an interlocutory appeal.

**B. There Is a Substantial Ground for Difference of Opinion**

The Proposed Question is also one as to which there is a substantial ground for a difference of opinion. A substantial difference of opinion on an issue exists when: "(1) the issue is difficult and of first impression; (2) a difference of opinion as to the issue exists within the controlling circuit; or (3) the circuits are split on the issue." *In re Suntrust Banks*, 2011 U.S. Dist. LEXIS 421, at *9. The Proposed Question meets the first and third criteria.

As the Court recognized, this is an issue of first impression in the Eleventh Circuit. [Doc. 192 at 17 ("The Eleventh Circuit does not appear to have addressed whether a violation of Title VI is enforceable against a private conspirator under § 1985(3) ….")].[6] It is also a "difficult" question. Although the Court did not "necessarily find" the *Boulahanis* decision persuasive [Doc. 192 at 21], it did not

[6] It also appears to be an issue of first impression in any circuit other than the Seventh Circuit.

view that decision as "not substantial" or the decision obvious. Significantly, Dr. Winer could point to no authority contrary to the Seventh Circuit's holding in arguing in favor of his presumptively inclusive view of § 1985(3)—let alone any Eleventh Circuit precedent supporting such an outcome. [Doc. 109 at 15–16; Doc. 150 at 18–19]. Indeed, the Court here did not base its decision as to Title VI on Eleventh Circuit precedent compelling denial of CAIR-Georgia's motion to dismiss. *Cf. Burrell v. Board of Trs. of Ga. Mil. Coll.*, 970 F.2d 785, 788–89 (11th Cir. 1992) (holding that question as to which Eleventh Circuit is in "complete and unequivocal" agreement with the district court is not proper for § 1292(b) review); *Howard v. Parisian, Inc.*, 807 F.2d 1560, 1567 (11th Cir. 1987) (noting that substantial ground for a difference of opinion did not exist where circuit precedent and "[e]very other circuit addressing the issue has reached the same conclusion" as the district court). Instead, the Court's decision was based on the *absence* of precedent specifically addressing Title VI [Doc. 192 at 17 (noting that the Eleventh Circuit has not addressed the issue)].

Thus, this is not an issue as to which "the law is clear and there is no question that the district court's order is correct as a matter of law," such that certification would be erroneous. 19 *Moore's* § 203.31. Even if the Court disagrees with CAIR-Georgia that Eleventh Circuit precedent compels dismissal of Dr. Winer's Title VI-based § 1985(3) claim, it cannot be said that the Court's decision is in "complete and unequivocal agreement" with Eleventh Circuit case law as in *Burrell*, 970 F.2d at 89, or resolution of the issue was "clear" as in *McFarlin*, 381 F3d at 1258, so as to warrant denial of certification. The Seventh Circuit decision suffices, along with the

Supreme Court's and the Eleventh Circuit's narrow view of § 1985(3) claims, under these circumstances to provide a "substantial ground for difference of opinion" as required by § 1292(b). *In re Scientific-Atlanta*, 2003 U.S. Dist. LEXIS 27749, at *4 (finding a substantial ground for difference of opinion where "at least one district court has taken the more stringent approach urged by" the movant).

At the very least, the Court's Order has created a split between courts in the Eleventh and Seventh Circuits. This is sufficient to satisfy § 1929(b)'s "substantial ground for difference of opinion" criteria. *In re Suntrust Banks*, 2011 U.S. Dist. LEXIS 421, at *9. In short, the "issue deserves another look by the Eleventh Circuit." *Williams v. AFC Enters.*, No. 1:03-CV-2490-TWT, 2003 U.S. Dist. LEXIS 28623, at *11 (N.D. Ga. Nov. 20, 2003) (certifying order for interlocutory appeal based on question of statutory interpretation).

### C. An Immediate Appeal from the Order May Materially Advance the Ultimate Termination of the Litigation

This final statutory requirement is also met. As explained by *McFarlin*, "[t]his is not a difficult requirement to understand. It means that resolution of a controlling legal question would serve to avoid a trial or otherwise substantially shorten the litigation." 381 F.3d at 1259 (citing 16 Charles Alan Wright, et al., *Federal Practice & Procedure* § 3930 at 432 (2d ed. 1996)). "[T]he district court's primary consideration should be whether resolution of the question 'would serve to avoid a trial or otherwise substantially shorten the litigation.'" *Georgia State Conf. of the NAACP v. Fayette Cty. Bd. of Comm'rs*, 952 F. Supp. 2d 1360, 1362 (N.D. Ga. 2013) (quoting *McFarlin*, 381 F.3d at 1259). Here, interlocutory appeal may effectively

end the litigation. If the Eleventh Circuit were to reverse the Order as to Title VI and dismiss Count IV of the Second Amended Complaint, the Court would have little reason to exercise supplemental jurisdiction as discussed *supra* Part I.B. Ending the lawsuit is the epitome of "materially advanc[ing] ultimate termination." *See* 19 *Moore's* § 203.31 (noting that third factor of § 1292(b) met where, "if [the Order] . . . is reversed on appeal, the action will be terminated in federal court").

Granting permission to appeal now would therefore avoid protracted and expensive litigation. This lawsuit—involving nearly a dozen individuals and entities, most of which are necessarily represented by separate counsel—is in the very early stages. There are pending motions to dismiss, and the defendants have only recently begun filing Answers to Dr. Winer's Second Amended Complaint. Discovery is not scheduled to end until February 8, 2027. As the Court acknowledged, additional litigation regarding Dr. Winer's Count IV is inevitable. [Doc. 192 at 22 ("Whether this [Title VI/Section 1985(3)] claim could withstand summary judgment is a different issue, and not one that is before the Court today.")]. Section 1292(b) was intended to avoid delay, inefficient use of Court and party resources, and increased cost such as would be incurred if the parties were forced to wait until conclusion of this multi-party litigation to obtain Eleventh Circuit review. *McFarlin*, 381 F.3d at 1256 (discussing legislative history). The Proposed Question is ripe for certification.

## CONCLUSION

WHEREFORE, CAIR-Georgia respectfully seeks reconsideration based on the Court's decision regarding the Title VII and § 1981 predicates, the underlying rationale for those holdings, and the Seventh Circuit's rationale in *Boulahanis* to

prevent manifest injustice. Specifically, CAIR-Georgia requests that the Court dismiss Count IV of the Second Amended Complaint, decline to exercise supplemental jurisdiction over the remaining state law claims, and ultimately dismiss this case in its entirety.

In the alternative, CAIR-Georgia requests that the Court amend its Order to expressly state that the Order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the Order may materially advance the ultimate determination of the litigation pursuant to 28 U.S.C. § 1292(b).

Respectfully submitted this 23rd day of September, 2026.

**BUCHALTER LLP**

/s/ *Amanda G. Hyland*
Amanda G. Hyland
Georgia Bar No. 325115
Austin C. Vining
Georgia Bar No. 362473
3475 Piedmont Road NE, Ste. 1100
Atlanta, GA 30305
(404) 832-7350 Telephone
ahyland@buchalter.com
avining@buchalter.com

*Attorneys for Defendant CAIR-Georgia*

**CERTIFICATE OF COMPLIANCE WITH L.R. 5.1**

I HEREBY CERTIFY that the foregoing document was prepared in Times New Roman, 14-point font, as approved by Local Rule 5.1.

/s/ *Amanda G. Hyland*
Amanda G. Hyland
Georgia Bar No. 325115

*Attorney for Defendant CAIR-Georgia*