**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

Joshua Winer,

Plaintiff,

v.

Umaymah Mohammad, AJP Educational Foundation, Inc. A/K/A American Muslims for Palestine, WESPAC Foundation, Inc., Sean Eren as the representative of National Students for Justice in Palestine, Doctors Against Genocide Society, CAIR-Nga Inc. A/K/A CAIR-Georgia, CAIR Foundation Inc., A/K/A Council on Islamic Relations or CAIR, Rupa Marya, Ibrahim Jouja as representative of Emory Students for Justice in Palestine.

Defendants.

Case No. 1:25-CV-02329

**DEFENDANT CAIR-NGA, INC.'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION**

Defendant CAIR-Nga, Inc., ("CAIR-Georgia") files this response in opposition to Plaintiff Joshua Winer's Motion for Reconsideration (the "Motion") [Doc. 198] of this Court's Opinion and Order [Doc. 192] (the "Order"), granting in part and denying in part CAIR-Georgia's Motion to Dismiss Plaintiff's Second Amended Complaint [Doc. 140].

## INTRODUCTION

Dr. Winer's Motion seeks reconsideration of the Court's Order, attempting to revive his § 1985(3)/Title VI claim under the theory pertaining to his employment

by Emory University ("Emory"). Because the Court correctly dismissed that part of his claim, the Court should deny the Motion.

## BACKGROUND

Dr. Winer's Second Amended Complaint offers two theories to support his § 1985(3) claim insofar as it is based on Title VI: (1) CAIR-Georgia engaged in an alleged conspiracy to induce Emory to terminate Dr. Winer (the "Emory Theory"); and (2) CAIR-Georgia engaged in an alleged conspiracy with Defendant CAIR-Foundation Inc. based on the purported denial of unspecified benefits from CAIR-Foundation (the "CAIR-Foundation Theory"). [Doc. 130 at ¶¶ 193, 194, 196].

CAIR-Georgia filed its Motion to Dismiss Plaintiff's Second Amended Complaint on February 13, 2026. [Doc. 140]. As to Dr. Winer's Emory Theory, CAIR-Georgia explained that Dr. Winer failed to allege that Emory receives federal funds for the primary purposes of providing employment, as required to sustain a claim that his rights protected by Title VI have been violated. [*See, e.g.,* Doc. 140-1 at 19-20; Doc. 167 at 12].

Dr. Winer offered a brief response of less than two pages regarding the Emory Theory. [Doc. 150 at 18–19].[1] He did not argue that Emory receives federal funds for the primary purpose of employment. He instead merely tried to avoid that requirement. [*Id.*]

On August 26, 2026, the Court issued its Order ruling on CAIR-Georgia's motion to dismiss Plaintiff's Second Amended Complaint. [Doc. 192]. Regarding Dr. Winer's § 1985(3) claim, the Court allowed the portion of that claim based on

[1] Dr. Winer offered no response whatsoever as to the CAIR-Foundation Theory.

Title VI, insofar as it is based on the CAIR-Foundation Theory, to proceed. [*Id.* at 19, 22]. To the extent that Dr. Winer based his claim on Defendants' alleged conspiracy to pressure Emory to terminate him, the Court held that "nowhere in the Second Amended Complaint does the Plaintiff allege Emory's federal funding as the linchpin for his Title VI-based § 1985(3) claim." [*Id.* at 19].

## APPLICABLE LEGAL STANDARD

"A motion for reconsideration should be granted if it is necessary to correct a clear error or to prevent manifest injustice." *Frascona v. Minn. Mut. Life Ins. Co.*, 53 F. Supp. 2d 1282, 1283 (N.D. Ga. 1998).

## ARGUMENT

The Court properly held that Dr. Winer could not pursue the Emory Theory due to the insufficiency of his pled allegations. Moreover, even if the Court were to agree with Dr. Winer's arguments as to the sufficiency of his allegations, such an acknowledgement should not affect the ultimate disposition of the claim, as the claim fails as a matter of law. The Motion accordingly presents no clear error or manifest injustice, and the Court should accordingly deny it.

### I. The Court Properly Held That Dr. Winer's Allegations Are Insufficient to Support the Emory Theory

Dr. Winer appears to construe the Court's reference to the "linchpin" of the Emory Theory to be directed to only a failure to plead that Emory receives federal funding. [Doc. 198 at 3–7]. In Dr. Winer's view, such an allegation addresses the Court's concerns. The Court's Order cannot be so narrowly construed, however. As important context for the Court's holding as to the Emory Theory, the "linchpin" at

issue, as CAIR-Georgia argued, is the requirement that Emory receives federal funds *for the purposes of providing employment*. [Doc. 140-1 at 19; Doc. 167 at 12-13; *see also infra* Part II (discussing requirement)]. In other words, Dr. Winer's understanding of the required allegations to sustain a Title VI claim within § 1985(3)'s remedial framework, and of the Court's holding, remains incomplete.

