**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| JOSHUA WINER,<br><br>*Plaintiff*,<br><br>v.<br><br>UMAYMAH MOHAMMAD, *et al.*,<br><br>*Defendants.* | Civil Action No.<br>1:25-cv-02329-TWT |

# PLAINTIFF JOSHUA WINER'S RESPONSE TO CAIR-NGA, INC.'S MOTION FOR RECONSIDERATION OR, IN THE ALTERNATIVE, TO AMEND ORDER TO CERTIFY FOR INTERLOCUTORY APPEAL

Lauren Israelovitch
Mark Goldfeder
Ben Schlager
NATIONAL JEWISH ADVOCACY CENTER, INC.
3 Times Square
New York, NY 10036
lauren@njaclaw.org
*Pro Hac Vice*

David F. Katz
The D.F. Katz Law Firm, LLC
1158 Jones Bridge Rd
Ste 420 PMB1090
Johns Creek, GA 30022
T: (404) 918-5707
Dkatz@dfkatzlawfirm.com
Ga. Bar. No. 408738

Josh Belinfante
Anna Edmondson
Miles Skedsvold
ROBBINS ALLOY BELINFANTE LITTLEFIELD LLC
500 14th Street, NW
Atlanta, GA 30318
T: (678) 701-9320
E: mskedsvold@robbinsfirm.com
Ga. Bar No. 371576

Esther Panitch
THE PANITCH LAW GROUP, PC
4243 Dunwoody Club Drive
Suite 205
Atlanta, GA 30350
esther@panitchivory.com
Ga. Bar. No. 143197

# TAOE OF CONTENTS

INTRODUCTION .......... 1

BACKGROUND .......... 4

ARGUMENT .......... 8

I. The motion for reconsideration is baseless. .......... 8

A. CAIR-Georgia's arguments improperly raise issues that were not briefed in its motion to dismiss. .......... 9

B. CAIR-Georgia's reconsideration arguments are flawed on their own terms. .......... 10

1. CAIR-Georgia's rebuttals to this Court's § 1985(3) holding are unpersuasive. .......... 11

2. Even reconsideration of the § 1985(3) holding would not clearly lead to dismissal. .......... 15

II. The motion for interlocutory appeal fails for similar reasons. .......... 20

A. The § 1985(3) case is not the kind of controlling legal question that justifies extraordinary appellate review. .......... 20

B. CAIR-Georgia has not shown substantial grounds for difference of opinion. .......... 22

C. Interlocutory appeal now would not materially advance this litigation. .......... 24

CONCLUSION .......... 25

CERTIFICATE OF COMPLIANCE .......... 27

CERTIFICATE OF SERVICE .......... 28

## INTRODUCTION

Following roughly 17 months of motions practice (as of the date of filing this response), this case is finally moving toward discovery and resolution. This Court has now entertained two rounds of motions to dismiss briefing, a motion for leave to amend the complaint, and several procedural motions besides. After all that time and energy, the Court has largely denied the motions to dismiss filed by Defendants CAIR-Foundation, Inc. and CAIR-NGA, Inc. (also known as "CAIR-Georgia"). Those Defendants have answered, and Plaintiff Dr. Joshua Winer has moved to modify the discovery stay so discovery can proceed while the Court resolves the remaining Defendants' motions to dismiss (which will presumably come out the same way).

Now, however, CAIR-Georgia seeks reconsideration of the Court's careful and considered conclusion that Count IV of the Complaint, alleging a conspiracy to violate civil rights, states a claim for relief—even though the Court also held that Counts I, II, and III were viable, as well. Specifically, CAIR-Georgia wants to relitigate, yet again, whether a claim alleging a conspiracy to violate civil rights under 42 U.S.C. § 1985(3) can be predicated on an attempt to violate Title VI of the Civil Rights Act, 42 U.S.C. § 2000d *et seq*. CAIR-Georgia faults the Court for "sua sponte" considering and declining to follow an out of circuit case that CAIR-Georgia never cited, but somehow

still thinks should have controlled the key question.

Why reconsider just one part of just one of the four claims that survived CAIR-Georgia's motion? Because, CAIR-Georgia says, if the Court decides to dismiss that claim after all, it could also decline supplemental jurisdiction over the state law claims, and dismiss the case. But even if the Court won't go that far, perhaps it will agree that the question is close enough to certify for interlocutory review? That won't dispose of or materially move the case forward on its own, of course—but again, if review *were* permitted, and CAIR-Georgia *did* prevail, then the court *could* also decline supplemental jurisdiction and dismiss the case.

This is senseless, through and through.

