**IN THE UNITED STATES DISTRICT COURTFOR THE NORTHERN DISTRICT OF GEORGIAATLANTA DIVISION**

| | |
|---|---|
| Joshua Winer,<br>Plaintiff,<br>v.<br>Umaymah Mohammad, AJP Educational Foundation, Inc. A/K/A American Muslims for Palestine, WESPAC Foundation, Inc., Sean Eren as the representative of National Students for Justice in Palestine, Doctors Against Genocide Society, CAIR-Nga Inc. A/K/A CAIR-GA, CAIR Foundation Inc., A/K/A Council on Islamic Relations or CAIR, Rupa Marya, Ibrahim Jouja as representative of Emory Students for Justice in Palestine.<br>Defendants. | Case No. 1:25-CV-02329 |

**DEFENDANT CAIR-NGA, INC.'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR RECONSIDERATION OR, IN THE ALTERNATIVE, TO AMEND ORDER TO CERTIFY FOR INTERLOCUTORY APPEAL**

Defendant CAIR-Nga, Inc. ("CAIR-GA") files this reply brief in support of its Motion for Reconsideration or, in the Alternative, to Amend Order to Certify for Interlocutory Appeal [Doc. 198] ("Motion").

## INTRODUCTION

Plaintiff seeks to convolute CAIR-GA's simple argument that based on established precedent, Title VI cannot serve as the predicate for a § 1985(3) claim. Instead of showing why a § 1985/Title VI claim could survive, Plaintiff merely asks

"Why not?" Against the backdrop of repeated warnings against expanding the rights cognizable under § 1985(3) and analogous precedent, the answer is clear. Allowing the claim would expand precedent and constitute a manifest injustice.

Because the § 1985/Title VI claim based on the CAIR-Foundation Theory lacks merit as a matter of law, the Court should dismiss the entire action. Plaintiff is not entitled to a federal forum through supplemental jurisdiction.

Alternatively, appellate review is appropriate. Interlocutory appeals are not the stuff of "dreams" as Plaintiff's brief pejoratively quips. While not routine, such review is necessary in many cases and interlocutory appeals are expressly authorized by statute, with specific criteria—all of which are met here. Plaintiff offers no reason grounded in the applicable analysis *not* to certify, and the Court should grant CAIR-GA's request under 28 U.S.C. § 1292(b) if it does not dismiss the case.

## ARGUMENT

### I. The Court Should Reconsider Its Order and Dismiss the Case

#### A. The Court Should Dismiss the Remaining Federal Claim

CAIR-GA's argument is simple: Based on binding Supreme Court and Eleventh Circuit precedent, elucidated in the reasoning from the Seventh Circuit's *Boulahanis* opinion, Title VI cannot serve as a predicate for a § 1985(3) claim. Plaintiff's attempt to overcomplicate this issue should be disregarded. Plaintiff asks "why shouldn't [a Title VI] predicate work as well?" [Doc. 207 at 14], but the appropriate question is "*why should it?*"

Plaintiff's counsel recently advanced the same argument CAIR-GA advances here:

> Where, as here, the alleged conspirators are private actors, a plaintiff must allege that the conspiracy was aimed at rights constitutionally protected against private impairment. *Jimenez v. Wellstar Health Sys.*, 596 F.3d 1304, 1312 (11th Cir. 2010). The Supreme Court and the Eleventh Circuit have explained that, under existing precedent, the universe of rights protected from purely private encroachment is exceedingly narrow, consisting principally of the Thirteenth Amendment right to be free from slavery and the right to interstate travel. *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 278 (1993); *Trawinski v. United Techs.*, 313 F.3d 1295, 1299 (11th Cir. 2002) ("The list of rights protected from both official and private encroachment is short.").
>
> Measured against that standard, the SAC does not identify any right protected against private impairment that [defendant] allegedly conspired to violate under controlling Eleventh Circuit precedent. The SAC does not allege interference with the right to interstate travel or any condition approaching involuntary servitude.

*AbouYabis v. Emory University et al.*, No. 1:25-cv-02438 (N.D. Ga. Dec. 19, 2025), Doc. 40-1 at 9 (Defendant's Brief in Support of Motion to Dismiss); *see also id.,* Doc. 60 at 9 (Defendant's Reply) ("The fact that *Griffin* did not purport to catalog every conceivable right does not relieve [plaintiff] of her burden to identify one that actually falls within the narrow category protected against private impairment.").

