IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| JOSHUA WINER,<br><br>Plaintiff,<br><br>v.<br><br>UMAYMAH MOHAMMAD, et al.,<br><br>Defendants. | CIVIL ACTION FILE<br>NO. 1:25-CV-2329-TWT |

**OPINION AND ORDER**

This is a defamation case. It is before the Court on Defendants AJP Educational Foundation, Inc. ("AJP"), Doctors Against Genocide Society ("DAG"), and WESPAC Foundation, Inc.'s Motions to Dismiss [Docs. 146, 148, 163]. For the following reasons, AJP and DAG's Motions to Dismiss [Docs. 146, 163] are GRANTED. WESPAC Foundation, Inc.'s Motion to Dismiss [Doc. 148] is DENIED as moot.[1]

**I. Background**

This action arises out of alleged defamatory statements that Defendant Umaymah Mohammad, a student at the Emory University School of Medicine, made about Plaintiff Joshua Winer, a physician and professor at Emory. (2nd Am. Compl. ¶¶ 1-2). Mohammad, who is Palestinian, sent an email to the entire School of Medicine student and faculty body on January 17, 2024, in

[1] The Plaintiff voluntarily dismissed WESPAC Foundation, Inc. on March 18, 2026. [Doc. 162]; (Dkt. Entry dated Mar. 18, 2026).

which the Plaintiff alleges she "praised terrorism against Israel, expressed her hatred towards Israel and the United States, and stated that Israel, the United States, and Emory are perpetrating a genocide against Palestinians in Gaza." (*Id.* ¶¶ 26-27). Nearly two months later, in March 2024, the Plaintiff published an op-ed piece in an Israeli news publication sharing his decision to travel to Israel to volunteer as a physician in the Israeli Defense Force ("IDF") following the October 7th Hamas attack on Israel. (*Id.* ¶¶ 31-32). The Plaintiff identifies as Jewish and maintains dual American and Israeli citizenship. (*Id.* ¶ 12). He is a surgical oncologist at Emory Winship Cancer Institute, a professor in the Department of Surgery, Division of Surgical Oncology at the School of Medicine, and serves as the School of Medicine Surgical Clerkship Director. (*Id.*).

In April 2024, Mohammad participated in an interview for a news organization called Democracy Now!. (*Id.* ¶ 36). In the interview, Mohammad was asked about the email she sent and was asked to explain the importance of the issue to her. (*Id.*). As part of her response, Mohammad referenced Winer by stating that

> one of the professors of medicine we have at Emory recently went to serve as a volunteer medic in the Israeli Offense Force [sic] and recently came back. This man participated in aiding and abetting a genocide, in aiding and abetting the destruction of the healthcare system in Gaza and the murder of over 400 healthcare workers, and is now back at Emory so-called teaching medical students and residents how to take care of patients.

(*Id.*). Mohammad was ultimately suspended from the School of Medicine for one year based on her comments in the Democracy Now! interview. (*Id.* ¶ 49). In November 2024, Mohammad participated in a podcast hosted by the International Union of Scientists in which she made similar statements about the Plaintiff. (*Id.* ¶¶ 50-51). In January 2025, she made more statements about the Plaintiff's IDF service in the online publication Mondoweiss. (*Id.* ¶¶ 55-56). In the Mondoweiss piece, Mohammad alluded that the Plaintiff "believe[d] in the legitimacy of apartheid, and that some human lives are not as important as others." (*Id.* ¶ 56). At the end of the piece, she provided a link to a social media post by Defendants National Students for Justice in Palestine ("NSJP") and Doctors Against Genocide ("DAG"),[2] which ultimately led to a campaign on the website of Action Network that "contained additional false statements about Plaintiff and identified him by name." (*Id.* ¶ 60). NSJP and DAG also published posts on Instagram regarding the Action Network campaign, which directly quoted Mohammad's Democracy Now! interview. (*Id.* ¶¶ 78-87). These Defendants made a second Instagram post a few weeks later. (*Id.* ¶¶ 91-95). The Plaintiff alleges that former Defendant WESPAC is NSJP's fiscal sponsor and, therefore, "knowingly funded and facilitated NSJP's coordinated efforts to vilify Plaintiff and pressure Emory to discipline [him]." (*Id.* ¶ 147).

