IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| JOSHUA WINER,<br><br>Plaintiff,<br><br>v.<br><br>UMAYMAH MOHAMMAD, et al.,<br><br>Defendants. | CIVIL ACTION FILE<br>NO. 1:25-CV-2329-TWT |

**OPINION AND ORDER**

This is a defamation case. It is before the Court on the Plaintiff Joshua Winer's Motion for Reconsideration [Doc. 198]. For the following reasons, the Motion is DENIED.

The facts of this case are well known to the parties, so the Court cites only the facts relevant to the disposition of the Plaintiff's Motion for Reconsideration here. On August 26, 2026, the Court issued an order granting in part and denying in part CAIR Georgia and CAIR Foundations' Motions to Dismiss. [Docs. 192, 193]. In the order addressing CAIR Georgia's Motion to Dismiss, the Court noted that the Plaintiff had alleged two theories for his conspiracy claim under 42 U.S.C. § 1985(3) as predicated on Title VI: first, he alleged that CAIR Foundation was federally funded, and it conspired with CAIR Georgia to interfere with his rights by pressuring Emory to investigate him and terminate his employment, [Doc. 192 at 19], and second, he alleged that the Defendants conspired to pressure Emory to terminate him based on

his Jewish identity, [*id.*]. In addressing the Emory theory, the Court noted that although the Plaintiff had argued in his response to CAIR Georgia's Motion to Dismiss that Emory was federally funded and thus subject to Title VI, "nowhere in the Second Amended Complaint [did] the Plaintiff allege Emory's federal funding as the linchpin for his Title VI-based § 1985(3) claim. [*Id.*]. The Court then stated that the CAIR Foundation theory was the only arguably proper factual basis for the Title VI-based portion of the Plaintiff's § 1985(3) claim and addressed the merits of that claim, ultimately denying CAIR Georgia's Motion to Dismiss as to the Title VI portion of the Plaintiff's § 1985(3) claim. The Plaintiff relies on his earlier motion for leave to file a second amended complaint and associated briefing to support his argument that the federal funding predicate of the Emory theory was properly alleged.

Now, the Plaintiff moves for reconsideration, arguing that the Court wrongly concluded that he did not allege Emory's federal funding as a basis for his Title VI-based § 1985(3) claim and that CAIR Georgia understood him to be making that argument. (Pl.'s Mot. for Recons. at 3-4). He cites to paragraph 12 of the Second Amended Complaint, under the "Parties" heading, where he alleged that "Emory is a recipient of federal grants, making it a 'program or activity receiving Federal financial assistance' for purposes of Title VI of the Civil Rights Act, 42 U.S.C. § 2000d." (*Id.*); (2nd Am. Compl. ¶ 12). The Plaintiff asserts that his response briefing reiterated that his claim under the Emory

theory was that the Defendants sought to induce Emory to terminate his employment, which he argued was a result that would violate Title VI, but he did not need to allege that Emory received federal funding for the primary purpose of employment because he was not raising a direct Title VI claim against Emory. (Pl.'s Mot. for Recons. at 5-7).

## I. Discussion

Although the Federal Rules of Civil Procedure do not specifically authorize motions for reconsideration, they are common in practice. Local Rule 7.2 states that motions for reconsideration are not to be filed "as a matter of routine practice," but only when "absolutely necessary." LR 7.2(E), NDGa. In particular, a party may move for reconsideration when there is (1) newly discovered evidence, (2) an intervening change in controlling law, or (3) the need to correct clear error or prevent manifest injustice. *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007); *Price v. Owens*, 634 F. Supp. 2d 1349, 1357-58 (N.D. Ga. 2009). A manifest error of law is "the wholesale disregard, misapplication, or failure to recognize controlling precedent." *Durden v. State Farm Fire & Cas. Co.*, 2017 WL 3723118, at *6 (N.D. Ga. Aug. 29, 2017) (citation omitted). By contrast, a motion for reconsideration is not a "vehicle to present new arguments or evidence that should have been raised earlier, introduce novel legal theories, or repackage familiar arguments to test whether the Court will change its mind." *Brogdon ex rel. Cline v. Nat'l Healthcare*

*Corp.*, 103 F. Supp. 2d 1322, 1338 (N.D. Ga. 2000).

As the Court reads the Plaintiff's Motion for Reconsideration, the Plaintiff asserts that the Court clearly erred in its reading of the Second Amended Complaint and overlooked an allegation that Emory does receive federal funding. This argument takes an overly narrow view of the Court's analysis. For reference, the Court includes here a screenshot of the allegations in the Second Amended Complaint pertaining to the Emory theory versus the CAIR Foundation theory:

> 193. By targeting Plaintiff for expressing his Zionism, Defendants sought to punish and deter him for his Jewish identity by inducing Emory to terminate his employment on that basis, a result that would violate Titles VI and VII of the Civil Rights Act, as well as 42 U.S.C. § 1981.
>
> 194. In addition, Defendant CAIR-Foundation receives federal funding, making their conduct in subjecting Plaintiff to discrimination "on the ground[s]" of his "race" and "national origin" a violation of Title VI of the Civil Rights Act. 42 U.S.C. § 2000d. On information and belief, those defendants who do not operate a "program or activity receiving Federal financial assistance" conspired with those who did to deprive Plaintiff of his rights under Title VI.