The Court's citation to Dr. Winer's opposition to CAIR-Georgia's motion to dismiss, which Dr. Winer relies on [Doc. 198 at 6], thus conveys that Dr. Winer did not, and cannot, make the required allegations to sustain the Emory Theory, as Dr. Winer could identify no such primary-purpose facts in his response (the entirety of which the Court cited, proving the negative) to CAIR-Georgia's argument. Instead, Dr. Winer simply incorrectly argued that there was no such primary-purpose requirement, *not* (even in the alternative) that he could *meet* the requirement. [Doc. 192 at 18–19]. For this reason, the Court should reject Dr. Winer's suggestion that he might be allowed to file a third amended complaint [Doc. 198 at 8], which would indeed cause "undue delay, expense, or inconvenience" [Doc. 198 at 8] through yet another round of extensive motion-to-dismiss briefing from multiple if not all defendants.[2] The Court should at most clarify its holding as to the Emory Theory,

[2] Contrary to Dr. Winer's arguments that "revising [his] one point does not alter the substance of the Court's [O]rder or require reconsideration of any legal questions the Court has already decided" [Doc. 198 at 1], Dr. Winer's § 1985(3)/Title VI claim based on the Emory Theory stands dismissed and his Motion seeks to revive it. Dr. Winer even acknowledges the obvious significant impact of the Court's holding on, for example, the scope of discovery. Dr. Winer cannot "pursue and build a record on the Emory" Theory [Doc. 198 at 7] without reversal of the Court's ruling.

i.e., that Dr. Winer's allegations as to Emory's receipt of federal funding are insufficient to serve as the linchpin of the Emory Theory as a matter of law.

## II. Even If the Court Were to Revisit Its Decision, Dr. Winer Still Cannot Pursue the Emory Theory

In the alternative, if Dr. Winer's interpretation of the Court's Order is correct, the Motion nevertheless fails. Even if the Court were to revisit its Order and conclude that Dr. Winer alleged that Emory receives federal funds, such an allegation is insufficient to survive a motion to dismiss. As CAIR-Georgia explained, Title VI forbids recipients of federal funding from discriminating in employment in only certain specific situations. [Doc. 140-1 at 19; Doc. 167 at 12–13].[3]

In particular, to sustain a Title VI claim involving alleged employment discrimination, a plaintiff must establish not only that the recipient receives federal financial assistance but also that a "primary objective" of the federal funding is to provide employment. 42 U.S.C. § 2000d-3; *Jones v. Metro. Atlanta Rapid Transit Authority*, 681 F.2d 1376, 1378 (11th Cir. 1982). As the *Jones* opinion explains:

> Section 604 authorizes a federal department or agency to maintain an action against employers to enforce Title VI only if the employer receives federal financial assistance *and 'a primary purpose of the Federal financial assistance is to provide employment*.' 42 U.S.C.A. § 2000d-3. Thus in order to bring suit under Title VI, an employer must receive federal funds *for purposes of providing employment*.

---

[3] Under Dr. Winer's view of the Order, the Court would have not reached this issue, which would now need to be addressed and which conclusively resolves the Motion against Dr. Winer, albeit on a different ground than discussed *supra* Part I.

*Id.* (emphasis added).[4] Dr. Winer offered an ineffective distinction to try to avoid the *Jones* holding, arguing that it involves a direct Title VI claim rather than a § 1985(3) claim based on Title VI. [Doc. 150 at 18–19]. This is a distinction without a difference, however. Dr. Winer alleges a conspiracy to deprive him of equal protection. If the hypothetical harm that would have resulted from the alleged conspiracy would not amount to a Title VI violation, Title VI cannot supply the predicate right for § 1985(3) liability. [Doc. 167 at 12].

Indeed, the primary-purpose requirement is consistent with, and important to effectuate, Congress' clear intent that Title VI not impinge on Title VII. *See, e.g., Johnson v. Transp. Agency*, 480 U.S. 616, 628 n.6 (1987) (noting requirement that "a primary objective of the Federal financial assistance is to provide employment" and that "[t]he sponsor of this section, Senator Cooper, stated that it was designed to clarify that 'it was not intended that [Title] VI would impinge on [Title] VII.'") (quoting 110 Cong. Rec. 11615 (1964)).[5] Other Circuits similarly maintain this important distinction between Title VI and Title VII and correctly apply the primary-purpose requirement to resolve claims such as Dr. Winer's as a matter of law. *See, e.g., Reynolds v. School Dist. No. 1, Denver*, 69 F.3d 1523, 1531 (10th Cir. 1995) (affirming grant of motion to dismiss where plaintiff failed to show that a primary

[4] Cases such as *Burton v. City of Belle Glade*, 178 F.3d 1175 (11th Cir. 1999), where the plaintiffs, as tenants, were the beneficiaries of two federally funding housing programs alleging violation of their voting and other civil rights unrelated to employment, are therefore inapplicable to Dr. Winer's Emory Theory.