First, the bid for reconsideration is plainly baseless. CAIR-Georgia doesn't point to any change in law, or even changed circumstances, and its own brief acknowledges that the arguments it is making now *were not* made in its motion to dismiss briefing. It's well settled that a motion for reconsideration is not the time or place for new arguments, and that alone is enough to deny the motion. But even setting that aside—the legal arguments are wrong for much the same reasons this Court has already (twice) articulated. Besides, even if the Court were to (for some reason) change its previous rulings, there would still be good reason not to decline supplemental jurisdiction—not least the substantial effort that the parties and the Court

have already invested up to this point.

Second, the request for immediate review falters at every step. The § 1985(3) issue is not a controlling question of law because it would not substantially reduce the litigation remaining, given the surviving state-law claims and the separate question of supplemental jurisdiction. In trying to make the issue important enough to warrant halting the normal progress of litigation, CAIR-Georgia again relies on the fact that a favorable ruling on this issue could, if several things go right for it, lead to a decision to decline supplemental jurisdiction. But given the posture of the case, that's not at all an obvious consequence of an appellate ruling in CAIR-Georgia's favor, so that speculative possibility provides no basis for halting the litigation. Nor has CAIR-Georgia shown a substantial ground for difference of opinion. The § 1985(3) issue is simply not that complicated. In arguing otherwise, CAIR-Georgia alternates between relying on a plainly flawed Seventh Circuit decision—which this Court has already considered and declined to follow—and invoking Eleventh Circuit precedent rejecting *different* statutory predicates. Neither argument is persuasive.

Finally, and for related reasons, appellate review now would not materially advance this case. The interlocutory review statute itself makes clear that a case is not stayed simply because there is appellate review—and even if this Court ordered a stay, that would unnecessarily delay resolution of

the *other* defendants' motions to dismiss. And even *then*, assuming the Court declined supplemental jurisdiction on remand, Dr. Winer would still have the right to re-assert his claims in state court.

All told, CAIR-Georgia's request is ill-founded and ill-advised. Even if the Court reversed course and agreed with everything CAIR-Georgia stated in its motion, granting the motion would not "avoid protracted and expensive litigation," dkt. 199-1 at 20, it would just be an enormously wasteful change of venue. The motion should be denied.

## BACKGROUND

As this Court is well aware by now, this is a defamation case. Dr. Joshua Winer is a surgical oncologist at Emory's Winship Cancer Institute and a professor at Emory's School of Medicine, who volunteered as a physician with the Israel Defense Forces following the October 7, 2023 terrorist attacks in Israel. *See* Dkt. 192 at 1–2. After Dr. Winer wrote about his experience in the *Times of Israel*, Defendant Umaymah Mohammad, a student at Emory, told a national news program that he had participated in "aiding and abetting a genocide" and was "now back at Emory so-called teaching medical students and residents how to take care of patients." *Id.* at 1–2.

The remaining Defendants, a group of organizations and individuals, republished and amplified those accusations through press conferences, press

releases, social-media posts, and online campaigns urging Emory to investigate or fire him. *Id.* at 2–4. The relevant defendant here, CAIR-Georgia, hosted a February 2025 press conference further defaming Dr. Winer, and collaborated on an Instagram post that not only rebroadcast Mohammad's hateful remarks to the world, but also directed viewers to an email template and phone script that identified Dr. Winer by name and called on Emory to investigate him or terminate his employment. *Id.* at 3–4.

Dr. Winer asserts claims for defamation per se (Count I), false light invasion of privacy (Count II), civil conspiracy (Count III), and conspiracy to interfere with civil rights under 42 U.S.C. § 1985(3) (Count IV). *See id.* at 5.

After several defendants moved to dismiss, Dr. Winer sought and obtained leave to amend his complaint. The Second Amended Complaint clarified the federal rights that Defendants conspired to deprive him of: namely, rights secured by Title VI and Title VII of the Civil Rights Act of 1964 and by 42 U.S.C. § 1981. Dkt. 109; Dkt. 109-1 ¶¶ 189–96. Notably, in seeking leave to amend, Dr. Winer addressed the Seventh Circuit's decision in *Boulahanis v. Board of Regents*, 198 F.3d 633, 641 (7th Cir. 1999), head-on. He explained that *Boulahanis* rested on an analogy to the Title VII remedial scheme at issue in *Great American Federal Savings & Loan Ass'n v. Novotny*, 442 U.S. 366 (1979), but that Title VI does not share that structure. Dkt. 109 at 15–16.

The defendants—including CAIR-Georgia—joined together to oppose Dr. Winer's request for leave to amend. *See* Dkt. 113. They argued that *Jimenez v. Wellstar Health System,* 596 F.3d 1304 (11th Cir. 2010) "conclusively resolves Dr. Winer's claim based on Title VI" because the Supreme Court has expressly recognized only two rights—interstate travel and freedom from involuntary servitude—as enforceable against private conspirators under § 1985(3). *Id.* at 9–11. But Defendants chose not to engage with *Boulahanis* or with Dr. Winer's critique of it. Instead, they told this Court that it "need not address Dr. Winer's arguments about Seventh Circuit case law relating to his proposed Title VI-based claim (Dkt. 109 at 15-16), because," in their view, "*Jimenez v. Wellstar Health System*, 596 F.3d 1304 (11th Cir. 2010) controls that claim as well." *Id.* at 14.