The same is true here. Instead of meeting his burden to identify a right that actually falls within the narrow category protected against private impairment, Plaintiff has adopted a strategy of assuming that Title VI rights can serve as a predicate for his § 1985(3) claim, *unless Defendants prove otherwise*. Plaintiff makes much ado about an "exten[sion] of an extension," without appreciating the irony here where *he* seeks to create new precedent in allowing the Title VI predicate.

The Eleventh Circuit, following the lead of the Supreme Court, has been reticent to allow new predicates for § 1985(3) claims. *See Jimenez v. WellStar Health*

*Sys.*, 596 F.3d 1304, 1312 (11th Cir. 2010) ("[B]ecause the Supreme Court has been conservative in designating which rights litigants may enforce against private actors under § 1985(3), we hold conspiracies to violate rights protected under § 1981 are likewise insufficient to form the basis of a § 1985(3) claim."); *Trawinski v. United Techs.*, 313 F.3d 1295, 1299 (11th Cir. 2002) ("The list of rights protected from both official and private encroachment is short, and none of the affected rights asserted by the [plaintiff] rise to this level.") (internal citation omitted). Plaintiff never explains why Title VI should be the exception.

Plaintiff likewise takes too narrow a view of the "comprehensive enforcement scheme" language by focusing on (1) the ability for individuals to sue to enforce Title VI and (2) Title VI not requiring administrative remedies to be exhausted. However, this discounts that Congress has established a comprehensive enforcement scheme within Title VI. That plaintiffs may bring a private suit under Title VI misses the mark. Bypassing Title VI is not the concern. Rather, where Congress has provided a comprehensive enforcement scheme, it typically intends for those remedies to be exhaustive. *See Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n*, 453 U.S. 1, 20 (1981) ("[W]hen the remedial devices provided in a particular Act are sufficiently comprehensive, they may suffice to demonstrate congressional intent to preclude the remedy of suits under § 1983.").

In Title VI, Congress established a comprehensive administrative remedial structure and a private right of action. Notably, the private right of action may only be brought against recipients of federal funding. *Shotz v. City of Plantation*, 344 F.3d 1161, 1170 (11th Cir. 2003) ("To conclude otherwise, and license individual liability

for violations of Title VI, would exceed the allowed scope of government enforcement action under the statute."). Also notably, and echoing concerns raised by the *Novotany* Court, punitive damages are not permissible for a Title VI claim. *Barnes v. Gorman*, 536 U.S. 181, 183 (2002) ("Punitive damages are generally not available for breach of contract, nor could an implied punitive damages provision reasonably be found in Title VI."); *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 376 (1979) (listing ways a Title VII predicate for a § 1985(3) claim would bypass legal provisions, including the ability to recover punitive damages). Allowing the § 1985/Title VI claim would bypass both of these provisions.

Finally, the Eleventh Circuit's ban on § 1981 predicates for § 1985(3) claims further underscores that *Jimenez* does not hinge on a predicate's requirement for administrative exhaustion prior to suit. *Jimenez* cited a Third Circuit opinion that likewise explained that "the great weight of precedential authority, however, supports the traditional limitation of § 1985(3) to questions of interstate travel and involuntary servitude and does not suggest that §§ 1981 or 1982 claims in general may form the basis of a § 1985(3) action." *Jimenez*, 596 F.3d at 1312 n.7 (citing *Brown v. Philip Morris, Inc.*, 250 F.3d 789, 806 (3d Cir. 2001)).

Moreover, Plaintiff's contention that the Title VI predicate should be permitted because the Eleventh Circuit has "equated" the statute with equal protection claims is illogical. [Doc. 207 at 14]. The Eleventh Circuit also analyzes Title VII, § 1981, and § 1983 claims based on the Equal Protection Clause together. *See Kelley v. Howden*, No. 21-13573, 2022 U.S. App. LEXIS 32851, at *7 (11th Cir. Nov. 29, 2022) (collecting cases) ("[T]he §§ 1981 and 1983 claims are subject to the

same standards of proof and use the same analytical framework as intentional discrimination claims brought under Title VII, where the claims are based on the same set of facts."). It is beyond dispute that Title VII and § 1981 cannot serve as predicates for § 1985(3) claims in this circuit, so Plaintiff's argument is a nonstarter.