[2] The Plaintiff also alleges that Defendants Mohammad and Marya are co-founders of DAG who remain "significantly involved with the organization." (2nd Am. Compl. ¶ 17).

Defendant AJP Educational Foundation, Inc. ("AJP") is the founder of NSJP, and the Plaintiff alleges on information and belief that it maintains organizational management and control of NSJP such that it is responsible for NSJP's alleged actions. (*Id.* ¶¶ 14, 146, 175)

In February 2025, Defendant CAIR Georgia held a press conference on the subject of Mohammad's suspension, during which she made the following statement:

> [Emory] disciplined me for exposing Emory's complicity in the destruction of Gaza in an interview where I mentioned an unnamed physician who served in the military, actively engaged in the genocidal campaign against the Palestinian people, my people . . . I cannot learn from a physician who might have fired one of the 355 bullets that landed in 6 year old Hind Rajab's body. Or who might have helped make the decision to bomb one of the hospitals in Gaza. Or who might have celebrated the murder of our communities on the rubble still wet with Palestinian blood. A doctor who cannot see Palestinians as human beings will return to Atlanta to offer the same disposability to black and brown patients at home.

(*Id.* ¶¶ 62-63). CAIR Georgia, along with CAIR Foundation Inc., also issued a press release with a link to Mohammad's Democracy Now! interview and rebroadcasted the press conference on its Instagram account on February 11, 2025. (*Id.* ¶¶ 119, 124). Mohammad's statements were later broadcasted and published by television stations and news outlets. (*Id.* ¶¶ 67-76). Defendant Emory SJP shared NSJP and DAG's posts on its Instagram account, and also made similar posts sharing the Democracy Now! interview and identifying the Plaintiff. (*Id.* ¶¶ 130-137). Defendant Rupa Marya works with Mohammad as

a co-founder of DAG[3] and, the Plaintiff alleges, she has "frequently identified Plaintiff by name and used her social media platforms to spread harmful and reputationally damaging statements about him," including blaming him for the termination of a Palestinian professor at Emory School of Medicine and accusing him of participating in a genocide. (*Id.* ¶¶ 98-118).

The Plaintiff brought this action in April 2025 asserting four counts against all of the Defendants: defamation per se, in violation of O.C.G.A. § 51-5-4 (Count I); false light invasion of privacy, under state common law (Count II); civil conspiracy, under state common law (Count III); and conspiracy to interfere with civil rights, in violation of 42 U.S.C. § 1985(3) (Count IV). (*Id.* ¶¶ 138-200). The Plaintiff filed an amended complaint as of right before any of the Defendants filed a responsive pleading. [Doc. 22]. The Plaintiff then moved for leave to file a Second Amended Complaint, and the Court granted that motion. [Doc. 129]. Shortly thereafter, several Defendants

---

[3] The Court notes that the Plaintiff filed a notice on the docket purporting to withdraw the allegation that Marya and Mohammad are co-founders of DAG for purposes of this Motion to Dismiss. [Doc. 183]. The Plaintiff cites no authority supporting this procedural maneuver, because there is none. The proper way to withdraw or change allegations in a complaint is to seek leave to amend it, which the Plaintiff has not done. *Norrell v. Phenix City Public Transp.*, 2024 WL 4759771, at *3 (M.D. Ala., Nov. 12, 2024) ("A notice is not a proper mechanism for amending a complaint. Instead, a complaint is amended in accordance with Rule 15(a) of the Federal Rules of Civil Procedure."). Because the Court is obligated to accept as true the complaint's factual allegations in ruling on a motion to dismiss, *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007), the Court will consider the co-founder allegations regardless of the Plaintiff's notice.

moved to dismiss the Second Amended Complaint, including AJP and DAG. Their Motions to Dismiss are presently before the Court. [Doc. 146, 163].