In contrast to the allegation for the CAIR Foundation theory, the Emory theory allegation made no mention of federal funding and did not track the language of the statute, for example using "punish and deter" rather than discriminate, and Jewish identity rather than national origin. The Plaintiff alleges neither that the "Defendants" receive federal funding here nor that Emory does. True,

181 paragraphs earlier, the Plaintiff did allege that Emory received federal funding. But as Emory is not a Defendant in this action, the Plaintiff needed to clearly allege the link between Emory and the "Defendants" alleged in paragraph 193 that he asserts the claim against in order to subject these Defendants to Title VI for § 1985(3) purposes, and the allegations in paragraph 193 fall short of that, even considering paragraph 12 (and the Court did so consider). On the other hand, paragraph 194 identifies a specific Defendant, explains how that Defendant is subject to Title VI, and links other Defendants that might not be subject to Title VI on their own by alleging that those Defendants conspired with CAIR Foundation to violate the Plaintiff's rights under Title VI. (*Compare* 2nd Am. Compl. ¶ 193 with 2nd Am. Compl. ¶ 194). The Plaintiff's reliance on the briefing for his Motion for Leave to Amend[1] and CAIR Georgia's Motion to Dismiss[2] is misplaced because, in ruling on a motion

[1] The Plaintiff appears to allege that the Court changed its mind about whether the Second Amended Complaint properly alleged Emory's receipt of federal funding between granting leave to amend and now. Notwithstanding the corrective explanation given herein with regard to the Plaintiff's narrow view of the Court's order, the Court pauses here to make an important distinction. A motion for leave to amend considers only facial plausibility from a futility standpoint, and leave to amend is to be freely granted. A motion to dismiss under Rule 12(b)(6) considers the merits and presents a higher level of factual scrutiny. The fact that a claim may not be futile does not necessarily mean that it will survive a motion to dismiss.

[2] The Plaintiff makes much of the Court's citation to his response in opposition to CAIR Georgia's Motion to Dismiss in the sentence where the Court stated that he had not alleged Emory's federal funding as the linchpin for his Title VI-based § 1985(3) claim. (*See* Pl.'s Mot. for Recons. at 6 (citing

to dismiss, the allegations in the complaint are what matter, not what the parties argue or believe the other side is arguing. This is what the Court's reference to "linchpin" meant—it was the Plaintiff's responsibility to fully allege that the "Defendants" he brought the claim against were subject to Title VI under the Emory theory (because, again, Emory is not a defendant to this action) in the Second Amended Complaint. Not in briefing, but in the Complaint.

The Court admits that it could have been more thorough in its explanation for why it did not find the Emory theory of the Plaintiff's § 1985(3) claim to be properly alleged, but did not do so because it was not dismissing the claim and allowed it to proceed on the CAIR Foundation theory. But the Court takes the opportunity now to further elaborate on why the Emory theory fails to state a claim as alleged. As CAIR Georgia points out, the Eleventh Circuit has made clear that "to bring suit under Title VI, an employer must receive federal funds for purposes of providing employment." *Jones v. Metro. Atl. Rapid Transit Auth.*, 681 F.2d 1376, 1378 (11th Cir. 1982). The "primary objective" requirement is considered an element of a plaintiff's cause of action under Title VI. *See Moeinpour v. Bd. of Trs. of Univ. of Ala.*, 2024 WL 2164626,

---

Doc. 192 at 19)). There, the Court simply cited the portion of the Plaintiff's response brief that it directly quoted in that sentence, as indicated by the phrase "While the Plaintiff states in his response brief that . . . ." [*See* Doc. 192 at 19].

at *11 (N.D. Ala., May 14, 2024). And a core element of a § 1985(3) claim is the requirement that the conspiracy was undertaken for the purpose of depriving an individual of equal protection of the law, i.e., violating a protected right. Thus, because the Plaintiff's Emory theory alleged that the Defendants conspired to induce Emory to violate his Title VI rights by pressuring it to terminate his employment, "a result that would violate Title VI," the Plaintiff needed to allege facts establishing what that violation would have been. And because the Plaintiff alleged Emory's would-be violation in the employment context, a properly alleged Title VI claim against Emory would need facts alleging that Emory received federal funding for the primary purpose of providing employment. As a result, a § 1985(3) claim premised on this type of Title VI violation required the same allegations, and the Plaintiff does not dispute that he did not make any allegations about the primary purpose of Emory's receipt of federal funding here. Therefore, the Plaintiff's argument that *Jones* applies only to a direct Title VI claim makes a distinction without a difference. In its Order, the Court packed all of these reasons into its "linchpin" sentence in order to focus on the one avenue that would allow the Plaintiff's § 1985(3) claim to proceed: the CAIR Foundation theory.

Accordingly, the Plaintiff has not demonstrated any manifest injustice or clear error in the Court's Order on CAIR Georgia's Motion to Dismiss,[3] so

[3] The Plaintiff styled his Motion as directed at both the Order on CAIR

his Motion for Reconsideration will be denied.

## II. Conclusion

For the foregoing reasons, the Plaintiff's Motion for Reconsideration [Doc. 198] is DENIED.

SO ORDERED, this 18th day of November, 2026.

THOMAS W. THRASH, JR.
United States District Judge

---

Georgia's Motion to Dismiss as well as the Order on CAIR Foundation's Motion to Dismiss. However, his arguments take issue with language used only in the Order on CAIR Georgia's Motion to Dismiss. To the extent that his Motion also addresses the Order on CAIR Foundation's Motion to Dismiss, it is denied for the same reasons explained herein.