[5] A more typical Title VI claim, particularly pertaining to educational institutions, would involve decisions as to financial aid, student support services, admission, enrollment, or athletics, for example—not employment. *See, e.g.,* 28 C.F.R. § 42.104(b)(1) (setting forth specific prohibited discriminatory actions).

purpose of federal assistance was to provide employment); *Ass'n Against Discrimination in Emp't v. City of Bridgeport*, 647 F.2d 256, 276 (2d Cir. 1981) (holding that plaintiff failed to prove all elements of Title VI employment-based claim for lack of evidence of primary purpose of federal funds); *Bass v. Bd. of Cty. Comm'rs*, 38 F. Supp. 2d 1001, 1009 (M.D. Fla. 1999) ("Although the plaintiff has presented some evidence that the County received federal funds, there is no evidence that the purpose of those funds was to provide employment. Accordingly, judgment as a matter of law will be granted in favor of the defendant as to the plaintiff's Title VI claim."). Thus, because Dr. Winer did not and cannot allege that Emory receives federal funding specifically for the primary purpose of employment, the Court should deny the Motion.

While Dr. Winer argued that the Seventh Circuit's decision in *Ahern v. Board of Education*, 133 F.3d 975 (7th Cir. 1998), would support the Emory Theory [Doc. 150 at 20], that argument also fails [Doc. 167 at 12–13]. A close reading of *Ahern* reveals that the court agreed with the Department of Education that "the Title VI ban against discrimination in federal programs might be violated by certain *patterns* of faculty and staff assignments" and that "that Title VI authorizes remedial action if *employment practices tend to exclude* from participation, deny benefits to, or otherwise subject the *primary beneficiaries* of a federal program to discrimination in violation of 42 U.S.C. § 2000d." *Ahern*, 133 F.3d at 977 (emphasis added). The *Ahren* case and the cases it cites in support deal with district-wide policies affecting students—the primary beneficiaries of the federal funds. *Id.* (collecting cases). Here, Dr. Winer offers no authority showing that his hypothetical termination from Emory,

in isolation, could rise to the level of a Title VI violation. Dr. Winer has not and cannot show a *pattern* and thus the *Ahern* rationale cannot save Dr. Winer's Title VI/§ 1985(3) claim as applied to his employment with Emory.

As a result of the foregoing law controlling in the employment context, Dr. Winer's arguments regarding the applicability of the Court's holding as to the CAIR-Foundation Theory, i.e., that "no nexus between … receipt of federal funding and [Defendants'] alleged conspiratorial actions … is required" [Doc. 192 at 19], to the Emory Theory [Doc. 198 at 7] are misplaced. Extension of that reasoning *would* "require … substantive revision to this Court's reasoning in denying CAIR-Foundation and CAIR-[Georgia's] motions to dismiss" [Doc. 198 at 7] because it does not take in to account the employment-related nature of the Emory Theory.[6] The Court should decline Dr. Winer's invitation to merge employment-based claims into Title VI claims in the context of this case.

**CONCLUSION**

Dr. Winer's § 1985(3) claim, insofar as it is based on the Emory Theory, fails as a matter of law for failure to sufficiently allege a cognizable Title VI right. The Court should accordingly deny Dr. Winer's Motion.

Respectfully submitted this 6th day of October, 2026.

---

[6] If anything, the Court's refusal to apply its holding regarding the lack of a nexus requirement to the CAIR-Foundation Theory shows that the Court properly viewed the theories as analytically distinct, with different requirements as to the Emory Theory.

**BUCHALTER LLP**

/s/ *Amanda G. Hyland*
Amanda G. Hyland
Georgia Bar No. 325115
Austin C. Vining
Georgia Bar No. 362473
3475 Piedmont Road NE, Ste. 1100
Atlanta, GA 30305
(404) 832-7350 Telephone
ahyland@buchalter.com
avining@buchalter.com

*Attorneys for Defendant CAIR-Georgia*

**CERTIFICATE OF COMPLIANCE WITH L.R. 5.1**

I HEREBY CERTIFY that the foregoing document was prepared in Times New Roman, 14-point font, as approved by Local Rule 5.1.

/s/ *Amanda G. Hyland*
Amanda G. Hyland
Georgia Bar No. 325115

*Attorney for Defendant CAIR-Georgia*