This Court rejected those arguments. In relevant part, the Court disagreed with Defendants' argument that *Jimenez* foreclosed use of Title VI as a predicate for a claim under § 1985(3). The Court explained that "the fact that neither the Supreme Court nor the Eleventh Circuit appear to have expressly considered this issue with regard to Title VI means it is not barred by precedent," and that, "[a]t the very least, the Defendants have not pointed to any such case, and it is their burden to establish futility." Dkt. 129 at 13. As a result, the Court concluded that Dr. Winer's allegations "facially satisfy the elements of a § 1985(3) claim" predicated on Title VI. *Id.* at 14.

CAIR-Georgia later moved to dismiss the Second Amended Complaint. As to the § 1985(3) claim, CAIR-Georgia again argued (among other things) that § 1981 and Title VII could not serve as predicates under *Jimenez* and *Novotny*, 442 U.S. at 378. Dkt. 140-1 at 17–18. Its reply pressed largely the same points. *See generally* Dkt. 167. But CAIR-Georgia never discussed the Seventh Circuit's *Boulahanis* decision, and it never asked the Court to decline supplemental jurisdiction over the state law claims if it decided to dismiss the § 1985(3) claim.

This Court again rejected CAIR-Georgia's arguments. The Court found that each of Dr. Winer's state law claims was viable, and it dismissed only those portions of the § 1985(3) claim predicated on Title VII and § 1981. Dkt. 192 at 17. But the Court again held that Title VI could be a viable predicate for a § 1985(3) claim. "The Eleventh Circuit does not appear to have addressed whether a violation of Title VI is enforceable against a private conspirator under § 1985(3)," the Court explained, and the only other circuit decision on point—the Seventh Circuit's contrary holding in *Boulahanis*—is "not necessarily . . . persuasive." *Id.* at 17–18. And because Dr. Winer alleged that CAIR-Georgia conspired with CAIR-Foundation—which allegedly receives federal funds[1]—to pressure Emory to discipline or terminate Dr.

---

[1] *See* Dkts. 198, 198-1 (pointing out that Dr. Winer also alleged Emory is a

Winer because of his Jewish identity, the Court concluded that Dr. Winer's § 1985(3) claim was viable with Title VI as the predicate. *Id.* at 18–22.

The Court reached the same conclusion on CAIR-Foundation's motion to dismiss, Dkt. 193 at 23–25, and both CAIR-Foundation and CAIR-Georgia answered, Dkts. 196, 200. Meanwhile, the other Defendants' motions to dismiss remain pending, *see* Dkt. 146, 153, 154, 163, 166, and Dr. Winer has moved to modify the discovery stay so discovery may proceed against any and all Defendants whose motions to dismiss are or will be denied, *see* Dkts. 201, 201-1.

However, on the same day that it answered, CAIR-Georgia also filed a motion for reconsideration or, in the alternative, certification for interlocutory appeal. This response follows.

**ARGUMENT**

**I. The motion for reconsideration is baseless.**

A motion to reconsider the denial of a motion to dismiss is governed by Rule 54(b), and whether to grant it is a matter for the Court's discretion. *See Hornady v. Outokumpu Stainless USA, LLC*, 118 F.4th 1367, 1379 (11th Cir. 2024). CAIR-Georgia contends that the Court should do so because "[t]he Order currently presents internal inconsistencies that rise to the level of

---

relevant recipient of federal funds).

manifest injustice." Dkt. 199-1 at 7. But its arguments to that end fall flat.

At bottom, CAIR-Georgia complains that this Court did not find the Seventh Circuit's decision in *Boulahanis* persuasive enough to dismiss Dr. Winer's Title VI predicate. Dkt. 199-1 at 1–2. CAIR-Georgia wrongly suggests that this Court "*sua sponte* raised" that decision, and then, paradoxically, faults the Court for not following its reasoning. Dkt. 199-1 at 2. CAIR-Georgia proposes that, if the Court *had* reached the same conclusion as Boulahanis (which would be odd, if the Court should not have even considered it *sua sponte*), it would have been obvious that the Court should have "decline[d] to exercise supplemental jurisdiction over Dr. Winer's state law claims[ ] and terminate[d] the case"—even though CAIR-Georgia's motion didn't ask the Court to do so. *Id.* In short: CAIR-Georgia relies on new arguments, which are flawed on their own terms.