Given Plaintiff's failure to carry his burden, the repeated warnings against new § 1985(3) predicates, and the reasoning of binding and persuasive authority, allowing the § 1985(3) claim to proceed would be a manifest injustice.

**B. Supplemental Jurisdiction Is Not Appropriate**

Contrary to Plaintiff's argument that "CAIR-GA's bid for reconsideration *depends on* the supposition that, if the Court … [reversed course on the § 1985(3)/Title VI claim], it could then decline supplemental jurisdiction" [Doc. 207 at 15 (emphasis added)], the Court should reconsider the legal viability of Plaintiff's § 1985(3)/Title VI claim regardless of supplemental jurisdiction. But given the potential for the sole barely-remaining federal claim to be eliminated, an assessment of continued jurisdiction is warranted.

Pendent jurisdiction is "not … plaintiff's right," and "[n]eedless decisions of state law *should be avoided*," *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) (emphasis added). Plaintiffs have no entitlement to a federal forum without claims properly in federal court, despite Plaintiff's insistence regarding "Plaintiff's prerogative" [Doc. 207 at 19; *see also id.* at 17 ("[P]laintiffs … are entitled to choose the forum.")]. This is particularly the case where state issues substantially predominate. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). Here,

if the Court grants the request for reconsideration, only Counts I-III—based on state law—would remain, with no federal claim to support continued jurisdiction.

Plaintiff responds with conclusory assertions regarding state law torts being resolved in federal forums and citations to inapplicable cases [Doc. 207 at 18-19]. In *Carbone v. CNN, Inc.*, 910 F.3d 1345 (11th Cir. 2018), the case was properly before the Northern District of Georgia based on diversity jurisdiction, *id.* at 1349, which does not exist here. And *Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733 (11th Cir. 2006), involved "substantial federal claims" and "the federal claims did not 'drop out,'" *id.* at 743, 744—also not the case here. Under these circumstances, Plaintiff has offered no compelling justification to continue to exercise federal jurisdiction if the Court dismisses the § 1985(3)/Title VI claim.

In terms of the timing issues Plaintiff raises [Doc. 207 at 16], "if the federal claims are dismissed *before trial* … the state claims *should be dismissed* as well." *Gibbs*, 383 U.S. at 726 (emphasis added); *see also id.* at 727 ("[T]he issue whether pendent jurisdiction has been properly assumed is one which remains open throughout the litigation."). Although the Court has discretion, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Cohill*, 484 U.S. at 350 n.7. Plaintiff's mantra regarding the length of time his case has been pending is therefore meritless as a matter of law.

Plaintiff also ignores important context, namely Plaintiff's singular role in the protraction of this suit by: (1) initially filing in federal court with no basis for the

claimed diversity jurisdiction, then (2) hastily tacking on insufficiently-alleged federal claims to avoid dismissal, which (3) forced a round of motion-to-dismiss briefing, (4) resulting in a Second Amended Complaint, with (5) federal claims that fail as a matter of law. Because the Second Amended Complaint did not become the operative pleading until nearly nine months into the case, the "seventeen months and counting" [Doc. 207 at 16] math does not tell the full story, to say the least. Even worse, Plaintiff has stated his willingness to amend his complaint *again* and delay this case for an additional round of motion-to-dismiss briefing if it suits him [Doc. 198 at 2 n.2], rendering his complaints non-credible.

Plaintiff's complaints about redundancy of effort [Doc. 207 at 16] are also unfounded. The Court has only ruled preliminarily, addressing pleading-stage issues and applying pleading-stage analysis. As the Court noted, "summary judgment is a different issue, and not one that is before the Court today." [Doc. 192 at 22]. Moreover, the Court has also already done the important work of narrowing the federal issues, with nothing for a state court to resolve let alone duplicate in terms of federal claims if the Court revises its § 1985(3)/Title VI ruling. Moreover, the Eleventh Circuit has held that supplemental jurisdiction does not turn on the length of time and number of docket entries involved in a case, and it has faulted litigants for failing to "take into account" that *they* were "responsible for waste" in assessing supplemental jurisdiction. *Ameritox, Ltd. v. Millennium Labs., Inc.*, 803 F.3d 518, 539 (11th Cir. 2015). The *Ameritox* court held that in such circumstances, "considerations of judicial economy do not favor retaining jurisdiction over the state-law claims"—even after trial. *Id.* at 539. The same is true here.