## II. Legal Standards

On a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), "the plaintiff has the burden of establishing a prima facie case by presenting enough evidence to withstand a motion for directed verdict." *United States ex rel. Bibby v. Mortg. Invs. Corp.*, 987 F.3d 1340, 1356 (11th Cir. 2021). In evaluating a plaintiff's case, "[t]he district court must construe the allegations in the complaint as true, to the extent they are uncontroverted by defendant's affidavits or deposition testimony." *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988). Where the defendant contests the allegations of the complaint through affidavits, "the burden shifts back to the plaintiff to produce evidence supporting personal jurisdiction, unless the defendant's affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction." *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006). "And where the evidence presented by the parties' affidavits and deposition testimony conflicts, the court must draw all reasonable inferences in the plaintiff's favor." *Mortg. Invs.*, 987 F.3d at 1356 (quotation marks omitted).

A complaint should be dismissed under Rule 12(b)(6) only where it

appears that the facts alleged fail to state a "plausible" claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); Fed. R. Civ. P. 12(b)(6). A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. *See Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994-95 (11th Cir. 1983); *see also Sanjuan v. American Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff "receives the benefit of imagination"). Generally, notice pleading is all that is required for a valid complaint. *See Lombard's, Inc. v. Prince Mfg., Inc.*, 753 F.2d 974, 975 (11th Cir. 1985). Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555).

## III. Discussion

### A. AJP's Motion to Dismiss [Doc. 146]

In its Motion to Dismiss, AJP first argues that the Plaintiff has failed to plead any contacts it has with Georgia that would establish personal

jurisdiction over it, in addition to failing to satisfy the minimum contacts requirement. (AJP's Mot. to Dismiss, at 5-6). It contends that it is a California entity with its principal place of business in Virginia and the fact that Georgia residents may access its statements over the internet does not constitute commission of a tort within the state for personal jurisdiction purposes. (*Id.* at 7-8).[4]

The Plaintiff asserts that the Court does have personal jurisdiction over AJP because of its "intentional[ly] tortious conduct purposefully directed at Georgia," but he does not specifically identify that conduct.[5] The Plaintiff argues that the minimum contacts test is satisfied in part because, "[t]hrough its control of NSJP, [AJP] orchestrated a coordinated campaign that targeted a Georgia resident, urged thousands to contact his Georgia employer, and caused injury in Georgia." (*Id.* at 5). He further contends that AJP purposefully directed the campaign into Georgia through its control of NSJP and

[4] AJP additionally argues that dismissal is warranted on shotgun pleading and failure to state a claim grounds. (AJP's Mot. to Dismiss, at 8-25). Because the Court ultimately resolves this Motion on personal jurisdiction grounds, it will not address these arguments.

[5] The Plaintiff also states that "because the Court has jurisdiction over [AJP] with respect to Dr. Winer's false light claim, it necessarily has jurisdiction over the related conspiracy claims predicated on that tort, as well as the accompanying defamation and defamation-based conspiracy claims arising from the same operative facts." (AJP's Mot. to Dismiss, at 4). But nowhere does the Plaintiff explain why the Court has personal jurisdiction over AJP with respect to the false light claim, so the Court is unable to infer the Plaintiff's reasoning as to the remaining claims.

authorization of NSJP's messaging and that the exercise of jurisdiction comports with the traditional notions of fair play and substantial justice here because "Georgia has a strong interest in providing redress to residents harmed by out-of-state actors." (*Id.* at 5-6).