**A. CAIR-Georgia's arguments improperly raise issues that were not briefed in its motion to dismiss.**

First of all, these are all new arguments. As CAIR-Georgia itself points out, it didn't cite *Boulahanis* in its motion to dismiss briefing, let alone argue that its reasoning was so persuasive that it had to be followed. Dkt. 199-1 at 8 & n.3 ("The analysis in this part of the Order was not briefed by the parties in connection with the motion to dismiss[.]"); *cf.* Dkt. 129 at 13. And it certainly didn't invite the court to decline supplemental jurisdiction if it

dismissed the § 1985(3) claim. *See generally* Dkt. 140-1, 167. And under CAIR-Georgia's own rubric, dkt. 199-1 at 5–6, a motion for reconsideration shouldn't be used "as a vehicle to present new arguments or evidence that should have been raised earlier, introduce novel legal theories, or repackage familiar arguments to test whether the Court will change its mind." *Mitchom v. Holloway*, No. 1:21-CV-2727-TWT, 2022 WL 1694281, at *1 (N.D. Ga. Apr. 7, 2022) (quotation omitted). That principle is a sound basis to stop there and deny the motion for reconsideration.[2]

### B. CAIR-Georgia's reconsideration arguments are flawed on their own terms.

CAIR-Georgia's suggested bases for reconsideration are substantively flawed, as well. First, CAIR-Georgia's argument that the Court wrongly "*sua sponte*" considered and rejected *Boulahanis*'s reasoning is wrong at every level. And second, even if this Court changed its mind about the Title VI predicate, that would still not inexorably lead to a decision to decline supplemental jurisdiction.

---

[2] And, to whatever extent this isn't a *new* argument, it commits the opposite sin of rehashing an *old* argument. *See Godby v. Electrolux Corp*., No. 1:93-CV-0353-ODE, 1994 WL 470220, at *1 (N.D. Ga. May 25, 1994) ("[a] motion for reconsideration should not be used to reiterate arguments that have previously been made," or "to ask the court to rethink what the Court [has] already thought through—rightly or wrongly."). CAIR-Georgia can't show the manifest injustice it claims simply by reworking arguments of legal error.

### 1. CAIR-Georgia's rebuttals to this Court's § 1985(3) holding are unpersuasive.

First of all, CAIR-Georgia's complaint that the Court "*sua sponte*" raised *Boulahanis* confuses courts and litigants. Courts are required to decide cases before them based on the law; they should not raise new *issues*, to be sure, but there is nothing improper about courts deciding cases by reference to authorities the parties didn't directly address. Courts do that every day.

Second, CAIR-Georgia's premise is wrong. The Court did not "*sua sponte*" "raise" *Boulahanis*—Dr. Winer raised it himself in his motion for leave to amend. *See* Dkt. 109 at 15–16. CAIR-Georgia then signed a joint opposition brief opposing that motion which acknowledged "Seventh Circuit case law," and told the court *not* to address it. Dkt. 113 at 14. CAIR-Georgia then failed or declined to cite *Boulahanis* in its motion to dismiss briefing, presumably to focus the Court on the *Jimenez* argument. *See* Dkts. 140-1, 167. So there can be no serious suggestion that CAIR-Georgia was somehow caught unaware that the Court might consider *Boulahanis*.

Third, it is more than passing strange for CAIR-Georgia to complain that the Court cited *Boulahanis*, since the Court specifically found that case *not* necessarily persuasive. Even if it would somehow have been a problem to cite an un-briefed case for the conclusion that Dr. Winer's claim survived, CAIR-Georgia cannot complain that the Court discussed a case supporting

the outcome that *CAIR-Georgia* wanted, even though it declined to follow it. That's especially true because—again—CAIR-Georgia didn't cite that case itself.

Finally, CAIR-Georgia is simply wrong on substance—there is nothing inconsistent about following binding precedent like *Jimenez* and *Novotny*, but not non-binding and poorly reasoned out-of-circuit authority like *Boulahanis*. CAIR-Georgia reasons that "the Seventh Circuit's reasoning is based in large part on *Novotny*, the same case [this] Court relied on to dismiss Dr. Winer's Title VII predicate[,] and the same case the *Jimenez* court" relied on to reject a § 1981 predicate. Dkt. 199-1 at 10. In essence, CAIR-Georgia says these and similar cases rely on the fact that allowing certain claims to be brought through 42 U.S.C. § 1985(3) would circumvent "comprehensive enforcement scheme[s]" under the substantive laws themselves (e.g., EEOC proceedings under Title VII). *Id.* (quotation omitted). CAIR-Georgia thinks that allowing a Title VI claim like Dr. Winer's would have the same problem—so, it reasons, Dr. Winer's claim should be barred under the same logic, even if *Boulahanis* itself doesn't control. Dkt. 199-1 at 10–11.