Plaintiff's claims of "fairness concerns" [Doc. 207 at 17] likewise ring hollow. He lays bare his gamesmanship in inserting a federal claim to avoid defendants' ability to rely on anti-SLAPP law [*id.* at 17]–provided for under Georgia law and only underscoring the comity concerns that weigh in favor of state courts resolving this case. Similarly, Plaintiff's statute-of-limitations concern is unanalyzed, relying on a case that predates 28 U.S.C. § 1367 [*id.*] while simultaneously invoking tolling [*id.* at 18 (citing *Artis v. D.C.*, 583 U.S. 71 (2018))]. Regardless, Plaintiff has acknowledged that he can "refile in state court" [Doc. 209 at 11] and any disadvantage that may or may not come to pass is of his own making, as discussed above. *See, e.g., Ameritox*, 803 F.3d at 539 ("Ameritox has only itself to blame for the problems inherent in its … theory. … [E]very litigant who brings supplemental claims in court *knowingly risks the dismissal of those claims*.") (emphasis added). Plaintiff's own machinations cannot serve as a basis for claims of unfairness.

As none of the relevant factors weigh in Plaintiff's favor, the Court should decline to exercise supplemental jurisdiction if it grants reconsideration.

## II. Alternatively, All Three Criteria to Certify the Order for Appeal Are Met

28 U.S.C. § 1292(b) "is not limited by its language to 'exceptional' cases." Wright & Miller, 16 Fed. Prac. & Proc. Juris. § 3929 (3d ed.). Instead, a case warrants interlocutory appellate review (and is therefore exceptional) when the three criteria of § 1292(b) are met. Plaintiff's opposition misunderstands and misapplies that criteria.

First, CAIR-GA has presented a controlling question of law. Plaintiff does not contest that the Proposed Question [Doc. 199-1 at 15] is one of law.[1] He also offers no authority for the suggestion [Doc. 207 at 21] that the Court turn a blind eye to the practical effect full dismissal of the § 1985(3)/Title VI claim would have. To the contrary, the point of this factor is to assess the effect of a ruling on the litigation as a whole. *See, e.g.*, *Ga. State Conference of NAACP v. Fayette Cty. Bd. of Comm'rs*, 952 F. Supp. 2d 1360, 1362 (N.D. Ga. 2013) ("A question of law is considered 'controlling' if it has the potential of *substantially accelerating disposition* of the litigation, even if it would not terminate the case.") (emphasis added). 19 Moore's Federal Practice - Civil § 203.31 (2018) (noting that a controlling question of law is usually one related to an issue the determination of which would "materially advance the ultimate termination of the case"). It is not necessary that the controlling question immediately end the litigation. Resolution of the § 1985(3)/Title VI claim in CAIR-GA's favor, for reasons discussed *supra* Part I.B, would end the lawsuit.

As to the second factor, Plaintiff recycles superficial arguments regarding the merits [Doc. 207 at 22-23]. But the inquiry here is whether there is a substantial ground for a difference of opinion, not whether the Court's ruling was correct. And while Plaintiff characterizes the issue as "not a particularly difficult" one [Doc. 207 at 22], "certification under § 1292(b) has not been restricted in practice to exceptionally complex or protracted litigation," Wright & Miller, 16 Fed. Prac. &

---

[1] Despite an off-hand reference to "factual and procedural complications" [Doc. 207 at 21 n.7], Plaintiff identifies no facts needed to resolve the Proposed Question.

Proc. Juris. § 3929. That the Proposed Question can be "quickly and cleanly" resolved only weighs in favor of certification. [Doc. 199-1 at 16].

Further, the purported lack of direct authority in the Eleventh Circuit amounts at worst to "an issue of first impression"—squarely falling within the criteria recommending certification. [Doc. 199-1 at 17]. While CAIR-GA respectfully disagrees with the Court that *Novotny* and *Jimenez* do not control the outcome here, they at the least create "serious doubt" as to how the question should be decided, counseling in favor of certification. *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1256 (11th Cir. 2004). It would not be illogical or surprising for the Eleventh Circuit to follow those cases in holding that the scope of claims that can be remedied through § 1985(3) is extremely narrow and conclude that Title VI claims do not meet the high standard set by precedent. That the District Court decided differently is true in every request for interlocutory appeal and misses the point. Indeed, "when deciding whether to allow an interlocutory appeal, the district court should consider the probability that its decision was in error." *Scientific-Atlanta*, 2003 U.S. Dist. LEXIS 27749, at *10. Another Circuit Court having already reached a contrary result further supports this factor. There can be no doubt that a difference of opinion exists.