A federal court sitting in diversity undertakes a two-step inquiry to determine whether it has personal jurisdiction over a nonresident defendant: "the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257-58 (11th Cir. 2010) (citation omitted). "When a federal court uses a state long-arm statute, because the extent of the statute is governed by state law, the federal court is required to construe it as would the state's supreme court." *Id.* at 1258 (quotation marks omitted). Thus, this Court must interpret and apply Georgia's long-arm statute in the same manner as the Georgia Supreme Court. The statute, codified at O.C.G.A. § 9-10-91, confers specific personal jurisdiction over an out-of-state defendant if, among other things, it "[c]ommits a tortious act or omission within [Georgia][.]" O.C.G.A. § 9-10-91(2). However, "it is essential in each case that there be some act by which the defendant purposefully avails [him]self of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Aero Toy Store, LLC v. Grieves*, 279 Ga.

App. 515, 518 (2006).

The Court will first address the applicability of Georgia's long-arm statute. As an initial matter, the Plaintiff alleges only O.C.G.A. § 9-10-91(2) as the basis for personal jurisdiction under the Georgia long-arm statute, so the Court will not address the other prongs of that statute. (*See* Pl.'s Resp. in Opp. to Mot. to Dismiss, at 3-4).

As the Court reads the Complaint and the Plaintiff's response to the Motion to Dismiss, the Plaintiff's only alleged theories of personal jurisdiction over AJP are (1) that AJP directed or authorized other Defendants (in particular, NSJP) to make false statements about the Plaintiff, and the making of those statements constituted committing a tortious act within Georgia, and (2) because the Court has personal jurisdiction over the Plaintiff's false light claim, it necessarily has personal jurisdiction over the remaining claims, since they arise from the same operative facts. (2nd Am. Compl. ¶¶ 146, 164 175); (Pl.'s Resp. in Opp'n to AJP's Mot. to Dismiss, at 4).

The first problem with the Plaintiff's argument is that it does not explain how AJP's alleged commission of false light invasion of privacy against the Plaintiff automatically confers personal jurisdiction over it. But even if the Court were to presume his argument would be that AJP controlled NSJP and directed it to commit tortious conduct against him, the effects of which were felt in Georgia, his argument fails. The Plaintiff's allegations that AJP

maintained control over NSJP such that it could direct or authorize NSJP's actions are made "on information or belief." (*See, e.g.*, 2nd Am. Compl. ¶ 14 ("upon information and belief, [AJP] maintains organizational management and control of NSJP, including the social media messaging . . . . On information and belief, [AJP] and NSJP share a social media manager, and [AJP] maintains a formal liaison role with NSJP to ensure that its messaging is disseminated uniformly.")). These types of allegations present a conundrum for the Court because, although a plaintiff's allegations of fact should be considered true at this stage, the plaintiff also must allege facts that "support a reasonable inference that the defendant can be subjected to jurisdiction within the state" in order to establish a prima facie case of personal jurisdiction. *Bracewell v. Nicholson Air Servs.*, 680 F.2d 103, 104 (11th Cir. 1982). But "[c]onclusory allegations made upon information and belief are not entitled to a presumption of truth" at the motion to dismiss stage. *Price v. Howard*, 2023 WL 2767770, at *2 (N.D. Ga. Mar. 31, 2023); *see also Iqbal*, 556 U.S. at 679 ("[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."). The Plaintiff's allegations here with regard to AJP's alleged organizational control and oversight over NSJP as a whole are conclusory because the only fact the Plaintiff alleges in support of this belief is that AJP founded NSJP, but the entirety of the Plaintiff's claims

against AJP hinge on whether it does in fact have such control over NSJP's operations. As such, these allegations are not entitled to a presumption of truth. *Scott*, 2018 WL 3360754, at *6.

That does not mean, however, that the Court may not consider them at all. But the Plaintiff is still required to allege facts that support a reasonable inference that AJP is subject to personal jurisdiction, and here, these are the *only* such facts the Plaintiff has alleged. The Plaintiff has not presented any other evidence that might persuade the Court that AJP does in fact exert organizational control over NSJP and its actions, including its social media activities. And such control does not necessarily inure from the fact that AJP founded NSJP. Given the lack of evidence or any other supporting factual allegations buttressing this alleged managerial link between AJP and NSJP, the Court concludes that the Plaintiff has not presented enough to establish a prima facie case of personal jurisdiction under the Georgia long-arm statute with regard to its theory that AJP controlled NSJP and directed its alleged tortious actions.