The problem is that both CAIR-Georgia and *Boulahanis* fail to distinguish between causes of action under Title VI. Even if *Novotny* barred all use of Title VII as a predicate, Title VI does not share its remedial structure for individual claims. Title VI *has* a judicial review provision, to be

sure, but it applies only to "department or agency action taken pursuant to section 2000d-1," and review from "terminating or refusing to grant or to continue financial assistance[.]" 42 U.S.C. § 2000d-2. Meanwhile, it is "beyond dispute that private individuals may sue to enforce § 601" of Title VI. *Alexander v. Sandoval*, 532 U.S. 275, 280 (2001); *Bloomberg v. New York City Department of Education*, 119 F.4th 209, 214 (2d Cir. 2024). And "it is established, as a general matter, that Title VI . . . does not incorporate Title VII's requirement of exhaustion of administrative remedies." *Doe v. Garrett*, 903 F.2d 1455, 1460 (11th Cir. 1990) (collecting cases). *Boulahanis* seemed to miss that distinction altogether. *See* 198 F.3d at 641.[3]

CAIR-Georgia makes much of the fact that 42 U.S.C. § 1981 does not require administrative exhaustion either, but in doing so, it asks the Court to extend an extension. *Jimenez* addressed Title VII and § 1981, not Title VI. And it did not rest its § 1981 holding on the presence or absence of a "comprehensive structure Congress created to address the problem of racial discrimination at federally-funded institutions," like the Seventh Circuit did for Title VI in *Boulahanis*, 198 F.3d at 641. It simply "grouped Title VII and

[3] Whatever new arguments CAIR-Georgia might dream up on reply should not be considered in deciding this motion because CAIR-Georgia is limited to the arguments it made in its opening brief, *see Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 682–83 (11th Cir. 2014) (arguments raised for the first time in a reply brief are waived).

§ 1981 claims [together] for analytic purposes," because that's what the Eleventh Circuit has done in assessing the two statutes on the merits, *Jimenez*, 596 F.3d at 1312. But even assuming that's analytically sound,[4] it's not the *Boulahanis* reasoning, so applying it to Title VI is undeniably an extension of precedent. And this Court should be reticent to do that, since the Eleventh Circuit has also equated Title VI with the Equal Protection Clause of the United States Constitution, *see Adams v. Demopolis City Schs.,* 80 F.4th 1259, 1273 (11th Cir. 2023) (collecting cases). *Surely*, an Equal Protection claim would be a valid predicate for a cause of action alleging a conspiracy "for the purpose of depriving . . . any person . . . of the *equal protection of the laws*," 42 U.S.C. § 1985(3) (emphasis added). Given that Title VI is comparable, and there's no remedial scheme to circumvent, why shouldn't that predicate work as well? Again: CAIR-Georgia is asking this Court to extend an extension—from *Novotny* and Title VII to *Jimenez* and § 1981, all the way to this case and Title VI. Declining to do so isn't a "manifest injustice" that warrants reconsideration.

[4] In point of fact, that comparison is simply wrong as a matter of formal logic, which is why Dr. Winer preserves his argument that *Jimenez* was wrongly decided and ought to be overruled by the en banc Eleventh Circuit or the United States Supreme Court. Dkt. 109 at 14; *see also id.* at 2, 6, 12, 16; Dkt. 150 at 22 (similar); Dkt. 144 at 27 (the relevant portion of *Jimenez* may also be dicta).

Thus, there is no basis to reconsider the Court's ruling on Dr. Winer's § 1985(3) claim, and no purpose in considering CAIR-Georgia's (late-breaking) request to decline supplemental jurisdiction.

### 2. Even reconsideration of the § 1985(3) holding would not clearly lead to dismissal.

But even if the Court decided to reverse course on everything it's held so far, CAIR-Georgia's bid for reconsideration and dismissal would still fail at its final step. Specifically, CAIR-Georgia's bid for reconsideration depends on the supposition that, if the Court did so, it could then decline supplemental jurisdiction. But the supplemental jurisdiction question is legally distinct from the merits, and very much *not* in CAIR-Georgia's favor here.

28 U.S.C. § 1367(a) gives district courts "supplemental jurisdiction" over state law claims "that are so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." District courts "may"—not must—"decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c)(3). To be sure, the Eleventh Circuit has "encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial." *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004).

But it is equally clear that district courts have discretion to retain jurisdiction based on "judicial economy[,] convenience and fairness to litigants[.]" *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966).

Contrary to CAIR-Georgia's suggestion, those factors would counsel in favor of retaining supplemental jurisdiction. "[T]he policy of supplemental jurisdiction is to support the conservation of judicial energy and avoid multiplicity in litigation." *Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733, 746 (11th Cir. 2006) (citing *Rosado v. Wyman*, 397 U.S. 397, 405 (1970)). That policy interest is present here in spades.