The third factor is also in CAIR-GA's favor. Plaintiff largely repeats his arguments regarding the pendency of this litigation and the timing of CAIR-GA's request for interlocutory appeal, discussed elsewhere. *Supra* Part I.B; *infra* Part III. While § 1292(b) does not automatically stay the proceedings [Doc. 207 at 24], CAIR-GA has requested such relief [Doc. 199-1 at 13; Doc. 199-3 at 2]; *see also* *Heat Technologies, Inc. v. Papierfabrik August Koehler SE*, No. 1:18-CV-01229-

LMM, 2019 U.S. Dist. LEXIS 76354, *6 (N.D. Ga. Apr. 18, 2019) (administratively closing case following certification).

Finally, Plaintiff misframes the third criterion in multiple respects. The relevant consideration is the effect that an interlocutory appeal, resolved in the movant's favor, would have on proceedings before the District Court to which the request is made. *Ga. State Conf. of NAACP*, 952 F. Supp. 2d at 1362 ("[T]he district court's primary consideration should be whether resolution of the question 'would serve to avoid a trial or otherwise substantially shorten *the litigation*.'") (quoting *McFarlin*, 381 F.3d at 1259) (emphasis added). Courts consider whether there would be "material[] advanc[ment of] *ultimate* termination of the litigation," 28 U.S.C. § 1292(b) (emphasis added), not immediate termination, and thus consideration of supplemental jurisdiction, which would necessarily follow, is appropriate. Plaintiff's focus on a temporary stay pending appeal pausing proceedings[2] (in furtherance of judicial and party economy), is thus a red herring. There is also no legal basis for Plaintiff's suggestion that the Court look beyond *this* litigation to consider Plaintiff's potential state-court suit [Doc. 207 at 25]. That a court would broadly consider whatever steps a litigant might take to revive its case following an averse interlocutory appeal ruling is unfounded.

---

[2] Plaintiff points only to the pending motions to dismiss [Doc. 207 at 24-25], but an interlocutory appeal would be determinative of those motions in any event: a ruling in CAIR-GA's favor would eliminate all federal claims as to all defendants, and consideration of supplemental jurisdiction would necessarily follow.

## III. CAIR-GA's Arguments Are Properly Before the Court

In lieu of compelling substantive responses, Plaintiff suggests a series of procedural outs. [Doc. 207 at 9-10 & n.2]. The Court should decline Plaintiff's invitation to side-step the important substantive issues raised in the Motion.

First, Plaintiff advances an undeveloped and unsupported argument based on the parties' motion-to-dismiss briefing and *Boulahanis*. [Doc. 207 at 6, 7, 9-10]. Notably, Plaintiff cannot claim any surprise as to the opinion (let alone the *legal issue* that is clearly and properly before the Court) and substantively argues against the holding in *Boulahanis* in his opposition [*see, e.g.,* Doc. 207 at 12-13], despite the opinion not featuring in his own motion-to-dismiss briefing. Indeed, both parties recognized that Eleventh Circuit and Supreme Court precedent were sufficient to resolve the issues and focused their motion-to-dismiss briefing accordingly. Although CAIR-GA maintains that persuasive authority is unnecessary to resolve the issue, because the Court *did* consider *Boulahanis*, the persuasiveness of that opinion is unquestionably now at issue.

Despite Plaintiff's numerous deprecatory characterizations, CAIR-GA has no "complaint" [Doc. 207 at 11] about the Court addressing *Boulahanis*, nor does CAIR-GA suggest that the Court was "wrong[]" or it was "a problem" [*id.* at 10] to discuss it. CAIR-GA merely acknowledged, as an objective fact, that neither it nor Plaintiff addressed the case in motion-to-dismiss briefing. [Doc. 199-1 at 8]. Plaintiff's procedural criticisms about how *Boulahanis* arose (wrapped in pride of authorship [Doc. 207 at 5, 11]) only confirm that the issue, however "late-breaking"

he may think it is [*id.* at 15], was previously brought before the Court.[3] CAIR-GA properly initiated fulsome consideration of the opinion given that the Court's view of it as unpersuasive *should* inform the parties' understanding of the Court's decision. Indeed, it would be incomplete, to say the least, to seek reconsideration of the Order and *not* address the Court's stated rationale. For that reason, CAIR-GA properly briefed for reconsideration an examination of *Boulahanis* and its reasoning.