The second problem with the Plaintiff's argument is that it has made no attempt to establish that AJP committed its allegedly tortious actions within Georgia. The Plaintiff asserts that the actions AJP took were "purposefully directed at Georgia" and that it "targeted a Georgia resident, urged thousands to contact his Georgia employer, and caused injury in Georgia. (Pl.'s Resp. to

AJP's Mot. to Dismiss, at 4-5). But the Plaintiff purports to proceed under subsection (2) of the Georgia long-arm statute, and the Georgia Supreme Court has made clear that injury occurring in Georgia is not sufficient under that prong and that the tortious act itself must take place in Georgia. *Innovative Clinical & Consulting Servs., LLC v. First Nat'l Bank of Ames*, 279 Ga. 672, 673-74. In contrast, under subsection (3), a court may exercise personal jurisdiction over a nonresident who causes injury in Georgia by an act committed outside Georgia, but only if the nonresident regularly interacts with the state in certain specified ways. *See id.* at 674. The Plaintiff has not alleged that AJP committed its allegedly tortious actions in Georgia, but only that it caused injury here. That is not enough to allege personal jurisdiction under subsection (2) of the long-arm statute. The Plaintiff alleges that AJP is a California corporation with a principal place of business in Virginia and does not allege any other interactions with Georgia. Thus, even construing these allegations as true, the Plaintiff has failed to establish a prima face case under subsection (2) of the Georgia long-arm statute as to AJP.

Because the Court cannot exercise personal jurisdiction over AJP under the Georgia long-arm statute, it need not address the due process considerations or AJP's arguments under Rule 12(b)(6). Accordingly, AJP's Motion to Dismiss [Doc. 146] will be granted on personal jurisdiction grounds.

**B. DAG's Motion to Dismiss [Doc. 163]**

Like AJP, DAG moves to dismiss on personal jurisdiction grounds. DAG argues that it is incorporated in Michigan, so it is not subject to general jurisdiction in Georgia, and that the alleged culpable conduct for all three claims against it is defamation, which is specifically excluded as a basis for personal jurisdiction over a nonresident under subsection (2) of the long-arm statute. (DAG's Mot. to Dismiss, at 10-11). DAG asserts that the Plaintiff cannot evade this exclusion by recharacterizing its claims as other tort claims. (*Id.* at 11-12). Finally, DAG contends that exercising personal jurisdiction over it would infringe on due process because the Plaintiff has not shown that it had any contacts with Georgia, and that the Plaintiff has failed to allege that DAG committed any non-defamation tortious acts in Georgia. (*Id.* at 12).[6]

The Plaintiff responds that this Court has personal jurisdiction over DAG under subsection (2) of the Georgia long-arm statute because DAG purposefully directed its conduct at Georgia and he has alleged non-defamation claims, and under subsection (3) based on DAG's "contacts with Georgia outside of the defamation itself." (Pl.'s Resp. in Opp. to DAG's Mot. to Dismiss, at 5-6). He asserts that, on information and belief, DAG has co-founders and members who live and work in Georgia and/or implement DAG's programming

[6] Like AJP, DAG additionally argues that dismissal is warranted on shotgun pleading and failure to state a claim grounds. (DAG's Mot. to Dismiss, at 12-25). Because the Court ultimately resolves this Motion on personal jurisdiction grounds, it will not address these arguments.

within the state. (*Id.* at 7). Finally, the Plaintiff argues that exercising personal jurisdiction over DAG does not infringe due process. (*Id.* at 7-8).