First of all, this case has already been pending in this Court for roughly 17 months and counting—in large part due to prolonged motions practice which has made this Court well familiar with the factual and legal questions at issue. It would squander all that work to decline supplemental jurisdiction only to leave a state court to start over from scratch. *See Parker*, 468 F.3d at 746 ("Having a state court rehash issues that have already been argued in federal court is far more likely to cause multiplicity in litigation" than a federal court handling state law claims, so "a court should retain jurisdiction over state law claims 'where substantial judicial resources have already been committed,'" since "'sending the case to another court will cause a substantial duplication of effort.'" (quoting *Graf v. Elgin, Joliet and Eastern Ry. Co.*, 790

F.2d 1341, 1347–48 (7th Cir. 1986)).[5] Thus, judicial economy and convenience are best served by retaining jurisdiction.

Second, there would be serious fairness concerns with declining supplemental jurisdiction. Dr. Winer brought this case to federal court in good faith, and has pleaded a federal claim that this Court has found *survives* Rule 12(b)(6). Dkts. 129, 192. By contrast, CAIR-Georgia wants a do-over of these thoroughly-litigated questions, ideally in state court so that CAIR-Georgia can make use of an anti-SLAPP procedure that does not apply in federal court. *See* Dkt. 199-1 at 13; *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1350 (11th Cir. 2018). But it is *plaintiffs*, not defendants, who are entitled to choose the forum. So Dr. Winer is entitled to his choice of forum, and depriving him of it specifically to hand more litigation tools to defendants like CAIR-Georgia would be patently unfair.

Plus, CAIR-Georgia may well argue that a renewal action brought in state court is barred by the statute of limitations.[6] *See Edwards v. Okaloosa Cnty.*, 5 F.3d 1431, 1433 (11th Cir. 1993) (under the pre- § 1367 common law pendent jurisdiction, "[t]he running of a state statute of limitations is an

---

[5] CAIR-Georgia's proposed order makes this wastefulness evident. It vacates *all* of dkt. 192, including the state law rulings that CAIR-Georgia doesn't challenge. *See* Dkt. 199-2 at 1–2.

[6] Georgia's statute of limitations for defamation claims is just one year. *See* O.C.G.A. § 9-3-33.

important factor for the district court to consider"). Regardless of whether that claim would succeed, *see Artis v. D.C.*, 583 U.S. 71 (2018), this Court has already found that Dr. Winer has presented a substantial federal claim. *See* Dkts. 129, 192. Opening the door to unnecessary litigation over the statute of limitations simply because the Court changed its mind about the federal claim would be deeply unfair.

Finally, state-federal comity concerns are not ill served by retaining supplemental jurisdiction. CAIR-Georgia does not deny that all Dr. Winer's claims form one case or controversy. State law or not, federal courts decide defamation and reputational harm claims like this one all the time, and that does not threaten any sovereign interest belonging to the State of Georgia or its courts. *See Parker*, 468 F.3d at 743 ("Generally, state tort claims are not considered novel or complex" for purposes of § 1367).

CAIR-Georgia's arguments to the contrary are unpersuasive. First, CAIR-Georgia says "this case is in its early stages[.]" Dkt. 199-1 at 12. But of course, that's only true in the sense that this case has only recently moved past the pleading stage. The Court and the parties have invested real time and effort (over two hundred docket entries) in litigating this case in federal court, and declining supplemental jurisdiction would result in needless duplication of those efforts and require a state court to start over.

Second, CAIR-Georgia says that "the investment of potentially years'

[more] time in a case that was improvidently brought in federal court is not justified." Dkt. 199-1 at 12. But with all due respect, wishing does not make it so. This Court has *twice* said that the § 1985(3) claim is viable. *See* Dkts. 129, 192–93. So bringing suit in federal court was hardly improvident. And given how much time and effort has already been spent in federal court, there is much greater reason to continue litigating this case in the same forum than to require a state court to start from scratch. CAIR-Georgia's suggestions that "there is no basis to conclude that federal court would be more convenient than state court," and that "[c]onsiderations of fairness [ ] counsel against the exercise of continued jurisdiction," flatly ignore the substantial efforts already devoted to this case. Dkt. 199-1 at 13.

Finally, CAIR-Georgia says that "[m]atters of state law should be left to state courts." *Id.* But again: federal courts resolve defamation claims predicated on state law all the time. What CAIR-Georgia really seeks in state court is access to the anti-SLAPP procedure available in state courts but not federal courts. *See id.* (citing *Carbone,* 910 F.3d at 1350). But that's not a comity concern—it's a defendant wishing *it* could choose the forum, when that is the Plaintiff's prerogative. If bringing this case in federal court was an "end run around state law," Dkt. 199-1 at 14, then that's a maneuver the rules have long permitted.