Plaintiff's implicit suggestion that CAIR-GA could not have filed a subsequent motion requesting the Court to decline supplemental jurisdiction [Doc. 207 at 9-10] is also incorrect. CAIR-GA was well within the bounds of proper procedure to focus its motion-to-dismiss briefing on the merits-based deficiencies underlying Plaintiff's numerous claims, which required detailed and specific analysis, in its brief [*see, e.g.,* Doc. 140-1 at 10-11 (identifying six statements purportedly related to CAIR-GA for analysis)] (which reached the twenty-five-page limit permitted under the local rules). Based on the Court's Order, this case has now narrowed to *one fraction of one* of Plaintiff's federal claims, with the state-law claims dominating the litigation. Pendent jurisdiction should thus be assessed now, as discussed *supra* Part I.B. Plaintiff's complaint regarding supplemental

---

[3] Even on appeal, courts "generally will not deem the issue waived if the district court actually considered it." *Cmty. House, Inc. v. City of Boise*, 490 F.3d 1041, 1054 (9th Cir. 2007); *see also Bailey v. Int'l Bhd. of Boilermakers*, 175 F.3d 526, 529-30 (7th Cir. 1999) (resolving issue where it was "clear that the trial court recognized and considered the issue").

jurisdiction is thus also baseless, as is apparent from his inability to cite any authority supporting his attempt to avoid the Motion on technical grounds.[4]

Plaintiff's last procedural volley, suggesting that CAIR-GA should have sought interlocutory appeal earlier [Doc. 207 at 24] is nonsensical. No Order resolving Plaintiff's claims could be appealed until the Court ruled on CAIR-GA's motion to dismiss—which took 17 months [*id.*] due to Plaintiff's numerous amendments, no fault of any defendant.[5] The Court's prior ruling on Plaintiff's motion to amend assessed only futility. [Doc. 129 at 9]. In contrast, rulings on 12(b) motions are prime candidates for interlocutory appeal. [Doc. 199-1 at 14]. Plaintiff offers no response here.

## CONCLUSION

For the foregoing reasons, the Court should grant CAIR-GA's request for reconsideration, decline to exercise supplemental jurisdiction, and dismiss the case. In the alternative, the Court should amend the Order to expressly state that the Order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the Order may materially advance the ultimate termination of the litigation pursuant to 28 U.S.C. § 1292(b).

[4] Plaintiff cannot and does not ever actually argue "waiver" as to anything other than a prophylactic footnote tilting at windmills regarding this brief [Doc. 207 at 13 n.3].

[5] Plaintiff's suggestion that CAIR-GA cannot reply to his arguments [Doc. 207 at 13 n.3] in a reply brief provided for under the local rules, N.D. Ga. LR 7.1(C), is meritless. *Sapuppo v. Allstate Floridian Insurance Co.*, 739 F.3d 678 (11th Cir. 2014), is inapt because there, "appellant fail[ed] to challenge properly … one of the grounds on which the district court based its judgment," *id.* at 680; CAIR-GA is doing the opposite.

Respectfully submitted this 21st day of October, 2026.

**BUCHALTER LLP**

/s/ *Austin C. Vining*
Amanda G. Hyland
Georgia Bar No. 325115
Austin C. Vining
Georgia Bar No. 362473
3475 Piedmont Road NE, Ste. 1100
Atlanta, GA 30305
(404) 832-7350 Telephone
ahyland@buchalter.com
avining@buchalter.com

*Attorneys for Defendant CAIR-GA*

**CERTIFICATE OF COMPLIANCE WITH L.R. 5.1**

I HEREBY CERTIFY that the foregoing document was prepared in Times New Roman, 14-point font, as approved by Local Rule 5.1.

/s/ *Austin C. Vining*
Austin C. Vining
Georgia Bar No. 362473

*Attorney for Defendant CAIR-GA*