As with AJP, the Plaintiff fails to explain how DAG's alleged commission of false light invasion of privacy and participation in conspiracies automatically give this Court personal jurisdiction over DAG under the Georgia long-arm statute. (*See* Pl.'s Resp. in Opp. to DAG's Mot. to Dismiss, at 5 ("Dr. Winer has also alleged false light invasion of privacy, civil conspiracy, and conspiracy to interfere with his civil rights. Therefore, . . . the court has personal jurisdiction over DAG for all claims."). To the extent that the Plaintiff's argument under subsection (2) of the statute is that "DAG participated in a coordinated campaign to defame a Georgia physician," (*id.*), this is not enough to carry his burden of establishing that DAG committed its allegedly tortious actions within Georgia. *See Innovative Clinical & Consulting Servs., LLC*, 279 Ga. at 673-74 (interpreting O.C.G.A. § 9-10-91(2); *Mortg. Invs. Corp.*, 987 F.3d at 1356 (noting that the plaintiff has the initial burden of establishing a prima facie case for personal jurisdiction). Turning to the Second Amended Complaint,[7] the following allegations relate to DAG's actions

---

[7] The Court notes that the Plaintiff did not point the Court to any citations in his Second Amended Complaint to support his arguments that the Court has personal jurisdiction over DAG under the Georgia long-arm statute. Nonetheless, because the Court is obligated to accept the factual allegations therein as true at this stage, the Court searched for supporting allegations itself. To the extent any such allegations were overlooked, the fault is on the Plaintiff.

with regard to Georgia: (1) "on information and belief," Mohammad, who is a Georgia resident, is a co-founder and active member of DAG; (2) Mohammad is a steering committee member of DAG, and DAG collaborated with NSJP to "adopt, amplify, and disseminate Mohammad's defamatory statements" via Instagram posts, and; (3) the Plaintiff is a Georgia resident who is employed by Emory, a university in Georgia. (2nd Am. Compl. ¶¶ 12, 13, 174). Putting aside the potential pitfalls of the Plaintiff's reliance "on information and belief" for his allegations with regard to Mohammad's ties to DAG, there are no allegations that DAG committed any tortious conduct—i.e., made the subject Instagram posts—within Georgia.[8] And although he alleges that Mohammad is "active" in DAG, he never alleges that she herself made the posts through her alleged role within DAG, that she did so while in Georgia, or any other way through which DAG's conduct was committed in the state within the meaning of subsection (2). Georgia law is clear that to proceed under subsection (2), the alleged tortious conduct must have taken place within the state, and the fact that the Plaintiff, who is a Georgia resident, felt the injuries of DAG's alleged actions in Georgia does not suffice to confer personal jurisdiction over DAG under that subsection. O.C.G.A. § 9-10-91(2); *Innovative Clinical & Consulting*

---

[8] And although the Plaintiff did not raise it, there is no support for an argument that the Instagram posts could be considered made in Georgia based on the fact that they were accessible in the state. *Kifle v. X Corp.*, 2025 WL 3523569, at *2 n.2 (N.D. Ga. June 9, 2025); *LABMD, Inc. v. Tiversa, Inc.*, 509 F. App'x 842, 844-45 (11th Cir. 2013).

*Servs., LLC*, 279 Ga. at 673-74 (citing *Gust v. Flint*, 257 Ga. 129, 130 (1987) ("The rule that controls is our statute, which requires than out-of-state defendant must do certain acts within the State of Georgia before he can be subjected to personal jurisdiction. Where, as here, it is shown that no such acts were committed, there is no jurisdiction.")).