In sum, even if this Court reconsidered its § 1985(3) ruling, and agreed

to entertain CAIR-Georgia's supplemental jurisdiction arguments, there would be no reason to decline supplemental jurisdiction—and many good reasons not to.

## II. The motion for interlocutory appeal fails for similar reasons.

If this Court will not grant reconsideration and agree to decline supplemental jurisdiction, CAIR-Georgia suggests another discovery avoidance tactic: interlocutory appeal. In essence, CAIR-Georgia suggests that the § 1985(3) question here is so complex that it warrants immediate appellate review and (assuming the Court agrees and CAIR-Georgia prevails), perhaps *then* this Court will agree to decline supplemental jurisdiction. Turtles, all the way down.

### A. The § 1985(3) case is not the kind of controlling legal question that justifies extraordinary appellate review.

28 U.S.C. § 1292(b) provides that, "[w]hen a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion[,] and that an immediate appeal from the order may materially advance the ultimate termination of the litigation," he can "so state in writing in such order," and then the Court of Appeals has discretion to accept the appeal or not.

CAIR-Georgia suggests that the viability of a § 1985(3) claim

predicated on Title VI is a controlling question of law. Dkt. 199-1 at 15–16.[7] But in arguing that resolution of that question could end the litigation, CAIR-Georgia conflates the resolution of the § 1985(3) claim with the resolution of the case as a whole. *See* Dkt. 199-1 at 16–17 (referring back to I(B), which urged the court to decline supplemental jurisdiction if it reconsidered the § 1985(3) claim).

In this sense, CAIR-Georgia has not shown that the § 1985(3) question is controlling in a way that would substantially reduce the litigation remaining: even if the Eleventh Circuit ordered Count IV dismissed, there would still be a separate question about whether to exercise supplemental jurisdiction over the remaining claims. And as discussed above, there are many good reasons why retaining supplemental jurisdiction would be appropriate. Thus, CAIR-Georgia has not shown that resolution of the § 1985(3) claim would terminate the action or substantially advance it toward that end.

---

[7] For what it's worth, the surviving claim at this point is that the defendants conspired with CAIR-Foundation, a recipient of federal funds, Dkt. 192 at 18–19, and CAIR-Foundation denied that it received federal funding during the period relevant to the SAC in its answer, dkt. 196 ¶ 20. Dr. Winer does not concede that point, and has moved for reconsideration of the Court's determination that Dr. Winer did not similarly allege Emory's funding as a basis for a Title VI predicate, *see* Dkts. 198, 198-1, but the point remains that (as things stand) factual and procedural complications make this a poor vehicle to test the legal proposition CAIR-Georgia wishes to appeal.

### B. CAIR-Georgia has not shown substantial grounds for difference of opinion.

As the party seeking an appeal, CAIR-Georgia has the burden of establishing that fact. *See McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1263 (11th Cir. 2004). But CAIR-Georgia has failed to do so.

The problem with CAIR-Georgia's argument is that, while the Eleventh Circuit has never decided the viability of Title VI as a predicate, it is not a particularly difficult question. Section 1985(3) gives a cause of action to any person "injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States" by a conspiracy to "depriv[e him], either directly or indirectly . . . of the equal protection of the laws, or of equal privileges and immunities under the laws[.]" If a plaintiff alleges a conspiracy by a defendant to induce his employer to violate his Title VI rights "on the basis of race, color, or national origin . . . in the course of a federally funded program," Dkt. 192 at 19–20, and injury to his person or property from acts in furtherance of that conspiracy, those allegations fit § 1985(3)'s express terms.

CAIR-Georgia's argument to the contrary starts with the lack of authority recognizing a Title VI predicate for § 1985(3) liability, and ends with *Boulahanis*. Dkt. 199-1 at 18–19.

But just as the absence of evidence is not evidence of absence, so the

lack of precedent for a claim is not precedent that a claim is lacking. And there is not some deep and acknowledged split of authority that calls out for Eleventh Circuit review—this is just an innovative claim, which does not justify halting the progress of this Court and invoking Eleventh Circuit review instead. Indeed, CAIR-Georgia continues to overlook the central point: *Boulahanis* simply isn't very well reasoned. That point has been addressed above, in Dr. Winer's prior briefing, Dkt. 109 at 15–16, and in this Court's order largely denying CAIR-Georgia's motion to dismiss, Dkt. 192 at 17–18.