Unlike with AJP, the Plaintiff also argues that DAG is subject to personal jurisdiction under subsection (3) of the Georgia long-arm statute. O.C.G.A. § 9-10-91(3) also confers specific jurisdiction over an out-of-state defendant if, among other things, he "[c]ommits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state[.]" O.C.G.A. § 9-10-91(3). Under this subsection, the Plaintiff argues that "[u]pon information and belief, DAG has sufficient contacts with Georgia outside of the defamation itself." (Pl.'s Resp. to DAG's Mot. to Dismiss at 6). He argues that the Second Amended Complaint alleges that "DAG has co-founders and/or members (including Defendant Mohammad) who live and work in Georgia and/or implement DAG programming from within the state, target individuals in the state with its programming, and generally support DAG's mission within the state, separate and apart from DAG's tortious conduct against Plaintiff." (*Id.*). Poignantly, the Plaintiff does not provide any

citation to these allegations in his Second Amended Complaint. The Court's own review did not reveal them either, save for the above cited allegations with regard to Mohammad's connections to DAG.[9]

Construing the Second Amended Complaint's allegations in the Plaintiff's favor, the Court can reasonably assume that the first part of subsection (3) is satisfied because DAG is a Michigan-based organization and the Plaintiff alleges he suffered his injuries here in Georgia. But Mohammad's residence in the state and membership in DAG does not satisfy the "regularly . . . engages in any other persistent course of conduct" in the state portion of subsection (3). First, the Georgia Supreme Court has been clear that to proceed under subsection (3), the defendant's contacts with the state must be separate from the acts giving rise to the suit. *See Bradlee Mgmt. Servs., Inc. v. Cassells*, 249 Ga. 614, 617 (1982). DAG's programming "targeting individuals in the state" is essentially what the Plaintiff alleges DAG did to him, and is therefore the same alleged contact with the state that gives rise to this action. Second, as noted above, the Plaintiff has not actually alleged in the Second Amended Complaint that DAG has any other members in Georgia besides Mohammad, nor has it alleged that DAG regularly engaged in any conduct inside the state besides its actions at issue in this case. Thus, the Plaintiff has failed to

---

[9] Again, to the extent any such allegations in the Second Amended Complaint are overlooked, the fault is on the Plaintiff.

establish personal jurisdiction over DAG under either subsection (2) or (3) of the Georgia long-arm statute.

As with AJP, because the Court cannot exercise personal jurisdiction over DAG under the Georgia long-arm statute, it need not address the due process considerations or DAG's arguments under Rule 12(b)(6). Accordingly, DAG's Motion to Dismiss [Doc. 163] will be granted on personal jurisdiction grounds.

**C. Request for Jurisdictional Discovery**

Finally, the Plaintiff makes a passing request for jurisdictional discovery in a footnote to his response brief to DAG's Motion to Dismiss. (*See* Pl.'s Resp. in Opp. to DAG's Mot. to Dismiss, at 6 n.3). Putting aside the fact that the Georgia civil procedure rule the Plaintiff cites in support is not applicable in Federal court,[10] this request is not properly presented. *See LaCroix v. Town of Fort Myers Beach, Fla.*, 38 F.4th 941, 947 n.1 (11th Cir. 2022) (noting that if a party makes "only a passing reference to [an] argument in a footnote of [his] brief," the argument is waived); *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits

[10] "State law is of very little relevance to discovery in a federal action." 6 Wright & Miller's Federal Practice & Procedure § 2005 (3d ed. 2026). Except in limited circumstances not present here, "it is wholly settled that discovery in a federal court is governed only by [the Federal Rules of Civil Procedure] and that state discovery practices are irrelevant." *Id.*

will not be addressed."). The Plaintiff had every opportunity to fully flesh out an argument for jurisdictional discovery and declined to do so. Accordingly, the Court declines to grant its request.

## IV. Conclusion

For the foregoing reasons, the Defendants' AJP Educational Foundation, Inc.'s and Doctors Against Genocide Society's Motions to Dismiss [Docs. 146, 163] are GRANTED and these Defendants are DISMISSED for lack of personal jurisdiction. WESPAC Foundation, Inc.'s Motion to Dismiss [Doc. 148] is DENIED as moot.

SO ORDERED, this 17th day of November, 2026.

Thomas W. Thrash

THOMAS W. THRASH, JR.
United States District Judge