Second, and more broadly, it is odd for CAIR-Georgia to assert that *Boulahanis* creates a substantial ground for difference of opinion, dkt. 199-1 at 17–18, when it originally told the Court that "the Court need not address Dr. Winer's arguments about Seventh Circuit case law relating to his proposed Title VI-based claim (Dkt. 109 at 15-16), because *Jimenez* controls that claim as well, as discussed above," Dkt. 113 at 14. Since *Jimenez* does not resolve the question as to a Title VI claim, dkt. 192 at 17, relying on *Boulahanis* now is incongruous and unconvincing. And of course, without *Boulahanis*, CAIR-Georgia hasn't pointed to any meaningful split of authority, so its claim reduces to the supposition that this is an "issue of first impression in the Eleventh Circuit," dkt. 199-1 at 17, which is just the same flawed logic this Court has already rejected, dkt. 129 at 13.

CAIR-Georgia can and no doubt will seek review of the Title VI

predicate issue after final judgment, and there is simply no good reason to halt this already long-running litigation to do so now.

### C. Interlocutory appeal now would not materially advance this litigation.

The question here is whether resolution of the issue "would serve to avoid a trial or otherwise substantially shorten the litigation." *McFarlin*, 381 F.3d at 1259 (citing 16 Charles Alan Wright, et al., *Federal Practice & Procedure* § 3930 at 432 (2d ed. 1996)).

First of all, CAIR-Georgia has the mechanics wrong. 28 U.S.C. § 1292(b) explains that an interlocutory appeal "shall not stay proceedings in the district court unless the district judge or the Court of Appeals . . . shall so order." So even upon this Court's permission to seek an interlocutory appeal, CAIR-Georgia would need to ask the court to stay further proceedings—which Dr. Winer (needless to say) would oppose. This case has been pending for more than 17 months now, and CAIR-Georgia has never (until now) flagged the § 1985(3) issue for interlocutory appeal. Since the Court has largely denied the motion to dismiss, Dr. Winer intends to, and is entitled to, press forward with discovery and has moved to modify the stay accordingly. *See* Dkts. 201, 201-1.

And even if the Court *granted* a stay, several other motions to dismiss would remain pending. Resolution of those already-briefed motions would be

delayed. So a stay of proceedings to accommodate an interlocutory appeal would *halt* the progress of this case—not move it forward.

Yet even setting all that aside, an interlocutory appeal still wouldn't materially advance the litigation. There would still be a separate inquiry into supplemental jurisdiction, *contra* Dkt. 199-1 at 20, and the reasons discussed above weigh strongly in favor of retaining jurisdiction. And even if the Court declined supplemental jurisdiction, Dr. Winer could still re-assert most of his claims here in state court.

So even if all CAIR-Georgia's dreams came true, that would not "avoid protracted and expensive litigation" dkt. 199-1 at 20, it would just be an enormously wasteful change of venue.

## CONCLUSION

For these reasons, the Court should deny CAIR-Georgia's motion.

Respectfully submitted this 7th day of October, 2026.

Lauren Israelovitch
Mark Goldfeder
Ben Schlager
NATIONAL JEWISH ADVOCACY CENTER, INC.
3 Times Square
New York, NY 10036
lauren@njaclaw.org
*Pro Hac Vice*

*/s/ Miles C. Skedsvold*
Josh Belinfante
Anna Edmondson
Miles Skedsvold
ROBBINS ALLOY BELINFANTE LITTLEFIELD LLC
500 14th Street, NW
Atlanta, Georgia 30318
T: (678) 701-9320
E: mskedsvold@robbinsfirm.com
Ga. Bar. No. 371576

David F. Katz
The D.F. Katz Law Firm, LLC
1158 Jones Bridge Rd
Ste 420 PMB1090
Johns Creek, GA 30022
T: (404) 918-5707
Dkatz@dfkatzlawfirm.com
Ga. Bar. No. 408738

Esther Panitch
THE PANITCH LAW GROUP, PC
4243 Dunwoody Club Drive
Suite 205
Atlanta, GA 30350
esther@panitchivory.com
Ga. Bar. No. 143197

**CERTIFICATE OF COMPLIANCE**

By signature below, counsel certifies that the foregoing pleading was prepared in Century Schoolbook, 13-point font, in compliance with Local Rule 5.1(C).

*/s/ Miles C. Skedsvold*
Miles C. Skedsvold

## CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically filed the within and foregoing **PLAINTIFF JOSHUA WINER'S RESPONSE TO CAIR-NGA, INC.'S MOTION FOR RECONSIDERATION OR, IN THE ALTERNATIVE, TO AMEND ORDER TO CERTIFY FOR INTERLOCUTORY APPEAL** with the Clerk of Court using the CM/ECF electronic filing system, which suffices for service on all counsel of record who have entered an appearance in the case under L.R. 5.1(A)(3).

This 7th day of October, 2026.

*/s/ Miles C. Skedsvold*
Miles C. Skedsvold